# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>GOVERNOR JON BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,<br><br>      Defendants. | Civil Action No.<br><br>**Complaint for Injunctive and Declaratory Relief—Class Action**<br><br>**IMMEDIATE RELIEF SOUGHT** |

## CLASS ACTION COMPLAINT

1.

Since 1974, with the passage of the federal Juvenile Justice and Delinquency Prevention Act (JJDPA), Congress recognized that young people should not be incarcerated in adult jails or prisons. Juvenile Justice and Delinquency Prevention (JJDP) Act (Pub. L. No. 93-415), 42 U.S.C. § 5601 et seq. If ever youth are held in adult facilities under temporary and limited circumstances, there must be sight and sound separation from detained and incarcerated adults. The JJDPA requires that juveniles not be confined in any institution where they may have contact with adult inmates. Known as one JJDPA's core protections, sight and sound separation "mandates that incarcerated youths may not be placed in situations in which they have any clear visual or verbal contact that is `not brief and inadvertent' with adult incarcerated persons."

2.

On July 19, 2022, at a press conference called to address the failings of one of the state's

juvenile facilities, Gov. Jon Bel Edwards declared that the state will "temporarily move" youth in the custody of the Office of Juvenile Justice ("OJJ") from a juvenile secure care facility to the Louisiana State Penitentiary (LSP). Although Gov. Edwards claimed that the youth would be held in a separate location at LSP, would not have any contact with adults incarcerated at LSP, and that youth transferred to LSP will have counseling, educational programming, and other services, those claims are unsupported by any plan. As one former top OJJ official noted, the move to transfer youth from juvenile facilities to LSP is "abhorrent" and "the worst juvenile justice policy decision probably ever made in modern times."

3.

Almost five thousand men are incarcerated at LSP, with over eighty-four percent of the population locked up for crimes of violence. LSP is commonly referred to as Angola due to its origins as a forced labor camp before the Civil War, when it was called the "Angola Plantations." Given the fact that 83% of youth in OJJ's secure care system are Black, it is statistically likely that Black youth will disproportionately suffer the brunt of the Governor's transfer plan.

4.

LSP cannot provide basic, humane care for the adults within its gates. In 2021, Chief Judge Shelly Dick of this Court found in *Lewis v. Cain* "that [the Louisiana State Penitentiary] lacks the infrastructure necessary to provide a constitutionally adequate health care system for patients with serious medical needs," and "overwhelming deficiencies in the medical leadership and administration of health care at [the prison] contributes to these constitutional violations." In addition to regular COVID-19 outbreaks, LSP is currently under a boil water alert due to broken infrastructure. If LSP cannot protect the constitutional rights of the almost five thousand adults in

its custody and care, it will not be to provide care to Plaintiff Alex A.[1] and the other youth placed there.

5.

Under Louisiana law, youth in the OJJ are adjudicated delinquent, which is a civil law adjudication. Young people are not convicted of a crime, and they are protected by the Fourteenth Amendment to the U.S. Constitution. Arbitrarily transferring young people under OJJ jurisdiction to LSP, a place with thousands of people convicted of crimes under Louisiana law and sentenced to hard labor, is clearly punishment, which is not permitted for those who are civilly detained, and violates young people's due process rights under the Fourteenth Amendment. Defendants' unconstitutional actions place Plaintiff Alex A. and members of the class at risk of unspeakable harm and lifelong trauma.

6

Plaintiff Alex A., along with other putative class members, is a student who meets the definition of a disability under Section 504 of the Rehabilitation Act and previously had an Individual Accommodations Plan. As a result of his disability, he is entitled to receive educational accommodations and other services under federal law to ensure equal and nondiscriminatory access to the classroom. As a maximum-security adult prison, LSP does not have a school capable of providing those services and Defendants have provided no plan for doing so, despite being given multiple opportunities to provide information about their plan.

7.

Young people who are the target of Defendants' commitment to transfer youth to LSP, including Plaintiff Alex A., are anxious and in fear for their safety as a result of Defendants'

---

[1] Alex A. is pseudonym and files this suit by and through his mother, Molly Smith.

actions. Because Defendants' actions constitute ongoing, systemic violations of Plaintiffs' constitutional and statutory rights, Plaintiffs seek class-wide relief enjoining Defendants from transferring any youth, including Plaintiff Alex A., to LSP, and to prevent Defendants from incarcerating any youth adjudicated delinquent in LSP. In addition, as set forth in Plaintiff's request for emergency relief, Plaintiff requests that any youth who have already been transferred to LSP be transferred back to BCCY or another appropriate OJJ facility for youth.

## JURISDICTION AND VENUE

8.

This action arises under 42 U.S.C. § 1983, pursuant to the Fourteenth Amendment to the United States Constitution, and, for members of the putative subclass of youth with disabilities, under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 2201.

9.

Venue is proper pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to these claims occurred and continue to occur in this judicial district.

## PARTIES

10.

PLAINTIFF ALEX A. is a 17-year-old male currently under juvenile court jurisdiction. He is currently in the secure custody of OJJ at the Bridge City Correctional Center for Youth (BCCY), where he participates in the LAMOD program and is not involved with the JUMP program. Alex A. (Plaintiff) has been informed that he, along with approximately 24 other youth in BCCY, will be transferred to LSP imminently.

11.

While at BCCY, Plaintiff attends school every weekday for five hours, during which he takes social studies, math, English, and science. He has different teachers and changes classrooms for each subject. As a student with a disability, he receives classroom accommodations to help him access material in the classroom, including the use of a calculator and read aloud services. He also has the assistance of a special education teacher in his classes who helps to deliver his services. In addition to regular school, he is provided with opportunities to explore his hobbies by reading at the library and exploring books about sports and life in the city. He receives intensive counseling and treatment services at BCCY, including participating in group counseling three times a week for an hour, individual counseling for at least thirty minutes twice a week, and meeting every two weeks with a social worker to discuss skills like coping and anger management.

12.

Plaintiff is a child with a disability under Section 504 of the Rehabilitation Act. He has been diagnosed with a learning disability, and also has been prescribed medication to address post-traumatic stress disorder, to help him sleep, and to address nightmares.

13.

Plaintiff first learned that he and his peers would be moved to LSP while watching television news at BCCY. Since then, he has experienced significant mental and physical harm, including increased difficulty sleeping and extreme stress. During sleepless nights, he has started to pull out his hair. Plaintiff fears that he will be subjected to unsafe conditions and violence at LSP. Already, the Louisiana Department of Public Safety & Corrections (DOC) staff that have been brought into BCCY have begun using mace on Plaintiff and the other youth at the facility and he is afraid these actions will only intensify at LSP. Additionally, Plaintiff is concerned that

he will not receive the same level of treatment, counseling, and education he receives at BCCY. Like Plaintiff, his peers at BCCY are also terrified of being moved to LSP. Plaintiff has seen his peers break down and cry because of their fear of being moved to LSP.

14.

Staff members at OJJ have continually told Plaintiff that he will be imminently moved to LSP. When the decision to move BCCY youth to Angola was first announced, Plaintiff was informed by BCCY employees that he would be moved within a week or two of the announcement. Later, he was informed that he and his peers would be moved to LSP on August 15 or August 16. When that did not happen, staff members told him that he would be moved "any day now." Based on these representations, Plaintiff reasonably believes that the move is imminent and could happen at any time.

15.

Plaintiff filed an Emergency Grievance pursuant to OJJ's Administrative Remedy Procedure (ARP) on Tuesday, August 16, 2022. Despite the imminent nature of Plaintiff's anticipated move to LSP and the serious physical and psychological harm Plaintiff is already experiencing as a result, OJJ responded on August 18, 2022 by stating that Plaintiff is "not subject to any immediate risk of harm" and therefore his ARP would be reviewed "within the regular ARP time limits." OJJ's failure to properly treat Plaintiff's grievance as an emergency grievance that requires an expedited timeline has made the grievance process unavailable to Plaintiff. As a result, Plaintiff has exhausted all available administrative remedies and represents the Class in this action.

16.

Alex A. brings his lawsuit through his mother and next friend, Molly Smith, who is an adult resident of the state of Louisiana. Molly Smith brings this action on Alex A.'s behalf

pursuant to Fed. R. Civ. P. 17(c)(2). Ms. Smith is dedicated to the best interests of Alex A. and will advocate for those best interests in this action. Like her son, Ms. Smith is deeply concerned about Defendants' imminent plan to move youth to LSP. Ms. Smith is terrified that her son will be locked in a windowless cell for 24 hours a day, or that he will be exposed to adults who are incarcerated at LSP. She is also concerned that Plaintiff will be deprived of the education, medical and mental health treatment, and rehabilitative services he requires when he is moved to LSP.

17.

DEFENDANT GOVERNOR JON BEL EDWARDS (Defendant Edwards) is an adult resident of Louisiana. Defendant Edwards is the Governor of Louisiana and responsible for the faithful execution of the laws of Louisiana. In addition, he is responsible for appointments of the Secretary of the Louisiana Department of Public Safety & Corrections and Deputy Secretary of the Office of Juvenile Justice. Defendant Edwards is a final juvenile justice policymaker who at times delegates policymaking authority to other Defendants named in this lawsuit. At all pertinent times, Defendant Edwards was acting under color of law. Defendant Edwards is being sued in his official capacity as Governor of Louisiana.

18.

DEFENDANT WILLIAM SOMMERS (Defendant Sommers) is an adult resident of Louisiana. Defendant Sommers is the Deputy Secretary of the Office of Juvenile Justice and responsible for the development and execution of Louisiana's juvenile justice policy who at times delegates policymaking authority to others in the OJJ. At all pertinent times, Defendant Sommers was acting under color of law. Defendant Sommers is being sued in his official capacity as the Deputy Secretary of the Office of Juvenile Justice.

19.

Defendant JAMES M. LEBLANC (Defendant LeBlanc) is an adult resident of Louisiana. Defendant LeBlanc is the Secretary of the Louisiana Department of Public Safety & Corrections (DOC) and responsible for the development and execution of Louisiana's adult criminal justice policy who at times delegates policymaking authority to others in the DOC. At all pertinent times, Defendant LeBlanc was acting under color of law. Defendant LeBlanc is being sued in his official capacity as the Secretary of the Louisiana Department of Public Safety & Corrections.

**THE GRAVE RISK OF HARM POSED BY THE TRANSFER OF YOUTH
TO A NOTORIUS ADULT PRISON REQUIRES AN EMERGENCY RESPONSE**

20.

Decades of research demonstrates the serious harms youth experience when they are incarcerated in adult jails and prisons. Youth in adult facilities are more likely to commit suicide, more likely to suffer from sexual assault and trauma, and more likely to experience exacerbated mental health challenges. These experiences can lead to long-term consequences for the mental and physical health of vulnerable youth in the juvenile and criminal legal system, many of whom have experienced significant trauma that can impact their responses to their surroundings. As one former top OJJ official has explained, even just informing youth that they will be placed at an adult facility is likely to cause "mental anguish" for youth who have already experienced significant trauma in their lives.

21.

Youth in adult facilities are also more likely than their peers in juvenile facilities to be subjected to solitary confinement. Although adult prisons often rely on solitary confinement as a way to keep youth safe from incarcerated adults, it leads to serious and harmful consequences for vulnerable youth. Solitary confinement – even for only two days-- has been linked to increased

rates of suicide, depression, and anxiety. These harmful outcomes are amplified in youth. Indeed, youth in particular are especially vulnerable to severe mental and physical harm as a result of solitary confinement, including developmental delay and psychosis. When youth are placed in solitary confinement, they are frequently not given access to education and mental health programming, and they are not permitted to communicate with their families. As a result, they are not able to participate in the rehabilitative programming necessary for their growth and development.

22.

As a maximum-security prison notorious for unsafe and violent conditions, and its overuse of solitary confinement for the people incarcerated in LSP, youth transferred to LSP will experience these serious and well-documented harms, leading to grave consequences. Even short periods of time in adult facilities have been linked to high rates of suicide as well as serious paranoia, anxiety, and depression for youth. Because LSP is not equipped to provide education, mental health programming, or other forms of rehabilitation, youth moved to LSP will also be less likely to progress on their rehabilitative journey so that they can return home to their families healthy and whole.

### **DEFENDANTS MAY NOT RESPOND TO THE PROBLEMS IN LOUISIANA'S SECURE CARE SYSTEM BY PLACING YOUTH IN CONDITIONS THAT HEIGHTEN RISK OF HARM TO YOUTH**

23.

Defendants have experienced operational failings in Louisiana's secure care system for youth which have been well-documented. Defendants acknowledge that these operational deficiencies have caused a situation at BCCY in which they are not properly caring for youth in OJJ's custody there.

24.

Instead of identifying the failures and taking steps to remedy them, Defendants have announced an ill-thought-out and unplanned response, namely to transfer scores of vulnerable youth to a notorious adult prison.

25.

If Defendants cannot lawfully provide rehabilitative care to youth in their secure care facilities, they have other responses available.

26.

Among these responses, Defendants are able to review youth in secure care who may be eligible for release and facilitate their release to alternatives to secure detention in order to reduce facility population, thus allowing Defendants to provide appropriate care and services to the Plaintiff and Class members in danger of transfer to LSP.

**CLASS ACTION ALLEGATIONS**

27.

The Named Plaintiff brings this action on behalf of himself and all others similarly situated as a class action under Federal Rule of Civil Procedure 23(b)(2).

28.

The class that Plaintiff seeks to represent is defined as all current and future persons held at BCCY who might be transferred to LSP or another adult prison.

29.

Plaintiff also seeks to represent a subclass of all current and future persons with disabilities who are held at BCCY who might be transferred to LSP or another adult prison.

30.

This action is brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a).

31.

As of July 19, 2022, BCCY confined at least 25 young people, all of whom are eligible members of the Class. In addition, BCCY releases and accepts new youth on a weekly basis, meeting the numerosity requirement of Federal Rule of Civil Procedure 23(a). Plaintiff and other proposed subclass members are youth with disabilities within the meaning of Section 504 of the Rehabilitation Act. Given that up to 70% of youth in detention have educational or other disabilities, there is a sufficient number of proposed subclass members who are now or will be placed at BCCY to satisfy the numerosity requirement of Rule 23(a).

32.

Joinder is impracticable because the class members are numerous and shifting; the class is fluid due to the inherently transitory nature of BCCY's population; and the class members are incarcerated and low-income, which limits their ability to institute individual lawsuits. Certifying this class supports judicial economy.

33.

Common questions of law and fact exist as to all members of the class. The Named Plaintiff seeks common declarative and injunctive relief concerning whether Defendants' policies, practices, and procedures violate the constitutional and statutory rights of the class members. These common questions of fact and law include whether the transfer of youth adjudicated delinquent and not convicted of any crime may be transferred to LSP.

34.

Named Plaintiff's claims are typical of the class members' claims. The injuries that the Named Plaintiff has suffered due to Defendants' unconstitutional course of conduct are typical of the injuries suffered by the class. All class members seek the same declaratory and injunctive relief.

35.

The Named Plaintiff is an adequate representative of the class and the subclass because his interests in the vindication of the legal claims he raises are entirely aligned with the interests of the other class members, each of whom has the same constitutional (and, for the subclass, statutory) claims. There are no known conflicts of interest among members of the proposed class, and the interests of the Named Plaintiff does not conflict with those of the other class members.

36.

Plaintiff is represented by counsel with experience and success in litigating complex civil rights matters in federal court. The interests of the members of the class will be fairly and adequately protected by the Named Plaintiff and his attorneys.

37.

Because the putative class challenges Defendants' system as unconstitutional through declaratory and injunctive relief that would apply the same relief to every member of the class, certification under Rule 23(b)(2) is appropriate and necessary.

38.

A class action is the only practicable means by which the Named Plaintiff and class members can challenge the Defendants' unconstitutional actions and obtain the necessary immediate declaratory and injunctive relief sought for themselves and all other members of the

class.

## CLAIMS FOR RELIEF

### COUNT I (on behalf of Alex A. and the proposed class): Declaratory and Injunctive Relief for Violation of the Fourteenth Amendment (42 U.S.C. § 1983)

By transferring youth adjudicated delinquent to the Louisiana State Penitentiary at Angola, a maximum-security adult prison, Defendants violate their duty to provide conditions of reasonable health and safety to the youth it holds in its custody, and demonstrate deliberate indifference to a substantial risk of serious harm to Plaintiffs, in violation of Plaintiffs' rights under the Fourteenth Amendment to the U.S. Constitution. Defendants' actions are also punishment of Plaintiffs in violation of the Fourteenth Amendment.

### COUNT II (on behalf of Alex A. and the proposed subclass): Declaratory and Injunctive Relief for Violation of Section 504 of the Rehabilitation Act of 1973

By transferring youth adjudicated delinquent to the Louisiana State Penitentiary at Angola, a maximum-security adult prison, where required educational and rehabilitative services for Plaintiffs with disabilities cannot be provided, Defendants violate Plaintiffs' rights under Section 504 of the Rehabilitation Act of 1973.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Putative Class Members respectfully request that the Court:

A. Certify the proposed class and subclass;

B. Enter a declaratory judgment that Defendants are violating Named Plaintiff's and Class Members' constitutional rights (and, for Plaintiff and subclass members, federal statutory rights) by transferring them to a notoriously dangerous maximum security adult prison, LSP, without a plan to provide counseling, education, other

rehabilitative services, and sufficient safety from adult people incarcerated at LSP;

C. Issue a temporary restraining order, preliminary injunction, and permanent injunction, requiring Defendants to cease plans to transfer Plaintiff and Class Members to LSP, and to immediately release or transfer the Plaintiff and any Class Members who have already been moved to LSP back to one of OJJ's secure care facilities.

D. If a temporary restraining order is not issued on the basis of this Complaint and the motion papers alone, expedite review of the Complaint and Motion for Preliminary Injunction and Temporary Restraining Order, including oral argument, via telephone or videoconference if necessary;

E. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

F. Order such other and further relief as this Court deems just, proper, and equitable.

Respectfully submitted, this 19th day of August, 2022.

| | |
|---|---|
| /s/: *David J. Utter* | /s/: *Christopher J. Murell* |
| DAVID J. UTTER ** | CHRISTOPHER J. MURELL |
| Louisiana Bar Number: 23236 | Louisiana Bar Number: 32075 |
| WILLIAM R. CLAIBORNE *** | MURELL LAW FIRM |
| Georgia Bar Number: 126363 | 2831 St. Claude Avenue |
| *(Pro Hac Vice Application Forthcoming)* | New Orleans, Louisiana 70117 |
| THE CLAIBORNE FIRM, P.C. | (504) 717-1297 Telephone |
| 410 East Bay Street | (504) 233-6691 Facsimile |
| Savannah, Georgia 31401 | chris@murrell.law |
| (912) 236-9559 Telephone | |
| (912) 236-1884 Facsimile | |
| david@claibornefirm.com | |
| will@claibornefirm.com | |
| | |
| /s/: *Hector Linares* | /s/: *Ronald Haley* |
| HECTOR LINARES | RONALD HALEY |
| Louisiana Bar Number: 28857 | Louisiana Bar Number: 30900 |
| SARA GODCHAUX | HALEY & ASSOCIATES |
| Louisiana Bar Number: 34561 | 8211 Goodwood Blvd., Suite E |
| STUART H. SMITH LAW CLINIC | Baton Rouge, Louisiana 70806 |

LOYOLA UNIVERSITY NEW ORLEANS
COLLEGE OF LAW
7214 St. Charles Avenue, Box 902
New Orleans, Louisiana 70118
(504) 861-5560 Telephone
(504) 861-5440 Facsimile
halinare@loyno.edu
shgodcha@loyno.edu

/s/: *David Shanies*
DAVID SHANIES \*\*\*
New York Bar Number: 4471140
SHANIES LAW OFFICE
110 West 40th Street
Tenth Floor
New York, New York 10018
Tel (212) 951-1710
Fax (212) 951-1350
Cell (646) 515-2151
david@shanieslaw.com
*(Pro Hac Vice Application Forthcoming)*

(225) 755-9935 Telephone
(888) 900-9771 Facsimile
rhaley@ronaldhaleylawfirm.com

*\*\* Lead Counsel*
*\*\*\* Pro Hac Vice Application Forthcoming*

**ATTORNEYS FOR PLAINTIFF**