# EXHIBIT 8



**Louisiana Center for Children's Rights**

1100-B Milton Street
New Orleans, LA 70122

504-658-6860 office
504-658-6869 fax
laccr.org

August 3, 2022

William Sommers, Deputy Secretary
Office of Juvenile Justice
7919 Independence Blvd.
Baton Rouge, LA 70806
Bill.Sommers@la.gov

James M. LeBlanc, Secretary
Louisiana Department of Public Safety & Corrections
504 Mayflower Street
Baton Rouge, LA 70802
James.Leblanc@la.gov

Katherine Granier, Acting Superintendent
Special School District
2888 Brightside Dr.
Baton Rouge, LA 70820
Katherine.Granier@la.gov

Cade Brumley, Superintendent
Louisiana Department of Education
1201 North Third Street
Baton Rouge, LA 70802
Cade.Brumley@la.gov

CC:
Governor John Bel Edwards
Office of the Governor
900 N. Third Street, 4th Floor
Baton Rouge, LA 70804

  Re: **Demand for a Plan to Ensure Consistent and Legally Compliant General and Special Education for Children in the Custody of the Office of Juvenile Justice (OJJ) at Louisiana State Penitentiary at Angola (Angola)**

Dear Mr. Sommers, Mr. LeBlanc, Ms. Granier, and Mr. Brumley,

  We are writing to express our profound concern about the recent decision to move vulnerable students in OJJ's custody to the Louisiana State Penitentiary at Angola. This misguided and unprecedented move raises a number of serious questions under state and federal law, including the Juvenile Justice Delinquency Prevention Act and the Louisiana Constitution. It is also entirely inconsistent with decades of juvenile justice and public safety best practices,

years of investment in reform efforts, and our growing understanding of childhood development.[1]

In addition to these serious concerns, we write today about a frequently overlooked consequence of this plan: the impact on the general and special education rights of the approximately two dozen children in OJJ custody who are expected to be moved to Angola in the coming days. Angola is an adult maximum security prison that has no general or special education teachers and no infrastructure for providing a high school education to students with a range of needs. The decision to move children to this facility will result in serious educational neglect and deprivation, denying the most vulnerable children their legal right to receive consistent and seamless general and special education while in state custody.

For this reason, we are writing this letter to demand that OJJ, the Department of Corrections (DOC), the Special School District (SSD), and the Louisiana Department of Education (LDE) urgently provide a detailed written plan that contains specific information about how children at Angola will receive the general and special education guaranteed to them under state and federal law. Without precise and extensive planning and coordination between all four agencies, children who are moved to Angola will suffer serious academic regression and will lose the opportunity for growth and rehabilitation they desperately deserve. Not only do children in custody have a legal right to education, but education is also a critical part of their rehabilitation. It is the responsibility of OJJ, DOC, SSD, and LDE to ensure that these crucial services are delivered without interruption.

### About Us

We are attorneys and advocates for vulnerable students in Louisiana. In our respective practices, we defend every Louisiana student's right to receive developmentally appropriate, individualized, and supportive general and special education services.

The Louisiana Center for Children's Rights (LCCR) is a nonprofit law office that represents children who are charged with delinquency and status-based (FINS) offenses in New Orleans, as well as individuals who have been incarcerated at Angola since they were children. Using a holistic advocacy model, LCCR represents clients until their cases close, including during any time that they spend in custody. In addition to providing other supports to clients in OJJ custody, LCCR helps its clients request and obtain appropriate educational services, including special education services for students with disabilities. For clients at Angola, LCCR's team engages in education advocacy to help clients access programming. LCCR also engages in systemic advocacy and reform to improve the conditions of confinement and rehabilitation programming in OJJ facilities. Finally, through a partnership with the East Baton Rouge Office of the Public Defender, LCCR works with children charged with delinquency and FINS offenses in East Baton Rouge.

---

[1] As Glenn Holt, the deputy director of Arkansas' juvenile justice agency, recently expressed, "Moving kids to your adult maximum security prison campus, where you send adults to die, is the worst juvenile justice policy decision probably ever made in modern times." Erin Einhorn, *Teens in a Louisiana Juvenile Justice Facility Are Being Sent to Angola Prison. Experts Say It's Not Only Cruel, It Could Violate the Law*, NBC News, https://www.nbcnews.com/news/us-news/louisiana-sending-youth-angola-prison-rcna39150.

Louisiana Center for Children's Rights    2

       The Stuart H. Smith Law Clinic & Center for Social Justice (Loyola Law Clinic) is the pro bono legal clinic of the Loyola University New Orleans College of Law, a private, non-profit university. Through its Youth Justice section, the Loyola Law Clinic teaches student practitioners the substantive law, procedure, and practical lawyering skills needed to advocate for the special education rights of students with disabilities and to defend youth in delinquency proceedings. Student practitioners in the Youth Justice section represent parents of students with disabilities in the New Orleans area in disputes over eligibility, discipline, services, accommodations, education in the least restrictive environment, and other issues related to the student's right to a free and appropriate public education. Section students also defend youth accused of delinquency as conflict counsel in Orleans Parish Juvenile Court at all phases of proceedings, from first appearance through trial, disposition, and post-disposition. The Youth Justice section of the Loyola Law Clinic also engages in policy work on pressing reforms related to the juvenile legal system, educational rights, and other areas of youth justice.

       The Southern Poverty Law Center is a catalyst for racial justice in the South and beyond, working in partnership with communities to dismantle white supremacy, strengthen intersectional movements, and advance the human rights of all people.

### Legal Rights of Students in OJJ Custody

       Children do not forfeit their educational rights when they enter custody. Every student in Louisiana has the right to an education under state law, including the right to attend school through at least their 19th birthday.[2] Louisiana law requires all schools to provide at least 360 minutes of instructional time per day and 177 days of instruction per year.[3] State law makes no distinctions between students who attend schools in the community and those who are incarcerated. OJJ is responsible for providing educational services to students detained at secure care facilities.[4] Education is one of the most integral parts of any successful rehabilitative plan for a child in OJJ custody, and the Louisiana Children's Code explicitly requires OJJ to provide children with individualized and supportive education.[5] By statute, SSD provides special education and related services to students with disabilities in OJJ's secure care schools.[6] Under federal law, students in custody are guaranteed the right to continue to receive high school course credits and the opportunity to earn a diploma.[7] State agencies are forbidden from forcing students into high school equivalency programs as an alternative to a diploma program.[8]

       On top of the general education rights afforded to all children, children with disabilities have the legal right to special education and related services under the federal Individuals with Disabilities Education Act (IDEA) and associated federal and state regulations. Additionally, children with disabilities are protected against discrimination under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. The IDEA requires all public agencies responsible for providing education, including "[s]tate and local juvenile and adult correctional

---

[2] *See* La. R.S. § 17:221(B).
[3] La. R.S. § 17:154.1(A)(1).
[4] *See* La. R.S. §§ 17:10.9, 17:100.1.
[5] La. Ch. C. art. 905.1.
[6] *See* La. R.S. § 17:1945(C).
[7] *See, e.g.*, 20 U.S.C. § 6434(a)(2)(B).
[8] *Id.*

facilities,"[9] to provide a free appropriate public education (FAPE) to students with disabilities.[10] Every student with a qualifying disability under the IDEA must be provided with the special education and related services outlined in his or her Individualized Education Program (IEP).[11] The IDEA applies to children in both adult and juvenile prisons.[12] When a student transfers to a new school, including a school located in a detention facility or prison, the new school must continue to provide services that are "comparable" to those that the student previously received.[13] Although a new IEP meeting may be held to change a student's IEP, all changes must be based on the individual needs of the student,[14] and a public agency must provide prior written notice before it proposes to change the services outlined on a student's IEP.[15] Before changing a child's educational placement as a disciplinary consequence, agencies must also conduct manifestation determination review meetings to determine whether the child's behavior is a manifestation of his or her disability.[16]

Under federal law, agencies responsible for educating children have an affirmative obligation to identify, locate, and evaluate students with disabilities, also known as the agency's "child find" obligations.[17] The United States Department of Education has explicitly reminded states that the child find provisions of the IDEA apply to children in custody: "It is not sufficient to assume that a student who enters a correctional facility is not a student with a disability simply because he or she has not yet been identified as such."[18]

The IDEA imposes shared obligations on every public agency responsible for educating eligible children with disabilities.[19] As a result, both local education agencies and state education agencies must collaborate to ensure the continued provision of education to children in custody—whether they are in OJJ's existing juvenile facilities or the new facility at Angola. Although there are a number of exceptions to the IDEA's coverage for children who are *convicted* as adults, those exceptions do not apply to students who were adjudicated as juveniles and may be moved to an adult facility.[20] Ultimately, as the state education agency, the LDE bears responsibility for ensuring that all educational programs for children with disabilities comply with federal law.[21]

---

[9] 34 C.F.R. § 300.2(b)(1)(iv). *See also* Statement of Interest of the United State at 1, G.F. v. Contra Costa Cnty., 2915 U.S. Dist. LEXIS 159597 (N.D. Cal. 2015); Arne Duncan & Eric H. Holder, Letter to Chief State School Officers and State Attorneys General (June 9, 2014), https://www2.ed.gov/policy/elsec/guid/secletter/140609.html ("[W]ith regard to students with disabilities, the Individuals with Disabilities Education Act, Section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act of 1990 . . . obligate specific public agencies . . . to provide educational services to eligible youth in confinement.").
[10] *See, e.g.*, 20 U.S.C. § 1400(d)(1)(A).
[11] 20 U.S.C. § 1414(d).
[12] 34 C.F.R. § 300.2(b)(1)(iv).
[13] 34 C.F.R. § 300.323(e).
[14] *Id.*; 20 U.S.C. § 1414(d)(4).
[15] *See* 34 C.F.R. § 300.503(a).
[16] *See* 34 C.F.R. § 300.530(e).
[17] 20 U.S.C. § 1412(a)(3)(A); 34 C.F.R. § 300.111(a)(1)(i).
[18] Dear Colleague Letter, OSEP, 114 L.R.P. 51903 (Dec. 5, 2014), at 11.
[19] 34 C.F.R. § 300.2(b)(iv).
[20] 20 U.S.C. § 1414(d)(7).
[21] 34 C.F.R. § 300.149(a).

## The Educational Needs of Students in OJJ Secure Facilities

From our years of practice, we know that children with the greatest needs—particularly children with disabilities, children who have experienced trauma, and children with mental health and behavioral needs—are too frequently denied the education that can help them succeed in their communities. For children in state custody, the risks of educational neglect and deprivation are even higher: Without access to meaningful learning opportunities, children in custody are at risk of dropping out of school upon release, isolating them from the programs, services, and supportive adults that can help them build ties to their community and establish economic and life security.[22]

Over the past several years, we have watched as OJJ and the Special School District (SSD) have struggled to provide coordinated general and special education to students at OJJ's existing facilities. Together, OJJ and SSD are responsible for educating a population of students with an acute need for supportive and individualized education. Students in OJJ secure care facilities are disproportionately students of color, students with disabilities, and students who have experienced trauma.[23] Instead of providing these students with the supportive education they need, OJJ and SSD have frequently neglected their duties to ensure high-quality and individualized learning for all children in custody.

In the summer of 2021, OJJ secretly opened a new facility, the Acadiana Center for Youth at St. Martinville, with the stated goal of providing a specialized environment to children with serious behavioral and mental health needs.[24] Although many of the students placed at St. Martinville were students with disabilities, OJJ and SSD failed to provide either general or special education programming to children at St. Martinville for at least four months.[25] Before moving children to St. Martinville, OJJ failed to hire and train necessary staff, coordinate with SSD to ensure the seamless provision of special education services, or develop a school program of any kind.[26] In some cases, children lived at St. Martinville for several months without attending school for a single day.[27] OJJ and SSD only began providing educational services to children at St. Martinville after LCCR and the Loyola Law Clinic filed a complaint with the Louisiana Department of Education identifying numerous legal violations caused by OJJ and

---

[22] *See* Southern Educ. Found., *Just Learning: The Imperative to Transform Juvenile Justice Systems into Effective Educational Systems*, 18, 27 (2014), https://tinyurl.com/fvmpw286 (explaining that as many as two thirds of children who leave the juvenile justice system drop out of school).

[23] Nationally, up to 77% of students in the juvenile legal system have disabilities, and many students have experienced educational challenges—including grade retention, expulsion, and suspension—before entering the juvenile legal system. *See* OFF. JUV. JUST. & DELINQ. PREVENTION, *Education for Youth Under Formal Supervision of the Juvenile Justice System*, January 2019 OJJDP MODEL PROGRAMS GUIDE LITERATURE REVIEWS 1, 3-4, https://ojjdp.ojp.gov/sites/g/files/xyckuh176/files/media/document/education-for-youth-in-the-juvenile-justice-system.pdf. The vast majority of children in the juvenile justice system nationally, including in Louisiana, are Black. Joshua Rovner, *Disproportionate Minority Contact in the Juvenile Justice System*, SENT'G PROJECT (MAY 1, 2014), https://www.sentencingproject.org/publications/disproportionate-minority-contact-in-the-juvenile-justice-system/.

[24] Beth Schwartzapfel, Erin Einhorn, and Annie Waldman, *"No Light, No Nothing." Inside Louisiana's Harshest Juvenile Lockup*, The Marshall Project, https://www.themarshallproject.org/2022/03/10/no-light-no-nothing-inside-louisiana-s-harshest-juvenile-lockup.

[25] *Id.*; *see also See* Office of Juvenile Justice, *Youth Services Policy: Transitional Treatment Unit (TTU)*, 5 (2021), https://tinyurl.com/ex2wchw2.

[26] Schwartzapfel, *supra* note 24.

[27] *See Youth Services Policy*, *supra* note 25.

SSD's conduct.[28] This flagrant violation of law demonstrates OJJ's failure to prioritize or plan for the education of children in its facilities, as well as SSD's failure to ensure consistent special education services when children are moved.

Outside of this egregious example, OJJ and SSD have struggled to provide consistent schooling to students on a daily basis, both before and after the COVID-19 pandemic. Schools in OJJ's secure care facilities are frequently closed for days, weeks, and even months at a time—leaving students without the rehabilitation and treatment they need to return to their communities successfully.[29] Because school is canceled so frequently in OJJ facilities, SSD is often unable to provide the special education and related services outlined in students' IEPs, requiring SSD to provide hundreds of hours of compensatory education outside of the regular school day in order to remedy serious educational deprivations. The frequent educational gaps students experience in OJJ custody are further compounded by the national learning loss suffered by students across the country during the pandemic. The impact of pandemic-related school shutdowns has been most pronounced for students who are already disadvantaged, including students of color and students with disabilities.[30] OJJ has a legal obligation to provide rehabilitative programming to children in custody,[31] and education, as the "foundation for programming in most juvenile institutions," is "critical to rehabilitation for troubled youth."[32] By denying students in custody their right to receive general and special education, OJJ and SSD are also denying them the means to succeed upon release.

Although the Louisiana Department of Education (LDE) engages in regular monitoring of OJJ's schools, we are concerned that these monitoring efforts are insufficient to safeguard the educational rights of children in custody. LDE was not aware that OJJ opened St. Martinville without providing education to children for many months,[33] and the educational disruptions described above have persisted despite regular LDE monitoring.

As these experiences demonstrate, the schools at OJJ's existing facilities are experiencing a moment of crisis: they are seriously understaffed;[34] they rank at the very bottom of all schools in the state on school performance metrics;[35] and they are failing to provide students with the

---

[28] Schwartzapfel, *supra* note 24.

[29] *See* Eleanor Tabone, *Incarcerated Youth Aren't Getting the Education They Need to Live Outside Jail, Experts Worry*, WWLTV, https://www.wwltv.com/article/news/crime/education-experts-fear-incarcerated-youth-arent-receiving-the-required-education/289-072c75b1-d9c1-403e-87fa-c9182ba701ca.

[30] *See* United States Dep't of Eudc., *Education in a Pandemic: The Disparate Impacts of COVID-19 on America's Students*, 26 (2021), https://tinyurl.com/ypjppeca.

[31] *See* La. R.S. § 15:906(B).

[32] *The case for quality education in juvenile correctional facilities*, Nat'l Center on Educ., Disability, and Juv. Just., http://www.edjj.org/focus/education/#:~:text=Because%20education%20is%20critical%20to%20rehabilitation%20for%20troubled,prevention%20of%20delinquency%20and%20the%20reduction%20of%20recidivism..

[33] Schwartzapfel, *supra* note 24.

[34] *See, e.g.*, Kenny Kuhn, *Governor Edwards to Send State Police to Help Staffing Shortage at Two Troubled Youth Centers*, WWL Radio New Orleans, https://www.msn.com/en-us/news/us/governor-edwards-to-send-state-police-to-help-staffing-shortage-at-two-troubled-youth-centers/ar-AAYBgsG.

[35] *See Riverside Alternative High School Report Card: Student Breakdown*, LA. DEP'T OF EDUC., https://louisianaschools.com/schools/A02002/academic-performance/breakdown_student_groups (last visited June 30, 2022); *Central Southwest Alternative High School Report Card: Student Breakdown*, LA. DEP'T OF EDUC., https://louisianaschools.com/schools/A02004/academic-performance/breakdown_student_groups (last visited June 30, 2022); *Southside Alternative High School Report Card: Student Breakdown*, LA. DEP'T OF EDUC.,

credits they need to enroll in schools in their communities upon release.[36] Confronted with these serious challenges, OJJ, SSD, and LDE should urgently act to make lasting, meaningful improvements to OJJ's existing schools, *not* open a new facility with limited staff and no infrastructure. Like OJJ, the Department of Corrections is facing grave staffing shortages that will affect its ability to assist OJJ with developing a functioning and compliant school at Angola.[37] At Angola, there are currently long waitlists for students to be accepted into school to prepare for high school equivalency exams. Due to frequent COVID outbreaks, school is often cancelled, and there is no clear process for conducting educational evaluations to determine a student's needs or disabilities. Given these grave realities on the ground, we have serious doubts about the ability of OJJ, DOC, SSD, and LDE to implement a legally-compliant school at Angola.

## Demands

Although Governor Edwards has stated that children will continue to receive all necessary educational services at Angola, conclusory assurances without detail or substance are simply not enough. As identified above, the students in OJJ custody are at serious risk of educational deprivation if they lose access to the general and special education services and accommodations that will help them grow. These vital rights must be protected, and OJJ, DOC, SSD, and LDE must urgently provide detailed information about how they will ensure continued educational programming to the children who will be moved to Angola.

We are demanding that OJJ, DOC, SSD, and LDE provide us with the following information by Wednesday, August 10, including a detailed accounting of how each agency will ensure the protection of the educational rights guaranteed to students in OJJ custody.

**OJJ:** Provide a detailed plan regarding the provision of education to students who are expected to be moved to Angola, consisting of information pertaining to:
- The facility that will be used to conduct school, including but not limited to the classroom structure, the materials to be utilized, and where the materials will be obtained.
- The schedule and structure of the school day, including a school calendar for the 2022-2023 school year, a list of courses, the hours of each school day, and the days of the week during which students will attend school.
- A protocol for how students will be transported from their living spaces to the school each day, including the primary persons responsible for transportation.
- Information regarding all school staff, including the names and licenses of each general education teacher, special education teacher, and related service provider, as well as resumes and educational experience for each provider.

---

https://louisianaschools.com/schools/A02003/academic-performance/breakdown_student_groups (last visited June 30, 2022).

[36] *See* Southern Educ. Found., *Just Learning: The Imperative to Transform Juvenile Justice Systems into Effective Educational Systems* (2014), https://tinyurl.com/fvmpw286 (finding that just 8% of students in juvenile prisons in Louisiana earn high school course credits during their time in custody).

[37] Paul Braun, *Low Wages, Poor Working Conditions Have Left State Prisons Understaffed, Officials Say*, WWNO, https://www.wwno.org/2022-03-08/low-wages-poor-working-conditions-have-left-state-prisons-understaffed-officials-say.

- Information regarding the training and onboarding process for all school staff members who will be educating students at Angola.
- Personnel information regarding non-school staff members who will be present during the school day, including security professionals and others who will transport students to school and remain with them during the day to ensure safety and uninterrupted schooling.
- For any personnel who will be working with both students in OJJ custody and adults who are incarcerated at Angola, a detailed explanation of how these individuals will be trained and how OJJ will ensure complete sight and sound separation between children and adults at Angola.
- The curricula to be utilized to ensure consistent education and continuity in each student's schedule and course assignments.
- Communications and plans between OJJ and SSD regarding the needs of students with disabilities who have either IEPs or plans under Section 504 of the Rehabilitation Act, as well as detailed information regarding how OJJ and SSD will work together to ensure the consistent and seamless provision of special education and related services at Angola immediately after children are moved to their new location.
- Detailed information regarding how OJJ will ensure consistent school even in the face of staff shortages and potential COVID disruptions.
- Detailed information about the record-sharing protocol to ensure that all necessary general and special education records are shared between each student's current school and their school at Angola, as well as their future school in the community.
- Information pertaining to the child find process at Angola, including the staff who will be responsible for initiating and leading meetings to discuss students who are suspected of having a disability and ensure evaluations take place as needed.

**DOC:** Provide a detailed plan explaining how DOC will assist OJJ with every aspect of the operation of the school as outlined above, including:
- A plan to ensure that appropriate and sufficient facilities are designated for school for children in OJJ custody at Angola, including group-based classrooms, small rooms for small-group instruction, and spaces to ensure the delivery of related services, including counseling and other forms of therapy.
- Information regarding the DOC staff members who will be assisting OJJ with the operation of the school at Angola, including their credentials, licenses, and a training protocol to ensure that they have the necessary experience and understanding to work with children.
- Communications and plans between DOC and other responsible public agencies explaining how responsibility will be divided and shared between each agency.

**SSD:** Provide information regarding the plan for delivering special education and related services to students at Angola, including:
- Information regarding the special education instructors and related service providers who will deliver all services to students.
- A detailed needs assessment of the students who will be moved to Angola, including the number of special education and related services minutes each student requires per week.

- A schedule for the delivery of all necessary services, including the people responsible for delivery, location of delivery, and a contingency plan in the event that the services must be rescheduled.
- A plan for ensuring that students who do not receive services are evaluated for and provided with compensatory education as needed on a timely basis.

**LDE:** Provide information regarding how LDE will increase monitoring of the education program provided to children at Angola to ensure that students receive all required services, including:
- A protocol for monitoring and oversight activities.
- A schedule for site visits and a list of activities to be conducted at each site visit.
- Information regarding the people responsible for conducting evaluation and monitoring.
- Detailed information regarding the interventions that will be utilized in the event that OJJ, SSD, and DOC fail to comply with education laws.

The concerns outlined above are both serious and ongoing, and they require urgent action on the part of all agencies responsible for providing education to vulnerable children at Angola. If children at the deepest end of the juvenile legal system—those in state custody—are to have the opportunity to succeed in their communities and gain productive and meaningful employment upon release, they must have access to education. We thank you for your attention to this critical matter.

Respectfully Submitted,

**Allison Zimmer**
Skadden Fellow, Staff Attorney
Louisiana Center for Children's Rights

**Sara Godchaux**
Staff Attorney
Loyola University New Orleans College of Law

**Hector Linares**
Edward J. Womac, Jr. Distinguished Clinic Professor
Director of Skills & Experiential Learning
Loyola University New Orleans College of Law

Lauren Winkler
Senior Staff Attorney
Southern Poverty Law Center

Elizabeth Jones
Civil Legal Services Staff Attorney
Louisiana Center for Children's Rights

| | |
|---|---|
| **From:** | Angelic Keller |
| **To:** | Allison Zimmer; Sara Godchaux; Hector Linares; "lauren.winkler@splcenter.org"; Elizabeth Jones |
| **Cc:** | William Sommers; Curtis Nelson; Revettea Woods; James Leblanc; Katherine Granier; Cade Brumley (DOE); Parris Taylor; Ty Manieri; Jonathan Vining; Angela Jacobs Bridgewater |
| **Subject:** | Re: Civil Demand Letter- LCCR, SPLC, and the Loyola Law Clinic Seek Information about Education for Children in OJJ Custody at Angola |
| **Date:** | Thursday, August 4, 2022 10:19:42 AM |

Good morning,

OJJ is in the process of meeting with all necessary staff and agencies to develop a comprehensive plan for providing services to youth who will be placed at the Bridge City Center for Youth, West Feliciana Campus at the Louisiana State Penitentiary. Youth will not be moved until all services are in place. More information will be provided once it is finalized.

Respectfully,
Angelic S. Keller
General Counsel
Angelic.Keller@la.gov
Office of Juvenile Justice
7919 Independence Blvd.
Baton Rouge, LA 70806
Phone: (225) 287-7976
Fax: (225) 287- 7901

**CONFIDENTIALITY NOTICE:**
This e-mail message and all attachments transmitted with it may contain legal, confidential, and/or privileged information intended solely for the use of this individual or entity named above. If you are not the intended recipient of this e-mail, you are hereby notified that you should not read this e-mail and that any documentation, disclosure, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately provide notification by replying via e-mail and then delete this message.

**Please be cautious**
This email was sent outside of your organization