# EXHIBIT 9

August 2, 2022

Governor John Bel Edwards
Office of the Governor
900 N. Third Street, 4th Floor
Baton Rouge, LA 70804

Chief Justice John Weimer
Louisiana Supreme Court
400 Royal Street
New Orleans, LA 70130

Dear Governor Edwards and Chief Justice Weimer,

We are writing as concerned community members and advocates to express our outrage at the decision to move approximately two dozen youth currently in the custody of the Office of Juvenile Justice, and housed at the Bridge City Center for Youth, to the Louisiana State Penitentiary at Angola. This decision, which Governor Edwards announced on Tuesday, July 19th, flies in the face of laws and well-established best practices that are designed to protect incarcerated children and promote their rehabilitation. This plan is harmful, cannot be done safely or legally, and it will do nothing to address the ongoing, serious problems in the OJJ facilities.

When a child is placed in the custody of the state, it is the state's responsibility to provide "care, guidance, and control that will be conducive to his welfare and...nearly as possible equivalent to that which the parents should have given him."[1] It is the state's responsibility to keep the youth in its custody in a *safe* and secure environment, and if they fail to do so, it is the state who should be held accountable, not the young people in custody. The state has clearly failed to meet this standard, and by sending children – some possibly as young as thirteen – to Angola, it is completely abandoning it. This is unacceptable and we demand better.

Angola is an unacceptable place for children. Not only will children fail to receive the rehabilitation they need at Angola—including mental health services, education, and other treatment—but they will be placed at serious risk of harm if they are moved to an adult facility. Years of data demonstrate that children who are incarcerated in adult prisons are more likely than their peers to commit suicide, more likely to face sexual assault and trauma, and more likely to experience exacerbated mental health challenges.[2] This is why every juvenile justice expert agrees that this decision is a horrible mistake that will cause immense danger for the children in OJJ's custody. As Glenn Holt, the deputy director of Arkansas' juvenile justice agency, said "Moving

---

[1] La. Ch. Code Article 801
[2] *See* National Prison Rape Elimination Commission, "National Prison Rape Elimination Commission Report" (2009); Campaign for Youth Justice, "Jailing Juveniles: The Dangers of Incarcerating Youth in Adult Jails in America" (Nov. 2007).

kids to your adult maximum security prison campus, where you send adults to die, is the worst juvenile justice policy decision probably ever made in modern times."[3]

While Governor Edwards and Angola officials claim that incarcerated youth will be completely separated from adults, as required by federal law, this is an impossible reality. Angola prison's daily functions are carried out by incarcerated adults—including, but not limited to, maintenance services, food preparation and grounds keeping. Furthermore, youth cannot be contained to a single building during the entire course of their time at Angola. If a young person gets sick or injured, they will need to go to the infirmary, where they will certainly encounter adults who are incarcerated at the facility, in violation of federal law. If they ever leave the building they are held in for any reason, including outdoor recreation, they will encounter adults who are incarcerated at Angola. And if they cannot leave the building they are confined in, their incarceration will amount to 24/7 solitary confinement.

The state must ensure youth are held in the safe, secure, rehabilitative conditions that they are legally required to provide, or young people should not be held in state custody at all. To that end, we make the following demands:

**Of the Governor and the Office of Juvenile Justice:**

1. Immediately halt any plans to send youth to adult prisons, specifically Angola State Prison and Jetson Correctional Center. Housing youth in adult prisons is in violation of children's human rights and safety.

2. Immediately initiate a depopulation strategy at all facilities:

    a. File motions in court for early release for any and all youth who meet the following criteria:

        i. Currently held for offenses that are not crimes of violence; or

        ii. Who has served more than 50% of their sentence or adjudicated disposition; or

        iii. Who has less than one year remaining on their sentence or adjudicated disposition.

    b. Any youth meeting the above criteria who is denied early release should be stepped down to a non-secure placement.

    c. Additionally identify youth outside of the above criteria who can be immediately stepped down to non-secure facilities.

    d. Instruct OJJ parole and probation officers to cease any and all requests for revocation of parole or probation in the event of parole or probation violations.

---

[3] Erin Einhorn, *Teens in a Louisiana Juvenile Justice Facility Are Being Sent to Angola Prison. Experts Say It's Not Only Cruel, It Could Violate the Law*, NBC News, Louisiana is sending youth to Angola prison, which experts say could violate federal law (nbcnews.com).

- e. Do not place any young person in an OJJ secure care facility unless required by law.[4]
- f. Close the facility in St. Martinville, which is not suitable for children and lacks any therapeutic qualities.

3. Commit to banning authorized use of force, including pepper spray and tasers.

4. Implement and comply with Act 496, which bans the use of solitary confinement for children except in very limited circumstances.

5. Invest in and ensure access to education and holistic rehabilitative services for children rather than increasingly harsh punitive measures that escalate state violence against youth. This must include returning to critical rehabilitative practices that were eliminated or dramatically curtailed during the pandemic, such as increasing family engagement, visitation, and phone calls.

   - a. Take any and all necessary steps to increase the opportunities for visitation, including providing transportation if needed.
   - b. Eliminate the user-pay phone system, allowing youth unlimited free phone calls to family members.
   - c. Immediately resume the furlough program, including the use of extended furloughs, and expand its internal policies with regards to eligibility criteria to ensure furloughs can be part of the rehabilitative process early and often in a youth's disposition.
   - d. Resume the supervised escort program, which allowed children to leave campus with family members while supervised by OJJ staff.

6. Commission an independent investigation of the Office of Juvenile Justice's failures to keep children safe in their custody.

7. Participate in a special meeting of the Juvenile Justice Reform Act Implementation Commission (JJRAIC) to review alternative options and hear from youth justice experts, and immediately implement recommendations adopted by the Commission.

---

[4] Under Louisiana law, OJJ has the authority to determine the appropriate placement for a child in its custody. La Ch. Code Article 908 ("Nothwithstanding any other provisions of law to the contrary, the Department of Public Safety and Corrections, office of juvenile justice, shall have sole authority over the placement, care, treatment, or any other considerations deemed necessary from the resources that are available for children judicially committed to the department."); La. Rev. Stat. § 15:901(D)(1) ("Upon commitment to the Department of Public Safety and Corrections, *the department shall have sole custody of the child* and, except as provided for in Children's Code Article 897.1, *shall determine the child's placement*, care, and treatment, and the expenditures to be made therefor, through appropriate examinations, tests, or evaluations conducted under the supervision of the department."). "[T]he legislature has bestowed upon the Department of Corrections [OJJ] the plenary power to make decisions with respect to those juveniles committed to its custody." (*State ex rel. C.M.*, 2014-0088 (La. App. 4 Cir 05/28/14), 141 So. 3d 921, 923.)

8. Commit to bringing in national experts provided by the JJRAIC Chair and Vice Chair to help assess our needs and develop an appropriate plan of action.

9. Recommit to the evidence-based models that support youth rehabilitation, education, and well-being, such as the Missouri Model.

10. Place a moratorium on OJJ expenditures for the building or renovation of new, existing, or repurposed facilities.

**Of the Courts:**

1. Issue guidance to juvenile judges regarding release decisions. It is imperative that judges considering motions to modify take into account whether there is any rehabilitative value of continued custody in OJJ secure care facilities. When ruling on motions to modify, judges must consider OJJ's record of failing to provide sufficient rehabilitation and treatment to children currently in custody.

2. The state Supreme Court should issue a statement which makes clear that placing children who are under the jurisdiction of the juvenile court in an adult prison contravenes the legal purpose of Louisiana's juvenile justice system and is a clear violation of Article V, Section 19 of the state constitution[5], in addition to the federal Juvenile Justice and Delinquency Prevention Act (JJDPA).[6]

3. In light of the substantial evidence that youth confined in OJJ facilities are not receiving the education and other services they are entitled to, and OJJ's ongoing duty to rehabilitate the children, we also urge the Supreme Court to issue a directive to judges exercising juvenile jurisdiction stating that youth should not be held in secure custody if OJJ cannot fulfill its legal obligation to keep youth safe and provide rehabilitation. This includes ordering their release if they are moved to an adult prison instead of remaining at a facility specifically dedicated to youth.

---

[5] Article V, § 19 of the Louisiana Constitution requires "special juvenile procedures" for children who are processed through the juvenile court system. This provision has been interpreted to require a "general rule of 'non-criminal' treatment of juveniles." In re C.B., 708 So. 2d 391, 396 (La. 1998). In In re C.B., the Louisiana Supreme Court held that children who are adjudicated through the juvenile system and are not granted the full scope of due process protections guaranteed to adults—including the right to a jury trial—must be given "non-criminal" treatment. Id. at 399. As a result, the Court held that placing children who have been deprived of those due process rights in an adult penal facility violates the Louisiana Constitution.

The proposal to place children who have been adjudicated delinquent at Angola, an adult facility where adult people are incarcerated and required to perform hard labor, violates the rule laid out in In re C.B. and therefore violates the Louisiana Constitution. Angola is a facility for adults and therefore is used to incarcerate adults who have been granted the full scope of due process protections. The state cannot avoid this conclusion by creating a separate wing in the facility—no matter what the state does, Angola is an adult prison that is inappropriate for children and violates their constitutional rights.

[6] In addition to mandating "sight or sound" contact restrictions for kids, including those who have been adjudicated, the JJPDA states broadly that "no juvenile will be detained or confined in any jail or lockup for adults." 34 U.S.C. § 11133(a)(13). Although there are narrow exceptions for children who are awaiting processing or initial court appearances, they do not apply to kids who have already been adjudicated, like the children who the state plans to move from Bridge City.

4. As above, judges exercising juvenile court jurisdiction should immediately order the release of any child in OJJ custody who is at risk of being moved to Angola, if OJJ does not agree to halt such transfer.

5. Judges exercising juvenile court jurisdiction should also grant any and all sentence modification requests, as well as approve any recommendations for long-term or temporary furloughs or transfers to independent living facilities. Though it is OJJ's responsibility to recommend furloughs and transfers of custody, judges should encourage OJJ to use those mechanisms and grant these recommendations across the board. Taking these steps is imperative to keeping both the children and staff members safe by increasing rehabilitative services and depopulating the OJJ facilities.

**No Children in Angola**

No matter what challenges the Office of Juvenile Justice may be experiencing regarding the safety and security of its facilities, sending children to adult prison cannot and must not be the answer.

Our youth are the ones bearing the burden and the blame of the state's failures to implement the solution we know works: a holistic model of care that is focused on prevention and rehabilitation.

Punitive approaches that expose youth to additional violence and abuse are proven to be ineffective and harmful. Each day that our youth are held in these nightmarish conditions is not only a waste of money, but a step backward in the fight for racial justice, and it does not lead to public safety.

Rather than sending our children to an adult prison, the state must work to correct the problems in the OJJ facilities and provide the safe, rehabilitative, and therapeutic services that our children need and our communities deserve.

Signed,

Daughters Beyond Incarceration

Disability Rights of Louisiana

East Baton Rouge Parish Prison Reform Coalition

Families and Friends of Louisiana's Incarcerated Children

Jesuit Social Research Institute

Justice and Accountability Center

Juvenile Law Center

Louisiana Association of Criminal Defense Lawyers

Louisiana Center for Children's Rights

Louisiana Partnership for Children and Families

Louisiana Progress

Louisiana Stop Solitary Coalition

Louisiana Survivors for Reform

Louisiana Trans Advocates

Loyola University Stuart H. Smith Law Clinic

Orleans Public Defenders

Power Coalition for Equity and Justice

Promise of Justice Initiative

PREACH

ResourceFull Consulting

Roots of Renewal

SPLC Action Fund

St. Charles Center for Faith + Action

The Sentencing Project

Ubuntu Village NOLA

Unlock the Box Campaign

Vera Institute of Justice

Allison Trigg, Ph.D., Clinical Psychologist

Angela Keys, Ph.D., Applied Developmental Psychologist

Anna Long, Ph.D., L.P., Associate Professor of Psychology, LSU

Bart Lubow, resident of Lake Charles, former director of the Juvenile Justice Strategy Group, Annie E. Casey Foundation

Brendan Turner, LMSW, Social Worker

Britain Forsyth, Organizing Manager, People's DA Coalition

Charles Zeanah, Jr., MD, Child Psychiatrist

Devi Murphy, Ph.D., Licensed Psychologist

Flozell Daniels, CEO, Foundation for Louisiana, Gov. Edwards's appointee on the Justice Reinvestment Task Force

Hunter Calcione, Resident of Pearl River, Youth Formerly Incarcerated at Bridge City

Jack Harrison, Director, Juvenile Defense Clinic, LSU Law Center

Julianna Finelli, MD, Child Psychiatrist

Kristen Pearson, Ph.D., NCSP. Clinical and School Psychologist

Meeta Prakah, MD, Psychiatrist

Monica Stevens, Ph.D., Licensed Clinical Psychologist, Assistant Professor of Psychiatry, Tulane School of Medicine

Myo Myint, MD, FAAP, Child & Adult Psychiatrist, Pediatrician

Nicole McGill, Senior Trainer, Louisiana Native, Center for Resilience

Silai Mirzoy, MD, Child Psychiatrist

Stacy Drury, MD, Ph.D., Child and Adolescent Psychiatrist, Pediatrician

Vininder Khunkhun, MD, FAAP, Child & Adult Psychiatrist, Pediatrician

Wan Qi Kong, Resident of New Orleans