**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

ALEX A., by and through his guardian,
MOLLY SMITH, individually and on behalf
of all others similarly situated

CIVIL ACTION

VERSUS

22-573-SDD-RLB

GOVERNOR JON BEL EDWARDS,
in his official capacity as Governor of Louisiana;
WILLIAM SOMMERS, in his official
capacity as Deputy Secretary of the
Office of Juvenile Justice,
JAMES M. LEBLANC, in his official capacity
as Secretary of the Louisiana Department
of Public Safety & Corrections

**RULING**

This matter is before the Court on the Plaintiff's *Motion to Interview Youth in Custody at BCCY*,[1] wherein Plaintiff seeks disclosure of the names of putative class members as well as the name and contact information of the youths' parents or guardians. Defendants have filed a *Memorandum of Law on Confidentiality or Youth Identities and Case Records.*[2]  Although the Court did order the parties to brief the issue of proper authorization for the disclosure of confidential juvenile records, upon further consideration, the Court determines that Plaintiff's motion is premature.

Plaintiff moves the Court to Order the Defendants "to provide the names of putative class members, youth held in custody at the Bridge City Center for Youth ("BCCY"), as well as the name and contact information of the youths' parents in order to facilitate

---

[1] Rec. Doc. No. 20.
[2] Rec. Doc. No. 18.

discovery in this matter in advance of the Preliminary Injunction Hearing scheduled for September 6 and 7, 2022."[3]  Plaintiff submits that "this information will aid in the discovery process."[4]  Recognizing the confidentiality of the information sought, Plaintiff suggests that the disclosure be subject to protective order.  In addition to disclosure of the identities of the putative class members and their guardians, Plaintiff seeks disclosure of the "medical, mental health, educational, and rehabilitative" records of the putative class members, which Plaintiff submits is "crucial to the determination of whether they will suffer irreparable harm and have their constitutional rights to due process violated if transferred to the proposed site at the Louisiana State Penitentiary at Angola."[5]

The Defendants maintain that juveniles in the custody of the Office of Juvenile Justice ("OJJ") "are entitled to privacy with respect to their Case Records, [and] Defendants are bound by multiple state and federal laws mandating confidentiality."[6] There is no dispute that both the juvenile's identity and the case records are subject to confidentiality.

Defendants point out that there is no certified class in this matter. There is one named Plaintiff, Alex A., and "OJJ may not release the Case Records of unrepresented Youth to Plaintiff's counsel absent a valid authorization by a parent or notice of representation."[7]

---

[3] Rec. Doc. No. 20-1, p. 1
[4] *Id.*
[5] *Id.*
[6] Rec. Doc. No. 18, p. 3. "OJJ maintains a case record for each Youth in its custody, which includes information about the Youth's juvenile court proceedings as well as information on the Youth's condition, housing, supervision, treatment, rehabilitation program, education, health, discipline, transition planning, risk assessments, and status reports." *Id.*
[7] *Id*. at p. 5.

Defendants explain that "OJJ will determine which Youth are subject to transfer based upon classification decisions; the Youth being transferred will be those with substantial behavioral problems or a history or high risk of escape. OJJ has not yet determined with certainty which Youth will be transferred and at what times."[8]

The Court finds that identities of the juveniles in the custody of the OJJ and their case records are confidential. On this point, there is no dispute. The parties spend considerable time addressing whether and by what authority this Court can Order the disclosure of the identities of the juveniles, their guardians, and the case records. However, the Court must first examine whether the identities and the case records are relevant for purposes of the preliminary injunction hearing. A party may seek discovery of information that is "relevant to any party's claim or defense."[9] For discovery purposes, "[r]elevant information encompasses 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"[10] "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[11] Alex A., for himself and the proposed class, seeks Declaratory and Injunctive Relief for Violation of the Fourteenth Amendment (42 U.S.C. § 1983)[12] and

---

[8] *Id.* at p. 6.
[9] FRCP 26(b).
[10] *Merrill v. Waffle House, Inc.,* 227 F.R.D. 467, 470 (N.D.Tex.,2005)(quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)).
[11] *Merrill,* 227 F.R.D. at 470.
[12] "By transferring youth adjudicated delinquent to the Louisiana State Penitentiary at Angola, a maximum-security adult prison, Defendants violate their duty to provide conditions of reasonable health and safety to the youth it holds in its custody, and demonstrate deliberate indifference to a substantial risk of serious harm to Plaintiffs, in violation of Plaintiffs' rights under the Fourteenth Amendment to the U.S. Constitution. Defendants' actions are also punishment of Plaintiffs in violation of the Fourteenth Amendment." Complaint, Rec. Doc. No. 1, p. 13.

Declaratory and Injunctive Relief for Violation of Section 504 of the Rehabilitation Act of 1973.[13]

Even under the broadly construed lens of relevance in the discovery context, the identities and case records of the putative class members are irrelevant at this stage of the proceedings. The Court has discretion to conduct a preliminary injunction hearing prior to addressing the issue of class certification.[14] The Complaint alleges that Alex A. has suffered mental and emotional harm by the threat of the transfer[15] and that the harm of a transfer would cause be irreparable harm.[16]  The Court fails to see the relevance of each independent juvenile's case record and identity to Plaintiff's burden of proof at the preliminary injunction hearing.[17]  The primary issues to be determined at the preliminary injunction hearing are: whether the Defendants have the legal authority to transfer juveniles to a facility housed on the campus of an adult prison and whether the Plan for transfer and detention satisfies the statutory and constitutional rights of all juveniles subject to transfer, which necessarily includes the provision of all services and programs to which juveniles are entitled, access to constitutional medical care, and ADA compliance.  Whether Defendants have the authority to transfer juveniles and whether the Plan adequately protects the juveniles' statutory and constitutional rights while also

---

[13] *Id.* ("By transferring youth adjudicated delinquent to the Louisiana State Penitentiary at Angola, a maximum-security adult prison, where required educational and rehabilitative services for Plaintiffs with disabilities cannot be provided, Defendants violate Plaintiffs' rights under Section 504 of the Rehabilitation Act of 1973.").

[14] *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 433 (6th Cir. 2012) ("Simply put, there is nothing improper about a preliminary injunction preceding a ruling on class certification."); *Yang v. Kellner*, 458 F. Supp. 3d 199, 218 n.5 (S.D. N.Y. 2020), *aff'd,* 805 Fed. Appx. 63 (2d Cir. 2020), opinion issued, 960 F.3d 119 (2d Cir. 2020) and *aff'd*, 960 F.3d 119 (2d Cir. 2020) (citing Newberg on Class Actions) ("The Court need not formally certify a class in order to issue the requested preliminary relief."); *Nellson v. Barnhart*, 2020 WL 3000961, *5 n.3 (D. Colo. 2020) (citing Newberg on Class Actions) ("[I]t is not necessary to resolve class certification before issuing preliminary injunctive relief.").

[15] Complaint, Rec. Doc. No. 1, ¶ 7.

[16] *Id.* at ¶ 20.

providing for their required services, programs, and healthcare is not dependent on every potential transferee's specific medical, mental, and educational needs.

Should Plaintiff satisfy this burden and a preliminary injunction is issued, the Court has the discretion to grant broad relief that would apply to any putative class members. Notably, "a district court may, in its discretion, award appropriate classwide injunctive relief prior to a formal ruling on the class certification issue based upon either a conditional certification of the class or its general equity powers."[18] The Court may "order a broad preliminary injunction, without a formal class ruling, under its general equity powers. The lack of formal class certification does not create an obstacle to classwide preliminary injunctive relief when activities of the defendant are directed generally against a class of persons."[19]

Accordingly, the Court denies, without prejudice, Plaintiff's *Motion to Interview Youth in Custody at BCCY*[20] and any requests for disclosure of confidential juvenile case records and contact information.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 26th day of August, 2022.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[18] *Rodriguez v. Providence Community Corrections, Inc.*, 155 F. Supp. 3d 758, 767 (M.D. Tenn. 2015) (citing Newberg on Class Actions)( (quoting *Thomas v. Johnston*, 557 F. Supp. 879, 917 (W.D. Tex. 1983)).
[19] *Lee v. Orr*, 2013 WL 6490577, *2 (N.D. Ill. 2013)( (quoting *Illinois League of Advocates for the Developmentally, Disabled v. Illinois Dept. of Human Services*, 2013 WL 3287145, *3 (N.D. Ill. 2013).
[20] Rec. Doc. No. 20.