**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith, individually and on behalf of all others similarly situated,<br><br><br>Plaintiff,<br><br>v.<br><br>GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,<br><br>Defendants. | Civil Action No. 3:22-cv-573-SDD-RLB |

**PLAINTIFF'S SUPPLEMENTAL PROPOSED FINDINGS OF FACT**

Pursuant to the Magistrate Judge's Order on September 1, 2022 (Doc. 39), Plaintiff

provides the following supplemental Proposed Findings of Fact, following depositions today of

OJJ official Curtis Nelson DOC Executive Staff Officer for the Louisiana State Penitentiary

Meaghen Gagnard.

**SUPPLEMENTAL PROPOSED FINDINGS OF FACT**

**I.     OJJ and the Department of Corrections Have Different Expectations About Each Agency's Role and Responsibilities at the Angola Site**

1.  The Department of Public Safety and Corrections (DOC) is in charge of security at the

    Louisiana State Penitentiary at Angola.[1]

---

[1] Meaghen Gagnard Sept. 5, 2022 Deposition (Gagnard Dep.)

2. According to Curtis Nelson of OJJ, OJJ will provide its own security for the juvenile facility on the Angola grounds, but staff from DOC will operate as "rovers" both inside and outside the Angola OJJ site.[2]

3. However, according to Ms. Gagnard, there have been no discussions between OJJ and DOC regarding DOC staff serving as rovers inside or outside of the building.[3]

4. OJJ expects that DOC staff will help restrain youth and prevent youth from escaping.[4] According to DOC, DOC staff will respond only in case of emergency and when OJJ requests assistance, but there is no established plan for how and when OJJ will request help from DOC at the Angola site. If OJJ wanted non-emergency assistance from DOC, that request would go through DOC Secretary LeBlanc and Warden Hooper.[5]

5. DOC's position is that only DOC staff trained in how to work with youth will respond to OJJ security requests. DOC has not provided such training to any staff members, and has not yet received the training plan from OJJ.[6]

6. DOC has not determined how many of their staff will be trained to respond to OJJ requests for DOC assistance. DOC has not yet established criteria for which LSP staff will be trained to deal with youth.[7]

7. No LSP meetings have been scheduled to implement this aspect of the MOU. Warden Hooper says DOC must be selective, but there are no other specifics.[8]

---

[2] Curtis Nelson Sept. 5, 2002 Deposition (Nelson Dep.).
[3] Gagnard Dep.
[4] Nelson Dep.
[5] Gagnard Dep.
[6] *Id.*
[7] *Id.*
[8] *Id.*

8. Since July 2022 when the Governor announced the plan to move youth to an Angola site, LSP has made no changes to their policies. DOC would have to update their regulations before LSP would change policies, and DOC has not done so yet.[9]

9. Members of the LSP CHASE team, whose function is to find and capture incarcerated adults who escape from LSP, have not been trained to deal with youth who try to escape.[10]

10. DOC staff members will be in close proximity to youth at the Angola site.[11]

11. Neither DOC nor OJJ have established criteria for which LSP staff members will be trained to work with youth, and no meetings have been scheduled yet to establish these criteria or plan.[12]

12. DOC staff members have and will continue to have tasers and chemical agents at the Angola site.[13]

13. When assisting OJJ, pursuant to the memorandum of understanding between the two agencies, DOC staff members can utilize tasers and chemical agents on youth at the Angola site when they believe there is a need to use those devices.[14]

14. The memorandum of understanding between OJJ and DOC does not specify that force may only be used in "rare" circumstances.[15] Beyond the memorandum of understanding, there are no other documents outlining the guidelines for use of force at the OJJ Angola facility.[16]

---

[9] Gagnard Dep.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*; Plaintiff's Exhibit 32
[15] *Id.*.
[16] Gagnard Dep.

15. OJJ and DOC have not yet had conversations about implementing the memorandum of understanding between them concerning the two agencies' interactions at the Angola site.[17]

16. Ms. Gagnard has not been involved in the security plan for the OJJ Angola facility.[18] She has not been included in any meetings about the security plan.[19] Likewise, Warden Hooper has not been involved in any security planning meetings other than meetings about the memorandum of understanding.[20]

17. If youth confined at the OJJ Angola site need to be moved off site for medical treatment, they will be brought to the local hospital, West Feliciana Hospital, which is approximately 30 miles away.[21]

18. If a youth confined at the OJJ Angola site breaks a bone, for example, an OJJ staff member will transport him in the staff member's car to the hospital.[22]

19. According to Mr. Nelson, OJJ has a contract with DOC to use a DOC ambulance if there is a life-threatening emergency for a youth at Angola.[23]

## II.    Defendants Have Hired and Trained Very Few OJJ Staff for the New Facility on Grounds of Angola

20. As of September 5, 2022, Defendants have filled only 60 out of 112 planned staffing positions at the Angola facility.[24]

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] Nelson Dep.
[22] Gagnard Dep.
[23] *Id.*
[24] Nelson Dep.

21. Out of those 60 positions, only 20 people have been hired specifically for the site at Angola. Others will be staff from other OJJ secure sites who will move over to the new site at least temporarily.[25]

22. Defendants have not yet hired an Assistant Director or Deputy Director for the Angola facility.[26]

23. Even after new OJJ staff members are hired to fill necessary positions, they will not be able to begin working until they receive training to work with the specific population of youth at the Angola facility. The training will take four to seven weeks.[27]

24. Of the 10-15 juvenile justice security staff hired so far, three started training last week. [28]

25. According to Ms. Gagnard, it is a security risk for youth to be at Angola if OJJ staff are not able to handle the needs of youth at the facility.[29] Specifically, it is a security risk for incarcerated adults if OJJ is understaffed.[30]

26. If there are not enough trained Juvenile Justice Specialists working at the Angola facility on any given day, social workers, teachers, and probation and parole officers may fill in on a voluntary basis.[31]

27. In order to encourage more senior level OJJ staff to volunteer to work at Angola, OJJ put together a generous compensation package with "premium pay" and "on-call duty pay."[32] For premium pay, all staff members receive an extra $5 per hour on top of their hourly rate.[33]

---

[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] Gagnard Dep.
[30] *Id.*
[31] *Id.*
[32] Nelson Dep.
[33] *Id.*

For staff members who are housed at the Angola site, they will receive an extra $1 per hour for the hours that they are on call but not working a shift.[34]

28. Staff members have been told that these incentive hourly rates could last for at least one year.[35]

29. Even with these expenditures and financial incentives, Defendants are still struggling to fill all necessary positions.[36]

30. OJJ currently has one candidate for a teacher position at the Angola site. The principal will be the principal of Bridge City who will divide her time between the two locations. At last count there were 13 applicants for teaching positions. [37]

**III.    Defendants Believe That Some Youth in the Custody of OJJ Are Not Capable of Rehabilitation**

31. All youth in OJJ custody have been adjudicated delinquent and are therefore legally entitled to receive rehabilitation and treatment.[38]

32. According to Curtis Nelson, some youth in OJJ custody are simply not amenable to rehabilitation and cannot be rehabilitated.[39]

33. Although OJJ is in conversation with the United States Office of Juvenile Justice and Delinquency Prevention (OJJDP), which has offered assistance to Louisiana so that the state can find alternatives to placing youth at the Angola site, OJJ does not believe that there are

---

[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *See, e.g.*, La. R.S. § 15:906A(2).
[39] Nelson Dep.

alternatives to the Angola site for the highest risk youth. OJJ is pursuing conversations with

OJJDP about reforming programming for low and moderate risk youth.[40]

## IV.  Defendants Continue to Change their Plans and Timeline for Operating the Angola Facility

34. The OJJ facility at Angola will be located in the former death row building at Angola.[41] That

building is within the gates of the Louisiana State Penitentiary.[42]

35. OJJ now expects that youth will be moved to the Angola facility at the end of September.[43]

DOC does not have specific information from OJJ but believes that the move could take

place on September 15.[44]

36. Although Defendants initially reported that the facility would be temporary and that youth

would later be moved to Jetson, Defendants now expect that the Angola facility may be open

for at least a year.[45]

37. After the Angola OJJ facility is closed, Defendants expect to move youth to Swanson

Monroe.[46]

38. Every child in OJJ custody – not only youth at Bridge City Center for Youth – who is

engaging in "high level risk behavior" will be assessed to determine if they will be sent to the

Angola facility.[47]

---

[40] *Id.*
[41] Meaghen Gagnard Sept. 5, 2022 Dep.
[42] *Id.*
[43] Curtis Nelson Sept. 5, 2002 Dep.
[44] Meaghen Gagnard Sept. 5, 2022 Dep.
[45] Curtis Nelson Sept. 5, 2002 Dep.
[46] *Id.*
[47] *Id.*

39. The criteria for transfer to the Angola facility will be the same as the criteria had been for transfer to Acadiana Center for Youth at St. Martinville.[48]

40. Bridge City Center for Youth will remain open even after youth are moved to Angola.[49]

Respectfully submitted, this 5th day of September, 2022.

/s/: *David J. Utter*
DAVID J. UTTER **
Louisiana Bar Number: 23236
WILLIAM R. CLAIBORNE
Georgia Bar Number: 126363
THE CLAIBORNE FIRM, P.C.
410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
david@claibornefirm.com
will@claibornefirm.com

/s/: *Christopher J. Murell*
CHRISTOPHER J. MURELL
Louisiana Bar Number: 32075
MURELL LAW FIRM
2831 St. Claude Avenue
New Orleans, Louisiana 70117
(504) 717-1297 Telephone
(504) 233-6691 Facsimile
chris@murell.law

/s/: *Hector Linares*
HECTOR LINARES
Louisiana Bar Number: 28857
SARA GODCHAUX
Louisiana Bar Number: 34561
STUART H. SMITH LAW CLINIC
LOYOLA UNIVERSITY NEW ORLEANS
COLLEGE OF LAW
7214 St. Charles Avenue, Box 902
New Orleans, Louisiana 70118
(504) 861-5560 Telephone
(504) 861-5440 Facsimile
halinare@loyno.edu
shgodcha@loyno.edu

/s/: *Ronald Haley*
RONALD HALEY
Louisiana Bar Number: 30900
HALEY & ASSOCIATES
8211 Goodwood Blvd., Suite E
Baton Rouge, Louisiana 70806
(225) 755-9935 Telephone
(888) 900-9771 Facsimile
rhaley@ronaldhaleylawfirm.com

/s/: *David Shanies*
DAVID SHANIES
New York Bar Number: 4471140
SHANIES LAW OFFICE
110 West 40th Street

/s/ *Nancy Rosenbloom*
NANCY ROSENBLOOM
New York Bar Number: 2168425
ADITI SHAH
New York Bar Number: 5886254
TAMMIE GREGG

[48] *Id.*
[49] *Id.*

8

Tenth Floor
New York, New York 10018
Tel (212) 951-1710
Fax (212) 951-1350
Cell (646) 515-2151
david@shanieslaw.com

MN Bar Number: 026240
ACLU NATIONAL PRISON PROJECT
125 Broad Street
New York, NY 10004
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
nrosenbloom@aclu.org
ashah@aclu.org

** *Lead Counsel*

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of September, 2022, a copy of the foregoing pleading was served upon all counsel of record by electronic transmission.

/s/ *David J. Utter*
DAVID J. UTTER