gUNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

|  |  |
|---|---|
| ALEX A., by and through his guardian, MOLLY SMITH, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,<br><br>        Defendants. | Civil Action No. 3:22-573 (SDD) (RLB) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'SMOTION FOR LIMITED EXPEDITED DISCOVERY UNDER FEDERAL RULES OF CIVIL PROCEDURE 26(d)(1) AND 34(b)(2)(A)

## BACKGROUND

This litigation is in response to Louisiana's plan to move young people in the custody of its Office of Juvenile Justice ("OJJ") into a building that previously served as a death row unit located on the grounds of the Louisiana State Penitentiary at Angola, LA. Doc. No. 1. The plan began on July 19, 2022, when Defendant Governor John Bel Edwards ("Gov. Edwards") "held a press conference announcing that the state will 'temporarily move' approximately 25 youth in the custody of OJJ from Bridge City Center for Youth ('BCCY'), a juvenile secure care facility, to the grounds of the Louisiana State Penitentiary at Angola ('LSP' or 'Angola')." Doc. No. 79 (Court's Ruling on Plaintiff's Motion for a Preliminary Injunction) at 3. Although no specific date was provided, Plaintiff was told youth would be moved on August 15 or 16, 2022, and when that did not happen, "staff members told him that he would be moved 'any day now.'" Doc. No. 1 at 6.

The first time OJJ officials publicly provided a date related to moving youth to Angola was on August 23, 2022, during a telephonic status conference with this Court.   At that time, "Defendants stipulated that no youth had been or would be moved to Angola on or before September 15, 2022." Doc. No. 79 at 4.  Since then, that date has moved at least twice, with OJJ stipulating during the hearing on Plaintiff's motion for a preliminary injunction—which took place from September 6-8, 2022—that no youth would be moved before September 23, 2022, *id.* at 18, n.89, and that they expected the facility at Angola to be ready to accept youth by the "end of September." *Id.*, at 18.

Since Gov. Edwards' July press conference, the target of the move has changed as well. Rather than moving youth only from BCCY, Defendants admitted that any young person in OJJ's custody can be subject to being moved to Angola.  *See, e.g., id.* at 22 (OJJ plans to use its classification system to decide which youth go to Angola, and it applies to all youth identified as "high-risk" in its custody, including youth ages "ten through eighteen.").

This Court found that Plaintiff has a "history of PTSD," *id.* at 8, and that placing him "in a facility designed to house adult inmates will exacerbate his PTSD."  *Id.* at 37.  In addition, the Court agreed that the "goal of rehabilitation is disserved by re-triggering traumatized youth by placing them in an environment that looks and feels punitive, like LSP," *id.*, and noted that "putting a teenager to bed at night in a locked cell behind razor wire surrounded by swamps at Angola is disturbing" and "untenable."  *Id.* at 2.  Finally, the Court held that placing "any child in a maximum-security facility designed for adults is unreasonably psychologically harmful to children." *Id.*

Despite making these findings, the Court denied Plaintiff's request for a preliminary injunction.  *Id.* at 2.  The Court's ruling was based in part on certain promises by Defendants to

make numerous improvements to the LSP building where they plan to house youth and to ensure that medical and mental health care are fully available *prior to* any youth being placed there.  *Id.* at 19, ¶ 44 ("The Court finds that the evidence established that no youth will be transferred to BCCY-WF until the facility is ready, properly staffed, and can fully provide educational, medical, mental health, recreational, and food services."), *id.* at 26, ¶ 89 ("No Youth will be transferred to BCCY-WF until all medical and mental health care services are fully available, including the physical spaces to provide such care.").  The Court subsequently entered an order setting a scheduling conference for October 27, 2022 and requiring the parties to file a status report by October 13, 2022, after conferring pursuant to Federal Rule of Civil Procedure 26(f).  Doc. No. 80.

Defendants have a recent track record of moving youth under their care to an inappropriate facility that was not properly staffed, thereby failing to provide the very services they promise to provide to youth they plan to move to Angola.  *See* Erin Einhorn, et al., *'No light. No nothing.' Inside Louisiana's harshest juvenile lockup*, NBC News, Mar. 10, 2022, https://www.nbcnews.com/news/us-news/louisiana-juvenile-detention-st-martinvillle-rcna19227 (last visited Oct. 3, 2022).  In addition, although the Court found that "[n]o juvenile will ever be referred to LSP for medical care," within days of providing testimony to that effect, OJJ officials admitted that is not true.  *See* Elizabeth Weill-Greenburg, *Louisiana Wants to Jail Kids at Angola Prison's Old Death Row*, The Appeal, Sept. 22, 2022, https://theappeal.org/louisiana-juvenile-detention-angola-death-row/  ("[I]n the case of a life-threatening medical emergency, children would be treated at the hospital on the prison grounds, according to the [OJJ] spokesperson.") (last visited Oct. 3, 2022).  In order to attempt to protect Alex A. and putative class members from the harmful conditions acknowledged by the Court in the event Defendants do not fulfill their promises

to be "ready, properly staffed, and [able to] fully provide educational, medical, mental health, recreational, and food services" before transferring youth, Plaintiff requested Defendants to 1) provide Plaintiff's counsel with information regarding the new planned transfer date of youth to Angola, and 2) permit Plaintiff's counsel to tour the Angola facility before any youth are moved. Specifically, Plaintiff requested that the parties stipulate to allow such a tour pursuant to Rules 26 and 34, and sent Defendants' counsel a draft stipulation. *See* Email Exchange Between Plaintiff's counsel and Defendants' counsel regarding expedited discovery and tour (attached as Exhibit 1). Defendants refused to provide a move date to Plaintiff's counsel and rejected Plaintiff's offer to stipulate to the discovery requested. *Id*.

Accordingly, Plaintiff now moves the Court for an order requiring Defendants to provide notice of the date of transfer of youth to Angola and an order permitting expedited early discovery in the form of a tour of the facility to which youth in OJJ custody will be transferred, before any youth are transferred there—or, if Defendants transfer any youth to the Angola site before this motion is decided—permit Plaintiff's counsel to tour the facility immediately.

## **APPLICABLE LAW**

"A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013). A district court may order expedited discovery upon a showing of good cause. Both Federal Rules of Civil Procedure 26 and 34 grant a district court authority to regulate the timing of discovery. *See* Fed. R. Civ. P. 26(d)(1); 34(b)(2)(A); *Turner Indus. Grp., LLC v. Int'l Union of Operating Engineers, Local 450*, No. CIV. A. H-13-0456, 2013 WL 2147515, at *3 (S.D. Tex. May 10, 2013) ("Although the federal rules usually bar a party from seeking discovery from any source before the Rule 26(f) conference, upon

4

a showing of good cause the court may order expedited discovery."). "Good cause exists where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* (internal quotations omitted).

District courts within this circuit have repeatedly exercised their discovery authority to permit expedited Rule 34 requests for entry on and inspection of land before an initial conference under Rule 26(f). *See, e.g.*, *Windecker v. Hang Wei*, No. 1:18-CV-00898-LY, 2020 WL 270725, at *2 (W.D. Tex. Jan. 16, 2020) (granting plaintiff's motion for leave to conduct expedited Rule 34 inspection); *McCoy v. Williamson Cty.*, No. 19-CV-1163-LY, , 2020 U.S. Dist. LEXIS 27819 (W.D. Tex. Feb. 19, 2020) (authorizing, before initial conference, Rule 34 request to enter and inspect county jail); *Ache v. Witte*, No. 6:20-CV-01320, 2020 WL 7393895 (W.D. La. Dec. 16, 2020) (authorizing, before initial conference, Rule 34 request to enter and inspect federal detention facility).

## DISCUSSION

An early Rule 34 request to enter and inspect the portion of LSP slated to house children in OJJ's custody is appropriate here. While this Court determined that OJJ's future plans would "provide a constitutional level of care" at the Angola facility for the purpose of the Preliminary Injunction motion, Doc. No. 79 at 2, the Court also determined as part of its Findings of Fact that those plans are expected to be *actualized* before children are housed there. *Id.* at 19, ¶ 44, 26, ¶ 89. Indeed, as noted above, citing the testimony of OJJ Deputy Secretary William Sommers and OJJ's Deron Patin, the Court found that "the evidence established that *no youth will be transferred to BCCY-WF until the facility is ready, properly staffed, and can fully provide educational, medical, mental health, recreational, and food services*." *Id.* at 19, ¶ 44 (emphasis added). Given Defendants' refusal to stipulate that their clients will abide by this Court's findings of fact in ¶¶ 44

5

and 89 of this Court's Order prior to moving youth to Angola, but will only "adhere to the testimony they gave at the hearing," Exhibit 1 at Bates No. 001716-17, and the importance of these improvements to the risk-of-harm calculus for youth who will be moved to the Angola site, it is imperative that Plaintiff's counsel be able to conduct a tour prior to youth being moved there.[1]

Because the certain harm to youth incarcerated there rather than at an existing OJJ secure care facility will only be made worse if the facility is not ready in the ways Defendants described it would be, it is reasonable to grant this request. The requested brief tour of the facility at Angola––approximately two hours, the length of the visit conducted by both parties' counsel and experts on September 1, 2022, prior to the hearing—will allow Plaintiff's counsel to inspect the status of the facility and allow the parties to inform the Court before children are moved there if the necessary facilities and staffing preparation are in place. Such a tour may also inform Plaintiff's requirements for future discovery, ultimately benefiting both parties and serving judicial economy. Any burden or inconvenience to Defendants of such a visit is negligible; indeed, their resistance to a tour by Plaintiff's counsel is puzzling in light of their stated commitment to "adhere to what they told the Court during the hearing." Exhibit 1 at Bates No. 001715.[2]

Additional findings of fact by the Court further support Plaintiff's counsel's need to tour the Angola site prior to youth being moved there. Foundational to the Court's decision denying Plaintiff's preliminary injunction is Defendants' assurances that the Angola facility will be fully

---

[1] Alternatively, if Defendants continue to oppose an onsite tour by Plaintiff's counsel, Plaintiff urges the Court to conduct an onsite tour of the youth facility at Angola.

[2] In their email response to Plaintiff's counsel, Defendants' counsel also noted that Defendants "see no . . . right to . . . an inspection of BCCY-WF prior to moving the Youth." Ex. 1 at 1. Contrary to Defendants' position, Rule 34 expressly permits Plaintiff "entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2); *see also Windecker*, 2020 WL 270725, at *2 ("Given that the request falls squarely within the scope of what the rules permit, and that it addresses property that is at the center of this lawsuit, the Defendants' position on the motion smacks of game playing.").

renovated and staffed.  Doc. No. 79 at 33-34 (noting that the photographs taken by Plaintiff's expert are "are not representative of the renovations and improvement underway and planned for BCCY-WF").    However, this Court specifically found that the photographs of the proposed facility at Angola taken by Plaintiff's juvenile justice expert Vincent Schiraldi were "shocking and depressing."  Doc. No. 79 at 33.  The Court found: "The indoor space designated for recreation is inadequate. The existing outdoor recreational space are likewise inadequate, consisting of a basketball goal erected in a grassy area in view of a guard tower.  The existing visitation space is a non-contact, mesh screen separating the juvenile from a visitor."  *Id.*  Each of these facts, along with many others, underscores the level of work to be done before the site will be "ready, properly staffed, and can fully provide educational, medical, mental health, recreational, and food services," or will be able to provide "all medical and mental health care services [that] are fully available, including the physical spaces to provide such care."  Doc. No. 79 at 19, ¶ 44, 26, ¶ 89.[3]

Finally, testimony from witnesses at the September 6-8, 2022 hearing confirmed the need for a tour prior to moving youth.  Juvenile justice expert Vincent Schiraldi, whose testimony was unrefuted at the hearing, opined that the facility was nowhere near ready, especially given the extensive modifications and buildouts needed for the facility and the need to hire and train staff to work in this specialized environment.  Testimony of Vincent Schiraldi.  Defendants' testimony supports this opinion.  For example, OJJ's Curtis Nelson testified that the training for new security staff who would be hired would take 4-7 weeks for each cohort of staff, and only three security

---

[3] In addition to the Court's findings regarding the Angola site, Defendants' prior record with the St. Martinville facility, also designated a "Transitional Treatment Unit" for youth in OJJ's secure care custody further justifies Plaintiff's concern that the Angola site may not be ready in time.  At the St. Martinville facility, OJJ had to bring in Department of Public Safety and Corrections ("DOC") guards because OJJ lacked enough staff and OJJ provided no educational services for several months and subjected youth to near total solitary confinement.  See Erin Einhorn, et al., *'No light. No nothing.' Inside Louisiana's harshest juvenile lockup*, NBC News, Mar. 10, 2022, https://www.nbcnews.com/news/us-news/louisiana-juvenile-detention-st-martinvillle-rcna19227 (last visited Oct. 3, 2022).

staff had been hired as of the hearing. Testimony of Curtis Nelson. Defendant Sommers testified – following Mr. Schiraldi's expert opinion that the no-contact visiting area was inappropriate for youth – that there would be a different area where youth would be able to hug their mothers during visits. Testimony of William Sommers. No such area was ready or designated at the time of the hearing. Defendants testified that the health services area was not ready and that almost no equipment had been delivered. Testimony of Dr. Denise Dandridge. Defendants testified that the outdoor recreation space, with one basketball goal on a muddy grass field, would need to be paved. Testimony of Deron Patin. Each of these facts, along with many others, underscores the level of work to be done before the site will be "ready, properly staffed, and can fully provide educational, medical, mental health, recreational, and food services," or will be able to provide "all medical and mental health care services [that] are fully available, including the physical spaces to provide such care." Doc. 79 at 19, ¶ 44, 26, ¶ 89.

Despite clear permission pursuant to Rule 34(a)(2), Defendants refused to cooperate by agreeing to Plaintiff's modest request for a brief tour of the Angola facility before youth are transferred there. Exhibit 1. The minimal, if any, burden to Defendants is outweighed by Plaintiff's need and right to inspect the facility in light of the subject of this action: the risk of harm youth face if transferred to the site at Angola.

**CONCLUSION**

Plaintiffs respectfully request the Court allow an early Rule 34 request to inspect the OJJ Angola site before Defendants incarcerate youth there, or in the alternative, as soon as possible after youth have been moved there.

Respectfully submitted, this 3rd day of October, 2022.

/s/: *David J. Utter*                          /s/: *Christopher J. Murell*
DAVID J. UTTER **                     CHRISTOPHER J. MURELL

Louisiana Bar Number: 23236
WILLIAM R. CLAIBORNE
Georgia Bar Number: 126363
THE CLAIBORNE FIRM, P.C.
410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
david@claibornefirm.com
will@claibornefirm.com

/s/: *Hector Linares*
HECTOR LINARES
Louisiana Bar Number: 28857
SARA GODCHAUX
Louisiana Bar Number: 34561
STUART H. SMITH LAW CLINIC
LOYOLA UNIVERSITY NEW ORLEANS
COLLEGE OF LAW
7214 St. Charles Avenue, Box 902
New Orleans, Louisiana 70118
(504) 861-5560 Telephone
(504) 861-5440 Facsimile
halinare@loyno.edu
shgodcha@loyno.edu

/s/: *David Shanies*
DAVID SHANIES
New York Bar Number: 4471140
SHANIES LAW OFFICE
110 West 40th Street
Tenth Floor
New York, New York 10018
Tel (212) 951-1710
Fax (212) 951-1350
Cell (646) 515-2151
david@shanieslaw.com

Louisiana Bar Number: 32075
MURELL LAW FIRM
2831 St. Claude Avenue
New Orleans, Louisiana 70117
(504) 717-1297 Telephone
(504) 233-6691 Facsimile
chris@murrell.law

/s/: *Ronald Haley*
RONALD HALEY
Louisiana Bar Number: 30900
HALEY & ASSOCIATES
8211 Goodwood Blvd., Suite E
Baton Rouge, Louisiana 70806
(225) 755-9935 Telephone
(888) 900-9771 Facsimile
rhaley@ronaldhaleylawfirm.com

/s/ *Nancy Rosenbloom*
NANCY ROSENBLOOM
New York Bar Number: 2168425
ADITI SHAH
New York Bar Number: 5886254
TAMMIE GREGG
MN Bar Number: 026240
ACLU NATIONAL PRISON PROJECT
125 Broad Street
New York, NY 10004
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
nrosenbloom@aclu.org
ashah@aclu.org
tgregg@aclu.org

** *Lead Counsel*

**ATTORNEYS FOR PLAINTIFF**

9

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 3rd day of October, 2022, a copy of the foregoing pleading

was served upon all counsel of record by electronic transmission.

<u>*/s/ David J. Utter*</u>
DAVID J. UTTER