## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALEX A., by and through his guardian, MOLLY SMITH individually and on behalf of all other similarly situated,<br><br><br><br>Plaintiff,<br><br>v.<br><br>GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,<br><br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civ. A. No. 3:22-CV-00573-SDD-RLB<br><br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR NON-RETALIATION ORDER** |

COME NOW, through undersigned counsel, Defendants John Bel Edwards, in his official capacity as Governor of Louisiana; William Sommers, in his official capacity as Deputy Secretary of the Office of Juvenile Justice; and James M. LeBlanc, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections (collectively "Defendants") and respectfully submit this response in opposition to *Plaintiff's Motion for Non-Retaliation Order* (Doc. 78, the "Motion"). For the reasons stated herein, the Court should deny Plaintiff's Motion.

## I.    <u>INTRODUCTION</u>

Despite the inflammatory accusations of Plaintiff's Motion, Plaintiff provided the Court with <u>no evidence</u> to corroborate the allegations contained in the pleadings—no declaration, no affidavit, no documents, no photos, no videos, nothing. Instead, Plaintiff comes to the Court with only unsworn hearsay statements accusing Defendants of physically assaulting the Plaintiff as

retaliation for Plaintiff filing the underlying lawsuit. Surely such an outrageous claim should be supported by some piece of evidence, not just hearsay, speculation, and conjecture. But once again, as was the case with Plaintiff's Motion for Temporary Restraining Order, Plaintiff has come to the Court with no evidence.

The truth is that no one is "retaliating" against Plaintiff for filing the underlying lawsuit. Rather, Plaintiff is continuing to engage in the types of violent and disruptive behavior that has him on the path for a referral to the Transitional Treatment Unit ("TTU"). On September 12, 2022, while on the outdoor basketball court for recreation time, Plaintiff assaulted a female Louisiana Office of Juvenile Justice ("OJJ") staff member by punching her in the face with a closed fist, bloodying her, and causing her to be sent to the hospital for medical treatment. Following his assault on the staff member, Plaintiff was placed in mechanical restraints. A video of the assault is available for review should the Court be so inclined.

Two days earlier, on September 9, 2022, Plaintiff and another Youth refused repeated orders by OJJ staff to exit a bathroom at the secure care facility in which they were housed; after multiple instructions were ignored, chemical spray was deployed to extricate Plaintiff and the other Youth. As soon as the incident was deescalated, both Youth were immediately transported to the on-site infirmary where they were evaluated by medical staff. Neither Plaintiff nor the other Youth sustained injury as a result of the chemical spray deployment.

It is an uncontroversial proposition that Defendants cannot retaliate against Plaintiff for filing his lawsuit. But it is equally uncontroversial that Plaintiff's filing of the lawsuit does not grant him immunity from the rules and orders of the OJJ. Nor does the filing of the lawsuit grant Plaintiff the right to assault the OJJ staff with impunity. Plaintiff is attempting to use his underlying

lawsuit and the motion *sub judice* as a shield for the consequences of his actions. The Court should not buy into Plaintiff's uncorroborated narrative.

## II.    FACTS AND BACKGROUND

### A.    Timeline of Events

Below is a timeline of the relevant events and procedural background involving Plaintiff with citations to the evidence corroborating this recitation:

08/19/22    Plaintiff filed his Complaint for Injunctive and Declaratory Relief—Class Action (Doc. 1, the "Complaint").

08/23/22    OJJ Probation & Parole Supervisor Chase Lavespere emailed Christian Zavala and Nicholas Landry saying, "[Plaintiff] has a court review hearing 9/13 before in New Iberia City Court. I'm waiting to see if this can be done via Zoom." Affidavit of Revettea Woods ("Woods Aff."), Exhibit A-3, at 3.

08/23/22    Lavespere forwarded Zoom link for hearing. *Id.* at 1-2.

08/24/22    Landry emailed various OJJ personnel and the New Iberia judicial administrator stating, "I've been advised that [Plaintiff] has a court review before Judge Haik in New Iberia City Court on 9/13/22. The court and attorneys have approved for this hearing to be held via zoom, as [Plaintiff] is now being held at Bridge City Center for Youth [Jefferson Parish]." *Id.* at 1.

09/06/22    Hearing on Plaintiff's motion for preliminary injunction began. Plaintiff testified live at hearing in Baton Rouge.

09/08/22    Hearing on Plaintiff's motion for preliminary injunction ended.

09/09/22    At 9:47 p.m., officers with the Louisiana Department of Public Safety & Corrections ("DOC") were called to assist OJJ with a situation where Plaintiff and

3

another Youth refused orders to leave the bathroom. After multiple orders were ignored, a DOC officer deployed his chemical spray. Following the deployment, Plaintiff and the other Youth were removed from the bathroom. Ex. A-4 at 1-4.

At 9:55 p.m., Plaintiff was brought to the on-site infirmary, where he was evaluated for injuries. No injuries were noted. Photos of Plaintiff were taken to verify the lack of injury. Plaintiff declined to give a statement at that time. Ex. A-4 at 5-10.

09/12/22    At 10:14 a.m., Plaintiff and other Youths from the Faith dorm were playing basketball at the recreation pavilion. A female OJJ staff member believed that one of the Youth was in possession of marijuana. A second OJJ staff member was called over to assist. The Youths in question were instructed to open their hands. While this was taking place, one of the Youths threw the basketball at the first OJJ staff member, striking her in the head. The basketball landed in a set of bleachers near Plaintiff's location. Plaintiff and the OJJ staff member went to retrieve the basketball. When the OJJ staff member secured the ball, Plaintiff punched the OJJ staff member with a closed fist in her face, causing her to fall to the ground. The second OJJ staff member directed Plaintiff away from the situation and radioed for support. Plaintiff was placed in handcuffs when backup arrived. Ex. A-5 at 1-4, 12-13.

After the incident, a search was conducted of the Youths in the recreation pavilion; contraband, including marijuana, rolling paper, and a cigarette lighter, were confiscated in the search. Ex. A-5 at 9-13.

Plaintiff's assault on the OJJ staff member caused lacerations to her upper lip, lower lip, and chin, along with swelling of the left cheek and lower portion of her face.

She was transported by private vehicle to the hospital for further assessment and evaluation. Ex. A-5 at 13-19.

At 10:40 a.m., Plaintiff was placed in a behavioral intervention room, and the handcuffs were removed. Ex. A-5 at 5-8, 12-13.

At 11:12 a.m., Plaintiff was evaluated by medical personnel. He had no observable injuries. Photos were taken of Plaintiff. Plaintiff refused to give a statement regarding the incident. Ex. A-5 at 20-25.

The entire incident was captured by security cameras and is available for the Court to review at its request. *See* Ex. A, Woods Aff., ¶ 6.

09/13/22    During his Zoom court appearance before Judge Haik in New Iberia City Court, Plaintiff told the Judge that his ribs hurt and claimed that it was due to an assault by DOC staff on Plaintiff. When asked, Plaintiff could not identify the DOC staff who allegedly assaulted him. Plaintiff had not previously reported any rib pain to any OJJ staff or medical personnel. Ex. A-6 at 1-3.

At 11:10 a.m., Plaintiff was taken to the infirmary for evaluation following his comments to the Judge. When the nurse asked Plaintiff what happened, he told her "Don't ask me what happened, just do your job." Later, he told the nurse that the pain started the night of the bathroom incident where chemical spray was deployed but still refused to say what allegedly happened. Ex. A-6 at 2-8.

The medical evaluation revealed no swelling, bruising, or other deformities. Photos of Plaintiff were taken. Ex. A-6 at 4-8.

09/14/22    ████████████████████████████████████████████████████

████████████████████████████████████████████████████

65975248.v1



Ex. A-7 at 17-31.

At 5:41 p.m., Plaintiff's mother called OJJ to report that Plaintiff feared for his life due to other Youth stating that they would jump him as payback for his assault on the OJJ staff member on the basketball court. Ex. A-7 at 33.

09/15/22 ████████████████████████████████████

████████████████████████████████ Ex. A-7 at 3-16.

09/16/22 ████████████████████████████ Ex. A-7 at 1-2.

At 6:06 p.m., Plaintiff was again seen at the infirmary complaining of rib pain. Plaintiff had no observable injuries. Photos of Plaintiff were taken. Ex. A-8 at 1-6.

09/19/22 An x-ray was conducted to evaluate Plaintiff's ribs. The x-ray revealed no rib fractures. Ex. A-8 at 7.

**B.** **Plaintiff's Uncorroborated Hearsay Allegations of "Retaliation"**

In his Memorandum of Law in Support of Plaintiff's Motion for Non-Retaliation Order (the "Brief"), Plaintiff contends that he is being retaliated against for filing the underlying lawsuit. Specifically, Plaintiff identifies three alleged acts of retaliation:

I.    Plaintiff contends that on the weekend of September 10-11, 2022, he and another Youth were "talking and rapping in the bathroom," that he was ordered three times to leave the bathroom but that he did not hear those directions,[1] and that he was then locked in the bathroom and "pepper sprayed or maced" in the face. Plaintiff further contends that

---

[1] It is unclear how Plaintiff knows he was ordered three times to exit the bathroom while simultaneously not hearing the orders. *See* Pl.'s Brief (Doc. 78-1) at 3; Ex. A-8 at 1.

he was then placed in shackles and taken to an area off camera where he was beaten, including being kicked in the ribs. Pl.'s Brief (Doc. 78-1) at 3-4.

II.    Plaintiff alleges that on September 13 or 14, 2022, an unidentified DOC employee told Plaintiff he was "a dead man walking." *Id.* at 4.

III.    Lastly, Plaintiff claims that he was scheduled for a court hearing on September 15, 2022 and that "[d]espite [OJJ's] knowledge of that court date for weeks, OJJ claimed they 'forgot' about it and did not transport Plaintiff to court for his hearing." *Id.*

Notably absent from Plaintiff's recitation of the "facts" is any reference to Plaintiff's assault on the OJJ staff member on September 14, 2022. *See generally* Pl.'s Mot. (Doc. 78); Pl.'s Brief (Doc. 78-1). Also, Plaintiff does <u>not</u> allege that anyone told him or indicated that these alleged acts were done in retaliation for Plaintiff filing the underlying lawsuit; instead, Plaintiff simply contends that "[i]t is reasonable to infer that staff's action are retaliation or intimidation tactics." Pl.'s Brief (Doc. 78-1) at 2.

Most importantly, Plaintiff submits <u>no evidence whatsoever</u> in support of these allegations. No affidavit or declaration from Plaintiff. No affidavit or declaration from Plaintiff's mother. No documents, photographs, videos, or any other corroborating evidence. Instead, Plaintiff presents the Court only with Plaintiff's counsel's recitation of information that was told to them by Plaintiff. *See generally* Pl.'s Mot. (Doc. 78); Pl.'s Brief (Doc. 78-1).

## III.    <u>ARGUMENT AND AUTHORITIES</u>

Plaintiff has not been subjected to any retaliatory conduct. Rather, Plaintiff continues to engage in violent and disruptive behavior while in OJJ's custody. The OJJ has the responsibility to curb these attacks and to compel compliance with the orders of the OJJ staff at the secure care

facility. Plaintiff's lawsuit does not afford him blanket immunity from the OJJ's rules and certainly does not grant him leeway to physically assault the staff.

A.    **Plaintiff's Motion is Procedurally Improper and Should be Denied.**

Retaliation is its own separate Section 1983 claim. If Plaintiff believes that he has been subjected to retaliation, then he needs to file an Administrative Remedy Procedure ("ARP") with the facility and, after properly exhausting his administrative remedies, if still aggrieved, he must amend his Complaint to assert a claim for retaliation. Likewise, if Plaintiff believes that he is at imminent risk for future retaliation, then he needs to file an emergency ARP with the facility and, after properly exhausting his administrative remedies, if still aggrieved, Plaintiff must amend his Complaint to assert a claim for injunctive relief and pursue a motion for temporary restraining order and/or preliminary injunction. The filing of the underlying lawsuit does not relieve Plaintiff from having to exhaust the administrative remedies available to him; nor does it provide Plaintiff with an open forum to air every alleged grievance.

1.    **Plaintiff Failed to Exhaust his Available Administrative Remedies Before Filing this Motion.**

Plaintiff has not filed an ARP for the alleged retaliation, let alone exhausted the administrative remedies available to him. Ex. A, Woods Aff., ¶ 13. For this reason alone, his motion should be denied.

The federal Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42

U.S.C. § 1997e(a).[2,3] Exhaustion is only complete when a plaintiff pursues all "available" administrative remedies, and when (1) the plaintiff has received a final administrative decision at the last step of the applicable procedure; or (2) the time limits for the prison's response at the last step of every available administrative remedy has expired, such that "there is no next step (save filing a lawsuit) to which the prisoner can advance." *See Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015); *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004).

The PLRA establishes a mandatory exhaustion regime, forecloses judicial discretion, and prevents a court from excusing a failure to exhaust, even to take "special circumstances" into account. *Ross v. Blake*, 578 U.S. 632, 638-39 (2016) ("the PLRA's text suggests no limits on an inmate's obligation to exhaust"); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). Moreover, "a prisoner must now exhaust administrative remedies even where the relief sought . . . cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The only limit to § 1997e(a)'s mandate is that administrative remedies must be "available." *See Ross*, 578 U.S. at 642-47.

OJJ maintains an ARP to efficiently process internal grievances based on its expertise in managing Youth detention facilities. *See* Ex. A, Woods Aff. at ¶¶ 9-10; Ex. A-1. Under the ARP, a Youth must fully exhaust a two-step grievance process before seeking judicial review. *See* Ex. A-1 at 1-14. A Youth first initiates the process by filing an ARP form, deemed filed upon "receipt"

---

[2] Because Plaintiff is alleging violations of federal law in a federal district court, his complaint is subject to the procedural requirements of the PLRA. *Ferrington v. La. Dep't of Corr.*, 315 F.3d 529, 532 (5th Cir. 2002).

[3] For purposes of the PLRA exhaustion requirement, "prisoner" is broadly defined and includes "any person . . . detained in any facility who is accused of . . . **or adjudicated delinquent for**, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h) (emphasis added); *see also Molina v. N.Y.*, 697 F. Supp. 2d 276, 282 (N.D.N.Y. 2010) ("[t]his exhaustion requirement applies equally to juveniles confined in correctional facilities.") (citing 42 U.S.C. § 1997e(h)).

by an ARP Coordinator. *See* Ex. A, Woods Aff. at ¶ 10; Ex. A-1 at 4. The ARP Coordinator screens the form and sends it to a facility director, who must respond within 30 days. Ex. A-1 at 7-8. If the Youth is dissatisfied with the director's response, he has 15 days to seek review from the Deputy Secretary of Youth Services. *Id*. at 8-9. The Deputy Secretary must render a final decision within 21 days of receiving the request for review, and the entire process must be completed within 51 days of the original filing of the Youth's grievance form. *Id*. If the Youth is dissatisfied with the response, he may then seek judicial review. *Id*. at 9.

Here, Plaintiff has not even alleged that he attempted to avail himself of the ARP process. *See generally* Pl.'s Mot. (Doc. 78); Pl.'s Brief (Doc. 78-1). And, in fact, he has not attempted to do so. Ex. A, Woods Aff., ¶ 13. Having failed to exhaust his administrative remedies regarding the allegations of retaliation, Plaintiff's Motion fails at the outset and should be denied.

## 2.    Plaintiff Does Not Have the Proper Defendants in the Suit for the Relief Requested.

Under § 1983, a government official can only be held liable for her own actions. *Powell v. Martinez*, 579 F. App'x 250, 252 (5th Cir. 2014) (citing *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011)). Here, Plaintiff does not allege that any of the three named defendants— Governor Edwards, Secretary LeBlanc, or Deputy Secretary Sommers—engaged in retaliatory conduct (or ordered that OJJ or DOC employees engage in retaliatory conduct).

Accordingly, to proceed on a retaliation claim against the Defendants in their official capacities, Plaintiff would need to plead and prove that the alleged acts of retaliation against him arose from a custom or practice of engaging in such conduct. *See Johnson v. Rodriguez*, 110 F.3d 299, 312 (5th Cir. 1997). Plaintiff, of course, has neither pleaded nor provided any evidence of such a custom or practice.

For this additional reason, Plaintiff's Motion should be denied.

65975248.v1

3.      **Plaintiff's Motion Is an Attempt to Circumvent the Rigors of a Temporary
Restraining Order/Preliminary Injunction.**

Plaintiff frames the relief that he seeks in this motion as an "order" from the Court directing
the Defendants to take no action against Plaintiff (and the putative class members that he does not
currently represent) that would constitute retaliation. But what Plaintiff really seeks is an
injunction (i.e., an order from the Court directing the Defendants regarding the manner in which
they can act toward Plaintiff) and, at that, a preliminary injunction (i.e., an injunction without a
full trial on the merits). Regardless of the moniker Plaintiff assigns to the requested relief, his
Motion is a request for a preliminary injunction.

Plaintiff's Motion and Brief do not address the legal standard to be applied to the relief
requested. To be sure, Plaintiff does not discuss the preliminary injunction standard; nor does he
provide any alternative standard for the Court's consideration. *See generally* Pl.'s Mot. (Doc. 78);
Pl.'s Brief (Doc. 78-1). Instead, he unilaterally declares "retaliation" (without any supporting
evidence) and asks the Court to enjoin Defendants.

4.      **Plaintiff's Motion Is Without Evidentiary Support and Should Be Denied.**

Plaintiff's provides the Court with <u>no evidence</u> in support of his claim that he has been
subjected to retaliatory action. The Motion is premised on nothing more than lawyer-rhetoric and
unsupported assumptions. Plaintiff—the movant seeking relief—has the burden of coming
forward with <u>evidence</u> to support his accusations. He has none.

On the other hand, attached to this Response is the detailed competent evidence
demonstrating that Defendants have not retaliated against Plaintiff. Rather, Plaintiff continues to
engage in the same type of violent, disruptive behavior that has precipitated the need for a TTU
and the need to relocate the TTU to the Bridge City Center for Youth at West Feliciana ("BCCY-
WF"). *See* Exhibits A-4 through A-6. As was the case on Plaintiff's Motion for Temporary

65975248.v1

Restraining Order, Plaintiff has again made factual allegations against the Defendants with no evidentiary support and has nothing to refute the substantial evidence contrary to his speculations. *See* Ruling (Doc. 79) at 40 ("Plaintiff's argument that special education services and mental health services will be unavailable or deficient at BCCY-WF went unproven." "[T]here was utterly no showing that special education requirements will be adversely impacted."), 41 ("[T]here was not a shred of evidence that Defendants intentionally failed to provide youth with mental disabilities at BCCY with the details of the plan because of their disabilities."), 46 ("There is no record evidence that the Defendants' transfer plan violates the JJDPA." "There is no evidence that a serious risk of the loss of standard services and programs provided to youth will result from the transfer plan."), 47 ("There is no evidence of a serious risk that youth will be transferred to BCCY-WF before it is ready." "Plaintiff's claim that the DOC would operate BCCY-WF is not supported by any record evidence."), 49 ("[T]here is no evidence that OJJ officials subjectively drew the inference that housing youth on the grounds of Angola in the designated facility poses a serious risk of psychological harm."), 50 ("There is no evidence to support the proposition that OJJ made a 'knee-jerk' reaction decision to 'send youth to Angola.'"), 52 ("The Court finds there is no evidence that OJJ officials 'expressed intent to punish' the youth subject to transfer."), 63 ("[T]he Court finds no evidence that Plaintiff's (or the proposed class's) constitutional rights would be violated by the transfer Plan.").

For this additional reason, Plaintiff's Motion should be denied.

**B.    Applying the Proper Standard to the Evidence, Plaintiff's Motion Should be Denied.**

Because Plaintiff has not endeavored to explain why he believes he is entitled to an injunction, the Defendants will not belabor the point. But a brief discussion of the elements is worthwhile. Again, Plaintiff has provided no evidence to the Court in support of his position;

65975248.v1

accordingly, the only evidence for the Court's consideration is what Defendants attach to this Response.

Injunctive relief is "an extraordinary remedy" and requires the movant to "unequivocally show the need for its issuance." *Sacal-Micha v. Longoria*, 449 F. Supp. 3d 656, 662 (E.D. La. 2020) (citing *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997)). To demonstrate entitlement to injunctive relief in the form of a preliminary injunction, Plaintiff must establish: "(1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) that the injunction will not disserve the public interest." *Gumns v. Edwards*, No. 20-231-SDD-RLB, 2020 WL 2510248, at *3 (M.D. La. May 15, 2020) (citations omitted). The first two factors are most critical. *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016). Failure to establish any element warrants denial of the motion. *Sacal-Micha*, 449 F. Supp. 3d at 662 (citing *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003)).

In the context of injunctions against correctional facilities, based on the PLRA, "preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the federal right, and be the least intrusive means necessary to correct the harm." *Gumns,* 2020 WL 2510248 at *3 (citations omitted). Public policy, and the Supreme Court, counsels federal courts to "eschew toward minimum intrusion into the affairs of state prison administration." *Id.* (citing, *inter alia*, *Mecham v. Fano*, 427 U.S. 215, 228-29 (1976) (warning against judicial decisions regarding "the day-to-day functioning of state prisons and involve[ing] the judiciary in issues and discretionary decisions that are not the business of federal judges")). Stated differently, "[w]hen weighing any form of injunctive relief, federal courts must be mindful

not to jump at the chance to take prison administration into their own hands and out of the hands of the people entrusted with such tasks by the state." *Id.* (citations omitted).

1.    **Plaintiff Is Not Substantially Likely to Succeed on the Merits of his Retaliation Claim.**

To establish a claim of retaliation under § 1983, Plaintiff must plead and prove "(1) his invocation of a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner due to his exercising that right, (3) a retaliatory adverse act, and (4) a causal connection. *Powell v. Martinez*, 579 F. App'x 250, 252 (5th Cir. 2014) (citing *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir.1999)).

On the underlying Motion, Plaintiff has only indicated a likelihood that he can prove the first element—an invocation of a specific constitutional right (i.e., the filing of his underlying lawsuit). After that, Plaintiff has no evidence to support the other essential elements of a retaliation claim. Instead, he presents only supposition and unsworn, self-serving hearsay.

2.    **There Is No Substantial Threat of Irreparable Harm to Plaintiff.**

Plaintiff's Motion does not identify any harm—let alone an irreparable harm—that he contends he will experience in the future. Plaintiff comes to the Court with nothing other than the argument that it is possible that some unnamed OJJ or DOC employee may retaliate against him in the future. Neither an unfounded fear of future harm nor the mere possibility of future harm give rise to injunctive relief. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985); 11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2948.1 (3d ed. Apr. 2022 update).

3.    **Granting the Requested Injunction Would Injure Defendants.**

Plaintiff's Motion also fails to advance any argument addressed to the risk of harm that an injunction would cause Defendants. The State of Louisiana assigned the prerogatives of juvenile detention policy to Defendants. La. Ch. Code art. 908. The Supreme Court "has repeatedly warned

that it is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020) (quotations omitted). Defendants' actions at issue are rationally related to legitimate government objectives, and Defendants would be injured by an injunction preventing them from carrying out these objectives.

As was the case in Plaintiff's Motion for Temporary Restraining Order, Plaintiff attempts to cast Defendants' legitimate conduct (enforcing the behavioral rules of the institution) as being illegitimate. In rejecting Plaintiff's motion for preliminary relief, the Court correctly held that Plaintiff's argument that he was being "punished" in violation of the Constitution was incorrect and that the OJJ's decision to place the TTU at BCCY-WF was well within the permissible disciplinary program of the agency. *See* Ruling (Doc. 79) at 52-53. Now again, Plaintiff attempts to color the disciplinary consequences of his conduct as a Constitutional violation. The only difference is that here, he frames his arguments as being an issue of "retaliation" instead of "punishment."

OJJ's enforcement of the disciplinary rules for Plaintiff's failure to comply with staff orders is rationally related to a legitimate government objective—maintaining the safety of the Youth within OJJ's care and the delivery of rehabilitation services to the Youth. "[M]aintaining institutional security and preserving internal order and discipline are essential goals" of a youth detention facility. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). As the Court previously explained, youth detention facilities are free to enforce their disciplinary rules for the Youth in their custody. *See* Ruling (Doc. 79) at 54-58. When a Youth violates the rules or the orders of the staff, the Youth may rightfully face disciplinary consequences for his non-compliance.

On September 9, 2022, Plaintiff and another Youth refused repeated orders by OJJ staff to exit a bathroom. Ex. A-4 at 1-4. After multiple instructions were ignored, chemical spray was deployed to extricate Plaintiff and the other Youth. *Id.* Plaintiff admits that OJJ staff instructed him three times to exit the bathroom before deploying chemical spray to gain Plaintiff's compliance. Pl.'s Brief (Doc. 78-1) at 3; Ex. A-8 at 1. This use of force is well within the discretion of the OJJ to enforce its rules and commands. OJJ's mission to provide rehabilitative services to the Youth in its care would be thwarted if OJJ was not able to enforce disciplinary rules that ensure a safe environment to deliver those services. Plaintiff does not get to shield himself from the consequences of his noncompliance with OJJ's rules by way of his civil complaint.

Additionally, Plaintiff asserts that failure to allow him to attend a court hearing in person could be seen as retaliation. Pl.'s Brief (Doc. 78-1) at 4. Plaintiff alleges that he was scheduled for a court hearing on September 15, 2022, that OJJ was aware of that court date for weeks, and that OJJ did not transport Plaintiff to court for his hearing, claiming to have "forgotten" about the hearing. *Id.* Plaintiff provided the Court with no evidence to corroborate these allegations.

At the outset, Plaintiff's allegations are incorrect. Plaintiff's hearing was scheduled for September 13, 2022. Ex. A-3 at 3. Several weeks prior to the hearing, on August 24, 2022, OJJ Probation & Parole Supervisor Chase Lavespere notified various OJJ personnel and the New Iberia judicial administrator that the Court and attorneys had agreed to conduct the hearing via Zoom due to Plaintiff's housing in Jefferson Parish. *Id*. at 1.

Further, OJJ did not retaliate against Plaintiff by scheduling his court hearing to be conducted via Zoom. OJJ's agreement to allow Plaintiff to participate in the hearing by video is rationally related to a legitimate government objective—preserving limited agency resources. "Prison administrators, like most government officials, have limited resources to provide the

65975248.v1

services they are called upon to administer." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 861 (5th Cir. 2004). Staffing limitations and financial burdens are valid penological interests. *Id*. (citing *Ganther v. Ingle*, 75 F.3d 207, 211 (5th Cir.1996)).

Transporting Plaintiff from BCCY in Jefferson Parish to New Iberia City Court in Iberia Parish for a hearing requires coordination of logistics and use of limited agency resources. OJJ staff would be taken away from their usual duties to move Plaintiff across the facility, drive him 242 miles round-trip to New Iberia City Court and back, and spend time waiting at the courthouse during the hearing. This would also disrupt Plaintiff's entire day, as the drive to New Iberia, Louisiana and back takes over four hours. Instead, OJJ chose a reasonable alternative to the in-person hearing by scheduling Plaintiff's court hearing to be conducted via Zoom. Plaintiff's participation in the hearing by video allowed for a much shorter time commitment by OJJ staff and ensured that Plaintiff's day, including school, counseling, and recreation, would not be completely disrupted. Moreover, the remote appearance at the hearing was not a unilateral decision on the part of OJJ, but rather was reviewed and approved by the attorneys in that case and the presiding judge. *See* Ex. A-3 at 1.

As for Plaintiff's third alleged act of retaliation—an unnamed DOC staff member saying to Plaintiff that he is a "dead man walking"—OJJ has no meaningful way to factually refute the unsworn statement that an unidentified person said three words to Plaintiff. Pl.'s Brief (Doc. 78-1) at 4. If the statement even happened (which, again, there is no evidence that this statement was ever uttered), verbal threats (if this statement can even be construed as a threat) cannot form the basis of a claim for retaliation. *See Gibson v. Jean-Baptiste*, 802 F. App'x 858, 859-60 (5th Cir. 2020).

> [T]his court has long held that "mere threatening language and
> gestures of a custodial office[r] do not, even if true" establish

65975248.v1

> Section 1983 liability. *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983."). Accordingly, we have consistently rejected threat-based retaliation claims. *See Smith v. Hebert*, 533 F. App'x 479, 483 (5th Cir.2013); *Hudson v. Univ. of Tex. Med. Branch*, 441 F. App'x 291, 292–93 (5th Cir. 2011); *Bell v. Woods*, 382 F. App'x 391, 393 (5th Cir. 2010); *Brown v. Craven*, 106 F. App'x 257, 259 (5th Cir. 2004).

*Id.*; *see also Westbrook v. Treon*, 78 Fed. App'x 970, 972 (5th Cir. 2003) ("Verbal threats do not rise to the level of a constitutional violation.") (citing *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).

**4.    The Public Interest Would be Served by Denying the Requested Injunction.**

Louisiana vested OJJ with authority concerning juvenile detention policy. As this Court observed, there can be no meaningful rehabilitation of Youth if OJJ's principal objective is reduced to maintaining order. Ruling (Doc. 79) at 63. The public interest will be served by denying an injunction, and Plaintiff's Motion fails to establish otherwise.

## IV.    CONCLUSION

For all these reasons, Plaintiff's Motion (Doc. 78) and request for a "non-retaliation order" should be denied.

Dated: October 6, 2022.

Respectfully Submitted:

BY:    */s/ Madaline King*
       Connell Archey (#20086)
       Randal J. Robert (#21840)
       Allena McCain (#38830)
       Madaline King (#38301)
       BUTLER SNOW LLP
       445 North Boulevard, Suite 300 (70802)
       P.O. Box 2997
       Baton Rouge, LA  70821-2997
       Telephone:    (225) 325-8700
       Facsimile:    (225) 325-8800

65975248.v1

Connell.Archey@butlersnow.com
Randy.Robert@butlersnow.com
Allena.McCain@butlersnow.com
Madaline.King@butlersnow.com

Kyle V. Miller (pro hac vice)
Lemuel E. Montgomery III (pro hac vice)
Anna Morris (pro hac vice)
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone:     (601) 948-5711
Facsimile:      (601) 985-4500
Kyle.Miller@butlersnow.com
Lem.Montgomery@butlersnow.com
Anna.Morris@butlersnow.com

Counsel for Defendants
GOVERNOR JOHN BEL EDWARDS, in
his official capacity as Governor of
Louisiana; WILLIAM SOMMERS, in his
official capacity as Deputy Secretary of the
Office of Juvenile Justice; and JAMES M.
LEBLANC, in his official capacity as
Secretary of the Louisiana Department of
Public Safety & Corrections

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this day been filed electronically with the Clerk of Court using the CM/ECF system, which will deliver notice of this filing to all counsel of record.

Baton Rouge, Louisiana this 6th day of October, 2022.

*/s/ Madaline King*

65975248.v1