UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,<br><br>Defendants. | Civil Action No. 3:22-cv-573-SDD-RLB |

**STATUS REPORT**

**A.    JURISDICTION**

This action arises under 42 USC §1983 and Section 504 of 29 USC §794. This Court has jurisdiction pursuant to 28 USC §§1331, 1343, and 2201.

**B.    BRIEF EXPLANATION OF THE CASE**

1.    Plaintiff claims:

Plaintiffs are juveniles who have been adjudicated delinquent and are in the care of the Office of Juvenile Justice ("O.J.J."). Presently, Plaintiffs are housed at various secure care facilities around the State of Louisiana, all of which were designed to house juveniles. None of these facilities are within the grounds or associated with an adult penitentiary.

The secure facilities at which Plaintiffs are housed provide schooling, special education, recreation, treatment, and juvenile counseling. Some Plaintiffs have disabilities as defined under Section 504 of the Rehabilitation Act (29 USC §794).

In a haphazard political response to an incident at Bridge City Center for Youth in Jefferson Parish, the Governor and OJJ concocted a plan to house certain juveniles on the former death row at Louisiana State Penitentiary. This building was designed to be a death row. There are single cells with bars and metal beds; no adequate space for group learning; no adequate space for either indoor nor outdoor recreation. At the time of the complaint and the trial of the preliminary injunction in this matter, Defendants agreed there was not proper staffing of any sort for this Angola juvenile detention center. Sufficient guards had not been hired. Sufficient teachers had not been hired. Much of the area where the children would be placed is conspicuously marked as being the former death row. The proper equipment for learning was not in place. Leadership of OJJ testified that even aside the structural issues that cannot be cured (a contention with which defendants disagree), the former death row is not ready to house any juveniles. Adult DOC guards will be patrolling within the building and interacting with the juveniles, for which they have no training.

The threat of being moved far away from their families to the former death row has caused severe mental trauma to the Plaintiffs, which in turn is harming them physically as well. There is no public transportation to Angola, meaning families without means cannot visit their children. The juveniles will be placed in death row cells, which Plaintiffs' expert testified will harm their chances at rehabilitation.

Further, as Defendants admitted, as far as Plaintiffs know there are no sufficient protections to ensure that the juveniles rights under the Fourteenth Amendment and Section 504 will be protected. Further, the structural aspects of a carceral space designed to house inmates condemned to die will—no matter how the Defendants try to dress it up—and the threat of being sent there will harm the Plaintiffs mentally, emotionally, and physically.

2.   Defendants' Claims:

The OJJ is a state agency charged with the providing rehabilitation services to juveniles who have been adjudicated as delinquent. OJJ's mission is to protect the public by providing safe and effective individualized services to youth, who will become productive, law-abiding citizens. There are three primary levels of care for Youth in the OJJ system: probation and parole, non-secure facilities such as group homes, and secure care facilities.

OJJ houses certain Youth who have been adjudicated delinquent in secure care facilities. A number of factors may cause a Youth to be assigned to a secure care facility. The most common reasons a Youth is assigned to a secure care facility include the violent nature of the underlying criminal act committed by the Youth, the Youth committing a crime of sexual assault, the Youth's repeated commission of serious crimes, and/or the Youth's failure to comply with less restrictive rehabilitation programs such as probation or non-secure facilities. OJJ currently maintains five secure care facilities across the state: Acadiana Center for Youth at

Bunkie ("ACY"), Acadiana Center for Youth at St. Martinville ("ACY-SM"), Bridge City Center for Youth ("BCCY"), Swanson Center for Youth at Monroe ("SCY") and Swanson Center for Youth at Columbia ("SCY-C").

Historically, the majority of Youth offenders in OJJ secure care facilities generally have been able to adapt to the secure environment and comply with behavioral rules and facility policies. Recently, there has been a significant increase in the frequency and severity of large-scale and/or serious events at OJJ secure care facilities, such as riots, attempted and successful escapes, and acts of violence against staff and other Youth. Certain Youth (numbering probably less than 25 total across OJJ's entire secure care system) have engaged in violent and destructive behavior, injuring other Youth and staff members, utterly destroying multiple facilities, and disrupting OJJ's ability to deliver educational and rehabilitation services to the other Youth in its custody. The disruptive Youth have repeatedly escaped and have engaged in violent and serious criminal behavior prior to their apprehension and return to the facilities.

Youth who have escaped from OJJ secure care facilities have been accused of motor vehicle theft, carjacking, burglary, armed robbery, attempted murder, reckless operation of stolen vehicles, and illegal possession of handguns. The problematic Youth, who are primarily housed at BCCY currently, have destroyed the physical facilities to the point that OJJ no longer has enough available beds in habitable condition to house the Youth in its custody.

In response to the need for a greater level of individualized care in a more restrictive housing environment, OJJ is establishing a Transitional Treatment Unit ("TTU") in an effort to effectively deliver its rehabilitative services. OJJ has begun renovation projects at multiple secure care facilities across the state, including a newly-renovated TTU at SCY. While repairs are being made at existing secure care facilities, OJJ has identified an unused building on the campus of Louisiana State Penitentiary ("LSP") which, with minor modifications, can satisfy the needs of the TTU. OJJ plans to open a sixth secure care facility, to be called Bridge City Center for Youth at West Feliciana ("BCCY-WF") on the campus of LSP as a temporary location for the TTU pending completion of the renovations and repairs at other secure care facilities.

The planned BCCY-WF facility is physically and geographically isolated from housing units for adult offenders at LSP. BCCY-WF will be operated by OJJ. Youth housed at BCCY-WF will continue to receive the same level of services as they receive at the other secure care facilities, including, but not limited to, educational services, medical services, and counseling and rehabilitation services.

OJJ's plan to temporarily house Youth at BCCY-WF complies with all federal constitutional and statutory requirements.

**C. PENDING MOTIONS**

List any pending motion(s), the date filed, and the basis of the motion(s):

1. Plaintiff's Anti-Retaliation motion

2. Plaintiff's Motion for expedited discovery and onsite inspection

3. Defendants' Sealed Motion for Leave to File Unredacted Response in Opposition to Motion for Non-Retaliation Order and Exhibits Under Seal

**D. ISSUES**

List the principal legal issues involved and indicate whether or not any of those issues are in dispute:

1. Whether Defendants' transfer of Plaintiff Alex A and a putative class of other

    youth adjudicated delinquent from secure facilities to a facility on the grounds of Angola violates their duty to provide conditions of reasonable health and safety to the youth it holds in its custody, and demonstrates deliberate indifference to a substantial risk of serious harm to Plaintiffs, constituting a violation of the Fourteenth Amendment to the U.S. Constitution.  This is in dispute.

2. Whether Defendants' transfer of Plaintiff Alex A, a child with a disability (and other similarly situated putative class members) to a juvenile facility on the grounds of Angola will deprive them of education accommodations and other services under federal law to which they are entitled, including Section 504 of the Rehabilitation Act of 1973.  This is in dispute.

**E. DAMAGES**

This is an action seeking Injunctive and Equitable relief. Separately, for each party who claims damages or an offset, set forth the computation of damages or the offset:

1. Plaintiff's calculation of damages: No damages claimed.

2. Defendant's calculation of offset and/or plaintiff's damages: N/A

3. Counterclaimant/cross claimant/third party's calculation of damages: N/A

**F. SERVICE:**

Identify any unresolved issues as to waiver or service of process, personal jurisdiction, or venue:  None.

**G. DISCOVERY**

1. Date of Rule 26(f) conference: *October 4, 2022*

2. Parties or counsel who participated in conference: *For the Plaintiff*: Nancy Rosenbloom, Aditi Shah, Tammie Gregg, and David Utter; *For Defendants Gov. John Bel Edwards, Dep. Sec. William Sommers, and Sec. James M. LeBlanc:* Allena McCain, Lem Montgomery, and Kyle Miller.

3. Date the Rule 26(a)(1) disclosures were made or will be made: *October 18, 2022*.

4. If any party objects to making the initial disclosures required by Rule 26(a)(1) or proposes changes to the timing or form of those disclosures,

   a. Identify the party or parties making the objection or proposal: *None*

   b. Specify the objection or proposal: *N/A*

5. Please describe any protective orders or other limitations on discovery that may be required/sought during the course of discovery. (For example: are there any confidential business records or medical records that will be sought? Will information that is otherwise privileged be at issue?)

   The parties negotiated and Judge Dick signed the protective order covering this litigation.

6. Discovery from experts:

   Identify the subject matter(s) as to which expert testimony will be offered:

   By plaintiff(s): Expert in juvenile justice, expert on psychological effects of the defendants' plan to house children on the grounds of Angola prison.

   By defendant(s): Expert in juvenile justice, expert in psychology

7. If any party is requesting that discovery be limited to particular issues or conducted in phases, please

   a. Identify the party or parties requesting such limits: *At this time, no party requests that discovery be limited.*

   b. State the nature of any proposed limits: *Not applicable at this time.*

8. If the case involves electronic discovery,

   a. State whether the parties have reached an agreement regarding the preservation, disclosure, or discovery of electronically stored information, and if the parties prefer to have their agreement memorialized in the scheduling order, briefly describe the terms of their agreement: *This case does involve*

66046043.v1

*electronic discovery. The parties' discussion of issues related to the discovery of electronically stored information ("ESI") is ongoing.*

b. Identify any issues regarding electronically stored information as to which the parties have been unable to reach an agreement:

*Plaintiff intends to request true native production, i.e. not near-native, or paper production, of ESI from all defendants. Plaintiff is aware of her obligations under the 2015 Amendments to the Federal Rules of Civil Procedure ("the Rules") and intends to conform her discovery requests to those changes in the rules, including making her requests proportional to the needs of the case.*

*Defendants propose that ESI should be produced in the following manner:*

1. *All ESI documents will be produced in multi-page PDF format with a corresponding Concordance format data (.dat) and image (.opt) load files, including corresponding document-level extracted text and the following metadata fields, to the extent they exist:*

    (a)   Custodian (Name of Custodian from which file is being produced);

    (b)   Bates Begin (beginning production number);

    (c)   Bates End (ending production number);

    (d)   Attach Begin (beginning attachment range number);

    (e)   Attach End (ending attachment range number);

    (f)   FROM (sender)

    (g)   TO (recipient)

    (h)   CC (recipients copied)

    (i)   BCC (recipients blind-copied)

    (j)   Date Sent (date the email was sent);

    (k)   Time sent (time the e-mail was sent);

    (l)   Date Received (Date the e-mail was received);

    (m)   Time Received (time the e-mail was received);

    (n)   Subject (Email subject)

    *(o)    Email Folder (The folder within the mailbox where the message resided);*

    *(p)    Page count;*

    *(q)    File Name (original file name of document);*

    *(r)    Created Date (Date the file was created);*

    *(s)    Created Time (time the file was created);*

    *(t)    Last Modified Date (Date the file was last modified);*

    *(u)    Last Modified time (time the file was last modified);*

    *(v)    MD5 Hash Value or Equivalent;*

    *(w)    Original File Path (Full path location to where the file resided);*

    *(x)    Native link (path to native file as included in the production e.g. d:\PROD001\natives\ABC00015.xls);*

    *(y)    All Custodians (Field with data showing all other custodians who had a copy of the document that is not produced pursuant to the global de-duplication done as provided for by paragraph 1(h) above).*

2. *The Parties agree that, upon reasonable request, specific documents produced in PDF format also shall be produced in native format, provided that if a Party uses the native format version of a document to create exhibits, demonstratives, or in any other way in which the data contained therein is shared with other Parties, third parties, or the Court, the Party so using the native version of the document shall emboss the bates label identifier and confidentiality designation on the exhibit or demonstrative so as to identify the source of the data being shared.*

3. *The Parties acknowledge that Excel spreadsheets, video files, audio files, and other non-standard files types (i.e. CAD, databases, etc.) shall be produced in native format with a bates-stamped placeholder indicating the file is being produced in native format. The native file shall be re-named to match the bates-stamp of the corresponding placeholder.*

9. If the case is known to involve claims of privilege or protection of trial preparation material,

    a. State whether the parties have reached an agreement regarding the procedures for asserting claims of privilege or protection after production of either electronic or other discovery material: *The parties have already agreed to a*

> *protective order, approved by the Court. All parties do not anticipate any additional issues related to claims of privilege or protection of trial preparation material.*
>
> b. Briefly describe the terms of any agreement the parties wish to have memorialized in the scheduling order (or attach any separate proposed order which the parties are requesting the Court to enter addressing such matters): *None at this time. The protective order already in place will continue.*
>
> c. Identify any issues regarding claims of privilege or protection as to which the parties have been unable to reach an agreement: *No additional issues at this time.*

**H.   PROPOSED SCHEDULING ORDER**

1. If the parties propose an alternative timeframe for exchanging initial disclosures, please provide that proposed deadline: October 18, 2022

2. Recommended deadlines to join other parties or to amend the pleadings: November 2, 2022 with the understanding that putative class members may be added as Plaintiffs after this date with good cause under Rule 15

3. Filing all discovery motions and completing all discovery except experts: Plaintiffs propose March 3, 2023 and Defendants' propose December 16, 2022

4. Disclosure of identities and resumés of expert witnesses (if appropriate, you may suggest different dates for disclosure of experts in different subject matters):

    Plaintiff(s): <u>Plaintiffs propose April 7, 2023; Defendants propose January 20, 2023</u>.

    Defendant(s): <u>Plaintiffs propose May 12, 2023; Defendants propose February 24, 2023</u>.

5. Exchange of expert reports:

    Plaintiff(s): <u>Plaintiffs propose June 16, 2023; Defendants propose March 27, 2023</u>.

    Defendant(s): <u>Plaintiffs propose July 17, 2023; Defendants propose March 28, 2023</u>.

6. Completion of discovery from experts: <u>Plaintiffs propose August 18, 2023; Defendants propose April 28, 2023</u>.

7. Filing dispositive motions and Daubert motions: <u>Plaintiffs propose September 22, 2023; Defendants propose May 2, 2023</u>.

8. All remaining deadlines and the pre-trial conference and trial date will be included in the initial scheduling order. The deadlines will be determined based on the presiding judge's schedule, within the following general parameters.[1] The parties should not provide any proposed dates for these remaining deadlines.

   a. Deadline to file pre-trial order (approximately 16 weeks after dispositive motion deadline).

   b. Deadline to file motions in limine (approximately 20-22 weeks after dispositive motion deadline).

   c. Deadline to file an affidavit of settlement efforts (approximately 22-24 weeks after dispositive motion deadline).

   d. Deadline to submit joint jury instructions, voir dire, verdict forms, and trial briefs to the presiding judge (approximately 25-27 weeks after dispositive motion deadline).

   e. Pre-trial conference date (approximately 18-20 weeks after dispositive motion deadline).

   f. Trial date (approximately 27-29 weeks after dispositive motion deadline).

9. If the general outline of proposed deadlines does not fit the circumstances of your particular case, please provide a proposed joint schedule of deadlines which is more appropriate for your case.

I. **TRIAL**

   1. Has a demand for trial by jury been made?

      [ ] YES    [ x ] NO

   2. Estimate the number of days that trial will require: 5-7 trial days

J. **OTHER MATTERS**

   Are there any specific problems the parties wish to address at the scheduling conference?

   [X] YES    [ ] NO

   i. If the answer is *yes*, please explain:

---

[1] The date ranges provided for the new deadlines, pre-trial conference, and trial date are a general guideline only. The actual dates may vary depending on the complexity of a particular case. All requests for subsequent changes to the deadlines set in the scheduling order under number 7 must be by motion directed to the presiding judge.

66046043.v1

*Plaintiff intends to file an amended complaint with additional named plaintiffs and a motion for class certification. At this point Defendants oppose class certification, hence an evidentiary hearing may be necessary.*

*Defendants and Plaintiffs have a fundamental dispute about the appropriate scope of remaining discovery.*

**K.** SETTLEMENT

1. Please set forth what efforts, if any, the parties have made to settle this case to date.

   *Plaintiffs have made two settlement offers, one prior to the Preliminary Injunction hearing that detailed alternatives to opening the Angola facility to youth and one after the hearing that provided key steps by the Defendants that, if taken, would resolve this matter without litigation. Defendants rejected both without discussion.*

   *Counsel for Defendants are aware of only one formal settlement offer conveyed by Plaintiff's counsel which was rejected because its terms required, inter alia, that the Defendants refrain from opening the BCCY-WF facility.*

2. Do the parties wish to have a settlement conference:

   [ x ] YES     [ ] NO

   If your answer is *yes*, at what stage of litigation would a settlement conference be most beneficial? *After pending legal and discovery disputes are resolved and the parties have time to consult with their respective clients.*

**L.   CONSENT TO JURISDICTION BY A MAGISTRATE JUDGE**

You have the right to waive your right to proceed before a United States District Judge and may instead consent to proceed before a United States Magistrate Judge.

Indicate whether, at this time, all parties will agree, pursuant to 28 U.S.C. § 636(c), to have a Magistrate Judge handle all the remaining pretrial aspects of this case and preside over a jury or bench trial, with appeal lying to the United States Court of Appeals for the Fifth Circuit.

All parties agree to jurisdiction by a Magistrate Judge of this court:

[ ] YES     [x ] NO

**If your response was "yes" to the preceding question, all attorneys and unrepresented parties should sign the <u>attached form</u> to indicate your consent.**

This 13 day of October, 2022.

                                            Respectfully submitted,

/s/: *David J. Utter*
DAVID J. UTTER **
Louisiana Bar Number: 23236
WILLIAM R. CLAIBORNE
Georgia Bar Number: 126363
THE CLAIBORNE FIRM, P.C.
410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
david@claibornefirm.com
will@claibornefirm.com

/s/: *Christopher J. Murell*
CHRISTOPHER J. MURELL
Louisiana Bar Number: 32075
MURELL LAW FIRM
2831 St. Claude Avenue
New Orleans, Louisiana 70117
(504) 717-1297 Telephone
(504) 233-6691 Facsimile
chris@murell.law

/s/: *Hector Linares*
HECTOR LINARES
Louisiana Bar Number: 28857
SARA GODCHAUX
Louisiana Bar Number: 34561
STUART H. SMITH LAW CLINIC
LOYOLA UNIVERSITY NEW ORLEANS
COLLEGE OF LAW
7214 St. Charles Avenue, Box 902
New Orleans, Louisiana 70118
(504) 861-5560 Telephone
(504) 861-5440 Facsimile
halinare@loyno.edu
shgodcha@loyno.edu

/s/: *Ronald Haley*
RONALD HALEY
Louisiana Bar Number: 30900
HALEY & ASSOCIATES
8211 Goodwood Blvd., Suite E
Baton Rouge, Louisiana 70806
(225) 755-9935 Telephone
(888) 900-9771 Facsimile
rhaley@ronaldhaleylawfirm.com

/s/: *David Shanies*
DAVID SHANIES
New York Bar Number: 4471140
SHANIES LAW OFFICE
110 West 40th Street
Tenth Floor
New York, New York 10018
Tel (212) 951-1710
Fax (212) 951-1350
Cell (646) 515-2151

/s/ *Nancy Rosenbloom*
NANCY ROSENBLOOM
New York Bar Number: 2168425
ADITI SHAH
New York Bar Number: 5886254
TAMMIE GREGG
MN Bar Number: 026240
ACLU NATIONAL PRISON PROJECT
125 Broad Street
New York, NY 10004
Telephone: (202) 393-4930

66046043.v1

david@shanieslaw.com

Facsimile: (202) 393-4931
nrosenbloom@aclu.org
ashah@aclu.org

\*\* *Lead Counsel*

**ATTORNEYS FOR PLAINTIFF**

*/s/ Lemuel E. Montgomery*
Kyle V. Miller (pro hac vice)
Lemuel E. Montgomery III (pro hac vice)
Anna Morris (pro hac vice)
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone:    (601) 948-5711
Facsimile:    (601) 985-4500
Kyle.Miller@butlersnow.com
Lem.Montgomery@butlersnow.com
Anna.Morris@butlersnow.com

Connell Archey (#20086)
Randal J. Robert (#21840)
Allena McCain (#38830)
Madaline King (#38301)
BUTLER SNOW LLP
445 North Boulevard, Suite 300 (70802)
P.O. Box 2997
Baton Rouge, LA 70821-2997
Telephone:    (225) 325-8700
Facsimile:    (225) 325-8800
Connell.Archey@butlersnow.com
Randy.Robert@butlersnow.com
Allena.McCain@butlersnow.com
Madaline.King@butlersnow.com

**Counsel for Defendants GOVERNOR JOHN BEL EDWARDS,** in [his official capacity as] **G**overnor of Louisiana; **WILLIAM** [... in his offici]al capacity as Deputy Secretary of the Office [...] **JAMES M. LEBLANC,** in his official [capacity as Secretary of] the Louisiana Department of Public Safety [and Correction]s

66046043.v1

66046043.v1