**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| ALEX A., by and through his guardian, MOLLY SMITH individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) ) | |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) | Civ. A. No. 3:22-CV-00573-SDD-RLB |
| | ) | |
| GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections, | ) ) ) ) ) ) ) ) ) | **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY CLASS ACTION** |
| | ) ) | |
| Defendants. | ) | |

COME NOW, through undersigned counsel, Defendants John Bel Edwards, in his official capacity as Governor of Louisiana; William Sommers, in his official capacity as Deputy Secretary of the Office of Juvenile Justice; and James M. LeBlanc, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections (collectively "Defendants") and respectfully submit this response in opposition to the *Motion to Certify Class Action* (Doc. No. 99, the "Motion") filed by named Plaintiffs Alex A., Brian B., and Charles C. (collectively, the "Named Plaintiffs"). For the reasons stated herein, the Court should deny Named Plaintiffs' Motion.

## I.    INTRODUCTION

As the movants for class certification, the Named Plaintiffs have the burden to demonstrate that each of the four Fed. R. Civ. P. 23(a) prerequisites to class certification are satisfied and that

the proposed class satisfies one of the three Fed. R. Civ. P. 23(b) requirements. The Named Plaintiffs have failed to establish any of the necessary elements.

This case is about whether the conditions of confinement at the Bridge City Center for Youth at West Feliciana ("BCCY-WF") are constitutional. While the Motion for Class Certification has a host of legal problems, one undisputed fact is fatal to almost every part of the analysis: **none of the Named Plaintiffs reside or have ever resided at BCCY-WF.** This single issue prevents the Named Plaintiffs from serving as adequate class representatives, prevents the Named Plaintiffs from properly exhausting their administrative remedies prior to filing suit, prevents the Named Plaintiffs from asserting claims that are typical of the proposed class, and prevents the Named Plaintiffs from presenting questions of law or fact that are common to those of the proposed class.

Because the Named Plaintiffs have never even set foot on campus at BCCY-WF, it is difficult to imagine that the Named Plaintiffs can allege that their constitutional rights have been violated by the conditions of confinement at BCCY-WF, but that is exactly what the Named Plaintiffs claim here.

As fully briefed below, the Named Plaintiffs' Motion for Class Certification fails for multiple reasons:

(1) Under Rule 23(a),

    a. Named Plaintiffs fail to establish that they are adequate class representatives because they have no knowledge or understanding of the conditions at BCCY-WF and therefore cannot control and prosecute this lawsuit.

    b. Named Plaintiffs cannot be adequate class representatives because they failed to properly exhaust administrative remedies in two ways: (i) their ARPs are not specific to the claims asserted in the lawsuit, and (ii) their ARPs are improperly anticipatory since they have never resided at BCCY-WF.

c.  Named Plaintiffs' claims are not typical of the putative class because Named Plaintiffs have never experienced the conditions at BCCY-WF.

d.  Named Plaintiffs fail to present common questions and answers that will lead to class-wide resolution.

e.  Named Plaintiffs fail to establish that the putative class is sufficiently numerous.

(2) Under Rule 23(b),

a.  There is no risk of inconsistent adjudications if separate actions are prosecuted.

b.  Named Plaintiffs fail to prove that a single injunction or declaration can serve as a proper remedy for the entire class.

c.  Named Plaintiffs fail to seek specific declaratory or injunctive relief.

For these reasons, the Court should deny the Motion for Class Certification (Doc. No. 99).

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

After a three-day evidentiary hearing featuring multiple fact and expert witnesses, this Court ruled that the Louisiana Office of Juvenile Justice ("OJJ") is "committed to rehabilitation of youth that will be placed in the temporary [transitional treatment unit or "TTU"] at BCCY-WF." Findings of Fact & Conclusions of Law ("FFCL") (Doc. No. 79) ¶ 139. The Court found that "the goal of using the [BCCY-WF] facility on the grounds of Angola is not punishment but rehabilitation in a setting that allows OJJ to deliver therapeutic services while maintaining order, security, and safety for all youth in the custody of OJJ." *Id.* Importantly, the Court concluded that "OJJ has made the necessary provisions to provide the youth subject to transfer to BCCY-WF with constitutionally adequate care and rehabilitative services." *Id.* at 62. And, the Court found "**no evidence that Plaintiff's (or the proposed class's) constitutional rights would be violated** by the plan to transfer youth to BCCY-WF." *Id.* at 63 (emphasis added). Indeed, the Court concluded

that OJJ **"will provide a constitutional level of care to youth transferred"** to BCCY-WF. *Id.* at 2-3 (emphasis added).

Still, the Named Plaintiffs persist in their bid for class certification. The Motion for Class Certification (Doc. No. 99) proposes a class of all youth who "are now or will be in the custody of OJJ who have been, might be, or will be transferred" to BCCY-WF. Brief (Doc. No. 99-1) at 6. Additionally, the Motion seeks to certify a subclass of those youth within the proposed class who have "disabilities within the meaning of the ADA and Section 504 of the Rehabilitation Act." *Id.*; *see also id.* at 20 (describing the proposed subclass as having disabilities "[that] require additional special education services under the law").

Since the Court has denied Plaintiffs'[1] Emergency Motion for Temporary Restraining Order and Preliminary Injunction (*see* Doc. Nos. 15 and 79 respectively), what remains are only the Named Plaintiffs' claims for permanent injunction. Specifically, Plaintiffs ask the Court to:

- "Certify the proposed class and subclass," Am. Class Action Compl. (Doc. No. 96) at 39;

- "Enter a declaratory judgment that Defendants are violating Named Plaintiffs' and class members' constitutional rights (and, for proposed disability subclass members, federal statutory rights) by transferring them to the [BCCY-WF] where they will not receive lawful conditions of confinement, counseling, education, other rehabilitative services, and sufficient safety from adults incarcerated at [the Louisiana State Penitentiary or "LSP"]," *id.*;

- "Issue a preliminary injunction and permanent injunction, requiring Defendants to cease plans to transfer Plaintiffs and class members to the OJJ site at Angola, and to immediately release to the community or transfer Plaintiffs and any class members who have already been moved to the OJJ site at Angola back to one of OJJ's pre-existing secure care or other facilities," *id.*; and

- "Expedite review of this case." *Id.*

---

[1] At the time of the filing of the Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction, the only named Plaintiff was Alex A. *See* Doc. No. 3.

Notably, the Court has already expressly denied these very requests:

- Following the evidentiary hearing on Plaintiff's Motion for Preliminary Injunction, the Court concluded Defendants are <u>not</u> violating Plaintiffs' constitutional rights. FFCL (Doc. No. 79) at 63 (finding "no evidence that Plaintiff's (or the proposed class's) constitutional rights would be violated by the plan to transfer youth to BCCY-WF").

- As part of their Motion for Temporary Restraining Order and Preliminary Injunction, Plaintiffs urged the Court to "prevent the transfer of any youth who are or will be in OJJ's custody to [BCCY-WF], and direct Defendants to return any youth already sent there to [other] OJJ facilities." Memo. in Support of Plaintiff's EMTRO (Doc. No. 9) at 30. The Court <u>denied</u> this relief. *See* Doc. Nos. 15 and 79, respectively.

- Plaintiffs have all along sought to "expedite" this case. *See* Class Action Complaint (Doc. No. 1) at 1 ("Immediate Relief Sought"); Motion for Emergency Temporary Restraining Order and Preliminary Injunction (Doc. No. 9); Motion for Expedited Discovery (Doc. No. 82). The Court has <u>denied</u> all of these requests. *See* Doc. Nos. 15, 79, and 98, respectively.[2]

In keeping with the above trend, the Court should now deny Plaintiffs' Motion for Class Certification.

## II.  <u>LAW AND ARGUMENT</u>

### A.    **Legal Standard for Class Certification**

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). The variation from the general rule

---

[2] In the same vein, Plaintiffs seek an award of attorneys' fees under 42 U.S.C. § 1988. *See* Am. Class Action Compl. (Doc. No. 96) at 39. However, such fees are available only to a "prevailing party." 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs"). The Court has repeatedly concluded that Plaintiffs have no substantial likelihood of success here. *See* Ruling (Doc. No. 79) at 40 ("Plaintiff failed to carry his burden of showing a substantial likelihood of success on the merits."), at 41 ("[T]here has been utterly no showing of likelihood of success on the merits of [a disability discrimination] claim."), at 49 ("Plaintiff failed to present evidence to demonstrate a likelihood of success that he could satisfy the subjective component of the deliberate indifference standard."), at 51 ("Plaintiff failed to meet his burden of demonstrating a likelihood of success on the merits of his conditions of confinement claim."), at 54 ("Plaintiff has failed to demonstrate a likelihood of success on the merits as to his unconstitutional punishment/due process claim."), at 58 ("Having found that the Plaintiff failed to demonstrate a likelihood of success on his RA and Section 1983 claims, the Motion for injunctive relief fails."), at 59 ("Plaintiff has presented evidence to support the likelihood that psychological harm is imminent upon his transfer to BCCY-WF.").

against aggregate litigation raises significant due process concerns for the absent class members, whose legal rights are being adjudicated without their involvement and, in the case of a Rule 23(b)(1) or (b)(2) class, without their knowledge or consent. *See H.L. v. Matheson*, 450 U.S. 398, 432 n.9 (1981). Likewise, requiring a defendant to engage in aggregate litigation against absent plaintiffs raises important concerns for the protection of the defendant's due process rights. *See Unger v. Amedisys Inc.*, 401 F.3d 316, 320-21 (5th Cir. 2005).

Upon a motion for class certification, the Court is to conduct a "rigorous analysis" of the class certification requirements. *See Dukes*, 564 U.S. at 350-51 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. Thus, in the class-certification context, courts are permitted to "probe behind the pleadings" and "touch[ ] aspects of the merits." *Id.* at 351-52. The Fifth Circuit has construed this directive to require district courts to "look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'" *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)). The Fifth Circuit further instructs that "when certifying a class, a district court must detail with sufficient specificity how the plaintiff has met the requirements of Rule 23." *Ward v. Hellerstedt*, 753 Fed. App'x 236, 244 (5th Cir. 2018) (citing *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 503 (5th Cir. 2004)).

The party seeking certification bears the burden to demonstrate that it is appropriate. *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 709 (5th Cir. 2020) (quoting *Castano*, 84 F.3d at 740. "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be

prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original).

To be certified as a class action, the named plaintiff must prove that all four of Rule 23(a)'s prerequisites to class certification are satisfied: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a); *see also Mitchell*, 954 F.3d at 709. In addition, the named plaintiff must prove that the proposed class fits at least one of the three types of classes contained in Rule 23(b). *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007). Here, the Named Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(1)(A).

The Named Plaintiffs are not entitled to class certification under Fed. R. Civ. P. 23. Their Motion for Class Certification fails to prove the necessary prerequisites of Rule 23(a). Additionally, the Named Plaintiffs fail to prove that the proposed class qualifies for certification under Rule 23(b)(1) or (b)(2).

**B.    Named Plaintiffs are not adequate class representatives under Rule 23(a).**

Adequacy, in the Rule 23(a) context, concerns "class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 480 (5th Cir. 2001). Adequacy requires three inquiries: "(1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Ward*, 753 Fed. App'x at 247 (citing *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017)); *see also Amchem*, 521 U.S. at 625 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."). At a minimum, "a class

representative (1) must be part of the class and (2) 'possess the same interest and suffer the same injury' as the class members." *Dukes*, 564 U.S. at 348-49.

Since "absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times." *Berger*, 257 F.3d at 480 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)). Thus, to satisfy the adequacy of representation requirement, "the class representatives [must] possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation." *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016) (quoting *Berger*, 257 F.3d at 482–83); *see also Ward*, 753 Fed. App'x at 247. While the class representatives "cannot be expected to have a sophisticated understanding of the legal intricacies involved in class action lawsuits such as this one," "they can be expected to show a willingness to take an active role in, and control, the litigation." *Cole v. Livingston*, No. 4:14-CV-1698, 2016 WL 3258345, at *9 (S.D. Tex. June 14, 2016).

The adequacy of representation analysis must be conducted with respect to "*the representative parties*." *See* Fed. R. Civ. P. 23(a) (emphasis added). A district court can only appropriately assess "the willingness and ability of the representatives to … control the litigation and to protect the interests of absentees" with reference to one or more specific claimants, as opposed to any claimant that could fall within the putative class. *Ward*, 753 Fed. App'x at 248.

Adequacy is a fact question. *See McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981). "Adequacy is for the plaintiffs to demonstrate; it is not up to defendants to disprove the presumption of adequacy." *Berger*, 257 F.3d at 481. "In the absence of *proof* of *all* required elements, the court may not certify a class." *Broussard v. Parish of Orleans*, No. Civ. A.

00-2318, 00-3055, 2001 WL 881290, at *3 (E.D. La. Aug. 3, 2001) (Wilkinson, Mag. J.) (emphasis in original; denying class certification, in part, due to the absence of proof on the question of adequacy of representation; citing *Berger*, 257 F.3d 475); *see also In re Kosmos Energy Ltd. Securities Litigation*, 299 F.R.D. 133, 145 (N.D. Tex. 2014) ("[P]laintiffs seeking certification must produce actual, credible evidence that the proposed class representatives are informed, able individuals, who are themselves—not the lawyers—actually directing the litigation.").

### 1. The Named Plaintiffs fail to offer sufficient evidence that they are adequate class representatives.

It is the Named Plaintiffs' burden to demonstrate they are adequate to serve as class representatives. *See Dukes*, 564 U.S. at 345 (explaining, under Rule 23, burden is on party seeking certification). They have failed to do so.

Plaintiffs' Motion for Class Certification offers declarations of two of the Named Plaintiffs. *See generally* Doc. Nos. 99-2 and 99-3. Previous pleadings have included a declaration of the third Named Plaintiff. *See* Doc. No. 9 at Ex. 2. This is the sum total of the evidence offered by Plaintiffs to support their factual allegations[3] – and it wholly fails to establish that the Named Plaintiffs are qualified as adequate class representatives. *See id.* (asserting no allegation that Named Plaintiffs have knowledge and understanding to be capable to control or prosecute the case).

The declarations basically explain that each Named Plaintiff is currently in OJJ custody and that each Named Plaintiff has some sort of disability. *See generally id.* The Named Plaintiffs all allege (a wholly unsupported) concern that they will be transferred to BCCY-WF in the future. *Id.* However, it is undisputed that <u>none</u> of the Named Plaintiffs reside at BCCY-WF. *See* Doc. No.

---

[3] Plaintiffs' counsel offered declarations regarding the adequacy of their representation, which is not relevant to and does not lend support for the factual allegations that gave rise to the lawsuit. *See* Doc. No. 99-1 at 23-24. Defendants do not challenge the adequacy of Named Plaintiffs' counsel for purposes of Rule 23(g); however, Defendants argue that the Motion for Class Certification (Doc. No. 99) nevertheless fails for the many other reasons discussed herein.

99-2 at ¶ 4 (housed at Bridge City Center for Youth[4]); Doc. No. 99-3 at ¶ 4 (housed at Acadiana Center for Youth at St. Martinville); Doc. No. 9 at 11 (housed at Bridge City Center for Youth). And there is no evidence whatsoever that any of the Named Plaintiffs will <u>ever</u> be transferred to BCCY-WF. *See generally id.* Accordingly, none of the Named Plaintiffs contend (nor could they contend) that they have experienced conditions of confinement at BCCY-WF. *Id.*

To be clear, this lawsuit is not about the (unfounded) fear of one day being transferred to BCCY-WF; it is about the actual conditions of confinement at BCCY-WF and whether those conditions are constitutional. The Named Plaintiffs have never experienced those conditions because they do not live at BCCY-WF, and they have presented no evidence that they will ever live at BCCY-WF. Therefore, the Named Plaintiffs have presented no evidence that they could possibly know and understand the conditions of confinement at BCCY-WF for purposes of controlling and prosecuting this litigation. *See, e.g. Copeland v. Wabash County, Indiana*, 338 F.R.D. 595, 605 (N.D. Ind. 2021) (finding plaintiff inmates were adequate representatives where plaintiffs "understand the basic facts underlying their claims, most notably the **conditions they experienced** as a result of the alleged overcrowding of jails") (emphasis added)).

The Named Plaintiffs have never been housed at BCCY-WF and have had no opportunity to experience any of the claimed conditions of confinement. As such, the Named Plaintiffs have failed to show that they are adequate class representatives.

### 2. Named Plaintiffs are not adequate class representatives because they failed to properly exhaust administrative remedies.[5]

A class representative's failure to exhaust administrative remedies "may render [him] inadequate if it means that [his] claim is subject to summary judgment or dismissal where similar

---

[4] Bridge City Center for Youth is a different facility from BCCY-WF.
[5] The parties have previously briefed the issue of exhaustion of administrative remedies as to one of the Named Plaintiffs. The Court ruled that OJJ's denial of such Named Plaintiff's emergency ARP "constituted a final decision

claims by other class members would not suffer the same defect." *Swanson v. Lord & Taylor LLC*, 278 F.R.D. 36, 39 (D. Mass. Dec. 20, 2011) (citing cases). Therefore, as class representatives, the Named Plaintiffs must properly exhaust "such administrative remedies as are available" prior to filing a Section 1983 action concerning prison conditions. *McMIllan v. Dir., Tex. Dep't of Crim. Justic, Correctional Institutions Div.*, 540 Fed. App'x 358, 358 (5th Cir. 2013) (citing 42 U.S.C. § 1997e(a); case citation omitted).

"Requests for injunctive relief are not exempt from the exhaustion requirement, and failure to completely exhaust prior to filing suit cannot be excused." *Id.* (citation omitted). *See also Nellson v. Barnhart*, 454 F. Supp.3d 1087, 1092 (D. Colo. 2020) ("A plaintiff is required to exhaust administrative remedies before seeking a TRO or a preliminary injunction, just as he is required to do before seeking other remedies covered by the PLRA.") (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

### (a) Named Plaintiffs' ARPs are not specific enough to put OJJ on notice of problems with the existing conditions of confinement at BCCY-WF.

To properly exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"), an inmate must exhaust as to **each specific claim** at issue in the lawsuit. *See Sylvester v. Cain*, No. 04-0572-B-M2, 2006 WL 8440126, at *1 M.D. La. (March 30, 2006) (finding plaintiff exhausted relative to certain claims but not to "any of the other claims asserted in the Complaint"). This is because the "primary purpose of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's **specific complaints** so as to provide time and

---

upon which Plaintiff could rely in filing suit," or alternatively, that any remaining procedure would have "operate[d] as a simple dead end" because it "lack[ed] authority to provide any relief." *See* Ruling (Doc. No. 79) at 7. All of the Named Plaintiffs filed an emergency ARP. *See* Collective Ex. A. Thus, based on the Court's analysis, Defendants will assume here that the Named Plaintiffs completed the administrative procedure on their emergency ARPs. However, Defendants argue that these ARPs still fail to exhaust the Named Plaintiffs' administrative remedies on the claims asserted in the Amended Class Action Complaint because (1) they are not sufficiently specific as to the current conditions of confinement at BCCY-WF and (2) they are improperly anticipatory, filed before the Named Plaintiffs have ever experienced any conditions of confinement at BCCY-WF, since Named Plaintiffs do not reside there.

opportunity to address complaints internally." *Thomas v. Staler*, No. 06-659-JJB-CN, 2008 WL 874138, at *4 (M.D. La. April 1, 2008) (quoting *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004)) (internal quotations omitted) (emphasis added). "Accordingly, to be deemed adequate, **an inmate's administrative grievance [ARP] must be sufficiently specific** […] **in specifying a complaint**." *Id.* (emphasis added).

In *Thompson*, this Court showed just how strict the "specificity" requirement is. *See generally id.* This Court dismissed several of inmate's claims for failure to exhaust, where his complaint asserted "explicit claims" of denial of his Rastafarian diet, failure to provide an opportunity for Rastafarian services, and confiscation of his Rastafarian book – but his ARP had stated only generally that he was "unable to practice his religious beliefs." *Id.* The Court concluded that, "**absent more specific factual detail or allegations of actual misconduct** in the ARP" that would "place prison officials on notice of [a] claim" and "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit," the claims had to be dismissed for failure to exhaust. *Id.* (citing 42 U.S.C. § 1997e) (emphasis added).

Particularly relevant here, a representative's failure to grieve the *specific* claim alleged in the lawsuit destroys not only the adequacy of the representative, but also the typicality and commonality required to certify a class action. This is precisely what occurred in *Salem v. Mich. Dep't of Corr.*, No. 13-cv-14567, 2019 WL 4409709 (E.D. Mich., Sept. 16, 2019). In *Salem*, the district court found the representative inmates' grievances did not specifically allege the wrongful act asserted in the lawsuit – being searched while other inmates or non-involved staff were present in the room. *Id.* at *10. Instead, representative inmates' grievances alleged that they were subject to "spread labia" chair searches that were "humiliating" and "degrading" (but did not specifically

allege that those searches were not private, as claimed in the lawsuit). *Id.* The court found these grievances problematic for purposes of exhaustion because the grievances lacked the explicit claim at issue in the lawsuit. *Id.* at *9 ("[I]t is important that '[t]he issues [a plaintiff] may raise ... in [her] lawsuit are limited to the *specific issues* raised ... in [her] grievance.' […] The exhaustion requirement would be defeated if an inmate were permitted to raise additional issues ... in a § 1983 action that were never mentioned in the grievance." (quoting *Vandiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002)); emphasis in *Salem*; additional citations omitted).

While the court acknowledged that plaintiffs "have no duty to plead exhaustion," the court recognized that defendants had raised "substantive and non-frivolous" (albeit conclusory[6]) arguments calling plaintiffs' exhaustion into question. *Id.* at *9. Thus, and interestingly, the court never expressly concluded that plaintiffs' claims were not exhausted, but nevertheless, the court found itself "faced with the unappealing prospect of certifying a class only to have both named Plaintiffs later dismissed from the suit based on a failure to exhaust their claims." *Id.* at *9 (quoting an earlier order addressing the exhaustion issue and finding the same questions remain as to whether representatives properly exhausted the specific claims in the lawsuit). Ultimately, the court determined that the "unanswered issue of whether either of the named Plaintiffs, or even any putative class member, ha[d] exhausted their administrative remedies … raise[d] concerns regarding Plaintiffs' ability to meet their burden to demonstrate" Rule 23's requirements of typicality, adequacy, and commonality. *Id.* at *10 ("[T]he exhaustion issue … impacts Plaintiffs' ability to demonstrate that they are adequate class representatives and that their claims and

---

[6] Defendants in *Salem* were criticized by that court for making "only conclusory allegations regarding exhaustion, without citation to any evidence in the record." *Id.* at *10. Here, unlike in *Salem*, Defendants provide unrefuted evidence (the proposed class representatives' own grievances) to demonstrate that the Named Plaintiffs' indeed failed to exhaust administrative remedies because all of those grievances failed to allege a single existing condition of confinement that has occurred or is occurring at BCCY-WF.

defenses are typical of those of the class members, and raises concerns about the potential for individualized factual and legal issues predominating over class-wide issues."). For these reasons, the court denied plaintiffs' motion to certify the class action. *Id.* at \*15.

Turning to whether the Named Plaintiffs have exhausted in this case, the Court must closely compare Named Plaintiffs' ARPs to the claims asserted in the Amended Class Action Complaint to determine if the Named Plaintiffs grieved and fully exhausted the specific claims asserted in the lawsuit.

The ARPs submitted by Named Plaintiffs concern only their anticipatory fears of potentially being transferred to BCCY-WF, explaining their suspicions as to what the conditions of confinement at BCCY-WF may be like. *See generally* ARPs filed by Named Plaintiffs, *attached hereto as* Collective Exhibit A.[7] Two of the three ARPs were filed before BCCY-WF was even operational. *See* Collective Ex. A at 2-9 (dated Aug. 16, 2022) and at 10-17 (dated Sept. 2, 2022). Not one of these ARPs describe a single actual condition of confinement that has ever occurred or is occurring at BCCY-WF. *Id.*

In contrast, the Amended Class Action Complaint challenges specific elements of the existing and ongoing conditions of confinement at BCCY-WF that allegedly affect its residents. *See* Am. Class Action Compl. (Doc. No. 96) at 19 (BCCY-WF's "physical environment, design,

---

[7] Of course, Named Plaintiffs offer zero evidence beyond their unsupported speculation, and the Court has already found that all of these suspicions were conclusively disproven by Defendants' unrefuted evidence. *See* Ruling (Doc. No. 79) at ¶ 44 ("The Court finds that the evidence established that no youth will be transferred to BCCY-WF until the facility is ready, properly staffed, and can fully provide educational, medical, mental health, recreational, and food services."); ¶ 48 ("The Court finds that the evidence established that youth housed at BCCY-WF will not come in contact with adult inmates."); ¶ 49 ("The Court finds that the evidence established that OJJ is eliminating the opportunity for youth to be within sight and sound of adult inmates."); ¶ 110 ("The Court finds that, based on the unrefuted evidence [...], youth at BCCY-WF will be provided constitutionally adequate meals and opportunities for recreation. The Court further finds that youth will have the opportunity for contact visitation with family."); at p. 40 ("Plaintiff claims that disabled youth will not receive special education accommodations or mental health services at BCCY-WF. The evidence does not bear this out."); at p. 46 ("There is no evidence that a serious risk of the loss of standard services and programs provided to youth will result from the transfer plan."); at p. 47 ("There is also insufficient evidence to support Plaintiff's claim that there is a serious risk of excessive or abusive solitary confinement.").

and architecture … is inappropriate and constitutes punishment for youth transferred there"), at 21 (youth living in BCCY-WF cells lack privacy, which contravenes the recommended practice for juvenile facilities), at 22 (youth living at BCCY-WF "face an increased risk of suicide, solitary confinement, and use of force by staff"), at 26 (BCCY-WF "has inadequate indoor and outdoor recreation facilities"), at 27 (youth living at BCCY-WF "face unreasonable risks of harm to their health and safety").

Comparing the ARPs to the lawsuit, Named Plaintiffs' ARPs do not allege, for instance, that Named Plaintiffs reside in a punitive physical environment at BCCY-WF. The ARPs do not allege that Named Plaintiffs' privacy rights have been violated due to celled housing at BCCY-WF. The ARPS do not allege that Named Plaintiffs have been wrongfully placed in solitary confinement at BCCY-WF. The ARPs do not allege Named Plaintiffs have inadequate recreational facilities at BCCY-WF. These are only a few examples that demonstrate why Named Plaintiffs' ARPs concerning their suspicions of future conditions of confinement cannot possibly be specific enough to put OJJ on notice of actual problems with the existing conditions at BCCY-WF.[8]

Named Plaintiffs' ARPs fail to allege any specific complaints concerning the existing conditions of confinement at BCCY-WF. Thus, those ARPs fail to exhaust the claims asserted in the Amended Class Action Complaint.

### (b) The Named Plaintiffs' ARPs are improperly anticipatory. Named Plaintiffs cannot exhaust remedies for claims that have not yet occurred.

In a related (but distinct) issue, Named Plaintiffs' ARPs also fail to exhaust their claims because the ARPs are improperly anticipatory, filed before any of the Named Plaintiffs have ever experienced the alleged offenses asserted in the Complaint. *See, e.g. Jackson v. Baisden*, No. 1:20-

---

[8] To state the obvious, the Named Plaintiffs' ARPs have no choice but to lack specificity in describing the conditions at BCCY-WF, since the Named Plaintiffs have never experienced those conditions. It is also worth noting that OJJ has received zero administrative grievances or lawsuits by youth actually housed at BCCY-WF.

cv-174 (LAG), 2021 WL 4029269, at *3 (M.D. Ga. July 20, 2021) (dismissing plaintiff's lawsuit for excessive force for failure to exhaust, where plaintiff had filed grievances asserting concerns about threats to plaintiff by the subject officer but had not filed a grievance on the excessive force claim itself; "The alleged acts that form the basis of Plaintiff's claims against Defendant Boges had not yet occurred when Plaintiff filed the grievance that he now asserts exhausts his claims, and no grievances were filed by Plaintiff raising excessive force and retaliation by Defendant Boges.") (citing, *inter alia*, *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004)); *Jackson v. Matushak*, No. 20-C-1341, 2021 WL 3409290, at *5 (E.D. Wis. Aug. 4, 2021) ("An inmate cannot exhaust administrative remedies by filing an anticipatory inmate complaint for conduct that has not yet occurred."); *Ross v. County of Bernalillo*, 365 F.3d 1181, 1188 (10th Cir. 2004) (dismissing inmate's lawsuit for inadequate medical treatment where a previously-filed grievance alleged lack of medical care for injured shoulder but complaint sought relief for numerous related medical negligence incidents that took place after the filing of the grievance; "A grievance obviously cannot exhaust administrative remedies for claims based on events that have not yet occurred. Nor does a grievance exhaust administrative remedies for all future complaints of the same general type."), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 223 n. 3 (2007); *London v. Evans*, No 19-559, 2020 WL 4748065, at *3 (D. Dela. 2020) (grievance that was anticipatory in nature, filed before the alleged offense set forth in the complaint, did not serve to exhaust claims; grievance was "not relevant to the issue of whether Plaintiff exhausted her administrative remedies ... because it is clear [that the grievance] was submitted in anticipation of retaliation, not because retaliation had occurred").

The Named Plaintiffs are not adequate class representatives because they failed to properly exhaust administrative remedies. The Court should deny the Motion for Class Certification.

**3. The Named Plaintiffs fail to demonstrate their claims are typical of the putative class.**

"The typicality requirement goes to the heart of a representative parties' ability to represent a class," *Dieter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006), and the Rule 23(a) requirements of typicality and adequacy of representation are "closely related" in that "demanding typicality on the part of the representative helps ensure his adequacy as a representative." *Ward*, 753 Fed. App'x at 246 (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 485 n.27 (5th Cir. 1982)). To demonstrate typicality, the parties seeking certification need not show "a complete identity of claims." *Id*. (citing *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002); *see also* Fed. R. Civ. P. 23(a)(3). Rather, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Id*. Moreover, the typicality inquiry is not concerned so much with the "strengths of the named and unnamed plaintiffs' cases" as with the "similarity of legal and remedial theories behind their claims." *Id*. (citing *Ibe v. Jones*, 836 F.3d 516, 528–29 (5th Cir. 2016)).

Here, for the reasons discussed above regarding the inadequacy of the Named Plaintiffs serving as class representatives, the Named Plaintiffs' claims are not typical of the proposed class as a whole and, for this additional reason, the Motion for Class Certification should be denied.

**4. The Named Plaintiffs fail to establish the existence of common questions and common answers that will drive the litigation to resolution for all class members.**

The Named Plaintiffs have not identified a common question that is subject to a common answer that will drive this litigation toward resolution. Indeed, the question of whether any particular Youth suffers a constitutional violation at BCCY-WF turns on individualized issues regarding the youth's particular experience while housed at BCCY-WF – that is, whether each youth's particularized programming, rehabilitation, educational, and medical needs are (or are not)

met with constitutional sufficiency. These questions are not subject to a common answer. The Named Plaintiffs' claims do not satisfy Rule 23(a)(2)'s commonality requirement.

To satisfy Rule 23(a)'s commonality requirement, "the putative class members' claims must depend upon a common contention," which "must be of such a nature that it is capable of class-wide resolution." *Ward*, 753 Fed. App'x at 245 (citing *Yates v. Collier*, 868 F.3d 354, 361 (5th Cir. 2017); quoting *Dukes*, 564 U.S. at 350). Determining whether such "common contention" is true or false must allow for "resol[ution of] an issue that is central to the validity of each one of the claims in one stroke." *Id.*

The commonality requirement demands more than the presentation of questions that are common to the class because "any competently crafted class complaint literally raises common questions." *M.D. ex rel Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012). Further, the members of a proposed class do not establish that "their claims can productively be litigated at once," merely by alleging a violation of the same legal provision by the same defendant. *Id.*

What is significant with respect to a commonality determination is "not the raising of common questions—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Ward*, 753 Fed. App'x at 245 (citing *Yates*, 868 F.3d at 361). Similarly, to establish commonality, the plaintiffs must show that "the class members have suffered the same injury." *Id.* (quoting *Dukes*, 564 U.S. at 349). A key issue is whether dissimilarities between the claims may impede a common resolution.

Further, in order to determine whether that standard is met, it is necessary to go behind the pleadings and engage in a rigorous analysis that may require "some overlap with the merits of the plaintiffs' underlying claim." *Dukes*, 564 U.S. at 351; *see also* 7A Wright & Miller, Fed. Prac. & Proc.: Civil, § 1763 (3rd ed.). Rule 23(a)(2) is not met when the decision regarding the propriety

of injunctive or declaratory relief turns on a consideration of the individual circumstances of each class member or when the defendant has not engaged in a common course of conduct toward them. *See, e.g., Phillips v. Sheriff of Cook County*, 828 F.3d 541 (7th Cir. 2016); *see also* 7A Wright & Miller, Fed. Prac. & Proc.: Civil, § 1763 (3rd ed.).

In the context of litigation regarding detainees and conditions of confinement, it is important to remember that "each putative class member comes with a unique situation—different crimes, sentences, outdates, disciplinary histories, age, medical history, places of incarceration, […] availability of a home landing spot [to analyze the propriety of release], […] likelihood of violation or recidivism, and danger to the community." *Money v. Pritzker*, No. 20-cv-2093, 20-cv-2094, 2020 WL 1820660, at *15 (N.D. Ill. Apr. 10, 2020). Even where there are many questions common to the putative class members, when the requested relief requires an individualized inquiry, the case is not capable of resolution on a class-wide basis in one stroke. *Id.* "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers," and thus prevent class certification based on the commonality requirement. *Dukes*, 564 U.S. at 350.

The individualized circumstances applicable to each youth housed in an OJJ secure care facility prevent class certification, because the claims of each youth cannot be litigated and decided in one stroke. In fact, given the unique aspects of each youth's claim, it is unlikely that any two youths' claims could be decided together, let alone all 350-plus putative class members (as Named Plaintiffs have currently defined the class).

Moreover, the Named Plaintiffs fail to demonstrate that all class members have been harmed at all, or ever will be harmed, in essentially the same way. As one example, the Complaint points to generalized risks at BCCY-WF, such as the risk of exposure to staff trained to oversee

adult inmates and the risk that such staff will improperly use pepper spray and tasers on the youth. *See* Am. Class Action Compl. (Doc. No. 96) at ¶ 20. However, the Complaint fails to allege that all BCCY-WF residents (or any single BCCY-WF resident whatsoever) has come into contact with such a staff member or has been subjected to such use of force. *See generally id.*

Even the proposed and limited disability subclass cannot be subjected to class-wide resolution, as each of the three Named Plaintiffs apparently has a unique disability(ies) and requires services that vary from each of the other Named Plaintiffs. *See e.g.* Doc. No. 99-2 at ¶¶ 5-6 (noting daily group counseling, LAMOD program participation, and weekly sessions with social worker; citing medication prescribed for unidentified "behavior problems"); Doc. No. 99-3 at ¶¶ 5 (noting weekly individual counseling; citing diagnoses of ADHD, bipolar disorder, schizophrenia, and PTSD; referencing multiple prior admissions to mental health hospitals).

Simply put, the putative class members have not had (and will not have) a common experience at BCCY-WF; there are no common answers that can drive this litigation to class-wide resolution. On this basis, the Court should deny Plaintiffs' Motion for Class Certification.

### 5. The Named Plaintiffs fail to establish that the class is sufficiently numerous to warrant class certification.

To establish the numerosity requirement of Rule 23(a)(1), the Named Plaintiffs must demonstrate that the class is so numerous as to render joinder of all members impracticable. To satisfy this requirement, the Named Plaintiffs must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved. *See Pederson v. Louisiana State University*, 213 F.3d 858, 868 (5th Cir. 2000). The plaintiff bears the burden of showing impracticability and mere speculation as to the number of parties involved is not sufficient to satisfy the numerosity requirement. 7A Wright & Miller, Fed. Prac. & Proc.: Civil, § 1762 (3rd ed.).

The question of numerosity is a fact-specific inquiry within the broad discretion of the district court. *See Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981). Additionally, courts "need not blindly rely on conclusory allegations which parrot Rule 23 and may consider the legal and factual issues presented by plaintiffs' complaint." *Shook v. El Paso Cty.*, 386 F.3d 963, 968 (10th Cir. 2004).

Rule 23(a)(1) "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the NW, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Courts must consider "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiffs claim." *Zeidman*, 651 F.2d at 1038. When the court finds that the class members are widely dispersed geographically, then their joinder may be deemed impracticable, whereas, depending on the numbers, class members located in a compact geographic location may not meet the requirement. *See Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980) (numerosity requirement not met where identity and addresses of putative class members were ascertainable and they lived in compact geographic area).

In this case, the Named Plaintiffs do not satisfy the numerosity requirement. The Named Plaintiffs argue that the class is sufficiently numerous, consisting of "at least 356 youth in OJJ secure care facilities who **might be transferred** to [BCCY-WF], thus making joinder impracticable." Doc. No. 99-1 at 7 (emphasis added).[9] Implicitly conceding that the class is not sufficiently numerous, the Named Plaintiffs attempt to keep the Court's attention on case law holding that classes can be populations that are "in flux" and are not subject to an "exact numerical threshold." *Id.* at 19-20. The Court will find, though, that Plaintiffs' cited cases are easily distinguishable from, even incomparable to, the case at bar as to numerosity. *See Jones v. Gusman*,

---

[9] To state the obvious, individuals who are never transferred to BCCY-WF have no actionable claim that the conditions of confinement at BCCY-WF violated their constitutional rights.

296 F.R.D. 416 (E.D. La. 2013) (class of prison inmates numbering over 2,500, where class representatives were ten current inmates); *Cole*, 2016 WL 3258345, at \*6 (proposed class of over 1,400 inmates, with a proposed subclass of over 400 members); *Reid v. Donelan*, 297 F.R.D. 185 (D. Mass. 2014) (resident alien sought to certify class of all individuals held in state's immigration detention facilities for over six months without individual bond hearings; class floor was about 40, but that number would increase as additional immigrants entered the state; further, the "transient nature of the proposed class" made joinder impracticable). For obvious reasons, those cases are not like this one.

Here, the Amended Class Action Complaint seeks redress for violations of constitutional rights of the residents of BCCY-WF. *See generally* Am. Class Action Compl. (Doc. No. 96). The Named Plaintiffs admit that, even "[a]t full capacity, BCCY-WF will house between twenty-four to thirty youth." Doc. No. 99-1 at 19. These thirty (or fewer) individuals will be easily identifiable and ascertainable and will necessarily be within a "compact geographic location" of BCCY-WF. Plaintiffs have offered no explanation as to why joinder of these thirty (or fewer) youth is impracticable – because it is obviously feasible.

The proposed class is not sufficiently numerous. The Court should deny Plaintiffs' motion to certify.

**C.    A Rule 23(b)(1) and (b)(2) Class Cannot Be Certified.**

Failure to satisfy any one of the four Rule 23(a) requirements is fatal to the Named Plaintiffs' proposed class. Thus, the Court's inquiry can end there. But in the unlikely event that the Court finds that the Named Plaintiffs have satisfied the necessary Rule 23(a) prerequisites, Plaintiffs still must prove that the class meets one of the Rule 23(b) categories.

Rule 23 is not a pleadings standard. *Dukes*, 564 U.S. at 350. The Named Plaintiffs bear the burden of establishing that all elements of Rule 23—including Rule 23(b)—are satisfied. *See Rose v. Tennessee Gas Transmission Co.*, No. Civ. A. 05-3102, 2006 WL 1581358, at *2 (E.D. La. May 17, 2006) ("Once a plaintiff satisfies all four requirements set out in Rule 23(a), the plaintiff must demonstrate that the proposed class satisfies one of the subdivisions of Rule 23(b) in order to obtain class certification. *See generally* Rule 23(b). The Named Plaintiffs have failed to meet this burden.

**1.  There is no risk of inconsistent or varying adjudications under Rule 23(b)(1)(A).**

Rule 23(b)(1)(A) states that "[a] class action may be maintained if Rule 23(a) is satisfied and if ... prosecuting separate actions by or against individual class members would create a risk of ... inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class ...." Fed. R. Civ. P. 23(b)(1)(A).

The Named Plaintiffs do not reference Rule 23(b)(1)(A) in their Motion to Certify Class Action. *See* Doc. No. 99-1 at 31-32. Named Plaintiffs present no evidence to indicate that the putative class members are at risk for inconsistent judgments, and accordingly, concede that there is no such risk. *Id.* The Court should therefore conclude that class certification is not appropriate under subsection (1). *See Isabel v. Velsicol Chemical Corp.*, No. 04-2297, 2006 WL 1745053, at *7 (W.D. Tenn. June 20, 2006) (denying certification under Rule 23(b)(1) where "plaintiffs did not present any arguments in their briefs or at the hearing concerning why class certification would be appropriate under subsection (1), which is their burden to prove.").

**2.   Class certification is not appropriate under Rule 23(b)(2).**

Named Plaintiffs quote Rule 23(b)(2) correctly in their Motion to Certify Class, but they misapply it. Class certification is not appropriate under subsection (b)(2).

Rule 23(b)(2) allows a class action to be maintained when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Fifth Circuit has interpreted this language to create two relevant requirements when a proposed class seeks class-wide injunctive relief: (1) the "class members must have been harmed in essentially the same way," *Stukenberg*, 675 F.3d at 845 (citing *Maldonado*, 493 F.3d at 524; *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000)), and (2) "the injunctive relief sought must be specific." *Id*. (citing Fed. R. Civ. P. 65(d)); *see also Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010).

The Supreme Court has stated that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes*, 564 U.S. 338 at 360 ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that is can be enjoined or declared unlawful only as to all of the class members or as to none of them."). For a class certified under Rule 23(b)(2), "the relief sought must perforce affect the entire class at once." *Id*. at 361–62.

With respect to the requirement that the injunctive relief must be specific, the Fifth Circuit has recognized that plaintiffs must "give content to the injunctive relief that they seek so that final injunctive relief may be crafted to describe in *reasonable detail* the acts required." *Ward*, 753 Fed.

App'x at 249 (emphasis in original) (quoting *Yates*, 868 F.3d at 367; *Stukenberg*, 675 F.3d at 848). Plaintiffs "must be able to explain how a court could define or enforce meaningful injunctive relief." *Id.* (internal quotations, citations omitted). To comply with Rule 23(b)(2), plaintiffs must, at a minimum, "describe in some kind of detail, from what actions or inactions Defendant should be restrained." *Id.* Important here, the Fifth Circuit has found that "[a] general request that Defendant be restrained from violating Plaintiffs' Fourteenth Amendment protections is insufficient." *Id.*

Applying this law here, the Named Plaintiffs' Motion fails.

### (a) Named Plaintiffs have failed to prove that a single injunction or declaration can serve as a proper remedy for the entire class.

As argued above, the putative class members have not been harmed in "essentially the same way" (or in any way whatsoever). Named Plaintiffs present zero evidence that youth at BCCY-WF have been subjected to the same disciplinary measures, the same medical or behavioral services, or the same educational programs (or alleged lack thereof).

Likewise, Named Plaintiffs present zero evidence that youth at BCCY-WF have suffered any constitutional violation whatsoever – but even if they have (which Defendants deny) – there is zero evidence that youth at BCCY-WF have suffered the *same* constitutional violation.

Moreover, the Named Plaintiffs request as relief that youth simply be released to the community or to one of OJJ's other facilities. This completely disregards the unique backgrounds, histories, and rehabilitation needs of each individual youth, which renders impossible such an oversimplified remedy as a blanket release.[10] *See Money*, 2020 WL 1820660, at *15 ("each

---

[10] Transfers of youth to different facilities likewise requires an individualized analysis, such as to determine whether the youth's specific needs can be serviced, whether housing the youth within certain populations may create increased behavioral risks, or whether the proposed housing assignment is appropriately secure based on the youth's disciplinary history. These issues were discussed at the evidentiary hearing on the Motion for Preliminary Injunction, and the Court

putative class member comes with a unique situation—different crimes, sentences, outdates, disciplinary histories, age, medical history, places of incarceration, […] availability of a home landing spot [to analyze the propriety of release], […] likelihood of violation or recidivism, and danger to the community"). Indeed, courts conclude that such relief is <u>not</u> an indivisible remedy as required by Rule 23(b)(2) and deny class certification on this ground. *See, e.g. Juarez v. Asher*, No. C20-0700JLR-MLP, 2020 WL 5746875, at *4 (W.D. Wash. Sept. 25, 2020) (denying class certification under Rule 23(b)(2) for failure to seek an indivisible remedy, where petitioners claimed it was impossible for prison to mitigate the risks of COVID-19 and the appropriate remedy was release); *Floyd v. New Mexico*, No. 07-1258 MCA/DJS, 2009 WL 10708144, at *1-2 (D. N.M. June 10, 2009) ("Plaintiffs' allegations of general differential treatment of female prisoners applies to all prisoners at the facility. However, the allegations of denial of good time credits or timely release on parole requires individual determination of circumstances and damages. With respect to an injunction …, the majority of the relief sought would require an injunction which is too general to be enforceable."; Rule 23(b)(2) "demands a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification. […] [T]his action does not qualify as a class action.").

A single injunction could not possibly remedy the various alleged constitutional violations as to the entire population of BCCY-WF.[11] The Motion must fail.

---

issued findings of fact that demonstrate some of the many factors that contribute to decisions on youth housing assignments. *See* Ruling (Doc. No. 79 at ¶¶ 9-35.

[11] Accepting the overbroad definition of the putative class that is currently promoted by Plaintiffs (which is each and every youth in OJJ secure care custody), Rule 23(b)(2) is even *more* inappropriate here. Under no circumstances should this class be certified.

**(b) Named Plaintiffs fail to request specific declaratory or injunctive relief.**

As explained above, Plaintiffs ask the Court to "[e]nter a declaratory judgment that Defendants are violating Named Plaintiffs' and class members' constitutional rights … by transferring them to [BCCY-WF]" and to "[i]ssue a preliminary injunction and permanent injunction, requiring Defendants to cease plans to transfer [youth] to [BCCY-WF], and to immediately release to the community or transfer Plaintiffs and any class members who have already been moved … back to one of OJJ's pre-existing secure care or other facilities." Am. Class Action Compl. (Doc. No. 96) at 39.

These requests reveal an agenda to undercut OJJ's operations and to urge the Court to overstep the statutory authority granted to state officials to operate juvenile detention facilities.[12] As the Court has acknowledged time and again, public policy and the U.S. Supreme Court counsel federal courts to "eschew toward minimum intrusion into the affairs of state prison administration." *Gumns v. Edwards*, No. 20-231-SDD-RLB, 2020 WL 2510248, at *3-4 (M.D. La. May 15, 2020)  (citing, *inter alia*, *Mecham v. Fano*, 427 U.S. 215, 228-229 (1976) (warning against judicial decisions regarding "the day-to-day functioning of state prisons and involv[ing] the judiciary in issues and discretionary decisions that are not the business of federal judges")). "When weighing any form of injunctive relief, federal courts must be mindful not to jump at the chance to take prison administration into their own hands and out of the hands of the people entrusted with such tasks by the state." *Id.* at *4 (citations omitted). Moreover, such overstepping of authority is by no means necessary here, based on the Court's prior ruling:

---

[12] The OJJ is the state body responsible for Youth who have been adjudicated delinquent and has full control of all juvenile institutions, facilities, and programs under its administration. La. R.S. § 15:905(A). The deputy secretary for youth services shall establish all rules and regulations for the placement, care, and treatment of Youth in the custody of the OJJ. *Id.* at 905(B). The OJJ has sole authority over the placement, care, treatment, or any other considerations deemed necessary from the resources that are available for children judicially committed to the Department. La. Ch. Code art. 908(A); *State in Interest of S.T.,* 97-0216, p. 3 (La. App. 1 Cir. 9/19/97), 699 So. 2d 1128, 1129, *writ denied*, 97-2627 (La. 2/13/98), 706 So. 2d 992.

> [T]he OJJ witnesses who testified in this matter [are] credible and deeply committed to the rehabilitation of youth in their custody. Many of these OJJ employees have invested decades of their professional lives to juvenile justice. Not a single OJJ witness struck the Court as cavalier or dismissive about the needs of the youth to be rehabilitated, and none testified in a manner which was suggestive of a vengeful or retaliatory intent in creating this [plan to transfer youth to BCCY-WF]. […] [OJJ Asst. Sec'y Curtis] Nelson unequivocally testified that OJJ's goal is always rehabilitation and never punishment, and OJJ never stops trying to find ways to rehabilitate even the most resistant youth. […] There is no evidence to support the proposition that OJJ made a "knee-jerk" reaction decision to "send youth to Angola."

Ruling (Doc. No. 79) at 50.

Named Plaintiffs' requests for relief are far from specific; they are generic and overbroad, sweeping and far-reaching. Such overgeneralized relief was expressly proscribed by the Fifth Circuit in *Ward*, 753 Fed. App'x at 249. The Named Plaintiffs have failed to explain "how a court could define or enforce meaningful relief." *Id*. (quoting *Maldonado*, 493 F.3d at 525). As such, the Named Plaintiffs have failed to show they are entitled to class certification under Rule 23(b)(2).

### III.    <u>CONCLUSION</u>

For all these reasons, Plaintiff's Motion (Doc. No. 99) and request for class certification should be denied.

Dated: November 21, 2022.

Respectfully Submitted:

BY:    */s/ Madaline King*
Connell Archey (#20086)
Randal J. Robert (#21840)
Allena McCain (#38830)
Madaline King (#38301)
BUTLER SNOW LLP
445 North Boulevard, Suite 300 (70802)
P.O. Box 2997
Baton Rouge, LA 70821-2997
Telephone:    (225) 325-8700

Facsimile:    (225) 325-8800
Connell.Archey@butlersnow.com
Randy.Robert@butlersnow.com
Allena.McCain@butlersnow.com
Madaline.King@butlersnow.com

Kyle V. Miller (pro hac vice)
Lemuel E. Montgomery III (pro hac vice)
Anna Morris (pro hac vice)
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone:    (601) 948-5711
Facsimile:    (601) 985-4500
Kyle.Miller@butlersnow.com
Lem.Montgomery@butlersnow.com
Anna.Morris@butlersnow.com

Counsel for Defendants
GOVERNOR JOHN BEL EDWARDS, in
his official capacity as Governor of
Louisiana; WILLIAM SOMMERS, in his
official capacity as Deputy Secretary of the
Office of Juvenile Justice; and JAMES M.
LEBLANC, in his official capacity as
Secretary of the Louisiana Department of
Public Safety & Corrections

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this day been filed electronically with the Clerk of Court using the CM/ECF system, which will deliver notice of this filing to all counsel of record.

Baton Rouge, Louisiana this 21st day of November, 2022.

_/s/ Madaline King_____

66534115.v1