**Collective Exhibit A**

***ARPs filed by Named Plaintiffs***

**ARP dated 8/16/2022**

B.5.3 (a)

**YOUTH SERVICES**
**ADMINISTRATIVE REMEDY PROCEDURE FORM**

Number: ____-____-____
Date Received:_____

Name: _____

Client ID Number: _____

Facility: Bridge City Center for Youth

Living Area:_____

## "THIS IS A REQUEST FOR ARP" (Emergency ARP)

(You may ask your case manager or other staff members for help completing this form.) State your problem (WHO, WHAT, WHEN, WHERE AND HOW) and the remedy requested (what you want to solve the problem):

Problem: See Attached _____

_____

_____

Remedy requested: See Attached _____

Date of Incident/Occurrence: 7/19/2022

Today's Date: 8/16/2022

This form must be completed **within 90 calendar days** of the date of the incident/occurrence and given to the ARP Coordinator or placed in the ARP/grievance box.

| **Screening - ARP Coordinator's Review** |
| --- |

Rejected _____Returned _____ Accepted

Screening Date: _____ Sexual Assault □ Yes □ No

Reason:_____

| **Emergency Request** |
| --- |

(Maximum Time for Processing – Initial Response: 48 hours / Final Response: 5 days)

Rejected:_____ Accepted _____ Reason: _____

Sent to Facility Director / Secure Facilities Director / IS on: _____

SFD Initial Response Received on:_____ SFD Final Decision Received on:_____

| **Step One - ARP Coordinator/IS Recommendation and Facility Director's Response** |
| --- |

(Maximum Time For Processing: 30 calendar days)

ARP Coordinator/IS Recommendation: _____

Sent to Facility Director on: _____ AC/IS Signature: _____

Facility Director's response to your ARP Step One request: _____

_____

_____

Date: _____

Facility Director's Signature: _____

Received Step One on: _____

Youth's Signature: _____

If you are not satisfied with this response, you may go to Step Two. The ARP Coordinator must submit your request to the Deputy Secretary **within 15 calendar days** after you receive the Step One response.

Request Step Two: _____Yes _____No

Reason for Step Two request: _____

Date Step Two request received by AC: _____

Date Sent to Deputy Secretary: _____

AC's Signature: _____

| **Step Two - Deputy Secretary's Response** |
| --- |

(Maximum Time For Processing: 21 calendar days)

Date Received: _____

Deputy Secretary's response to ARP Step Two request: _____

_____

_____

_____

Date: _____

_____
Deputy Secretary's Signature

Date received Deputy Secretary's response: _____

_____
Youth's Signature

If you are not satisfied with this response, you may seek judicial review. A request for judicial review must be filed with the juvenile court which entered your order of commitment **within 30 calendar days** after receiving the Step Two decision.



COLLEGE OF LAW
STUART H. SMITH LAW CLINIC

### EMERGENCY ARP APPLICATION

**August 16, 2022**

**Submitted On Behalf of** ▮▮▮▮▮▮▮▮

This is an Emergency ARP submitted on behalf of ▮▮▮▮▮▮▮

I am an attorney representing ▮▮▮▮▮▮▮ who is a minor. I was retained to represent ▮▮▮ by his mother, Ms. Molly Smith. A letter of representation signed by Ms. Molly Smith in accordance with La. Admin. Code tit. 22 ch. 7A. § 713.F.4 is attached to this Emergency ARP. I am filing this Emergency ARP on ▮▮▮ behalf pursuant to La. Admin. Code tit. 22 ch. 7A. § 713.F.6 and OJJ Youth Services Policy B.5.3.VII.I. Because this is an Emergency ARP, the secure facilities director must provide an initial response within 48 hours and issue a final decision within five calendar days of submission. If no response is provided within 5 calendar days, this emergency grievance shall be deemed exhausted and ripe for judicial review.

Because this grievance arises directly from the imminent risk of physical and emotional harm that ▮▮▮ will face as a result of the decision to move youth in OJJ custody at Bridge City Center for Youth ("Bridge City") to the Louisiana State Penitentiary at Angola ("Angola"), this grievance must be treated as an Emergency ARP under both the Louisiana Administrative Code and OJJ Youth Services Policy. The planned move to Angola could happen at any time, and, upon information and belief, is scheduled to occur on August 22, 2022. The decision to move ▮▮▮ and his similarly-situated peers from Bridge City to Angola exposes them to immediate and substantial risk of personal injury and other serious and irreparable harm.

▮▮▮ is filing this emergency application on behalf of himself and all other similarly-situated youths who are in OJJ custody and housed in secure care facilities who may be moved to Angola. Born on ▮▮▮▮▮▮, ▮▮▮ is a minor child and is currently being held at Bridge City. Governor John Bel Edwards announced on July 19, 2022 that youth at Bridge City who are not in the Juveniles Understanding and Managing Problematic Behavior Program ("JUMP") will be moved to Angola in the near future. ▮▮▮ was not adjudicated of a sex offense and therefore does not participate in the JUMP program. As a result, ▮▮▮ is one of the youth who is expected to be moved to Angola imminently. ▮▮▮ has been in the custody of the Office of Juvenile Justice since May 2021 and has a full-term date in 2024. He has been at Bridge City since March 2022.

**The Problem:**

The decision to imminently move ▮▮▮ and his similarly-situated peers to Angola, an adult maximum security prison, will expose ▮▮▮ to serious risk of harm, including heightened

risk of suicide and sexual assault; denial of education, counseling, and other rehabilitative treatment and therapies; inadequate and substandard medical care; and the use of psychologically harmful solitary confinement. These unconstitutional conditions of confinement represent an unwarranted and unlawful danger to ▮ and to all others being so detained.

1. Ever since Governor John Bel Edwards announced the imminent decision to move youth in OJJ custody at Bridge City to Angola, ▮ has been immensely fearful of the substantial risks he will be exposed to at Angola. The notorious adult maximum security prison sits on a former forced labor camp where enslaved Black people were brutalized and terrorized before the Civil War. The prison has an abhorrent reputation for violence and inhumane treatment of the adults who are incarcerated there. ▮ is deeply concerned about the physical harm and deprivations he and his similarly-situated peers will experience when they are moved. Research demonstrates that youth who are incarcerated in adult prisons face an unacceptable and heightened risk of suicide and sexual assault. ▮ and his mother are both immensely fearful for ▮ safety and the serious threats he will face upon his move to Angola.

2. As a child adjudicated delinquent, ▮ has not been convicted of a crime. As a result, ▮ and his peers are entitled under both federal and state law to receive treatment and rehabilitation, not punishment in an adult prison. The absence of appropriate and supportive rehabilitative programming and treatment—including education, mental health treatment, counseling, therapies, and medical care—is a violation of due process for ▮ and his peers.

3. ▮ is a student with a disability who is entitled to receive educational accommodations and other services under federal law to ensure equal and non-discriminatory access to the classroom. As a maximum security adult prison, Angola does not have a school capable of providing those services and neither OJJ nor the Department of Public Safety and Corrections ("DPSC") have provided a detailed information or a plan for how those services will continue to be provided to youth at Angola. ▮ is currently a 9th grade student at Riverside Alternative School at Bridge City. He has been diagnosed with a Specific Learning Disability and has an Individual Accommodations Plan under Section 504 of the Rehabilitation Act and an IEP under the Individuals with Disabilities Education Act and state special education regulations. ▮ has the legal right to continue to receive all of his necessary accommodations and educational support services in custody. Education is not only ▮ legal right, but it is also a critical component of his rehabilitation. If ▮ does not receive comprehensive educational services aligned with his 504 Plan, he will be at serious risk of academic regression, learning loss, and dropout upon release to the community.

4. As part of his legal right to rehabilitation and treatment in OJJ custody, ▮—like his similarly-situated peers—requires comprehensive and frequent access to anger management treatment, substance abuse counseling, and other types of therapy and counseling. In order to deliver these programs in an effective, trauma-informed, and

youth-focused manner, there must be adequate and well-trained staff available to provide regular therapies. Angola does not have these programs or available staff to fill this extreme need. Neither OJJ nor DPSC have provided any information or plan regarding how they will ensure consistent delivery of these vital services. Without access to these rehabilitative programs and therapies, ▮▮▮ will experience serious emotional harm that could jeopardize his ability to progress on his rehabilitative journey and return home to his family and community.

5.  Under federal law, ▮▮▮ and his similarly-situated peers in OJJ custody must be kept sight and sound separated from incarcerated adults. Given the structure, layout, and operation of Angola and the heavy reliance on prisoner labor throughout Angola, sight and sound separation will be impossible when ▮▮▮ and his peers are moved to Angola. The sight and sound separation policy exists to protect vulnerable youth from violence and sexual assault. Youth at Bridge City are expected to be moved imminently to Angola, where they will necessarily interact with incarcerated adults for a range of daily needs, including use of the infirmary, facilities maintenance, meals, and recreation. As a result, ▮▮▮ and his similarly-situated peers are at serious and unacceptable risk of exposure to incarcerated adults when they are moved to Angola. This exposure significantly increases their risk of physical and emotional harms, including sexual assault and violence.

6.  When ▮▮▮ and his peers are moved to Angola, they will be placed in a building with cells rather than dorms. As a means of avoiding sight and sound interaction with incarcerated adults, OJJ may resort to confining ▮▮▮ for large portions of the day to his cell. As a result, there is a substantial likelihood that ▮▮▮ will be placed alone in his cell for extended periods of time without peer interaction or the opportunity to leave. Recent House Bill 746 defines solitary confinement as the "involuntary placement of a juvenile alone in a cell, room, or other area, except during regularly scheduled sleeping hours." OJJ is forbidden under this new law from placing ▮▮▮ and his peers in their cells for long periods of the day unless they pose a serious and immediate threat of physical harm. Despite this law, there is an imminent risk that OJJ will resort to using solitary confinement at Angola given the structure of Angola and the imminent move. Solitary confinement has been shown to have extremely detrimental impacts on the mental health and wellbeing of all people, especially youth, and can lead to a heightened risk of suicide. ▮▮▮ will experience a serious risk of harm when he is moved to Angola and placed in solitary confinement.

7.  When ▮▮▮ and his peers are moved to Angola, they will experience constitutionally deficient medical care. Angola is currently in ongoing litigation regarding the quality of health care it provides, and courts have recognized the serious and persistent deficiencies in the provision of healthcare that the adults incarcerated at Angola receive. OJJ and DPSC have failed to provide ▮▮▮ or his peers with information about how they will ensure access to a constitutionally adequate mental or physical health care system for youth moved to Angola. Angola continues to experience frequent COVID outbreaks and quarantines, and it is currently under a boil water alert. DPSC is already unable to provide the adults incarcerated at Angola with the safety, hygiene, and medical treatment and care they need. The lack of medical care will expose ▮▮▮ and his peers to substantial

and serious risk of physical and medical harm, placing them in danger if they are in need of urgent medical care.

8. These serious and unwarranted conditions of confinement expose ▮ and his peers to physical and emotional harm. OJJ and DPSC's failure to develop an acceptable plan to ensure medical care, mental health treatment, education, and other forms of rehabilitative treatment to youth at Angola—without illegally placing children in solitary confinement or exposing them to sight and sound contact with incarcerated adults—demonstrates that there is no plan in place to assure the constitutional rights of youth who will be moved to Angola. These violations must be stopped immediately, before youth are imminently moved to Angola and will suffer the serious harms presented above.

**The Remedy Sought:**

▮ as well as other children in OJJ custody and/or otherwise confined in secure care facilities throughout the state, are at immediate risk of substantial harm if continued detention occurs under these dangerous conditions. Accordingly, the following remedies are requested:

1. The decision to move youth from OJJ custody to Angola must be immediately retracted, and any plans that are currently being put in place to move youth to Angola must be halted immediately.

2. ▮ and all other youth in OJJ custody must be evaluated by OJJ to determine whether they can be recommended for a step-down or release to the community, in an effort to help depopulate OJJ secure care facilities.

3. ▮ and all other youth in OJJ custody must receive mandated rehabilitation programming and treatment, including education, counseling, and other therapies to ensure their continued rehabilitation and allow them to return home to their families and communities as soon as possible.

**The Response**

Per the Office of Juvenile Justice's Administrative Remedy Procedure B.4.3.VII.I, you are required to respond within 48 hours to the submission of this Emergency ARP, and you must provide a final decision within 5 days of filing. At that point, this emergency grievance shall be deemed exhausted and ripe for judicial review.

Hector Linares, on behalf of ▮

August 16, 2022

B.5.3 (d)

## Administrative Remedy Procedure
## Third Party Acknowledgment/Approval Form

I, ████████████████ (Youth name), Client ID # unknown ,

due hereby agree/approve Hector Linares to file an ARP
(Name of Third Party)

on my behalf.  I understand that the above named third party is not my parent or

legal guardian, and is acting in my best interest.

_on behalf of_ ████████
**Youth Signature**

**Witness**

8/16/2022
**Date**

8/16/2022
**Date**

October 2020

**LOYOLA UNIVERSITY NEW ORLEANS**

COLLEGE OF LAW
STUART H. SMITH LAW CLINIC

August 15, 2022

To Whom It May Concern,

I, Molly Smith, have signed a client retainer agreement with the attorneys at the Loyola Stuart H. Smith Law Clinic ("Loyola Law Clinic") in association with the Murell Law Firm, the Claiborne Firm, and the Shanies Law Office on my own behalf and on behalf of my minor son, ███ ███ (D.O.B. ███). The above-referenced attorneys represent my son and me for the purpose of challenging the Office of Juvenile Justice plan to move youth housed at Bridge City Center for Youth ("BCCY"), of which he is one, to a facility on the grounds of the Louisiana State Penitentiary at Angola. I understand that the attorneys at the above-referenced organizations do not represent my son in any proceedings in criminal or juvenile court.

I authorize the attorneys at the Loyola Law Clinic, the Murell Law Firm, the Claiborne Firm, and the Shanies Law Office to file any paperwork or court filings on behalf of my son or myself that they deem necessary throughout the course of this representation. Specifically, I authorize the above-referenced attorneys to file an emergency grievance/Administrative Remedy Procedure form on behalf of my son and to sign the Third-Party Acknowledgment Form on his behalf. As the planned move to Angola is imminent and could occur at any time, it is not possible to get a physical signature from my son for the Third-Party Acknowledgment Form prior to the filing of this grievance, in particular because of the restrictions on in-person attorney visits in place. A representative of the Loyola Law Clinic, the Murell Law Firm, the Claiborne Firm, and the Shanies Law Office; and I have signed the form on his behalf. My son approves the above-referenced attorneys filing an emergency grievance/ Administrative Remedy Procedure Form on his behalf and understands that the attorney is not his parent or legal guardian, and is acting in his best interest.

Molly Smith
Parent of ███

Christopher Murell
Murell Law Firm

David B. Shanies
Shanies Law Office

Hector Linares, Esq.
Loyola Law Clinic

David Utter
Claiborne Firm, P.C.

**ARP dated 9/2/2022**

B.5.3 (a)

**YOUTH SERVICES**
**ADMINISTRATIVE REMEDY PROCEDURE FORM**

Number: _____-_____-_____
Date Received:_____

Name ▓▓▓▓▓▓▓▓▓▓▓    Client ID Number: ▓▓▓▓▓▓

Facility: _Bridge City Center for Youth_    Living Area: _Liberty Dorm_

## "THIS IS A REQUEST FOR ARP" *Emergency Request/ARP*

(You may ask your case manager or other staff members for help completing this form.) State your problem (WHO, WHAT, WHEN, WHERE AND HOW) and the remedy requested (what you want to solve the problem):

Problem: _See attached._

_____

_____

_____

Remedy requested: _See attached_

Date of Incident/Occurrence: _7/19/2022_    Today's Date: _9/02/2022_

**This form must be completed within 90 calendar days of the date of the incident/occurrence and given to the ARP Coordinator or placed in the ARP/grievance box.**

### Screening - ARP Coordinator's Review

Rejected _____ Returned _____ Accepted    Screening Date: _____ Sexual Assault ☐ Yes ☐ No
Reason:_____

### Emergency Request
(Maximum Time for Processing – Initial Response: 48 hours / Final Response: 5 days)

Rejected:        Accepted        Reason: _____

Sent to Facility Director / Secure Facilities Director / IS on: _____

SFD Initial Response Received on:_____    SFD Final Decision Received on:_____

### Step One - ARP Coordinator/IS Recommendation and Facility Director's Response
(Maximum Time For Processing: 30 calendar days)

ARP Coordinator/IS Recommendation: _____

Sent to Facility Director on: _____    AC/IS Signature: _____

Facility Director's response to your ARP Step One request: _____

_____

_____

Date: _____    Facility Director's Signature: _____

Received Step One on: _____    Youth's Signature: _____

**If you are not satisfied with this response, you may go to Step Two. The ARP Coordinator must submit your request to the Deputy Secretary within 15 calendar days after you receive the Step One response.**

Request Step Two: _____Yes _____No    Reason for Step Two request: _____

_____

Date Step Two request received by AC: _____    Date Sent to Deputy Secretary: _____

AC's Signature: _____

### Step Two - Deputy Secretary's Response
(Maximum Time For Processing: 21 calendar days)

Date Received: _____

Deputy Secretary's response to ARP Step Two request: _____

_____

_____

_____

Date: _____    _____
Deputy Secretary's Signature

Date received Deputy Secretary's response: _____    _____
Youth's Signature

**If you are not satisfied with this response, you may seek judicial review. A request for judicial review must be filed with the juvenile court which entered your order of commitment within 30 calendar days after receiving the Step Two decision.**

October 2021

**LOYOLA**
**UNIVERSITY**
**NEW ORLEANS**

COLLEGE OF LAW
STUART H. SMITH LAW CLINIC

## EMERGENCY ARP APPLICATION

### September 2, 2022

### Submitted On Behalf of ███████

This is an Emergency ARP submitted on behalf of ███████ D.O.B. ███████ ).

I am an attorney representing ███████ , who is eighteen years old. A letter of representation and ARP Third-Party Authorization Form signed by ███████ in accordance with La. Admin. Code tit. 22 ch. 7A. § 713.F.4 is attached to this Emergency ARP. I am filing this Emergency ARP on ███ behalf pursuant to La. Admin. Code tit. 22 ch. 7A. § 713.F.6 and OJJ Youth Services Policy B.5.3.VII.I. Because this is an Emergency ARP, the secure facilities director must provide an initial response within 48 hours and issue a final decision within five calendar days of submission. If no response is provided within 5 calendar days, this emergency grievance shall be deemed exhausted and ripe for judicial review.

Because this grievance arises directly from the imminent risk of physical and emotional harm that ███ will face as a result of the decision to move youth in OJJ custody at Bridge City Center for Youth ("Bridge City") to the Louisiana State Penitentiary at Angola ("Angola"), this grievance must be treated as an Emergency ARP under both the Louisiana Administrative Code and OJJ Youth Services Policy. The planned move to Angola could happen at any time on or after September 15, 2022, which does not allow for the filing of a standard ARP grievance because the move could happen before the expiration of timelines associated with a standard ARP. The decision to move ███ and his similarly-situated peers from Bridge City to Angola exposes them to immediate and substantial risk of personal injury and other serious and irreparable harm.

███ is filing this emergency application on behalf of himself and all other similarly-situated youths who are in OJJ custody and housed in secure care facilities who may be moved to Angola. ███ is currently being held at Bridge City Center for Youth. Governor John Bel Edwards announced on July 19, 2022 that youth at Bridge City who are not in the Juveniles Understanding and Managing Problematic Behavior Program ("JUMP") will be moved to Angola in the near future. ███ was not adjudicated of a sex offense and therefore does not participate in the JUMP program. As a result, ███ is one of the youth who is expected to be moved to Angola. ███ has been in the custody of the Office of Juvenile Justice since on or about February of 2022 and has a full-term date of February 2, 2025. He has been at Bridge City since on or about April 20. 2022.

**The Problem:**

The decision to imminently move ▮▮▮▮ and his similarly-situated peers to Angola, an adult maximum security prison, will expose ▮▮▮▮ to serious risk of harm, including heightened risk of suicide and sexual assault; denial of education, counseling, and other rehabilitative treatment and therapies; inadequate and substandard medical care; and the use of psychologically harmful solitary confinement. These unconstitutional conditions of confinement represent an unwarranted and unlawful danger to ▮▮▮▮ and to all others being so detained.

1. Ever since Governor John Bel Edwards announced the imminent decision to move youth in OJJ custody at Bridge City to Angola, ▮▮▮▮ has been immensely fearful of the substantial risks he will be exposed to at Angola. The notorious adult maximum security prison sits on a former forced labor camp where enslaved Black people were brutalized and terrorized before the Civil War. The prison has an abhorrent reputation for violence and inhumane treatment of the adults who are incarcerated there. ▮▮▮▮ is deeply concerned about the physical harm and deprivations he and his similarly-situated peers will experience when they are moved. Research demonstrates that youth who are incarcerated in adult prisons face an unacceptable and heightened risk of suicide and sexual assault. ▮▮▮▮ and his mother are both immensely fearful for ▮▮▮▮ safety and the serious threats he will face upon his move to Angola.

2. As a child adjudicated delinquent, ▮▮▮▮ has not been convicted of a crime. As a result, ▮▮▮▮ and his peers are entitled under both federal and state law to receive treatment and rehabilitation, not punishment in an adult prison. The absence of appropriate and supportive rehabilitative programming and treatment—including education, mental health treatment, counseling, therapies, and medical care—is a violation of due process for ▮▮▮▮ and his peers.

3. ▮▮▮▮ is a student with a disability who is entitled to receive educational accommodations and other services under federal law to ensure equal and non-discriminatory access to the classroom. As a maximum security adult prison, Angola does not have a school capable of providing those services and neither OJJ nor the Department of Public Safety and Corrections ("DPSC") have provided a detailed information or a plan for how those services will continue to be provided to youth at Angola. ▮▮▮▮ is currently a 10th grade student at Riverside Alternative School at Bridge City. He is a student with a disability and has an Individual Accommodations Plan under Section 504 of the Rehabilitation Act. ▮▮▮▮ has the legal right to continue to receive all of his necessary accommodations and educational support services in custody. Education is not only ▮▮▮▮ legal right, but it is also a critical component of his rehabilitation. If ▮▮▮▮ does not receive comprehensive educational services aligned with his 504 Plan, he will be at serious risk of academic regression, learning loss, and dropout upon release to the community.

4. As part of his legal right to rehabilitation and treatment in OJJ custody, ▮▮▮▮—like his similarly-situated peers—requires comprehensive and frequent access to anger

management treatment, substance abuse counseling, and other types of therapy and counseling. In order to deliver these programs in an effective, trauma-informed, and youth-focused manner, there must be adequate and well-trained staff available to provide regular therapies. Angola does not have these programs or available staff to fill this extreme need. Neither OJJ nor DPSC have provided any information or plan regarding how they will ensure consistent delivery of these vital services. Without access to these rehabilitative programs and therapies, ▮▮▮ will experience serious emotional harm that could jeopardize his ability to progress on his rehabilitative journey and return home to his family and community.

5. Under federal law, ▮▮▮ and his similarly-situated peers in OJJ custody must be kept sight and sound separated from incarcerated adults. Given the structure, layout, and operation of Angola and the heavy reliance on prisoner labor throughout Angola, sight and sound separation will be impossible when ▮▮▮ and his peers are moved to Angola. The sight and sound separation policy exists to protect vulnerable youth from violence and sexual assault. Youth at Bridge City are expected to be moved imminently to Angola, where they will necessarily interact with incarcerated adults for a range of daily needs, including use of the infirmary, facilities maintenance, meals, and recreation. As a result, ▮▮▮ and his similarly-situated peers are at serious and unacceptable risk of exposure to incarcerated adults when they are moved to Angola. This exposure significantly increases their risk of physical and emotional harms, including sexual assault and violence.

6. When ▮▮▮ and his peers are moved to Angola, they will be placed in a building with cells rather than dorms. As a means of avoiding sight and sound interaction with incarcerated adults, OJJ may resort to confining ▮▮▮ for large portions of the day to his cell. As a result, there is a substantial likelihood that ▮▮▮ will be placed alone in his cell for extended periods of time without peer interaction or the opportunity to leave. Recent House Bill 746 defines solitary confinement as the "involuntary placement of a juvenile alone in a cell, room, or other area, except during regularly scheduled sleeping hours." OJJ is forbidden under this new law from placing ▮▮▮ and his peers in their cells for long periods of the day unless they pose a serious and immediate threat of physical harm. Despite this law, there is an imminent risk that OJJ will resort to using solitary confinement at Angola given the structure of Angola and the imminent move. Solitary confinement has been shown to have extremely detrimental impacts on the mental health and wellbeing of all people, especially youth, and can lead to a heightened risk of suicide. ▮▮▮ will experience a serious risk of harm when he is moved to Angola and placed in solitary confinement.

7. When ▮▮▮ and his peers are moved to Angola, they will experience constitutionally deficient medical care. Angola is currently in ongoing litigation regarding the quality of health care it provides, and courts have recognized the serious and persistent deficiencies in the provision of healthcare that the adults incarcerated at Angola receive. OJJ and DPSC have failed to provide ▮▮▮ or his peers with information about how they will ensure access to a constitutionally adequate mental or physical health care system for youth moved to Angola. Angola continues to experience frequent COVID outbreaks and quarantines, and it is currently under a boil water alert. DPSC is already unable to provide the adults incarcerated at Angola with the safety, hygiene, and medical treatment

and care they need. The lack of medical care will expose ██ and his peers to substantial and serious risk of physical and medical harm, placing them in danger if they are in need of urgent medical care.

8. These serious and unwarranted conditions of confinement expose ██ and his peers to physical and emotional harm. OJJ and DPSC's failure to develop an acceptable plan to ensure medical care, mental health treatment, education, and other forms of rehabilitative treatment to youth at Angola—without illegally placing children in solitary confinement or exposing them to sight and sound contact with incarcerated adults—demonstrates that there is no plan in place to assure the constitutional rights of youth who will be moved to Angola. These violations must be stopped immediately, before youth are imminently moved to Angola and will suffer the serious harms presented above.

**The Remedy Sought:**

██ as well as other children in OJJ custody and/or otherwise confined in secure care facilities throughout the state, are at immediate risk of substantial harm if continued detention occurs under these dangerous conditions. Accordingly, the following remedies are requested:

1. The decision to move youth from OJJ custody to Angola must be immediately retracted, and any plans that are currently being put in place to move youth to Angola must be halted immediately.

2. ██ and all other youth in OJJ custody must be evaluated by OJJ to determine whether they can be recommended for a step-down or release to the community, in an effort to help depopulate OJJ secure care facilities.

3. ██ and all other youth in OJJ custody must receive mandated rehabilitation programming and treatment, including education, counseling, and other therapies to ensure their continued rehabilitation and allow them to return home to their families and communities as soon as possible.

**The Response**

Per the Office of Juvenile Justice's Administrative Remedy Procedure B.4.3.VII.I, you are required to respond within 48 hours to the submission of this Emergency ARP, and you must provide a final decision within 5 days of filing. At that point, this emergency grievance shall be deemed exhausted and ripe for judicial review.

_____

Hector Linares, on behalf of ██████

September 2, 2022

LOYOLA
UNIVERSITY
NEW ORLEANS

COLLEGE OF LAW
STUART H. SMITH LAW CLINIC

September 2, 2022

To Whom It May Concern,

I, ▮▮▮▮▮ (D.O.B ▮▮▮▮▮), have retained the attorneys at the Loyola Stuart H. Smith Law Clinic ("Loyola Law Clinic") in association with the Murell Law Firm, the Claiborne Firm, the Ronald Haley Law Firm, the Shanies Law Office, and the national American Civil Liberties Union ("ACLU") to represent me for purposes of challenging the plan proposed by the Office of Juvenile Justice ("OJJ") to place me and other youth at Bridge City Center for Youth at a facility on the grounds of the Louisiana State Penitentiary at Angola. I am eighteen years of age and have consented to this representation of my own free will.

I consent to and echo any requests for legal visits made on my behalf by attorneys or their representatives with the above-referenced firms and legal organizations, including requests by Hector Linares, Sara Godchaux, David Utter, Christopher Murell, Ronald Haley, David Shanies, Nancy Rosenbloom, Tammie Greg, or Aditi Shah. I authorize the above-referenced attorneys and legal organizations to request on my behalf any educational, medical, and other records pertaining to me and maintained by OJJ or the State of Louisiana. I also authorize the above-referenced attorneys and legal organizations to file an emergency grievance/Administrative Remedy Procedure form on my behalf and to sign the Third-Party Acknowledgment Form on my behalf. I understand that the attorneys at the above-referenced organizations do not represent me in any proceedings in criminal or juvenile court.



_____                    _____
        Client                                 Hector Linares, Esq.
                                               Loyola Law Clinic

B.5.3 (d)

# Administrative Remedy Procedure
## Third Party Acknowledgment/Approval Form


I, _____ (Youth name), Client ID # _____,

due hereby agree/approve ____Hector Linares + Sara Godchaux____ to file an ARP
                                       (Name of Third Party)

on my behalf.  I understand that the above named third party is not my parent or

legal guardian, and is acting in my best interest.



_____          _____
Youth Signature                        Witness

_____          _____
Date  9/2/22                           Date  9/2/22


October 2020

**ARP dated 10/25/2022**

B.5.3 (a)

**YOUTH SERVICES**
**ADMINISTRATIVE REMEDY PROCEDURE FORM**

Number: ACY 2022 007
Date Received: 10-25-2022

Name: �â–ˆâ–ˆâ–ˆ   Client ID Number: â–ˆâ–ˆâ–ˆâ–ˆ

Facility: ACY - St. Martinville   Living Area: Charlie Pod

## "THIS IS A REQUEST FOR ARP"   * Emergency Request

(You may ask your case manager or other staff members for help completing this form.) State your problem (WHO, WHAT,
WHEN, WHERE AND HOW) and the remedy requested (what you want to solve the problem):   ARP *

Problem: _____

_____

_____

Remedy requested: See attached

Date of Incident/Occurrence: 8/1/22 + ongoing   Today's Date: 10/25/22

This form must be completed **within 90 calendar days** of the date of the incident/occurrence and given to the
ARP Coordinator or placed in the ARP/grievance box.

### Screening - ARP Coordinator's Review

10/31/22   10/27/22

Rejected   Resumed   Accepted   Screening Date: 10/27/22   Sexual Assault ☐ Yes ☑No

Reason: Please see attachment

### Emergency Request    Rejected 10/27/2022

(Maximum Time for Processing - Initial Response: 48 hours / Final Response: 5 days)

Rejected   Accepted   Reason: see attached

Sent to Facility Director / Secure Facilities Director / IS on: 10-27-2022

SFD Initial Response Received on: _____   SFD Final Decision Received on: _____

### Step One - ARP Coordinator/IS Recommendation and Facility Director's Response

(Maximum Time For Processing: 30 calendar days)

ARP Coordinator/IS Recommendation: Standard ARP

Sent to Facility Director on: 10-27-2022   AC/IS Signature: Joshua Heule MSS

Facility Director's response to your ARP Step One request: _____

_____

Date: _____   Facility Director's Signature: _____

Received Step One on: _____   Youth's Signature: _____

If you are not satisfied with this response, you may go to Step Two. The ARP Coordinator must submit your
request to the Deputy Secretary **within 15 calendar days** after you receive the Step One response.

Request Step Two: _____Yes _____No   Reason for Step Two request: _____

_____

Date Step Two request received by AC: _____   Date Sent to Deputy Secretary: _____

AC's Signature: _____

### Step Two - Deputy Secretary's Response

(Maximum Time For Processing: 21 calendar days)

Date Received: _____

Deputy Secretary's response to ARP Step Two request: _____

_____

_____

_____

Date: _____

Deputy Secretary's Signature

Date received Deputy Secretary's response: _____

Youth's Signature

If you are not satisfied with this response, you may seek judicial review. A request for judicial review must be
filed with the juvenile court which entered your order of commitment **within 30 calendar days** after receiving
the Step Two decision.

October 2021

October 27, 2022

Good Morning,

**Youth:** ███████ (Legal Attorney) has submitted an Emergency ARP. Please see attachment.

**Concern:** Please see attachment. The complaint is moving youth ███████ and similarly-situated peers to Angola. The youths will be exposed to serious risk of harm, including heightened risk of suicide and sexual assault; denial of education, counseling, and other rehabilitative treatment and therapies; inadequate and substandard medical care; and a heightened risk that they will be subject to psychologically harmful solitary confinement.

**Remedy requested:** Please see attachment. Decision to move youth from OJJ custody to Angola must be immediately retracted, and any plans that are currently being put in place to move youth to Angola must be halted immediately. ████ and all other youth in OJJ custody must be evaluated by OJJ to determine whether they can be recommended for a step-down or release to the community, in an effort to help depopulate OJJ secure care facilities. ████ and other youth in OJJ custody must receive mandated rehabilitation programming and treatment, including education, counseling, and other therapies to ensure their continued rehabilitation and allow them to return home to their families and communities as soon as possible.

**Response:** There is no current recommendation for a referral or a current plan to transfer youth ███████████ to Bridge City Center for Youth-West Feliciana (BCCY-WF); therefore, there is no emergency. ████████ ARP will be treated as a standard ARP, and a response to the standard ARP will be provided on November 27, 2022.

*Sabrina Nevills*

Sabrina Nevills/PC-SS
Acadiana Center For Youth

**LOYOLA UNIVERSITY NEW ORLEANS**

COLLEGE OF LAW
STUART H. SMITH LAW CLINIC

## EMERGENCY ARP APPLICATION

### October 25, 2022

### Submitted On Behalf of ██████████

This is an Emergency ARP submitted on behalf of ██████████ (D.O.B. ████████).

I am an attorney representing ██████████, who is a minor. I was retained to represent ██████ by his mother, ██████████. Both a letter of representation signed by ██████████ and an ARP Third-Party Authorization Form signed by ██████████ on behalf ██████, in accordance with La. Admin. Code tit. 22 ch. 7A. § 713.F.4, are attached to this Emergency ARP. I am filing this Emergency ARP on ██████ behalf pursuant to La. Admin. Code tit. 22 ch. 7A. § 713.F.6 and OJJ Youth Services Policy B.5.3.VII.I. Because this is an Emergency ARP, the secure facilities director must provide an initial response within 48 hours and issue a final decision within five calendar days of submission. If no response is provided within five calendar days, this emergency grievance shall be deemed exhausted and ripe for judicial review.

Because this grievance arises directly from the imminent risk of physical and emotional harm that ██████ will face as a result of the decision to move youth in OJJ custody to the Louisiana State Penitentiary at Angola ("Angola"), this grievance must be treated as an Emergency ARP under both the Louisiana Administrative Code and OJJ Youth Services Policy. OJJ has already moved at least eight (8) youth to Angola and could move additional youth, including ██████, at any time which does not allow for the filing of a standard ARP grievance because the move could happen before the expiration of timelines associated with a standard ARP. The risk that ██████ and his similarly-situated peers in OJJ custody will be moved to Angola exposes them to immediate and substantial risk of personal injury and other serious and irreparable harm.

██████ is filing this emergency application on behalf of himself and all other similarly-situated youth who are in OJJ custody and housed in secure care facilities who may be moved to Angola at any time. ██████ is currently being held at the Acadiana Center for Youth – St. Martinville facility ("St. Martinville"). Governor John Bel Edwards announced on July 19, 2022 that youth at Bridge City who are not in the Juveniles Understanding and Managing Problematic Behavior Program ("JUMP") would be moved to Angola in the near future. On October 19, 2022, OJJ announced by press release that it had completed its first phase of moving youth in its custody to Angola. OJJ confirmed that they had moved four youth from St. Martinville and four youth from Swanson Center for Youth at Monroe to Angola. As a youth who has been at both the Bridge City and St. Martinville facilities, ██████ is one of the youth who is at imminent risk

of being moved to Angola. In addition, staff at St. Martinville have been threatening ▇ and other youth there that if they misbehave, they will be moved to Angola.

**The Problem:**

The imminent risk that ▇ and his similarly-situated peers will be moved to the former death row unit at Angola, an adult maximum-security prison, will expose ▇ to serious risk of harm, including heightened risk of suicide and sexual assault; denial of education, counseling, and other rehabilitative treatment and therapies; inadequate and substandard medical care; and a heightened risk he will be subject to psychologically harmful solitary confinement. These unconstitutional conditions of confinement represent an unwarranted and unlawful danger to ▇ and to all others at risk of being so detained.

1. Ever since Governor John Bel Edwards announced the imminent decision to move youth in OJJ custody to Angola, and ever since OJJ began actually moving youth to Angola on or around October 19, 2022, ▇ has been immensely fearful of the substantial risks he will be exposed to at Angola. The notorious adult maximum-security prison sits on a former forced labor camp where enslaved Black people were brutalized and terrorized before the Civil War. The prison has an abhorrent reputation for violence and inhumane treatment of the adults who are incarcerated there. ▇ is deeply concerned about the physical harm and deprivations he and his similarly-situated peers will experience when they are moved. Research demonstrates that youth who are incarcerated in adult prisons face an unacceptable and heightened risk of suicide and sexual assault. ▇ and his mother are both immensely fearful for ▇ safety and the serious threats he will face upon his move to Angola.

2. As a child adjudicated delinquent, ▇ has not been convicted of a crime. As a result, ▇ and his peers are entitled under both federal and state law to receive treatment and rehabilitation, not punishment in an adult prison. The physical environment and design of the site at Angola and the absence of appropriate and supportive rehabilitative programming and treatment—including education, mental health treatment, counseling, therapies, and medical care—is a violation of due process for ▇ and his peers.

3. ▇ is a student with a disability who is entitled to receive educational accommodations and other services under federal law to ensure equal and non-discriminatory access to the classroom. ▇ has the legal right to continue to receive all of his necessary and reasonable accommodations and educational support services in custody. Education is not only ▇ legal right, but it is also a critical component of his rehabilitation. If ▇ does not receive comprehensive educational services aligned with his education plan, he will be at serious risk of academic regression, learning loss, and dropout upon release to the community.

4. As part of his legal right to rehabilitation and treatment in OJJ custody, ▇—like his similarly-situated peers—requires comprehensive and frequent access to anger

management treatment, substance abuse counseling, and other types of therapy and counseling. In order to deliver these programs in an effective, trauma-informed, and youth-focused manner, there must be adequate and well-trained staff available to provide regular therapies. The Angola site does not have these programs or available staff to provide these services to which ▮ and his peers are entitled. Without access to these rehabilitative programs and therapies, ▮ will experience serious emotional harm that could jeopardize his ability to progress on his rehabilitative journey and return home to his family and community.

5. When ▮ and his peers are moved to Angola, they will be placed in a building with former death row cells with floor-to-ceiling barred doors rather than dorms or individual rooms. ▮ will not have privacy and will be deprived of living in a normalized environment if he is moved to the Angola site. With staffing shortages, there is also a substantial likelihood that ▮ will be placed alone in his cell for extended periods of time without peer interaction or the opportunity to leave. Recent House Bill 746 defines solitary confinement as the "involuntary placement of a juvenile alone in a cell, room, or other area, except during regularly scheduled sleeping hours." OJJ is forbidden under this new law from placing ▮ and his peers in their cells for long periods of the day unless they pose a serious and immediate threat of physical harm. Despite this law, there is an imminent risk that OJJ will resort to using solitary confinement at Angola given the structure of Angola and the recent and imminent transfers. Solitary confinement has been shown to have extremely detrimental impacts on the mental health and wellbeing of all people, especially youth, and can lead to a heightened risk of suicide. ▮ will experience a serious risk of harm when he is moved to Angola and placed in solitary confinement.

6. When ▮ and his peers are moved to Angola, they will experience constitutionally deficient medical care. Angola is currently in ongoing litigation regarding the quality of health care it provides, and courts have recognized the serious and persistent deficiencies in the provision of healthcare that the adults incarcerated at Angola receive. Based on past performance by both OJJ and DPSC, it is highly unlikely that Angola will ensure access to a constitutionally adequate mental or physical health care system for youth moved to Angola. OJJ has admitted that youth moved to the Angola site may receive medical care at the hospital on the grounds of LSP in certain cases of medical emergency. Angola also continues to experience frequent COVID outbreaks and quarantines. DPSC is already unable to provide the adults incarcerated at Angola with the safety, hygiene, and medical treatment and care they need. The lack of medical care will expose ▮ and his peers to substantial and serious risk of physical and medical harm, placing them in danger if they are in need of urgent medical care.

7. These serious and unwarranted conditions of confinement expose ▮ and his peers to physical and emotional harm. These violations must be stopped immediately, before ▮ and more youth are imminently moved to Angola and suffer the serious harms presented above.

**The Remedy Sought:**

████ as well as other children in OJJ custody and/or otherwise confined in secure care facilities throughout the state, are at immediate risk of substantial harm if continued detention occurs under these dangerous conditions. Accordingly, the following remedies are requested:

1. The decision to move youth from OJJ custody to Angola must be immediately retracted, and any plans that are currently being put in place to move youth to Angola must be halted immediately.

2. ████ and all other youth in OJJ custody must be evaluated by OJJ to determine whether they can be recommended for a step-down or release to the community, in an effort to help depopulate OJJ secure care facilities.

3. ████ and all other youth in OJJ custody must receive mandated rehabilitation programming and treatment, including education, counseling, and other therapies to ensure their continued rehabilitation and allow them to return home to their families and communities as soon as possible.

**The Response**

Per the Office of Juvenile Justice's Administrative Remedy Procedure B.4.3.VII.I, you are required to respond within 48 hours to the submission of this Emergency ARP, and you must provide a final decision within 5 days of filing. At that point, this emergency grievance shall be deemed exhausted and ripe for judicial review.

David J. Utter, Esq., on behalf of ████
October 24, 2022

B.5.3 (d)

# Administrative Remedy Procedure
## Third Party Acknowledgment/Approval Form

I, ██████████ _____ (Youth name), Client ID # ██████ ,

due hereby agree/approve <u>Hector Linares, David Utter, + Sasa Godchaux</u> to file an ARP
(Name of Third Party)

on my behalf. I understand that the above named third party is not my parent or

legal guardian, and is acting in my best interest.

██████████

Youth Signature

<u>10/25/22</u>
Date

_Ashley Villa W. faga_
Witness

<u>10/25/22</u>
Date

October 2020

October 14, 2022

To Whom It May Concern,

I, ███████████s, have retained the attorneys at the Claiborne Firm in association with the Loyola Stuart H. Smith Law Clinic ("Loyola Law Clinic"), the Murell Law Firm, the Ronald Haley Law Firm, the Shanies Law Office, the American Civil Liberties Union ("ACLU"), and the Promise of Justice Initiative ("PJI") on my own behalf and on behalf of my minor son, ███████████ (D.O.B. to represent us for purposes of challenging the plan proposed by the Office of Juvenile Justice ("OJJ") that would allow █████ and other youth in OJJ custody to be placed at a facility on the grounds of the Louisiana State Penitentiary at Angola.

I authorize and consent to any requests for legal visits with my son, ███████████, made by attorneys or their representatives from the above-referenced firms and legal organizations. This authorization extends to any requests made by David Utter, Hector Linares, Sara Godchaux, Christopher Murell, Ronald Haley, David Shanies, Nancy Rosenbloom, Tammie Greg, Aditi Shah, Nishi Kumar, Samantha Bosalavage, or their staff or authorized legal representatives. I also authorize the above-referenced attorneys and legal organizations to request and receive any educational, medical, and other records pertaining to my son, ███████████, and maintained by OJJ or the State of Louisiana. I also authorize the above-referenced attorneys and legal organizations to file an emergency grievance/Administrative Remedy Procedure form on my son's behalf and to sign the Third-Party Acknowledgment Form on my son's behalf. I understand that the attorneys at the above-referenced organizations do not represent me or my son, ███████, in any proceedings in criminal or juvenile court.

Signature: ███████████

Date: 10/14/2022

Signature: _Luh Vn_

Date: 10/14/22