EXHIBIT
B

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian Kenione Rogers, individually and on behalf of all others similarly situated,

               Plaintiffs,

v.

GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS[1], in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,

               Defendants.

Civil Action No. 3:22-cv-573-SDD-RLB

## PLAINTIFFS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO THE DEFENDANTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, Local Civil Rule 34, and the Court's Order dated October 27, 2022, *see* ECF No. 97, Alex A., Brian B., and Charles C. (Plaintiffs), on behalf of themselves and the putative plaintiff class, *see* ECF No. 99, request that Governor John Bel Edwards, in his official capacity as Governor of Louisiana, William Sommers, in his official capacity as Deputy Secretary of the Office of Juvenile Justice (OJJ), and James M. LeBlanc, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections (DOC) (collectively Defendants), identify and produce for inspection and copying all documents described

---

[1] On November 18, 2022, Gov. Edwards announced the resignation of Dep. Sec. Sommers and the appointment of Otha "Curtis" Nelson as his replacement. https://gov.louisiana.gov/index.cfm/newsroom/detail/3892 Because Sommers was sued in his official capacity, Nelson is automatically substituted as a Defendant. Fed. R. Civ. P. 25(d). Plaintiff leaves Sommers as a Defendant until the clerk is ordered to change the caption.

in the Requests for Production of Documents set forth herein, in accordance with the Definitions and Instructions set forth below, within thirty (30) days of service during normal business hours. Unless otherwise stated, electronic versions of any and all documents and records are sufficient and preferable.

## DEFINITIONS

The following definitions apply to each of these Requests for Production:

1. "Class Members" or "Principal Class" means individuals who are members of the putative class as defined in Plaintiffs' Motion for Class Certification, namely, all youth who are now or will be in the custody of Office of OJJ who have been, might be, or will be transferred to the OJJ site at Angola or another adult prison. *See* ECF No. 99.

2. "Subclass Members" or "Disabilities Subclass" means individuals who are members of the putative subclass as defined in Plaintiffs' Motion for Class Certification, namely, all current and future youth with disabilities within the meaning of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act in the custody of OJJ who have been, might be, or will be transferred to the OJJ site at Angola or another adult prison. *See* ECF No. 99.

3. "Communication" means the transmittal of information (whether in the form of facts, ideas, inquiries, or otherwise) and includes every manner or means of statement, declaration, utterance, notation, disclaimer, transfer, or exchange of information of any nature whatsoever, by or to whomever, whether oral, in writing, or in some other form and whether face to face, by telephone, text message, mail, facsimile, email, social media, personal delivery, or otherwise, including correspondence, conversations, dialogue, discussions, interviews, consultations, agreements, and other understandings.

4.      "Concerning" means referring to and includes, but is not limited to, analyzing, commenting on, comprising, connected with, constituting, containing, contradicting, describing, embodying, establishing, evidencing, memorializing, mentioning, pertaining to, recording, regarding, reflecting, responding to, setting forth, showing, or supporting, directly or indirectly, or having any connection, association, relevance, relation, pertinence, or applicability to, or any implication for, or bearing upon, the subject matter of these Interrogatories.

5.      "Identify" means:

    a.  In the case of a natural person, the full name, employer, position, and present or last known business address (including the business organization with which he or she was affiliated during the time period covered by the interrogatory);

    b.  In the case of an organization, proprietorship, firm, corporation, association, or governmental agency or office, its name, legal status, the address and telephone number of its principal place of business, and the name, title and telephone number of the officer, employee or agent most knowledgeable concerning the subject matter of the Interrogatory;

    c.  In the case of a communication, the date, mode, participants, and contents of the communication;

    d.  In the case of a document, the author, date, signor(s), addressee(s), and recipient(s) of the document, as well as its present or last known location and custodian; and

6.      "Describe" means to recite, in writing, all facts that you or your counsel have obtained, have access to and/or are aware of, that refer or relate to the subject matter of the Interrogatory, including but not limited to (a) the source(s) of each stated fact; (b) all persons with knowledge of each stated fact; (c) all communications referring or relating to each stated fact; and (d) all documents referring

3

or relating to each stated fact. When referring to a communication, "describe" shall require Defendants to identify (a) the date and time; (b) the initiator(s) and recipient(s); (c) the manner in which the communication was made (e.g. correspondence, telephone, etc.); (d) the contents of the communication; and (e) any and all documents referring or relating to the communication.

7.      "Document(s)" has the broadest meaning possible under the Federal Rules of Civil Procedure, including, but not limited to, Fed. R. Civ. P. 34(a)(1)(A), and includes, but is not limited to, all written, printed, typed, recorded, or visual matter of any kind, type, nature, or description, in whatever form (e.g., final and draft versions), that is or has been in your actual or constructive possession or control, or that you know to exist, including, but not limited to, all printed and electronic copies of electronic mail such as "email", text messages, chat messages, notes, correspondence, memoranda, tapes, handwritten notes, articles, diaries, letters, photographs, minutes, contracts, agreements, reports, computer printouts, drafts summaries or notes of any meetings notebooks, audio recordings, video recordings, or any written or recorded materials of any other kind, however stored (whether in tangible or electronic form), recorded, produced, or reproduced.

8.      "Including" means including without limitation.

9.      "Relating to" includes concerning, referring to, regarding, dealing with, discussing, involving, mentioning, arising from, describing, and otherwise having a logical connection to or with a person, subject, event, matter, concept, document, place, or thing.

10.    "Louisiana State Prison," "LSP," "Angola" and "Angola Prison" mean the entire grounds of the maximum security state correctional facility for adults located at 17544 Tunica Trace, Angola, LA 70712.

11.    "Transitional Treatment Unit," "TTU," "OJJ site at Angola," Bridge City Center for Youth at West Feliciana," and "BCCY-WF" mean the OJJ facility for youth located on the grounds of the Angola Prison.

12.    "Person(s)" includes natural persons and entities including partnerships, firms, associations, joint ventures, corporations, limited liability companies, and any other form of business organization or arrangement, as well as governmental or quasi-governmental agencies.

13.    "Staff" means all employees, contractors, and affiliates of or associated with OJJ, DOC, and the Governor's office.

14.    "You," "Your," and "Defendant(s)" mean Governor John Bel Edwards, in his official capacity as Governor of Louisiana, William Sommers, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, and James M. LeBlanc, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections, together with any of their agents, attorneys, representatives, affiliates, consultants, or any other person acting under their control or on their behalf.

15.    The terms "all," "any," and "each" shall each be construed as encompassing any and all.

16.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might be construed to be outside of its scope.

17.    The use of the singular form of any word includes the plural and vice versa.

18.    "Answer" means the defendants' Answer filed on October 4, 2022.  *See* ECF No. 83. "Answer to Amended Complaint" means defendants' Answer to plaintiffs' first amended complaint, filed on November 8, 2022. *See* ECF No. 100.

5

19.     "Plaintiff(s)" means Alex A., by and through his guardian Molly Smith; Brian B.; and Charles C., by and through his guardian Kenione Rogers.

20.     "Agreement(s)" means any actual or potential agreement, contract, or promise.


## INSTRUCTIONS

In addition to those in the Federal Rules of Civil Procedure and Local Rules, the following instructions apply to each of these Requests for Production:

1)     Please produce all requested documents that are in your possession, custody, or control, whether actual or constructive, organized as required by Fed. R. Civ. P. 34(b).

2)     The requested documents each include attachments, envelopes, explanatory notes or memoranda, and any other material that accompanied the document(s).

3)     Specify which documents are being produced in response to each of the numbered Paragraphs.

4)     If any document requested is withheld, state the basis for withholding the document, identify the document by stating its author, addresses, other recipients, date, subject matter, document type, length in page numbers, present location, and identify the person presently having possession, custody, or control of the document and all copies of it.

5)     If, in responding to this Request for Production, the responding party encounters any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

6)     In responding to any Request for Production seeking instructions, guidelines, directions, advisories, policies or any such thing, if the information sought was not written, it should be reduced

to writing, and the dates during which each instruction, guideline, direction, advisory, policy, or any such thing, was in effect.

7)      This Request for Production of documents is continuing and any document obtained or located subsequent to production which would have been produced had it been available or its existence known at the time of production is to be produced promptly.

8)   This Request for Production of Documents seeks documents dating back to June 1, 2022.

<u>**REQUESTS FOR PRODUCTION**</u>

1.  All Documents relating to Defendants' plan(s) to move youth (past, present, and future) in the custody of the Louisiana OJJ to BCCY-WF.

2.  All Documents relating to Defendants' planned or proposed housing setting for youth at BCCY-WF, including, but not limited to, documents relating to the layout of any housing setting. The layout of a housing setting includes, but is not limited to: a) whether there are windows; b) whether there are bars; c) the width and height of any bars; d) a description of any beds, cots, or other sleeping materials; and e) a description of the location of, and materials comprising, any sanitary facilities, including, but not limited to, sinks, showers and toilets, both inside cells and in other areas.

3.  All Documents relating to Defendants' planned or proposed settings for the provision of mental health and medical services, education and disability related services, and recreation for youth at BCCY-WF.

4.  All Documents concerning any policy, eligibility criteria and/or classification that have been and/or will be used to determine which youths will be placed at BCCY-WF.

5.  All Documents concerning the job titles, names, agency affiliation and other relevant characteristics of decision-makers and/or other stakeholders who have and/or can

recommend, provide input into and/or make the final judgement as to which youth are placed at BCCY-WF.

6. All Documents relating to communications to each youth and or each youth's parent or guardian relating to the potential transfer, future transfer, and/or actual transfer to and from Angola.

7. All Documents describing the planned phases to move youths to BCCY-WF, including, but not limited to, any descriptions of the numbers of youths to be moved in each phase and any and all target dates for each phase.

8. All Documents concerning OJJ's policies or procedures for solitary confinement, suicide watch, behavior interventions, and/or use of force against youth in OJJ custody, including at BCCY-WF.

9. All Documents concerning OJJ's policies and procedures for the use of electronic control weapons ("Tasers") and/or chemical spray on youths in OJJ custody, including, but not limited to, at BCCY-WF.

10. All Documents concerning DOC's policies or procedures for solitary confinement, suicide watch, behavior interventions, and/or use of force against youth in OJJ custody, including at BCCY-WF.

11. All Documents concerning DOC's policies and procedures for the use of electronic control weapons ("Tasers") and/or chemical spray on youths in OJJ custody, including, but not limited to, at BCCY-WF.

12. All Documents concerning OJJ's policies or procedures to address the risk of suicide or self-harm of youth held in barred cells at the BCCY-WF facility at Angola, including any measures regarding youth with mental health needs.

8

13. All Documents describing any differentiation between solitary confinement and/or use of force policies applicable to adult prisoners and youths in OJJ custody, including, but not limited to, between adults imprisoned at Angola and youths at BCCY-WF.

14. All Documents describing how BCCY-WF will respond to any attempted escapes by youths at BCCY-WF, including, but not limited to, any and all Documents describing how Angola's DOC CHASE team unit, any other DOC personnel, and/or any unit that utilizes dogs and/or other canines, will or could be used in efforts to locate youths at BCCY-WF.

15. All Documents relating to, and/or describing, actual staffing and staffing levels at BCCY-WF facility at Angola as of October 19, 2022 (the date OJJ first transferred youth in its custody to Angola) and as of the date of response to this Request, including, but not limited to: a) the current number of staff, by role, including whether each staff line is full time or part time; b) the budget to hire staff, by role; c) the number of staff required for staffing to be considered complete, by role; and, d) the number of positions unfilled, by role. Staff roles include, but are not limited to, the following positions: i) Juvenile Justice Specialists (JJSs); ii) education staff, including teachers, special education teachers, specialists, classroom assistants; iii) social workers; iv) directorial staff, including the facility deputy director and facility assistant director;  v) food service workers; and, DOC "rovers" or any DOC staff member assigned to work at BCCY-WF. Please include any and all operation reports discussing current vacancies.

16. All Documents concerning hiring criteria and policies for staff (temporary, permanent, and/or substitute, including employees of State agencies and contracted staff) who are interacting or will be interacting with youth at theBCCY-WF facility at Angola, including,

but not limited to, any "sexual predator" screening, drug testing requirements, criminal background checks, and/or health screenings, and all Documents related to any exceptions to hiring criteria for staff working at the BCCY-WF facility at Angola.

17. All Documents concerning hiring plans, training plans, policies, and/or procedures for staff (temporary, permanent, and/or substitute, including employees of State agencies and contracted staff) at BCCY-WF, including, but not limited to, any initial training and ongoing training.

18. All Documents concerning plans, policies, and procedures that permit temporary placements of OJJ or DOC staff members (such as in roles for which they were not hired) when there are staffing shortages at BCCY-WF.

19. All Documents concerning training for DOC staff in relation to interactions with youth at BCCY-WF, including, but not limited to, medical treatment, transportation, behavior interventions, solitary confinement, self-harm and/or use of force.

20. All Documents concerning policies, plans, and/or procedures for how DOC staff may interact with youth held at BCCY-WF including, but not limited to, circumstances in which a JJS is present as well as circumstances in which a JJS is not present, solitary confinement, behavior intervention, isolation, electronic control weapons, chemical sprays, canines, use of force, and/or any other means to control the behavior of youth.

21. All Documents concerning plans, policies, and procedures to address the educational needs of all current and future youths with disabilities within the meaning of the ADA) and Section 504 of the Rehabilitation Act placed at BCCY-WF.

22. All Documents concerning any agreements with the Louisiana Special School District (SSD) and/or any other state agencies to provide teachers, resources, and services at

BCCY-WF to Subclass Members and any other current and future youths with special educational needs, including but not limited to, all current and future youths with disabilities within the meaning of the ADA and Section 504 of the Rehabilitation Act.

23. All Documents concerning any and all agreements with DOC in relation to the provision of food to children held in OJJ's custody at BCCY-WF.

24. All Documents concerning plans, policies, and procedures to address specific nutritional needs for any or all youth at BCCY-WF.

25. All Documents relating to the Memorandum of Understanding (MOU) between OJJ and LSP/the Department of Public Safety and Corrections (DOC) concerning the presence of and interactions with youth in OJJ's custody on the grounds of LSP, including any modifications thereto.

26. All Documents relating to plans, policies, procedures, and contracts to offer on-site mental health, medical care, behavior intervention, and disability related services at BCCY-WF including, but not limited to, plans for Wellpath, a private contractor, to deliver medical care and services to youths at BCCY-WF.

27. All Documents relating to plans, policies, procedures, and contracts to offer medical care to youths at BCCY-WF in cases of medical emergencies and other medical care (both non-life-threatening and life-threatening) that require off-site hospital or other medical services, including, but not limited to, all documents describing who will provide transportation services to the youth in these circumstances and procedures to determine whether off-site services are required.

28. All Documents describing the range of mental health, medical care, healthcare, emergency, disability-related services and other services offered by providers with whom OJJ has or will contract to provide care to youths at BCCY-WF.

29. All Documents relating to plans, policies, and procedures for providing access to family members of youths at BCCY-WF, including, but not limited to, travel assistance for family members, visitation spaces, phone calls, emails or any other forms of communication.

30. All Documents concerning OJJ and OJJ staff members' communications with Plaintiffs and other youths in OJJ in relation to potential and planned transfers to and/or out of BCCY-WF.

31. All Documents relating to the Office of Juvenile Justice and Delinquency Prevention's (OJJDP) communications and/or plans in relation to alternative(s) to moving and incarcerating youths to BCCY-WF, including, but not limited to any and all offers by OJJDP to assist Louisiana with placing low-to-moderate risk youth in community-based programming.

Respectfully submitted, this 22nd day of November, 2022.

/s/: *David J. Utter*                     /s/: *Christopher J. Murell*
DAVID J. UTTER **                  CHRISTOPHER J. MURELL
Louisiana Bar Number: 23236        Louisiana Bar Number: 32075
WILLIAM R. CLAIBORNE               MURELL LAW FIRM
Georgia Bar Number: 126363         2831 St. Claude Avenue
THE CLAIBORNE FIRM, P.C.           New Orleans, Louisiana 70117
410 East Bay Street                (504) 717-1297 Telephone
Savannah, Georgia 31401            (504) 233-6691 Facsimile
(912) 236-9559 Telephone           chris@murell.law
(912) 236-1884 Facsimile
david@clairbornefirm.com
will@clairbornefirm.com

/s/: *Hector Linares*
HECTOR LINARES
Louisiana Bar Number: 28857
SARA GODCHAUX
Louisiana Bar Number: 34561
STUART H. SMITH LAW CLINIC
LOYOLA UNIVERSITY NEW ORLEANS
COLLEGE OF LAW
7214 St. Charles Avenue, Box 902
New Orleans, Louisiana 70118
(504) 861-5560 Telephone
(504) 861-5440 Facsimile
halinare@loyno.edu
shgodcha@loyno.edu


/s/: *David Shanies*
DAVID SHANIES
New York Bar Number: 4471140
SHANIES LAW OFFICE
110 West 40th Street
Tenth Floor
New York, New York 10018
Tel (212) 951-1710
Fax (212) 951-1350
Cell (646) 515-2151
david@shanieslaw.com

/s/: *Ronald Haley*
RONALD HALEY
Louisiana Bar Number: 30900
HALEY & ASSOCIATES
8211 Goodwood Blvd., Suite E
Baton Rouge, Louisiana 70806
(225) 755-9935 Telephone
(888) 900-9771 Facsimile
rhaley@ronaldhaleylawfirm.com


/s/ *Nancy Rosenbloom*
NANCY ROSENBLOOM
New York Bar Number: 2168425
ADITI SHAH
New York Bar Number: 5886254
ACLU NATIONAL PRISON PROJECT
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2500
Facsimile: (212) 549-2652
nrosenbloom@aclu.org
ashah@aclu.org

/s/ *Tammie Gregg*
TAMMIE GREGG*
MN Bar Number: 026240
ACLU NATIONAL PRISON PROJECT
915 15th St. N.W., 7th Floor
Washington D.C. 20005
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
tgregg@aclu.org


** *Lead Counsel*
*Not admitted in DC; practice limited to federal
courts

**ATTORNEYS FOR PLAINTIFF**

13

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of November, 2022, a copy of the foregoing was served upon all counsel of record by electronic transmission.

/s/ *David J. Utter*
DAVID J. UTTER

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian Kenione Rogers, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 3:22-cv-573-SDD-RLB |
| v. | |
| GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS,[1] in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections, | |
| Defendants. | |

## PLAINTIFFS' SECOND SET OF INTERROGATORIES TO ALL DEFENDANTS

Pursuant to Federal Rules of Civil Procedure 26 and 33, Local Civil Rule 33, and the Court's Order dated October 27, 2022, *see* ECF No. 97, Alex A., Brian B., and Charles C. (Plaintiffs), on behalf of themselves and the putative plaintiff class, *see* ECF No. 99, request that John Bel Edwards in his official capacity as Governor of Louisiana, William Sommers in his official capacity as Deputy Secretary of the Office of Juvenile Justice (OJJ), and James M. LeBlanc in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections (DOC) (collectively Defendants) respond to the following Interrogatories, under oath and in accordance with the Definitions and Instructions set forth below, within thirty (30) days of service.

---

[1] On November 18, 2022, Gov. Edwards announced the resignation of Dep. Sec. Sommers and the appointment of Otha "Curtis" Nelson as his replacement.  https://gov.louisiana.gov/index.cfm/newsroom/detail/3892  Because Sommers was sued in his official capacity, Nelson is automatically substituted as a Defendant.  Fed. R. Civ. P. 25(d).  Plaintiff leaves Sommers as a Defendant until the clerk is ordered to change the caption.

## DEFINITIONS

The following definitions and instructions apply to each of these Interrogatories:

1.    "Class Members" or "Principal Class" means individuals who are members of the putative class as defined in Plaintiffs' Motion for Class Certification, namely, all youth who are now or will be in the custody of OJJ who have been, might be, or will be transferred to the OJJ site at Angola or another adult prison. *See* ECF No. 99.

2.    "Subclass Members" or "Disabilities Subclass" means individuals who are members of the putative subclass as defined in Plaintiffs' Motion for Class Certification, namely, all current and future youth with disabilities within the meaning of the ADA and Section 504 of the Rehabilitation Act in the custody of OJJ who have been, might be, or will be transferred to the OJJ site at Angola or another adult prison. *See* ECF No. 99.

3.    "Communication" means the transmittal of information (whether in the form of facts, ideas, inquiries, or otherwise) and includes every manner or means of statement, declaration, utterance, notation, disclaimer, transfer, or exchange of information of any nature whatsoever, by or to whomever, whether oral, in writing, or in some other form and whether face to face, by telephone, text message, mail, facsimile, email, social media, personal delivery, or otherwise, including correspondence, conversations, dialogue, discussions, interviews, consultations, agreements, and other understandings.

4.    "Concerning" means referring to and includes but is not limited to analyzing, commenting on, comprising, connected with, constituting, containing, contradicting, describing, embodying, establishing, evidencing, memorializing, mentioning, pertaining to, recording, regarding, reflecting, responding to, setting forth, showing, or supporting, directly or indirectly, or having any connection, association, relevance, relation, pertinence, or applicability to, or any implication for, or bearing upon, the subject matter of these Interrogatories.

2

5.    "Identify" means:

    (a) In the case of a natural person, the full name, employer, position, and present or last known business address (including the business organization with which he or she was affiliated during the time period covered by the interrogatory);

    (b) In the case of an organization, proprietorship, firm, corporation, association, or governmental agency or office, its name, legal status, the address and telephone number of its principal place of business, and the name, title and telephone number of the officer, employee or agent most knowledgeable concerning the subject matter of the Interrogatory;

    (c) In the case of a communication, the date, mode, participants, and contents of the communication;

    (d) In the case of a document, the author, date, signor(s), addressee(s), and recipient(s) of the document, as well as its present or last known location and custodian; and

    (e) In the case of a fact, any information that is known.

6.    "Describe" means to recite, in writing, all facts that you or your counsel have obtained, have access to and/or are aware of, that refer or relate to the subject matter of the Interrogatory, including but not limited to (a) the source(s) of each stated fact; (b) all persons with knowledge of each stated fact; (c) all communications referring or relating to each stated fact; and (d) all documents referring or relating to each stated fact.  When referring to a communication, "describe" shall require Defendants to identify (a) the date and time; (b) the initiator(s) and recipient(s); (c) the manner in which the communication was made (e.g. correspondence, telephone, etc.); (d) the contents of the communication; and (e) any and all documents referring or relating to the communication.

7.    "Document(s)" has the broadest meaning possible under the Federal Rules of Civil Procedure, including, but not limited to, Fed. R. Civ. P. 34(a)(1)(A), and includes, but is not limited to, all written, printed, typed, recorded, or visual matter of any kind, type, nature, or description, in whatever form (e.g., final and draft versions), that is or has been in your actual or constructive possession or control, or that you know to exist, including, but not limited to, all printed and electronic copies of electronic mail such as email, text messages, chat messages, notes, correspondence, memoranda, tapes, handwritten notes, articles, diaries, letters, photographs, minutes, contracts, agreements, reports, computer printouts, drafts summaries or notes of any meetings notebooks, audio recordings, video recordings, or any written or recorded materials of any other kind, however stored (whether in tangible or electronic form), recorded, produced, or reproduced.

8.    "Including" means including without limitation.

9.    Relating to means concerning, referring to, regarding, dealing with, discussing, involving, mentioning, arising from, describing, and otherwise having a logical connection to or with a person, subject, event, matter, concept, document, place, or thing.

10.    "Louisiana State Prison," "LSP," "Angola" and "Angola Prison" mean the entire grounds of the maximum security state correctional facility for adults located at 17544 Tunica Trace, Angola, LA 70712.

11.    "Transitional Treatment Unit," "TTU," "OJJ site at Angola," "Bridge City Center for Youth at West Feliciana," and "BCCY-WF" mean the OJJ facility for youth located on the grounds of the Angola Prison.

12.    "Person(s)" includes natural persons and entities including partnerships, firms, associations, joint ventures, corporations, limited liability companies, and any other form of business organization or arrangement, as well as governmental or quasi-governmental agencies.

4

13.     "Staff" means all employees, contractors, and affiliates of or associated with OJJ, DOC, and the Governor's office.

14.     "You," "Your," and "Defendant(s)" mean John Bel Edwards in his official capacity as Governor of Louisiana, William Sommers in his official capacity as Deputy Secretary of the Office of Juvenile Justice, and James M. LeBlanc in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections, together with any of their agents, attorneys, representatives, affiliates, consultants, or any other person acting under their control or on their behalf.

15.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

16.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might be construed to be outside of its scope.

17.     The use of the singular form of any word includes the plural and vice versa.

18.     "Answer" means the defendants' Answer filed on October 4, 2022.  *See* ECF No. 83. "Answer to Amended Complaint" means defendants' Answer to plaintiffs' first amended complaint, filed on November 8, 2022. *See* ECF No. 100.

19.     "Plaintiff(s)" means Alex A., by and through his guardian Molly Smith; Brian B.; and Charles C., by and through his guardian Kenione Rogers.

20.     "Agreement(s)" means any actual or potential agreement, contract, or promise.

## **INSTRUCTIONS**

In addition to those in the Federal Rules of Civil Procedure and Local Rules, the following instructions apply to these Interrogatories:

5

13.    In responding to the Interrogatories set forth herein, you shall furnish all information that is known or available to you, regardless of whether the information is possessed directly by you or someone else.

14.    If objection is made to any part of the Interrogatory, the reason(s) for the objections shall be stated specifically.  If an Interrogatory cannot be complied with in full, you shall answer the Interrogatory to the extent possible, providing a written explanation of why full compliance is not possible.  No answer is to be left blank.

15.    The Federal Rules of Civil Procedure require your compliance when you serve your written responses to the Interrogatories.  With respect to a written response, the requirements of Rule 33(b)(4) must be strictly followed so that Plaintiffs can ascertain: (i) the scope of each stated objection; (ii) which responses will be withheld on grounds of the stated objections; and (iii) which responses will be produced notwithstanding such objections. Notwithstanding any objections, you must comply fully with the other parts of the request to which your do not object.

16.    If, after exercising due diligence to do so, you cannot answer any one or any sub-part of these Interrogatories in full, explicitly so state, and state what you did in an attempt to secure the unknown information.  Answer all other Interrogatories and sub-parts, and give any information in your possession which may partially answer the Interrogatories or sub-part which you cannot answer fully or which may lead Plaintiffs to discover the unknown information.

17.    If, in responding to any of these Interrogatories, you perceive any ambiguity in construing either the Interrogatory or a definition or instruction relevant to it, you shall set forth the matter deemed ambiguous and the construction used in responding to the Interrogatory.

18.    These Interrogatories are continuing in nature to the fullest extent permitted by the Federal Rules of Civil Procedure.

## **INTERROGATORIES**

1.      Identify all facts supporting the denials and affirmative defenses in your Answer and Answer to Amended Complaint, and all person(s) most knowledgeable of those facts and the circumstances surrounding them.

2.      Identify all youth in OJJ custody who have been transferred to the BCCY-WF facility at Angola and all youth who have been identified for future transfer to the BCCY-WF; the rationale and criteria underlying each youth's selection for transfer; the age of each youth; the race and ethnicity of each youth; the individuals involved in the selection of each youth for transfer; any communications to each youth and or each youth's parent or guardian relating to the potential for transfer, future transfer, and/or actual transfer; the form of such communications; the dates of such communications; and the individuals who made such communications to each youth, parent and guardian.

3.      Describe all facts, documents, opinions, and recommendations which contributed to and/or formed a basis of your plans and policies relating to the transfer of youth to the BCCY-WF facility at Angola and the date on which OJJ's use of the BCCY-WF facility at Angola will end, and identify all person(s) most knowledgeable of the development of your plans and policies.

4.      Describe all facts, documents, opinions, and recommendations which contributed to and/or formed a basis of your plans and policies concerning programming for youth at the BCCY-WF facility at Angola, including but not limited to the provision of educational, mental health, recreational, medical, healthcare and disability related services, and identify all person(s) most knowledgeable of the development of your plans and policies.

5.      Describe all measures undertaken to address and/or accommodate the distinctive attributes or vulnerabilities of individual youth, or their particular developmental characteristics, for

youth transferred to the BCCY-WF facility at Angola, including but not limited to the provision of educational, mental health, recreational, medical, healthcare and disability related services and training of staff.

6.      Describe all measures undertaken to address and/or accommodate the particular needs of youth with disabilities under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (ADA), including but not limited to the youths identified in response to Interrogatory No. 2, for youth transferred to the BCCY-WF facility at Angola.

7.      Describe all locations and settings at LSP and/or the BCCY-WF facility at Angola where youth are being or will be transported, have family visits or legal visits, provided housing, educational, mental health, recreational, medical, and healthcare services.

8.      Describe all measures taken or planned to address the risk of suicide or self-harm of youth held in barred cells at the BCCY-WF facility at Angola, including any measures regarding youth with mental health needs.

9.      Describe any policies, plans, or procedures in relation to the hiring, screening, and training of staff (temporary, permanent, and/or substitute, including employees of State agencies and contracted staff) who are interacting or will be interacting with youth at the BCCY-WF facility at Angola.

10.     Describe (a) the current staffing of the BCCY-WF facility at Angola and (b) the staffing as of October 19, 2022 (the date OJJ first transferred youth in its custody to Angola), including numbers of staff hired, numbers of staff who have received training specific to working at an OJJ facility on the grounds of a maximum-security adult prison, job titles of each staff member, whether each staff member is full time or part time, numbers and job titles of each staff member who was hired with an exception or waiver to the usual OJJ screening or qualifications for their position,

numbers and job titles of each staff member  who lives in staff housing associated with the LSP property, numbers and job titles of each staff member who is employed to work both at BCCY-WF at Angola and also at another OJJ location, salaries for each job title, numbers and titles of each staff member receiving or who have received "premium pay" to work at BCCY-WF, and numbers and titles of each staff member receiving or who have received "on-call duty pay".

11.    Describe all facts forming the basis for, and communications concerning, the Memorandum of Understanding (MOU) between OJJ and DOC concerning children in OJJ's custody at the BCCY-WF facility at Angola, including any amendments thereto, and identify all person(s) most knowledgeable of those facts and communications.

12.    Identify all third parties who provided input into the development of your plan for the provision of educational, mental health, medical, healthcare and disability related services to youths in OJJ's custody at BCCY-WF, and describe all communications with such third parties including the dates of and participants to those communications.

13.    Describe all communications with the U.S. Department of Justice's Office of Juvenile Justice and Delinquency Prevention (OJJDP) concerning your plans and actions to transfer youth in OJJ custody to the BCCY-WF facility at Angola, and any offers to provide assistance and/or alternative sites to BCCY-WF by the OJJDP or any other third parties, and identify all person(s) most knowledgeable of such communications.

14.    Describe all sight, sound, or other precautions undertaken to prevent interaction between adult incarcerated individuals at Angola and youth at the BCCY-WF facility at Angola, including but not limited to on the grounds, in relation to food service, health care, medical care, recreation, transportation for medical care and medical care.

15.     Describe all housing, educational, mental health, recreational, medical, healthcare and disability related services which are available at other OJJ facilities but are not available at the BCCY-WF facility at Angola.

16.     Describe any policies, plans, or procedures in relation to the use or non-use of behavior intervention, solitary confinement, isolation, force, electronic control weapons, chemical sprays, canines, and/or any other means to control the behavior of youth at the BCCY-WF facility at Angola.

Respectfully submitted, this 22nd day of November, 2022.

/s/: *David J. Utter*
DAVID J. UTTER **
Louisiana Bar Number: 23236
WILLIAM R. CLAIBORNE
Georgia Bar Number: 126363
THE CLAIBORNE FIRM, P.C.
410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
david@claibornefirm.com
will@claibornefirm.com

/s/: *Christopher J. Murell*
CHRISTOPHER J. MURELL
Louisiana Bar Number: 32075
MURELL LAW FIRM
2831 St. Claude Avenue
New Orleans, Louisiana 70117
(504) 717-1297 Telephone
(504) 233-6691 Facsimile
chris@murell.law

/s/: *Hector Linares*
HECTOR LINARES
Louisiana Bar Number: 28857
SARA GODCHAUX
Louisiana Bar Number: 34561
STUART H. SMITH LAW CLINIC
LOYOLA UNIVERSITY NEW ORLEANS
COLLEGE OF LAW
7214 St. Charles Avenue, Box 902
New Orleans, Louisiana 70118
(504) 861-5560 Telephone
(504) 861-5440 Facsimile
halinare@loyno.edu
shgodcha@loyno.edu

/s/: *Ronald Haley*
RONALD HALEY
Louisiana Bar Number: 30900
HALEY & ASSOCIATES
8211 Goodwood Blvd., Suite E
Baton Rouge, Louisiana 70806
(225) 755-9935 Telephone
(888) 900-9771 Facsimile
rhaley@ronaldhaleylawfirm.com

/s/: David Shanies
DAVID SHANIES
New York Bar Number: 4471140
SHANIES LAW OFFICE
110 West 40th Street
Tenth Floor
New York, New York 10018
Tel (212) 951-1710
Fax (212) 951-1350
Cell (646) 515-2151
david@shanieslaw.com

/s/ Nancy Rosenbloom
NANCY ROSENBLOOM
New York Bar Number: 2168425
ADITI SHAH
New York Bar Number: 5886254
ACLU NATIONAL PRISON PROJECT
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2500
Facsimile: (212) 549-2652
nrosenbloom@aclu.org
ashah@aclu.org

/s/ Tammie Gregg
TAMMIE GREGG*
MN Bar Number: 026240
ACLU NATIONAL PRISON PROJECT
915 15th St. N.W., 7th Floor
Washington D.C. 20005
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
tgregg@aclu.org


** *Lead Counsel*
*Not admitted in DC; practice limited to federal courts

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of November, 2022, a copy of the foregoing was served upon all counsel of record by electronic transmission.

/s/ David J. Utter
DAVID J. UTTER