**UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF LOUISIANA**

ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian Kenione Rogers, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS,[1] in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,

Defendants.

Civil Action No. 3:22-cv-573-SDD-RLB

**Plaintiffs' Reply Brief to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification**

## INTRODUCTION

Defendants' memorandum in opposition to this motion for class certification reads as if the Court's ruling at the preliminary injunction stage is a final ruling on all legal issues in this case, applying to all proposed class members. It is not. Defendants suggest, illogically, that this Court's denial of a preliminary injunction limited to a request to block the State from moving any children to the OJJ Angola facility is a dispositive ruling on the merits of all Constitutional and statutory claims raised in this litigation. Defendants misstate the Court's preliminary injunction ruling when they write, "[T]he Court has already expressly denied these very requests [including for a declaratory judgment that Defendants are violating the rights of

[1] On November 18, 2022, Gov. Edwards announced the resignation of Dep. Sec. Sommers and the appointment of Otha "Curtis" Nelson as his replacement. https://gov.louisiana.gov/index.cfm/newsroom/detail/3892 Because Sommers was sued in his official capacity, Nelson is automatically substituted as a Defendant. Fed. R. Civ. P. 25(d). Plaintiff leaves Sommers as a Defendant until the clerk is ordered to change the caption.

Plaintiffs and proposed class members]: Following the evidentiary hearing on Plaintiff's Motion for Preliminary Injunction the Court concluded Defendants are not violating Plaintiffs' constitutional rights." Doc. 101 at 5 (emphasis in the original).

The preliminary injunction standard, of course, is "likelihood of success on the merits," and not "success on the merits," and this Court evaluated Plaintiff's request accordingly. In addition, the ruling on the request for preliminary injunction is not based on evaluation of a fully-developed merits record following discovery and a trial or motion for summary judgment. Discovery has just begun, and unless the litigation is settled, Plaintiffs will pursue their cause on the merits to a final disposition.[2]

Defendants express shock that Plaintiffs would move for class certification after the preliminary injunction ruling. See, Doc. 101 at 4 ("Still, the Named Plaintiffs persist in their bid for class certification.") There is, in fact, nothing odd about a class certification motion at this early stage of federal litigation in which a large group of people's lives will be affected by Defendants' policies and practices and in which Defendants' actions and inactions affect all class members similarly. Relatedly, Defendants' contention that the motion for class certification should be denied merely because it is "[i]n keeping with the above trend" of the Court denying the motions for TRO and PI, has no legal basis. Doc. 101 at 5.

Plaintiffs reply to each of the substantive arguments below.

[2] Defendants attempted this same unfounded argument earlier in the case, without success. At the close of evidence at the preliminary injunction hearing, Defendants' counsel Mr. Montgomery made an oral motion to dismiss, which this Court denied. Mr. Montgomery went on to ask that any ensuing discovery be severely limited because the Court had allowed Plaintiffs two depositions of two hours each and access to a small number of documents over a period of a few days before the preliminary injunction hearing. Plaintiffs opposed, arguing that this case does not present any exception to the normal rules of civil litigation, and the Court denied Defendants' counsel's request, instructing that the case would proceed to discovery as provided in the Federal Rules of Civil Procedure and the stages beyond, just like any other civil litigation.

## ARGUMENT

**I Plaintiffs Alex A., Brian B. and Charles C. are adequate class representatives.**

Defendants do not challenge the adequacy of Plaintiffs' counsel to represent the proposed class. Doc. 101 at 9 n.9. Defendants also do not contend that each of the three Plaintiffs is part of the proposed class, which consists of "all current and future persons held in OJJ's secure or other custody who have been or might be transferred to the OJJ site at Angola or another adult prison." Doc. 96 at 32, ¶ 91. After noting that adequacy of the three named Plaintiffs is a fact question, Defendants contend that Alex A., Brian B. and Charles C. have not demonstrated that they can adequately pursue this litigation because, defendants argue, their sworn declarations are insufficient and because of the happenstance that OJJ is currently incarcerating them at other secure care sites rather than at the Angola site. Doc. 101 at 9-17. Neither argument should succeed. Defendants also attempt to raise again, improperly, the issue of exhaustion of administrative remedies and relate it to adequacy of representation.

The Rule 23(a)(4) requirement is one of "fairly and adequately protect[ing] the interests of the class." Fed. R. Civ. P. 23(a)(4). As Plaintiffs discussed in their main brief, the adequacy inquiry, explained by the U.S. Supreme Court in *Amchem*, ensures no conflicts of interest between named plaintiffs and the class. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 at 594-95 (1997). Representatives here are part of the class, have the same interests at stake, and are therefore aligned with the class they seek to represent. *Id.* Each of these plaintiffs – like each putative class member – has an interest in not being exposed to placement in what the class contends is an unlawful manner, in a facility that fails to meet lawful standards. It is these factors that mean the adequacy inquiry "merges" with the commonality and typicality inquiries – it is not the same as a standing inquiry, although Defendants conflate the two standards in

their opposition. *See* Doc. 99-1 at 26-27 (citing *Pitts v. Greenstein*, No. CIV.A. 10-635-JJB-SR, 2011 WL 2193398, at *6 (M.D. La. June 6, 2011) (citation omitted)); Doc. 101 at 9-17.[3] The Plaintiffs' declarations, along with the record evidence cited on this motion, provide sufficient evidence that Alex A., Brian B. and Charles C. will adequately represent the proposed class and subclass. There is no evidence of conflicting or divergent interests nor evidence that these three youth are unable to protect the interests of the class.

As to whether three youth in secure care who are at risk of being sent to the Angola site are adequate class representatives, Defendants seem to argue that to be part of the class, any class representative must currently be housed at the Angola site, saying "The Named Plaintiffs all allege (a wholly unsupported) concern that they will be transferred to BCCY-WF in the future." Doc. 101 at 9. This too is a jurisdictional, standing argument and not an adequacy of representation point. Because the Court also has before it Defendants' Motion to Dismiss based on standing, Doc. 102, Plaintiffs address it here briefly and then respectfully refer the Court to their upcoming briefing in opposition to that motion to dismiss.

First, Plaintiffs' concerns are heavily supported by the evidence. The proposed Plaintiff class consists of "all current and future persons held in OJJ's secure or other custody who have been or might be transferred to the OJJ site at Angola or another adult prison." Doc. 96 at 32, ¶ 91. Defendants themselves have acknowledged on the record that *any* young person in OJJ's custody on a juvenile delinquency matter who has been determined by the State to need secure care might be sent to the "temporary treatment unit" at Angola because of alleged bad behavior

[3] In *Amchem,* objectors to class certification argued that certain claimants lacked standing to sue, one of the reasons being – like the Defendants' argument here – the allegation that the proposed class representatives had "not yet sustained any cognizable injury or, to the extent the complaint states claims and demands relief for emotional distress, . . ." the settlement in that case provided "no redress." 521 U.S. at 612. The Supreme Court agreed with the appellate court's declining to reach the standing issues, stating that the class certification issues' "resolution here is logically antecedent to the existence of any Article III issues . . . ." *Id.*

while in custody. Doc. 79 at 22; Doc. 100 at 5, ¶ 15 ("Defendants admit that Youth housed in any OJJ secure care facility are eligible for placement in the Transitional Treatment Unit ("TTU") located at BCCY-WF based on certain criteria laid out in OJJ policy.")

In other words, any one of the 300+ youth in OJJ's secure care custody on a given day is at risk of being placed there – including each of the three named Plaintiffs. The very real risk is illustrated by Plaintiff Alex A.. While Plaintiffs have not yet received discovery concerning Plaintiffs Brian B. and Charles C., the parties and the Court know that Plaintiff Alex A. was not only deemed appropriate for transfer to Angola by OJJ in September 2022, but Defendants' own referral form for him – which contains only a checklist of alleged behavior infractions and no needs-based or strengths-based assessment – checks the box making him ready for transfer without even so much as a team assessment. Defendants' Preliminary Injunction Hearing Exhibit 59 (OJJ's eligibility screening for Alex A. dated September 2021, recommending he be moved to the Transitional Treatment Unit (TTU) on an expedited basis without convening a multidisciplinary team).[4] Far from an "unfounded fear of one day being transferred to BCCY-WF," Doc. 101 at 10, the risk of transfer to the Angola site is well-founded by Defendants' own admission that all secure care youth are at risk, and is thus 100% real for each of these young people.[5]

---

[4] This bypass provision on the agency's own referral form belies Defendants' assurances to the Court at the preliminary injunction hearing and in their written policy that no child would be sent to the Angola site without a multidisciplinary team evaluation. Doc. 79 at 22 ¶ 62 ("OJJ employs a multi-disciplinary team to determine, on a case-by-case basis, if a youth fits the criteria for placement at the TTU.") (citing 9/7/22 testimony of now-Interim-Deputy-Secretary of OJJ Curtis Nelson).

[5] Despite access issues caused by Defendants' opposition to Plaintiffs' counsel inspecting the Angola site or talking with putative class members held there, and delays in approving legal visits, Plaintiffs' counsel represent several youth currently held at Angola. Plaintiffs' counsel is currently seeking a Rule 37 conferral regarding OJJ's denial of Plaintiffs' counsel's request to meet with their clients at the Angola site. See Exhibit B (Dec. 5, 2022 email to Defense counsel). While not required to determine class certification, Plaintiffs inform the Court that they plan to seek leave to amend the Complaint to add at least one Plaintiff who is in custody there now.

Defendants argue that, now that they have begun housing youth in OJJ's custody at the Angola site, this is no longer a case about the risk of being incarcerated at the Angola facility but rather only about the conditions at that facility.[6] Doc. 101 at 10. They are incorrect. Plaintiffs seek to represent a class of youth in OJJ's custody who are now or will in the future be placed at the Angola site and treated in an unconstitutional manner (which also violates the statutory rights of children with disabilities) by being confined there. The proposed class includes hundreds of youth – not merely the seven who are held at the BCCY-WF site today, but all who may be forced to cycle in and out of that "temporary" site in the future.[7] Plaintiffs claim they are harmed by the threat and risk of being sent to this prison as well as the inadequate conditions they will face when housed in the cells there. Defendants state incorrectly that Plaintiffs must present "evidence that they will ever live at BCCY-WF" in order to be adequate class representatives. *Id.* at 10. That is not the standard for adequacy of representation in a case about the unconstitutionality of Defendants' use of the Angola site to house youth in OJJ custody and the resulting harm to youth at risk of or actually being confined there. As this Court acknowledged, based on unrefuted expert testimony, that harm includes the anticipatory fear this Court acknowledged is part of plaintiffs' claims for youth who "are or will be" placed at the Angola site. Doc. 79 at 3 ("The Court is mindful that the specter of the prison surroundings alone will likely cause psychological trauma and harm."); *id.* at 36 ¶ 155 ("Dr. Stevens concluded that the psychological impact of Angola's reputation as a scary prison plagued with

---

[6] Defendants acknowledge they began moving youth from other OJJ secure care facilities to the Angola site on October 19, 2022. See, Exhibit A (OJJ press release announcing transfer of 8 youth to Angola facility).

[7] The Court cited OJJ Deputy Secretary William Sommers' 9/8/22 hearing testimony when finding that "Youth ages ten through eighteen, identified as high-risk, are eligible for placement in the TTU." Doc. 79 at 22 ¶ 61.

aggression and violence has resulted in serious anticipatory stress for Alex A. The specter of the move to Angola is traumatic and thus harmful to the developing adolescent brain.").

Defendants' citation of *Copeland,* a case from an out-of-circuit District Court, is not on point. Doc. 101 at 10, citing *Copeland v. Wabash County, Indiana*, 338 F.R.D. 595 (N.D. Ind. 2021). The Indiana court found plaintiffs to be adequate class representatives and noted that the conditions they experienced were part of their understanding the "basic facts underlying their claims." Id. at 605. Defendants cite no case supporting the proposition that, to be adequate class representatives in a case like this one, each named plaintiff must have personally experienced the conditions they are at risk of being exposed to. This case alleges, among other things, that the prospect/risk of being a child civilly adjudicated as delinquent whom OJJ holds in custody in a cell on the grounds of the notorious adult prison at Angola itself causes harm. Moreover, it would be impossible for the children in OJJ's custody to provide evidence that they will be sent to Angola in the future; those determinations are solely within the discretion of OJJ.

Defendants' argument that the Plaintiffs are not adequate representatives because they failed to exhaust administrative remedies is an argument they raised and lost. It is also not an adequacy argument but rather a standing argument which this Court ruled on when Defendants raised it in their motion to dismiss at the end of the Preliminary Injunction hearing. Discussing and following the ruling in *J.H. v. Edwards*, No. 20-293-JWD-EWD, 2020 WL 3448087 (M.D. La. June 24, 2020), this Court ruled that "the denial of Alex A.'s emergency ARP constituted a final decision upon which Plaintiff could rely in filing suit." Doc. 79 at 7.[8] Defendants cannot

[8] This Court continued: "Alternatively, the Court finds that, following a denial of the emergency ARP, the remaining procedure "operates as a simple dead end" because the second step procedure, urged by the Defendants, 'lacks authority to provide any relief'. Furthermore, if applied as advocated by the Defendants the 'administrative

get another bite at the apple by attempting to raise this argument under the guise of being related to adequacy of representation of a class – and Defendants' argument here is just that. It boils down to baselessly reinterpreting the Court's ruling as one that applies only to their pre-transfer claims, which Defendants characterize as "anticipatory" claims that are insufficiently specific. Doc. 101 at 10-11, n 5. The Court's ruling was that Defendants had not succeeded on their argument that Plaintiffs failed to exhaust before filing suit. Doc. 79 at 7. The lawsuit includes all of the claims.[9] Nowhere did this Court (or any other) establish a new rule that, in addition to the PLRA's requirements, incarcerated children or adults must exhaust (or attempt to exhaust) administrative remedies repeatedly.

Defendants cite no case law to support their proposition that administrative exhaustion is or must be a factor in determining adequacy of representation. They cite one out-of-circuit case, *Salem v. Mich. Dep't of Corr.*, No. 13-cv-14567, 2019 WL 4409709 (E.D. Mich., Sept. 16, 2019) which does not amend the Rule 23(a)(4) adequacy test. The *Salem* court is clear that the PLRA's exhaustion requirement is a separate inquiry from the class certification inquiry, although the decision notes that questions in that case about whether plaintiffs exhausted adequately "raise concerns" about those plaintiffs' ability to demonstrate typicality, adequacy and commonality. Id. at *10. Defendants cite no caselaw that supports their theory that only someone who has already experienced confinement at the OJJ Angola site or any other jail or prison may serve as a class representative for a class that contains people who are now and who will be subjected to confinement at that location.

---

scheme [is] so opaque that ... no reasonable prisoner can use them.'" Doc. 79 at 7 (citing *Valentine v. Collier*, 956 F.3d 797, 804 (5th Cir. 2020)).

[9] The Amended Complaint retains all of the claims in the Complaint, and adds a claim under the Americans with Disabilities Act. Docs. 1, 96.

Even if allowed to reargue this point and call it an adequacy argument, Defendants should not prevail for the reasons set forth in the Court's ruling, Doc. 79, and argued in Plaintiffs' Proposed Findings of Fact and Conclusions of Law and Post-Hearing Brief. Doc. 51 at 37-40; Doc. 73 at 2-3. Exhaustion is an affirmative defense, not a pleading requirement. As this Court found, by pursuing the emergency ARP grievance process and receiving the official denial, each of the Plaintiffs showed that they exhausted the administrative remedies that were available to them under OJJ's ARP policy and the instructions given to youth regarding ARPs and received a final response, allowing them to move on to filing their claims in this Court. Plaintiffs' grievances/ARPs were detailed and specific, encompassing all of the claims and areas of contention in this lawsuit. Even if a plaintiff had not exhausted for all claims, which is not the situation here, the suit could proceed, contrary to Defendants' suggestion in citing S*ylvester v. Cain.* Defendants mischaracterize *Sylvester*, as ruling that class representatives must exhaust for all claims in order for a lawsuit to proceed. Doc. 101 at 11. In *Sylvester*, however, the court allowed the case to proceed on the claim that was sufficiently exhausted. Failure to exhaust another claim did not mean failure to exhaust overall. *Sylvester v. Cain*, No. 04-0572-B-M2, 2006 WL 8440126, at *1 M.D. La. (March 30, 2006).

**II. Plaintiffs have established commonality.**

The commonality requirement is satisfied where "there is a need for a combined treatment and a benefit to be derived therefrom." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Contrary to Defendants' characterization of this requirement, the Fifth Circuit has consistently held that "[t]he threshold of 'commonality' is not high." *Id.*; *Almon v. Conduent Bus. Servs., LLC*, 2022 WL 4545530, at *9 (W.D. Tex. 2022) (finding that defendant's "protests about the specificity of facts required to identify putative class members fail to defeat commonality").

Here, the Defendants seek to impose a higher standard for commonality and urge this Court to deny class certification because of purported "dissimilarities" between the claims of the proposed Principal Class and Disability subclass. *See* Doc. No. 101 at 18-19. However, the commonality requirement has been met, and in fact exceeded, with at least twelve "common contentions" of law and fact. *See* Doc No. 99-1 at 18-19. Resolution of these "common contentions" via combined treatment will result in a similar benefit for the proposed class members.

**III. Plaintiffs' claims are typical of the proposed class and subclass.**

Defendants do not assert any facts to demonstrate ways in which the Plaintiffs' claims are not typical of the proposed classes as a whole; they recite the standard for typicality and then direct this Court to the Defendants' discussion of adequacy, a wholly separate requirement under Rule 23. *See* Doc. 101 at 17. To satisfy the typicality requirement, Plaintiffs need not "claim to have suffered from every possible practice of the defendants," but rather, must show "a sufficient nexus to enable them to represent other class members suffering from different practices motivated by the same policies." *Doe v. First City Bancorporation of Texas, Inc.*, 81 F.R.D. 562, 569 (S.D. Tex. 1978) (finding typicality where "plaintiffs individual claims may vary in specific factual circumstances [but] they will be typical of the class which has allegedly suffered injury from the same animus") (internal citations omitted). Defendants agree that, to prove typicality, Plaintiffs "need not show 'a complete identify of claims.'" Doc No. 101 at 17; *citing Ward v. Hellerstedt*, 753 Fed. App'x 236, 246 (5th Cir. 2018). Here, Plaintiffs' claims have a sufficient nexus to those of the absent putative class members because any harm suffered by those class members would be motivated by the same policies and practices of the Defendants.

## IV. The class is sufficiently numerous to warrant certification.

Defendants argue in opposition to this motion that, essentially, only the number of youth who are currently incarcerated at the OJJ Angola site are part of the proposed class, rather than all those who are now there or are at risk of being sent there. Doc. 101 at 21-22. They ignore a well-established body of case law governing the parameters of classes and numerosity and offer no legal argument, stating instead twice in a two-page section that the reasons for finding a lack of numerosity are "obvious." Defendants simply discount Plaintiffs' argument, grounded in caselaw, that the proposed class is sufficiently numerous because the Angola site is for transitional use, Defendants admit that any youth in OJJ secure care could be sent there, and that there are "at least 356 youth in OJJ secure care facilities" on any given day who are at risk of being transferred in and then out of that location.

Similarly, Defendants ignore that the composition of the proposed class is constantly in flux (and therefore more numerous and impracticable to join) as additional youth are placed in OJJ's secure level of custody and others leave. Doc. No. 99-1 at 13-16. Defendants contend, instead, that because the capacity they have currently declared for the OJJ Angola site is 30 youth at a time (despite their acknowledgment that there is sufficient cell space for 101 youth), the class is easily identifiable and that "these thirty (or fewer)" youth could be joined in the litigation. The law is clear that numerosity includes not only class members who meet the class definition at a particular time but rather those who will enter the class in the future. *See, Pederson v. v. Louisiana State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000); *Jones v. Gusman*, 296 F.R.D. 416, 465 (E.D. La. 2013) (jail and detention populations are "constantly in flux"); *see also Cole v. Livingston*, No. 4:14-CV-1698, 2016 WL 3258345, at *6 (S.D. Tex. June 14, 2016), *aff'd sub nom. Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017). Defendants' repeated

assurances that the Angola site will be a transitional one where each youth they send there is expected to be transferred in and then out again to another secure OJJ facility within four to six weeks supports numerosity as well. Doc. 79 at 22, ¶ 64. Unless Defendants agree to cease using this facility on the Angola prison property tomorrow, the number of class members who experience the conditions at the OJJ Angola site will grow every week.

## V. Certification of a Rule 23(b)(2) class is appropriate.

Defendants do not dispute Plaintiffs' long list of cases in which courts in this Circuit and others have certified Rule 23(b)(2) class actions involving people who are incarcerated and are challenging the circumstances and conditions of their confinement, including youth in juvenile facilities. Doc. 99-1 at 18. Nor do they dispute that Defendants here have "acted . . . on grounds that apply generally to the class," in deciding to incarcerate youth adjudicated delinquent on the grounds of Angola, where they are and will be exposed to an adult maximum-security prison setting and the physical conditions of the former death row building. Rule 23(b)(2). Similarly, Defendants do not dispute that their policies and practices at issue are actions or inactions that apply generally to the entire class; these include the criteria for assessing children in OJJ custody for eligibility to be transferred to the Angola site, telling children they are at risk of being sent to Angola, transferring children to the Angola site, housing them in uniform, single, barred cells without windows or privacy, and providing or not providing required services and supports.[10]

[10] Defendants correctly point out that class actions are the exception to the usual rule of individual party litigation, but they erroneously add a special due process caution for Rule 23(b)(1) and 23(b)(2) classes by citing a non-binding dissenting opinion as if it were the holding. See Doc. 101 at 6, citing the dissent in *H.L. v. Matheson*, 450 U.S. 398, 432 (1981).

Defendants oppose in part based on their contention that injunctive or declaratory relief is not "appropriate respecting the class as a whole." *Id.* Yet their argument is unpersuasive in distinguishing this matter from Fifth Circuit precedent and the long history of civil rights cases of this nature being adjudicated as Rule 23(b)(2) classes. Doc. 99-1 at 22-23. In arguing that one declaratory judgment or injunction will not be appropriate for the entire proposed class here, Defendants mischaracterize the relief sought by the Plaintiffs here and misapply a Washington district court case. Doc. 101 at 26.

Plaintiffs here detail the constitutional and statutory violations they allege, and seek relief including "a declaratory judgment that Defendants are violating Named Plaintiffs' and class members' constitutional rights (and, for proposed disability subclass members, federal statutory rights) by transferring them to the OJJ site at Angola where they will not receive lawful conditions of confinement, counseling, education, other rehabilitative services, and sufficient safety from adults incarcerated at LSP;" injunctive relief "requiring Defendants to cease plans to transfer Plaintiffs and class members to the OJJ site at Angola, and to immediately release to the community or transfer Plaintiffs and any class members who have already been moved to the OJJ site at Angola back to one of OJJ's pre-existing secure care or other facilities;" and such other and further relief that the Court deems proper. Doc. 96 at 39.

A declaration that the conditions of confinement, counseling, education, and/or other rehabilitative services are unlawful would apply to all class members equally. Similarly, any injunction involving ceasing the transfer of youth from OJJ secure sites to the Angola site, for example, would necessarily be a change in current policy and practice, applying to all youth equally, and providing protection similarly for all class and subclass members. If this Court issued other relief that it deems just and proper, that relief could conceivably take the form of

requiring conditions changes, or education or service enhancements – any of which would apply across the board to all youth sent to or threatened with transfer to the Angola site.

Defendants mischaracterize and reduce the relief sought to "a blanket release," and argue based on that mischaracterization that this would amount to a "different injunction or declaratory judgment" for each class member under *Wal-Mart v. Dukes*. Doc. 101 at 25, citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Defendants then cite and misapply the Washington case as similar to this one in seeking a remedy that is not indivisible. Doc. 101 at 26, citing *Juarez v. Asher*, No. C20-0700JLR-MLP, 2020 WL 5746875, at *4 (W.D. Wash. Sept. 25, 2020). In *Juarez*, unlike here, plaintiffs formally sought only release from incarceration as relief (though they later suggested multiple other forms of relief in their reply brief). The court denied class certification for failure to satisfy the "indivisible, uniform remedy" inquiry because plaintiffs sought only release, but the court noted if the plaintiffs had sought other types of relief, like those they described in the reply brief, class certification could have been granted. *Id.* at *5 ("Although the type of injunction described by Petitioners in their reply memorandum and their objection to the R&R may be applicable on a class-wide basis and therefore eligible for certification under Rule 23(b)(2), Petitioners did not plead any such injunction here.")

As to Defendants' contention that a single injunction "could not possibly remedy the various alleged constitutional violations as to the entire population of BCCY-WF" and those at risk of being sent there, Doc. 101 at 26, it is precisely the type of policy- and practice-based relief sought by Plaintiffs, equally applicable to all youth in OJJ's secure custody who are or will be held at the Angola site, that would be designed to remedy those violations. If the Court found constitutional and/or statutory violations inherent in housing youth adjudicated

delinquent in a building at an adult prison and enjoined the Defendants from placing children in OJJ custody there after a certain date, for example, that relief would remedy the violations found for all proposed class members in the same manner.

Similarly, if the Court found the Defendants were housing youth at the Angola site in unconstitutional conditions, it could issue an injunction requiring those conditions be remedied. That relief would apply equally to all youth who are or will be sent to the Angola site. And if the Court found that Defendants were transferring youth with disabilities to the Angola site in a manner that constituted punishment and enjoined them to cease doing so, or if the Court found Defendants were failing to provide required modifications for youth with disabilities at the Angola site and enjoined Defendants to provide those adjustments, that relief would remedy the ADA and/or Rehabilitation Act violation for all members of the proposed disability subclass.

Defendants also contest that this case is appropriate for Rule 23(b)(2) certification on the ground that Plaintiffs' request for relief is not sufficiently specific. As recounted above, the Amended Complaint is quite specific about the types of legal violations that underlie each of Plaintiffs' claims, and about the various types of relief sought. Moreover, it is plainly inconsistent that Defendants claim the relief sought by Plaintiffs is "generic and overbroad," and in the same breath argue that Plaintiffs, by being too specific about what makes delinquency placements lawful, are "undercutting OJJ's operations" and seeking to "overstep" State officials' authority to operate juvenile institutions and programs. Doc. 101 at 27-28.

For the reasons stated above and in Plaintiffs' main brief on this motion, Plaintiffs respectfully request that the Court grant their motion and certify the class and subclass.

Respectfully submitted, this 5th day of December, 2022.

/s/: *David J. Utter*
DAVID J. UTTER **
Louisiana Bar Number: 23236
WILLIAM R. CLAIBORNE
Georgia Bar Number: 126363
THE CLAIBORNE FIRM, P.C.
410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
david@clibornefirm.com
will@claibornefirm.com

/s/: *Christopher J. Murell*
CHRISTOPHER J. MURELL
Louisiana Bar Number: 32075
MURELL LAW FIRM
2831 St. Claude Avenue
New Orleans, Louisiana 70117
(504) 717-1297 Telephone
(504) 233-6691 Facsimile
chris@murrell.law

/s/: *Hector Linares*
HECTOR LINARES
Louisiana Bar Number: 28857
SARA GODCHAUX
Louisiana Bar Number: 34561
STUART H. SMITH LAW CLINIC
LOYOLA UNIVERSITY NEW ORLEANS
COLLEGE OF LAW
7214 St. Charles Avenue, Box 902
New Orleans, Louisiana 70118
(504) 861-5560 Telephone
(504) 861-5440 Facsimile
halinare@loyno.edu
shgodcha@loyno.edu

/s/: *Ronald Haley*
RONALD HALEY
Louisiana Bar Number: 30900
HALEY & ASSOCIATES
8211 Goodwood Blvd., Suite E
Baton Rouge, Louisiana 70806
(225) 755-9935 Telephone
(888) 900-9771 Facsimile
rhaley@ronaldhaleylawfirm.com

/s/: *David Shanies*
DAVID SHANIES
New York Bar Number: 4471140
SHANIES LAW OFFICE
110 West 40th Street
Tenth Floor
New York, New York 10018
Tel (212) 951-1710
Fax (212) 951-1350
Cell (646) 515-2151
david@shanieslaw.com

*/s/ Nancy Rosenbloom*
NANCY ROSENBLOOM
New York Bar Number: 2168425
ACLU NATIONAL PRISON PROJECT
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2500
Facsimile: (212) 549-2652
nrosenbloom@aclu.org
*/s/ Tammie Gregg*
TAMMIE GREGG*
MN Bar Number: 026240
ACLU NATIONAL PRISON PROJECT
915 15th St. N.W., 7th Floor
Washington D.C. 20005
Telephone: (202) 393-4930
Facsimile: (202) 393-4931

tgregg@aclu.org

** *Lead Counsel*
*Not admitted in DC; practice limited to federal courts

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of December, 2022, a copy of the foregoing was served upon all counsel of record by electronic transmission.

/s/ *David J. Utter*
DAVID J. UTTER