UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian Kenione Rogers, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS,[1] in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,<br><br>    Defendants. | Civil Action No. 3:22-cv-573-SDD-RLB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING** |

## INTRODUCTION

Plaintiffs oppose Defendants' Motion to Dismiss for Lack of Standing (Doc. 102) because Plaintiffs have suffered harm and will suffer imminent harm due to Defendants' conduct that they challenge as unlawful in this litigation. This Court denied Defendants' oral motion for dismissal after the Plaintiffs rested their case during the hearing on Plaintiffs' Motion for Preliminary Injunction, when none of the putative class was yet in custody in the Office of Juvenile Justice ("OJJ") Angola site (referred to as Louisiana State Penitentiary, LSP or BCCY-WF). Plaintiffs' Amended Complaint clearly pleads factual allegations of harm to youth currently housed at the

---

[1] On November 18, 2022, Gov. Edwards announced the resignation of Dep. Sec. Sommers and the appointment of Otha "Curtis" Nelson as his replacement.   https://gov.louisiana.gov/index.cfm/newsroom/detail/3892    Because Sommers was sued in his official capacity, Nelson is automatically substituted as a Defendant. Fed. R. Civ. P. 25(d). Plaintiff leaves Sommers as a Defendant until the clerk is ordered to change the caption.

OJJ Angola site and those whom OJJ has found or will find eligible for transfer there and who thus live with the fear of being transferred to Angola.

## ARGUMENT

I. **The Court Has Subject Matter Jurisdiction in this Case**

   A. **All Current and Future Youth in Louisiana Who Are Adjudicated Delinquent and Held in Secure Care Face Imminent and Actual Harm**

The doctrine of standing is "a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." See *Lewis v. Casey*, 518 U.S. 343, 349 (1996). While it is the role of political branches to shape the institutions of the government to comply with Constitutional protections, such as OJJ's decision to open a new facility, it is "the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm." *Casey*, 518 U.S. at 349. Plaintiffs' Amended Complaint identifies "[y]oung people who are the target of Defendants' commitment to transfer youth to the OJJ site at Angola." Doc. 96 at 10, ¶25. These are youth who will imminently suffer actual harm.

The Amended Complaint covers both youth who have been transferred to the OJJ Angola site and are subject to unconstitutional treatment as well as all youth in OJJ's secure custody who are eligible for transfer. The Plaintiffs allege unconstitutional treatment at the OJJ Angola site due to Defendants' failure and inability to "provide adequate recreation, medical care and mental health programming, education, and other forms of rehabilitation." Doc. 96 at. 25, ¶72. The imminent harm for eligible youth is an actual transfer to the OJJ Angola site and/or living with the fear of being transferred; these youth "face serious psychological and physical harm." Doc. 96 at 29, ¶82. Plaintiffs Alex A., Brian B. and Charles C. have properly alleged that "each has experienced fear, anxiety, and worsening mental health symptoms due to the fear and anticipation of being transferred to Angola." Doc. 96 at 22, ¶66. As noted in a recently filed motion for access

2

to their counsel, Plaintiffs have communicated with and been retained by a number of families and youth currently locked up by OJJ at the Angola site. Defendants have finally permitted visits with at least one of the youth, and Plaintiffs' counsel is scheduled to meet today with the youth. Plaintiffs will be moving formally to enter youth who are at the Angola site into the case shortly.[2]

Defendants misconstrue the claims contained in the Amended Complaint by reframing the claims as a challenge only to the conditions of confinement for youth currently held at the Angola site, even though the Amended Complaint continues to include youth who are at risk of imminent harm *and* youth who are currently confined at BCCY-WF. The initial Complaint and the Amended Complaint seek "to prevent Defendants from incarcerating any youth adjudicated delinquent in LSP." Doc. 1, p. 4, ¶7. *See also* Doc. 96, p. 10, ¶26. Defendants concede that the "'Amended Complaint' largely restates the allegations of the initial Complaint, with mild revisions and clarifications" yet they state inaccurately that Plaintiffs: "no longer challenge OJJ's plan to transfer youth." Doc. 102-1 at 2-3. As Defendants acknowledge, Plaintiffs have made few changes to what they seek, and what they seek is to prevent Defendants from incarcerating any youth adjudicated delinquent at the now-opened OJJ Angola site.[3]

**B. Plaintiffs Satisfy the Three Requirements of Standing**

Defendants correctly identify the three elements of standing but erroneously reframe the claims in Plaintiffs' Amended Complaint to argue that Plaintiffs do not meet the first requirement.

---

[2] Defendants have been made aware of the identifies of these young people.

[3] Defendants attempt, without citing any caselaw, to narrow Plaintiffs' claims and the relief they may seek by incorrectly characterizing the claims as an "as applied" challenge to "the BCCY-WF facility." Doc. 102-1 at 2. This characterization makes no sense. Judicial analysis of the constitutionality of statutes as "facial" or "as applied" is a framework that does not apply here, as Plaintiffs are not seeking to have a statute held unconstitutional. *See United States v. Salerno,* 481 U.S. 739 (1987); *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008); *United States v. Stevens*, 559 U.S. 460 (2010).

To have standing, a plaintiff must meet the requirements of injury, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). *In re Deepwater Horizon*, 739 F.3d 790, 799 (5th Cir. 2014) (identifying the three elements of standing as injury in fact, plaintiff's injury traceable to the defendant's conduct, and the injury may be redressed by the relief requested).

Standing is determined "at the time the action commences," *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000), or at the time that additional plaintiffs join a case by filing an amended complaint. *See, Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) (allowing plaintiffs' claims against a county jail to proceed where they were detained when filing the second amended complaint but were all later released from jail prior to class certification); *In re Deepwater Horizon*, 739 F.3d at 804 (class action plaintiffs had standing so long as every class member "can *allege* standing" and it was not necessary for each class member to prove personal standing) (citation omitted).

The first requirement is that a plaintiff must have suffered an "injury in fact" that is "(a) concrete and particularized" and (b) actual or *imminent*, not "conjectural or hypothetical." Doc. 102-1 at 3 (citing *Lujan*, 504 U.S. at 560-561) (emphasis added). Defendants argue Plaintiffs lack standing because "they are not housed at BCCY-WF, nor can they prove that they will be transferred to BCCY-WF imminently" thus claiming there is no injury in fact. Doc. 102-1 at 4. However, by Defendants' own admission, any youth in the secure care of OJJ is eligible to meet the criteria "to be transferred to the TTU at BCCY-WF." Doc. 102-1 at 5. Defendants go on to list all the criteria in OJJ's policy yet fail to identify exclusions or exceptions that would make named Plaintiffs and the putative class ineligible for transfer. Defendants also testified before this Court that any youth in OJJ's custody who has been determined by the State to need secure care might

4

be sent to the "temporary treatment unit" at Angola because of bad behavior while in custody. Doc. 79 at 22, ¶61, Doc. 100 at 5, ¶15 ("Defendants admit that Youth housed in any OJJ secure care facility are eligible for placement in the Transitional Treatment Unit ("TTU") located at BCCY-WF based on certain criteria laid out in OJJ policy.") There is nothing hypothetical or conjectural about this imminent harm when it is clear that any of the named Plaintiffs and putative class members are eligible for transfer on any given day while they are in OJJ's secure custody.

Any of the more than 300 youth in OJJ's secure care custody on a given day are at risk of being transferred to the Angola site, including each of the three named Plaintiffs. That risk, which constitutes imminent injury, is illustrated by Plaintiff Alex A., whom Defendants have admitted they found appropriate for transfer in September 2022. Defendants' own referral form for Alex A. checks the box making him ready for transfer without even so much as a team assessment. Defendants' Preliminary Injunction Hearing Exhibit 59 (OJJ's eligibility screening for Alex A. dated September 2022, recommending he be moved to the Transitional Treatment Unit (TTU) at Angola on an expedited basis without convening a multidisciplinary team). This satisfies the injury in fact requirement. Although Plaintiffs are not in possession of any similar form that may exist for Plaintiffs Brian B. and Charles C. because Defendants sought and received a stay on the discovery Plaintiffs served, it is well established that as youth in the secure care of OJJ, they too are at imminent risk of being transferred to the Angola site.

In terms of actual injury already experienced, Alex A. has "experienced significant mental and physical harm, including increased difficulty sleeping, extreme stress…and has started to pull out his hair" for fear of being subject to unsafe conditions at the Angola site. Doc. 79 at 36, ¶156; Doc. 96 at12, ¶32. Brian B. experienced shock and confusion when he learned he "was one of the youth being moved." Doc. 99-2, ¶ 9. Brian B. made a sworn declaration that other youth in his

5

dorm "are scared." Doc. 99-2, ¶ 9. Charles C. has also experienced worry, anxiety and fear at the possibility of being sent to Angola. Doc. 99-3, ¶ 10. Charles C. has also experienced trouble sleeping and expressed concern at the "being locked in a cell most of the time if [he] is moved there." Doc. 99-3, ¶ 10.[4]

Defendants cite *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) to assert that Plaintiffs lack standing because they are in OJJ's custody but not yet transferred to the Angola site. Doc. 102-1 at 4. Defendants fail to elaborate on what in their view is sufficient to show imminent harm. *Lyons* is distinguishable here. *Lyons* was an individual case in which the plaintiff lacked standing at the time of filing the complaint, and it does not pose any barrier for a class action where plaintiffs' claims are not moot. *See Dixon v. City of St. Louis*, No. 4:19-CV-0112-AGF, 2021 WL 616151, at *5 (E.D. Mo. Feb. 17, 2021) (allowing a class action to proceed where named plaintiffs were no longer subject to the challenged violations and noting that "[t]he City's reliance on *Lyons*, which involved a single plaintiff, is misplaced"). In *Lyons* the court held the individual plaintiff lacked standing at the time of filing because his complaint alleged past police misconduct and failed establish a "real and immediate" threat of another encounter with the police that would result in police misconduct. *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). Because the plaintiff there "made no showing that he is realistically threatened by a repetition" of being subject to an illegal chokehold during a police encounter, the court found no personal stake and that the claims were hypothetical and conjectural. *Lyons*, 461 U.S. at 102, 109. Here, by contrast, Plaintiffs have filed a class action, not an individual claim, and seek declaratory

---

[4] Plaintiffs note they will move for leave to amend the Complaint to add at least one youth, and hopefully more depending on Defendants' respect for youths' constitutional rights to access to the court who are currently in OJJ's custody at the Angola site. These Plaintiffs retained counsel earlier but were prevented from meeting in person with their counsel by Defendants' counsel until today, which is the reason for their seeking to join the case only now.

and injunctive relief on behalf of all youth in OJJ's custody who are now or could be transferred to the Angola site. Plaintiffs alleged at the time of filing that they were currently suffering injury because of the "emotional and psychological harm" of being threatened with being sent to the grounds of a notorious adult maximum-security prison. Doc. 96 at 29, ¶82. They also alleged at the time of filing that they will suffer harm if transferred to the Angola site. Doc. 96 at 25, ¶96. Their claims are based on a present and future harm, not a single incident from the past.

A favorable decision by this court would personally impact all Plaintiffs and proposed class members by putting an end to their ongoing suffering which highlights their personal stake. The mere prospect of being transferred to Angola and being part of the large group of youth at risk of transfer is the harm and is sufficient to establish a personal stake in the outcome.[5] There is nothing hypothetical about the anxiety, fear, and heightened mental health symptoms Plaintiffs are experiencing due to Defendants harmful actions.

Defendants assert incorrectly that Plaintiffs "must have standing at all stages of litigation," citing two U.S. Supreme Court cases that in fact stand for the opposite proposition in the class action context. Doc. 102-1 at 5. The Court in *U.S. Parole Commission v. Geraghty*, 445 U.S. 388 (1980), discussed *Sosna v. Iowa* and *Gerstein v. Pugh*, stating clearly that "mootness of the named plaintiff's individual claim after a class has been duly certified does not render the action moot" and that, even before a class is certified in a case brought as a class action, that "timing is not crucial." 445 U.S. at 397-98, citing *Sosna*, 419 U.S. 393, 400 (1975) and *Gerstein*, 420 U.S. 103, 110, n.11 (1975).

---

[5] Plaintiff Charles C. declared that the staff have "been using the move to Angola" against him and other youth if they "do something wrong." Doc. 99-3, ¶ 10. The staff taunt youth and incite fear by threatening a transfer to Angola. *Id.*

7

Defendants do not contest the other two requirements of standing which is appropriate since Plaintiffs do satisfy the second and third requirements. The second requirement is causation which Plaintiffs have sufficiently alleged in the Amended Complaint. Causation requires a "causal connection between the injury" and the defendant's conduct. *Lujan*, 504 U.S. at 560. Among other claims in this case, Plaintiffs claim that it is the Defendants' plans, policies and procedures including their decision to hold youth in OJJ custody at the Angola site that are unconstitutional and that have caused Plaintiffs to experience "significant fear, anxiety, and worsening mental health symptoms due to the fear and anticipation of being transferred to Angola." Doc. 96 at 22, ¶66. Defendants' actions are a direct cause of Plaintiffs' injury in fact.

The third requirement is redressability – it must be likely that the injury will be redressed by a favorable court decision. *Lujan*, U.S. 504 at 561; Doc. 102-1, at 3-4. The Amended Complaint alleges that Plaintiffs and those similarly situated have "suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and failures to act" and seek declaratory and injunctive relief as a Rule 23(b)(2) class redress the unlawful conduct and avoid any further injury. Doc. 96, p. 35-38, ¶¶102-116.  It is clear that this Court can, after full discovery and a trial, provide Plaintiffs relief with a favorable decision.

Defendants' motion is focused on the fact that the named Plaintiffs are not currently housed at the Angola site, yet ignore the fact that Plaintiffs have standing because of actual and/or imminent harm.  To establish standing at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561. Plaintiffs' Amended Complaint contains general and detailed allegations supported by sworn declarations and Defendants' own admissions on the record. Doc. 9-2; Doc. 99-2; Doc. 99-3; Doc. 96.

Importantly, Defendants' current Motion to Dismiss does not cite a single case in which the court found no standing for a prisoner plaintiff who faced imminent harm if transferred to another facility. The caselaw supports Plaintiffs' standing. Applying the well-established "actual or imminent injury" standard discussed above, lower courts have confirmed that incarcerated plaintiffs have standing in similar situations to that of Plaintiffs here. In *Fitzharris v. Wolff*, 702 F.2d 836, 839 (9th Cir. 1983), for example, the court held plaintiff had standing and cognizable claims for relief based on allegations that he would suffer imminent harm if transferred to a different state prison. Like the plaintiff in *Fitzharris*, Plaintiffs are not currently housed at the proposed facility where they will suffer constitutional violations but the risk of transfer there, and the resulting harm, along with the current harm they are suffering from fear of going to Angola, is enough to confer standing.

The Fifth Circuit has found standing where the plaintiff was the "object" of the challenged action. *See Garner v. Moore*, 536 F. App'x 446, 449 (5th Cir. 2013); *see also United States v. DeCay*, 620 F.3d 534, 538 n. 2 (5th Cir.2010) ("[W]hether [a plaintiff] has standing to make the argument is distinct from whether the argument has merit."). In *Garner*, the prisoner-plaintiff had standing to bring a denial of access to court claim because he was the "'object' of the defendants' action...and he was himself among the injured." *Id*. Because the challenged action, i.e., denying him access to the prison law library, injured him, this satisfied the standing requirement. Like the plaintiff in *Garner*, Plaintiffs are among those injured by OJJ's decision to transfer youth to Angola because they are the object of the State's actions – they are each at risk of transfer and experience psychological harm at this impending move.[6]

---

[6] In *Leeke v. Timmerman* 454 U.S. 83, 86 (1981), prisoner-respondents lacked standing because there was no guarantee that addressing the alleged misconduct "would remedy the claimed past misconduct...or

9

It should be noted that this Court proceeded with the Preliminary Injunction hearing based on the initial Complaint at a time when Defendants were imminently about to send youth to the Angola site but had not yet used it; the Court did not dismiss the case *sua sponte* at that point for lack of standing, or after Defendants moved to dismiss. Then, as now, the same Plaintiffs are concerned with both the actual and imminent harm they face, and will continue to face, by Defendants' actions that Plaintiffs allege violate their constitutional and statutory rights.

## CONCLUSION

Plaintiffs' Amended Complaint clearly pleads factual allegations of harm to youth currently housed at the OJJ Angola site and those whom OJJ has found or will find eligible for transfer there and who thus live with the fear of being transferred to Angola. Plaintiffs have standing to bring this lawsuit and Defendants' Motion to Dismiss should be denied.

Respectfully submitted, this 12th day of December, 2022.

| | |
|---|---|
| /s/: *David J. Utter* | /s/: *Christopher J. Murell* |
| DAVID J. UTTER ** | CHRISTOPHER J. MURELL |
| Louisiana Bar Number: 23236 | Louisiana Bar Number: 32075 |
| WILLIAM R. CLAIBORNE | MURELL LAW FIRM |
| Georgia Bar Number: 126363 | 2831 St. Claude Avenue |
| THE CLAIBORNE FIRM, P.C. | New Orleans, Louisiana 70117 |
| 410 East Bay Street | (504) 717-1297 Telephone |
| Savannah, Georgia 31401 | (504) 233-6691 Facsimile |
| (912) 236-9559 Telephone | chris@murrell.law |
| (912) 236-1884 Facsimile | |
| david@claibornefirm.com | |
| will@claibornefirm.com | |

---

prevent future misconduct." *Leeke*, 454 U.S. at 86. Here, by contrast, Plaintiffs show a nexus between their injury and Defendants' misconduct, which the remedy sought would address. Plaintiffs have suffered emotional and psychological harm and will continue to be harmed by the risk of being transferred to Angola. Plaintiffs will also suffer harm once they have been transferred. Defendants' decision to transfer youth to Angola is the direct cause of harm and the remedy sought by Plaintiffs would prevent future harm.

10

/s/: *Hector Linares*
HECTOR LINARES
Louisiana Bar Number: 28857
SARA GODCHAUX
Louisiana Bar Number: 34561
STUART H. SMITH LAW CLINIC
LOYOLA UNIVERSITY NEW ORLEANS
COLLEGE OF LAW
7214 St. Charles Avenue, Box 902
New Orleans, Louisiana 70118
(504) 861-5560 Telephone
(504) 861-5440 Facsimile
halinare@loyno.edu
shgodcha@loyno.edu

/s/: *David Shanies*
DAVID SHANIES
New York Bar Number: 4471140
SHANIES LAW OFFICE
110 West 40th Street
Tenth Floor
New York, New York 10018
Tel (212) 951-1710
Fax (212) 951-1350
Cell (646) 515-2151
david@shanieslaw.com

/s/: *Ronald Haley*
RONALD HALEY
Louisiana Bar Number: 30900
HALEY & ASSOCIATES
8211 Goodwood Blvd., Suite E
Baton Rouge, Louisiana 70806
(225) 755-9935 Telephone
(888) 900-9771 Facsimile
rhaley@ronaldhaleylawfirm.com

*/s/ Nancy Rosenbloom*
NANCY ROSENBLOOM
New York Bar Number: 2168425
ACLU NATIONAL PRISON PROJECT
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2500
Facsimile: (212) 549-2652
nrosenbloom@aclu.org

*/s/ Tammie Gregg*
TAMMIE GREGG*
MN Bar Number: 026240
ACLU NATIONAL PRISON PROJECT
915 15th St. N.W., 7th Floor
Washington D.C. 20005
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
tgregg@aclu.org

\*\* *Lead Counsel*
\*Not admitted in DC; practice limited to federal courts
**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of December, 2022, a copy of the foregoing was served upon all counsel of record by electronic transmission.

/s/ *David J. Utter*
DAVID J. UTTER
