# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian Kenione Rogers, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS,[1] in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,<br><br>Defendants. | Civil Action No. 3:22-cv-573-SDD-RLB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY** |

## INTRODUCTION

Plaintiffs Alex A., by and through his guardian, Molly Smith, Brian B.; and Charles C., by and through his guardian, Kenione Rogers, respectfully submit this opposition to Defendants' Motion to Stay Discovery Pending Resolution of Defendants' Motion to Dismiss for Lack of Standing.[2]  As shown in Plaintiffs' opposition to Defendants' motion to dismiss,[3] the motion to dismiss is baseless.  The motion to stay discovery will only unnecessarily delay discovery and the progression of this important case, which involves Defendants' violation of the due process rights

---

[1] On November 18, 2022, Gov. Edwards announced the resignation of Dep. Sec. Sommers and the appointment of Otha "Curtis" Nelson as his replacement.  https://gov.louisiana.gov/index.cfm/newsroom/detail/3892  Because Sommers was sued in his official capacity, Nelson is automatically substituted as a Defendant. Fed. R. Civ. P. 25(d). Plaintiff leaves Sommers as a Defendant until the clerk is ordered to change the caption.

[2] Doc. No. 103.

[3] Doc. 114.

of young people subject to transfer to and/or incarceration in a newly devised juvenile facility in a reverted death row unit on the grounds of the Louisiana State Penitentiary ("LSP"), a notoriously dangerous adult maximum-security prison.  Allowing discovery to proceed in a timely manner would allow Plaintiffs and the Court to determine whether support exists for the claims made by Defendants at the Preliminary Injunction hearing that the LSP facility at Angola will provide safe, adequate care for youth in OJJ custody.  Defendants' Motion to Stay should be denied and discovery allowed to proceed in accordance with the Court's Scheduling Order.[4]

## BACKGROUND

I.    **Relevant Procedural History**

On August 19, 2022, Plaintiffs filed a class action complaint against Defendants Governor John Bel Edwards, William Sommers and James M. Blanc for claims under the Fourteenth Amendment of the U.S. Constitution and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.[5]  Concurrently, Plaintiffs  moved for an Emergency Temporary Restraining Order ("TRO") seeking to: (1) enjoin Defendants from transferring or incarcerating Plaintiffs or any proposed class member at Louisiana State Penitentiary ("LSP"), and (2) requiring Defendants to immediately return any youth who may have already been transferred to LSP to Bridge City Center for Youth ("BCCY") or another appropriate Office of Juvenile Justice ("OJJ") facility for youth.[6]

The Court denied Plaintiffs' emergency motion for a TRO because defendants agreed  no youth had been or would be moved to LSP until on or after September 15, 2022[7] and set the matter for a Preliminary Injunction hearing.[8] The Court set expedited deadlines for preliminary discovery,

---

[4]Doc. No. 97.
[5] Doc. No. 1.
[6] Doc. No. 3.  Memorandum in support filed at Rec. Doc. No. 9.
[7] Doc. No. 14.
[8] *Id.*

including limited depositions and disclosure of experts.[9]  The Preliminary Injunction hearing was held from September 6, 2022 through September 8, 2022.  On September 23, 2022, the Plaintiffs' Motion for Preliminary Injunction was denied, largely based upon Defendants' then unfulfilled promises to make numerous improvements to the Angola site for youth and ensure adequate services and staffing prior to any youth being moved there.[10]

The parties participated in a Rule 16 scheduling conference on October 27, 2022, and thereafter, on November 2, 2022, Plaintiffs served Defendants with a Request for Entry onto Defendants' Premises for Inspection.  Additionally, Plaintiffs served Defendants with 31 requests for production of documents and 16 interrogatories requesting information on OJJ's operations and LSP's facilities, specifically those in which Plaintiffs would be confined.

On November 21, 2022, Defendants moved to dismiss Plaintiffs' amended complaint for lack of standing and subsequently filed a Motion to Stay Discovery Pending Resolution of Defendants' Motion to Dismiss for Lack of Standing.  Defendants motion to dismiss and motion to stay claimed that Plaintiffs lack standing because they are not currently confined at LSP and that, as a result, being required to participate in discovery would cause an undue burden and expense.[11]

## **LEGAL ARGUMENT**

Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  FED. R. CIV. P. 26(c)(1); *Fujita v. United States*, 416 F. App'x 400, 402 (5th Cir. 2011).  The movant, however,

---

[9] *Id.*

[10] Doc. No. 79.  Notably, while the Court denied the Preliminary Injunction, the Court denied Defendants' oral motion to dismiss Alex A.'s complaint on September 8, 2022, during the hearing -- finding that Alex A. presented sufficient prima facie evidence to avoid dismissal at a time when no youth had been moved to the Angola site.

[11] Doc. No. 103-1 at 5.

must meet the burden for "good cause" which requires a showing for the necessity of issuance as opposed to providing merely stereotyped and conclusory statements.  *United States v. Garrett*, 571 F.2d 1323, 1326 (5th Cir. 1978); *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).  And while courts have discretion to stay proceedings "in the interest of justice and in control of their dockets," such "discretion is not limitless."  *Wedgewood v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983).

Indeed, motions to stay discovery require a heightened showing of necessity by the moving party.  *Buckwalter v. Nevada Bd of Med. Examiners*, No. 2:10-cv-02034-KJD-GWF, 2011 WL 841391, at *1 (D. Nev. Mar. 7, 2011) (affirming that "[a] party carries a heavy burden of making a 'strong showing' why discovery should be stayed."); *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) (noting the party moving for a stay of discovery has "burden of showing good cause and reasonableness"); *Steil v. Humana Health Care Plans, Inc.*, No.CIV.A. 99 2541 KHV, 2000 WL 730428, at *1 (D. Kan. May 1, 2000) (affirming "[t]he District … generally disfavors motions to stay discovery" and noting "[a]bsent some compelling reason, the Court will not stay discovery").  *Federal National Mortgage Assoc. v. K.O. Realty, Inc.*, Civil Action No. 3:13-cv-2781, 2014 WL 12588308, at *1 (N.D. Tex. Feb 4, 2014) (court noting that "staying discovery pending resolution of a motion to dismiss is not an efficient means of managing litigation because it unnecessarily prolongs the ultimate resolution of the parties' claims…."); *Feldman*, 176 F.R.D. at 652 (recognizing motions to stay discovery "are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.")  This is especially relevant in the instant matter given that this case involves youth, who while adjudicated as delinquent, are not allowed to be punished by state (i.e., by being incarcerated in an adult

correctional facility) but rather are entitled to rehabilitation and services mandated for those in secure care facilities. Doc. 96 at 2, ¶¶1-4.

Defendants cannot meet the high burden required of them to earn a stay of discovery in this matter despite their asserted entitlement to a stay of discovery based upon Plaintiffs' lack of standing to prosecute this suit. While it may be proper in some cases to stay discovery pending the outcome of a dispositive motion, "the issuance of a stay is by no means automatic."[12] *Sneed v. Abbot*, No. CV 21-279-JWD-RLB, 2021 WL 2877239, at *3 (M.D. La. June 29, 2021). Indeed, the disfavored practice of halting discovery under Rule 26(c) in cases where motions to dismiss are pending exists in instances even when the motion might be dispositive. *Cuhaci v. Kouri Group, LP,* 540 F. Supp.3d 1184, 1184 (S.D. Fla. May 13, 2021) (finding motions to stay discovery pending a ruling on a dispositive motion are generally disfavored); (*Baxter v. Louisiana*, No. 21-555-BAJ-SDJ, 2022 WL 1509118, at *3, n.11. (M.D. La. May 12, 2022)) (court denied stay of discovery against one defendant, holding that "[t]he existence of a potentially dispositive motion to dismiss is not on its own enough to trigger a stay of discovery when …[defendant] is a private party that does not enjoy immunity from suit.") (citing *Martin v. Dallas County, Tex*., 822 F.2d 553, 555-56 (5th Cir. 1987)); *Feldman,* 176 F.R.D. at 652 ("[A] request to stay all discovery pending resolution of a motion is rarely appropriate where resolution of the motion will not dispose of the entire case," especially where plaintiffs could seek leave to file an amended complaint) (citing *Lugo v. Alvarado*, 819 F2d 5 (1st Cir. 1987)). *See also Chatham Condo. Ass'n. v. Century*

---

[12]Plaintiffs recognize that courts routinely grant nearly automatic discovery stays for cases involving qualified immunity and securities claims, as well as for certain statutory claims (not relevant here), and in anti-trust litigation. *See e.g.*, *Serafine v. Abbott,* 1:20-CV-1249-RP, 2021 WL 3616102, at *2 (W.D. Tex. May 12, 2021), cited by Defendants to support their motion to stay.  Doc 103.  Notably, the *Serafine* court's grant of the requested discovery stay rested upon defendants' qualified immunity claims.

*Village, Inc.* 597 F.2d 1002, 1011-12 (5th Cir. 1979) (holding that dismissal for a lack of subject matter subject matter jurisdiction without ample opportunity for discovery should be rare.).

In *Cuhaci v. Kouri Group, LP,* 540 F. Supp.3d 1184 the defendants were  an LLC holder of record of stock shares and the surviving spouse of the former sole member of the LLC.  They sought to stay discovery against claims for specific performance, conversion, and unjust enrichment pending resolution of its motion to dismiss against the plaintiff stock shareholder.  The court refused to stay the discovery after rejecting the defendants' argument that the motion to dismiss would have disposed of the case in its entirety.  The court also ruled that defendants failed to meet their burden of demonstrating good cause for the dismissal and did not show they would be burdened by engaging in discovery.  *Id. at 1186-88.*

While Plaintiffs address the full merits of Defendants' motion to dismiss in a separate brief, Doc. 114, it boils down to Defendant's flawed contention that the named Plaintiffs in this action lack standing to sue OJJ because they are not housed in the youth facility at Angola.  As Plaintiffs note in their opposition to the motion to dismiss, they, like all children under OJJ secure care are subject to transfer to LSP under OJJ policy.  Doc. 114, p.  Moreover, as articulated in the Complaint and Amended Complaint, Plaintiffs seek to represent a class of individuals who are subject to transfer *and* who have been transferred to LSP.  Accordingly, Defendants cannot dispose of this case in its entirety in this motion to dismiss.[13]

Defendants cite several distinguishable cases in support of their motion to stay discovery pending the outcome of their allegedly dispositive motion to dismiss, including *Summers v.*

---

[13]  At the same time Defendants seek to dismiss this lawsuit because no current named plaintiff is at the Angola facility, they are actively preventing Plaintiffs' counsel from visiting with putative class member *at Angola*.  See, Doc. 113 (Motion for Access to Courts/Counsel).  On Dec. 12, 2022, Plaintiffs' counsel was finally permitted to meet with one of the four clients being held in the LSP facility and Plaintiffs will soon seek leave to amend to add the young man to this class action lawsuit.

*Louisiana*, Civ. Action No. 20-21-JWD-SDJ, 2021 WL 4714642, at *1 (Oct. 08, 2021), where although the court granted a motion to stay all new discovery in a series of consolidated lawsuits against the state for the failure to provide community based alternatives for residents of the mental health system, it did so because the motion to stay was unopposed, having been agreed upon by plaintiffs and defendants.  Defendant's citation to the court's stay of discovery pending resolution of a motion to dismiss in  *Von Drake v. National Broadcasting Co., Inc.*, No. 3-04-CV-0652R, 2004 WL 1144142, at *2 (N.D Tex. May 20, 2004) is similarly misleading as the court found the stay of discovery warranted because of the thousands of discovery request served upon the defendants (seeking comparative information for over six thousand individuals) "overly broad and harassing."

In deciding whether or not the party seeking a stay of discovery based solely on a pending dispositive motion has shown good cause, courts generally focus on such factors such as:  (1) the hardship and inequity on the moving party without a stay; (2) the prejudice the stay would have on the non-moving party; (3) judicial economy; and (4) the strength of the dispositive motion. *Belfor USA Grp., Inc. v. Democracy Prep La. Charter Sch.*, No. CV 20-96-BAJ-RLB, 2020 WL 6329470, at *3 (M.D. La. Oct. 28, 2020); *Ford v. Caddo Parish District Attorney's Office*, No. 15-0544, 2016 WL 2343903, at *1 (W.D. La. May 3, 2016) (analyzing factors 1-3 only in assessing a discovery stay request).  When the moving party's issues of standing are **unpersuasive**, as here, it is not necessary to stay the case while the determination is made.  *Jefferson St. Holdings Intell. Prop. LLC v. Tech 21 UK Ltd.*, No. 5:18-CV-806-DAE, 2019 WL 5795667, at *4 (W.D. Tex. June

10, 2019) (denying Defendants' motion to stay discovery pending determination of standing) (emphasis added).[14]

There is no compelling reason for a stay here.  First, Defendants have not shown good cause for a stay of discovery, nor will Defendants incur "undue burden and expense"[15] if required to participate in discovery.  Second, Defendants' Motion to Dismiss and Motion to Stay Discovery Pending Resolution of the Motion to Dismiss are merely attempts by Defendants to delay discovery and the progression of this case.  And third, Plaintiffs would suffer harm and prejudice from such undue delay tactics.

**I.**     <u>**Defendants Have Not Shown Good Cause**</u>

Defendants have not met their burden for a showing of good cause under Fed. R. Civ. P. Rule 26 (c) to warrant a disruption to the progression of this action.  Without providing specific examples of purported hardship or excessive expense, defendants simply contend that a stay of discovery pending the Court's decision is necessary to prevent substantial hardship, alleging that they would suffer an "'undue burden and expense' if required to participate in discovery."[16] Plaintiffs' discovery requests, which include limited requests for documents, interrogatories, and a tour of the facility, hardly constitute an undue burden and expense.  Further, Defendants' claim that Plaintiffs cannot constitute a harmed class because their threat of injury from a transfer is "speculative."  This argument is without foundation as [17] not only are Defendants' themselves the

---

[14] Notably, Defendants bolster their argument for a stay of discovery pending resolution of its motion to dismiss by citing to several cases which are inapposite to issues at play here since, for example, stays of discovery in securities cases—where stays are mandatory (with limited exception)—and where stays are generally automatic—in antitrust and immunity cases.
[15] Doc. No. 103-1. at 4.
[16] *Id.*
[17] Doc. No. 102-1 at 4.

ones who have stated that a transfer to LSP is imminent[18]the expense required for an on-site inspection and responses to Plaintiffs' discovery requests would be negligible.

With respect to the proposed tour of the facility at Angola, it likely would require no more than a day and would allow Plaintiffs' representatives to inspect the facility thereby providing much needed information on the status of the facility. This would help the Court and Plaintiffs determine whether any merit exists behind the numerous statements made by Defendants that the prison is sufficient to house young people in OJJ custody and would provide the same programs, services, educational and recreational opportunities supplied at BCCY (or at other OJJ facilities). Furthermore, allowing Plaintiffs' counsel the opportunity for their inspection would inform Plaintiffs' requirements for future discovery – ultimately benefiting both parties and serving judicial economy.

Additionally, notwithstanding Defendants' specious claim to the contrary, Plaintiffs' discovery requests are streamlined, seeking only 31 requests for production of documents and 16 interrogatories requesting information on OJJ's operations and LSP's facilities, specifically those in which Plaintiffs would be confined.[19] Nor did Defendants make any effort to seek accommodations regarding the scope of the discovery requests.[20]

---

[18] On January 19, 2022, Defendant Governor John Bel Edwards ("Gov. Edwards") "held a press conference announcing that the state will 'temporarily move' approximately 25 youth in the custody of OJJ from Bridge City Center for Youth ('BCCY'), a juvenile secure care facility, to the grounds of the Louisiana State Penitentiary at Angola ('LSP' or 'Angola'). *See* Doc. No. 79. Plaintiffs were told youth would be moved on August 15 or 16, 2022, and "staff members told him that he would be moved "any day now." *See* Doc. No. 1 at 6. OJJ stipulated during the hearing that they expected the facility at Angola to be ready to accept youth by the "end of September. *See* Doc. No. 79 at 18. Defendants admitted that any young person in OJJ's custody can be subject to being moved to Angola.

[19] Any argument by Defendants about the burdensome nature of the preliminary discovery provided for by the Court, which included a limited number of depositions and disclosure of experts, prior to the September Preliminary Injunction hearing is also without merit. Doc. 14.

[20] Plaintiff's note that despite their obligation to do so, Defendants have never attempted to meet and confer about the scope of content of the inspection notice, document request, and interrogatories. We also note that although

## II.     Defendants' Motions Are Baseless and Are an Attempt to Delay Proceedings

The strength of the moving party's dispositive motion is an important factor in the determination of whether discovery should be stayed.  Defendants' self-proclaimed "meritorious motion to dismiss"[21] is nothing more than a veiled attempt to delay discovery proceedings. Defendants' motion is premised upon circular reasoning and conclusory statements that are even contradicted by Defendants' own prior statements.  Specifically, Defendants motion is based on the claim that Plaintiffs cannot prove that they will be transferred to LSP imminently, and thus their harm is speculative.  But, Defendants themselves are the ones who have expressly stated that Plaintiffs would be moved to LSP.  Supra, p. 7, fn. 17.  Defendants have also admitted that any young person in OJJ's custody can be moved to LSP, including all youth identified as high-risk in its custody from the ages of "ten through eighteen".[22]  According to Defendants' arguments in their motion to dismiss, the adolescents would need to wait until they are actually transferred to LSP and suffer irreparable and potentially grave psychological and physical harm, to then be allowed to inspect such facilities and seek to enjoin such a transfer and confinement.  Because the harm to youth incarcerated at LSP would be substantial if the facility is not ready in the ways Defendants describe, it stands to reason that an inspection and discovery is necessary.[23]

---

Defendants produced some discovery in advance of the preliminary injunction hearing, it was regarding Plaintiffs' placement of youth in OJJ secure facilities and not the youth facility on the grounds of the LSP.

[21] *See* Doc. No. 103-1. at 5.

[22]  *See* Doc. No. 79 at 22.

[23]Plaintiffs also note that Defendants' argument that it will be burdened by the discovery requests, including the onsite inspection requested by Plaintiffs, is undermined by OJJ's apparent successful ability to host a media visit of selected reporters just days prior to opening the youth site at Angola.  James Finn, *See Inside the Old Death Row Building Where Teens Will Live Once They're Moved to Angola,* The Advocate, https://www.nola.com/news/crime_police/article_bd72fcf4-3c00-5918-9ee1-fd087d3569a0.html.

10

III.    **Plaintiffs Have Been and Would Be Further Unduly Burdened by An Undue Delay in Discovery**

Plaintiffs would suffer unnecessary harm and prejudice if discovery is stayed pending Defendants' motion to dismiss. Plaintiffs are adolescents already suffering from psychological harm as a result of Defendants' initiated transfer. Defendants failed to provide the proper notice needed for youth to assist them in accepting such major changes as this transfer.[24] Indeed, Plaintiffs first learned that he and his peers would be moved to LSP while watching television news. Since then, Plaintiff Alex A. has experienced significant mental and physical harm, including increased difficulty sleeping and extreme stress. Plaintiffs fear that they will be subject to unsafe conditions and violence at LSP, and this fear is further exacerbated by Defendants' attempts to unduly delay the case and refusal to allow Plaintiffs' counsel to inspect the premises and conditions Plaintiffs would be subject.

Given the sensitive nature of this litigation, a stay in discovery would not only unnecessarily prolong much needed requests, but also cause potentially irreparable harm to Plaintiffs beyond that which they have already suffered. Defendants' disingenuously assert that Plaintiffs suffer no harm from a delay of discovery in the matter. This is simply not the case. Plaintiffs' Amended Complaint identifies "[y]oung people who are the target of Defendants' commitment to transfer youth to the OJJ site at Angola." Doc. 96, p. 10. These are youth who will imminently suffer actual harm.

The Amended Complaint covers both youth who have been transferred to the OJJ Angola site and are subject to unconstitutional treatment as well as all youth in OJJ's secure custody who are eligible for transfer. The Plaintiffs allege unconstitutional treatment at the OJJ Angola site due

---

[24] *See* 9/6/22 Testimony of Stevens.

to Defendants' failure and inability to "provide adequate recreation, medical care and mental health programming, education, and other forms of rehabilitation." Doc. 96, p. 25. The imminent harm for eligible youth is an actual transfer to the OJJ Angola site and/or living with the fear of being transferred; these youth "face serious psychological and physical harm." Doc. 96, p. 29. Plaintiffs Alex A., Brian B. and Charles C. have properly alleged that "each has experienced fear, anxiety, and worsening mental health symptoms due to the fear and anticipation of being transferred to Angola." Doc. 96, p. 22.

On October 25, 2022, Plaintiffs filed a First Amended Class Action Complaint, in which Plaintiffs allege unconstitutional treatment at the OJJ Angola site due to Defendants' failure and inability to "provide adequate recreation, medical care and mental health programming, education, and other forms of rehabilitation." Doc. 96 at 25, ¶72. The imminent harm for eligible youth is an actual transfer to the OJJ Angola site and/or living with the fear of being transferred; these youth "face serious psychological and physical harm." Doc. 96 at 29, ¶82. Plaintiffs Alex A., Brian B. and Charles C. have properly alleged that "each has experienced fear, anxiety, and worsening mental health symptoms due to the fear and anticipation of being transferred to Angola." Doc. 96 at 22, ¶66.

Moreover, "[g]enerally, an action to vindicate a citizen's civil rights is considered of high importance." *Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854, 860 (E.D. Mich. 2017) (ordering requested discovery in an individual civil rights case); *Diaz v. Devlin*, No. 4:16-CV-40039-TSH, 2018 WL 1610541, at *6 (D. Mass. Apr. 3, 2018), objections overruled, 327 F.R.D. 26 (D. Mass. 2018) (ordering requested discovery in part because "a strong public interest in protecting constitutional rights against violations by others acting under color of state law also supports disclosure"); *Walls v. City of New York*, 502 F. Supp. 3d 686, 695 (E.D.N.Y. 2020) (finding "[t]he

importance of the issues at stake in the action is significant, as they involve civil rights" and ordering the requested discovery); *see also Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 3288058, at *11 (D. Kan. June 18, 2020), aff'd, No. 18-1100-EFM, 2020 WL 6939752 (D. Kan. Nov. 24, 2020) (finding that the importance of the issues at stake did not weigh in favor of discovery because the case did not "implicate [a] broader societal impact" or "involve matters of public policy such as prohibited forms of discrimination").[25]

Here the issues at stake – the violation of the due process rights of children with potentially life-threatening consequences – weigh strongly in favor of denying Defendants' request to stay discovery and stall this action further.  Plaintiffs also note that as a matter of judicial efficiency, a scheduling order with a deadline for fact discovery of March 3, 2023 and a trial date of March 11, 2024, already exists in this case.  Doc. 97.  Given how relatively soon these dates are, any delay in gather additional discovery will certain harm Plaintiffs' ability to further develop this case. Further, short of a stay of discovery, courts are empowered with other tools to protect Defendants from frivolous efforts by plaintiffs to cause embarrassment, expense or burden or where the complaint was utterly frivolous, or filed as a "fishing expedition" or for settlement value, *cf. Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539 (1975), and this is not such a case.  *See e.g.,* Fed. R. Civ. P. 34 advisory committee's note to 1970 Amendments (Noting, "[c]ourts have ample power under Rule 26(c) to protect respondent against undue expense, either by restricting  discovery or requiring that the discovery party pay costs.").

---

[25] Similarly, in *Morales v. Turman,* the court acknowledged that "[w]hen important civil rights are in issue in complex litigation of widespread concern, a court must make every effort to enhance the fact-finding process available to counsel for both sides."  59 F.R.D. 157, 159 (E.D. Tex. 1972).  The *Turman* case challenged conditions in two juvenile correctional facilities.  The court permitted four of plaintiffs' experts to conduct a month-long "participant observation study" that involved living in the facilities with the young people. The court explained that an "extraordinary" request for discovery was supported by the circumstances of an "extraordinary case" wherein plaintiffs alleged that the conditions of their confinement violated the First, Fifth, Sixth, Eighth, and Fourteenth Amendments.  *Id*.

Finally, Plaintiffs note that as a matter of practice Defendants have failed to comply with Fed. R. Civ. P. 26 (c)(1) and 37 (a)(1) in seeking this motion to stay discovery.  Pursuant to these rules, the party filing "a motion for protective order must … certif[y] that the parties have conferred in good faith to resolve the dispute.  Rule 37 (a)(1).  This certification should contain specific information about the negotiations or attempts to do so, not mere statements of certification." *Baxter v. Louisiana*, No. 21-555-BAJ-SDJ, 2022 WL 1509118, at *3, n.11. (M.D. La. May 12, 2022).  Defendants have not attempted to confer in good faith nor submitted a certification about attempts to do so.

## CONCLUSION

Defendants should not be permitted to unnecessarily delay the progress of this litigation by filing fruitless motions to prevent inspection of their premises and requests for information regarding the status of their facilities.  In addition to the fact the Plaintiffs will be unduly harmed by delayed discovery in this case, Defendants have failed to establish good cause for their request to stay discovery and this motion should be denied.

For the foregoing reasons, Plaintiffs respectfully request that discovery be allowed to continue in accordance with the Court's Scheduling Order.

Respectfully submitted, this 13th day of December, 2022,

/s/: *David J. Utter*
DAVID J. UTTER **
Louisiana Bar Number: 23236
WILLIAM R. CLAIBORNE
Georgia Bar Number: 126363
THE CLAIBORNE FIRM, P.C.
410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
david@claibornefirm.com
will@claibornefirm.com

/s/: *Christopher J. Murell*
CHRISTOPHER J. MURELL
Louisiana Bar Number: 32075
MURELL LAW FIRM
2831 St. Claude Avenue
New Orleans, Louisiana 70117
(504) 717-1297 Telephone
(504) 233-6691 Facsimile
chris@murell.law

14

/s/: *Hector Linares*
HECTOR LINARES
Louisiana Bar Number: 28857
SARA GODCHAUX
Louisiana Bar Number: 34561
STUART H. SMITH LAW CLINIC
LOYOLA UNIVERSITY NEW ORLEANS
COLLEGE OF LAW
7214 St. Charles Avenue, Box 902
New Orleans, Louisiana 70118
(504) 861-5560 Telephone
(504) 861-5440 Facsimile
halinare@loyno.edu
shgodcha@loyno.edu

/s/: *David Shanies*
DAVID SHANIES
New York Bar Number: 4471140
SHANIES LAW OFFICE
110 West 40th Street
Tenth Floor
New York, New York 10018
Tel (212) 951-1710
Fax (212) 951-1350
Cell (646) 515-2151
david@shanieslaw.com

/s/: *Ronald Haley*
RONALD HALEY
Louisiana Bar Number: 30900
HALEY & ASSOCIATES
8211 Goodwood Blvd., Suite E
Baton Rouge, Louisiana 70806
(225) 755-9935 Telephone
(888) 900-9771 Facsimile
rhaley@ronaldhaleylawfirm.com

/s/ *Nancy Rosenbloom*
NANCY ROSENBLOOM
New York Bar Number: 2168425
ACLU NATIONAL PRISON PROJECT
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2500
Facsimile: (212) 549-2652
nrosenbloom@aclu.org

/s/ *Tammie Gregg*
TAMMIE GREGG*
MN Bar Number: 026240
ACLU NATIONAL PRISON PROJECT
915 15th St. N.W., 7th Floor
Washington D.C. 20005
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
tgregg@aclu.org

** *Lead Counsel*
*Not admitted in DC; practice limited to
federal courts

**ATTORNEYS FOR PLAINTIFFS**

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of December, 2022, a copy of the foregoing was served upon all counsel of record by electronic transmission.

*/s/ David J. Utter*
DAVID J. UTTER