IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civ. A. No. 3:22-CV-00573-SDD-RLB ) |
| GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections, | ) ) ) ) **REPLY MEMORANDUM** ) **IN SUPPORT OF** ) **MOTION TO DISMISS FOR** ) **LACK OF STANDING** ) ) ) ) ) |
| Defendants. | ) |

**NOW INTO COURT**, through undersigned counsel, come Defendants John Bel Edwards, in his official capacity as Governor of Louisiana; William Sommers, in his official capacity as Deputy Secretary of the Office of Juvenile Justice; and James M. LeBlanc, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections (collectively "Defendants"), who submit this reply memorandum in support of Defendants' Motion to Dismiss for Lack of Standing. Plaintiffs' opposition (R. Doc. 114) grossly misconstrues the record in this matter in futile attempts to resurrect claims for which they have no support and no proper plaintiff.

1. **The record indicates that, regardless of Plaintiffs' insistence otherwise, the issues remaining in this litigation are an as-applied challenge to the conditions at BCCY-WF.**

This case began as a challenge to the State of Louisiana's plan to open a new facility and house delinquent youth at a new facility on the grounds of Louisiana State Penitentiary ("LSP"),

a facility to be wholly independent of LSP and operated separately and solely by the Office of Juvenile Justice ("OJJ"). The facility, called Bridge City Center for Youth at West Feliciana ("BCCY-WF"), was intended to house youth in secure care custody of OJJ who were not responding to the treatment modalities at OJJ's other secure care facilities and whose problematic behaviors created safety and security risks to other youth and staff in the facilities as well as the communities surrounding the facilities where they were housed.

On August 23, 2022, the Court denied the Plaintiffs' request for a TRO prohibiting Defendants from moving youth to the new facility. (R. Doc. 15). On September 23, 2022, following a three-day hearing on Plaintiffs' request for preliminary injunction, the Court denied the injunction finding the "OJJ has shown that it will provide a constitutional level of care to youth" at BCCY-WF. (R. Doc. 79, pp. 2–3). While the Court found that placement at BCCY-WF presented a risk of psychological harm to the youth, the Court further found that "OJJ needs to place high-risk youth in a facility that provides a high level of security, both for the protection and safety of high-risk youth and all youth in OJJ custody." (R. Doc. 79, p. 37). The Court further found that "many of [Plaintiff's] fears are based on incorrect assumptions." (R. Doc. 79, p. 35).

Based upon the Court's finding that the plans for BCCY-WF ensured adequate protection of the constitutional rights of youth in OJJ custody, OJJ continued preparations for BCCY-WF and transferred the first group of youth to the facility on October 19, 2022. On October 25, 2022, Plaintiffs filed their First Amended Class Action Complaint (R. Doc. 90), which added two new plaintiffs and realleged the claims explored in the preliminary injunction phase. In light of both the Court's findings that OJJ's *plans* for BCCY-WF were constitutional and the actual opening of BCCY-WF, the only remaining issue before the Court is whether OJJ is housing the youth ed at BCCY-WF in a manner that complies with the constitutional protections afforded those youth.

2

While Plaintiffs allege that they seek to prevent Defendants from housing youth at BCCY-WF, the success of their claims and the ability to obtain the relief requested hinges upon the actual conditions at BCCY-WF, not the mere concept of the facility or the prospect of transfer perceived by the youth. Accordingly, Plaintiffs, who have never been housed at BCCY-WF and are not currently slated for transfer to BCCY-WF, do not have standing to challenge the conditions of BCCY-WF.

### 2. The Plaintiffs' alleged injuries are speculative, remote, unfounded and uncertain.

In their Amended Complaint, Plaintiffs allege that the BCCY-WF facility "creates an unreasonable risk of harm for youth *who have been or will be moved there*." (R. Doc. 96, p. 6) (emphasis added). No named plaintiff in this matter has been housed at BCCY-WF, and none are currently scheduled for transfer. (R. Doc 102-2). What remains of Plaintiffs' claims are subjective and speculative harms that are based upon mistaken assumptions and rumor.[1]

In its ruling on the Plaintiffs' Motion for Preliminary Injunction, the Court acknowledged that a youth may suffer psychological harm from being housed at BCCY-WF, though the balance of harms and public interest factors outweighed the risk of psychological harm to the youth. (R. Doc. 79, pp. 59–63). However, the Court clarified that a youth's fears based upon a mistaken belief that he will be transferred or his fears based upon a misunderstanding of the conditions at BCCY-WF do not constitute irreparable psychological harm. (R. Doc. 79, p. 59). The Court's ruling confirms that only youth who are actually housed at BCCY-WF are subject to a risk of harm for which the Court recognizes a potential right of action. Thus, the named plaintiffs' speculative,

---

[1] Indeed, the Court previously found that Plaintiff Alex A.'s fears were based upon incorrect assumptions, and it appears that Bryan B.'s "shock and confusion" from learning that he "was one of the youth being moved" is likewise a reaction to inaccurate assumptions or rumor. (R. Doc. 79, p. 35; R. Doc. 114, p. 5).

3

remote, and uncertain harms from the mere prospect of transfer to BCCY-WF are an insufficient basis upon which to challenge the existence of and conditions at BCCY-WF.

Courts have consistently held that speculative and remote future harm are an insufficient basis upon which to establish an "injury in fact" for purposes of standing. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983); *Juidice v. Vail*, 430 U.S. 327 (1977); *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726 (1998). Plaintiffs attempt to distinguish *Lyons* as a case involving an individual plaintiff who lacked standing, citing cases involving class actions where the named plaintiffs' lack of standing was insufficient to render the entire class action moot. These arguments do not override Plaintiffs' clear lack of standing for two reasons. First, Plaintiffs suggest that their class action allegations overcome a lack of standing for the named plaintiff, despite the fact that a class has not been certified. Indeed, Plaintiffs cite *U.S. Parole Commission v. Geraghty*, 4445 U.S. 388 (1980), which says that "mootness of the named plaintiff's individual claim *after* a class has been duly certified does not render the action moot" (emphasis in original). The putative class has **not** been certified in this matter, and thus Plaintiffs' lack of standing cannot be ignored based upon class allegations. Second, Plaintiffs ignore the fact that **no named plaintiff has ever had standing to challenge the conditions at BCCY-WF**. This case is not about a named plaintiff who once had standing to pursue class action claims whose claims have since become moot, as in the cases cited by Plaintiffs; rather, Plaintiffs seek to circumvent the need to have a single Plaintiff with a concrete, redressable injury, simply by relying upon class allegations and speculative injuries.[2]

The record in this case conclusively establishes that "most youth offenders in OJJ secure care facilities have demonstrated an ability to adapt to the secure environment and comply with

---

[2] For further discussions of standing with respect to class allegations, see Defendants' Opposition to Class Certification, R. Doc. 101.

4

behavioral rules and facility policies." (R. Doc. 79, p. 13). Indeed, it is a very small population of youth in OJJ secure care facilities who have jeopardized the safety of existing facilities for themselves and other youth; indeed, former Deputy Secretary Sommers testified that only "about five percent of the youth give us the most problems." (R. Doc. 79, p. 13). Plaintiffs' assertion that "[a]ny of the more than 300 youth in OJJ's secure care custody on a given day are at risk of being transferred [to BCCY-WF]" (R. Doc. 114, p. 5) is patently wrong and ignores the record evidence in this matter and the extensive procedures in place for transferring youth to the TTU at BCCY-WF. (R. Doc. 102-3).

It is inappropriate to suggest that all youth in OJJ secure care custody have standing to challenge the conditions of a facility at which most youth will never be housed, and the named Plaintiffs in this matter do not have standing to pursue the claims in this litigation.

### 3. **The Plaintiffs' alleged injuries are not caused by Defendants' actions and are not redressable by a ruling on the merits.**

Plaintiffs' alleged injuries – i.e., fear and anxiety over being housed at a facility which they merely suspect to be dangerous – do not establish a sufficient basis for the injury requirement for standing in this matter. Similarly, the speculative and remote injuries alleged by Plaintiffs are also not caused by Defendants' conduct or redressable by a ruling in Plaintiffs' favor in this matter. The perceived threat of placement at BCCY-WF is as remote injury (if an injury at all) to youth at existing OJJ secure care facilities as is the threat of prison to any civilian who has a propensity to engage in criminal activity. Indeed, to be assigned to BCCY-WF, a youth must (1) exhibit a pattern of problematic behavior and/or engage in certain specified serious code of conduct violations; (2) receive a referral to the TTU; (3) be recommended for transfer to the TTU by a multidisciplinary

team; and (4) actually transfer to the TTU contingent upon space being available at the facility.[3] (R. Doc. 102-3).

Plaintiffs' alleged injuries are insufficient to establish an injury-in-fact for standing purposes. *See supra, Section 2*. Nevertheless, assuming *arguendo* that these fears are sufficiently concrete injuries to establish standing, Defendants cannot be said to have caused these alleged fears, and these alleged fears cannot be redressed by any ruling from the Court. As the Court noted, the Plaintiffs' fears are often based upon inaccurate information and assumptions, which are often reached despite Defendants' best efforts at dispelling rumors and misinformation.[4] Defendants cannot prevent rumor, speculation, and misinformation from overriding their true and accurate public statements regarding BCCY-WF. Indeed, the anticipatory fear and trauma allegedly experienced by the Plaintiffs is not based upon the conditions at BCCY-WF, but is rather fueled by false and misleading statements from third parties.

Likewise, a ruling by this Court is unlikely to redress the alleged fears/anxiety of the Plaintiffs. Despite the public trial on preliminary injunction and continued efforts at transparency regarding BCCY-WF from Defendants, unsupported speculation continues. Though Plaintiffs allege anticipatory psychological harm from the prospect of transfer--a harm which was not found to be actionable by the Court--, it is apparent that the alleged harm is not fueled by facts or evidence, let alone any action or inaction by the Defendants.

---

[3] BCCY-WF has capacity to house up to 24 youth.
[4] Defendants are mindful of the Court's opinion that "it is OJJ's obligation to properly communicate with its youth and their parents. (R. Doc. 79, p. 35). Defendants respectfully show that all public communications and commentary has accurately depicted the plan in accordance with the testimony presented at the preliminary injunction hearing, and that misinformation from advocacy groups, public outcry, and even Plaintiffs' counsel's public allegations, was insufficient to overcome these official statements from Defendants.

4. **Because Plaintiffs lack standing to challenge the BCCY-WF facility, this case should be dismissed.**

To establish standing, plaintiffs must have an injury in fact, caused by the defendants, which is redressable by a favorable ruling from the Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed. 351 (1992). Furthermore, in cases seeking injunctive relief, plaintiffs must also have standing at the outset of the case and throughout the litigation, at the time of the decision on the merits, and even through the appeal process. *U.S. Parole Commission v. Geraghty*, 445 U.S. 388 (1980); *Sosna v. Iowa*, 419 U.S. 393, 402, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Plaintiffs do not currently have standing to challenge OJJ's operation of BCCY-WF, so they cannot maintain this action for injunctive relief. Moreover, even if Plaintiffs had standing at the time of filing the Complaint, they no longer have standing in light of the Court's ruling on preliminary injunction and the issues presently before the Court. Contrary to Plaintiffs' assertions, they cannot maintain an action on behalf of a class which has not been certified, *see Geraghty*, 445 U.S. 388, and the Plaintiffs may not seek to represent a class on claims for which they themselves lack standing and are inappropriate class representatives pursuant to F.R.C.P. 23(a)(4). Accordingly, Defendants pray that the Court grant their Motion to Dismiss and dismiss the case for lack of subject matter jurisdiction based upon a finding that Plaintiffs have not alleged a live case or controversy under Article III of the Constitution.

Dated: December 22, 2022.

Respectfully Submitted:

BY: */s/ Allena McCain*
Connell Archey (#20086)
Randal J. Robert (#21840)
Allena McCain (#38830)
Madaline King (#38301)
BUTLER SNOW LLP
445 North Boulevard, Suite 300 (70802)

7

        P.O. Box 2997
        Baton Rouge, LA  70821-2997
        Telephone:     (225) 325-8700
        Facsimile:      (225) 325-8800
        Connell.Archey@butlersnow.com
        Randy.Robert@butlersnow.com
        Allena.McCain@butlersnow.com
        Madaline.King@butlersnow.com

        Kyle V. Miller (pro hac vice)
        Lemuel E. Montgomery III (pro hac vice)
        Anna Morris (pro hac vice)
        BUTLER SNOW LLP
        1020 Highland Colony Parkway, Suite 1400
        Ridgeland, MS 39157
        Telephone:     (601) 948-5711
        Facsimile:      (601) 985-4500
        Kyle.Miller@butlersnow.com
        Lem.Montgomery@butlersnow.com
        Anna.Morris@butlersnow.com

        Counsel for Defendants
        GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice; and JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the above and foregoing has this day been filed electronically with the Clerk of Court using the CM/ECF system, which will deliver notice of this filing to all counsel of record.

    Baton Rouge, Louisiana this 22nd day of December, 2022.

                          /s/ Allena McCain

67042824.v3