UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian Kenione Rogers, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> DANIEL D. by and through his guardian, Angela Williams, and EDWARD E., by and through his guardian Jernita Williams, <br><br> Proposed Plaintiffs-Intervenors, <br><br> v. <br><br> GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS,[1] in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections, <br><br> Defendants. | Civil Action No. 3:22-cv-573-SDD-RLB |

**MOTION FOR LEAVE TO INTERVENE AND TO JOIN IN PENDING MOTIONS**

### Rule 7(3) Certificate

Pursuant to MDLA Local Civil Rule 7(3), counsel for proposed Plaintiffs-Intervenors,

---

[1] On November 18, 2022, Gov. Edwards announced the resignation of Dep. Sec. Sommers and the appointment of Otha "Curtis" Nelson as his replacement. https://gov.louisiana.gov/index.cfm/newsroom/detail/3892 Because Sommers was sued in his official capacity, Nelson is automatically substituted as a Defendant. Fed. R. Civ. P. 25(d). Plaintiff leaves Sommers as a Defendant until the clerk is ordered to change the caption.

1

conferred with Lem Montgomery III, counsel for defendants, with respect to this motion. Defendants oppose the relief sought in this motion.

## INTRODUCTION

Daniel D. and Edward E. move pursuant to Fed. R. Civ. P. Rule 24(b) for leave to intervene in this action as party Plaintiffs and class representatives, and to join in the pending motion for access to counsel, response in opposition to defendants' motion to dismiss, and all pending discovery requests propounded by Plaintiffs.[2] This motion is accompanied by Declarations of Daniel D. and Edward E., and a proposed Complaint in Intervention which sets forth the claims for which intervention is sought. For all the reasons set forth below, the motion should be granted.

## FACTUAL BACKGROUND

In the Amended Class Action Complaint, the Plaintiffs – children, who have been or will be adjudicated delinquent in Louisiana and confined in the secure care custody of OJJ, who are at risk of being confined at the OJJ secure site at the Louisiana State Penitentiary at Angola ("Angola," "OJJ Angola site," or "West Feliciana") – challenge Defendants' plans, policies and practices of confining children within a maximum-security adult prison. They seek certification pursuant to Fed. R. Civ. P 23(a) and 23(b)(2) of a Plaintiff class comprising all youth, who are now or will be in the custody of OJJ or who have been, might be, or will be transferred to the OJJ site (the "Transitional Treatment Unit" or "TTU") at Angola or another adult prison (the "Principal Class"), including a subclass of all current and future youth with disabilities within the meaning of the ADA and Section 504 of the Rehabilitation Act in the custody of OJJ who

---

[2] Movants are pursuing their claims under pseudonyms, as they are minors and are in custody of the Defendants pursuant to juvenile delinquency proceedings. Daniel D. is 15 years old and Edward E. is 17 years old. Plaintiffs have informed Defendants' counsel of the movants' real names and the movants are in Defendants' custody.

2

have been, might be, or will be transferred to the OJJ site at Angola or another adult prison (the "Disabilities Subclass").[3] The motion for class certification is fully briefed. Doc. 99, 101, 112.

Plaintiff-intervenor Daniel D. is a 15-year-old youth in the custody of OJJ whom Defendants were currently confining in a cell at the OJJ Angola site as of the date of his Declaration in support of this Motion, December 28, 2022. Because Defendants' use of the Angola site in itself, the fear of being sent there, the lack of education and other rehabilitative services available to him and the conditions under which he is held have substantially impaired his constitutional rights, he has been harmed by the same Fourteenth Amendment violations there as the original Plaintiffs. Daniel brings this action through his guardian, pursuant to Fed. R. Civ. P. 17(c)(2). His guardian is dedicated to his best interests and will advocate for those interests in this action. Daniel has claims highly similar to those of the existing Plaintiffs, based on the ongoing violation of his constitutional rights created by the Defendants' decisions to open and use the former death row building at Angola to house children adjudicated delinquent. Like the original Plaintiffs, he seeks declaratory and injunctive relief only. He seeks leave to intervene as a party Plaintiff and class representative, and to join in the pending Motion for Access to Counsel, the opposition to Defendants' Motion to Dismiss, and all of Plaintiffs' pending discovery requests.

In his Declaration supporting this motion, Daniel D. states that OJJ moved him to the Angola site in October 2022 after housing him at Bridge City followed by St. Martinville, and that he was confined there as of the date of his Declaration (December 28, 2022). He describes the conditions at Angola and the effect of Defendants' policies and practices on him:

> In my cell, there is mold in the sink. I can see mold in the pipes where the water

---

[3] The TTU is the OJJ facility at Angola. This Court found that this facility will be "called Bridge City Center for Youth at West Feliciana ('BCCY-WF')." Doc. No. 79 at 18, ¶ 39. For purposes of the class definition, the "TTU at Angola" is the same as the "OJJ facility at Angola," the "OJJ Angola site," and "BCCY-WF."

> comes out of. I have to brush my teeth with this water where the mold is. I have to drink out of the taps [] where the mold is. I have to put my mouth up to the tap where the mold is whenever I brush my teeth.
>
> At the other facilities I have been, I was receiving substance abuse treatment. I do not receive substance abuse counseling at Angola. I found the substance abuse counseling very helpful and want to have it again.
>
> I see DOC guards every day. Every time there's a fight between the kids or staff, DOC responds. [After a youth hit a guard,] OJJ and DOC guards came into the classroom and started grabbing all the kids. There were 8 of us kids in the room. Only one youth had hit the guard. DOC ordered everyone on the wall. The DOC guards grabbed and twisted my arm. They hurt me. I was not part of the fight.
>
> *After this incident, all of us were locked in our cells for 3 or 4 days without leaving. We did not get to leave our cells at all for those 3 or 4 days except for to use the showers. About 3 or 4 times our whole pod has been locked down and we are not able to leave our cells except to shower. They would keep us locked in the whole weekend.*
>
> If we can't go outside, we can't exercise. No staff member tries to lead indoor exercise.
>
> Even if they transfer me to another facility, I am worried they will ship me back here to Angola. This is much worse than the other facilities.

Declaration of Daniel D., ¶¶ 5, 9, 11-14, 20, 23 (emphasis added).

Plaintiff-intervenor Edward E. is a youth in the custody of OJJ whom Defendants confined in a cell at the OJJ Angola site from mid-October 2022 until December 15th or 16th, 2022 when Defendants transferred him to a different secure care facility after he received a visit from legal counsel on December 14th. Edward is at risk of being sent back to Angola at any time during his term of confinement with OJJ depending upon his behaviors, because OJJ's policy makes clear that the decision about which youth will be sent to that "transitional treatment unit" is entirely within the unreviewable discretion of OJJ. Doc. 79 at 16, ¶ 31. Edward brings this action through his guardian, pursuant to Fed. R. Civ. P. 17(c)(2). His guardian is dedicated to his best interests and will advocate for those interests in this action. Because Defendants' use of the Angola site in itself, the fear of being sent there, the lack of education and other rehabilitative services available to him and the conditions under which he is held have substantially impaired his constitutional rights, he has been harmed by the same Fourteenth Amendment violations

4

there as the original Plaintiffs. Edward E. has claims highly similar to those of the existing Plaintiffs, based on the ongoing violation of his constitutional rights created by the Defendants' decisions to open and use the former death row building at Angola to house children adjudicated delinquent. Like the original Plaintiffs, he seeks declaratory and injunctive relief only. He seeks leave to intervene as a party Plaintiff and class representative, and to join in the pending Motion for Access to Counsel, the opposition to Defendants' Motion to Dismiss, and all of Plaintiffs' pending discovery requests.

In his Declaration supporting this motion, Edward describes the conditions at Angola and the effect of Defendants' policies and practices on him:

> While in OJJ custody, I have been placed at Swanson-Monroe, Bridge City, Acadiana Center for Youth (Bunkie), and a facility in Alabama. I am currently [as of the date of his declaration in December 2022] at BCCY-West Feliciana, also known as Angola. . . . I was part of the first group of youth moved to Angola in October . . . .
>
> The whole experience of being moved to Angola was very traumatizing and depressing. It was early one morning when close to two dozen guards came to my dorm at Swanson-Monroe and made us all get on the ground. They pointed tazers (sic) at us and put us in handcuffs.
>
> I am in the 10th grade. I have had an IEP because of poor focus and being easily distracted since well before I was in OJJ custody. However, I do not believe I am getting any IEP services in OJJ custody. There is only one permanent teacher for us [8 youth] at Angola, Mr. Williams. He splits his time between the classrooms for the two tiers, spending the morning with one and the afternoon with the others. . . . sometimes we do work by ourselves without a teacher. We all get the same work and assignments even if we are on different grade levels. . . .
>
> I have been diagnosed with ADHD, PTSD, and Bipolar disorder. I take medication for the PTSD and another medication called Ten-x for ADHD and blood pressure. We do not do LaMod or group therapy at Angola.
>
> . . . on Achieve tier, we would get less recreation time. If one youth acted up, the whole tier would lose recreation time for the day and we would be in our locked cells instead.
>
> There is no library here at the Angola facility for youth like there are at other youth facilities.
>
> It is very depressing to be here knowing this is the former death row. When the lights go out

at night, I think I see shadows going past. The nightmares I have from my PTSD have gotten worse since I have been at Angola.

Declaration of Edward E., ¶¶ 3-5, 7, 11-18.

Although exhaustion of administrative remedies under the Prison Litigation Reform Act is not a pleading requirement, but rather failure to exhaust may be an affirmative defense, movants inform the Court that each of them, while in OJJ's custody at Angola, filed an emergency grievance ("ARP") concerning these matters pursuant to OJJ's Administrative Remedy Procedure requirements. Both Daniel D. and Edward E. received denials of their emergency grievances from OJJ. The agency denied Edward's ARP on the grounds that he is "not subject to any immediate risk of harm" despite the serious physical and psychological harm he has experienced and continues to experience as a result of Defendants' policies and practices surrounding placement at Angola. The agency denied Daniel's ARP because he allegedly failed to follow procedure by signing the ARP. Daniel and his guardian had given third party authorization to file on his behalf and was unable to sign because OJJ cut short his visit with legal counsel. As a protective measure, Daniel D. re-filed the ARP with his signature. OJJ's failure to properly treat these grievances as emergency grievances that require an expedited timeline has made the grievance process unavailable to these youth. As a result, they have exhausted all available administrative remedies and may proceed as Plaintiffs. Discussing and following the ruling in *J.H. v. Edwards*, No. 20-293-JWD-EWD, 2020 WL 3448087 (M.D. La. June 24, 2020), this Court has ruled that "the denial of Alex A.'s emergency ARP constituted a final decision upon which Plaintiff could rely in filing suit." Doc. 79 at 7.[4] Similarly, the proposed

---

[4] This Court continued: "Alternatively, the Court finds that, following a denial of the emergency ARP, the remaining procedure "operates as a simple dead end" because the second step procedure, urged by the Defendants, 'lacks authority to provide any relief'. Furthermore, if applied as advocated by the Defendants the 'administrative scheme [is] so opaque that ... no reasonable prisoner can use them.'" Doc. 79 at 7 (citing *Valentine v. Collier*, 956 F.3d 797, 804 (5th Cir. 2020)).

intervenors have exhausted sufficiently to serve as Plaintiffs.

## ARGUMENT

**I.  Daniel D. and Edward E. Should Be Permitted to Intervene.**

The Court should allow permissive intervention. Rule 24(b) provides:

On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact.

There can be no question that common questions of both law and fact exist here.  Like the current Plaintiffs and all class members, the movants are subject to the same referral procedures to be transferred to the Angola site and the same policies, actions, and failures to act by Defendants that produce constitutionally deficient conditions at the Angola site and produce an unreasonable risk of serious harm to youth moved there. Doc. No. 79 at 37, ¶¶ 159, 160. For example, movants – like all proposed class members who might be moved to the Angola site – have been forced to live in barred single cells and in an adult maximum-security environment, subjecting them to punitive conditions and unreasonable risks of harm in violation of the class's Fourteenth Amendment due process rights. Other common questions include whether Defendants have sufficient policies and practices in place to ensure the physical and psychological safety of youth transferred to the Angola site, whether Defendants have sufficient policies and practices in place to ensure adequate educational and rehabilitative services to youth transferred to the Angola site, whether Defendants' policies, including their TTU policy requirements and education policy requirements, are implemented in practice at the Angola site, whether Defendants will provide adequate medical and mental health treatment and services to youth transferred to the Angola site, whether Defendants will provide adequate staffing for all relevant services at the Angola site, whether Defendants will hire sufficient education staff, including special education teachers and specialists, to meet the

needs of youth with disabilities who are transferred to the Angola site, whether the conditions at the Angola site constitute punishment in violation of the Fourteenth Amendment due process rights of youth transferred there, whether the conditions at the Angola site are likely to cause serious physical and/or psychological harm to youth transferred there, in violation of their right to safety under the Fourteenth Amendment, whether youth with disabilities who are transferred to the Angola site will face discrimination, in violation of their rights under the Rehabilitation Act and the ADA, and whether Defendants are objectively and subjectively aware of the risk of harm to youth who may be moved to the Angola site. *See,* Memorandum of Law in Support of Class Certification, Doc. 99-1 at 16-20.

The challenged actions of the Defendants present questions of fact, and they are the same for the original Plaintiffs, the putative class, and Daniel and Edward. If anything, because Defendants were holding Daniel D. at the Angola site as of the date of his Declaration, and Defendants have recently confined Edward E. there, their claims are all the more urgent, and their perspective will further the development of this case. The legal issues presented by movants' claims are identical to those in the Amended Complaint; thus, all legal questions are common ones. If the movants' intervention is allowed, the legal issues in this case will remain the same: the constitutionality and compliance, or not, with federal disability rights statutes of Defendants' use of the OJJ Angola site to confine children who have been adjudicated delinquent. This is more than sufficient to satisfy the requirements of Rule 24(b)(1)(B): "A common question of law or fact routinely exists if the intervenor has a claim against the defendant that is identical to a claim asserted by the existing plaintiff." 6 Moore, *Federal Practice* 24.11 at 24-62 (3d ed. 2002); "If there is a common question of law or fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to

allow intervention." Wright, Miller, & Kane, *Federal Practice and Procedure: Civil 3d* § 1911. This Court should exercise its discretion to allow the movants to intervene, so that the Court will have before it as Plaintiffs both youth at imminent risk of transfer to the OJJ Angola site and youth who are now or have recently been confined there.

## II. Movants' Motion to Intervene is Timely.

Rule 24(b) requires that a motion to intervene be "timely." The requirement is not a rigid or stringent one and the inquiry focuses on multiple factors. *Lucas v. McKeithen*, 102 F.3d 171, 173 (5th Cir. 1996); *see also, Okla. Ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010) (timeliness is determined "in light of all the circumstances," especially "the length of time since the movants knew of their interests in the case" and prejudice to the existing parties and to the movants); *accord* Wright, Miller, & Kane, *Federal Practice and Procedure: Civil 3d* § 1916 ("the most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case"). In the class action context, once a class is certified, "the matter officially becomes a representative action," and courts assess timeliness beginning with where the intervention motion falls on the class action motion timeline. *Newberg and Rubenstein, supra*, at § 9:31 (noting that in 23(b)(3) class action suits, as an example, courts have considered motions to intervene to be timely if made before expiration of the opt-out period).

The motion of these two young people is timely. This case was filed only months ago, and the Defendants began sending youth to the OJJ Angola site in mid-October 2022. Although a scheduling conference has taken place and written discovery requests served, at Defendants' behest the Court has stayed discovery until Defendants' pending Motion to Dismiss has been ruled upon. In fact, because of Defendants' tactics, Plaintiffs have been frustrated at nearly every turn in their efforts to move this action along – Defendants have now moved to dismiss twice,

9

blocked Plaintiffs' counsel from accessing clients who are members of the proposed class and who have requested legal visits, and moved to stay discovery. *See* Doc. 102; forthcoming transcript of Preliminary Injunction hearing; Doc. 103; Doc. 113. Much of Defendants' argument in support of all of these efforts is based on their erroneous contention that there must be Plaintiffs who have been confined at the OJJ Angola site in order for the case to proceed. Although Plaintiffs disagree vehemently with this contention, they hope that the intervention of these two youth, who have both been confined at Angola, will help resolve any concerns the Court might have regarding standing. There is no plausible claim that allowing these movants' intervention would prejudice any existing party to the case.

## CONCLUSION

Daniel D.'s and Edward E.'s motion to intervene as party Plaintiffs and class representatives should be granted, and they should be allowed to join in the pending motion for access to counsel, opposition to Defendants' motion to dismiss, and all of Plaintiffs' pending discovery requests.

Respectfully submitted January 5, 2023.

/s/: *David J. Utter*
DAVID J. UTTER **
Louisiana Bar Number: 23236
WILLIAM R. CLAIBORNE ***
Georgia Bar Number: 126363
(Pro Hac Vice Application Forthcoming)
THE CLAIBORNE FIRM, P.C.
410 East Bay Street Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
david@claibornefirm.com
will@claibornefirm.com

/s/: *Christopher J. Murell*
CHRISTOPHER J. MURELL
Louisiana Bar Number: 32075 MURELL LAW FIRM
2831 St. Claude Avenue
New Orleans, Louisiana 70117
(504) 717-1297 Telephone
(504) 233-6691 Facsimile
chris@murell.law

/s/: *Hector Linares*
HECTOR LINARES
Louisiana Bar Number: 28857
SARA GODCHAUX
Louisiana Bar Number: 34561
STUART H. SMITH LAW CLINIC

LOYOLA UNIVERSITY NEW ORLEANS COLLEGE OF LAW
7214 St. Charles Avenue, Box 902
New Orleans, Louisiana 70118
(504) 861-5560 Telephone
(504) 861-5440 Facsimile
halinare@loyno.edu
shgodcha@loyno.edu

/s/: *David Shanies*
DAVID SHANIES ***
New York Bar Number: 4471140
SHANIES LAW OFFICE
110 West 40th Street
Tenth Floor
New York, New York 10018
Tel (212) 951-1710
Fax (212) 951-1350
Cell (646) 515-2151
david@shanieslaw.com
****(Pro Hac Vice Application Forthcoming)*

/s/: *Ronald Haley*
RONALD HALEY
Louisiana Bar Number: 30900
HALEY & ASSOCIATES
8211 Goodwood Blvd., Suite E Baton Rouge, Louisiana 70806
(225) 755-9935 Telephone
(888) 900-9771 Facsimile
rhaley@ronaldhaleylawfirm.com

/s/: *Nancy Rosenbloom*
NANCY ROSENBLOOM
New York Bar Number: 2168425
ACLU NATIONAL PRISON PROJECT
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2500
Facsimile: (212) 549-2652
nrosenbloom@aclu.org

/s/: *Tammie Gregg*
TAMMIE GREGG*
MN Bar Number: 026240
ACLU NATIONAL PRISON PROJECT
915 15th St. N.W., 7th Floor
Washington D.C. 20005
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
tgregg@aclu.org

*Not admitted in DC; practice limited to federal courts
** Lead Counsel

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of January, 2023, a copy of the foregoing was served upon all counsel of record by electronic transmission.

*/s/ Christopher J. Murell*
CHRISTOPHER J. MURELL
