IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civ. A. No. 3:22-CV-00573-SDD-RLB<br>) |
| GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections, | )<br>)<br>) **DEFENDANTS' RESPONSE IN**<br>) **OPPOSITION TO MOTION FOR**<br>) **LEAVE TO INTERVENE AND TO JOIN**<br>) **IN PENDING MOTIONS**<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

The Court should deny Plaintiffs' *Motion for Leave to Intervene and Join in Pending Motions* (Doc. 120; the "Motion to Intervene" or the "Motion") filed on behalf of Daniel D. ("D.D.") and Edward E. ("E.E."). Denial is warranted for several reasons.

**As an initial matter, both D.D. and E.E. failed to exhaust their administrative remedies** under the Louisiana Office of Juvenile Justice ("OJJ") administrative remedies procedure, which OJJ recently amended to clarify and streamline the exhaustion process for emergency grievances. Pursuant to the Prison Litigation Reform Act ("PLRA"), D.D. and E.E. have not properly exhausted, so they cannot intervene in this lawsuit. The Court could end its analysis there.

**But moreover, the Motion is procedurally improper in at least *three* ways:**

67414844.v1

***First,*** **the Motion inappropriately seeks not only to have D.D. and E.E. intervene in the lawsuit, but also to join in *and supplement* Plaintiffs' arguments on critical motions related to class certification and dismissal, on which briefing is already closed**. Plaintiffs make new claims about proposed intervenors D.D. and E.E. in an attempt to supplement previous arguments in Plaintiffs' motion for class certification and Plaintiffs' response to Defendants' motion to dismiss. In other words, Plaintiffs seek to use the Motion to Intervene to manufacture a second chance to assert proper standing to try to avoid dismissal or to create some new basis for class certification. Raising such allegations through the instant Motion denies Defendants the benefit of a full and fair opportunity to understand and respond to these claims in the proper context – the motions on standing and class certification. This abuse of procedure unfairly prejudices Defendants and is grounds for denial of the Motion.

***Second,*** unless and until the Court grants permission for D.D. and E.E. to intervene, **D.D. and E.E. are legal strangers to this lawsuit and have no procedural avenue to assert arguments on previously-filed motions**. If the Court allows them to intervene, they can then seek leave to file supplemental briefs on prior motions, to which Defendants can then respond.

***Third,*** **the Motion (at least in part) improperly seeks intervention for D.D. and E.E. as "class representatives."** Notably, there are no class representatives in this case because there is no certified class. If D.D. and E.E. are allowed to *intervene as plaintiffs* under Rule 24(b), then (and only then) may D.D. and E.E. seek leave to be *certified as class representatives* under Rule 23. The standards and applicable rule for intervention are not the same as those that apply to class representation and certification. Those issues must be separately briefed and decided.

**And finally, the record should be made clear** regarding Plaintiffs' flippant, unsupported, and untruthful allegations that Defendants have blocked youth in OJJ custody from authorized legal visits. This is false, and Plaintiffs should withdraw it.

## Legal Standard

Plaintiff's Motion is brought pursuant to the permissive intervention rule stated in Rule 24, which provides in relevant part: "On timely motion, the court may permit anyone to intervene who […] has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

The rule does not define "timely." *See id.* Thus, "the question whether an application for intervention is timely is largely committed to the discretion of the district court, and its determination will not be overturned on appeal unless an abuse of discretion is shown." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977). Timeliness is not limited to a specific chronological event or time period but "is to be determined from all the circumstances." *Id.* at 263-64 (citation omitted). Courts impose more leniency in determining timeliness for intervention as of right under Rule 24(a) than in determining timeliness for permissive intervention under Rule 24(b), as here. *Id.* at 266. Timeliness in the context of a Rule 24 motion to intervene is an element of estoppel or laches, not a "time bar of fixed dimensions." *Id.* It is "relative, not absolute." *Id.*

Permissive intervention is "wholly discretionary" with the Court. *Crum & Forster Specialty Ins. Co. v. Explo Sys., Inc.*, No. CIV.A. 12-3080, 2014 WL 1431991, at *4 (W.D. La. Apr. 14, 2014) (citing, *inter alia*, *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir.1984) (en banc)). In exercising this discretion, courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* (citing Fed. R. Civ. P. 24(c)).

If a motion to intervene is granted (unless the Court imposes specific conditions[1]), the intervenor "is treated as if [he] were an original party and has equal standing with the original parties." Wright & Miller, Fed. Prac. & Proced. § 1920 (3d ed.). However, an intervenor "cannot change the issues framed between the original parties, and must join subject to the proceedings that have occurred prior to his intervention; he cannot unring the bell." *Id.* (quoting *Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141, 153 (D.C. Cal. 1954)). The intervenor is entitled to litigate on the merits only *after* intervention is granted. *Id.*

## Law and Argument

**I.   The Motion to Intervene should be denied because both of the proposed intervenors failed to exhaust administrative remedies.**

*Prison Litigation Reform Act's Exhaustion Requirement*

The federal PLRA provides that "no action shall be brought under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[2,3] Exhaustion is only complete when a plaintiff pursues all "available" administrative remedies, and when (1) the plaintiff has received a final administrative decision at the last step of the applicable procedure; or (2) the time limits for the prison's response at the last step of every available administrative remedy

---

[1] Because the decision on intervention is a discretionary one, the Court "may if it chooses[,] impose conditions on its grant of the application" to intervene. Wright & Miller, Fed. Prac. & Proced. § 1922 (3d ed.) (citing Advisory Cmte. Note to Rule 24) (also citing *Ionian Shipping Co. v. British Law Ins. Co.,* 426 F.2d 186, 191–192 (2d Cir. 1970) (holding that, in allowing permissive intervention, court has discretion to make intervention subject to any conditions necessary for the efficient conduct of the proceedings)).

[2] Because proposed intervenors are alleging violations of federal law in a federal district court, their complaints are subject to the procedural requirements of the PLRA. *Ferrington v. Louisiana Dep't of Corr.*, 315 F.3d 529, 532 (5th Cir. 2002).

[3] For purposes of the PLRA exhaustion requirement, "prisoner" is broadly defined and includes "any person … detained in any facility who is accused of . . . **or adjudicated delinquent for**, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h) (emphasis added); *see also Molina v. New York*, 697 F. Supp. 2d 276, 282 (N.D.N.Y. 2010) ("[t]his exhaustion requirement applies equally to juveniles confined in correctional facilities.") (citing 42 U.S.C. § 1997e(h)).

4

has expired, such that "there is no next step (save filing a lawsuit) to which the prisoner can advance." *See Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004); *Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015). The PLRA also requires "proper" exhaustion; that is, the plaintiff must comply with "an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S.81, 90 (2006).

The PLRA establishes a mandatory exhaustion regime, forecloses judicial discretion, and prevents a court from excusing a failure to exhaust, even to take "special circumstances" into account. *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016) ("the PLRA's text suggests no limits on an inmate's obligation to exhaust."); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). Moreover, "a prisoner must now exhaust administrative remedies even where the relief sought . . . cannot be granted by the administrative process." *Woodford*, 548 U.S. at 85. The only limit to § 1997e(a)'s mandate is that administrative remedies must be "available." *See Ross*, 136 S. Ct. at 1859-62.

*OJJ's Administrative Remedy Procedure*

OJJ maintains an Administrative Remedy Procedure ("ARP") to efficiently process internal grievances, such as those addressed in Plaintiff's complaint, based on OJJ's expertise in managing Youth detention facilities. *See* Affidavit of Revettea Woods, attached as Exhibit A, ¶ 5; *see also* Exhibit A-1.

Importantly, **OJJ amended its ARP in December 2022 to clarify and improve certain elements of the procedure** that this Court has previously found were "a simple dead end" or "so opaque that … no reasonable prison can use them." *See* Doc. 79 at 7; *see also J.H. v. Edwards*,

No. 20-293-JWD-EWD, 2020 WL 3448087, at ¶¶ 243, 323-338 (M.D. La. June 24, 2020). *See also* Woods Aff. (Ex. A) at ¶ 6. The current policy is described below.

*Standard ARP Grievances*

Under the ARP, a Youth must fully exhaust a two-step grievance process before seeking judicial review. *See* Exhibit A-1 at p. 9. A Youth first initiates the process (Step 1) by filing an ARP form, deemed filed upon "receipt" by an ARP Coordinator. *Id.* at pp. 6–7. The ARP Coordinator screens the form and sends it to a facility director, who must respond within 30 days. *Id.* at p. 7. If the Youth is dissatisfied with the director's response, he has 15 days to seek review (Step 2) from the Deputy Secretary of Youth Services. *Id.* at p. 8. The Deputy Secretary must render a final decision within 21 days of receiving the request for review, and the entire process must be completed within 51 days of the original filing of the Youth's grievance form. *Id.* at p. 9. If the Youth is dissatisfied with the response, he may then seek judicial review. *Id*.

*Emergency ARP Grievances*

If the Youth's ARP grievance includes statements that indicate the Youth believes that he is at immediate risk of harm and that any delay in responding to the grievance would subject him to substantial risk of immediate personal injury or cause other serious or irreparable harm, the ARP coordinator will immediately forward the ARP to the Facility Director, Statewide Youth Facilities Director, and the Deputy Secretary of Youth Services. *Id.* at pp. 9–10. OJJ will provide an initial response within 48 hours. *Id.* If reviewers determine that the grievance is indeed emergent, OJJ has up to five calendar days to provide a final decision as to the relief requested in the ARP. *Id*. If reviewers determine that the Youth is <u>not</u> emergent (that is, not in substantial risk of imminent personal injury or at risk of suffering serious or irreparable harm), the ARP will be designated as

non-emergent and automatically processed as a standard ARP, under which OJJ has up to thirty calendar days to provide a final decision as to the relief requested. *Id.* at p. 10.

*Comparison to OJJ's Previous ARP Policy*

As Plaintiffs' Motion highlights, this Court has before examined OJJ's ARP and has pointed out that the ARP provisions governing the submission and processing of emergency grievances did not provide a legally "available" administrative remedy to youth. *See Edwards*, 2020 WL 3448087, at ¶¶ 243, 323-338. Specifically, the *Edwards* Court held that, where OJJ failed to respond to an emergency grievance at the Step 1 phase, this rendered Step 2 "unavailable" and allowed youth to proceed in filing suit without first completing Step 2, which is seeking review by the Deputy Director of Youth Services. *Id.*

Under OJJ's previous policy, if a youth submitted an emergency grievance but did not receive a satisfactory or timely response from OJJ, OJJ's policy allowed (and implicitly directed) youth to exercise one of two options: (1) re-file the grievance as a standard ARP and exhaust administrative remedies under the standard ARP policy, or (2) seek immediate review by the Deputy Secretary. *Id.* Thus, according to OJJ's interpretation of its ARP policy, these alternative options offered "available" administrative remedies to youth who did not receive timely or satisfactory responses to emergency ARPs. *Id.*

**That said, after the *Edwards* decision and this Court's application of the *Edwards* decision in early stages of this lawsuit, OJJ responded to the Court's guidance by amending its ARP policy to ensure that youth have a clear and available avenue to exhaust administrative remedies.** *See* Woods Aff. (Ex. A) at ¶ 6.

Plaintiffs now claim in the Motion to Intervene that D.D. and E.E. have exhausted administrative remedies. *See* Doc. 120 at 6-7. However, Plaintiffs erroneously rely on OJJ's

7

*previous* ARP policy to reach this conclusion. *Id.* Under OJJ's amended ARP policy, both D.D. and E.E. have failed to exhaust administrative remedies.

### a. D.D. failed to exhaust administrative remedies.

D.D. is a youth in OJJ custody. Woods Aff. (Ex. A) at ¶ 12. On October 18, 2022, OJJ transferred D.D. to the Bridge City Center for Youth at West Feliciana ("BCCY-WF") so that he could complete the intensive therapeutic program called the Transitional Treatment Unit or "TTU," which is available at BCCY-WF. *Id.* On December 16, 2022, D.D. completed the TTU program and was transferred to a different OJJ facility, Acadiana Center for Youth ("Acadiana"). *Id.*

On December 14, 2022, Plaintiffs' counsel filed an Emergency ARP on D.D.'s behalf, grieving certain conditions of confinement at BCCY-WF. *Id.* at ¶ 13. As noted above, D.D. completed the TTU and was transferred to Acadiana before OJJ's response to this ARP was due on December 16, 2022. *Id.* at ¶ 12–13. On December 16, OJJ issued its response, stating that (1) D.D. was not subject to imminent risk of harm or personal injury, (2) D.D. was no longer housed at BCCY-WF, and (3) the grievance "does not qualify as an Emergency ARP." Based on these circumstances, OJJ processed the grievance as a standard ARP, and as stated in the December 16 response, OJJ denied the request for relief. *Id.* at ¶ 13, *see also* Exhibit A-2. To date, D.D. has not completed Step 2 of the ARP procedure, which is to seek review from the Deputy Secretary. *Id.*

Based on these circumstances, D.D. has not fully exhausted his administrative remedies as to his conditions of confinement claims at BCCY-WF. *Id.* at ¶ 12–13.

### b. E.E. failed to exhaust administrative remedies.

E.E. is also a youth in OJJ custody. Woods Aff. at ¶ 14. On October 19, 2022, OJJ transferred E.E. to BCCY-WF so that he could complete the TTU programming available at BCCY-WF. *Id.* On January 2, 2023, E.E. completed the TTU program and was transferred to Swanson Center for Youth. *Id.*

On December 29, 2022, Plaintiffs' counsel filed an Emergency ARP on behalf of E.E. *Id.* at ¶ 15. However, in violation of the OJJ ARP policy, Plaintiffs' counsel failed to get written consent to file the ARP on E.E.'s behalf. *Id.* Thus, OJJ denied the ARP. *Id.*; *see also* Exhibit A-3. Plaintiffs' counsel then obtained the required written consent and, on January 4, 2023, resubmitted the Emergency ARP. *Id.* at ¶ 16. However, by the time of resubmission, E.E. had already completed the TTU program and had been transferred to Swanson Center for Youth. *Id.* OJJ timely issued a response to the ARP on January 6, 2023, stating that (1) E.E. was not subject to imminent risk of harm or personal injury, (2) E.E. was no longer housed at BCCY-WF, and (3) the grievance "does not qualify as an Emergency ARP." Based on these circumstances, OJJ processed the grievance as a standard ARP, and as stated in the January 6 response, OJJ denied the request for relief. *Id.*

Based on these circumstances, E.E. has not fully exhausted his administrative remedies as to his conditions of confinement claims at BCCY-WF. *Id.* at ¶ 14–16.

### c. Because D.D. and E.E. failed to exhaust, they cannot intervene in this lawsuit.

Plaintiffs have moved to certify this lawsuit as a class action; however, the Court has not yet certified it as such. In putative class action cases where plaintiffs must exhaust administrative remedies prior to filing suit (as here), if the court has not yet certified the class, all plaintiffs <u>and</u> all intervenors must fully and properly exhaust administrative remedies prior to filing suit:

9

67414844.v1

> Where [the class action] determination has not yet been made, named plaintiffs who have not exhausted their administrative remedies must be dismissed. *Eastland v. Tennessee Valley Authority*, 553 F.2d 364 (5th Cir. 1977) (see Note 21); *Swain v. Hoffman*, 547 F.2d 921 (5th Cir. 1977). Of course, unnamed plaintiffs who have not exhausted their administrative remedies may participate in the lawsuit as members of a class if at least one representative has met the exhaustion requirement. […] Moreover, the court, ***after** determining that a class is proper*, may allow those named plaintiffs, who failed to exhaust their remedies, to intervene in the lawsuit.

*Wilkins v. Univ. of Houston*, No. 75-H-644, 1977 WL 1837, at *2 (S.D. Tex. Nov. 22, 1977) (emphasis added) (citing *Eastland v. Tenn. Valley Auth.*, 553 F.2d 364, 373 n. 21 (5th Cir. 1977)). *See also Peters v. District of Columbia*, 873 F. Supp.2d 158, 218-19 (D.C. Cir. 2012) (explaining that proposed intervenors' filing of the claims at issue would "be futile and their claim would be subject to dismissal for failure to exhaust their administrative remedies"; denying motion to intervene on various grounds); *Bachman v. Collier*, 73 F.R.D. 300 (D.C. Cir. 1976) (denying motion to intervene for failure to exhaust administrative remedies); *Hicks v. Crown Zellerbach Corp.*, 49 F.R.D. 184 (E.D. La. 1967) (same).

Because D.D. and E.E. failed to exhaust administrative remedies, they cannot intervene in this lawsuit. For this reason alone, the Court should deny Plaintiffs' Motion to Intervene.

**II.  The Motion to Intervene should be denied because it is procedurally improper and prejudicial.**

    **a. Plaintiffs cannot use the Motion to Intervene to manufacture a second chance to assert proper standing in an attempt to avoid dismissal or to create some new basis for class certification. This abuse of procedure unfairly prejudices Defendants.**

Plaintiffs have filed a Motion to Certify Class Action (Doc. 99). The parties have fully briefed that motion.

Defendants subsequently filed a Motion to Dismiss for Lack of Standing (Doc. 102) as to Plaintiffs Alex A., Brian B., and Charles C. The parties have fully briefed that motion.

10

One of Defendants' key arguments as to why the class cannot be certified or why this lawsuit fails to state a viable legal claim is this: the named Plaintiffs lack standing to bring this action because they have never lived at BCCY-WF, the juvenile detention facility that is subject of this case.

But now, Plaintiffs' Motion to Intervene supplements their arguments on those previously-filed, dispositive pleadings. *See* Motion (Doc. 120) ("Although Plaintiffs disagree vehemently with [Defendants' argument that there must be Plaintiffs who have been confined at BCCY-WF in order for the case to proceed], [Plaintiffs] hope that the intervention of these two youth, who have both been confined at [BCCY-WF], will help resolve any concerns the Court might have regarding standing.").

This is procedurally improper and is unfairly prejudicial to Defendants. *See Dickerson v. U.S. Steel Corp.*, 64 F.R.D. 351 (E.D. Pa. 1974) (denying motion for joinder/intervention; plaintiffs could not add new party plaintiff through a motion to join/intervene for purpose of influencing determination of whether lawsuit could be maintained as class action; **permitting such intervention after briefs directed to class action question had been filed would prejudice defendant**) (citing Fed. R. Civ. P. 23, 24).

Simply put, Plaintiffs seek to use the Motion to Intervene to manufacture a second chance to assert proper standing to avoid dismissal or to create some new basis for class certification. Raising such allegations through this Motion, after briefing on those issues has been closed, denies Defendants the benefit of a full and fair opportunity to understand and respond to these claims in the proper context – the motions on standing and class certification. This abuse of procedure unfairly prejudices Defendants and is grounds for denial of the Motion.

11

### b. D.D. and E.E. are legal strangers to this lawsuit and have no procedural avenue to assert arguments on previously-filed motions.

D.D. and E.E. improperly seek with this Motion not only to intervene in the lawsuit, but also to join in previous pleadings – including Plaintiffs' response to Defendants' Motion to Dismiss, Plaintiffs' Motion for Access to Counsel, and Plaintiffs' pending discovery requests. *See* Motion (Doc. 120) at 2 (seeking leave to intervene as party plaintiffs and class representatives and to join in pending motions and discovery). This is also procedurally improper.

At this juncture, Plaintiffs have filed a motion for D.D. and E.E. to intervene, but the Court has not granted that motion. As such, D.D. and E.E. do not have standing to join in other pleadings. *See White v. Tex. Am. Bank/Galleria, N.A.*, 958 F.2d 80, 83 (5th Cir. 1992) ("It was only when the court permitted them to intervene that the Appellants became parties to the action, equal in status to the original parties. Only then were they entitled to litigate fully the merits of their claims."); *In re Taxable Mun. Bonds Litigation*, MDL No. 863, 1993 WL 133826, at *1 (E.D. La. April 15, 1993) (explaining Fifth Circuit ruling dismissing an appeal by individuals who had filed a motion to intervene in lower court and simultaneously filed a notice of appeal to Fifth Circuit; dismissal of appeal was proper because "movants, who [were] not named plaintiffs, had not intervened in this action for purposes of obtaining standing to appeal" where motion to intervene remained pending in lower court). *See also Bankers Ins. Co. v. Egenberg*, 2020 WL 7033454, at *1 (E.D. La. Aug. 14, 2020) (rejecting party's argument that court should deny intervenor's motion to dismiss based on lack of standing, since motion to dismiss was filed *after* motion to intervene and motion to dismiss was noticed for hearing *after intervention was granted*; therefore, intervenor was no longer a "legal stranger" to the case and had standing to bring the motion).

The point is, unless and until the Court allows them to intervene, D.D. and E.E. are "legal strangers" to this lawsuit. D.D. and E.E. lack standing to assert arguments on previously-filed motions on which briefing is now closed.

If D.D. and E.E. are granted permission to intervene, they may then seek leave to re-open briefing on previously-filed motions so that Defendants will have ample notice of D.D.'s and E.E.'s specific arguments and an opportunity to respond. *See In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico on Apr. 20, 2010*, No. MDL 2179, 2017 WL 5157533, at *1 (E.D. La. Nov. 7, 2017) (noting the court would set a briefing schedule for proposed intervenors' additional motions, if necessary, after determining the then-pending motion to intervene and a previously-filed motion for dismissal). This not only makes procedural sense, but it also prevents undue prejudice to Defendants.

### c. Plaintiffs improperly seek to certify D.D. and E.E. as Rule 23 class representatives through a Rule 24 motion to intervene. This, they cannot do.

Plaintiffs' Motion seeks leave for D.D. and E.E. to intervene, but also to be certified as class representatives. *See* Motion (Doc. 120) at 2 (noting D.D. and E.E. move under Rule 24(b) "for leave to intervene in this action as party Plaintiffs **and class representatives**") (emphasis added). This is also procedurally improper.

Federal Rule of Civil Procedure 24 governs intervention, as Plaintiffs' explicitly admit. *Id.* Federal Rule of Civil Procedure 23 governs certification of class representatives. *Compare* Fed. R. Civ. P. 23 *to* Fed. R. Civ. P. 24. The two rules have completely different legal standards and must be separately briefed and separately decided. If D.D. and E.E. are allowed to *intervene as plaintiffs* under Rule 24(b), then (and only then) may D.D. and E.E. seek leave to be *certified as class representatives* under Rule 23. Defendants must have the opportunity to consider arguments

that D.D. and E.E. should be certified as class representatives so that Defendants can respond to same.

This Motion to Intervene may only be used to seek intervention for D.D. and E.E. This Motion is not a permissible procedural vehicle to seek certification of D.D. and E.E. as class representatives.

### III. The Motion to Intervene recklessly asserts false, unsupported allegations that OJJ prevents youth from visiting with their legal counsel.

Though wholly unnecessary to argue the legal requirements relevant to a Motion to Intervene, Plaintiffs unfortunately elected to include in the Motion allegations that OJJ has "blocked Plaintiffs' counsel from accessing clients who are members of the proposed class and who have requested legal visits." Motion (Doc. 120) at 10. This is patently false.

Below is an outline of the chronology of events relevant to Plaintiffs' counsel's request for legal visits with D.D. and E.E., as evidenced by email correspondence attached to the Declaration of Revettea Woods:

- **November 28, 2022** – E.E.'s guardian contacts OJJ specifically to alert OJJ that Plaintiffs' counsel did <u>not</u> represent E.E., and specifically, that she had received an unsolicited letter from Plaintiffs' counsel but had declined the solicitation. *See* Woods Aff. (Ex. A) at ¶ 17 *and* Exhibit A-5.
- **December 1, 2022** – Plaintiffs' counsel requests a legal visit with three youth, including D.D. and E.E., on December 5. *Id.*
- **December 2, 2022** – Plaintiffs' counsel requests confirmation of receipt of 12/1 email and adds another youth to his request for legal visits on December 5. *Id.*
- **December 2, 2022** – OJJ denies Plaintiffs' counsel's request for legal visits with all four youth based on counsel's failure to comply with OJJ's Attorney Visitation Policy. *Id.*
- **December 5, 2022** – Plaintiffs' counsel seeks a "meet and confer" with defense counsel to address a "discovery dispute," which was OJJ's refusal to allow the legal visits. *Id.*
- **December 5, 2022** – Defense counsel responds to confirm there is currently a stay of discovery in the lawsuit; thus, there can be no active "discovery dispute" on which to meet and confer. Defense counsel also notes that Plaintiffs' counsel should not correspond with OJJ regarding "discovery" without copying defense counsel. Defense counsel also confirms that OJJ refused to allow the requested legal visits

14

- based on Plaintiffs' counsel's failure to provide proof of representation and related documentation required under OJJ's Attorney Visitation Policy. *Id.*
- **December 5, 2022** – Plaintiffs' counsel responds, arguing that he did in fact follow the Attorney Visitation Policy. *Id.*
- **December 8, 2022** – Defense counsel responds to quote and provide a copy of the Attorney Visitation Policy, to list the specific requirements, and to ask Plaintiffs' counsel to submit the required documentation necessary to establish proof of the attorney/client relationship with the four youth. *Id.*
- **December 8, 2022** – Plaintiffs' counsel provides additional documentation as requested. *Id.*
- **December 9, 2022** – Plaintiffs' counsel responds, arguing about the application of the policy and claiming that he has already provided required documentation on the afternoon of 12/8 so that legal visits could occur on 12/12. *Id.*
- **December 9, 2022** – Defense counsel responds to documentation provided by Plaintiffs' counsel on 12/8, reporting OJJ's decisions on the various requests for legal visits:
    - OJJ approves the requested legal visit for D.D. *Id.*
    - OJJ does not approve the requested legal visit for E.E. based on the 11/28 phone call from E.E.'s guardian confirming that Plaintiffs' counsel does not represent E.E. Defense counsel recommends having the OJJ Family Liaison to contact E.E.'s guardian to confirm the status of E.E.'s legal representation, without participation by lawyers so as to avoid any *ex parte* contact with potential clients of Plaintiffs' counsel. OJJ may then report those result back to Plaintiffs' counsel. Defense counsel invites Plaintiffs' counsel to inform of any objections to the proposed plan. Plaintiffs' counsel does not object. *Id.*
- **December 12, 2022** – Plaintiffs' counsel visits OJJ to conduct legal visits with youth, including but not limited to D.D. and E.E. However, OJJ refused to allow Plaintiffs' counsel to conduct a legal visit with E.E. because OJJ does not yet have confirmation from E.E.'s guardian that such visit is authorized. *Id.*
- **December 19, 2022** – Plaintiff's counsel submits follow-up request for legal visit by Zoom with E.E., noting E.E.'s guardian contacted OJJ to confirm her approval of the legal visit. *Id.*
- **December 21, 2022** – After conducting due diligence and review of a letter of representation submitted by Plaintiffs' counsel as to representation of E.E., OJJ approves Plaintiffs' counsel request for a legal visit with E.E. *Id.*

The record is clear that OJJ and defense counsel have maintained open lines of communication with Plaintiffs' counsel to provide information on OJJ's Attorney Visitation Policy, and when applicable, to advise as to specific issues of Plaintiffs' counsel's non-compliance with that policy. The record is further clear that, when Plaintiffs' counsel complies with the policy, legal visits are granted. Finally, the record is clear that Plaintiffs' counsel has been granted legal

15

visits with D.D. and E.E. Plaintiffs' counsel's flippant and reckless allegations that OJJ has blocked youth from participating in authorized legal visits are untrue. Plaintiffs' counsel should retract them.

On a related note, Plaintiffs have already filed a Motion for Access to Counsel (Doc. 113). Defendants have responded in opposition (Doc. 117), explaining and providing a copy of the OJJ policy on legal visitation with youth, and explaining the various reasons why OJJ has denied <u>unauthorized</u> visits with youth – including with proposed intervenors D.D. and E.E. *See generally* Doc. 117. Furthermore, Defendants have repeatedly explained the rationale behind the policy: OJJ's duty to protect the children in its care. *Id.* To the extent Defendants' Response in Opposition to Plaintiffs' Motion for Access to Counsel (Doc. 117) is applicable here to address Plaintiffs' allegations on this issue, Defendants adopt and incorporate that Response here pursuant to Fed. R. Civ. P. 10(c).

### III.  CONCLUSION

For these reasons, the Court should deny Plaintiffs' *Motion for Leave to Intervene and Join in Pending Motions* (Doc. 120).

Dated: January 26, 2023.

                                                            Respectfully Submitted:

BY:   */s/ Allena McCain*
        Connell Archey (#20086)
        Randal J. Robert (#21840)
        Allena McCain (#38830)
        Madaline King (#38301)
        BUTLER SNOW LLP
        445 North Boulevard, Suite 300 (70802)
        P.O. Box 2997
        Baton Rouge, LA  70821-2997
        Telephone:  (225) 325-8700
        Facsimile:  (225) 325-8800
        Connell.Archey@butlersnow.com

Randy.Robert@butlersnow.com
Allena.McCain@butlersnow.com
Madaline.Rabalais@butlersnow.com

Kyle V. Miller (pro hac vice)
Lemuel E. Montgomery III (pro hac vice)
Anna Morris (pro hac vice)
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone:   (601) 948-5711
Facsimile:   (601) 985-4500
Kyle.Miller@butlersnow.com
Lem.Montgomery@butlersnow.com
Anna.Morris@butlersnow.com

Counsel for Defendants
GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice; and JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has this day been filed electronically with the Clerk of Court using the CM/ECF system, which will deliver notice of this filing to all counsel of record.

Baton Rouge, Louisiana this 26 day of January, 2023.

　　　　　　　　　　　　　　　　　　/s/ Allena McCain

67414844.v1