UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated<br><br>VERSUS<br><br>GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections | CIVIL ACTION<br><br>NO. 22-573-SDD-RLB |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on March 28, 2023.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated | CIVIL ACTION<br><br>NO. 22-573-SDD-RLB |
| VERSUS | |
| GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiffs' Motion for Access to Counsel. (R. Doc. 113). The motion is opposed. (R. Doc. 117). Plaintiffs filed a reply. (R. Doc. 133).

**I.      Background**

On August 19, 2022, the plaintiff Alex A. commenced this putative class action on behalf of certain individuals under the secure care of the Office of Juvenile Justice to obtain injunctive relief preventing their transfer from the Bridge City Center for Youth ("BCCY") to a location at the Louisiana State Penitentiary at Angola known as the Bridge City Center for Youth at West Feliciana ("BCCY-WF"). (R. Docs. 1, 96). The district judge denied the plaintiff Alex A.'s emergency motion for TRO. (R. Doc. 15).

On September 23, 2022, the district judge denied the plaintiff Alex A.'s Motion for Preliminary Injunction, and referred the matter to the undersigned for the issuance of a Scheduling Order. (R. Doc. 79).

1

The operative pleading in this action is the First Amended Class Action Complaint filed by Alex A., Brian B., and Charles C. (collectively, "Plaintiffs") on behalf of themselves and others similarly situated against Governor John Bel Edwards, Deputy Secretary of the Office of Juvenile Justice ("OJJ") Williams Sommers, and the Secretary of the Louisiana Department of Public Safety & Corrections ("DOC") James M. LeBlanc (collectively, "Defendants"). (R. Doc. 96). Plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment (Count I), declaratory and injunctive relief for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Count II), and declaratory and injunctive relief for violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. (Count III). (R. Doc. 96 at 35-39).

The Court issued a Scheduling Order on October 27, 2022. (R. Doc. 97).

On October 31, 2022, Plaintiffs filed a Motion for Class Certification. (R. Doc. 99). While Plaintiffs seek to represent a class of individuals who are subject to transfer and who have been transferred to BCCY-WF, there is no dispute that the named Plaintiffs in this action have not been transferred to BCCY-WF. Plaintiffs' Motion for Class Certification remains pending before the district judge.

On November 21, 2022, Defendants filed a Motion to Dismiss for Lack of Standing ("Motion to Dismiss"). (R. Doc. 102). In support of this motion, Defendants argue that "Plaintiffs lack standing to mount an as-applied challenge to the conditions of the BCCY-WF facility because they are not currently and have never been subject to those conditions and are not currently and have never been subject to any harm or injury from the conditions at the BCCY-WF facility." (R. Doc. 102-3). In opposition to the Motion to Dismiss, and in support of a finding of standing, Plaintiffs argue that "Defendants misconstrue the claims contained in the Amended

2

Complaint by reframing the claims as a challenge only to the conditions of confinement for youth currently held at the [BCCY-WF], even though the Amended Complaint continues to include youth who are at risk of imminent harm *and* youth who are currently confined at BCCY-WF." (R. Doc. 114 at 3). This Motion to Dismiss remains pending before the district judge. Discovery has been stayed in this action until resolution of this motion. (R. Doc. 118).

On December 8, 2022, Plaintiffs filed the instant Motion for Access to Counsel. (R. Doc. 113). Plaintiffs seek an order requiring the OJJ to permit Plaintiffs' counsel to have "timely legal visits" with four non-party individuals held at BCCY-WF. In detailing Plaintiffs' counsel's attempts to obtain access to the four confined individuals, but without providing the identity of those individuals, Plaintiffs represent that "[a]ll of the four youth are also part of the putative class in this action." (R. Doc. 113-1 at 4-7). Plaintiffs argue that Defendants have violated the First Amendment rights of the four confined individuals, Defendants have violated the First Amendment rights of Plaintiffs' counsel, and Defendants have "implicated" the ethical duties of Plaintiffs' counsel. (R. Doc. 113-1 at 7-13).

In opposition, Defendants detail the applicable policies and Plaintiffs' counsel's requests for legal visits with the four confined individuals, and their alleged failure to exhaust administrative remedies. (R. Doc. 117 at 2-4). Defendants first argue that because none of the actual three Plaintiffs in this action (Alex A., Brian B., and Charles C.) contend that they were denied access to their counsel, the motion should be denied as an improper attempt by Plaintiffs' <u>counsel</u> to adjudicate rights with respect to the four confined individuals. (R. Doc. 117 at 1). Defendants argue that Plaintiffs lack standing to assert claims on behalf of the four confined individuals or on behalf of their own counsel. (R. Doc. 117 at 5-7). Defendants further argue that neither Plaintiffs nor the four confined individuals have exhausted the applicable administrative

3

remedies. (R. Doc. 117 at 7-9). Defendants then argue that the requested attorney visits constitute attempts at obtaining discovery by accessing the four confined individual in violation of the Court's stay on discovery. (R. Doc. 117 at 9-10). Finally, Defendants represent that Plaintiffs' counsel did not submit any required documents to provide proof of attorney-client relationships, but after they did with respect to two of the four confined individuals, they were approved access. (R. Doc. 117 at 11-12).[1]

In reply, Plaintiffs' counsel argues that because the four confined individuals are putative class members, the Court has the authority to adjudicate the issues raised in the instant motion. (R. Doc. 133).

On January 17, 2023, this motion was referred to the undersigned for the issuance of a Report and Recommendation.

## II.    Law and Analysis

Having considered the arguments of the parties, the Court agrees with Defendants that Plaintiffs have not established the threshold issue that they have standing to raise an "access to counsel" claim on behalf of their own counsel or the non-party clients (or potential clients) of their counsel.

As an initial matter, the relief sought by the instant Motion for Access to Counsel – injunctive relief allowing Plaintiffs' counsel to obtain access to four confined individuals based on alleged violations of their First Amendment rights and interference with the ethical obligations of Plaintiffs' counsels – is well beyond the scope of the allegations in the First

---

[1] Plaintiffs represent that these two individuals are Daniel D. and Edward E. (R. Doc. 113 at 3 n.7). These two individuals have filed a Motion for Leave to Intervene and to Join in Pending Motions ("Motion to Intervene"). (R. Doc. 120). In addition, Plaintiffs represent that one of the two remaining individuals was released from OJJ custody at some point after Plaintiffs' counsel's request to visit. (R. Doc. 133 at 3 n.7). It, therefore, appears that this motion is moot with respect to these individuals.

4

Amended Complaint. Plaintiffs have not raised <u>any</u> allegations in the pleadings regarding access to counsel; accordingly, this issue is not properly adjudicated in this action. *See Nationalist Movement v. Town of Jena*, 321 F. App'x 359, 364 (5th Cir. 2009) (concluding that the "problem" with the plaintiff's motion for reconsideration "is that the issues raised are not properly connected to the underlying proceedings" and the "district court did not abuse its discretion in denying the motions to reconsider because the facts alleged involve non-parties and are outside the scope of the pleadings.").

There is no dispute that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). But Plaintiffs do not establish why the Court should address the alleged constitutional violations of the rights of non-parties in the context of a pre-trial motion in this action. Plaintiffs rely on various federal court decisions in support of the proposition that the First Amendment protects an attorney's right to advise individuals of their legal rights and to solicit clients. (R. Doc. 117 at 7-9). The decisions relied upon, however, were brought by attorneys and prisoners for the specific purpose of adjudicating First Amendment and other constitutional rights with respect to access to clients or potential clients. *See NAACP v. Button*, 371 U.S. 415 (1963) (brought by the NAACP to obtain declaration that Virginia statute banning solicitation of any legal or professional business was unconstitutional); *In re Primus*, 436 U.S. 412 (1978) (brought by cooperating lawyer with the ACLU to review disciplinary proceeding for violation of First and Fourteenth Amendment rights in advising women of free legal assistance from the nonprofit organization); *Cruz v. Beto*, 603 F.2d 1178 (5th Cir. 1979) (brought by attorney and prisoners for alleged violation of the prisoner's First and Fourteenth Amendment rights where they were access to the attorney was barred or restricted); *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636 (6th Cir. 2015) (brought by ACLU Union Fund of

5

Michigan for alleged violation of First and Fourteenth Amendment rights for failure to deliver mail offering legal assistance to prisoners); *Sturm v. Clark*, 835 F.2d 1009 (3d Cir. 1987) (brought by individual attorney for alleged First and Fourteenth Amendment rights based on restrictions on her speaking to visitors and inmates for whom she did not have visitation permits and otherwise limiting her access to prisoners); *Abel v. Miller*, 824 F.2d 1522 (7th Cir. 1987) (brought by civil rights organization, its attorneys, and three prisoners for violations of constitutional rights related to banned access to the prison and inmate-clients); *Jean v. Nelson*, 711 F.2d 1455 (11th Cir. 1983) (brought by civil rights organizations and Haitian refugees to challenge, among other things, lack of access to counsel); *see also Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002) (in action brought by physicians and patients unrelated to access to counsel, stating that "[a]ttorneys have rights to speak freely subject only to the government regulating with 'narrow specificity'.") (quoting *Button*, 371 U.S. at 433).

      To be clear, this is **not** a civil action challenging the violation of First Amendment rights related to laws or regulations prohibiting access to counsel. Plaintiffs have made no such allegations in the pleadings. Accordingly, this pre-trial motion, which effectively seeks adjudication of the constitutional rights of non-parties, simply falls outside of the scope of this civil action.

      Even if it were somehow proper for Plaintiffs to raise unrelated constitutional claims of non-parties in the context of a pre-trial motion, Plaintiffs lack standing to do so. "Standing 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The federal standing doctrine has two components, Article III standing, which "addresses the Constitution's case and controversy

6

requirement," and "prudential standing," which "embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Benefit Recovery v. Wooley*, No. 03-652, 2006 WL 8450137, at *2 (M.D. La. Dec. 5, 2006) (citation omitted). With regard to Article III standing, "[a]n individual has a direct interest in objecting to laws that upset the constitutional balance between the National Government and the States when the enforcement of those laws causes injury that is concrete, particular, and redressable." *Bond v. U.S.*, 564 U.S. 211, 222 (2011). The "irreducible constitutional minimum of standing," therefore, contains the following three elements: (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) that the injury likely will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. Failure to establish any one of them deprives the federal courts of jurisdiction to hear the case. *Ford*, 301 F.3d at 332. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561 (citations omitted). "Article III standing is a threshold issue" and must be considered before turning to prudential standing. *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013) (citing *Ford*, 301 F.3d at 332).

      The U.S. Supreme Court has further recognized "that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another." *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004). Third-party standing requires the satisfaction of three factors: "(1) the litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; (2) the litigant must have a close relation to the third party; and, (3) there must exist some hindrance to the third party's ability to protect his or her own interests." *Peterson v. Cain*, 302 F.3d 508, 512 (5th Cir. 2002) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991))

Here, Plaintiffs cannot establish any demonstrable injury in fact required to establish Article III standing. An injury in fact in the context of standing means an invasion of a legally protected interest that is both concrete and particularized as well as actual or imminent, not conjectural or hypothetical. *Lujan*, 504 U.S. at 560 (citations omitted). Stated another way, "[a]llegations of injury that are merely conjectural or hypothetical do not suffice to confer standing." *Jindal v. U.S. Dep't of Educ.*, No. 14-534, 2015 WL 854132, at *4 (M.D. La. Feb. 26, 2015) (citing *Little v. KPMG, LLP*, 575 F.3d 533, 540 (5th Cir. 2009)). There is no dispute that Plaintiffs (Alex A., Brian B., and Charles C.) are represented by, and have access to, their counsel. The only alleged injuries complained of in the instant motion are those of non-parties to this action: Plaintiffs' counsel and the four confined individuals. Lacking any injury in fact, Plaintiffs cannot establish Article III standing to raise First Amendment claims on behalf of these non-parties.[2]

In reply, Plaintiffs raise the novel argument that this Court has the authority to adjudicate the instant Motion for Access to Counsel because the imprisoned individuals are putative class members who have raised violations of their constitutional rights. (R. Doc. 133). Plaintiffs ground this argument in Rule 23(d)(1)(B), which provides a district court authority to issue orders that "require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of: (i) any step in the action; (ii) the proposed extent of the judgment; or (iii) the members' opportunity to signify whether they consider the representation

---

[2] Plaintiffs' counsel are not plaintiffs in this action. Furthermore, given there is no certified class, the four confined individuals (even if they are properly labeled as "putative" class members) are also not plaintiffs in this action. *See Smith v. Bayer Corp.*, 564 U.S. 299, 314 (2011) ("No one [is] 'willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation before the class is certified.'") (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 16, n.1 (2002)). These non-parties may seek relief regarding their access to counsel claims, if appropriate, by filing their own civil actions.

8

fair and adequate, to intervene and present claims or defense, or otherwise come into the action." Fed. R. Civ. P. 23(d)(1)(B).

This position is unfounded. The relief sought through the instant Motion for Access to Counsel is not "appropriate notice" allowed under Rule 23(d)(1)(B). Instead, Plaintiffs are seeking an adjudication of the constitutional rights of non-parties and injunctive relief.

Furthermore, given that the class has not been certified in this action, Plaintiff has not established that it is appropriate to issue any pre-certification notice to these "putative" class members. *See DW Volbleu, LLC v. Honda Aircraft Co., Inc.*, No. 21-637, 2021 WL 5826536, at *5 (E.D. Tex. Dec. 8, 2021) ("Rule 23(d)(1)(B) does not authorize pre-certification notices to potential class members addressing substantive, disputed issues that will be litigated on the merits."); *see also In re Katrina Canal Breaches Litig.*, 401 F. App'x 884, 887 (5th Cir. 2010) ("Even assuming that the district court had the power to issue such an order [under Rule 23(d)(1)(B)], which we do not decide, there is nothing that requires the court to order notice of the denial of class certification [to putative class members], and we find no abuse of discretion in the court's refusal to do so.").

**III    Conclusion**

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiffs' Motion for Access to Counsel (R. Doc. 113) be **DENIED**.

Signed in Baton Rouge, Louisiana, on March 28, 2023.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

9