UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALEX A., by and through his guardian,** Molly Smith; **BRIAN B.;** and **CHARLES C., by and through his guardian,** Kenione Rogers, individually and on behalf of all others similarly situated | **CIVIL ACTION** <br><br> **NO. 22-573-SDD-RLB** |

**VERSUS**

**GOVERNOR JOHN BEL EDWARDS,**
in his official capacity as Governor of Louisiana;
**WILLIAM SOMMERS,** in his official
capacity as Deputy Secretary of the
Office of Juvenile Justice,
**JAMES M. LEBLANC,** in his official capacity
as Secretary of the Louisiana Department
of Public Safety & Corrections

## ORDER

Before the Court is the non-parties Daniel D. and Edward E.'s Motion for Leave to Intervene and to Join in Pending Motions. (R. Doc. 120). The motion is opposed. (R. Doc. 134).

**I.    Background**

On August 19, 2022, the plaintiff Alex A., by and through his guardian Molly Smith, commenced this putative class action on behalf of certain individuals under the secure care of the Office of Juvenile Justice ("OJJ") to obtain injunctive relief preventing their transfer from the Bridge City Center for Youth ("BCCY") to a location at the Louisiana State Penitentiary at Angola known as the Bridge City Center for Youth at West Feliciana ("BCCY-WF"). (R. Docs. 1, 96).

On September 23, 2022, the district judge denied the plaintiff Alex A.'s Motion for Preliminary Injunction, and referred the matter to the undersigned for the issuance of a Scheduling Order. (R. Doc. 79).

Defendants filed an Answer on October 4, 2022. (R. Doc. 83).

On October 25, 2022, the First Amended Class Action Complaint was filed by Alex A., by and through his guardian Molly Smith, Brian B.,[1] and Charles C., by and through his guardian Kenione Rogers, (collectively, "Plaintiffs") on behalf of themselves and others similarly situated against Government John Bel Edwards, Deputy Secretary of the OJJ ("OJJ") Williams Sommers, and the Secretary of the Louisiana Department of Public Safety & Corrections James M. LeBlanc (collectively, "Defendants"). (R. Doc. 96, "Amended Complaint").[2] In this Amended Complaint, Plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment (Count I), declaratory and injunctive relief for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Count II), and declaratory and injunctive relief for violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count III).  (R. Doc. 96 at 35-39).

The Court issued a Scheduling Order on October 27, 2022. (R. Doc. 97).

On October 31, 2022, Plaintiffs filed a Motion for Class Certification. (R. Doc. 99). Plaintiffs seek certification of one class with one subclass as follows:

- The "Principal Class" defined as follows: "All youth who are now or will be in the custody of OJJ who have been, might be, or will be transferred to [BCCY-WF] or another adult prison;" and

- The "Disability Class" defined as follows: "All current and future youth with disabilities within the meaning of the ADA and Section 504 of the Rehabilitation Act in the custody of OJJ who have been, might be, or will be transferred to [BCCY-WF] or another adult prison."

---

[1] Brian B. is no longer a minor, but was a minor when he was adjudicated delinquent. (R. Doc. 95 at 1 n.1).
[2] Plaintiffs timely this Amended Complaint directly into the record as a matter of course on October 25, 2022, which was 21 days after service of Defendants' Answer. *See* Fed. R. Civ. P. 15(a)(1)(B). Any future amendment of the pleadings may only be filed with Defendants' consent or leave of court. *See* Fed. R. Civ. P. 15(a)(2).

(R. Doc. 99 at 1-2). There is no dispute that the named Plaintiffs (Alex A., Brian B., and Charles C.) have not been transferred to BCCY-WF. (*See* R. Doc. 101 at 9-10; R. Doc. 99-2; R. Doc. 99-3; R. Doc. 9 at 11). Plaintiffs' Motion for Class Certification remains pending before the district judge. Defendants oppose class certification. (R. Doc. 101).

On November 21, 2022, Defendants filed a Motion to Dismiss for Lack of Standing ("Motion to Dismiss"). (R. Doc. 102). In support of this motion, Defendants argue that "Plaintiffs lack standing to mount an as-applied challenge to the conditions of the BCCY-WF facility because they are not currently and have never been subject to those conditions and are not currently and have never been subject to any harm or injury from the conditions at the BCCY-WF facility." (R. Doc. 102-1 at 3). In opposition to the Motion to Dismiss, and in support of a finding of standing, Plaintiffs argue that "Defendants misconstrue the claims contained in the Amended Complaint by reframing the claims as a challenge only to the conditions of confinement for youth currently held at the [BCCY-WF], even though the Amended Complaint continues to include youth who are at risk of imminent harm *and* youth who are currently confined at BCCY-WF." (R. Doc. 114 at 3). Plaintiffs further stated that Plaintiffs' counsel was scheduled to meet with a juvenile incarcerated at the BCCY-WF on December 12, 2022, and that Plaintiffs would be seeking "leave to amend" the pleadings to name the youth as an additional Plaintiff. (R. Doc. 114 at 3, 6 n.4). This Motion to Dismiss remains pending before the district judge. Discovery has been stayed in this action until resolution of this motion. (R. Doc. 118).

On January 5, 2023, Daniel D., by and through his guardian Angela Williams, and Edward E., by and through his guardian Jernita Williams, two non-party individuals held at BCCY-WF (collectively, "Movants"), filed the instant Motion for Leave to Intervene. (R. Doc. 120). Movants seek permissive intervention in this action pursuant to Rule 24(b) of the Federal

Rules of Civil Procedure and to join in and supplement the existing Plaintiffs' pending Motion for Class Certification (R. Doc. 99) and Opposition to Defendants' Motion to Dismiss (R. Doc. 114). Movants represent that they exhausted their administrative remedies under the Prison Litigation Reform Act. (R. Doc. 120 at 6-7). In arguing that the standards for permissive intervention have been met, Movants assert that the Court "should exercise its discretion to allow the movants to intervene, so that the Court will have before it as Plaintiffs both youth at imminent risk of transfer to [BCCY-WF] and youth who are now or have recently been confined there." (R. Doc. 120 at 9). Movants further argue that their motion is timely because Defendants "blocked Plaintiffs' counsel from accessing clients who are members of the proposed class and who have requested legal visits,"[3] noting that Movants "hope that [their] intervention . . . will help resolve any concerns the Court might have regarding standing." (R. Doc. 120 at 9-10).

In opposition, Defendants first argue that the Motion to Intervene should be denied because Movants have failed to exhaust their administrative remedies. (R. Doc. 134 at 4-10). Next, Defendants argue that the Motion to Intervene should be denied as procedurally improper and prejudicial because (a) the Motion to Intervene is an improper attempt to avoid dismissal based on lack of standing or to create a new basis for class certification, (b) Movants are "legal strangers" to this lawsuit and have no procedural avenue to assert arguments on previously-filed motions, and (c) the Motion to Intervene is an improper vehicle for allowing Movants to be certified as class representatives. (R. Doc. 134 at 10-14). Finally, Defendants represent that the Motion to Intervene raises false, unsupported allegations regarding Plaintiffs' counsel's access to clients or potential clients held at BCCY-WF. (R. Doc. 134 at 14-16).

---

[3] Plaintiffs separately filed a Motion for Access Counsel. (R. Doc. 113). The undersigned has addressed that motion in a separate Report and Recommendation on this same date as ordered by the district judge.

**II.    Law and Analysis**

    **A.    Legal Standards**

The Federal Rules of Civil Procedure allow for intervention of right and permissive intervention. *See* Fed. R. Civ. P. 24. Movants seek permissive intervention under Rule 24(b), which provides, in pertinent part, that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Granting permissive intervention pursuant to Rule 24(b) is "wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (per curiam).

"Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be  liberally construed." *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015) (quoting *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014)). "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Texas*, 805 F.3d at 656 (quoting *Sierra Club v. Espy,* 18 F.3d 1202, 1205 (5th Cir. 1994)). "The decision is a practical undertaking, considering the particular facts and circumstances of the case." *Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 864 (5th Cir. 2019) (citing *Brumfield*, 749 F.3d at 342).

"[I]t is essential not to conflate what is required for a permissive intervenor to enter an action and what may be required for that intervenor to remain before the court. The two situations are not inherently congruent, the permissive intervenor falling somewhere in the gray area between spectator and participant." *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir.

1985). "It is well-established . . . that a party must have independent jurisdictional grounds to intervene permissively under Rule 24(b)." *Id*. (internal quotation and citations omitted). "But [a permissive intervenor's] participatory rights remain subject to the intervenor's threshold dependency on the original parties' claims, for it is equally well-settled that '[a]n existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit.'" *Id*. (quoting *Kendrick v. Kendrick*, 16 F.2d 744, 745 (5th Cir. 1926)). "There is no right and no obligation to intervene in a defective suit. . . . Whether the right to intervene is permissive or unqualified cannot affect the application of this rule." *Truvillion v. King's Daughters Hosp.*, 614 F.2d 520, 526 (5th Cir. 1980) (citations omitted).

    **B.**    **Analysis**

Having considered the record, the applicable law, and the arguments of Movants and Defendants, the Court finds it appropriate to exercise its discretion in denying permissive intervention at this time.

As a preliminary issue, the Court observes that Defendants do not oppose the instant Motion to Intervene on the grounds that Movants have not raised claims that share with the main action "a common question of law or fact" or untimeliness. *See* Fed. R. Civ. P. 24(b)(1)(B). There can be no dispute that the proposed Complaint in Intervention raises claims that share with the main action "a common question of law or fact" given that while the proposed Complaint in Intervention adds various new factual allegations regarding Movants' personal experiences with the conditions at BCCY-WF, the proposed pleading seeks to incorporate the identical class action allegations, claims for relief, and prayer for relief as alleged in the Amended Complaint. (*See* R. Doc. 120-3 at 6).

The timeliness of the Motion to Intervene is a different matter. "Determining the timeliness of a motion to intervene entails consideration of four factors: (1) the length of time during which the would-be intervenor knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely." *Sierra Club*, 18 F.3d at 1205 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977)). The Fifth Circuit has cautioned that an analysis of timeliness "is contextual" and "absolute measures of timeliness should be ignored." *Id.* (citing *Stallworth*, 558 F.2d at 266); *Assoc. of Prof. Flight Attendants v. Gibbs*, 804 F.2d 318, 320, 321 (5th Cir. 1986) ("Timeliness is not determined solely by the length of time that passes before a motion to intervene is made" and, instead, "must be determined from all the circumstances in the case.").

Here, the Court finds it pertinent to note that while the Scheduling Order did not set a deadline for any potential parties to intervene in this action, it did set a deadline "to join other parties or to amend the pleadings" on or before December 2, 2022. (R. Doc. 97 at 1). It appears that this instant Motion to Intervene filed on January 26, 2023—nearly two months past the deadline to join other parties or amend the pleadings—is an attempt to circumvent the Scheduling Order without addressing the requirements of Rule 15(a)(2) and Rule 16(b)(4) of the Federal Rules of Civil Procedure.[4]

---

[4] After a scheduling order is in place, amendments to pleadings beyond the date set by the scheduling order are governed by Rule 16 of the Federal Rules of Civil Procedure, which requires a showing of "good cause" for modifying the deadline set by the scheduling order. *See S & W Enter., LLC v. South Trust Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003). In order to show "good cause" the party seeking modification must show the

While the instant Motion to Intervene was purportedly filed on behalf of the non-party Movants, those non-parties are represented by the same counsel as the named Plaintiffs. Indeed, the instant Motion to Intervene is signed on behalf of the "Plaintiffs" rather than on behalf of the Movants. (*See* R. Doc. 120 at 11). As stated above, Movants seek to allege the <u>same</u> class action allegations, claims for relief, and prayer for relief as the named Plaintiffs by way of intervention. Movants state that it is "<u>Plaintiff's</u> . . . hope that the intervention of [Movants], who have both been confined at [BCCY-WF], will help resolve any concerns the Court may have regarding standing." (R. Doc. 120 at 10) (emphasis added). While the Court could construe the instant Rule 24(b)(1) motion as a Rule 15(a)(2) motion,[5] the motion would still be subject to denial as untimely given the failure to establish good cause under Rule 16(b)(4).[6]

---

deadlines could not "reasonably be met despite the diligence of the party needing the extension." *Id.* at 545 (citation omitted). The Court considers four factors for determining whether "good cause" exists to grant an untimely motion to amend a pleading: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *See id.* (citing *Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S & W Enter.*, 315 F.3d at 536. Under Rule 15(a)(2), after the period for amending as a matter of course elapses, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The rule "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quotations omitted). The Court may consider several factors when determining whether to grant leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment...." *See Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) (citations omitted). The "futility" of amendments to a complaint is measured by whether "the amended complaint would fail to state a claim upon which relief could be granted" under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* at 873 (citations omitted).
[5] *See Johnson v. Allstate Ins. Co.*, No. 07-0781, 2010 WL 1325272, at *2 (S.D. Ill. Mar. 29, 2010) ("In this case it seems particularly appropriate to apply Rule 15 rather than Rule 24 because the intervening plaintiffs are not adversarial to any of the existing plaintiffs, are represented by the same counsel and freely admit that the existing plaintiffs are adequate to protect the interests of the members of the proposed class. Accordingly, Rule 15 rather than Rule 24 is the correct procedural vehicle by which to add these new plaintiffs in this case, and the Court will construe the motions to intervene as motions to amend the complaint.").
[6] Movants allege that they have been confined at BCCY-WF since September or October of 2022. (R. Doc. 120-3 at 3-4). The instant motion does not identify when Plaintiffs' counsel formed an attorney-client relationship with the Movants. Plaintiffs' opposition to Defendants' Motion to Dismiss suggests that Plaintiffs' counsel established an

8

Regardless of whether the instant Motion to Intervene was timely filed, the Court will deny the motion, without prejudice, given Defendants' pending Motion to Dismiss, which raises the "threshold" issue of Article III standing. *See Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013). "Article III standing requires a plaintiff to show: '(1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision.'" *Id.* (quoting *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001) (citations omitted)). If the plaintiffs in an action lack Article III standing, the federal "courts have no business deciding [the case], or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 340-41 (2006).

This action was commenced to obtain injunctive relief precluding the transfer of juveniles under the secure care of the OJJ to BCCY-WF. (R. Doc. 1). In weighing the appropriate factors (the likelihood of success, the threat of irreparable injury to the plaintiff, the threatened harm to the defendants, and the public interest), the district judge denied the foregoing preliminary injunctive relief. (R. Doc. 79). Plaintiffs then filed an Amended Complaint raising similar allegations. (R. Doc. 96). Defendants have now moved to dismiss the entire Amended Complaint on the basis that "Plaintiffs lack standing to mount an as-applied challenge to the conditions of the BCCY-WF facility because they are not currently and have never been subject to those conditions and are not currently and have never been subject to any harm or injury from the conditions at the BCCY-WF facility." (R. Doc. 102-1 at 3).[7] There can be no dispute that Movants (who have alleged no new claims) are seeking to intervene to "help resolve any

---

attorney-client relationship with, and had access to, at least one of the Movants by December 12, 2022. (*See* R. Doc. 3, 6 n.4). The Court recognizes that Plaintiffs' counsel may have had difficulty communicating with Movants regarding potential pleadings for the reasons addressed in Movants' Motion for Access to Counsel. (*See* R. Doc. 113). Regardless, the instant motion does not address the appropriate factors to establish good cause under Rule 16(b)(4) to file an untimely motion to amend after the deadline set by the Court's Scheduling Order.
[7] This Order takes no position with respect to the validity of Defendants' arguments.

9

concerns the Court might have regarding standing" given that they are actually confined at BCCY-WF. (R. Doc. 120 at 10; *see* R. Doc. 114 at 3, 6 n.4).

In other words, Movants are seeking to cure any jurisdictional defects in the Amended Complaint based on lack of Article III standing by intervening as plaintiffs in this action despite the expiration of the deadline to add new parties in this action. Plaintiffs have argued, however, that Defendants have misconstrued their claims and that they have Article III standing to raise all claims in the Amended Complaint even in the absence of plaintiffs who are incarcerated at BCCY-WF. Under these circumstances, the Court finds it appropriate to deny the instant Motion to Intervene without prejudice to refile after the resolution of the issue of Article III standing based on the pleadings, and parties, currently in this action. As stated above, an "existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit." *Harris*, 768 F.2d at 675. "'By its very nature intervention presupposes pendency of an action in a court of competent jurisdiction' and thus 'whenever an action is terminated, for whatever reason, there no longer remains an action in which there can be intervention.'" *In re Greyhound Sec. Litig.*, No. 95-2103, 1997 WL 531317, at *3 (N.D. Tex. Aug. 15, 1997) (quoting *Black v. Cent. Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974)).

The Court acknowledges that where intervention occurs <u>before</u> dismissal, "a federal court has the discretion to treat an intervention as a separate action, and may adjudicate it despite dismissal of the main demand if failure to do so might result in unnecessary delay or other prejudice" and if "a separate and independent jurisdictional basis exists." *Arkoma Assocs. v. Carden*, 904 F.2d 5, 7 (5th Cir. 1990) (per curiam) (citation omitted). Where a party seeks intervention <u>after</u> dismissal of an action, however, the Court must deny a motion to intervene.

*Allen Exch. Partners, Ltd. v. CLA Allen, LLC*, No. 21-870, 2022 WL 2910014, at *1 (E.D. Tex. July 22, 2022) (denying motion to intervene where the underlying claims had been dismissed, noting that even if the intervention "could be treated as a separate action" the proposed intervenor "will not suffer delay or prejudice from not being permitted to intervene" as it was named a defendant in a second-filed lawsuit and had brought a third-party complaint against the original plaintiff). Here, the non-parties are seeking to intervene while a motion to dismiss on the threshold issue of Article III standing is pending, but prior to resolution of that threshold issue.

To be clear, the stated purpose of the proposed intervention is to render moot a challenge to Article III standing brought by the Defendants. (R. Doc. 120 at 10).[8] At this given point of the litigation, the district judge has not decided whether and to what extent the underlying action will be dismissed based on lack of Article III standing. The Court finds it inappropriate, under these circumstances, to allow intervention by non-parties for the sole purpose of resolving a potential jurisdictional defect. *See Aetna Casualty & Surety Co. v. Hillman*, 796 F.2d 770, 776 (5th Cir.1986) ("Rule 15 . . . do[es] not allow a party to amend to create jurisdiction where none actually existed."); *Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981) ("[W]e hold only that where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action."); *see also* Wright & Miller, *Federal Practice and Procedure: Civil* § 1917 (3d ed.) ("Intervention cannot cure any jurisdictional defect that would have barred the federal court from hearing the original action.

---

[8] Movants provide no explanation for how their intervention as plaintiff-intervenors in a separate Complaint for Intervention would resolve the Article III standing issues with respect to Plaintiffs relative to their own pleading, the Amended Complaint.

11

Intervention presupposes the pendency of an action in a court of competent jurisdiction and cannot create jurisdiction if none existed before.").

Movants will not be prejudiced by the instant denial of their motion to intervene without prejudice to refile. Indeed, if this entire action is dismissed for lack of Article III standing, Movants will have the opportunity file a separate lawsuit. And if the entire action is not dismissed, Movants may renew again seek to intervene in this action (or, with coordination with Plaintiffs already in this action, seek to be named as additional plaintiffs and class representatives by amendment).

Accordingly, the Court will deny the Motion to Intervene without prejudice to refile once the district judge has ruled on the Motion to Dismiss, which challenges the threshold issue of Article III standing. Having denied the Motion to Intervene, without prejudice, on the foregoing grounds, the Court does not reach the remaining issues raised by the parties.

### III    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the non-parties Daniel D. and Edward E.'s Motion for Leave to Intervene and to Join in Pending Motions (R. Doc. 120) is **DENIED** without prejudice to refile after adjudication of Defendants' Motion to Dismiss (R. Doc. 102).

Signed in Baton Rouge, Louisiana, on March 28, 2023.

                                             **RICHARD L. BOURGEOIS, JR.**
                                             **UNITED STATES MAGISTRATE JUDGE**