UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian Kenione Rogers, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>DANIEL D. by and through his guardian, Angela Williams, EDWARD E., by and through his guardian Jernita Williams, and FRANK F., by and through his guardian, Taquita Morgan,<br><br>Proposed Plaintiffs,<br><br>v.<br><br>GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS,[1] in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,<br><br>          Defendants. | Civil Action No. 3:22-cv-573-SDD-RLB<br><br>**MOTION FOR LEAVE TO AMEND COMPLAINT** |

## RULE 7(E) CERTIFICATE

Pursuant to MDLA Local Civil Rule 7(e), counsel for Plaintiffs, conferred with Lem Montgomery III, counsel for defendants, with respect to this motion. Defendants oppose the relief sought in this motion. In addition, no memorandum of law in support is required for this motion

---

[1] On November 18, 2022, Gov. Edwards announced the resignation of Dep. Sec. Sommers and the appointment of Otha "Curtis" Nelson as his replacement.  https://gov.louisiana.gov/index.cfm/newsroom/detail/3892  Because Sommers was sued in his official capacity, Nelson is automatically substituted as a Defendant.  Fed. R. Civ. P. 25(d).  Plaintiff leaves Sommers as a Defendant until the clerk is ordered to change the caption, and also replace him as a party with Nelson in the proposed Second Amended Class Action Complaint, filed simultaneously with this motion.

1

to amend pleadings. *Id.,* R. 7(e)(4).

## INTRODUCTION

Plaintiffs move pursuant to Fed. R. Civ. P. Rule 15(a)(2) for permission to amend the Amended Class Action Complaint in this action, including adding Daniel D., Edward E. and Frank F. as party Plaintiffs and class representatives.[2] This motion is accompanied by Declarations of Daniel D. and Edward E., previously filed with their motion for leave to intervene, *Doc. 120*[3] (denied without prejudice, *Doc. 144*), a Declaration of Frank F., and a proposed Second Amended Class Action Complaint.

Plaintiffs meet the requirements of Rule 15(a)(2) and have good cause for leave to amend past the scheduling order deadline because their failure to move timely is due to Defendants' tactics to delay this action. Defendants have now moved to dismiss twice, moved to stay discovery, and have stonewalled Plaintiffs' counsel from accessing clients who are members of a proposed class. Plaintiffs' counsel, retained by the youth and/or their guardians, complied with OJJ policy and requested legal visits with youth currently incarcerated at Angola yet requests have been denied or OJJ has unreasonably delayed access to counsel. However, once Plaintiffs contacted several proposed class members, Plaintiff-Intervenors Daniel D. and Edward E., filed a motion for leave to intervene (denied without prejudice), and quickly filed this motion for leave to amend the complaint, adding Frank F. as a Plaintiff along with Daniel D. and Edward E. Plaintiffs have not unduly delayed or acted in bad faith in their efforts to seek leave to amend. For all of the reasons set forth below, the motion should be granted and Plaintiffs permitted to file their

---

[2] Movants are pursuing their claims under pseudonyms, as they are minors and are in custody of the Defendants pursuant to juvenile delinquency proceedings. Daniel D. is 15 years old, Edward E. is 17 years old and Frank F. is 16 years old. Plaintiffs have informed Defendants' counsel of the movants' real names and the movants are in Defendants' custody.

[3] Plaintiffs initially failed to properly file their exhibits, *Doc. 121*, and refiled them correctly. *See, Doc. 122-1* (exhibit list) and attached exhibits.

Second Amended Class Action Complaint to supersede the original Complaint and First Amended Class Action Complaint.

## FACTUAL BACKGROUND

In the proposed Second Amended Class Action Complaint, the Plaintiffs – children, who have been or will be adjudicated delinquent in Louisiana and confined in the secure care custody of OJJ, who are currently confined or at risk of being confined at the OJJ secure site at the Louisiana State Penitentiary at Angola ("Angola," "OJJ Angola site," or "BCCY-West Feliciana") – challenge Defendants' plans, policies and practices of confining children within a maximum-security adult prison. They seek certification pursuant to Fed. R. Civ. P 23(a) and 23(b)(2) of a Plaintiff class comprising all youth who are now or will be in the custody of OJJ and who have been, might be, or will be transferred to the OJJ site (the "Transitional Treatment Unit" or "TTU") at Angola or another adult prison (the "Principal Class"), including a subclass of all current and future youth with disabilities within the meaning of the ADA and Section 504 of the Rehabilitation Act in the custody of OJJ who have been, might be, or will be transferred to the OJJ site at Angola or another adult prison (the "Disabilities Subclass").[4] The motion for class certification is fully briefed. *Doc. 99, 101, 112.*

The proposed Second Amended Class Action Complaint adds three named Plaintiffs. Plaintiff Daniel D. is a 15-year-old youth in the custody of OJJ whom Defendants were confining in a cell at the OJJ Angola site as of the date of his Declaration in support of the intervention motion, December 28, 2022. *Doc. 122-2.* Because Defendants' use of the Angola site, the fear of being sent there, the lack of education and other rehabilitative services available to him and the

---

[4] The TTU is the OJJ facility at Angola. This Court found that this facility will be "called Bridge City Center for Youth at West Feliciana ('BCCY-WF')." *Doc. 79* at 18, ¶ 39. For purposes of the class definition, the "TTU at Angola" is the same as the "Angola," "OJJ Angola site," and "BCCY-West Feliciana."

3

conditions under which he is held have substantially impaired his constitutional rights, he has been harmed by the same Fourteenth Amendment violations there as the original Plaintiffs.

Within days of visiting with undersigned counsel at Angola, executing his Declaration, and filing a grievance, OJJ moved Daniel to a different secure OJJ facility. *Doc. 133*, p. 2, fn. 6. On or about March 14, 2023, OJJ transferred Daniel again to the OJJ facility at Angola, where he remains. Daniel brings this action through his guardian, pursuant to Fed. R. Civ. P. 17(c)(1). His guardian is dedicated to his best interests and will advocate for those interests in this action. Daniel has claims virtually similar to those of the existing Plaintiffs, based on the ongoing violation of his constitutional rights created by the Defendants' decisions to open and use the former death row building at Angola to house children adjudicated delinquent. Like the original Plaintiffs, he seeks declaratory and injunctive relief only.

In his Declaration, Daniel states that OJJ moved him to the Angola site in October 2022 after housing him at Bridge City followed by St. Martinville, and that he was confined there as of the date of his Declaration (December 28, 2022). After transferring Daniel to the OJJ site at Swanson, OJJ moved him back to the Angola site in March 2023. In his Declaration, he describes the conditions at Angola and the effect of Defendants' policies and practices on him:

> In my cell, there is mold in the sink. I can see mold in the pipes where the water comes out of. I have to brush my teeth with this water where the mold is. I have to drink out of the taps [] where the mold is. I have to put my mouth up to the tap where the mold is whenever I brush my teeth.
>
> At the other facilities I have been, I was receiving substance abuse treatment. I do not receive substance abuse counseling at Angola. I found the substance abuse counseling very helpful and want to have it again.
>
> I see DOC guards every day. Every time there's a fight between the kids or staff, DOC responds. [After a youth hit a guard,] OJJ and DOC guards came into the classroom and started grabbing all the kids. There were 8 of us kids in the room.
>
> Only one youth had hit the guard. DOC ordered everyone on the wall. The DOC guards grabbed and twisted my arm. They hurt me. I was not part of the fight.

> *After this incident, all of us were locked in our cells for 3 or 4 days without leaving. We did not get to leave our cells at all for those 3 or 4 days except for to use the showers. About 3 or 4 times our whole pod has been locked down and we are not able to leave our cells except to shower. They would keep us locked in the whole weekend.*
>
> *If we can't go outside, we can't exercise. No staff member tries to lead indoor exercise.*
>
> *Even if they transfer me to another facility, I am worried they will ship me back here to Angola. This is much worse than the other facilities.*
>
> *I am still not receiving any treatment for substance use. I was receiving treatment for substance use at Swanson.*
>
> *I still have not had any visit from my family, as compared to when I was in Bridge City in Jefferson Parish.*
>
> *I would still rather be in a different OJJ facility. This facility at Angola is much worse than other places. I cannot do that here. I just get two video visits every week. At other facilities, I could use the phone to call home whenever I needed to.*

*See, Doc. 122-2*, ¶¶ 5, 9, 11-14, 20, 23 (Declaration of Daniel D.) (emphasis added); *Exhibit 1*, ¶¶ 6-9 (Supplemental Declaration of Daniel D.).

Plaintiff Edward E. is a seventeen-year-old youth in the custody of OJJ whom Defendants confined in a cell at the OJJ Angola site from mid-October 2022 until December 15th or 16th, 2022. Edward was too transferred to a different secure care facility after he received a visit from undersigned on December 14th. *Doc. 133,* p. 1, fn. 3. Edward continues to be in OJJ's secure custody and is at risk of being sent back to Angola at any time during his term of confinement with OJJ depending upon his behaviors, because OJJ's policy makes clear that the decision about which youth will be sent to that "transitional treatment unit" is entirely within the unreviewable discretion of OJJ. *Doc. 79*, p. 16, ¶ 31.

Edward brings this action through his guardian, pursuant to Fed. R. Civ. P. 17(c)(1). His guardian is dedicated to his best interests and will advocate for those interests in this action. Because Defendants' use of the Angola site, the fear of being sent there, the lack of education and

5

other rehabilitative services available to him and the conditions under which he is held have substantially impaired his constitutional rights, he has been harmed by the same Fourteenth Amendment violations there as the original Plaintiffs. Edward E. has claims highly similar to those of the existing Plaintiffs, based on the ongoing violation of his constitutional rights created by the Defendants' decisions to open and use the former death row building at Angola to house children adjudicated delinquent. Edward is a youth with a disability under Section 504 of the Rehabilitation Act and the ADA. Like the original Plaintiffs, he seeks declaratory and injunctive relief only.

In his Declaration supporting this motion, Edward describes the conditions at the Angola site and the effect of Defendants' policies and practices on him:

> While in OJJ custody, I have been placed at Swanson-Monroe, Bridge City, Acadiana Center for Youth (Bunkie), and a facility in Alabama. I am currently [as of the date of his declaration in December 2022] at BCCY-West Feliciana, also known as Angola. . . . I was part of the first group of youth moved to Angola in October . . . .
>
> The whole experience of being moved to Angola was very traumatizing and depressing. It was early one morning when close to two dozen guards came to my dorm at Swanson-Monroe and made us all get on the ground. They pointed tazers (sic) at us and put us in handcuffs.
>
> I am in the 10th grade. I have had an IEP because of poor focus and being easily distracted since well before I was in OJJ custody. However, I do not believe I am getting any IEP services in OJJ custody. There is only one permanent teacher for us [8 youth] at Angola, Mr. Williams. He splits his time between the classrooms for the two tiers, spending the morning with one and the afternoon with the others. . . . sometimes we do work by ourselves without a teacher. We all get the same work and assignments even if we are on different grade levels. . . .
>
> I have been diagnosed with ADHD, PTSD, and Bipolar disorder. I take medication for the PTSD and another medication called Ten-x for ADHD and blood pressure. We do not do LaMod or group therapy at Angola.
>
> . . . on Achieve tier, we would get less recreation time. If one youth acted up, the whole tier would lose recreation time for the day and we would be in our locked cells instead.
>
> There is no library here at the Angola facility for youth like there are at other youth facilities.
>
> It is very depressing to be here knowing this is the former death row. When the lights go out

> at night, I think I see shadows going past. The nightmares I have from my PTSD have gotten worse since I have been at Angola.

*See, Doc. 122-3*, ¶¶ 3-5, 7, 11-18 (Declaration of Edward E.).

Plaintiff Frank F. is a sixteen-year-old youth in the custody of OJJ whom Defendants confined in a cell at the OJJ Angola site from March 8, 2023 until on or around March 28, 2023. He was in custody at Angola on the date of his declaration, March 21, 2023. Frank continues to be in OJJ's secure custody and is at risk of being sent back to Angola at any time during his term of confinement with OJJ depending upon his behaviors, because OJJ's policy makes clear that the decision about which youth will be sent to that "transitional treatment unit" is entirely within the unreviewable discretion of OJJ. *Doc. 79*, p. 16, ¶ 31.

Frank brings this action through his guardian, pursuant to Fed. R. Civ. P. 17(c)(1). He seeks to join this case through his guardian, who is dedicated to his best interests and will advocate for those interests in this action. Because Defendants' use of the Angola site, the fear of being sent there, the lack of education and other rehabilitative services available to him and the conditions under which he is held have substantially impaired his constitutional rights, he has been harmed by the same Fourteenth amendment violations there as the original Plaintiffs. Frank has claims highly similar to those of the existing Plaintiffs, based on the ongoing violation of his constitutional rights created by the Defendants' decisions to open and use the former death row building at Angola to house children adjudicated delinquent. Frank is a youth with a disability under Section 504 of the Rehabilitation Act and the ADA. Like the original Plaintiffs, he seeks declaratory and injunctive relief only.

In his Declaration supporting this motion, Frank describes the conditions at the Angola site and the effect of Defendants' policies and practices on him:

> At the other facilities I have been, I have not had to be alone in a cell every day. I am alone in my cell every day from around 4pm to 8am. Most of the time I sleep.

7

> The past two days, I have been alone in my cell all day. I was not allowed to come out except to shower, and I did not get to talk to anyone.
>
> The food here is terrible. It is much worse than other facilities in OJJ where I've been.
>
> I have an Individualized Education Program (IEP), and one of the accommodations I'm supposed to get is having materials read aloud to me. That doesn't happen here.
>
> At Swanson, I got group therapy for an hour every day. The group therapy was helpful to me. I do not get group therapy here at Angola.
>
> We don't always have hot water in the bathroom to take a shower.
>
> When I was at Swanson, I got to use the phone to call home. That was my favorite thing to do. I do not get to use the phone to call home when I want. I just get a video visit twice a week.
>
> This is the worst OJJ facility I have been in
> I have never been allowed to go outside for recreation on the weekends.

*Exhibit 2*, ¶¶ 6, 9-17 (Declaration of Frank F.).

Although exhaustion of administrative remedies under the Prison Litigation Reform Act is not a pleading requirement, but rather failure to exhaust may be an affirmative defense, movants inform the Court that each of them, while in OJJ's custody at Angola, filed an emergency grievance concerning these matters pursuant to OJJ's Administrative Remedy Procedure ("ARP") requirements. All three new Plaintiffs received denials of their emergency grievances from OJJ. The agency denied Edward's ARP on the grounds that he is "not subject to any immediate risk of harm" despite the serious physical and psychological harm he has experienced and continues to experience as a result of Defendants' policies and practices surrounding placement at Angola.

The agency denied Daniel's ARP because he allegedly failed to follow procedure by signing the ARP. Daniel and his guardian had given third party authorization to file on his behalf and he was unable to sign because OJJ cut short his visit with legal counsel. As a

protective measure, Daniel re-filed the ARP with his signature. The agency denied Daniel's ARP on the ground that he is "not subject to any immediate risk of harm" despite the serious psychological harm he has experienced due to Defendants' policies and practices surrounding placement at Angola. Daniel's counsel appealed his ARP denial to OJJ's Deputy Secretary and requested a response by March 30, 2023. Defendants once again failed to provide a timely response.

OJJ's failure to properly treat these grievances as emergency grievances that require an expedited timeline has made the grievance process unavailable to these youth. As a result, they have exhausted all available administrative remedies and may proceed as Plaintiffs. Discussing and following the ruling in *J.H. v. Edwards*, No. 20-293-JWD-EWD, 2020 WL 3448087 (M.D. La. June 24, 2020), this Court has ruled that "the denial of Alex A.'s emergency ARP constituted a final decision upon which Plaintiff could rely in filing suit." *Doc. 79*, at p. 7.[5] Similarly, the proposed new Plaintiffs have exhausted sufficiently to serve as Plaintiffs.

## ARGUMENT

### I. Plaintiffs Should Be Granted Leave to Amend.

The Court should allow amendment. Fed. R. Civ. P. 15(a)(2) provides:

[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(2) "evinces a bias in favor of granting leave to amend." *See Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999)

---

[5] This Court continued: "Alternatively, the Court finds that, following a denial of the emergency ARP, the remaining procedure "operates as a simple dead end" because the second step procedure, urged by the Defendants, 'lacks authority to provide any relief'. Furthermore, if applied as advocated by the Defendants the 'administrative scheme [is] so opaque that ... no reasonable prisoner can use them.'" *Doc. 79*, p. 7 (citing *Valentine v. Collier*, 956 F.3d 797, 804 (5th Cir. 2020)).

(quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). As Magistrate Judge Bourgeois points out in the order denying Plaintiffs Motion for Leave to Intervene, "[a]lthough leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Doc. 144*, p. 8, n.4 (citing *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quotations omitted). A court considers the following factors as a substantial reason for denial: (1) undue delay, bad faith, or dilatory motive on the part of the movant; (2) repeated failure to cure deficiencies by amendments previously allowed; (3) undue prejudice to the opposing party by virtue of allowance of the amendment; and (4) futility of the amendment. *Seth B. ex rel. Donald B. v. Orleans Parish School Bd.*, 2015 WL 1726407, at *2 (E.D.La., 2015) (citing *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir.1981).

Proposed class members have not acted with undue delay, bad faith or dilatory motive but rather have made all efforts to move this action forward. Plaintiffs' counsel has promptly requested and complied with Defendants' policies to communicate with members of the proposed class who have requested legal visits. Any delays can be attributed to Defendants as described in Plaintiffs' Memorandum in Support of Motion for Access to Counsel, and they incorporate that information here. *Doc. 113-1*, pp. 4-7.

This motion is not a result of previous repeated failures to cure deficiencies but rather a second amendment with largely the same claims as the current amended complaint, adding three named Plaintiffs with more current factual information about the Angola facility, including from a Plaintiff currently in Angola. *See, Exhibit 1, p. 1* (declaration of Daniel D. noting his current placement in Angola). Common questions of both law and fact exist between current Plaintiffs and proposed Plaintiffs. Proposed Plaintiffs are being added following the Court's recent order denying Daniel and Edward's Motion for Leave to Intervene without prejudice and pointing to the preference that proposed Plaintiffs "seek to be named as additional plaintiffs and class representatives by

10

amendment." *Doc. 144*, p. 12.

Defendants will not suffer undue prejudice because the proposed amendment largely alleges similar claims and incorporates facts from previous filings, thus Defendants have fair notice of the claims set forth in the Second Amended Complaint. *See Doc. 113-1, Doc. 115, Doc. 171-1*, and *Doc. 120-3*. Furthermore, this amendment is not futile because Plaintiffs and the proposed class and subclass are still subject to Defendants' policies, actions, and failures to act that result in unconstitutionally deficient conditions at the Angola sit, creating an unreasonable risk of serious physical and psychological harm to youth moved there or subject to being sent there, and seek the same declaratory and injunctive relief that current Plaintiffs seek. Finally, Plaintiff Daniel *is currently in Angola*, undercutting Defendants claim that Plaintiffs lack standing because they are not currently in Angola. *Doc. 102*.

Because Rule 15(a)(2) favors granting leave to amend and there is not substantial reason for denial, Plaintiffs motion for leave to amend should be granted.

## II. Plaintiffs Have Good Cause to Amend After the Scheduling Order's Deadline.

Rule 16(b)(4) governs the amendment of pleading "after a scheduling order's deadline to amend has expired." *See Filgueria v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (citing to *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008). Movants must "show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Id*. Once a party establishes a good cause for missing the deadline, then the liberal standard of Rule 15(a) applies. *Id*. Courts use four factors to determine good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Filgueria*, 734 F.3d at 422 (citation omitted); *see Million v. Exxon Mobil Corporation*, 837 Fed.Appx.263, 265 (5th Cir. 2020) (holding that movants failed to show good

11

cause through lack of due diligence by waiting for two months once they had information to seek leave to amend and gave implausible and uncorroborated explanations).  Here, Plaintiffs (1) proffer strong reasons for failure to move for leave to amend within the scheduling order's deadline, (2) the constitutional rights of youth continue to be violated by Defendants' policies and practices and housing youth at the Angola site or any other adult prison must be enjoined, (3) there is no prejudice to Defendants by granting leave to amend because they are on notice of the claims from prior pleadings and discovery is stayed in any event, (4) the final factor is irrelevant as no continuance is available.

Here, all four factors weigh in favor of there being good cause to grant move for leave to amend.  Plaintiffs were unable to amend sooner because Defendants continuously impede proposed class members' access to counsel.  Plaintiffs followed Defendants' policies to request legal visits between youth and their counsel at the OJJ Angola site but this process was unnecessarily prolonged by Defendants.  *See Doc.113-1*, p. 5-7.  Some of these requested legal visits were related to the youths' pending delinquency proceedings (not solely this litigation) and Defendants still violated proposed Plaintiffs' right of access to counsel.  *Id.*

Similarly, Plaintiffs' counsel requested named and proposed class members' full OJJ and education records pursuant to the Defendants' procedures and Defendants have failed to provide complete sets of records.  *Doc 137-1*.  These youth's institutional records are not part of discovery but rather a legal right under Louisiana law, federal law, and OJJ policy, and are important to presenting an accurate picture of the youths' situations. *Id.; see also* La. Ch. C. Art. 412 I; La. Ch. C. Art. 411-217; La. Rev. Stat. § 17:406.9(B)(2); 34 C.F.R. § 99.10; and 34 C.F.R. § 300.613.  This missing information not only deprives youth of their records but impairs Plaintiffs' counsel's ability to effectively represent the youth.  Defendants' stonewalling tactics and efforts to avoid having youth currently incarcerated at the Angola site included in this lawsuit include transferring youth

out of the Angola site once the youth has met with undersigned counsel has happened repeatedly. *See Doc 133*, pp. 1-2, fn. 3 and 6 (Daniel D. and Edward E. moved from Angola within days of undersigned meeting with their clients and filing grievances). The timing of the transfers can be read to imply a causal relationship between the two events.

Defendants' motion to stay discovery until the Court ruled on their latest motion to dismiss (and the subsequent stay) contributed to Plaintiffs' inability to move earlier to amend and add Plaintiffs. Plaintiffs' counsel acted immediately as soon as they overcame Defendants repeated efforts to delay communication between named Plaintiffs and proposed class members and undersigned counsel. Plaintiffs moved for leave to intervene on behalf of Daniel D. and Edward E. as soon as possible. On March 29, 2023, the court denied the motion without prejudice. Less than a week later, Plaintiffs file this motion seeking leave to amend.

Plaintiffs have good cause to seek to amend past the scheduling deadline because they have acted with due diligence, any delays are largely attributed to Defendants' actions, and there is no prejudice to Defendants.

## **CONCLUSION**

Plaintiffs' motion for leave to amend should be granted, and the Second Amended Class Action Complaint allowed.

Respectfully submitted, this 6th day of April, 2023.

| | |
|---|---|
| /s/: *David J. Utter* | /s/: *Christopher J. Murell* |
| DAVID J. UTTER ** | CHRISTOPHER J. MURELL |
| Louisiana Bar Number: 23236 | Louisiana Bar Number: 32075 |
| WILLIAM R. CLAIBORNE | MURELL LAW FIRM |
| Georgia Bar Number: 126363 | 2831 St. Claude Avenue |
| THE CLAIBORNE FIRM, P.C. | New Orleans, Louisiana 70117 |
| 410 East Bay Street | (504) 717-1297 Telephone |
| Savannah, Georgia 31401 | (504) 233-6691 Facsimile |
| (912) 236-9559 Telephone | chris@murrell.law |
| (912) 236-1884 Facsimile | |
| david@claibornefirm.com | |
| will@claibornefirm.com | |

/s/: *Hector Linares*
HECTOR LINARES
Louisiana Bar Number: 28857
SARA GODCHAUX
Louisiana Bar Number: 34561
STUART H. SMITH LAW CLINIC
LOYOLA UNIVERSITY NEW ORLEANS COLLEGE OF LAW
7214 St. Charles Avenue, Box 902
New Orleans, Louisiana 70118
(504) 861-5560 Telephone
(504) 861-5440 Facsimile
halinare@loyno.edu
shgodcha@loyno.edu


/s/: *David Shanies*
DAVID SHANIES
New York Bar Number: 4471140
SHANIES LAW OFFICE
110 West 40th Street, 10th Fl.
New York, New York 10018
Tel. (212) 951-1710
Fax (212) 951-1350
Cell (646) 515-2151
david@shanieslaw.com

*/s/ Nancy Rosenbloom*
NANCY ROSENBLOOM
New York Bar Number: 2168425
ACLU NATIONAL PRISON PROJECT
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2500
Facsimile: (212) 549-2652
nrosenbloom@aclu.org

*/s/ Tammie Gregg*
TAMMIE GREGG*
MN Bar Number: 026240
ACLU NATIONAL PRISON PROJECT
915 15th St. N.W., 7th Floor
Washington D.C. 20005
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
tgregg@aclu.org


*/s/ Susan M. Meyers*
SUSAN M. MEYERS
Louisiana Bar Number: 29346
LAUREN WINKLER
Louisiana Bar Number: 39062
ASHLEY DALTON
Louisiana Bar Number: 40330
SOUTHERN POVERTY LAW CENTER
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: 504-512-8649
susan.meyers@splcenter.org
lauren.winkler@splcenter.org
ashley.dalton@splcenter.org

\*\* *Lead Counsel*
*Not admitted in DC; practice limited to federal courts
**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of April, 2023, a copy of the foregoing was served upon all counsel of record by electronic transmission.

/s/ *David J. Utter*
DAVID J. UTTER