# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian Kenione Rogers, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>DANIEL D. by and through his guardian, Angela Williams, EDWARD E., by and through his guardian Jernita Williams, and FRANK F., by and through his guardian, Taquita Morgan,<br><br>Proposed Plaintiffs,<br><br>v.<br><br>GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS,[1] in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,<br><br>Defendants. | Civil Action No. 3:22-cv-573-SDD-RLB<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REVIEW THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION OF MARCH 28, 2023** |

Pursuant to 28 U.S.C § 636(b)(1), Federal Rule of Civil Procedure 72, and LR 72, Plaintiffs file these objections to the Magistrate Judge's Report and Recommendation ("R&R"),[2] which recommended denial of the relief Plaintiffs sought in their Motion for

---

[1] On November 18, 2022, Gov. Edwards announced the resignation of Dep. Sec. Sommers and the appointment of Otha "Curtis" Nelson as his replacement. https://gov.louisiana.gov/index.cfm/newsroom/detail/3892  Because Sommers was sued in his official capacity, Nelson is automatically substituted as a Defendant. Fed. R. Civ. P. 25(d). Plaintiff leaves Sommers as a Defendant until the clerk is ordered to change the caption, and also replace him as a party with Nelson in the proposed Second Amended Class Action Complaint, filed April 6, 2023. Doc. 146-4.

[2] *Doc. 143*.

1

Access to Counsel.³ The reasons provided for the denial—that Plaintiffs lack standing and access to counsel is "well beyond the scope of" claims made in Plaintiffs' First Amended Complaint⁴—are wrong as a matter of fact and law. Plaintiffs object to the R&R's findings and conclusions and seek *de novo* review.⁵

**I.    INTRODUCTION**

The question on this appeal is whether Defendant's Office of Juvenile Justice's ("OJJ") practices that control counsel's access to youth in OJJ's custody comply with the law. As this Court is aware, undersigned counsel's efforts to interview youth in OJJ custody are an essential element of the effort to properly litigate the issues in this case.⁶ Last year, the Court denied Plaintiffs' Motion to Interview Youth in Custody at BCCY without prejudice, noting in part that the issues before the Court were "not dependent on every potential transferee's specific medical, mental, and educational needs."⁷ Although denying Plaintiffs' motion, the Court noted it "has the discretion to grant broad relief that would apply to any putative class members."⁸

It is that authority upon which Plaintiffs rely. Since mid-October, 2022, OJJ has transferred youth in its custody to the Bridge City Center for Youth-West Feliciana, a

---

³ *Doc. 113*.

⁴ *Doc. 143*, pp. 4-5.

⁵ Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection was made." *Longmire v. Guste*, 921 F.2d 620, 623 (5th Cir. 1991). In addition to the arguments and authority made herein, Plaintiffs rely on the briefing on their motion. *Doc. 113, 117, and 133*.

⁶ *See, Doc. 20* (Plaintiffs' Motion to Interview Youth in Custody at BCCY).

⁷ *Doc. 24*, pp. 4-5.

⁸ *Id.*, p. 5.

2

secure care facility located on the grounds of the Louisiana State Penitentiary at Angola ("Angola").[9] Since then, undersigned counsel has diligently sought to meet with youth who have been transferred to the Angola site and obtain their records. After repeated delay and in some cases outright refusal, on March 8, 2022, Plaintiffs filed a Motion for Access to Counsel, seeking the Court's intervention in Plaintiffs' counsel's attempts to meet with four youth who at the time had been or were detained at Angola.[10]

In support of their motion, Plaintiffs alleged that the four youth in question are members of the putative class,[11] and that Defendants blocked reasonable access to incarcerated class members, including the four youth.[12] In addition, Plaintiffs noted that Defendants sought dismissal of the lawsuit claiming Plaintiffs "lack standing because none of them are in the Angola facility, and yet move youth with whom Plaintiffs' counsel visit at Angola to another secure care facility" soon after legal visits.[13] Since fully briefing the issue of access to youth in Angola, after repeated delays and no response to requests for client files, Plaintiffs were forced to file a motion for access to their clients' OJJ files.[14]

---

[9] *See, e.g., Doc. 146-4,* p. 21, ¶ 74 (Edward E., one of the first youth transferred to Angola, explaining how he was "notified" of the transfer: Woken in the morning by "nearly two dozen guards came to the dorm at Swanson-Monroe center where Edward E. was housed and made all of the youth being sent to Angola get on the ground. The guards pointed Tasers at the children and put them in handcuffs.").

[10] *Doc. 113*.

[11] The putative class is defined as all current and future persons held in OJJ's secure or other custody who have been or might be transferred to the OJJ site at Angola or another adult prison. *Doc. 96*, ¶ 91. Plaintiffs recently filed a motion for leave to file a second amended complaint, including adding as a named plaintiff Daniel D., a youth currently incarcerated at the Angola facility. *Doc. 146-4*, p. 18.

[12] *Doc. 113*.

[13] *Doc. 133*, pp. 1-2.

[14] *Doc. 137*.

Although OJJ claimed it was "working diligently" to provide Plaintiffs' records,[15] to date none have been provided.

The R&R's analysis adopts whole cloth OJJ's argument that Plaintiffs lack standing to raise claims associated with putative class members access to their counsel.[16] In addition, the magistrate judge noted that Plaintiffs cannot raise an access to counsel claim because it is "well beyond the scope" of their lawsuit.[17] Since October of last year, when the plan to incarcerate youth in their custody at Angola became a reality for the scores of youth locked up there, OJJ has limited, delayed, and in some instances blocked access to counsel for the young people in Angola. Plaintiffs urge this Court to require OJJ to comply with the law and permit putative class members reasonable and timely visitation opportunities with their lawyers.

## II.    LAW AND ARGUMENT

### A. Defendants have obstructed access of putative class members to proposed class counsel.

Defendants conflate two OJJ policies in order to justify their delays and denials of Plaintiffs' counsel's access to putative class members in this case. Defendants cite Youth Services Policy C.1.4, entitled *Attorney Visits*, which provides OJJ's policy regarding attorney visits and the procedures for obtaining and conducting such visits.[18] The policy recites as OJJ's policy that "youth shall be provided reasonable and confidential access to

---

[15] *Doc. 145*, p. 4.

[16] *Doc. 143*, pp. 4-8

[17] *Id.*, p. 6 (citing *Nationalist Movement v. Town of Jena*, 321 F. App'x 359 (5th Cir. 2009)).

[18] *Doc. 117-2*.

4

their attorneys."[19] Attorneys must fax or email their requests simultaneously to OJJ's General Counsel and the relevant facility director, and visits must be approved in advance.[20] The policy further provides that attorney credentials must be verified through the Louisiana State Bar Association and prescribes methods for obtaining such verification.[21]

Defendants do not dispute that Plaintiffs' counsel David Utter requested visits with four separate youths in advance via email to the appropriate parties, providing his Louisiana bar number with the requests.[22] Under the plain terms of the applicable *Attorney Visits* policy, Mr. Utter's request met all requirements and should have been approved. Instead, Defendants invoke a separate policy, Youth Services Policy B.3.2, entitled *Access to and Release of Active and Inactive Youth Records*, to argue that Mr. Utter did not follow appropriate procedures in making his request to visit clients.[23]

That policy, as its title indicates, has the purpose of "establish[ing] the procedures for access to and release of active and inactive youth records and information requests."[24] Those procedures do, in fact, provide various methods of establishing the existence of an attorney-client relationship, such that OJJ personnel may proceed with releasing records.[25] But Mr. Utter was not seeking records then; he was seeking face-to-face meetings,

---

[19] *Id.*, pp. 1-2.

[20] *Id.*, p. 2.

[21] *Id.*

[22] *Doc. 113-1*, p. 6.

[23] *Doc. 117-1*, p. 3.

[24] *Doc. 117-3*, p. 1.

[25] *Id.*

governed by another policy entirely that makes no mention of proving the attorney-client relationship.[26] On the face of the relevant policy, published, as Defendants say, on their website, Mr. Utter's requests for attorney-client meetings met the requirements.[27]

Defendants' imposition of additional, unstated requirements burdens the ability of Plaintiffs and those similarly situated to access counsel, and it presents undue delays in Plaintiffs' counsel's ability to meet with named Plaintiffs and putative class members alike, whose locations are transient within the OJJ facility system. It directly impinges on the ability of Plaintiffs and putative class members to prosecute this action.

### B. Defendants' actions infringe on detained youths' right of access to the courts.

Plaintiffs seek to exercise their "constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). Courts have routinely held that this right encompasses the right of incarcerated persons, including juveniles, to have access to attorneys, and that such access may not be unduly restricted. *See, e.g., McCray v. Sullivan*, 509 F.2d 1332, 1137 (5th Cir. 1975) (even where individuals are held in punitive isolation, restriction on access to attorneys must be based on "compelling needs of prison administration and discipline"); *Cruz v. Beto*, 603 F.2d 1178, 1185 (5th Cir. 1979) (interaction with an attorney could not form the basis for disciplinary measures); *Adams v. Carlson*, 488 F.2d 619, 630-31 (7th Cir. 1973) (incarcerated people must have a reasonable opportunity to receive assistance from attorneys); *John L. v. Adams*, 969 F.2d 228, 232-33 (6th Cir. 1992) (incarcerated juveniles are entitled to access to the courts, which encompasses access to an attorney). A facility may place reasonable regulations on the time, place, and manner in

---

[26] *Doc. 117-2.*

[27] *Doc. 117-1, p. ¶ 9.*

which incarcerated persons may communicate with their lawyers, but the "purpose of the regulation must not be interference with an inmate's communication with the courts and attorneys." *McCray*, 509 F.2d at 1337.

Here, Defendants' conflation of two unrelated policies serves to unreasonably restrict the access of detained youths to their attorneys and therefore to participate in this litigation. Plaintiffs properly seek recognition on behalf of themselves and putative class members to enforce their right to meet with counsel.

### C. Plaintiffs' request for recognition of their right to meet with counsel is properly brought in this proceeding.

Rule 23(d) gives this Court the authority to take various actions in furtherance of conducting a class action. Fed. R. Civ. Proc. 23(d). Rule 23(d)(1) contemplates the issuance of orders to determine the course of proceedings, Fed. R. Civ. Proc. 23(d)(1)(A); to require notice, Fed. R. Civ. Proc. 23(d)(1)((B); to impose conditions on representative parties, Fed. R. Civ. Proc. 23(d)(1)(C); and to "deal with other similar procedural matters." Fed. R. Civ. Proc. 23(d)(1)(E).

Magistrate Judge Bourgeois found that Plaintiffs do not have standing to ask the Court to exercise its authority under 23(d), because in so doing they seek relief on behalf of other potential plaintiffs in this action. But Plaintiffs seek this relief in their own right. In order to establish standing, Plaintiffs must establish (1) an injury in fact that is "concrete and particularized . . . and actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and conduct complained of; and (3) likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (internal citations omitted). Magistrate Judge Bourgeois found that Plaintiffs failed to meet the requirements of the first prong, because they lacked "any injury

7

in fact."[28] That finding, however, completely ignores this Court's finding, after very limited discovery and a three-day trial, that "[p]lacing any child in a maximum-security facility designed for adults is unreasonably psychologically harmful to children."[29] Plaintiffs, including the four putative class members who filed the motion at issue in this appeal, have standing to raise this claim.

Though the requested class certification has not yet been granted in this litigation, Plaintiffs, as putative class representatives and in furtherance of their own claims, have an interest in ensuring that proposed class counsel meet with other similarly situated individuals. Other youth held in OJJ secure care are detained in the same network of facilities, are subject to the same policies, and have experienced the same violations of rights as the named Plaintiffs who brought this action. Plaintiffs brought this litigation as a class action because the vindication of their rights is bound up with those of everyone else in OJJ secure care.

Any supposed right to counsel is meaningless where Defendants can obstruct communications between counsel and other individuals who seek involvement in the case. Plaintiffs have an interest in ensuring that the right to counsel may be exercised by any other youth who wish to communicate with Plaintiffs' counsel. The infringement of that right is, indeed, a particularized harm that may be redressed by the Court's action in this matter.

---

[28] *Doc. 143*, p. 9.

[29] *Doc. 79*, p. 37, ¶ 159.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully object to the Magistrate Judge's Report and Recommendation and ask the Court to enter an order granting Plaintiffs' Motion for Access to Counsel.

Respectfully submitted, this 12th day of April, 2023.

/s/: *David J. Utter*
DAVID J. UTTER **
Louisiana Bar Number: 23236
WILLIAM R. CLAIBORNE
Georgia Bar Number: 126363
THE CLAIBORNE FIRM, P.C.
410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
david@clairbornefirm.com
will@clairbornefirm.com

/s/: *Christopher J. Murell*
CHRISTOPHER J. MURELL
Louisiana Bar Number: 32075
MURELL LAW FIRM
2831 St. Claude Avenue
New Orleans, Louisiana 70117
(504) 717-1297 Telephone
(504) 233-6691 Facsimile
chris@murrell.law

/s/: *Hector Linares*
HECTOR LINARES
Louisiana Bar Number: 28857
SARA GODCHAUX
Louisiana Bar Number: 34561
STUART H. SMITH LAW CLINIC
LOYOLA UNIVERSITY NEW ORLEANS COLLEGE OF LAW
7214 St. Charles Avenue, Box 902
New Orleans, Louisiana 70118
(504) 861-5560 Telephone
(504) 861-5440 Facsimile
halinare@loyno.edu
shgodcha@loyno.edu

/s/ *Nancy Rosenbloom*
NANCY ROSENBLOOM
New York Bar Number: 2168425
ACLU NATIONAL PRISON PROJECT
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2500
Facsimile: (212) 549-2652
nrosenbloom@aclu.org

/s/ *Tammie Gregg*
TAMMIE GREGG*
MN Bar Number: 026240
ACLU NATIONAL PRISON PROJECT
915 15th St. N.W., 7th Floor
Washington D.C. 20005
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
tgregg@aclu.org

/s/: *David Shanies*
DAVID SHANIES
New York Bar Number: 4471140
SHANIES LAW OFFICE
110 West 40th Street, 10th Fl.
New York, New York 10018
Tel. (212) 951-1710

/s/ *Susan M. Meyers*

| | |
|---|---|
| Fax (212) 951-1350<br>Cell (646) 515-2151<br>david@shanieslaw.com | SUSAN M. MEYERS<br>Louisiana Bar Number: 29346<br>LAUREN WINKLER<br>Louisiana Bar Number: 39062<br>ASHLEY DALTON<br>Louisiana Bar Number: 40330<br>SOUTHERN POVERTY LAW CENTER<br>201 St. Charles Avenue, Suite 2000<br>New Orleans, LA 70170<br>Telephone: 504-512-8649<br>susan.meyers@splcenter.org<br>lauren.winkler@splcenter.org<br>ashley.dalton@splcenter.org<br><br>\*\* *Lead Counsel*<br>\*Not admitted in DC; practice limited to federal courts<br>**ATTORNEYS FOR PLAINTIFFS** |

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of April, 2023, a copy of the foregoing was served upon all counsel of record by electronic transmission.

/s/ *David J. Utter*
DAVID J. UTTER