## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. A. No. 3:22-CV-00573-SDD-RLB |
| GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections, | ) ) ) ) ) ) ) ) ) ) | **DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO AMEND COMPLAINT** |
| Defendants. | ) | |

Defendants respectfully submit this Response in Opposition to Plaintiffs' *Motion for Leave to Amend Complaint* (Doc. 146; the "Motion"). The Court should deny Plaintiffs' Motion.

## I.    INTRODUCTION

This Motion is yet another attempt to assert standing in order to avoid dismissal or to create a new basis for class certification. On March 28, 2023, this Court denied Plaintiffs' Motion for Leave to Intervene and to Join in Pending Motions (Doc. 120). Plaintiffs now seek an end run around this Court's previous ruling. This Motion is not only improper but also an abuse of procedure.

As an initial matter, Daniel D. ("D.D."), Edward E. ("E.E."), and Frank F. ("F.F.") failed to exhaust their administrative remedies under the Louisiana Office of Juvenile Justice ("OJJ")

68680028.v1

Administrative Remedy Procedure. Pursuant to the Prison Litigation Reform Act ("PLRA"), D.D., E.E., and F.F. have not properly exhausted, so they cannot be added as party plaintiffs in this lawsuit. The Court should end its analysis there.

Plaintiffs' Motion attempts to undermine this Court's previous ruling on the Motion for Leave to Intervene and to Join in Pending Motions. If Plaintiffs are found to lack standing to assert claims against Defendants, they also lack standing to amend the complaint by substituting new plaintiffs. This Motion essentially supplements Plaintiffs' arguments on critical motions related to dismissal and class certification, which is improper. Further, the Motion is untimely, and Plaintiffs fail to establish good cause for amendment of the pleadings after the deadline in the Scheduling Order has expired.

## II.   LAW AND ARGUMENT

### A. The Motion should be denied because the proposed plaintiffs failed to exhaust administrative remedies.

*1.  Prison Litigation Reform Act's Exhaustion Requirement.*

The PLRA provides that "no action shall be brought under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[1,2] Exhaustion is only complete when a plaintiff pursues all "available" administrative remedies, and when (1) the plaintiff has received a final administrative decision at the last step of the applicable procedure; or (2) the time limits for the prison's response at the last step of every available administrative remedy

---

[1] Because the proposed plaintiffs are alleging violations of federal law in a federal district court, their complaints are subject to the procedural requirements of the PLRA. *Ferrington v. La. Dep't of Corr.*, 315 F.3d 529, 532 (5th Cir. 2002).

[2] For purposes of the PLRA exhaustion requirement, "prisoner" is broadly defined and includes "any person . . . detained in any facility who is accused of . . . or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h); *see also Molina v. N.Y.*, 697 F. Supp. 2d 276, 282 (N.D.N.Y. 2010) ("[t]his exhaustion requirement applies equally to juveniles confined in correctional facilities.") (citing 42 U.S.C. § 1997e(h)).

68680028.v1

has expired, such that "there is no next step (save filing a lawsuit) to which the prisoner can advance." *Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015); *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004). The PLRA also requires "proper" exhaustion; that is, the plaintiff must comply with "an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S.81, 90-91 (2006).

Section 1997e "requires that administrative remedies be exhausted *before* the filing of a [lawsuit.]" *Wilson*, 776 F.3d at 299 (internal quotations omitted). District courts do not have discretion to excuse a prisoner's failure to properly exhaust the grievance process before filing a complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). Whether exhaustion is achieved after the complaint is filed is irrelevant. *See id.*

The PLRA establishes a mandatory exhaustion regime, forecloses judicial discretion, and prevents a court from excusing a failure to exhaust, even to take "special circumstances" into account. *Ross v. Blake*, 578 U.S. 632, 639 (2016) ("the PLRA's text suggests no limits on an inmate's obligation to exhaust"); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). Moreover, "a prisoner must now exhaust administrative remedies even where the relief sought . . . cannot be granted by the administrative process." *Woodford*, 548 U.S. at 85. The only limit to § 1997e(a)'s mandate is that administrative remedies must be "available." *See Ross*, 578 U.S. at 642-48.

  2.  *OJJ's Administrative Remedy Procedure.*

OJJ maintains an Administrative Remedy Procedure ("ARP") to efficiently process internal grievances, such as those addressed in Plaintiffs' Motion, based on OJJ's expertise in

managing Youth detention facilities. *See* Affidavit of Revettea Woods ("Woods Aff."), attached as Exhibit A, ¶ 5; *see also* Exhibit A-1. OJJ amended its ARP in December 2022 to clarify and improve certain elements of the procedure. *See* Woods Aff. (Ex. A) at ¶ 6.

Under the ARP, a Youth must fully exhaust a two-step grievance process before seeking judicial review. *See* Exhibit A-1 at p. 9. A Youth first initiates the process (Step 1) by filing an ARP form, deemed filed upon "receipt" by an ARP Coordinator. *Id.* at pp. 6-7. The ARP Coordinator screens the form and sends it to a facility director, who must respond within 30 days. *Id.* at p. 7. If the Youth is dissatisfied with the director's response, he has 15 days to seek review (Step 2) from the Deputy Secretary of Youth Services. *Id.* at p. 8. The Deputy Secretary must render a final decision within 21 days of receiving the request for review, and the entire process must be completed within 51 days of the original filing of the Youth's grievance form. *Id.* at p. 9. If the Youth is dissatisfied with the response, he may then seek judicial review. *Id.*

If the Youth's ARP grievance includes statements that indicate the Youth believes that he is at immediate risk of harm and that any delay in responding to the grievance would subject him to substantial risk of immediate personal injury or cause other serious or irreparable harm, the ARP coordinator will immediately forward the ARP to the Facility Director, Statewide Youth Facilities Director, and the Deputy Secretary of Youth Services. *Id.* at pp. 9-10. OJJ will provide an initial response within 48 hours. *Id.* If reviewers determine that the grievance is indeed emergent, OJJ has up to five calendar days to provide a final decision as to the relief requested in the ARP. *Id*. If reviewers determine that the Youth's ARP grievance is not emergent (that is, the Youth is not in substantial risk of imminent personal injury or at risk of suffering serious or irreparable harm), the ARP will be designated as non-emergent and automatically processed as a standard ARP, under

68680028.v1

which OJJ has up to thirty calendar days to provide a final decision as to the relief requested. *Id.* at p. 10.

Plaintiffs now claim in the Motion that D.D., E.E., and F.F. have exhausted administrative remedies. *See* Doc. 146 at 8-9. However, under OJJ's ARP policy, the proposed plaintiffs failed to exhaust administrative remedies.

### 3.  *D.D. failed to exhaust administrative remedies.*

D.D. is a youth in OJJ custody. Woods Aff. (Ex. A) at ¶ 7. On October 18, 2022, OJJ transferred D.D. to the Bridge City Center for Youth at West Feliciana ("BCCY-WF") so that he could complete the intensive therapeutic program called the Transitional Treatment Unit or "TTU," which is available at BCCY-WF. *Id.* On December 16, 2022, D.D. completed the TTU program and was transferred to a different OJJ facility, Acadiana Center for Youth ("Acadiana"). *Id.*

On December 14, 2022, Plaintiffs' counsel filed an Emergency ARP on D.D.'s behalf, grieving certain conditions of confinement at BCCY-WF. Woods Aff. (Ex. A) at ¶ 8. As noted above, D.D. completed the TTU and was transferred to Acadiana before OJJ's response to this ARP was due on December 16, 2022. On December 16, OJJ issued its response, stating that (1) D.D. was not subject to imminent risk of harm or personal injury, (2) D.D. was no longer housed at BCCY-WF, and (3) the grievance "does not qualify as an Emergency ARP." Based on these circumstances, OJJ processed the grievance as a standard ARP and denied the request for relief. *Id.*; *see also* Exhibit A-2.

Although Plaintiffs claim that counsel appealed the ARP denial to OJJ's Deputy Secretary and requested a response by March 30, 2023 (Doc. 146 at 9), OJJ has no record of such an appeal or request made on behalf of D.D. Woods Aff. (Ex. A) at ¶ 9. Notably, Plaintiffs provided no

evidence of the alleged appeal in their Motion. *See generally* Motion (Doc. 146). To date, D.D. has not completed Step 2 of the ARP procedure, which is to seek review from the Deputy Secretary. *Id.* Based on these circumstances, D.D. has not exhausted his administrative remedies as to his conditions of confinement claims at BCCY-WF. *Id.*

4. *E.E. failed to exhaust administrative remedies.*

E.E. is also a youth in OJJ custody. Woods Aff. (Ex. A) at ¶ 10. On October 19, 2022, OJJ transferred E.E. to BCCY-WF so that he could complete the TTU programming available at BCCY-WF. *Id.* Contrary to Plaintiffs' claim that E.E. was transferred after receiving a visit from Plaintiffs' counsel on December 14, 2022 (Doc. 146 at 5), E.E. completed the TTU program and was transferred to Swanson Center for Youth ("Swanson") on January 2, 2023. *Id.*[3]

On December 29, 2022, Plaintiffs' counsel filed an Emergency ARP on behalf of E.E. Woods Aff. (Ex. A) at ¶ 11. However, in violation of the OJJ ARP policy, Plaintiffs' counsel failed to get written consent to file the ARP on E.E.'s behalf. *Id.* Thus, OJJ denied the ARP. *Id.*; *see also* Exhibit A-3. Plaintiffs' counsel then obtained the required written consent and, on January 4, 2023, resubmitted the Emergency ARP. *Id.* at ¶ 12. However, by the time of resubmission, E.E. had already completed the TTU program and had been transferred to Swanson. OJJ timely issued a response to the ARP on January 6, 2023, stating that (1) E.E. was not subject to imminent risk of harm or personal injury, (2) E.E. was no longer housed at BCCY-WF, and (3) the grievance "does not qualify as an Emergency ARP." Based on these circumstances, OJJ processed the grievance as a standard ARP and denied the request for relief. *Id.; see also* Exhibit A-4.

To date, E.E. has not completed Step 2 of the ARP procedure, which is to seek review from the Deputy Secretary. Woods Aff. (Ex. A) at ¶ 13. Based on these circumstances, E.E. has not

---

[3] On March 13, 2023, E.E. was again transferred to BCCY-WF to complete the TTU program. Woods Aff. (Ex. A) at ¶ 10. E.E. did not file an ARP grievance—emergent or non-emergent—following the transfer. *Id.* at ¶ 13.

exhausted his administrative remedies as to his conditions of confinement claims at BCCY-WF. *Id.*

5. *F.F. failed to exhaust administrative remedies before Plaintiffs filed the Motion.*

F.F. is another youth in OJJ custody. Woods Aff. (Ex. A) at ¶ 14. On March 7, 2023, OJJ transferred F.F. to BCCY-WF so that he could complete the TTU programming available at BCCY-WF. *Id.* On March 28, 2023, F.F. completed the TTU program and was transferred to Swanson. *Id.*

On March 22, 2023, Plaintiffs' counsel filed an Emergency ARP on behalf of F.F. Woods Aff. (Ex. A) at ¶ 15. OJJ timely issued a response to the ARP on March 24, 2023, stating that (1) F.F. was not subject to imminent risk of harm or personal injury, and (2) the grievance "does not qualify as an Emergency ARP." Based on these circumstances, OJJ processed the grievance as a standard ARP and denied the request for relief. *Id.; see also* Exhibits A-5, A-6.

On March 28, 2023, Plaintiffs' counsel appealed the denial of the March 22 Emergency ARP filed on behalf of F.F. Woods Aff. (Ex. A) at ¶ 16. OJJ timely issued a response to the appeal on April 18, 2023, denying the appeal. *Id.; see also* Exhibit A-7. F.F. did not exhaust his administrative remedies as to his conditions of confinement claims at BCCY-WF prior to the named Plaintiffs filing this Motion[4], which seeks to join F.F. as a plaintiff in this lawsuit.

6. *Because D.D. and E.E. failed to exhaust their administrative remedies altogether and F.F. failed to exhaust his administrative remedies prior to named Plaintiffs filing the Motion, they cannot be added as plaintiffs in this lawsuit.*

Plaintiffs moved to certify this lawsuit as a class action; however, the Court has not yet certified it as such. In putative class action cases where plaintiffs must exhaust administrative remedies prior to filing suit (as here), if the court has not yet certified the class, all plaintiffs must

---

[4] Plaintiffs filed the Motion on April 6, 2023 (Doc. 146), nearly two weeks before F.F.'s appeal was denied on April 18, 2023 (Woods Aff. (Ex. A) at ¶ 16).

68680028.v1

fully and properly exhaust administrative remedies prior to filing suit. *Eastland v. Tenn. Valley Auth.*, 553 F.2d 364, 373 n.21 (5th Cir. 1977); *Swain v. Hoffman*, 547 F.2d 921 (5th Cir. 1977). District courts do not have discretion to excuse a failure to properly exhaust the grievance process *before* filing a complaint, and the achievement of exhaustion after filing a complaint is not relevant. *See Gonzalez*, 702 F.3d at 788 (emphasis added).

Because D.D. and E.E. failed to exhaust administrative remedies, they cannot be added as plaintiffs in this lawsuit. Because F.F. failed to exhaust administrative remedies before the named Plaintiffs sought leave to join him, he cannot be added as a plaintiff in this lawsuit. For these reasons alone, the Court should deny Plaintiffs' Motion for Leave to Amend Complaint.

## B. The Motion should be denied because it is improper and prejudicial.

*1. Plaintiffs' Motion is an attempt to undermine this Court's previous ruling on the Motion for Leave to Intervene and to Join in Pending Motions.*

This Motion is yet another attempt to concoct standing in an effort to avoid dismissal or to create a new basis for class certification. Plaintiffs cannot cure their lack of standing by amending the pleadings to join additional party plaintiffs.

On October 25, 2022, Plaintiffs filed a First Amended Class Action Complaint (Doc. 96), then on October 31, 2022, Plaintiffs filed a Motion for Class Certification (Doc. 99). On November 21, 2022, Defendants filed a Motion to Dismiss for Lack of Standing (Doc. 102; the "Motion to Dismiss") as to Plaintiffs Alex A., Brian B., and Charles C. Both motions have been fully briefed by the parties. Defendants also filed a Motion to Stay Discovery Pending Resolution of Motion to Dismiss for Lack of Standing (Doc. 103), which was granted on January 4, 2023 (Doc. 118).

On January 5, 2023, D.D. and E.E. filed a Motion for Leave to Intervene and to Join in Pending Motions (Doc. 120; the "Motion to Intervene"). Just like the instant Motion, the Motion to Intervene sought to add D.D. and E.E. as party plaintiffs and class representatives. On March

8

28, 2023, this Court denied the Motion to Intervene "given Defendants' pending Motion to Dismiss, which raises the 'threshold' issue of Article III standing." (Doc. 144 at 9). The denial was "without prejudice to refile <u>after</u> the resolution of the issue of [the] Article III standing [Motion to Dismiss] based on the pleadings, and parties, currently in this action." (Doc. 144 at 10) (emphasis added).

Now, the proposed Second Amended Class Action Complaint seeks to add three named plaintiffs. (Doc. 146 at 3). The claims of the proposed plaintiffs are virtually the same as those of the current named Plaintiffs. Defendants' Motion to Dismiss focuses on the argument that the named Plaintiffs lack standing to bring this action because they have never lived at BCCY-WF, the juvenile detention facility that is subject of this case. Plaintiffs seek to add D.D., E.E., and F.F. in an effort to cure their standing-problem and avoid dismissal.

"[W]here a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." *Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981). Just as in the Motion to Intervene, Plaintiffs "are seeking to cure any jurisdictional defects in the Amended Complaint based on lack of Article III standing by [adding] plaintiffs in this action despite the expiration of the deadline to add new parties in this action." (Doc. 144 at 10). Plaintiffs cannot amend their complaint if they did not have standing to assert it in the first place.

Once again, it is clear that the purpose of this amendment is an attempt to supplement Plaintiffs' arguments on previously-filed, dispositive pleadings. *See* Motion (Doc. 146 at 11) ("Finally, Plaintiff Daniel *is currently in Angola*, undercutting Defendants claim that Plaintiffs lack standing because they are not currently in Angola."). Briefing on the Motion for Class

68680028.v1

Certification and Motion to Dismiss is closed, and amendment to the First Amended Class Action Complaint at this juncture denies Defendants the benefit of a full and fair opportunity to understand and respond to the claims in the proper context. This abuse of procedure unfairly prejudices Defendants and is grounds for denial of the Motion.

2. *Plaintiffs' request to amend the Amended Class Action Complaint to add D.D., E.E., and F.F. as plaintiffs is untimely.*

This Court issued a Scheduling Order which established deadlines in accordance with Federal Rule of Civil Procedure 16(b). The deadline to join other parties and to amend the pleadings was December 2, 2022. (Doc. 97 at 1). Plaintiffs now seek leave to amend the pleadings to add D.D., E.E., and F.F. as party plaintiffs and class representatives. Their request is untimely and lacks good cause.

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleading with the court's leave. However, once a scheduling order is in place, Federal Rule of Civil Procedure 16 "governs amendments of pleadings after a scheduling order deadline has expired." *S&W Enters., L.L.C. v. So. Trust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003). The party seeking amendment must demonstrate good cause to modify the scheduling order before the court may consider the more liberal standard of Rule 15(a)(2) in deciding whether to grant or deny leave. *Id*.

To determine whether there is good cause to grant an untimely motion to amend a pleading, the Fifth Circuit adopted a four-part test: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *Id*.

Plaintiffs' explanation for their failure to timely move for leave to amend is not an explanation but unsubstantiated allegations that Defendants impeded access to counsel and records. (Doc. 146 at 12). In fact, this "explanation" is at odds with Plaintiffs' own timeline of

events provided in previous motions. Plaintiffs' counsel requested visits with three Youth at BCCY-WF to take place on December 5, 2022. *See* Motion for Access to Counsel (Doc. 113-1) at 5. Plaintiffs' counsel requested records for E.E. on November 29, 2022 and for D.D. on December 8, 2022. *See* Motion for Access to OJJ Client Records (Doc. 137-1) at 5. The deadline to join other parties and to amend the pleadings was December 2, 2022. (Doc. 97 at 1). Clearly, Defendants' actions had nothing to do with Plaintiffs' failure to comply with the December 2, 2022 deadline.

Additionally, the Magistrate Judge in this matter already considered Plaintiffs' allegations regarding access to counsel and recommended that the Motion for Access to Counsel be denied. (Doc. 143 at 10).

Plaintiffs assert that the importance of the amendment is tied to the alleged continuing violations of the constitutional rights of Youth housed at BCCY-WF (Doc. 146 at 12) but offer nothing more. Amendment of the pleadings here would be futile. *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 423 (5th Cir. 2013). Plaintiffs seek amendment only to name additional party plaintiffs and class representatives. Plaintiffs admit that the proposed plaintiffs' claims are "virtually similar to those of the existing Plaintiffs." (Doc. 146 at 4). Thus, Plaintiffs have already alleged what they seek to include in the amendment. Plaintiffs fail to show the importance of the amendment.

Plaintiffs state that prejudice will not result from granting leave to amend because Defendants are on notice of the claims from prior pleadings. (Doc. 146 at 12). As discussed above, this amendment is an attempt to supplement Plaintiffs' arguments on previously-filed pleadings. The proposed amendment seeks to create standing where none has existed in an effort to avoid dismissal or to create a new basis for class certification. The Motion to Dismiss and Motion for Class Certification were fully briefed by the parties. Amendment to the pleadings on these grounds

68680028.v1

denies Defendants the benefit of a full and fair opportunity to understand and respond to the claims in the proper context. Allowing the amendment will unfairly prejudice Defendants.

Finally, Plaintiffs do not address the fourth factor. (Doc. 146 at 12). A continuance is not appropriate in this matter. If Plaintiffs are found to lack standing to assert claims against Defendants, they also lack standing to amend the complaint by substituting new plaintiffs and a new class. *Summit*, 639 F.2d at 1282. A continuance will not cure the jurisdictional defects in Plaintiffs' First Amended Class Action Complaint and likewise will not cure the prejudice to Defendants.

Plaintiffs' Motion was not timely filed pursuant to the Scheduling Order issued by this Court, and Plaintiffs fail to establish good cause under Federal Rule of Civil Procedure 16(b) to modify the deadline to join other parties and amend the pleadings.

> 3. *Plaintiffs improperly seek to appoint D.D., E.E., and F.F. as Rule 23 class representatives through this Motion.*

Plaintiffs' Motion seeks leave to amend the First Amended Class Action Complaint and to appoint the proposed plaintiffs as class representatives. *See* Motion (Doc. 146 at 2) (noting Plaintiffs move under Rule 15(a)(2) to add D.D., E.E., and F.F. "as party Plaintiffs and class representatives"). This is procedurally improper.

Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings, while Federal Rule of Civil Procedure 23 governs certification of class representatives. The two rules have completely different legal standards and must be separately briefed and separately decided. If Plaintiffs are allowed to amend the pleadings to add D.D., E.E., and F.F. as party plaintiffs, then (and only then) may D.D., E.E., and F.F. seek leave to join the class certification motion and to be appointed as class representatives under Rule 23. Defendants must have the opportunity to

68680028.v1

consider arguments that D.D., E.E., and F.F. should be appointed as class representatives so that

Defendants can respond to same.

This Motion is not a permissible procedural vehicle to seek appointment of D.D., E.E., and

F.F. as class representatives.

**C. Plaintiffs continue to assert false, unsupported allegations that OJJ prevents Youth from visiting with their legal counsel and impedes access to records.**

Yet again, Plaintiffs elected to include in this Motion allegations that "Defendants

continuously impede proposed class members' access to counsel." (Doc. 146 at 12). This is

patently false. Defendants previously addressed these unsupported allegations in their opposition

to the Motion for Access to Counsel (Doc. 117) and their opposition to the Motion to Intervene

(Doc. 134 at 14-16). Moreover, the Magistrate Judge in this matter considered Plaintiffs'

allegations regarding access to counsel and recommended that the Motion for Access to Counsel

be denied. (Doc. 143 at 10). Plaintiffs' continued flippant and reckless allegations that OJJ has

blocked Youth from participating in authorized legal visits are untrue and should be retracted.

Similarly, Plaintiffs include in this Motion allegations that "Defendants have failed to

provide complete sets of records." (Doc. 146 at 12). Plaintiffs have already filed a Motion for

Access to OJJ Client Records (Doc. 137). Defendants have responded in opposition (Doc. 145),

explaining and providing a copy of the OJJ policies and procedures regarding records of Youth in

OJJ secure care facilities and providing context to the records requests. That motion is presently

pending before the Magistrate Judge and should be denied for all of the reasons stated in

Defendants' opposition to same.

To the extent Defendants' Response in Opposition to Plaintiffs' Motion for Access to

Counsel (Doc. 117) and Defendants' Response in Opposition to Motion for Access to OJJ Client

68680028.v1

Records (Doc. 145) are applicable here to address Plaintiffs' allegations, Defendants adopt and incorporate those Responses here pursuant to Federal Rule of Civil Procedure 10(c).

Finally, Plaintiffs include in this Motion allegations that Defendants transfer "youth out of the Angola site once the youth has met with undersigned counsel" and that the "timing of the transfers can be read to imply a causal relationship between the two events." (Doc. 146 at 12-13). As Plaintiffs are aware, D.D., E.E., and F.F. each participated in the TTU available at BCCY-WF. Woods Aff. (Ex. A) at ¶¶ 7, 10, 14. The TTU is intended to be a short term intensive therapeutic program. *Ruling* (Doc. 79) at 22 (emphasis added). Youth are constantly being re-classified to "step down" back into the general population of another facility or be released to their homes and communities. *Id.* Youth can "work their way out of" the TTU by demonstrating the ability to thrive in a social living environment. *Id.* D.D., E.E., and F.F. each completed the TTU program and were transferred to other secure care facilities. Woods Aff. (Ex. A) at ¶¶ 7, 10, 14.

### III.    CONCLUSION

For these reasons, the Court should deny Plaintiffs' *Motion for Leave to Amend Complaint* (Doc. 146).

Dated: April 27, 2023.

Respectfully Submitted:

BY:    */s/ Madaline King Rabalais*
       Connell Archey (#20086)
       Randal J. Robert (#21840)
       Allena McCain (#38830)
       Madaline King Rabalais (#38301)
       BUTLER SNOW LLP
       445 North Boulevard, Suite 300 (70802)
       P.O. Box 2997
       Baton Rouge, LA  70821-2997
       Telephone:    (225) 325-8700
       Facsimile:    (225) 325-8800
       Connell.Archey@butlersnow.com

68680028.v1

Randy.Robert@butlersnow.com
Allena.McCain@butlersnow.com
Madaline.Rabalais@butlersnow.com

Kyle V. Miller (pro hac vice)
Lemuel E. Montgomery III (pro hac vice)
Anna Morris (pro hac vice)
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone:     (601) 948-5711
Facsimile:     (601) 985-4500
Kyle.Miller@butlersnow.com
Lem.Montgomery@butlersnow.com
Anna.Morris@butlersnow.com

Counsel for Defendants
GOVERNOR JOHN BEL EDWARDS, in
his official capacity as Governor of
Louisiana; WILLIAM SOMMERS, in his
official capacity as Deputy Secretary of the
Office of Juvenile Justice; and JAMES M.
LEBLANC, in his official capacity as
Secretary of the Louisiana Department of
Public Safety & Corrections

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this day been filed electronically with the Clerk of Court using the CM/ECF system, which will deliver notice of this filing to all counsel of record.

Baton Rouge, Louisiana this 27th day of April, 2023.

*/s/ Madaline King Rabalais*

15

68680028.v1