IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. A. No. 3:22-CV-00573-SDD-RLB ) |
| GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections, | ) ) **DEFENDANTS' RESPONSE IN** ) **OPPOSITION TO PLAINTIFFS'** ) **MOTION TO REVIEW THE** ) **MAGISTATE COURT'S ORDER OF** ) **MARCH 28, 2023** ) ) ) |
| Defendants. | ) |

The Magistrate Judge's Report and Recommendation of March 28, 2023 (Doc. 143) recommending the denial of Plaintiffs' underlying Motion for Access to Counsel (Doc. 113) should be adopted in full, and Plaintiffs' objections to same should be overruled. The Report and Recommendation is supported by the facts and the law, and it is neither "clearly erroneous" nor "contrary to law."

**I. INTRODUCTION**

At the outset, Plaintiffs' access to their own counsel is <u>not</u> at issue. Plaintiffs do not, have not, and could not allege that they have unreasonably been denied access to their attorneys. Instead, what is at issue in the instant Objection (Doc. 147) is whether Plaintiffs' counsel should be granted

access to one particular Youth in OJJ's custody with whom Plaintiffs' counsel has not (and apparently cannot) demonstrate an existing attorney-client relationship.[1]

Magistrate Judge Bourgeois recommended the denial of Plaintiffs' Motion for Access to Counsel on three grounds:

1. Plaintiffs lack standing to seek the requested relief. None of the three Plaintiffs in this case contend that they were denied access to their counsel, and Plaintiffs have no standing to bring their motion, which attempts to vindicate the rights of other non-parties. *See* Report & Recommendation ("R&R") (Doc. 143) at 6-8.

2. The Youth who was allegedly denied access to counsel is not a party to this litigation and cannot seek relief in this matter despite the fact that he may fall within Plaintiffs' proposed class Definition. *See id.* at 8 n.2.

3. The relief requested—ordering OJJ to grant Plaintiffs' counsel access to the non-party Youth—is beyond the scope of this litigation. Deprivation of access to counsel would form the basis of a separate alleged constitutional violation, and nowhere in Plaintiffs' Amended Complaint do they allege a constitutional violation related to their (or anyone else's) access to counsel. *See id.* at 4-6.

Each of these legal conclusions is well-founded, not "clearly erroneous" or "contrary to law," and should be adopted for the reasons stated in the Magistrate Judge's Report and Recommendation.

In addition to the reasons articulated by Magistrate Judge Bourgeois for recommending the denial of Plaintiffs' Motion for Access to Counsel, Defendants raised the following additional

---

[1] Plaintiffs' Motion sought access to four non-party Youth. After Plaintiffs' counsel submitted letters of representation regarding two of the non-party Youth, access was granted. The third non-party Youth has since been released from OJJ's custody. The remaining dispute involves only the fourth non-party Youth. *See* R&R (Doc. 143) at 4 n.1.

bases for denial, which the Report and Recommendation did not reach. Both are additional, alternative reasons to deny Plaintiffs' Motion:

1. Neither the non-party Youth nor Plaintiffs have attempted to pursue, let alone complied with, the Administrative Remedies Procedure, which is a necessary prerequisite to seeking redress in this Court.

2. Plaintiffs' counsel was denied access to the non-party Youth because Plaintiffs' counsel failed (and continuous to fail) to comply with OJJ's administrative procedures for requesting such visits. Namely, Plaintiffs' counsel refused to submit the required paperwork to demonstrate that they actually represent the non-party Youth.

## II.  FACTS AND BACKGROUND

**A.     OJJ's Policies for Legal Visits and Proof of Attorney-Client Relationship.**

OJJ maintains a policy to facilitate legal visits between attorneys and their clients who are in OJJ's custody. *See* Woods Aff. (Doc. 117-1) ¶ 7; YS Policy No. C.1.4, Attorney Visits ("Attorney Visits Policy") (Doc. 117-2) at 2. The Attorney Visits Policy states that "youth shall be provided reasonable and confidential access to their attorneys . . . ." Attorney Visits Policy (Doc. 117-2) at 2.

OJJ also maintains a policy regarding the paperwork that must be submitted to the agency to prove that there is an established attorney-client relationship between an attorney and a Youth in OJJ's custody. *See* Woods Aff. (Doc. 117-1) ¶ 8 & Exhibit A-2, YS Policy No. B.3.2, Access to & Release of Active & Inactive Youth Records ("Records Policy") (Doc. 117-3) at 3. The policy describes the documentation required to prove the existence of an attorney-client relationship:

> D. Proof of the attorney/client relationship is established through receipt of one of the documents below:

3

1. A copy of the court minutes, judgement or order which directs the appointment or representation, if the attorney is court appointed or a public defender;

2. A completed "Statement of Representation and Release of Records" form [see Attachment B.3.2 (a)], executed by the youth indicating the youth's intent to be represented by the attorney named in the document;

3. A completed "Parent/Guardian Consent to Release of Youth Records" form [see Attachment B.3.2 (b)], executed by the parent/guardian of the youth under age 18;

4. A contract for legal representation authorizing the release of records and signed by the parent/legal guardian for a youth under age 18, or the youth if he is age 18 or older; and

5. A memorandum of understanding which authorizes a public-defender organization to participate in the defense of youth.

Records Policy (Doc. 117-3) at 3.

B. **Plaintiffs' Counsel's Request for Legal Visits with Non-Party Youth**

On December 1 and 2, 2022, counsel for Plaintiffs requested to have legal visits with four Youth who are not parties to the current litigation. *See* Email from D. Utter to R. Woods (Dec. 1-2, 2022) (Doc. 113-4). Prior to making the request, Plaintiffs' counsel did not submit to OJJ the necessary paperwork to prove the existence of an attorney-client relationship with these four non-party Youths. *See* Woods Aff. (Doc. 117-1) ¶¶ 10-12. Accordingly, OJJ denied the initial request for legal visits with the four non-party Youths. *See id.* ¶ 13.

After notifying Plaintiffs' counsel of the deficiency, Plaintiffs' counsel submitted the required paperwork to prove the existence of an attorney-client relationship with two of the four non-party Youths. *See id.* ¶ 14. OJJ approved the attorney-visits with these two non-party Youths ("Non-party Youths 1 & 2"). *See id.* ¶¶ 15-16.

As of the date of Defendants' Response in Opposition to Plaintiffs' Motion for Access to counsel (Doc. 117), Plaintiffs' counsel had not submitted the required paperwork to prove the

existence of an attorney-client relationship with the other two non-party Youths ("Non-party Youths 3 & 4"). *See id.* ¶ 17.[2]

C. **Non-Party Youth's Efforts (or Lack Thereof) to Exhaust Administrative Remedies**

OJJ maintains a written policy for the administrative review of Youth grievances. Woods Aff. (Doc. 117-1) ¶ 18; YS Policy B.5.3, Administrative Remedy Procedure ("ARP Procedure") (Doc. 117-4). None of the three named Plaintiffs have submitted a grievance pursuant to OJJ's Administrative Review Procedure ("ARP") regarding an alleged deprivation of right to meet with their attorney. *See* Woods Aff. (Doc. 117-1) ¶¶ 20-21. Likewise, none of the four non-party Youths have submitted a grievance pursuant to OJJ's Administrative Review Procedure regarding an alleged deprivation of a right to meet with their attorney. *See id.*[3]

### III. STANDARD OF REVIEW

Plaintiffs' objection to Magistrate Judge Bourgeois' Report and Recommendation does not address the applicable standard of review. *See generally* Pls.' Objection (Doc. 147). Because the underlying Motion for Access to Counsel is a nondispositive motion, Plaintiffs' objections to the Report and Recommendation are reviewed under the "clearly erroneous" or "contrary to law" standard. Fed. R. Civ. P. 72(a). "[Fed. R. Civ. P.] 72(a) dictates that a district judge must review decisions on nondispositive motions by the magistrate judge and 'modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" *Vatter v. Navistar Int'l Corp.*, 150 F. Supp. 3d 703, 706 (M.D. La. 2015) (quoting *Shamieh v. HCB Fin. Corp.*, No. 2:14–CV–2215, 2015 WL 432604, at *1–2 (W.D. La. Jan. 29, 2015) (quoting Fed. R. Civ. P. 72(a))). Accordingly,

---

[2] In fact, as of the date of this filing—more than 135 days since being notified of the deficiency—, Plaintiffs' counsel still have not submitted paperwork evidencing an attorney-client relationship with Non-Party Youths 3 & 4.

[3] Non-Party Youth 1 submitted an ARP on December 14, 2022, which was drafted by Plaintiffs' counsel. The ARP was limited to complaints about alleged conditions of confinement at BCCY-WF and did not raise any issues regarding alleged denial of access to counsel. *See* Woods Aff. (Doc. 117-1) ¶ 22; ARP Procedure (Doc. 117-4).

the burden is on Plaintiffs to establish that Magistrate Judge Bourgeois committed clear error or acted contrary to law when making the recommendation that Plaintiffs' Motion for Access to Counsel should be denied.

Additionally, a party cannot raise issues for the first time in an objection to a Magistrate Judge's Report and Recommendation. *See Nickles v. Cain*, No. CV 14-00260-BAJ-EWD, 2016 WL 5508880, at *2 (M.D. La. Sept. 28, 2016) (citing *Rodriguez v. Apfel*, 139 F.3d 898 (5th Cir. 1998) ("The general rule is that issues raised for the first time in objections to a magistrate judge's report are deemed not properly before the district court."); *Warren v. Astrue*, No. 6:09-CV-417, 2011 WL 3444268, at *3 (E.D. Tex. Aug. 5, 2011) (declining to consider arguments in an objection that were not before the Magistrate Judge)).

## IV.   ARGUMENT AND AUTHORITIES

The three Plaintiffs do <u>not</u> argue that they have been denied reasonable access to counsel. Magistrate Judge Bourgeois correctly held that Plaintiffs lack the standing to attempt to vindicate the rights of other non-party Youth in OJJ's custody. Likewise, he also correctly found that the non-party Youth is not deemed to be a party to this action simply due to the fact that Plaintiffs filed this case as a putative class action. Additionally, Magistrate Judge Bourgeois correctly found that complaints regarding access to counsel are beyond the scope of the instant litigation and not properly before the Court. Accordingly, the Report and Recommendation is not clearly erroneous or contrary to law and should be adopted, and Plaintiffs' Objection should be overruled.

The recommendation—denial of Plaintiffs' Motion for Access to Counsel—is warranted on the additional, alternative grounds that (1) Plaintiffs and the non-party Youth have failed to exhaust their administrative remedies and (2) the requested attorney visit was denied due to Plaintiffs' counsel's failure to comply with OJJ's procedures.

68655920.v1

A.     **Plaintiffs Do Not Allege They Were Denied Access to Counsel**

Nowhere in Plaintiffs' Objection or underlying Motion do they allege that they—Alex A., Brian B., and Charles C.—were denied access to their counsel. Whether Plaintiffs have had reasonable access to their counsel is <u>not</u> an issue before the Court.

B.     **Plaintiffs Lack Standing to Assert Claims on Behalf of the Non-Party Youth**

The Report and Recommendation correctly finds that the three named Plaintiffs lack standing to assert a claim for the alleged constitutional violation sustained by the non-party Youth. Because Plaintiffs did not experience the injury for which they complain, they lack the necessary standing to prosecute the claim.

In opposition to Plaintiffs' Motion for Access to Counsel, Defendants argued that the three named Plaintiffs lacked standing to assert claims regarding the four non-party Youths' access to counsel, and specifically that Plaintiffs' lacked an injury in fact. *See* Def.s' Resp. (Doc. 117) at 5-6. Defendants argued that to have standing, a litigant must establish the "irreducible constitutional minimum" of three elements: (1) the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not "conjectural" or "hypothetical"; (2) the injury must be fairly traceable to the challenged actions of the defendant, i.e., there must be a causal connection between the injury and the defendant's conduct; and (3) it must be likely that the injury will be redressed by a favorable decision of the court. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

In their Reply, Plaintiffs did not argue that they suffered an injury in fact. Instead, Plaintiffs argued that <u>the four non-party Youths</u> sustained an injury in fact and that Plaintiffs' <u>counsel</u> sustained an injury in fact. *See generally* Pls.' Reply (Doc. 126-2). Based on these arguments, Magistrate Judge Bourgeois correctly found that the alleged injury to the four non-party Youths

7

and Plaintiffs' counsel did not serve as a grounds to confer standing on Plaintiffs. *See* R&R (Doc. 143) at 8.

Plaintiffs now for the first time argue that the denial of the legal visits between Plaintiffs' counsel and the non-party Youths caused <u>Plaintiffs</u> to suffer an injury in fact. *See* Pls.' Objection (Doc. 147-1) at 8. Plaintiffs were required to make their argument in the first instance when the underlying motion was pending before Magistrate Judge Bourgeois and cannot now be heard to raise this new argument. *See Nickles v. Cain*, 2016 WL 5508880, at *2.

Even if Plaintiffs were allowed to raise this new issue in their Objection, these new arguments are unavailing:

*First*, Plaintiffs argue that the "injury in fact" is that "[p]lacing any child in a maximum-security facility designed for adults is unreasonably psychologically harmful to children." *See* Objection (147-1) at 7-8. But that is not the injury for which their underlying motion seeks relief. Rather, the alleged injury for which Plaintiffs are seeking redress is the right of access to counsel, and, again, Plaintiffs do not contend that to be an injury that they have sustained.

*Second*, to the extent Plaintiffs argue that the ability of their attorneys to access non-party Youth is somehow an interference in Plaintiffs' ability to further their own claims (*see id.* at 8), Plaintiffs ignore the fact that discovery in this case is stayed and was stayed at the time of their underlying motion. On November 21, 2022, Defendants filed their *Motion to Dismiss for Lack of Standing* because (much like as with the instant motion) the three named Plaintiffs had not experienced the alleged injury in fact about which they complain. *See generally* Mot. to Dismiss for Lack of Standing (Doc. 102). The following day, Defendants filed their *Motion to Stay Discovery Pending Resolution of the Motion to Dismiss for Lack of Standing. See generally* Mot. to Stay (Doc. 103). On November 30, 2022, the Court entered a briefing schedule on the Motion

to Stay and entered an order staying discovery pending resolution of the Motion to Stay. Order (Doc. 105) at 2 ("[T]he court will stay Defendants' duties to respond or object to all discovery served by Plaintiffs pending resolution of Defendants' Motion to Stay Discovery."). On January 4, 2023, the Court entered an Order staying discovery until resolution of Defendants' Motion to Dismiss. Order (Doc. 118)

Plaintiffs have flip-flopped multiple times on the issue whether the requested attorney visits are discovery. Initially, Plaintiffs contended that the requests were discovery. *See* Email from D. Utter to L. Montgomery (Dec. 5, 2022, 5:12 a.m.) (ECF 113-6) ("I write pursuant to FRCP Rule 37 to confer about a discovery dispute, specifically your clients' repeated denial of access to courts for youth in secure care." (emphasis added)). Then, in their underlying Motion, Plaintiffs disavowed any relationship between the requested attorney visit and discovery in this matter. *See* Pls.' Mot. (Doc. 113-1) at 6. ("Defendant's counsel response conflated youth at [BCCY-WF's] right to meet with counsel with discovery in this action . . . "). Now, in their Objection to the Report and Recommendation, Plaintiffs contend that the injury in fact that they have suffered is the inability of conduct discovery. *See* Pls.' Objection (Doc. 147-1) at 8. (Plaintiffs, as putative class representatives and in furtherance of their own claims, have an interest in ensuring that proposed class counsel meet with other similarly situated individuals.")

Whether the requested attorney visit is discovery or not, the underlying Motion and the instant Objection are misplaced. If the requested attorney visit is discovery, then, pursuant to the Court's Order (Doc. 105), the request is premature because discovery has been stayed. If the requested attorney visit is not discovery, then the right to access counsel belongs with the non-party Youths and Plaintiffs have no injury in fact. Either way, the underlying Motion and Objection

9

fail, and Magistrate Judge Bourgeois recommendation is neither clearly erroneous nor contrary to law.

**C.     The Report and Recommendation Correctly Found that the Non-Party Youth Is Not Party to This Action**

To the extent Plaintiffs are attempting to argue that the non-party Youth is actually a plaintiff in this case by virtue of his falling with Plaintiffs' proposed class definitions, that argument is simply incorrect. Prior to an order certifying a class, those individuals who happen to fall within the named Plaintiffs' unilaterally-defined putative class are not parties to the litigation. See R&R (Doc 144) at 8n.2 (citing Smith v. Bayer Corp., at 564 U.S. 299, 314 (2011)). Plaintiffs' desire to represent "all similarly situated" persons does not create a class. It is the Court's—not Plaintiffs'—decision to determine (a) whether there is a class and (b) whether the non-party Youth is a member of that class. Unless and until the Court makes such a decision, nothing about Plaintiffs' allegations grants a party the ability to assert the rights of non-parties.

Magistrate Judge Bourgeois correctly held that the non-party Youth is not a plaintiff in this action. *See* R&R (Doc. 143) at 8 n.2. In their Objection, Plaintiffs cite to no authority indicating that this finding was clearly erroneous or contrary to law.

**D.     The Report and Recommendation Properly Found that Access to Counsel Was an Issue Beyond the Scope of the Current Litigation**

Plaintiffs' Motion for Access to Counsel essentially seeks for this Court to issue an injunction requiring OJJ to grant Plaintiffs' counsel access to the non-party Youth. Yet nowhere in Plaintiffs' Amended Complaint do they allege that this lawsuit seeks redress regarding allegedly unreasonable denial of access to counsel. Magistrate Judge Bourgeois correctly held that unreasonable denial of access to counsel would constitute a separate constitutional violation – one that has not been pled in this case. For this reason, the Report and Recommendation was correct to conclude that the relief sought by the underlying motion was beyond the scope of this litigation.

10

68655920.v1

Plaintiffs' primary argument on the underlying Motion was that failing to grant Plaintiffs' counsel access to the four non-party Youths was a violation of Plaintiffs' counsel's First Amendment rights. In the instant Objection, Plaintiffs (and their counsel) have abandoned this argument. They continue, however, to advance the argument that Plaintiffs can pursue an order requiring OJJ to grant Plaintiffs' counsel access to the four non-party Youths on the grounds that the denial of access constitutes a constitutional violation of either Plaintiffs or the non-party Youths.

Regardless of whose rights are allegedly infringed by the purported denial of access, the fact remains that Plaintiffs have not pled unreasonable denial of access to counsel as an injury in their Amended Complaint. "To be clear, this is **not** a civil action challenging the violation of First Amendment rights related to laws or regulations prohibiting access to counsel. Plaintiffs have made no such allegations in the pleadings." R&R (Doc. 143) at 6.  Magistrate Judge Bourgeois's finding in this regard was neither clearly erroneous nor contrary to law.

E. **The Recommendation Should Be Adopted for Additional, Alternative Reasons—Failure to Exhaust Administrative Remedies and Failure to Comply with OJJ's Policy for Establishing Attorney-Client Relationship**

1. Neither Plaintiffs nor the Non-party Youth exhausted the administrative remedies

As discussed above, denial of access to counsel is its own separate Section 1983 claim. If Plaintiffs or the non-party Youth believe they have been unreasonably denied access to counsel, then they needed to exhaust the ARP process before seeking redress with this Court.

As more fully discussed in Defendants' Response in Opposition to Plaintiffs' Motion (Doc. 117), the PLRA establishes a mandatory exhaustion regime, forecloses judicial discretion, and prevents a court from excusing a failure to exhaust, even to take "special circumstances" into account. *Ross v. Blake*, 578 U.S. 632, 638-39 (2016) ("the PLRA's text suggests no limits on an inmate's obligation to exhaust"); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("we

will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). OJJ maintains a two-step process to efficiently process internal grievances based on its expertise in managing Youth detention facilities. *See* Woods Aff. (Doc. 117-1) ¶ 18; ARP Procedure (Doc. 117-4). Both steps must be fully exhausted before seeking judicial review. *See* ARP procedure (Doc. 117-4) at 1-14.

Here, Plaintiffs have not even alleged that they or any of the four non-party Youths attempted to avail themselves of the ARP process. *See generally* Motion (Doc. 113); Pls.' Br. (Doc. 113-1); Pls.' Objection (Doc. 147). And, in fact, neither Plaintiffs nor the four non-party Youths attempted to do so. *See* Woods Aff. (Doc. 117-1) ¶¶ 20-21. Having failed to exhaust the administrative remedies regarding the alleged denial of access to counsel, Plaintiffs' Motion (Doc. 113) was doomed from the outset. Though Magistrate Judge Bourgeois did not reach the exhaustion issue, failure to exhaust administrative remedies is an additional basis for denying Plaintiffs' Motion.

  2. <u>Plaintiffs' counsel was denied access to the non-party Youth because Plaintiffs' counsel failed to submit the proper evidence of an attorney-client relationship</u>

While Plaintiffs contend that OJJ in unreasonably denying attorney access to the non-party Youth, the reality is that Plaintiffs' counsel requests for attorney visits have been denied because Plaintiffs' counsel failed to satisfy the critical first step—establishing the existence of an attorney-client relationship between the attorney and the alleged client.

As is clearly stated in the attorney visit policy, the policy provides that it is for Youth to have confidential legal visits with their attorneys. Attorney Visits Policy (Doc. 117-2) at 2. And OJJ's policies dictate how an attorney or Youth demonstrates the existence of an attorney-client relationship. Records Policy (Doc. 117-3) at 3 (court minutes, judgement or order, "Statement of Representation and Release of Records" executed by the Youth; Parent/Guardian Consent to

12

Release of Youth Records executed by the parent/guardian of the youth under age 18; contract for legal representation; memorandum of understanding which authorizes a public-defender organization to participate in the defense of youth).

Prior to the requested attorney visits with the non-party Youth, Plaintiffs' counsel did <u>not</u> submit any of the required documents to provide proof of an attorney-client relationship. Woods Aff. (Doc. 117-1) ¶¶ 10-13. After the denial of the initial request for attorney visits, Plaintiffs' counsel submitted a written statement of legal representation, signed by the parents/guardians for two of the four non-party Youths. *See id.* ¶¶ 14-16. Thereafter, attorney visits were approved. *See id.* As of the date of the response in opposition to Plaintiffs' Motion for Access to Counsel, Plaintiffs' counsel had not submitted documentation in compliance with YS Policy No. B.3.2 to prove an attorney-client relationship exists between Plaintiffs' counsel and the other two non-party Youths. *Id.* ¶ 17. And as of the date of this filing—more than 135 days after the denial of the request and the explanation of the denial—Plaintiffs' counsel still have not submitted documentation evidencing an attorney-client relationship between Plaintiffs' counsel and the other two non-party Youths.

When Plaintiffs' counsel complies with OJJ's reasonable policies and submits proper proof of an attorney-client relationship, attorney visits are being provided in a reasonable manner. When Plaintiffs' counsel fails to comply with OJJ's policies, OJJ is reasonably denying the requested attorney visits. The alleged problem both begins and ends with Plaintiffs' counsel's willingness or unwillingness to comply with the pre-ordained policies. No judicial intervention is required; Plaintiffs' counsel both created their alleged access problem and hold the solution to their alleged access problem.

## V.    CONCLUSION

For all these reasons, the Magistrate Judge's Report and Recommendation properly recommended that Plaintiffs' Motion for Access to Counsel (Doc. 113) should be denied, and Defendants pray that the Court enter an order adopting, the Report and Recommendation and override Plaintiffs' Objections.

Dated: April 28 , 2023.

                                Respectfully Submitted:

BY:   */s/ Madaline King*
       Connell Archey (#20086)
       Randal J. Robert (#21840)
       Allena McCain (#38830)
       Madaline King (#38301)
       BUTLER SNOW LLP
       445 North Boulevard, Suite 300 (70802)
       P.O. Box 2997
       Baton Rouge, LA  70821-2997
       Telephone:   (225) 325-8700
       Facsimile:    (225) 325-8800
       Connell.Archey@butlersnow.com
       Randy.Robert@butlersnow.com
       Allena.McCain@butlersnow.com
       Madaline.Rabalais@butlersnow.com

       Kyle V. Miller (pro hac vice)
       Lemuel E. Montgomery III (pro hac vice)
       Anna Morris (pro hac vice)
       BUTLER SNOW LLP
       1020 Highland Colony Parkway, Suite 1400
       Ridgeland, MS 39157
       Telephone:   (601) 948-5711
       Facsimile:    (601) 985-4500
       Kyle.Miller@butlersnow.com
       Lem.Montgomery@butlersnow.com
       Anna.Morris@butlersnow.com

       Counsel for Defendants
       GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his

official capacity as Deputy Secretary of the Office of Juvenile Justice; and JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has this day been filed electronically with the Clerk of Court using the CM/ECF system, which will deliver notice of this filing to all counsel of record.

Baton Rouge, Louisiana this  28  day of April, 2023.

/s/ Madaline King

68655920.v1