UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ALEX A., by and through his guardian,**  **CIVIL ACTION**
**Molly Smith; BRIAN B.; and**
**CHARLES C., by and through his guardian,**  **NO. 22-573-SDD-RLB**
**Kenione Rogers, individually and on behalf**
**of all others similarly situated**

**VERSUS**

**GOVERNOR JOHN BEL EDWARDS,**
**in his official capacity as Governor of Louisiana;**
**WILLIAM SOMMERS, in his official**
**capacity as Deputy Secretary of the**
**Office of Juvenile Justice,**
**JAMES M. LEBLANC, in his official capacity**
**as Secretary of the Louisiana Department**
**of Public Safety & Corrections**

## ORDER

Before the Court is Plaintiffs' Motion to Compel. (R. Doc. 188). The Court ordered expedited briefing. (R. Doc. 195). The motion is opposed. (R. Doc. 198).

**I.    Background**

This putative class action was commenced on behalf of certain individuals under the secure care of the Office of Juvenile Justice ("OJJ") to obtain injunctive relief preventing their transfer from the Bridge City Center for Youth ("BCCY") to a location at the Louisiana State Penitentiary at Angola known as the Bridge City Center for Youth at West Feliciana ("BCCY-WF"). (R. Docs. 1, 96).

The operative pleading in this action is the First Amended Class Action Complaint filed by Alex A., by and through his guardian Molly Smith, Brian B.,[1] and Charles C., by and through

---

[1] Brian B. was no longer a minor at the time the First Amended Complaint was filed, but was a minor when he was adjudicated delinquent. (R. Doc. 95 at 1 n.1). Plaintiffs' counsel have filed a Suggestion of Death notifying the Court that Brian B. died on April 20, 2023. (R. Doc. 162).

his guardian Kenione Rogers, (collectively, "Plaintiffs") on behalf of themselves and others similarly situated against Government John Bel Edwards, Deputy Secretary of the OJJ Williams Sommers, and the Secretary of the Louisiana Department of Public Safety & Corrections James M. LeBlanc (collectively, "Defendants"). (R. Doc. 96, "Amended Complaint").[2] In this Amended Complaint, Plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment (Count I), declaratory and injunctive relief for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Count II), and declaratory and injunctive relief for violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. (Count III). (R. Doc. 96 at 35-39).

Plaintiffs' first Motion for Preliminary Injunction sought to prohibit transfers from BCCY to BCCY-WF. (R. Doc. 3). Pursuant to a protective order, the parties conducted preliminary discovery, including limited depositions, written discovery, and expert discovery in preparation for a preliminary injunction hearing. (*See* R. Docs. 36, 39; *see also* R. Doc. 95 at 5). The parties also agreed to allow Plaintiffs' expert to conduct a site inspection of the BCCY-WF prior to the hearing. (R. Doc. 25). The district judge denied Plaintiffs' first Motion for Preliminary Injunction on September 23, 2022. (R. Doc. 79).

On October 31, 2022, Plaintiffs filed their Motion for Class Certification. (R. Doc. 99). The Motion for Class Certification remains pending before the district judge. There is no certified class.

On November 21, 2022, Defendants filed a Motion to Dismiss for Lack of Standing ("Motion to Dismiss"). (R. Doc. 102). Defendants then sought a stay of discovery until

---

[2] Alex A. commenced this action on August 19, 2022 by filing the original Complaint. (R. Doc. 1). The district judge denied his Motion for Temporary Restraining Order and Motion for Preliminary Injunction. (R. Doc. 15; R. Doc.. 79).

2

resolution of the Motion to Dismiss (R. Doc. 103), which the undersigned granted. (R. Doc. 118).

On July 17, 2023, Plaintiffs filed a second Motion for Preliminary Injunction. (R. Doc. 163). Plaintiffs now seek, in light of the current conditions at BCCY-WF, an order from the Court to the Defendants to (1) immediately transfer Plaintiff Charles C. and all putative class members currently housed at BCCY-WF out of the facility "to OJJ [juvenile's] facilities that provide all legally-required services, education and supports for [juveniles] adjudicated delinquent," and to (2) immediately cease the placement or transfer of juveniles in OJJ's custody to BCCY-WF. (R. Doc. 163-1 at 1-2). In the alternative, Plaintiffs seek modifications of the current conditions of confinement at BCCY-WF. (R. Doc. 163-1 at 2-3).

On July 19, 2023, the district judge held a status conference, set a preliminary injunction hearing to be held on August 15, 2023, and required the parties to meet and confer for the purposes of submitting a joint proposed discovery scheduling order. (R. Doc. 167).

On July 21, 2023, the parties submitted a joint status report detailing the parties' positions, including agreements and disagreements, regarding the scope of, and deadlines for, limited discovery prior to the preliminary injunction hearing. (R. Doc. 170).

The same day, Defendants moved to withdraw their Motion to Dismiss (R. Doc. 169), which the district judge granted (R. Doc. 171).

The record indicates that the parties have been conducting discovery in preparation of the preliminary injunction hearing set for August 15, 2023 in accordance with their joint status report.

On August 1, 2023, Plaintiffs filed the instant Motion to Compel (R. Doc. 188), which has been referred to the undersigned for resolution. Plaintiffs seek an order compelling Defendants to do the following:

> (1) Produce responsive documents and other information dating back to the first transfer of a youth into the Angola juvenile facility in October 2022;
>
> (2) Produce complete files regarding youth currently held at the OJJ facility at Angola;
>
> (3) Produce personnel records as requested by Plaintiffs; and
>
> (4) Comply in good faith with Plaintiffs' fact discovery requests issued prior to August 11, 2023.

(R. Doc. 188-1 at 7). Plaintiffs represent that Defendants have "only produced documents created by OJJ from June 1, 2023 to date" and otherwise "refuse to engage in fact discovery at all after close of business on August 7, 2023." (R. Doc. 188 at 2). In opposition, Defendants argue that (1) the discovery sought falls outside the limited scope of discovery required for the preliminary injunction hearing because Plaintiffs' Motion for Preliminary Injunction concerns current conditions at BCCY-WF, (2) the production of complete files for all youth currently housed at BCCY-WF is not necessary or proportional to the needs of this case; (3) Defendants have produced staffing documents responsive to Plaintiffs' discovery requests; and (4) fact discovery should close on August 7, 2023 to allow the parties sufficient time for the remaining agreed-upon expert discovery and to prepare for the August 15, 2023 hearing on the preliminary injunction motion. (R. Doc. 198).

Defendants represent that Plaintiffs has deposed 17 witnesses as of August 7, the parties' experts are to be deposed on August 9 and 10, Plaintiffs' expert tours were to be conducted on August 11. (R. Doc. 198 at 3).

## II. Law and Analysis

### A. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

A party must respond or object to a request for production within 30 days after service of the discovery. *See* Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b).[3] If a party fails to respond fully to written discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37(a).

**B.    Analysis**

As an initial matter, the district judge requested the parties to submit a joint proposed discovery scheduling for the limited purposes of conducting limited discovery prior to the preliminary injunction hearing scheduled on August 15, 2023. (R. Doc. 167). Consistent with this order, the parties submitted a Joint Status Report in which they agreed to certain deadlines and to limit written discovery "within the limited scope of issues raised by Plaintiffs' Motion for Preliminary Injunction." (R. Doc. 170 at 2). Given that the parties did not obtain a court-ordered scheduling order governing pre-hearing discovery pursuant to Rule 16, the parties have conducted agreed-upon discovery within the scope of their agreed deadlines. *See* LR 26(d)(1).[4]

The Court further notes that while the instant Motion to Compel concerns written discovery, Plaintiffs failed to "quote verbatim" each request for production to which the motion is addressed, "followed immediately by the verbatim response or objection which provided thereto." LR 37. Instead, Plaintiffs just discuss the information they are seeking without any reference to particular requests for production. Plaintiffs did, however, attach the written discovery requests and responses as complete exhibits the instant motion. (*See* R. Docs. 188-2, 188-3). Given the expedited nature of the instant discovery dispute, the Court will address the

---

[3] The parties agreed that responses to written discovery would be due on July 31, 2023. (R. Doc. 170 at 2).
[4] In staying discovery in light of the pending Motion to Dismiss, the undersigned informed the parties to "immediately contact the undersigned upon resolution of the motion so that the Court may issue a new Scheduling Order. (R. Doc. 118 at 6). The parties did not contact the undersigned for the issuance of such an order.

6

merits of the Motion to Compel even though Plaintiffs have not identified the specific requests for production in dispute.

Counsel for the parties met and conferred with respect to these disputes, but were unable to resolve them without court intervention. Having reviewed the arguments of the parties, the Court will deny Plaintiffs' Motion to Compel.

### 1. OJJ's Records between October 17, 2022 to May 31, 2023

Plaintiffs appear to seek the production of all OJJ records pertaining to BCCY-WF, without limitation, since October 17, 2022. There is no dispute that Defendants have produced OJJ records regarding the conditions at BCCF-WF from June 1, 2023 to the present. Defendants represent that they have produced 6,000 pages of records. (R. Doc. 198 at 3).

Plaintiffs argue that the discovery that they are seeking – OJJ's "responsive documents and other information dating back to the first transfer of a youth into the Angola juvenile facility in October 2022" – falls within the scope of discovery because it is the "only way Plaintiffs and the Court can ensure" that Defendants are currently providing satisfactory conditions to house the juveniles, including proper education, medical services, mental health services, recreational opportunities, and food. (R. Doc. 188-1 at 4, 6-7).

Without reference to the specific document requests at issue, the Court cannot determine what specific documents and information are in dispute. Defendants represent that Plaintiffs are requesting "every document, note, memorandum, contract, report, summary, photo, video, audio recording, letter, e-mail, text, phone call, chat message, fax, social media message, and interview covering virtually every aspect of the operation of BCCY-WF since October 17, 2022. (R. Doc. 198 at 6-7) (citing generally R. Doc. 188-2).

7

For the reasons set forth by Defendants, to the extent Plaintiffs are seeking "open-ended discovery" of "nearly aspect of the operation of BCCY-WF," such discovery is disproportional to the needs of the instant preliminary injunction hearing, which pertains solely to the current conditions at the facility. (R. Doc. 198 at 7-8).

The Court also agrees with Defendants that the foregoing discovery sought regarding BCCY-WF from October 17, 2022 to May 31, 2023 falls outside of the limited scope of discovery for purposes of the preliminary injunction hearing. The district judge has already denied a preliminary injunction regarding the transfer of juveniles to BCCY-WF. The instant preliminary injunction hearing concerns whether Plaintiffs are entitled to injunctive relief in light of the current conditions at BCCY-WF, not the opening of the facility or initial conditions at BCCY-WF. Given the foregoing, it is appropriate to limit discovery regarding OJJ's documents and information regarding BCCY-WF to a period from June 1, 2023 to the present. It is proper to limit document discovery to the past two months of operation given (1) that this will include some records pre-dating Plaintiffs' filing of its Motion for Preliminary Injunction, and (2) that this limited, expedited discovery is solely for the purpose of a preliminary injunction hearing pertaining to current conditions, not the merits of Plaintiffs' claims.

The Court notes that Plaintiffs have made no attempt to limit the scope of documents sought prior to June 1, 2023 to the extent they are pertinent to the current conditions at BCCY-WF. Furthermore, Defendants represent that they have produced a large number of documents prior to June 1, 2023 "in an effort to provide the context necessary to ascertain current conditions." (R. Doc. 198 at 6). Defendants specifically represent that these pre-June 1 documents include the following:

> Transitional Treatment Unit ("TTU") materials, such as a program summary, lesson plans, a behavior improvement plan, the youth handbook, and curriculum

8

> for youth who repeat the program, the daily activity schedule, educational curriculum, a contract for special education and related services, job descriptions for various positions, documents regarding the installation of air conditioning units, water testing results, and more [,as well as] certain records in youth files and records related to personnel from prior to June 1, 2023.

(R. Doc. 198 at 6). Plaintiffs not only fail to mention these productions in support of their motion, but also fail to describe with any particularly the categories of documents and information sought in discovery requests that have not been produced.

In sum, the Court will deny Plaintiffs' motion to the extent it seeks an order compelling, at this time, the production of any additional OJJ documents pertaining to BCCY-WF prior to June 1, 2023.

### 2.    Complete Files for All Youth Currently Held at BCCY-WF

Plaintiffs seeks the "complete files regarding youth currently held" at BCCY-WF. (R. Doc. 188-1 at 7). Plaintiffs state that "Defendants agree only to produce the portion of these files reflecting incident(s) leading to the youth's transfer to Angola and tenure there." (R. Doc. 188-1 at 3). Plaintiffs do not otherwise describe what specific requests for production are at issue, what information was produced, or set forth any arguments for the production of further documents pertaining to specific juvenile's files. (*See* R. Doc. 188-1 at 5-6).

Defendants represent that they have produced over 3,600 pages of youth records consisting of (1), for each youth housed at BCCY-WF as of July 20, 2023, "medical, mental health, education/special education, programming, visitation, and conduct records dating back to June 1, 2023," and (2) "some youth records from prior to June 1, 2023 to ensure the TTU referral documents and other relevant historical information was captured." (R. Doc. 198 at 9).

Again, Plaintiffs not only fail to mention these productions in support of their motion, but also fail to describe with any particularly the categories of documents and information sought in

9

discovery requests that have not been produced. The Court has already discussed above why documents prior to June 1, 2023 do not fall within the scope of discovery for the purposes of the instant preliminary injunction hearing. Plaintiffs have not forth any arguments in support of a finding that records dating back as far as each juvenile's adjudication (including those who are not plaintiffs in this action) are relevant for the purposes of this hearing.

In sum, the Court will deny Plaintiffs' motion to the extent it seeks an order compelling, at this time, the production of "complete files" for all juveniles housed at BCCY-WF.

### 3.     Personnel Files for OJJ Employees

Plaintiffs next seek the production of "personnel files on staff members whom Plaintiffs will depose" because Defendants "have refused to produce such documents." (R. Doc. 188-1 at 3). Plaintiffs assert that the "professional backgrounds of the personnel who set and implement programming and interact" with the juveniles fall within the scope of discovery. (R. Doc. 188-1 at 6). Plaintiffs do not identify the Rule 34 discovery requests, however, seeking such information.

In opposition, Defendants represent that the foregoing assertion that they refused to produce any such documents is "entirely false" given that the actual discovery requests sought "categories of information and documents related to staffing" and not the "personnel files of those staff members whom Plaintiffs sought to depose." (R. Doc. 198 at 9). Defendants represent that despite objections, they produced "a number of responsive documents, including an organizational chart, a list of current staff members with job titles and dates of hire, as well as a list of staff who responded and their final dates of employment, job descriptions for many of the positions at BCCY-WF, employment applications, education/special education staff licenses, TTU training materials, and rosters which show staff training." (R. Doc. 198 at 10). Defendants

also represent that prior to filing the instant motion, "Plaintiffs did not notify Defendants of specific insufficiencies with respect to the production" related to staffing at BCCY-WF. (R. Doc. 198 at 10).

Again, Plaintiffs not only fail to mention these productions in support of their motion, but also fail to describe with any particularly the categories of documents and information sought in discovery requests that have not been produced. Plaintiffs fail to identify any specific request for entire "personnel files" of the deposed employees. The Court has failed to find any reference to "employee files" or "personnel files" (as opposed to general staffing documents) in the document requests.[5]

In sum, the Court will deny Plaintiffs' motion to the extent it seeks an order compelling, at this time, the production of "employee personnel files" on OJJ staff members that Plaintiff has deposed.

### 4. The Non-Expert Discovery Deadline

As discussed above, the parties failed to secure a court order setting a deadline for discovery prior to the preliminary injunction hearing, which is set for August 15, 2023. Having reviewed the parties' proposed deadlines, the Court agrees with Defendants that the non-expert discovery deadline was properly set to close on August 7, 2023, as that was the latest date agreed upon. Defendants did not agree to conduct any non-expert discovery beyond that deadline pursuant to Local Rule 26(b)(1). Plaintiffs has had sufficient opportunity to prepare and conduct all necessary non-expert discovery by that deadline.

---

[5] The parties' Joint Status Report notes that Plaintiffs intended to seek the "training, discipline, education, and employment history of staff" with respect to those individuals deposed by Plaintiffs. (R. Doc. 170 at 3). Nevertheless, Plaintiffs have not directed the Court to any Rule 34 requests for production seeking this information. The Court will not compel discovery based on proposed discovery referenced in a joint status report.

Accordingly, the Court holds that non-expert discovery pertaining to preliminary injunction hearing, including the filing of any related motions, closed on August 7, 2023. The parties are to turn solely to expert discovery (as previously agreed by the parties) and preparation for the August 15 hearing.[6]

### III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion to Compel (R. Doc. 188) is **DENIED**. Given the expedited nature of this motion, the Court will require the parties to bear their own costs under Rule 37(a)(5)(B).

Signed in Baton Rouge, Louisiana, on August 8, 2023.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[6] Plaintiffs filed a second Motion to Compel on the close of discovery, August 7, 2023. (R. Doc. 197). The Court has ordered expedited briefing on this motion. (R. Doc. 200). Given that the Court has ruled that non-expert discovery pertaining to the preliminary injunction closed on August 7, 2023, no further motions pertaining to non-expert discovery hearing will be considered prior to the preliminary injunction hearing.