# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

ALEX A., by and through his guardian, Molly
Smith; BRIAN B.[1]; and CHARLES C., by
and through his guardian Kenoine Rogers,
individually and on behalf of all others
similarly situated,

           Plaintiffs,

v.

GOVERNOR JOHN BEL EDWARDS, in his
official capacity as Governor of Louisiana;
WILLIAM SOMMERS,[2] in his official
capacity as Deputy Secretary of the Office of
Juvenile Justice; JAMES M. LEBLANC, in
his official capacity as Secretary of the
Louisiana Department of Public Safety &
Corrections,

           Defendants.

Civil Action No. 3:22-573-SDD-RLB

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CONSOLIDATED RECONSIDERATION OF PORTIONS OF MAGISTRATE JUDGE'S ORDER (ECF #201) DENYING PLAINTIFFS' MOTION TO COMPEL DISCOVERY, AND PORTIONS OF MAGISTRATE JUDGE'S ORDER (ECF #200) PROHIBITING FURTHER NON-EXPERT DISCOVERY MOTIONS AFTER AUGUST 8, 2023; AND ACCOMPANYING MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS**

COMES NOW Plaintiffs who, through undersigned counsel, move pursuant to 28 U.S.C.

§ 636(b)(1)(A), Fed. R. Civ. P. 72(a), and LR 72, Plaintiffs file this Motion for Consolidated

---

[1] On July 14, 2023, pursuant to Rule 25(a)(2) of the Federal Rules of Civil Procedure, Plaintiffs notified the Court of the death of Brian B.  *Doc. 162.*  Plaintiffs leave Brian B. as a Plaintiff until the clerk is ordered to change the caption.

[2] On November 18, 2022, Gov. Edwards announced the resignation of Dep. Sec. Sommers and the appointment of Otha "Curtis" Nelson as his replacement.  *See* https://gov.louisiana.gov/index.cfm/newsroom/detail/3892.  Because Sommers was sued in his official capacity, Nelson is automatically substituted as a Defendant. Fed. R. Civ. P. 25(d).  Plaintiff leaves Sommers as a Defendant until the clerk is ordered to change the caption.

Reconsideration Portions of the Magistrate Judge's Order (ECF #201), and Portions of the Magistrate Judge's Order prohibiting further non-expert discovery motions after August 8, 2023. (ECF #200). Specifically, the Plaintiffs seek reconsideration of the portions of the Magistrate Judge's orders that: (1) there was an enforceable discovery deadline of August 7, 2023 (ECF #201 at 11-12); (2) Plaintiffs cannot seek documents pertaining to Bridge City Center for Youth – West Feliciana ("BCCY-WF") prior to June 1, 2023 (ECF #201 at 8-9, despite Plaintiffs repeated specific requests for such documents prior to August 7, 2023 (*see* Exhs. A, D, G,& H, *infra*); (3) denied Plaintiffs' request to compel individual youth's OJJ records from prior OJJ secure detention facilities showing what counseling, education, and treatment they received prior to their transfer to BCCY-WF; and (4) the *sua sponte* order that "No further motions pertaining to discovery will be entertained prior to the preliminary injunction," (ECF #200), even for specific documents timely requested. Given the interrelated nature of these two orders (ECF # 200 & 201) and their implications on one another, reconsideration of them together is judicially efficient and appropriate. reconsideration of them together is judicially efficient and appropriate.

Further, Plaintiff seeks an order from this Court to compelling the Defendants to produce the following relevant, specific documents specific below by no later than 5 p.m. August 14, 2023. In support, counsel states:

## INTRODUCTION

The Defendants continue to withhold essential, basic discovery that the Plaintiffs have specifically requested by name or identifying description during the time that fact discovery was unquestionably open. These documents are:

- Two logbooks that, according to Office of Juvenile Justice ("OJJ") deponents, contain the names and movements of youth, OJJ staff, teachers, medical and mental health personnel,

and anyone one else interacting with the children. These logbooks are highly probative in nearly all claims before this Court including solitary confinement, use of solitary confinement as punishment, the treatment of children in solitary confinement, the counseling and mental health services provided to the youth, education and special education of the youth, presence or absence of teachers and special education personnel in classrooms, recreation, and family visits, *see* ECF #163, 164, & 166 (Plaintiffs' preliminary injunction request, memorandum and exhibits in supports, and relief sought);

- A specific twice daily email that is sent out by supervisors at the end of the A.M. and P.M. shift containing, amongst other information, "shift packets," and the shift packets attached to those emails. OJJ deponents testified these shift packets contain lists of all youth in solitary confinement, incidents, rounds, and other probative and necessary information.

- Documents pertaining to the attempted suicide of a youth at the facility, his lack of statutorily required medical treatment, and placement in solitary confinement for days after the attempt;

- An hour and fifteen minutes of body camera footage on a specified date of an OJJ staff macing a youth confined in his cell because an "unknown" liquid was thrown out of the cell door;

- Individual youth's OJJ records from prior OJJ secure detention facilities showing what counseling, education, and treatment they received prior to their transfer to BCCY-WF to compare and see if the prior services offered were also being done so at BCCY-WF;

- Documents relating to high, dangerous temperatures inside the facility and the accommodations made by BCCY-WF; and

- Specific forms that OJJ staff must fill out and submit when they use force or a chemical agent with a youth.

After timely propounding their Requests for Production ("RFP"), Plaintiffs followed up regarding the specific documents discussed below in writing on August 3 and 4, 2023, and participated in a meet and confer on August 5, 2023. After not receiving the documents during the following work week despite multiple more written communications and conversations, Plaintiffs again tried to resolve these disputes prior to filing this motion for reconsideration by August 12, 2023 written communication with the Defendants reiterating these narrow requests. *See* Exh. A (Plaintiffs' Aug. 12, 2023 Discovery Letter to Defendants). After reviewing this communication, the Defendants informed undersigned counsel Christopher Murell that they will not be producing any more discovery. Pursuant to the Magistrate Court's August 8, 2023 Order, Plaintiffs may not bring any issue regarding non-expert discovery before him, which would include these disputes. (ECF #200).

Plaintiffs now have no resort except to ask this Court to overrule the Magistrate Judge's *sua sponte* order that there can be further non-expert discovery motions prior to the preliminary injunction hearing. (ECF #200). Further, Plaintiffs ask this Court to overrule the Magistrate Judge's determinations that: (1) there was an August 7, 2023 discovery deadline; (2) Plaintiffs are not entitled to individual youth's OJJ records from prior OJJ secure detention facilities showing what counseling, education, and treatment they received prior to their transfer to BCCY-WF; and (3) no documents regarding BCCY-WF prior to June 1, 2023 must be produced. These rulings are factually and legally erroneous, an abuse of discretion, and would severely harm Plaintiffs. Finally, through this motion, pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv), Plaintiffs seek this Court to compel the immediate production of the requested documents.

## RELEVANT HISTORY

Pursuant to this Court's Order on July 19, 2023 (ECF #167), the Parties submitted a Joint Status Report on July 21, 2023. (ECF #170). A number of dates were agreed upon: (a) on July 24, 2023, discovery requests must be served upon opposing counsel; (b) on July 31, 2023, the parties must respond to written discovery; and (c) the date depositions began. (ECF #170 at 2). However, the parties alerted the Court in this Status Report that there were several important disagreements. The parties could not agree on a date when fact discovery would close, which was reflected in the Status Report. *Id*. at 2-3 ("[T]he parties are unable to agree and request court guidance on the following: . . . 4. Date that fact discovery closes. Plaintiffs propose August 11 and Defendants propose August 7."). Plaintiffs *never* agreed to ending fact discovery on August 7, 2023 and *always* stated that was too little time to complete what was necessary. *Id*. The August 7 date was unilaterally decreed upon by the Defendants.

Similarly, the Defendants arbitrarily, unilaterally set June 1, 2023 as the earliest date for which they would provide any document without any explanation for that specific date other than the preliminary injunction concerns present conditions. Plaintiffs objected based on clearly established Fifth Circuit law that in injunction proceedings, "a defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future."[3] The parties notified the Court of this dispute asking for the Court's guidance. (ECF #170 at 2-3).

Further, a crucial dispute in the September 2022 preliminary injunction hearing was whether youths transferred to BCCY-WF would have the services they were being provided at

---

[3] *CAE Integrated, L.L.C. v. Moov Techs.*, Inc., 44 F.4th 257, 263 (5th Cir. 2022) (quoting *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978)); *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021) ("[A] permanent injunction is appropriate ***only if a defendant's past conduct*** gives rise to an inference that, in light of present circumstances, there is a reasonable likelihood of future transgressions.") (emphasis added) (quoting *Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017)); *Offner v. Shell's City, Inc.*, 376 F.2d 574, 576 (5th Cir. 1967) ("*respondent's past conduct is a relevant factor to be considered*" when a court adjudicates a claim for injunctive relief) (emphasis added).

other OJJ facilities interrupted. Plaintiffs contended that a lack of plan and staffing combined with housing children in a facility originally designed to isolate and segregate death row inmates from one another while awaiting execution would preclude or diminish the services youths were previously receiving at other secure care facilities. *See Smith*, 3:22-cv-573, Slip Op. at 40. On behalf of the Defendants, now OJJ Deputy Secretary Curtis Nelson testified that:

> Q:    And the Goal is to continue the same services the youth currently receives at West Feliciana.
>
> A:    That is correct, 'cause every youth has an individual plan. And, in fact, our policy talks about an individual—I think it's an integration plan. But IIP—and I might be getting those terms wrong, but every youth has their own individual plan to address their specific needs. And so that will happen at West Feliciana, but it's going to be ramped up just a bit more.

*See* Exh. B (Sept. 7, 2022 Testimony of Curtis Nelson) at 167. This Court explicitly relied on this testimony in denying the Plaintiffs relief last September. *See Smith*, 3:22-cv-572, Slip. Op. at 40 (stating that Plaintiff failed to refute testimony that youth would receive "the same or greater extent and in the same manner these services are provided to all youth in OJJ custody.").

In their July 2023 Preliminary Injunction motion, Plaintiffs assert that this promise was broken. (ECF #164 at 15-16). This issue is now before the Court. The most appropriate way to determine if youth in BCCY-WF are receiving the "same" or "ramped up" services as other OJJ facilities is by comparing their plans and treatment prior to arriving at BCCY-WF to what occurred at BCCY-WF. Nevertheless, Defendants unilaterally determined that they would not provide files for youth other than the services—or lack thereof—they received at BCCY-WF, making it impossible to adjudicate Plaintiffs' claim properly. Plaintiffs objected. The parties wrote to this Court in their Status Report that guidance on this discovery issue was needed. (ECF #170 at 3) ("2. Youth files: Defendants agree to provide youth files from the point of transfer to OJJ's Angola

facility, along with the reason for their transfer. Plaintiffs request youth's secure care file, which includes treatment received at other facilities.").

In the status conference, this Court informed the Parties that the Magistrate Judge would resolve discovery disputes. Despite being alerted to these discovery disputes on July 21, 2023 and the parties specifically "request[ing] court guidance" on the issues above (ECF #170 at 2), the Magistrate Judge took no action or addressed these concerns. Accordingly, Defendants have continued to impose their untenable, unilateral dictates as to the limitations on discovery— claiming discovery ended on August 7; refusing to provide any document concerning the treatment of youth at BCCY-WF prior to June 1, 2023; and not providing files of youth prior to arriving at Angola so that the parties and this Court could assess whether the treatment/services were the "same."

Plaintiffs timely filed their written discovery requests on July 24, 2023. Defendants responded with their first document production on July 31, 2023. Well more than half the documents concerned provided alleged code of conduct violations or otherwise prohibited behavior by youth rather than reflecting the housing conditions of the youth and services they were provided. Depositions began on August 1, 2023. The first deposition of a Juvenile Justice Specialist ("JJS") occurred on August 3, 2023. Undersigned counsel conducted the depositions of six JJSs that day. In these depositions— for the first time— it was learned that every JJS wears a body-worn camera during their shift. The body-worn cameras are provided by the national vendor Axon, and all footage is stored on Axon's servers. As this Court knows, Axon routinely provides requested body camera footage upon simple request of a law enforcement agency. On August 3, Plaintiffs also learned of an incident the previous day where JJS Frank Edwards sprayed a youth with mace while the youth was locked inside his cell. *See* Exh. C (Aug. 3, 2023 Deposition Excerpt

of Frank Edwards) at 12-13. The reason for JJS Edwards spraying the youth locked inside his cell was that the youth threw an unknown liquid through his cell doors. *Id*. JJS Edwards testified that the youth "knew [JJS Edwards'] reaction was going to be to mace him." *Id*. Plaintiffs' counsel immediately sent a request for that body camera footage on August 3, 2023. *See* Exh. D (email from David Utter requesting this body worn camera footage).

Plaintiffs also learned through deposition on August 3, 2023 that BCCY-WF has a written policy imposing "cell restriction" on youths for various Code of Conduct violations. *See* Exh. E (Aug. 3, 2023 Deposition excerpt of JJS Daja McKinley) at 10. As testified to by every JJS deposed, "cell restriction" means that the youth is confined to his cell alone all day other than being "called out" for solitary recreation time, medical visits, zoom with family, or another specified purpose. *Id*. at 10-12. The child is not able to voluntarily exit their cells. *Id.* Other than solitary recreation or "call outs," the child is confined for all non-sleeping hours. *Id.* In short, in depositions, it was revealed that this "cell restriction" meets the exact definition of "solitary confinement" in La. R.S. 15:905(F)(1); *see also* La. R.S. 15:905(F) ("No juvenile in the custody of the office of juvenile justice shall be placed in solitary confinement for any reason other than a temporary response to a behavior that poses serious and immediate threat of physical harm to the juvenile or others."  The amount of time the child must spend on "cell restriction" is set forth on a sheet used by the supervisors. Exh. E (Aug. 3, 2023 Deposition excerpt of JJS Daja McKinley) at 11-14. The sheet specifies times ranging from 24 – 72 hours for code of conduct violations including graffiti, property destruction, throwing food from a cell, spitting, flipping a desk in class, and masturbation. *See id.* at 11-14; Exh. F (Aug. 3, 2023 deposition transcript excerpt of Ronald Palmer) at 8-19. *Compare with.* La. R.S. 15:905(F)(2)&(3) (describing the very limited circumstances under which a juvenile may kept in solitary confinement). No mental health

personnel from Wellpath is consulted about whether to release a youth from cell restriction earlier than the term meted out by OJJ staff. Exh. E (Aug. 3, 2023 Deposition excerpt of JJS Daja McKinley) at 18-19.

OJJ deponents also testified that there are two twelve-hour (12) shifts for JJSs each day. At the end of each shift, an email containing relevant information and a "shift packet" is sent around to all BCCY-WF supervisors, directors, as well as Curtis Nelson and OJJ staff at the central Baton Rouge office. *See* Exh. F (Aug. 3, 2023 deposition excerpt of JJS Ronald Palmer) at 19-21; 54-56. This includes a list of all children placed on cell restriction each day. *Id*. at 19-21. Thus, Curtis Nelson—the head of OJJ— is notified daily of what children are being subjected to cell restriction by email, along with receiving a shift packet. *Id*.

Plaintiffs also learned about the suicide attempt of a youth at BCCY-WF and his subsequent placement in solitary confinement—referred to as "observation" or "suicide watch"— for numerous days. Exh. E (Aug. 3, 2023 Deposition excerpt of JJS Daja McKinley) at 29-33; *compare with* La. R.S. 15:905(F)(2)(b) ("Under no circumstance shall a juvenile who has expressed suicidal ideations or attempted suicide be placed in solitary confinement."). Through review of documents, Plaintiffs have determined that this solitary confinement lasted at least seven days—and possibly longer because the youth was on "suicide watch" already on June 1, 2023, the arbitrary date dictated by defense counsel before which they refuse to disclose any records.

With regards to Plaintiffs claims about the lack of services and education, one OJJ staff member testified that he had left BCCY-WF in January 2023 for a job offshore, and then returned in May 2023. He stated that since he returned in May, there had not been a single regular classroom teacher until the week of July 31—and this OJJ staff has in the classrooms "every day." *See* Exh. F (Aug. 3, 2023 deposition excerpt of JJS Ronald Palmer) at 35-37. While JJSs did their best to

help the youth with work on their chromebooks, JJSs were never informed of which children had special education needs. *Id*. This OJJ staff stated that a comprehensive log of which children were taken to class and whether a teacher was present would be contained in two logbooks: one kept by central command, and a separate logbook kept in the classrooms. *Id*. at 54-56.

These depositions were revelatory, showing there was absolutely vital discovery that the Defendants had not provided. The "cell restriction sheet" was not included by the Defendants in their initial discovery production. No shift emails nor the accompanying shift packets were disclosed. The medical records and records specific to the youth who attempted suicide were not provided because he had been moved from BCCY-WF by the time of the filing of the preliminary injunction. A paucity of documents about efforts OJJ was taking to accommodate youth to protect against the life threatening, extreme heat this summer were provided.

Plaintiffs sent two written correspondences to Defendants on August 4, 2023 requesting very specific documents. *See* Exhs. G & H (Aug. 4, 2023 Letters to Defendants with specific discovery requests). The first with specificity requested, *inter alia*: (1) the daily emails amongst supervisors distributing shift packets and the shift packets themselves; (2) the logbooks from the central command area; (3) the logbooks from the classrooms; (4) all use of force reports; and (5) the records regarding the youth's attempted suicide and his medical treatment, as well as cell placements afterwards. *See* Exh. G. The second letter followed up on Plaintiffs' July 24, 2023 RFPs for numerous documents relating to the dangerous temperatures at BCCY-WF. *See* Exh. H. The following day, August 5, 2023, Plaintiffs and defense counsel had a meet and confer.

The documents above—and described in the request for relief for this motion—were not produced. Further, the youths' records prior to entering BCCY-WF were never produced. Consequently, Plaintiffs filed their First Motion to Compel on August 1, 2023. (ECF #188). The

portions for which Plaintiffs presently seek reconsideration are: (1) production of responsive documents relating back to the opening of BCCY-WF in October 2022; (2) files of the youth before they were transferred to BCCY-WF; and (3) the unilateral imposition of the August 7 discovery close date by Defendants. *Id*. There were other requests in this First Motion to Compel that were denied by the Magistrate Judge; however, Plaintiffs only seek reconsideration of the portions specific above. Due to errors in redaction, Plaintiffs moved to substitute certain exhibits appended to the motion to compel. (ECF #191 & #194). Defendants filed their Opposition—replete with misrepresentations of the Plaintiffs discovery requests to date—on August 2, 2023. (ECF #192).

This motion remained pending before the Court for six days until the Magistrate Judge issued his order denying the motion to compel on August 8, 2023. (ECF #201). Relevant to the current motion for reconsideration, there are three issues on which the Magistrate Judge ruled. First, the Magistrate Judge judicially imposed the Defendants' unilateral non-expert discovery deadline of August 7. (ECF #201 at 11). The Magistrate Judge based this ruling on the incorrect assessment that counsel had not sought court intervention for the dispute between parties about the closing of discovery. (ECF #201 at 6-7; 11-12). Further, since the Defendants unilaterally did not agree to produce non-expert discovery after August 7, the Magistrate Judge erroneously ruled that this deadline was "agreed upon." *Id*. at 11. Second, the Magistrate Judge held that Plaintiffs had no right to documents before June 1, 2023—the arbitrary date selected by Defendants before which they refused to provide documents. *Id*. at 7-9. A large portion of the Magistrate Judge's reasoning is predicated on the manifestly erroneous fact—which was asserted without good faith by the Defendants—that Plaintiffs were requesting virtually every document generated going back until October 1, 2022. *Id*. at 7. This factual determination is directly contrary to the Plaintiffs' narrowly tailored, specific requests. *See* Exhs. G & H (Aug. 4, 2023 letters to Defendants). The Magistrate

Judge further erred in determining that documents showing the conditions at BCCY-WF before the date arbitrarily decided by Defendants—June 1, 2023—"falls outside the limited scope of discovery for purposes of the preliminary hearing injunction hearing." (ECF #201 at 8). Third, the Magistrate Judge concluded that Plaintiffs are not entitled to records pre-dating a youth's transfer to BCCY-WF, not at all addressing the issue of whether youths are receiving the "same" treatments/education/services as they previously had at other OJJ facilities. *Id*. at 9-10.

On the same day, the Magistrate Judge *sua sponte* issued an Order that: "No further motions pertaining to non-expert discovery will be entertained prior to the preliminary injunction hearing." ECF #200. This Order left Plaintiffs with no recourse for timely requested discovery that Defendants chose not to produce.

Rather than file a motion for reconsideration to this Court, Plaintiffs tried to resolve discovery disputes over the specific documents listed here via letter to the Defendants emailed on August 12, 2023. *See* Exh. A (Plaintiffs' Aug. 12, 2023 letter to Defendants). Later that day, undersigned counsel Christopher Murell spoke to Defendants' counsel Connell Archey who stated the Defendants would produce no further discovery unless ordered by the Court.

This motion for reconsideration of certain portions of the Magistrate Judge's Orders #200 & #201 now timely follows.

## LAW AND ARGUMENT

### I.    Standard of Review and Relevant Law

"The standard of review on a motion to reconsider a Magistrate Judge's ruling on a discovery matter [including a Motion to Compel Production] is whether that ruling was 'clearly erroneous or contrary to law.'"[4]

Parties to litigation may seek discovery of any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.[5]  A discovery request is relevant when the request seeks admissible evidence or is reasonably calculated to lead to the discovery of admissible evidence.[6]  In addition, the Court's discretion in establishing specific parameters of discovery is well established. A district court has "broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse."[7]  The party filing a motion to compel bears the burden of establishing the relevance of the information in question,[8] but "[t]he party resisting discovery [must] show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted."[9]

## II.    Reconsideration of Certain Issues in Order ECF #201

### a.    Adopting the Defendants' Unilaterally Imposed August 7, 2023 Non-Expert Discovery Deadline was Error

---

[4] *Piazza's Seafood World, LLC v. Odom*, No. 07-413, 2011 U.S. Dist. LEXIS 111433, at *2-*3 (M.D. La. Sept. 29, 2011) (quoting Fed. R. Civ. P. 72(a)).

[5] Fed. R. Civ. P. 26(b)(1).

[6] *Crosby v. Louisiana*, 647 F.3d 258, 262 (5th Cir. 2011) (citations omitted).

[7] *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013).

[8] *See Humphrey v. LeBlanc*, 2021 WL 3560842at *2 (M.D. La. 2021) (citations omitted).

[9] *Rushing v. Yeargain*, No. 19-cv-653-JWD-SDJ, 2021 U.S. Dist. LEXIS 81687, at *6, 2021 WL 1669351 (M.D. La. Apr. 28, 2021) (citations omitted).

Plaintiffs first seek reconsideration of the Magistrate Judge holding that the non-expert discovery deadline in this case was August 7 as it was both manifestly erroneous and legal error. There was *never* any agreement to this date by Plaintiffs as the Magistrate Judge wrote. (ECF #201 at "[T]he Court agrees with the Defendants that the non-expert discovery deadline was set to close on August 7, 2023, as that was the latest date agreed upon."). The Plaintiffs specifically sought guidance from the Court in resolving the dispute about the discovery deadline because "the parties are unable to agree" on July 21, 2023. (ECF #170 at 2-3). Thus, the Magistrate Judge faulting Plaintiffs for not "secur[ing] a court order setting a deadline," (ECF #201 at 11), when Plaintiffs specifically asked for the Court's intervention was error.

Plaintiffs *always* contended this date was too soon to conclude fact discovery, as evinced by the numerous communications with Defendants requesting documents. *See* Exhs. D & H. The idea that because the "Defendants did not agree to conduct any non-expert discovery" past August 7 means that discovery closes on that date, (ECF #201 at 11) would incentivize parties to simply not disclose damning documents they do not wish to produce until after the date that party itself states it will no longer provide discovery. Given the discovery rights conferred upon parties, *see* Point I *supra*, this result is not defensible and would be dangerous precedent.

Finally, the Magistrate Judge's holding that "Plaintiffs had [sic] sufficient opportunity to prepare and conduct all necessary non-expert discovery deadline," *id*. at 11, is incorrect. On August 7, the Defendants had in their possession numerous detailed specific discovery demands for documents that go to the heart of this case. *See* Exhs. C, G, & H. Defendants chose to ignore them and let August 7 pass. The Magistrate Judge's decision, coupled with his *sua sponte* order the same day that Plaintiffs could not file any more discovery motions before the preliminary injunction hearing (ECF #200), rewards the Defendants for simply not complying with the law, and sets

precedent for a party to not answer timely propounded discovery by a deadline, then claim they no longer can be required to produce documents timely requested—as the Defendants here are doing. The Magistrate Judge's rulings leave Plaintiffs with absolutely no recourse to obtain discovery of the documents they requested and identified before the passing of any alleged deadline.

This Court should reverse this portion of the Magistrate's Order.

**b.  The Magistrate Judge's Determination that Plaintiffs Records Before June 1, 2023 Are Irrelevant is Factually and Legally Wrong**

The Magistrate Judge's denial of Plaintiffs' ability to obtain discovery documenting the conditions inside of BCCY-WF—including use of solitary confinement, lack of services, lack of teachers, and all other claims made by Plaintiffs—was predicated on both a factual and legal error. First, the Magistrate Judge legally erred. Without citing any cases, the Magistrate Judge found that documents prior to June 1, 2023—a date arbitrarily and unilaterally chosen by Defendants—are categorically not relevant to the preliminary injunction because the issue is the "the current conditions at BCCY-WF." *Id*. at 8. This legal holding is contrary to long-established Fifth Circuit law that "a defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future."[10] As far back as 1967, the Fifth Circuit wrote that a "*respondent's past conduct is a relevant factor to be considered*" when a court adjudicates a claim for injunctive relief.[11] Indeed, in one of the very cases cited by Defendants in the Reponses to Plaintiffs' Motion to Compel, the Fifth Circuit held: "[A] permanent injunction is appropriate **only if a defendant's past conduct** gives rise to an inference that, in light of present circumstances, there is a reasonable

---

[10] *CAE Integrated, L.L.C. v. Moov Techs.*, Inc., 44 F.4th 257, 263 (5th Cir. 2022) (quoting *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978)).

[11] *Offner v. Shell's City, Inc.*, 376 F.2d 574, 576 (5th Cir. 1967) (emphasis added).

likelihood of future transgressions."[12] While *Valentine* addresses past conduct in the context of issuing a permanent injunction rather than a preliminary one, that is a distinction without difference here. As this Court wrote in its September 23, 2022 opinion in this case, the first factor a court considers in granting a preliminary injunction is the Plaintiffs' likelihood of success on the merits for a permanent injunction. *Smith et al. v. Edwards et al.*, 3:22-cv-573 (M.D. La. Sept. 9, 2023) at Slip-Op 37. Thus, the considerations in whether a party is entitled to a permanent injunction are also relevant for a preliminary one. OJJ's use of solitary confinement; whether it provided "the same" services and treatment at BCCY-WF; the recreational opportunities given to youth; whether OJJ complied with laws about education and special education—the history of OJJ's compliance or non-compliance since October 2022 "indicates that there is a reasonable likelihood of further violations in the future."[13]

Moreover, the Supreme Court has held that an incarcerated plaintiff can establish deliberate indifference by showing that a risk of harm "was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past."[14] By denying Plaintiffs access to any discovery prior to June 1, 2023, the Magistrate Judge's order improperly deprives Plaintiffs of an opportunity to carry their burden of establishing deliberate indifference by showing that the challenged conditions were "longstanding," "well-documented," or "expressly noted by prison officials in the past."

---

[12] *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021) (emphasis added) (quoting *Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.,* 854 F.3d 765, 784 (5th Cir. 2017)

[13] *CAE Integrated, L.L.C.*, 44 F.4th at 263 (5th Cir. 2022) (quoting *Blatt*, 583 F.2d at 1334).

[14] *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (internal quotes omitted).

Beyond that, Defendants likely will claim that they have remedied some of the challenged conditions at Angola, such that injunctive relief is not appropriate. In a case involving conditions at the Mississippi State Penitentiary at Parchman, the Fifth Circuit held:

> When defendants are shown to have settled into a continuing practice . . . courts will not assume that it has been abandoned without clear proof . . .. It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption.[15]

The Fifth Circuit held that the "protracted" nature of the "inhumane conditions and practices" at Parchman showed the necessity for injunctive relief, adding, "[i]t is significant that the improvements made at Parchman were not undertaken until after the filing of this suit."[16] By denying Plaintiffs all discovery prior to June 1, 2023, the Magistrate Judge's order has improperly deprived Plaintiffs of the opportunity to show the "protracted" nature of the conditions at Angola, and that Defendants' post-litigation steps to address some conditions were a strategic attempt to defeat injunctive relief and that there is a "probability of resumption."

Next, the Magistrate Judge's decision was based on a clearly erroneous understanding of the facts—an understanding stemming from the Defendants' misrepresentations in its Response. The Magistrate Judge wrote, "The Court notes that Plaintiffs have made no attempt to limit the scope of documents sought prior to June 1, 2023 to the extent they are pertinent to conditions at BCCY-WF." (ECF #201 at 8). This determination was based on the Defendants' blatant misrepresentation that Plaintiffs had asked for "every document, note, memorandum, contact, report, summary, photo, video, audio recording, letter, e-mail, text, phone call, chat message, fax,

---

[15] Gates v. Collier, 501 F.2d 1291, 1321 (5th Cir. 1974) (quoting United States v. Oregon State Med. Soc., 343 U.S. 326, 333 (1952)).

[16] *Id.*

social medial message, and interview covering virtually every aspect of BCCY-WF since October 17, 2022" without any specification. (ECF #201 at 7) (quoting ECF #198 (Defendants' Response to Motion to Compel) at 6-7). As has been documented above, well before the Defendants made this incorrect statement to the Court, Plaintiffs had sent exhaustive communication requesting *limited, specific documents* dating back prior to even the illegitimate August 7 discovery deadline. *See* Exhs. C, G, H, & A.

Moreover, the Magistrate Judge repeatedly crediting the unsupported and self-serving assertions of Defendants' counsel as reasons to deny Plaintiffs' motion was error. (ECF #201 at 4, 7-10). "Statements by counsel in briefs are not evidence."[17] None of the Defendants' representations upon which the Magistrate Judge relied were supported by affidavits, or indeed by any other evidence whatsoever. Nevertheless, the Magistrate Judge simply assumed the truth of these assertions, and indeed faulted Plaintiffs' counsel for failing to concede their truth. (ECF #201 at 9) (noting that "Defendants represent that they have produced over 3,600 pages of youth records" and then faulting Plaintiffs for "fail[ing] to mention these productions"); *id*. at 10-11 (similar). The Magistrate Judge clearly erred and acted contrary law in placing decisive weight on the unsupported assertions of Defendants' counsel.

The Magistrate Judge's factual understanding and findings were clearly erroneous and contrary to the law. This Court should reverse this portion of the Magistrate Judge's Order.

### c. The Magistrate Judge Factually and Legally Erred in Denying Plaintiffs' Request to Produce Youth's Records Showing Services Provided Before Being Transferred to BCCY-WF

Relying on its conclusion that documents prior to June 1, 2023 were not relevant, the Magistrate Judge also found that the files of individual youths before they arrived at BCCY-WF—

---

[17] *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980)

including the services, treatment plans, and other documents relating to their specific care and plans—were not relevant to the pending proceedings. (ECF #201 at 9-10). The Magistrate Judge faulted Plaintiffs for "failing to describe with any particularity the categories of documents and information sought." *Id*. at 9.

These conclusions are factually and legally erroneous. The Plaintiffs brought this precise issue to the Magistrate Judge's attention on July 21, 2023, seeking the Court's guidance on the parties' inability to agree on whether the Plaintiffs are entitled to "Youth files: Defendants agree to provide youth files from the point of transfer to OJJ's Angola facility, along with the reason for their transfer. Plaintiffs request the youth's secure care file, which includes treatment received at other facilities." (ECF #170 at 3). Moreover, Plaintiffs' very first Request for Production—which the Magistrate Judge stated was reviewed in making his decision, *id*. at 6-7—includes the very specific categories of documents sought for each youth. *See* Exh. I at 6-7.

As stated above, one of the primary issues before this Court in this hearing is whether OJJ's promise that youths will receive "the same" treatment and services at BCCY-WF as other OJJ facilities was honored or broken. *See Smith*, 3:22-cv-572, Slip. Op. at 40 (stating that Plaintiff failed to refute testimony that youth would receive "the same or greater extent and in the same manner these services are provided to all youth in OJJ custody."). The most appropriate way to determine if youth in BCCY-WF are receiving the "same" or "ramped up" services as other OJJ facilities is comparing their plans and treatment prior to arriving at BCCY-WF to what occurred at BCCY-WF. Nevertheless, Defendants unilaterally determined that they would not provide files for youth other than the services—or lack thereof—they received at BCCY-WF, making it impossible for this Court to adjudicate Plaintiffs' claim on a complete record.

This Court should reverse this portion of the Magistrate Judge's Order.

**III.    Reconsideration of a Portion of Order ECF #200 *Sua Sponte* Precluding Plaintiffs from Filing Any Further Non-Expert Discovery Motions**

On August 7, 2023, Plaintiffs filed their Second Motion to Compel and Request for Expedited Consideration Thereon. (ECF #197). This motion details the bad faith with which the Defendants have engaged in the discovery process with regards to video evidence—not one minute of which has been produced despite Plaintiffs' relentless efforts and specific requests. (ECF #197-1 through 197-13). On August 8, the Magistrate Judge granted expedited consideration of that motion, but allowed the Defendants two full days to file their Response. (ECF #200). The Defendants filed their Response long after the close of business on August 10, 2023. *See* Exh. J (email from ECF reflecting that Defendants' Response was not filed until 6:00 p.m. central). Even though the hearing before this Court starts Tuesday, the Magistrate Judge has made no ruling on Plaintiffs' motion. Defendants have claimed OJJ's IT Department have been hard at work trying to comply with Plaintiffs' request, but not one minute of footage has been produced. However, OJJ IT had time to add a "FAQ" page to their website on August 7, 2023 asserting at length why Plaintiffs' claims are false and untrue. *See* Exhibit K (Aug. 7, 2023 Update to OJJ BCCY-WF Website), available at: https://ojj.la.gov/news/frequently-asked-questions (last visited Aug. 13, 2023).

Of concern here, however, is in the same order granting expedited consideration, the Magistrate Judge *sua sponte* ordering: "No further motions pertaining to non-expert discovery will be entertained prior to the preliminary injunction hearing." (ECF #200). Hours later, the Magistrate Judge issued his ruling denying Plaintiffs' First Motion to Compel.

This Order is a clear abuse of discretion and should be reversed. A party's statutory discovery rights have been discussed above. *See* Point I, *supra*. At the time this Order was *sua sponte* handed down, there were numerous on-going discovery disputes about timely, tailored,

specific requests made by Plaintiffs. *See* Exhs. A, D, G, & H. This Order precludes Plaintiffs from having any recourse for the Defendants not answering these timely requests, and indeed rewards the Defendants delaying their response or choosing not to respond at all. Such an Order incentivizes parties to simply ignore discovery requests for unfavorable documents until a discovery deadline passes, then claim it is too late for the timely requests to be enforced.

This Court should reverse this Portion of Order ECF #200.

**IV.    This Court Should Order the Immediate Production of the Requested Documents by Defendants**

Given that trial of this preliminary hearing is set to commence Tuesday August 15, 2023, if this Court grants some or all of the relief requested above in reconsideration, the Plaintiffs would seek an order to compel the Defendants to produce the relevant, specific documents listed below by no later than 5 p.m. August 14, 2023. This request is timely under Local Rule 26(d)(1). Pursuant to Local Rule 37, the original requests for production at issue are (and also contained in Exhibit I in their entirety):

**PLAINTIFFS' REQUEST FOR PRODUCTION 1:**

1. For Plaintiff Charles C., and each child currently held at the BCCY-WF facility at Angola, and all children held there on July 20, 2023, all Documents in the possession of Defendants concerning each youth, including but not limited to those included in the youth's Master File. This request includes, but is not limited to, the following documents as relevant to each youth:

- Any grievances filed and any responses to those grievances;
- Any Transition Treatment Unit ("TTU") Referral Forms;
- Any multidisciplinary team ("MDT") assessments, meeting notes, or other records produced prior to transfer of the youth to and/or from the BCCY-WF facility at Angola;
- Any correspondence between the MDT, Case Manager, Director of Treatment and Rehabilitation, and/or the BCCY-WF facility at Angola;
- Any medical records, including mental health and drug test records;
- Any Weekly Contact Progress Notes or other progress notes;
- Any documents included in the youth's Behavior and Accommodations Binder ("BAB");

- Any Behavior Improvement Plan and any logs or notes or documents related to behavior infractions, discipline, and improvements, including documentation of time spent in cell confinement for disciplinary reasons;
- Any logs or similar Documents recording minutes of counseling services provided and by staff with which job titles;
- Any and all records of cognitive-behavioral groups, anger management groups, or other forms of group therapy in which youth participated or had the opportunity to participate at the BCCY-WF facility at Angola.
- Any Individualized Education Plans (IEPs) or 504 Plans, including any Behavior Intervention Plans;
- Any Progress Reports generated in accordance with an IEP;
- Any logs or similar Documents recording minutes of related services provided in accordance with an IEP;
- Any and all logs or similar Documents recording minutes or hours of in-class school instruction and computer-based schooling;
- Any and all records of visits with family and guardians, including by phone, video and in-person.

**DEFENDANTS' ANSWER TO REQUEST 1:** ANSWER: Defendants incorporate the Time Limit Objection. Defendants further object to the broad scope of the documents requested. Subject to these objections, responsive documents are being produced.

**PLAINTIFFS' REQUEST FOR PRODUCTION 8:** All DOCUMENTS and COMMUNICATIONS concerning any agreements with the Louisiana Special School District (SSD) and/or any other state agencies to provide teachers, resources, and services at BCCY-WF to children with disabilities in the putative subclass and any other current and future youths with special educational needs, including but not limited to, all current and future youths with disabilities within the meaning of the ADA and Section 504 of the Rehabilitation Act.

**DEFENDANTS' ANSWER TO REQUEST 8:** *ANSWER: Subject to the Time Limit Objection, responsive documents are being produced.*

**PLAINTIFFS' REQUEST FOR PRODUCTION 9:** All DOCUMENTS and COMMUNICATIONS describing the range of mental health, medical care, healthcare, emergency, disability-related services and other services offered by providers with whom OJJ has or will contract to provide care to youths at BCCY-WF. This information shall be provided as of October 17, 2022 and July 17, 2023.

**DEFENDANTS' ANSWER TO REQUEST 9:** ANSWER: Defendants incorporate the Time Limit Objection. Defendants also object that the request is vague and uncertain. Subject to the objections, responsive documents are being produced.

**PLAINTIFFS' REQUEST FOR PRODUCTION 11:** All DOCUMENTS and COMMUNICATIONS describing measures taken or planned – including physical and staffing measures – to address the risk of suicide or self-harm of youth held in barred cells at the BCCY-WF facility at Angola, including any measures regarding youth with mental health needs.

**DEFENDANTS' ANSWER TO REQUEST 11:** Defendants incorporate the Time Limit Objection. Defendants further object that at the Status Conference on July 19, 2023, Chief Judge Dick explicitly advised the parties that the hearing on the motion for preliminary injunction was not for the purpose of relitigating BCCY-WF's policies.

**PLAINTIFFS' REQUEST FOR PRODUCTION 12:** All Documents showing DPSC's and/or OJJ's practices and steps taken since October 17, 2022, to ensure the air temperature in the cells and all other areas of the BCCY-WF at Angola facility does not exceed 85 degrees Fahrenheit, including but not limited to: ordering and installing fans, "swamp coolers," and/ or air conditioning systems; power outages, work orders, construction contracts, and repair logs of such equipment; plans for power outages; provision of potable cold drinking water, provision of ice, access to showers, and any other remedial efforts.

**DEFENDANTS' ANSWER TO REQUEST 12:** ANSWER: Subject to the Time Limit Objection, responsive documents are being produced.

**PLAINTIFFS' REQUEST FOR PRODUCTION 13**: All DOCUMENTS and COMMUNICATIONS relating to recording or logging the ambient temperature, tap water temperature, shower temperature, or any other temperatures at BCCY-WF.

**DEFENDANTS' ANSWER TO REQUEST 13:** Subject to the Time Limit Objection, responsive documents are being produced.

**PLAINTIFFS' REQUEST FOR PRODUCTION 14:** All DOCUMENTS and COMMUNICATIONS, including but not limited to records and log books, which reflect the youth at BCCY-WF's ability to access ice, water, and cold showers.

**DEFENDANTS' ANSWER TO REQUEST 14:** Subject *to the Time Limit Objection, responsive documents are being produced.*

**PLAINTIFFS' REQUEST FOR PRODUCTION 15:** All DOCUMENTS and COMMUNICATIONS relating to health risks posed to youth as a result of high ambient temperatures at BCCY-WF, including without limitation DOCUMENTS and COMMUNICATIONS relating to policies, rules, regulations, and practices of remedial measures that must be taken when the ambient temperature exceeds 85 degrees Fahrenheit.

**DEFENDANTS' ANSWER TO REQUEST 15:** Defendants incorporate the Time Limit Objection. Defendants further object that at the Status Conference on July 19, 2023, Chief Judge Dick explicitly advised the parties that the hearing on the motion for preliminary injunction was not for the purpose of relitigating BCCY-WF's policies.

**PLAINTIFFS' REQUEST FOR PRODUCTION 16:** All DOCUMENTS and COMMUNICATIONS relating to policies, rules, regulations, and practices relating to extreme weather events or weather emergencies.

**DEFENDANTS' ANSWER TO REQUEST 16:** Defendants incorporate the Time Limit Objection. Defendants further object that at the Status Conference on July 19, 2023, Chief Judge Dick explicitly advised the parties that the hearing on the motion for preliminary injunction was not for the purpose of relitigating BCCY-WF's policies.

**PLAINTIFFS' REQUEST FOR PRODUCTION 17:** All DOCUMENTS and COMMUNICATIONS relating to heat-related illness or the exacerbation of other health problems as a result of high temperatures.

**DEFENDANTS' ANSWER TO REQUEST 17:** Defendants incorporate the Time Limit Objection. Defendants also object that the request is vague and uncertain. Subject to the objections, Defendants are not in possession of documents responsive to this request.

**PLAINTIFFS' REQUEST FOR PRODUCTION 18:** All COMMUNICATIONS between Defendants and any person relating to the climate conditions at BCCY-WF.

**DEFENDANTS' ANSWER TO REQUEST 18:** Subject to the Time Limit Objection, responsive documents are being produced.

**PLAINTIFFS' REQUEST FOR PRODUCTION 19:** All DOCUMENTS and COMMUNICATIONS showing policies, practices and all measures taken – including staffing, training and communication with youth – to provide discipline to youth held at BCCY-WF; the description shall include the development of specific policies and practices, behavior intervention, room confinement, limits on the duration of confinement in cells, loss or granting of privileges, graduated discipline, minimum out-of-cell time, extension of time in the Angola placement, and group or collective discipline.

**DEFENDANTS' ANSWER TO REQUEST 19:** Defendants incorporate the Time Limit Objection. Defendants further object that at the Status Conference on July 19, 2023, Chief Judge Dick explicitly advised the parties that the hearing on the motion for preliminary injunction was not for the purpose of relitigating BCCY-WF's policies. Subject to the objections, responsive documents are being produced.

**PLAINTIFFS' REQUEST FOR PRODUCTION 20:** All DOCUMENTS and COMMUNICATIONS showing duration of time youth at the OJJ Angola facility spent in school, recreation, showers, counseling, therapy, free time, or any other out of cell time or activity for the youth held at BCCY-WF since October 17, 2022. These documents shall include, among other things, activity sheets, logbooks, schedules and other documents used and/or maintained to record or track the movement and activities of the youth.

**DEFENDANTS' ANSWER TO REQUEST 20:** Subject to the Time Limit Objection, responsive documents are being produced

Plaintiffs' correspondence requesting the specific documents below as part of the Requests for Production is attached here as Exhibits A, D, G, & H. The required declaration of the truthfulness of the assertions above is attached as Exhibit L.

Since they have not been produced, Plaintiffs ask the Court to order the production of the following documents. The relevance of each which has been discussed above and need not be repeated:

1. **Logbooks from the Communication Center from October 17, 2022 to present**.

2. **Logbooks from the Classrooms from October 17, 2022 to present.**

3. **All "Shift Packets" emailed or otherwise distributed to supervisors, as well as copies of the emails distributing the "shift packets" dating back to October 17, 2022.**

4. **All medical reports, cell restriction reports, use of force reports, UORs, medical records, logs, movement logs, body-worn camera, cell surveillance, or other documentation of known youth's attempted suicide and his subsequent placement on "suicide watch."**

5. **The documents relating to high temperatures and accommodations made for youth at BCCY-WF previously identified in Plaintiffs' Requests for Production Nos. 12-18 and specified in Plaintiffs August 4, 2023 letter to Defendants.**

6. **Body Worn Camera of the incident wherein JJS Frank Edwards Maces Known Youth on August 2, 2023 from 3:15 p.m. to 4:30 p.m.**

7. **All Use of Force or Use of Intervention Reports dating back to March 1, 2023**.

Each category of documents is essential for this Court to properly evaluate the claims brought in Plaintiffs' July 17, 2023 Motion for Preliminary Injunction.

Respectfully Submitted, this 13th day of August, 2023.

| | |
|---|---|
| /S/: *David J. Utter* | /S/: *Christopher J. Murell* |
| David J. Utter * | Christopher J. Murell |
| Louisiana Bar Number: 23236 | Louisiana Bar Number: 32075 |
| William R. Claiborne** | Murell Law Firm |
| Georgia Bar Number: 126363 | 2831 St. Claude Avenue |
| The Claiborne Firm, P.C. | New Orleans, Louisiana 70117 |
| 410 East Bay Street | (504) 717-1297 Telephone |

Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
David@Claibornefirm.Com
Will@Claibornefirm.Com


/S/: *Hector Linares*
Hector Linares
Louisiana Bar Number: 28857
Sara Godchaux
Louisiana Bar Number: 34561
Stuart H. Smith Law Clinic
Loyola University New Orleans College Of Law
7214 St. Charles Avenue, Box 902
New Orleans, Louisiana 70118
(504) 861-5560 Telephone
(504) 861-5440 Facsimile
Halinare@Loyno.Edu
Shgodcha@Loyno.Edu


/S/: *David Shanies*
David Shanies**
New York Bar Number: 4471140
Shanies Law Office
110 West 40th Street, 10th Fl.
New York, New York 10018
Tel. (212) 951-1710
Fax (212) 951-1350
Cell (646) 515-2151
David@Shanieslaw.Com

(504) 233-6691 Facsimile
Chris@Murell.Law


/S/: *Nancy Rosenbloom*
Nancy Rosenbloom**
New York Bar Number: 2168425
Aclu National Prison Project
125 Broad Street
New York, Ny 10004
Telephone: (212) 549-2500
Facsimile: (212) 549-2652
Nrosenbloom@Aclu.Org

/S/: *Tammie Gregg*
Tammie Gregg***
Mn Bar Number: 026240
Aclu National Prison Project
915 15th St. N.W., 7th Floor
Washington D.C. 20005
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
Tgregg@Aclu.Org

/S/:  Marisol J. Dominguez-Ruiz
Marisol J. Dominguez-Ruiz**
ACLU National Prison Project
39 Drumm Street
San Francisco, Ca 94111
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
Mdominguez-Ruiz@Aclu.Org

/S/ *Meghan Matt*
MEGHAN MATT
La. Bar No. 39975
ACLU Foundation of Louisiana
1340 Poydras St., Suite 2160
New Orleans, LA 70112
Telephone: (504) 522-0628
Facsimile: (504) 613-6511
mmatt@laaclu.org

_/S/ Susan M. Meyers_
Susan M. Meyers
Louisiana Bar Number: 29346
Lauren Winkler
Louisiana Bar Number: 39062
Ashley Dalton
Louisiana Bar Number: 40330
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, La 70170
Telephone: 504-512-8649
Susan.Meyers@Splcenter.Org
Lauren.Winkler@Splcenter.Org
Ashley.Dalton@Splcenter.Org

\* _Lead Counsel_
\*\*Appearing _Pro Hac Vice_
\*\*\*Appearing _Pro Hac Vice_ And Not
Admitted In Dc; Practice Limited To Federal
Courts

**Attorneys For Plaintiffs**

## Certificate Of Service

I hereby certify that on this 13th day of August, 2023, a copy of the foregoing was served upon all Counsel of record by electronic submission.

_/S/ Christopher J. Murell_
Christopher J. Murell