UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALEX A., by and through his guardian,** <br> **Molly Smith; BRIAN B.; and** <br> **CHARLES C., by and through his guardian,** <br> **Kenione Rogers, individually and on behalf** <br> **of all others similarly situated** | **CIVIL ACTION** <br><br> **NO. 22-573-SDD-RLB** |
| **VERSUS** | |
| **GOVERNOR JOHN BEL EDWARDS,** <br> **in his official capacity as Governor of Louisiana;** <br> **WILLIAM SOMMERS, in his official** <br> **capacity as Deputy Secretary of the** <br> **Office of Juvenile Justice,** <br> **JAMES M. LEBLANC, in his official capacity** <br> **as Secretary of the Louisiana Department** <br> **of Public Safety & Corrections** | |

## ORDER

Before the Court is Plaintiffs' Motion to Compel. (R. Doc. 197). The Court ordered expedited briefing. (R. Doc. 200). The motion is opposed. (R. Doc. 205).

**I.    Background**

This putative class action was commenced on behalf of certain individuals under the secure care of the Office of Juvenile Justice ("OJJ") to obtain injunctive relief preventing their transfer from the Bridge City Center for Youth ("BCCY") to a location at the Louisiana State Penitentiary at Angola known as the Bridge City Center for Youth at West Feliciana ("BCCY-WF"). (R. Docs. 1, 96).

The operative pleading in this action is the First Amended Class Action Complaint filed by Alex A., by and through his guardian Molly Smith, Brian B.,[1] and Charles C., by and through

---

[1] Brian B. was no longer a minor at the time the First Amended Complaint was filed, but was a minor when he was adjudicated delinquent. (R. Doc. 95 at 1 n.1). Plaintiffs' counsel have filed a Suggestion of Death notifying the Court that Brian B. died on April 20, 2023. (R. Doc. 162).

his guardian Kenione Rogers, (collectively, "Plaintiffs") on behalf of themselves and others similarly situated against Government John Bel Edwards, Deputy Secretary of the OJJ Williams Sommers, and the Secretary of the Louisiana Department of Public Safety & Corrections James M. LeBlanc (collectively, "Defendants"). (R. Doc. 96, "Amended Complaint").[2] In this Amended Complaint, Plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment (Count I), declaratory and injunctive relief for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Count II), and declaratory and injunctive relief for violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. (Count III). (R. Doc. 96 at 35-39).

Plaintiffs' first Motion for Preliminary Injunction sought to prohibit transfers from BCCY to BCCY-WF. (R. Doc. 3). Pursuant to a protective order, the parties conducted preliminary discovery, including limited depositions, written discovery, and expert discovery in preparation for a preliminary injunction hearing. (*See* R. Docs. 36, 39; *see also* R. Doc. 95 at 5). The parties also agreed to allow Plaintiffs' expert to conduct a site inspection of the BCCY-WF prior to the hearing. (R. Doc. 25). The district judge denied Plaintiffs' first Motion for Preliminary Injunction on September 23, 2022. (R. Doc. 79).

On October 31, 2022, Plaintiffs filed their Motion for Class Certification. (R. Doc. 99). The Motion for Class Certification remains pending before the district judge. There is no certified class.

On November 21, 2022, Defendants filed a Motion to Dismiss for Lack of Standing ("Motion to Dismiss"). (R. Doc. 102). Defendants then sought a stay of discovery until

---

[2] Alex A. commenced this action on August 19, 2022 by filing the original Complaint. (R. Doc. 1). The district judge denied his Motion for Temporary Restraining Order and Motion for Preliminary Injunction. (R. Doc. 15; R. Doc.. 79).

resolution of the Motion to Dismiss (R. Doc. 103), which the undersigned granted. (R. Doc. 118).

On July 17, 2023, Plaintiffs filed a second Motion for Preliminary Injunction. (R. Doc. 163). Plaintiffs now seek, in light of the current conditions at BCCY-WF, an order from the Court to the Defendants to (1) immediately transfer Plaintiff Charles C. and all putative class members currently housed at BCCY-WF out of the facility "to OJJ [juvenile's] facilities that provide all legally-required services, education and supports for [juveniles] adjudicated delinquent," and to (2) immediately cease the placement or transfer of juveniles in OJJ's custody to BCCY-WF. (R. Doc. 163-1 at 1-2). In the alternative, Plaintiffs seek modifications of the current conditions of confinement at BCCY-WF. (R. Doc. 163-1 at 2-3).

On July 19, 2023, the district judge held a status conference, set a preliminary injunction hearing to be held on August 15, 2023, and required the parties to meet and confer for the purposes of submitting a joint proposed discovery scheduling order. (R. Doc. 167).

On July 20, 2023, the district judge conducted a site visit. (R. Doc. 168).

On July 21, 2023, the parties submitted a joint status report detailing the parties' positions, including agreements and disagreements, regarding the scope of, and deadlines for, limited discovery prior to the preliminary injunction hearing. (R. Doc. 170).

The same day, Defendants moved to withdraw their Motion to Dismiss (R. Doc. 169), which the district judge granted (R. Doc. 171).

The record indicates that the parties have been conducting discovery in preparation of the preliminary injunction hearing set for August 15, 2023 in accordance with their joint status report.

On August 1, 2023, Plaintiffs filed a Motion to Compel seeking an order compelling the production of the following:

> (1) Produce responsive documents and other information dating back to the first transfer of a youth into the Angola juvenile facility in October 2022;
>
> (2) Produce complete files regarding youth currently held at the OJJ facility at Angola;
>
> (3) Produce personnel records as requested by Plaintiffs; and
>
> (4) Comply in good faith with Plaintiffs' fact discovery requests issued prior to August 11, 2023.

(R. Doc. 188). Largely because the limited discovery agreed upon by the parties was limited to the scope of current conditions at BCCY-WF, the Court denied this first Motion to Compel, further ordering that all non-expert discovery must be completed (and any related discovery motions filed) by August 8, 2023. (R. Doc. 201).

On August 8, 2023, Plaintiffs filed this second Motion to Compel. (R. Doc. 197). Through this motion, Plaintiffs seek an order compelling Defendants to do the following:

> (1) Produce . . . relevant video footage responsive to Plaintiffs' Requests for Production, narrowed as described in Plaintiffs' August 7, 2023 Motion to Compel, as well as a list of the cameras at the facility;
>
> (2) Preserve all video footage relevant to this litigation that is in possession of any defendant in this matter, as is required by law, including all video recordings of the youth facility at Angola State Prison, also known as the Bridge City Center for Youth at West Feliciana, from the date or the arrival of the first juvenile detainee (approximately October 2022); and
>
> (3) Search for and produce . . . any and all electronic communications, including emails, text messages, and files from any other messaging system, that are responsive to Plaintiffs' Requests for Production and have not yet been produced to Plaintiffs . . . using a search, collection, and review process to be agreed upon by the parties . . . .

(R. Doc. 197-14). Defendants oppose the relief sought primarily on the bases that the Rule 34 discovery requests do not seek the surveillance video data sought, preservation of

4

surveillance video would be overly burdensome, and that the requests are irrelevant and disproportionate to the needs of the case. (R. Doc. 205).

Defendants represent that they have produced over 6,300 pages of records in response to Plaintiffs' discovery requests for the purposes of the preliminary injunction hearing. (R. Doc. 205 at 2). Furthermore, in earlier briefing, Defendants represented that Plaintiffs has deposed 17 witnesses as of August 7, the parties' experts were to be deposed on August 9 and 10, Plaintiffs' expert tours were to be conducted on August 11. (R. Doc. 198 at 3).

## II.    Law and Analysis

### A.    Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

A party must respond or object to a request for production within 30 days after service of the discovery. *See* Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b).[3] If a party fails to respond fully to written discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37(a).

**B.     Analysis**

As an initial matter, the district judge requested the parties to submit a joint proposed discovery scheduling for the limited purposes of conducting limited discovery prior to the preliminary injunction hearing scheduled on August 15, 2023. (R. Doc. 167). Consistent with this order, the parties submitted a Joint Status Report in which they agreed to certain deadlines and to limit written discovery "within the limited scope of issues raised by Plaintiffs' Motion for Preliminary Injunction." (R. Doc. 170 at 2). Given that the parties did not obtain a court-ordered scheduling order governing pre-hearing discovery pursuant to Rule 16, the parties have conducted agreed-upon discovery within the scope of their agreed deadlines. *See* LR 26(d)(1).[4]

---

[3] The parties agreed that responses to written discovery would be due on July 31, 2023. (R. Doc. 170 at 2).
[4] In staying discovery in light of the pending Motion to Dismiss, the undersigned informed the parties to "immediately contact the undersigned upon resolution of the motion so that the Court may issue a new Scheduling Order. (R. Doc. 118 at 6). The parties did not contact the undersigned for the issuance of such an order.

6

The Court further notes that while the instant Motion to Compel concerns written discovery, Plaintiffs failed to "quote verbatim" each request for production to which the motion is addressed, "followed immediately by the verbatim response or objection which provided thereto." LR 37. Instead, Plaintiffs simply discuss the information they are seeking without any reference to particular requests for production. Plaintiffs did, however, attach the written discovery requests and responses as complete exhibits the instant motion. (*See* R. Docs. 197-3, 197-3). Given the expedited nature of the instant discovery dispute, the Court will address the merits of the Motion to Compel even though Plaintiffs have not identified the specific requests for production in dispute.

Counsel for the parties met and conferred with respect to these disputes, but were unable to resolve them without court intervention. (*See* R. Docs. 197-5, 197-7 through 197-14). Having reviewed the arguments of the parties, the Court will deny Plaintiffs' Motion to Compel.

    **1.    Surveillance Video Footage**

For the purposes of the instant motion, Plaintiffs seek video data from the following locations with certain "sampling" periods: (1) the "tiers" including all cell entrance, showing "[a] the entrance to every cell occupied by an incarcerated youth at BCCY-WF, [b] any interaction between any incarcerated youth inside a cell and any staff member at BCCY-WF, and [c] the portal or gate connecting the cell housing areas to other parts of BCCY-WF";[5] (2) the classrooms at BCCY-WF;[6] (3) the Cell Area, classrooms, dining areas, and indoor recreational areas for the

---

[5] Plaintiffs' proposed sampling period is "the time period 6:00 am to 6:00 pm on: (1) June 16, 2023 through June 22, 2023 and July 4, 2023 through July 12, 2023; and (2) the first Monday, second Tuesday, third Wednesday, fourth Thursday, and first Friday of each calendar month" from February 20, 2023 through July 31, 2023. (R. Doc. 197-1 at 7).

[6] Plaintiffs' proposed sampling period is "the time period 7:00am to 4:00pm on the first Monday, second Tuesday, third Wednesday, fourth Thursday, and first Friday of each calendar month" from February 20, 2023 through July 31, 2023, "excluding the alleged two-week summer break from school that was referenced during [the] July 20, 2023 site visit." (R. Doc. 197-1 at 7).

entire period beginning at 5:00 a.m. on July 19, 2023, and ending at 10:00 p.m. on July 20, 2023, the date of the district judge's site visit. (R. Doc. 197-1 at 7).

As discussed above, Plaintiffs do not identify any specific Rule 34 documents requests seeking any surveillance video footage. Defendants correctly point out that "[n]ot one request for production specifically asks for video data, surveillance videos, video footage, or body camera videos" or "documents showing the location of all cameras at BCCY-WF." (R. Doc. 205 at 3). Defendants further represent that "no interrogatory requested a list of all cameras at BCCY-WF either." (R. Doc. 205 at 3 n.2).

In support of their motion, Plaintiffs do not reference any specific documents request, instead asserting that "[t]he production of the video data requested by Plaintiffs (as specified below)" in the body of the memorandum supporting Plaintiffs' Motion to Compel is "proportional to the needs of the case." (R. Doc. 197-1 at 4). The closest Plaintiffs come to identifying any specific language in the Rule 34 request seeking surveillance video recordings is in reference to its definition of "Documents" in the request. (*See* R. Doc. 197-1 at 5). This definition of "Documents" provides a non-exhaustive list of example documents sought, which includes video recordings." (R. Doc. 197-3 at 5). Within the actual documents requests, only Request for Production No. 1 and Request for Production No. 2 reference any sought "video" recordings at all, and that is solely in the context of family and guardian visits. (*See* R. Doc. 197-3 at 9, 21). Plaintiffs simply did not make a specific request for any surveillance video, or the production of any documents identifying the location of camera locations, in the document requests.

The Court will assume that Plaintiffs are relying on Requests for Production No. 1 as the primary source for their supposed request for surveillance video recordings. That request broadly

seeks, for "each child currently held at the BCCY-WF facility at Angola, and all children held there on July 20, 2023, all Documents in possession of Defendants concerning each youth, including but not limited to those included in the youth's Master File." (R. Doc. 197-3 at 7). The request contains 15 example categories of responsive documents, but the only one referencing "video" involves family visits. To the extent Plaintiffs were seeking the production of surveillance video footage, they could have specified that in their document request. None of the requests for production appears to "describe with reasonable particularity" any request for surveillance video recordings. *See* Fed. R. Civ. P. 34(b)(1)(A). It is also worth noting that the parties' joint status report explaining their discovery agreements and disagreements does not mention any specific issue with respect to the production of video surveillance recordings (or electronically stored information ("ESI") in general).

It appears that the actual source for the demand for surveillance video recordings took the form of a letter sent by Plaintiffs' counsel on July 20, 2023, in which Plaintiffs' counsel demanded that Defendants preserve all surveillance video recordings at BCCY-WF in the possession of Defendants "from the date of the arrival of the first juvenile detainee (approximately October 2022) through the end of the [the] preliminary injunction [hearing] that begins on August 15, 2023." (R. Doc. 197-7).[7] Defense counsel responded to this request by stating it was "not proportional to the needs of the case considering that [Plaintiffs' Motion for Preliminary Injunction] is about current conditions," and the "burden and expense of securing all such available video footage far outweighs any needs of the case." (R. Doc 197-10 at 2). Defendants also note that certain video recordings have been "overwritten in the normal course of operations," but video recordings since the filing of the Motion for Preliminary Injunction will

---

[7] The letter is mistakenly dated May 9, 2023. (*See* R. Doc. 198-8 at 2; R. Doc. 205 at 5 n.3).

9

be available up to the date of the preliminary injunction hearing. (R. Doc. 197-10 at 2). Defendants did offer, however, to consider any request for specific video footage. (R. Doc. 197-10 at 3). After a period of discussions regarding Plaintiffs' informal request for surveillance video footage, on August 3, 2023, Plaintiffs attempted to "narrow" the scope of the video data sought to that sought by the instant Motion to Compel. (R. Doc. 197-11).

As discussed above, Plaintiffs did not specifically request any surveillance video footage or documents evidencing the location of cameras in their Rule 34 requests. The Court will not enforce Plaintiffs' untimely and informal requests for such information. Furthermore, for the purposes of the instant preliminary injunction hearing, any request for the production of <u>all</u> video recordings from the facility opening to the date of the preliminary injunction hearing is overly broad and disproportionate to the needs of that hearing. While Plaintiffs have made certain efforts to narrow the scope of video surveillance to be produced for the purposes of the hearing, that request still seeks surveillance video footage nearly six months prior to the preliminary injunction hearing. While limited discovery of past conditions fall within the scope of discovery for the purposes of evaluating the current conditions at the facility, which is the subject of the preliminary injunction hearing, the Court has already limited "discovery regarding OJJ's documents and information regarding BCCY-WF to a period of June 1, 2023 to the present." (R. Doc. 201 at 8). Accordingly, the Court finds Plaintiffs' purportedly narrowed request to be too broad. Among other things, Plaintiffs have not made a specific showing that any video footage from any specific time or date would demonstrate that current conditions at BCCY-WF are not suitable. Furthermore, there is insufficient time to require Defendants to edit and produce video

for the purposes of Plaintiffs' "sampling" request, which would potentially result in considerable expense and burden to Defendants.[8]

For the foregoing reasons, the Court will deny Plaintiffs' request for an order compelling the production of any surveillance video at this time. The parties do not address any agreement on the production of surveillance video footage in their joint status report. Plaintiffs' Rule 34 requests for production do not specifically seek such video footage or documents evidencing the location of cameras. Plaintiffs have not set forth any specific evidence demonstrating that a particular date and time of video footage would be relevant to the preliminary injunction hearing. And, finally, given that the instant Motion to Compel was filed just one week prior to the preliminary injunction hearing, it is simply not feasible to order the production of any preserved surveillance video recordings for the purposes of the hearing.

Nothing in this ruling shall preclude Plaintiffs from seeking the discovery of surveillance video recordings in the course of discovery on the merits. Should discovery on the merits proceed, however, the Court will require the parties to meet-and-confer with respect to an ESI protocol governing the exchange of any video data and other ESI that falls within the scope of discovery. The Court makes no ruling at this time with respect to the scope of surveillance video footage discoverable on the merits.

### 2. Preservation of Video Footage from October 2022 to Present

As stated above, on July 20, 2023, Plaintiffs' counsel demanded that Defendants preserve all surveillance video recordings at BCCY-WF in the possession of Defendants "from the date of the arrival of the first juvenile detainee (approximately October 2022) through the end of the

---

[8] Defendants calculate that even if only one camera on each tier could capture the video data that Plaintiffs seek, it would result in 1,620 hours (or 67.5 days) of footage. (R. Doc. 205 at 5-6). Defendants also represent that it will take 7-10 business days to complete the process of downloading the video data sought by the instant motion. (R. Doc. 205 at 6-7).

[the] preliminary injunction [hearing] that begins on August 15, 2023." (R. Doc. 197-7). Plaintiffs now seek an order requiring Defendants to preserve all video data "that may be relevant to the litigation," which presumably includes, from Plaintiffs' perspective, all video data since October 2022. (*See* R. Doc. 197-1 at 8-9).

In response, Defendants represent that "[b]ecause the camera system overwrites data in the normal course of operations, Defendants are no longer in possession of some of the video footage Plaintiffs seek to preserve," further noting "that the cost, expense, and burden of preserving and/or producing the amount of video footage Plaintiffs requested would be extensive. (R. Doc. 205 at 7-8; *see* R. Doc. 197-10).

A motion to compel filed one week prior to a preliminary injunction hearing is not the appropriate filing to seek relief regarding Defendants' preservation of "potentially relevant video data." (*See* R. Doc. 197-1 at 8). As discussed above, the Court finds that Defendants have no duty, at this time, to produce any video surveillance footage in response to Plaintiffs' Motion to Compel. The sole decisions relied upon by Plaintiffs concerned motions for sanctions seeking adverse inference instructions with respect to alleged spoliation of evidence. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003) (denying sanction of adverse inference instruction); *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335 (M.D. La. 2006) (same). Plaintiffs further assert that Defendants should already have in place processes for preserving the information sought under Louisiana law. (R. Doc. 197-1 at 9) (citing La. Admin Code tit. 4 § XVII-909). Plaintiffs do not, however, reference or discuss the standards to be considered with respect to a motion seeking a court-ordered preservation hold.

"A motion to preserve evidence has been recognized as the procedural vehicle by which to obtain an order 'to preserve data that would otherwise vanish.'" *Deggs v. Fives Bronx, Inc.*,

No. 19-406-BAJ-EWD, 2020 WL 3100023, at *2 (M.D. La. June 11, 2020) (quoting *Tellis v. LeBlanc*, No. 18-0541, 2018 WL 6006909, at *2 (W.D. La. Nov. 14, 2018)). "Courts inherently have the power to issue orders to preserve evidence." *Deggs*, 2020 WL 3100023, at *2 (citation omitted). "However, courts must use restraint and discretion when exercising inherent authority. *Id*. This district has applied the following three-pronged preservation test when determining whether to issue a preservation order: "the consideration of (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and (3) capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation." *Deggs*, 2020 WL 3100023, at *2 (citing *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, No, 01-39, 220 F.R.D. 429, 433 (W.D. Pa. Apr. 21, 2004)).[9]

      The parties have submitted insufficient briefing for the Court to make a determination of whether, and to what extent, any surveillance video footage (or other ESI) should be ordered preserved. Furthermore, given the similarity between the standards for seeking a preservation hold order and preliminary injunctive relief, it is appropriate in this action for the parties to submit any further arguments regarding a preservation hold to the district judge at the preliminary injunction hearing and, if the issue is not resolved by the district judge or otherwise

---

[9] The *Deggs* decision notes that other courts have applied different tests, "including the four-prong test for a preliminary injunction, (*i.e.*, the consideration of (1) substantial likelihood of success on the merits; (2) substantial threat that plaintiff will suffer irreparable injury if the injunction is denied; (3) whether the threatened injury outweighs any damage that the injunction might cause defendants; and (4) whether the injunction will disserve the public interest)." *Deggs*, 2020 WL 3100023, at *2 (citing cases).

by agreement of the parties, for Plaintiffs to file a stand-alone motion for a preservation order. For the purposes of the instant motion, it is sufficient to find that Plaintiffs have not directed the Court to any legal authority meriting the issuance of an order requiring Defendants to preserve surveillance video footage (and other ESI) where (1) Plaintiffs have not established that the information it seeks preserved, in its entirety, is relevant or proportional to the needs of the preliminary injunction hearing (or the case as a whole), and (2) Plaintiffs sought the relief just one week prior to a preliminary injunction hearing (despite having filed an Amended Complaint seeking the underlying relief on the merits over eight months earlier).

For the foregoing reasons, the Court will deny Plaintiffs' request for an order requiring Defendants to preserve any surveillance video footage, or other ESI, at this time.

### 3. Other Electronically Stored Information

Finally, Plaintiffs seek the production of ESI responsive to Plaintiffs' requests for production. (R. Doc. 197-1 at 9-10). In support of this portion of the motion, Plaintiffs assert that Defendants have only produced 11 pages of emails. (R. Doc. 197-1 at 9). Defendants respond by stating that they have, in fact, "produced 258 pages of emails, text messages, and phone logs for various youth regarding social services and visitation," as well as "several emails and their attachments regarding the rental of and replacement parts for air condition units" and "an email regarding the start of the new school year on August 3, 2032 that Plaintiffs specifically requested." (R. Doc. 205 at 9).

A party resisting discovery of ESI based on undue burden must make a specific showing that "the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). The responding party cannot simply refuse to search for ESI because the party conducting discovery has not provided search terms:

> A producing party generally has an obligation to collect and review ESI pursuant to its own search protocol . . . and to provide the requesting party with the names of custodians whose ESI was searched, date ranges for the searches, and any search terms applied. Such information is properly included in written responses to document requests pursuant to Rule 34's specificity requirements. . . . A producing party is usually in the best position to know where to find relevant documents. . . . If problems are found with the search, a requesting party can raise them afterwards.

*Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 646 n.5 (S.D.N.Y. 2019); *see also* The Sedona Conference, *The Sedona Principles, Third Edition*, 19 Sedona Conf. J. 1, 52 (2018) ("Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for . . . producing their own electronically stored information."); *AIDS Healthcare Found., Inc. v. City of Baton Rouge*, No, 17-229, 2018 WL 5259465, at *5 n.4 (M.D. La. Oct. 22, 2018) ("District courts within the Fifth Circuit have acknowledged that the Sedona Principles and related Sedona commentaries are the leading authorities on electronic document retrieval and production." (citation and internal quotation marks removed); *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. 13-373, 2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018) ("A responding party is generally entitled to select the custodians most likely to possess responsive information."); *Scott v. Mobilelink Louisiana, LLC*, No. 20-826, 2022 WL 3009111, at *5 n.2 (M.D. La. July 28, 2022) ("To be clear, the lack of an ESI protocol does not wholly negate Defendant's obligation to respond to a valid discovery request, even if electronically stored information might be responsive.").

The parties' joint status report does not contain any discussion, including any agreements, regarding the production of ESI. (*See* R. Doc. 170). It appears that the issue of ESI production was first raised by Plaintiffs' counsel by email on the evening of August 2, 2023. (*See* R. Doc. 197-13). Plaintiffs' counsel requested, by "midday" the following day, a confirmation of whether Defendants "conducted a search of electronic communications of any kind, and, if yes, what the

15

method of that search was, including: (1) whose communications were searched; (2) what kinds of communications were included in that search (e.g., emails, text messages, and/or files from instant messaging programs such as Slack or Teams); and (3) what methods were used to identify potentially relevant communications within that search (e.g., search terms)." (R. Doc. 197-13 at 2). In response, defense counsel stated that the district judge "specially cautioned the parties to focus on what is at issue," noting that "Plaintiffs' opened-ended request for electronic communications covers every aspect of the operation of BCCY-WF," and offered to consider any "narrowed request for electronic communications." (R. Doc. 197-12 at 3). In response, Plaintiffs' counsel stated that Plaintiffs were simply seeking the production of ESI "relevant to the pending motion for a preliminary inunction and responsive to [Plaintiffs'] document requests" without identifying any specific categories or types of emails or other ESI sought. (R. Doc. 197-12 at 2).

    Having considered the arguments of the parties, the Court will order the Defendants to provide an explanation of how ESI was searched and produced. It is clear that some search took place to produce the 258 pages referenced above. The Court finds Plaintiff's request to be reasonable – Defendants are ordered, by close of business today (August 14, 2023) to confirm whether Defendants "conducted a search of electronic communications of any kind, and, if yes, what the method of that search was, including: (1) whose communications were searched; (2) what kinds of communications were included in that search (e.g., emails, text messages, and/or files from instant messaging programs such as Slack or Teams); and (3) what methods were used to identify potentially relevant communications within that search (e.g., search terms)." If the production was not the result of an ESI search, Defendants shall indicate how the 258 pages of records were identified for production.

The Court will not, however, order the production of any additional ESI for the purposes of the preliminary injunction hearing. Requiring the production of additional ESI prior to the hearing – regardless of whether such ESI is responsive to discovery requests – would result in an undue burden to Defendants given the timing of the preliminary injunction hearing. The parties will have the opportunity to meet and confer for the purposes of agreeing upon an ESI protocol if and when the parties conduct discovery on the merits after resolution of Plaintiffs' Motion for Preliminary Injunction.

### III.  Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion to Compel (R. Doc. 197) is **DENIED** with respect to any compelled production of additional discovery. Defendant shall provide a response to Plaintiff's inquiry regarding ESI searches and/or production by close of business (5:00pm) today. Given the expedited nature of this motion, the Court will require the parties to bear their own costs under Rule 37(a)(5)(B).

Signed in Baton Rouge, Louisiana, on August 14, 2023.

**RICHARD L. BOURGEOIS, JR.**