# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.[1]; and CHARLES C., by and through his guardian Kenoine Rogers, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 3:22-573 (SDD) (RLB) |
| v. | |
| GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS,[2] in his official capacity as Deputy Secretary of the Office of Juvenile Justice; JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections, | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DISQUALIFICATION ORDER (DOC. 211)** |
| Defendants. | ***EXPEDITED CONSIDERATION REQUESTED*** |

## INTRODUCTION

On August 11, 2023, the Court granted Defendants' motion to disqualify Plaintiffs' counsel Corene T. Kendrick. Doc. 211. Because the Court failed to provide notice and a hearing as required by Circuit precedent, and because disqualification is not justified under the governing legal standard, Plaintiffs move for reconsideration of this order, and request that the Court vacate the disqualification order and reinstate Ms. Kendrick's pro hac vice status. Because the erroneous

---

[1] On July 14, 2023, pursuant to Rule 25(a)(2) of the Federal Rules of Civil Procedure, Plaintiffs notified the Court of the death of Brian B. *Doc. 162.* Plaintiffs leave Brian B. as a Plaintiff until the clerk is ordered to change the caption.

[2] On November 18, 2022, Gov. Edwards announced the resignation of Dep. Sec. Sommers and the appointment of Otha "Curtis" Nelson as his replacement. *See* https://gov.louisiana.gov/index.cfm/newsroom/detail/3892. Because Sommers was sued in his official capacity, Nelson is automatically substituted as a Defendant. Fed. R. Civ. P. 25(d). Plaintiff leaves Sommers as a Defendant until the clerk is ordered to change the caption.

disqualification of Ms. Kendrick is inflicting continuing harm on her clients, Plaintiffs ask that the Court expedite its consideration of this motion.

## STATEMENT OF FACTS

This Court scheduled an evidentiary hearing on Plaintiffs' Motion for Preliminary Injunction to begin on August 15, 2023. At 9:20 p.m. on August 10, 2023, Defendants filed a motion to disqualify Plaintiffs' counsel Corene Kendrick based on alleged misconduct during the deposition of Plaintiffs' expert Susi Vassallo, M.D. Doc. 206. Defendants' motion was not supported by any affidavits, authenticated documents, or any other admissible evidence. *See generally* Doc. 206, 206-1, 206-2, 206-3, 206-4.

The following day – two business days before the commencement of the evidentiary hearing – the Court granted Defendants' motion, ordering that "Attorney Corene T. Kendrick [sic] pro hac vice status in this case is hereby terminated." Doc. 211. The Court did not hold a hearing or otherwise allow Plaintiffs an opportunity to respond to Defendants' motion before it ruled. Before the Court's order, Plaintiffs' counsel had planned for Ms. Kendrick to conduct direct examinations of at least three witnesses and cross examination of at least one witness during the evidentiary hearing. *See* Declaration of Nancy Rosenbloom, ¶ 4.

## ARGUMENT

**I.    Legal standards governing motions for reconsideration.**

"District courts have considerable discretion in deciding whether to reconsider an interlocutory order." *Keys v. Dean Morris, LLP*, 2013 WL 2387768, at *1 (M.D. La. May 30, 2013). "Although courts are concerned with principles of finality and judicial economy, 'the ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law.'" *Id.* (quoting *Georgia Pacific, LLC v. Heavy Machines, Inc.*, 2010 WL 2026670, at *2 (M.D. La. May 20, 2010)).

*Broyles v. Cantor Fitzgerald & Co.*, No. CV 10-854-JJB-SCR, 2015 WL 12911720, at *1 (M.D. La. Feb. 10, 2015).

2

## II.    Legal standards governing disqualification of counsel.

I share the view of the Court and the Court of Appeals below that the tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation. When a trial court mistakenly disqualifies a party's counsel as the result of an abusive disqualification motion, the court in essence permits the party's opponent to dictate his choice of counsel.

*Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 441 (1985) (Brennan, J., concurring).  *See also In re Am. Airlines, Inc.,* 972 F.2d 605, 611 (5th Cir. 1992) (recognizing that "disqualification motions may be used as 'procedural weapons' to advance purely tactical purposes") (citation omitted); *F.D.I.C. v. U.S. Fire Ins. Co.,* 50 F.3d 1304, 1316 (5th Cir. 1995) ("A disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of his choosing").

The Fifth Circuit has recognized "a constitutionally guaranteed right to retain hired counsel in civil matters," *Texas Catastrophe Prop. Ins. Ass'n v. Morales,* 975 F.2d 1178, 1180 (5th Cir. 1992), a right which "includes the right to choose the lawyer who will provide that representation." *Id.* at 1181 (citation omitted).  Accordingly, "[d]epriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." *U.S. Fire Ins. Co.,* 50 F.3d at 1313; *see also id*. at 1314 (recognizing "the right of a party to his counsel of choice and an attorney's right to freely practice her profession" as "important societal rights").

In this case, the disqualification of Ms. Kendrick was particularly prejudicial to Plaintiffs, as it deprived them of one of their chief trial counsel mere days before a multi-day evidentiary hearing.  *See* Declaration of Nancy Rosenbloom, ¶ 4.

III.    **The Court erred in granting a disqualification motion that was unsupported by any admissible evidence.**

As a threshold matter, the Court erred in granting Defendants' disqualification motion when that motion was unsupported by any affidavits, authenticated documents, or any other admissible evidence. "Statements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.,* 613 F.2d 1328, 1337 (5th Cir. 1980). Because the Court decided the motion without a response from Plaintiffs, the unsupported allegations of Defendants' counsel went completely unchallenged.

IV.    **Circuit precedent requires notice and a hearing before an attorney's pro hac vice status may be revoked.**

In *In re Evans*, 524 F.2d 1004 (5th Cir. 1975), the Fifth Circuit held that a district court must provide notice and a hearing before an attorney may be denied admission pro hac vice based on alleged misbehavior:

> If a District Court has evidence of behavior that it believes justifies denying an attorney admission pro hac vice, it must set a hearing date and give the attorney adequate notice of all incidents of alleged misbehavior or unethical behavior that will be charged against him. Specific allegations must be made; general accusations about an attorney's demeanor are insufficient. The hearing must be on the record and present the attorney with adequate opportunity to defend himself and his professional reputation. The presiding judge must be sensitive to possible conflicts of interest if events cast him into the roles of witness, prosecutor, and judge.

*In re Evans*, 524 F.2d 1004, 1008 (5th Cir. 1975).

*Evans* involved the denial of admission pro hac vice, rather than the revocation of pro hac vice status once granted. The Eleventh Circuit squarely addressed the latter question in *Kirkland v. Nat'l Mortg. Network, Inc.,* 884 F.2d 1367 (11th Cir. 1989), in which the district court had revoked counsel's pro hac vice status based on alleged misconduct:[3]

---

[3] Decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, are

4

> This issue is controlled by *In re Evans,* 524 F.2d 1004 (5th Cir.1975), and *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193 (11th Cir.1985). *Evans* held that an attorney may not be denied *admission pro hac vice* without notice and hearing of specific grounds for such denial rising to a level which would justify disbarment. *See* 524 F.2d at 1007–08. **Evans, a fortiori, requires notice and hearing prior to revocation of *pro hac vice* status**. *Kleiner* held that an attorney may not be disqualified from a case, except in certain circumstances not present here, "without notice of the charge against him or an opportunity to explain." 751 F.2d at 1211.

*Kirkland,* 884 F.2d at 1371–72 (footnotes omitted; bold emphasis added; italicized emphasis in original); *see also U.S. Fire Ins. Co.,* 50 F.3d at 1308 ("the district court held a three-day evidentiary hearing on U.S. Fire's motions to disqualify the FDIC's counsel").[4]

The *Kirkland* court noted that "[i]n this case, the local district court rules provide for notice and hearing prior to disqualification without any exception for *pro hac vice* counsel. … We believe it would be incongruous to hold otherwise, in view of the fact that *pro hac vice* counsel are subject to the same professional responsibilities and ethical standards as regular counsel." 884 F.2d at 1371-72 & n. 11 (citing local rule applying to "[a]ny member of the bar of this Court").

The same is true of the local rules of this Court: "(11) **Revocation of Admission** … (C) Any member of the bar of this Court may be disbarred or otherwise disciplined *after such hearing as the Court may in each particular instance direct* …" M.D. La. LCR 83(b)(11)(C) (emphasis

---

binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

[4] The *Kirkland* court stated, "[i]t is true that *Evans* has been partly undermined by the Supreme Court's subsequent decision in *Leis v. Flynt,* 439 U.S. 438, 443–45, 99 S.Ct. 698, 701–02, 58 L.Ed.2d 717 (1979), which held that no Fourteenth Amendment property interest is implicated by a state court's refusal to *admit* an attorney *pro hac vice. Leis* did not address, however, the procedural rights of an attorney regarding *revocation* of *pro hac vice* status once it has been granted." 884 F.2d at 1371. However, the Eleventh Circuit subsequently characterized this passage as "pure dictum," adding "[w]e conclude that, contrary to the dictum in *Kirkland,* the Supreme Court's decision in *Leis* did not cast doubt on *Evans'* holding. *Evans,* therefore, remains binding precedent in this circuit." *Schlumberger Techs., Inc. v. Wiley,* 113 F.3d 1553, 1559 (11th Cir. 1997). Undersigned counsel has located no Fifth Circuit or Supreme Court authority casting any doubt on *Evans*' continued vitality.

added). *See also* M.D. La. LCR 83(b)(12)(B)-(D) (attorney discipline requires an "Order to Show Cause [that] shall (1) state the alleged grounds for discipline, (2) state the range of possible sanctions to be imposed, and (3) inform the attorney of the right to counsel throughout the disciplinary proceedings;" a public, on-the-record hearing; and proof by clear and convincing evidence).[5]

Because the Court did not provide the mandatory notice and hearing, its disqualification order must be vacated.

### V.    Disqualification is not justified under the governing legal standard.

"[T]he power [to disbar] is one that ought always to be exercised with great caution; and ought never to be exercised except in clear cases of misconduct, which affect the standing and character of the party as an attorney."  *Ex parte Wall*, 107 U.S. 265, 288 (1883).  Moreover, a court should "not deprive an attorney of the opportunity to practice his profession on the basis of a determination after the fact that conduct is unethical if responsible attorneys would differ in appraising the propriety of that conduct."  *In re Finkelstein*, 901 F.2d 1560, 1565 (11th Cir. 1990) (quoting *In re Ruffalo*, 390 U.S. 544, 556 (1968) (White, J., concurring)).

Here, Ms. Kendrick only did what lawyers commonly do in depositions held in person. Telling the witness which document and page the Defendants' counsel was questioning her about is the equivalent of placing the relevant document in front of the witness and pointing to it. This was especially unremarkable in this context, where Defendants' counsel Connell Archey refused

---

[5] Even if this Court's local rules purported to permit attorney disqualification without notice and a hearing – and they do not – they could not overrule the binding requirements of *Evans*. Because motions to disqualify are substantive motions which affect the rights of the parties, they are decided under federal law, and "parties cannot be deprived of the right to counsel of their choice on the basis of local rules alone."  *U.S. Fire Ins. Co.,* 50 F.3d at 1312.

to tell the witness which document he was referring to, although Ms. Kendrick asked him to do so, and the witness had indicated she was searching for it and did not know what portion of a long report Mr. Archey was referring to.  *See* Doc. 206-2 at 4:1-10; 7:4-16; 20:20-21:3.

In fact, in this very case on this same preliminary injunction motion, the transcript shows that Defendants' counsel Allena McCain, defending the deposition of Patrick Cooper, provided a page number to her witness while a question from Plaintiffs' counsel was pending. *See* Declaration of Nancy Rosenbloom*, Exhibit A, Excerpts of Deposition transcript of Patrick Cooper, August 3, 2023, at 38:25-39:13 (emphasis added):

Q. [PLAINTIFFS' COUNSEL MEYERS] Okay.  Thank you.  And then if we go to Page 13 --

A. [WITNESS COOPER] Do you know what number that is at the bottom?

Q.  I believe it's –

**MS. McCAIN: 5891.**

BY MS. MEYERS:

Q. Oh, I'm sorry. I see.

**MS. McCAIN: It also has the page numbers right here too.**

THE WITNESS: Oh, I didn't see that.

As to anything that could be construed as coaching, Ms. Kendrick's text saying "outdoor" reflects the title of a chart included in the witness's own report.  *See* Doc. 166-7 at 29, ¶ 85 (ECF pagination).  To the extent that the text saying "power was out" could be construed as conveying information to the witness, it is vastly outweighed by Defendants' counsel's speaking objections in depositions of their own witnesses that repeatedly suggested answers to the witness.

An example is the egregious behavior of Defendants' counsel Lem Montgomery at the Zoom deposition of his clients' consultant/expert Lee Underwood.  Mr. Montgomery coached repeatedly, making lengthy objections that told the witness what to say, even though Plaintiffs'

counsel – unlike Mr. Archey in the deposition at issue here – shared each document with Defendants' counsel and the witness on the screen (with the exception of a two-sentence reading of the Louisiana solitary confinement statute, which Plaintiffs' counsel read aloud multiple times). *See* Rosenbloom Dec.*,* Exhibit B, Excerpts of Deposition transcript of Lee Underwood, August 10, 2023, at 34:10-35:7 (emphasis added):

> BY MR. UTTER:
>
> Q. I just want to be clear that your testimony is that what is happening at Angola is not solitary confinement; is that correct?
>
> **MR. MONTGOMERY: Object to the form.  We're not defining solitary confinement anymore, so to the extent you -- you've gone at him from a statutory standpoint. You've asked him for legal opinions. Now you have asked him his thoughts on solitary confinement. I mean, to the extent we're clear at this point that that is an undefined term, I guess, Dr. Underwood, you can give your thoughts.**
>
> MR. UTTER:
>
> Lem, no more speaking objections, please. We define solitary confinement according to the law in Louisiana.
>
> BY MR. UTTER:
>
> Q. Let me ask you this, Dr. Underwood.
>
> **MR. MONTGOMERY: Not in the last question.**

*Id.* at 70:16 – 71:17 (emphasis added):

> Q. You're aware that that is Louisiana's former death row?
>
> A. I am.
>
> Q. Is that therapeutic? Is that a therapeutic environment?
>
> A. Again –
>
> **MR. MONTGOMERY: Object to the form. I think you just asked him whether that West Feliciana Facility is a therapeutic environment, and he answered it. You just want him to answer that again after you call it death row, or is there a different question?**

MR. UTTER: Lem, I'm going to say it for the last time. You can just keep on coaching him all you want, but I ask that you obey the rules and stop coaching the witness. You can object, but then to go on a speaking objection is highly unethical, and I ask that you stop. Thank you.

**MR. MONTGOMERY: I'm going to make the objections the way I see fit. I'm just putting you on full notice of that.**

At another point, Mr. Montgomery interrupted Plaintiffs' counsel's questioning with belligerent argument and taunting.  *Id.* at 72:4-73:15 (emphasis added):

BY MR. UTTER:

Q. Dr. Underwood, the question is in Louisiana --

**MR. MONTGOMERY:  Dave, let me ask you this. Cite to me the rule of ethics that prohibits a speaking objection.**

MR. UTTER: I don't know, Lem.

**MR. MONTGOMERY: Can you do that?**

MR. UTTER:  I'll get back to you.

**MR. MONTGOMERY: You've been the lawyer all day. Cite it to me.**

MR. UTTER:  I'll get back to you, Lem. You are --

**MR. MONTGOMERY: There is not one, is it? There is not one, is it?**

MR. UTTER: You are eating my time, Lem.

**MR. MONTGOMERY: There is one against texting your expert on the record, but there is not one against speaking objections. Can we agree as lawyers to that?**

MR. UTTER: No, Lem. We're not agreeing -- I don't agree with much you say.

**MR. MONTGOMERY: You're dead wrong. You are dead wrong. Conduct your examination. I don't know what you are talking about, but go ahead.**

Even if a warning or admonishment might be appropriate, Ms. Kendrick's conduct does not warrant disqualification – and certainly not at the behest of opposing counsel who have repeatedly engaged in similar, and indeed more egregious, behavior in this case.[6]

## CONCLUSION

For all of the reasons set forth herein, the Court should vacate its disqualification order and reinstate the pro hac vice status of attorney Corene T. Kendrick.

DATE:  August 16, 2023

Respectfully submitted,

_s/ David J. Utter_
David J. Utter*
Louisiana Bar No. 23236
William R. Claiborne**
Georgia Bar No 126363
**The Claiborne Firm, P.C.**
410 East Bay Street
Savannah, GA 31401
Tel.: (912) 236-9559
Fax: (912) 236-1884
david@clabornefirm.com
will@claibornefirm.com

Hector Linares
Louisiana Bar No. 28857
Sara Godchaux
Louisiana Bar No. 34561
**Stuart H. Smith Law Clinic**
**Loyola University New Orleans**

_s/ Nancy Rosenbloom_
Nancy Rosenbloom**
New York Bar No. 2168425
**ACLU National Prison Project**
125 Broad Street
New York, NY 10004
Tel.: (212) 549-2500
Fax: (212) 549-2652
nrosenbloom@aclu.org

Christopher J. Murell
Louisiana Bar No. 32075
**Murell Law Firm**
2831 St. Claude Avenue
New Orleans, LA 70117
Tel.: (504) 717-1297
Fax: (504) 233-6691
chris@murell.law

---

[6] The scant authority cited in Defendants' motion falls far short of supporting disqualification. Defendants' citation of a single unpublished case from the Eastern District of Louisiana prohibiting text and email communication during depositions (Doc. 206-1 at 3-4) only highlights the fact that there is no such authority in this District.  That case did not involve attorney disqualification, and thus provides no support for disqualification in this case.  *Salazar v. City of Phoenix*, No. CV1901188PHXSRBESW, 2021 WL 2075735 (D.  Ariz. May 24, 2021), similarly did not involve disqualification and thus provides no support for such an order in this case.  It is also wildly factually dissimilar to this case, involving repeated and extensive texts disparaging opposing counsel and admitting that the texting attorney was asserting objections in bad faith and for improper motives.

**College of Law**
7214 St. Charles Avenue, Box 902
New Orleans, LA 70118
Tel.: (504) 861-5560
Fax: (504) 861-5440
halinare@loyno.edu
shgodcha@loyno.edu

David Shanies**
New York Bar No. 4471140
**Shanies Law Office**
110 West 40th Street, 10th Floor
New York, NY 10018
Tel.: (212) 951-1710
Fax: (212) 951-1350
david@shanieslaw.com

Meghan Matt
Louisiana Bar No. 39975
**ACLU Foundation of Louisiana**
1340 Poydras Street, Suite 2160
New Orleans, LA 70112
Tel.: (504) 522-0628
Fax: (504) 613-6511
mmatt@laaclu.org

Tammie Gregg***
Minnesota Bar No. 026240
**ACLU National Prison Project**
915 15th Street NW, 7th Floor
Washington, DC 20005
Tel.: (202) 393-4930
Fax: (202) 393-4931
tgregg@aclu.org

Marisol J. Dominguez-Ruiz**
California Bar No. 345416
**ACLU National Prison Project**
39 Drumm Street
San Francisco, CA 94111
Tel.: (202) 393-4930
Fax: (202) 393-4931
mdominguez-ruiz@aclu.org

Susan M. Meyers
Louisiana Bar No. 29346
Lauren Winkler
Louisiana Bar No. 39062
Ashley Dalton
Louisiana Bar No. 40330
**Southern Poverty Law Center**
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
Tel.: (504) 512-8649
susan.meyers@splcenter.org
lauren.winkler@splcenter.org
ashley.dalton@splcenter.org

* Lead Counsel
** Appearing *Pro Hac Vice*
*** Appearing *Pro Hac Vice* and Not
Admitted in DC; Practice Limited to Federal
Courts

**Attorneys for Plaintiffs**