**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. A. No. 3:22-CV-00573-SDD-RLB ) |
| GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections, | ) ) **DEFENDANTS' RESPONSE RE** ) **PLAINTIFFS' SUBMISSION** ) **REGARDING PLRA EXHAUSTION** ) **[229]** ) ) ) ) ) |
| Defendants. | ) |

During this week's evidentiary hearing on Plaintiffs' most recently-filed Motion for Preliminary Injunction [163], Plaintiffs put on no evidence that they had properly exhausted administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), while Defendants put on undisputed evidence of Plaintiffs' failure to exhaust. The Court requested that Plaintiffs file a trial brief related to the exhaustion issue. Plaintiffs did so. *See* Brief [229]. The

brief, as well as the evidentiary record, demonstrate that Plaintiffs[1] failed to properly exhaust their administrative remedies under the Louisiana Office of Juvenile Justice ("OJJ") administrative remedies procedure, prior to filing the Amended Complaint [96] <u>as well as</u> prior to filing the Motion for Preliminary Injunction [163], which asserts wholly different claims than those asserted in the Amended Complaint. Plaintiffs' Motion [163] should be denied on this ground alone.

<u>**SUMMARY OF PLAINTIFFS' ARGUMENTS**</u>

Plaintiffs claim in the Exhaustion Brief [229] that the PLRA does not require "ongoing exhaustion" and that, if claims are exhausted prior to filing of the lawsuit, then no further exhaustion efforts are required as the litigation progresses. *See* [229] at 2. Plaintiffs further argue that only a single named plaintiff is required to exhaust in a class action and that, as long as prison officials have received "received a single complaint addressing each claim in a class action," then all claims are exhausted for the entire class. *Id.* at 4.

Both arguments fail.

As to the "ongoing exhaustion" point, Plaintiffs cited *Jones 'El v. Berge*, 172 F. Supp.2d 1128, 1134 (W.D. Wis. 2001).[2] In *Jones 'El*, the Wisconsin district court specifically stated: "Any claim for relief *that is within the scope of the pleadings* may be litigated without further exhaustion." (emphasis added). The claims asserted by Alex A. in his August 2022 grievance are

---

[1] This lawsuit was initially filed by a single Plaintiff, Alex A. *See* Doc. No. 4-2. However, since the first preliminary injunction hearing in this matter, which occurred in September 2022, Plaintiff filed (among other various filings) an Amended Class Action Complaint (Doc. No. 96) and Motion for Class Certification (Doc. No. 99) on behalf of *three* plaintiffs: Alex A., Brian B., and Charles C. Defendants oppose class certification. *See* Doc. No. 101. Plaintiffs then filed a Motion to Intervene on behalf of two additional proposed intervenors: Daniel D. and Edward E. (Doc. No. 120), which was denied without prejudice pending a ruling on Defendants' then-pending Motion to Dismiss for Lack of Standing (Doc. No. 102). After Plaintiffs filed the second Motion for Preliminary Injunction (Doc. No. 163), Defendants withdrew that Motion to Dismiss (Doc. No. 169) for the present time. Plaintiffs Alex A. and Charles C. subsequently filed a Suggestion of Death as to Plaintiff Brian B. (Doc. No. 162) on July 14, 2023; however, the Court has not yet removed Brian B. as a named plaintiff on the docket. Thus, the only Plaintiffs are currently Alex A. and Charles C., and those Plaintiffs filed the now pending Motion for Preliminary Injunction (Doc. No. 163). The purported class has never been certified.

[2] Defendants will address other cases cited by Plaintiffs, below.

not the same claims raised in the Motion for Preliminary Injunction [163]. The claims asserted by Charles C. in his October 2022 grievance (nearly identical to Alex A.'s grievance) are likewise not the same as those raised in the Motion for Preliminary Injunction [163]. While Alex A.'s grievance was deemed exhausted by this Court in the Order [79] following the first preliminary injunction hearing *on those issues*, the Court made no such ruling as to Charles C.'s grievance. What's more, Plaintiffs admit in their Exhaustion Brief [229] that Charles C.'s grievance was not even filed until the day Plaintiffs filed the Amended Complaint [96], rendering it impossible to exhaust prior to Charles C. having joined this lawsuit. *See* Brief [229] at 5. At any rate, because the claims raised in the Motion for Preliminary Injunction [163] are distinct from the claims raised in *either* grievance, the exhaustion requirement applies as to each of those new claims – and Plaintiffs failed to exhaust prior to filing the Motion [163].

As to the point that a single class action plaintiff can exhaust on behalf of the class, this is only applicable where the class has been certified – and this class has not been certified. Prior to class certification, each and every plaintiff must exhaust each and every claim raised in the lawsuit. Plaintiffs cannot rely on Alex A.'s August 2022 grievance (which was deemed by this Court to be exhausted pursuant to OJJ's *now outdated* administrative remedies policy) to cure their exhaustion problem in the 2023 Motion for Preliminary Injunction.

Plaintiffs' Exhaustion Brief [229] also points out that exhaustion is an affirmative defense that Defendants must plead and prove. While that is true, once Defendants put on evidence that Plaintiffs failed to exhaust, the burden shifts back to Plaintiffs to establish exhaustion. Plaintiffs attached zero evidence to the Exhaustion Brief [229] and have put on no evidence of exhaustion at the injunction hearing. Defendants' testimony at the hearing is undisputed that Plaintiff Charles C. failed to submit a grievance to OJJ on any issues raised in the Motion for Preliminary Injunction

[229].[3] Furthermore, Defendants attach here the only grievances filed by either of the named Plaintiffs Alex A. and Charles C. – and both establish Plaintiffs failed to exhaust. *See* Exhs. B-C.

For these reasons, the Court should deny Plaintiffs' Motion for Class Certification

## **LAW**

### *Application of Prison Litigation Reform Act to Plaintiffs' Claims*

Plaintiffs' lawsuit is brought pursuant to 42 U.S.C. § 1983 ("Section 1983" or "§ 1983"), the federal Rehabilitation Act codified at 29 U.S.C. § 794 ("Rehabilitation Act"), and the Americans with Disabilities Act, codified at 42 U.S.C. § 12101 ("ADA"). *See* Am. Compl. [96] at 35-37. Because Plaintiffs allege violations of federal law in a federal district court, Plaintiffs' claims are subject to the procedural requirements of the Prison Litigation Reform Act ("PLRA"). *Ferrington v. Louisiana Dep't of Corr.*, 315 F.3d 529, 532 (5th Cir. 2002) (discussing one Louisiana state court's holding that is not required before filing suit for tort recovery in state court, but rejecting application of that holding in federal court; clarifying that where a party "is proceeding in federal, not state court, … his claim is procedurally governed by federal law," and as such, "under the PLRA, all 'available' remedies must now be exhausted, regardless of the nature of the relief offered.").

### *Prison Litigation Reform Act's Exhaustion Requirement*

The federal PLRA provides that "no action shall be brought under [S]ection 1983 …, **or any other Federal law**, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis

---

[3] As discussed here, the OJJ responded to this Court's guidance on its administrative remedy procedure and amended that policy in December 2022, several months before the filing of the Motion for Preliminary Injunction [229]. Any claims raised in the Motion for Preliminary Injunction, then, were subject to the OJJ's new exhaustion policy.

added).[4] Exhaustion is only complete when a plaintiff pursues all available administrative remedies, and when (1) the plaintiff has received a final administrative decision at the last step of the applicable procedure or (2) the time limits for the prison's response at the last step of every available administrative remedy has expired, such that "there is no next step (save filing a lawsuit) to which the prisoner can advance." *See Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004); *Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015).

The PLRA also requires "proper" exhaustion; that is, **the plaintiff must comply with "an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure** on the course of its proceedings." *Woodford v. Ngo*, 548 U.S.81, 90 (2006) (emphasis added). The Fifth Circuit "has taken a 'strict' approach to [PLRA's] exhaustion requirement, under which prisoners must not just substantially comply with the prison's grievance procedures, but instead must 'exhaust available remedies *properly*.'" *Wilson*, 776 F.3d 296, 299-300 (quoting *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010)) (emphasis added).

Section 1997e "requires that administrative remedies be exhausted *before* the filing of a … lawsuit." *Wilson*, 776 F.3d at 299 (internal quotations omitted) (emphasis in original). District courts do not have discretion to excuse a prisoner's failure to properly exhaust the grievance process before filing a complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). "It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is

---

[4] For purposes of the PLRA exhaustion requirement, "prisoner" is broadly defined and includes "any person … detained in any facility who is accused of . . . **or adjudicated delinquent for**, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h) (emphasis added); *see also Molina v. New York*, 697 F. Supp. 2d 276, 282 (N.D.N.Y. 2010) ("[t]his exhaustion requirement applies equally to juveniles confined in correctional facilities.") (citing 42 U.S.C. § 1997e(h)).

mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Id.*

Moreover, and specifically relevant here, **a plaintiff's motion for preliminary injunction must also be denied for failure to exhaust administrative remedies**. *See Jimerson v. Rheams*, No. 21-119, 2021 WL 2005492, at *1 (M.D. La. April 15, 2021) ("[R]equests for injunctive relief are not exempt from the exhaustion requirement, and failure to completely exhaust prior to filing suit cannot be excused.") (quoting *Muhammed v. Wiles*, 841 Fed. App'x 681, 685-86 (5th Cir. 2021)); *see also Jimerson v. Rheams*, No. 21-119, 2021 WL 2006294 (M.D. La. May 19, 2021) (dismissing plaintiff's request for preliminary injunction on same grounds).

The PLRA establishes a mandatory exhaustion regime, forecloses judicial discretion, and prevents a court from excusing a failure to exhaust, even to take "special circumstances" into account. *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016) ("the PLRA's text suggests no limits on an inmate's obligation to exhaust."); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). "[A] prisoner must … exhaust administrative remedies even where the relief sought … cannot be granted by the administrative process." *Woodford*, 548 U.S. at 85.

The only limit to § 1997e(a)'s mandate is that administrative remedies must be "available" – that is, "capable of use for the pertinent purpose" or giving the potential "possibility of some relief" and plain enough so that a reasonable prisoner "can make sense of what it demands." *See Ross*, 136 S. Ct. at 1859-60.

**OJJ POLICY**

*OJJ's Administrative Remedy Procedure*

OJJ maintains an Administrative Remedy Procedure ("ARP") to efficiently process internal grievances, such as those referenced in Plaintiff's Amended Complaint,[5] based on OJJ's expertise in managing Youth detention facilities. *See* ARP Policy [Ex. A].

Importantly, OJJ amended its ARP in December 2022 to clarify and improve certain elements of the procedure that this Court had previously found were "a simple dead end" or "so opaque that … no reasonable prison can use them." *See* Doc. 79 at 7; *see also J.H. v. Edwards*, No. 20-293-JWD-EWD, 2020 WL 3448087, at ¶¶ 243, 323-338 (M.D. La. June 24, 2020). *See also* ARP Policy [Ex. A]. The current policy is described below.

*Standard ARP Grievance Procedure*

Under the ARP, a Youth must fully exhaust a two-step grievance process before seeking judicial review. *See* ARP Policy [Ex. A] at p. 9. A Youth first initiates the process (Step 1) by filing an ARP form, deemed filed upon "receipt" by an ARP Coordinator. *Id.* at pp. 6–7. The ARP Coordinator screens the form and sends it to a facility director, who must respond within 30 days. *Id.* at p. 7. If the Youth is dissatisfied with the director's response, he has 15 days to seek review (Step 2) from the Deputy Secretary of Youth Services. *Id.* at p. 8. The Deputy Secretary must render a final decision within 21 days of receiving the request for review, and the entire process must be completed within 51 days of the original filing of the Youth's grievance form. *Id.* at p. 9. If the Youth is dissatisfied with the response, he may then seek judicial review. *Id.*

---

[5] *See* Am. Compl. [96] at ¶ 34 (referencing Alex A.'s administrative grievance), ¶ 45 (referencing Brian B.'s administrative grievance), and ¶ 55 (referencing Charles C.'s administrative grievance).

*Emergency ARP Grievance Procedure*

If the Youth's ARP grievance includes statements that indicate the Youth believes that he is at immediate risk of harm and that any delay in responding to the grievance would subject him to substantial risk of immediate personal injury or cause other serious or irreparable harm, the ARP coordinator will immediately forward the ARP to the Facility Director, Statewide Youth Facilities Director, and the Deputy Secretary of Youth Services. *Id.* at pp. 9–10. OJJ will provide an initial response within 48 hours. *Id.* If reviewers determine that the grievance is indeed emergent, OJJ has up to five calendar days to provide a final decision as to the relief requested in the ARP. *Id.* If reviewers determine that the Youth is <u>not</u> emergent (that is, not in substantial risk of imminent personal injury or at risk of suffering serious or irreparable harm), the ARP will be designated as non-emergent and automatically processed as a standard ARP, under which OJJ has up to thirty calendar days to provide a final decision as to the relief requested. *Id.* at p. 10.

*Comparison to OJJ's Previous ARP Policy*

As Plaintiffs' Motion highlights, this Court has before examined OJJ's ARP and has pointed out that the ARP provisions governing the submission and processing of emergency grievances did not provide a legally "available" administrative remedy to youth. *See Edwards*, 2020 WL 3448087, at ¶¶ 243, 323-338. Specifically, the *Edwards* Court held that, where OJJ failed to respond to an emergency grievance at the Step 1 phase, this rendered Step 2 "unavailable" and allowed youth to proceed in filing suit without first completing Step 2, which is seeking review by the Deputy Director of Youth Services. *Id.*

Under OJJ's previous policy, if a youth submitted an emergency grievance but did not receive a satisfactory or timely response from OJJ, OJJ's policy allowed (and implicitly directed) youth to exercise one of two options: (1) re-file the grievance as a standard ARP and exhaust

administrative remedies under the standard ARP policy, or (2) seek immediate review by the Deputy Secretary. *Id.* Thus, according to OJJ's interpretation of its ARP policy, these alternative options offered "available" administrative remedies to youth who did not receive timely or satisfactory responses to emergency ARPs. *Id.*

That said, **after the *Edwards* decision and this Court's application of the *Edwards* decision in early stages of this lawsuit, OJJ responded to the Court's guidance by amending its ARP policy to ensure that youth have a clear and available avenue to exhaust administrative remedies.** *See* ARP Policy [Ex. A] (noting adoption date of Dec. 2022). As the Court is aware, OJJ Deputy Secretary Curtis Nelson testified yesterday in this trial about the new policy and Plaintiffs' failure to exhaust.

## ARGUMENT[6]

Plaintiffs Alex A. and Charles C. failed to exhaust administrative remedies as to the issues raised in the Motion for Preliminary Injunction [79] prior to the filing of that Motion. For that reason, the Motion should be denied.

> **a. Alex A.'s August 2022 grievance concerning his fears of being placed at BCCY-WF in the future does not exhaust remedies for claims asserted in the Motion about conditions allegedly occurring to *other* youth at BCCY-WF in August 2023.**

Alex A. is a youth in OJJ custody. However, he has never been, and is not currently, detained at Bridge Center City for Youth at West Feliciana ("BCCY-WF"). There is no allegation, and zero evidence, that Alex A. will ever be transferred to BCCY-WF.

In this action, a single grievance – labeled as an emergency grievance – was filed on behalf of Alex A. by opposing counsel. *See* [8-2] at 2-8 (filed August 16, 2022); *see also* Alex A.

---

[6] Defendants reserve all affirmative defenses, including but not limited to failure to exhaust administrative remedies, for any part of this litigation that remains following the Court's adjudication of the Plaintiffs' Motion for Preliminary Injunction [163].

Grievance [Ex. B]. That grievance complained about OJJ's purported "decision to imminently move" Alex A. to BCCY-WF because the facility was to be located at "Angola, an adult maximum security prison." *Id.* at 3. The grievance alleged that Alex A.'s transfer to BCCY-WF, if it ever occurred, would "expose [Alex A.] to a heightened risk of suicide and sexual assault" from the housing of youth alongside adult offenders. *Id.* at 3-4. The grievance further complained of fears that OJJ would deny education, counseling, rehabilitative treatment, medical care, and therapies to Alex A. at BCCY-WF. *Id.* at 4-6. The grievance also complained of fears that OJJ would be required to use "psychologically harmful solitary confinement" in order to avoid sight and sound contact between Alex A. and adult offenders housed at Angola prison, located on the same campus as BCCY-WF. *Id.*

OJJ responded to Alex A.'s emergency grievance on August 18, 2022, denying Alex A.'s request for emergency consideration, given Alex A. was not housed at BCCY-WF and therefore was not subject to any of the risks of harm or personal injury that the grievance alleged would occur at BCCY-WF. *See* [28-1] at ¶ 9. Following denial of his emergency grievance, OJJ processed Alex A.'s grievance under the standard (non-emergency) ARP grievance procedure. *Id.* At the time the Complaint [1] was filed, the deadline for OJJ to respond to the standard ARP had not yet passed. *Id.* at ¶ 10. Therefore, when the lawsuit was filed, Defendants (according to OJJ's interpretation of its then-existing ARP policy[7]) argued that Alex A. failed to exhaust his administrative remedies prior to filing the initial Complaint [1] and the initial Motion for Preliminary Injunction [9].

The Court ultimately ruled that OJJ's denial of Alex A.'s emergency ARP constituted a decision upon which Alex A. could rely in filing the Complaint [1] *or alternatively* that OJJ's then-

---

[7] The prior policy was explained by Defendants in prior briefing. *See, i.e.* Defs.' Proposed Findings of Fact [49] at 17-21.

existing procedure was unavailable to Alex A. because the policy "operate[d] as a simple dead end" and "lack[ed] authority to provide any relief." Order [79] at 7. As such, the Court ruled Alex A.'s claims (meaning, those asserted in his grievance) were deemed exhausted prior to the filing of the Complaint [1] and the initial Motion for Preliminary Injunction [9]. *Id.*

**However, the issues asserted by Alex A. in his grievance** (which are Alex A.'s projected fears of future exposure to adult offenders and denied services if Alex A. was ever transferred to BCCY-WF) **are not the same issues as those now raised in the Motion for Preliminary Injunction** (which are that youth currently housed at BCCY-WF are isolated in solitary confinement, denied education, denied recreation, denied rehabilitative programming, denied appropriate family contact, and exposed to excessive heat without potable water). *See generally* Motion [163] and Supporting Memo. [166]; *compare to* Alex A. Grievance [8-2]. Even though some of Alex A.'s fears are arguably *similar to* the conditions alleged in the Motion [163], they are certainly not the same. For instance, Alex A.'s complaints about suicide risk and solitary confinement were expressly linked in his grievance to a fear of being housed with adult offenders, which undisputedly never occurred at BCCY-WF and which is not even alleged now in the Motion [163].

And to state the obvious, even if Alex A.'s grievance had alleged the same conditions to those now alleged in the Motion [163], **those conditions clearly are not happening to Alex A.** because he does not reside at BCCY-WF.

And further, even if Alex A. did reside at BCCY-WF and was experiencing the issues alleged in the Motion [163], his prior grievance still would not exhaust these claims, as the Fifth Circuit has expressly rejected the argument that a "grievance about one particular incident automatically exhausts claims that arise from future incidents of the *same general type*." *Yankton*

*v. Epps*, 652 Fed. App'x 242, 245-46 (5th Cir. 2016) (noting a prisoner does not have to exhaust multiple grievances for the *same* repeated issue but distinguishing that from the requirement to grieve multiple *similar* issues) (emphasis added). The basis for this premise goes to the very reason the exhaustion requirement exists:

> [T] he purpose of the exhaustion requirement is to provide "fair notice of ... alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (quotation marks and citation omitted), *abrogated on other grounds by Jones*, 549 U.S. at 219, 127 S.Ct. 910. Therefore, "[a]n inmate's grievance must give 'sufficient notice of the matter being grieved ...,' so that '[p]rison officials ... ha[ve] a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served.' " *Rivers v. Turner*, No. 3:14 CV 2547, 2016 WL 4065884, at *3 (N.D. Ohio July 29, 2016) (quoting *Maxwell v. Corr. Med. Servs., Inc.*, 538 F. App'x 682, 688 (6th Cir. 2013)); *Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017) ("We have also explained that the purpose of the PLRA's exhaustion requirement 'is to allow prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court.' ") (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)); *Woodford*, 548 U.S. at 90, 126 S.Ct. 2378 ("The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' "). **Therefore, it is important that "[t]he issues [a plaintiff] may raise ... in [her] lawsuit are limited to the specific issues raised ... in [her] grievance.**" *Vandiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002) (emphasis added) ("The exhaustion requirement would be defeated if an inmate were permitted to raise additional issues ... in a § 1983 action that were never mentioned in the grievance."); *see also Ford v. Martin*, 49 F. App'x 584, 585 (6th Cir. 2002) **(finding failure to exhaust when the issues in the "grievances did not raise the same issues as those asserted in the ... complaint**"); *Baldridge-El v. Gundy*, 238 F.3d 419, 2000 WL 1721014, at *1 (6th Cir. 2000) (table case) **(finding claims were properly dismissed when they were not included in the grievances** the plaintiff had filed); *Rumsey v. Mich. Dep't of Corr.*, No. 1:10 CV 880, 2013 WL 5442400, at *7 (W.D. Mich. June 24, 2013) (explaining that **the plaintiff was required to bring the specific allegations to the attention of prison officials through the grievance procedure**); *Bartelson v. Parker*, No. 19-cv-281, 2019 WL 3849159, at *1 (E.D. Ky. Aug. 15, 2019) (concluding that plaintiff's § 1983 claim regarding a strip search conducted in view of other inmates was not

> exhausted when the underlying grievance "complained only that the search
> was done in front of a security camera [but] did not allege or complain that
> it was conducted in front of other inmates").

*Salem v. Mich. Dep't of Corr.*, 2019 WL 4409709, at *11 (E.D. Mich. Sept. 16, 2019) (emphasis

added). *See also Rachel v. Troutt*, 764 Fed. App's 778, 783 (10th Cir. 2019) (grievance did not

concern issues asserted in lawsuit and therefore did not provide sufficient notice of claims to permit

prison authorities to address and investigate them; finding failure to exhaust).[8]

The PLRA requires that a grievance be "sufficiently specific to give officials a fair

opportunity to address the problem that will later form the basis of the lawsuit." *Petzold v.*

*Rostollan*, 946 F.3d 242, 254-55 (5th Cir. 2019).[9] The Fifth Circuit explains in *Petzold*:

> Petzold's only argument is that, in his final step-one grievance, he
> implicitly included his retaliation claim against Williams through
> his statement, "[I] didn't want to remain locked up in [the SHU] for
> an extended period of time." Petzold asserts that this statement
> sufficiently conveys the factual basis for his retaliation claim against
> Williams and meets the exhaustion requirement. But this statement
> doesn't explicitly allege retaliation; it doesn't even mention Williams
> by name. Even if we liberally assume that this statement does
> vaguely include the Williams claim, it clearly was not "sufficiently
> specific" to avoid Defendants' exhaustion defense. Petzold didn't
> even allege that an official's wrongful conduct was the reason he
> was kept in the SHU. Petzold cannot seriously argue that Williams
> was on notice of his alleged retaliation such that he had "fair
> opportunity to address the problem." Exhaustion is a prerequisite to
> suit, and no reasonable jury could find that Petzold exhausted his
> retaliation claim against Williams.

---

[8] *Paschal-Barros v. Kenny*, 2019 WL 2720739 (D. Conn. June 28, 2019) ("The Second Circuit has held that proper exhaustion under the PLRA is analyzed under the same principles of notice pleading, that is, the written complaint 'must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it.' *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)) (citing cases)

[9] Practically speaking, the different way in which OJJ would respond to these grievances demonstrates that Alex A.'s August 2022 grievance cannot exhaust the conditions now asserted in August 2023. The potential responses by OJJ to a youth's grievance complaining of fears of future events would obviously be wholly different than the potential responses by OJJ to a youth's grievance complaining of events that are actually occurring within a facility. *See, e.g. Johnson v. Johnson*, 385 F.3d 503, 518, n. 9 (5th Cir. 2004) ("Johnson's Eighth Amendment and Equal Protection claims are not wholly unrelated: His race, he claims, is part of the reason why the defendants failed to protect him. […] Nonetheless, these claims reflect distinct problems with prison staff, and a grievance that suggested a racial component to Johnson's situation could be expected to produce a different type of administrative response") (citing USSC cases to explain that one purpose of the exhaustion requirement is the creation of an "administrative record that clarifies the contours of the controversy")).

*Id.* (finding Plaintiff's grievance related to extended periods in restricted housing and merely implying that such restriction was due to retaliation could not exhaust a subsequent claim for retaliation).

Simply put, Alex A.'s grieved claims filed in August 2022 about his projected fears if he was ever placed at BCCY-WF in the future could not possibly put the facility on notice of the claims raised in the Motion [163] that similar (and several additional) conditions are currently affecting other youth housed at BCCY-WF in August 2023. Alex A.'s grievance was not "sufficiently specific" to put OJJ on notice of *similar and additional different* issues affecting *other youth*. Accordingly, Alex A. has not properly exhausted his administrative remedies as to the conditions of confinement claims asserted in the Motion for Preliminary Injunction [163].

**b.   Similarly, Charles C. has not exhausted administrative remedies.**

Like Alex A., Charles C. is also a youth in OJJ custody. However, he is also not detained at BCCY-WF. While Charles C. did at one time reside at BCCY-WF, there is no allegation, and zero evidence, that Charles C. will be transferred to BCCY-WF in the future.

In October 2022, opposing counsel filed on behalf of Charles C. an administrative grievance almost identical to the August 2022 grievance filed on behalf of Alex A. *See* Charles C. Grievance [Ex. C]. For the same reasons as those discussed above in Section (a), Charles C.'s grievance cannot exhaust the claims raised in the Motion for Preliminary Injunction [229].

Moreover, while the Court may have deemed Alex A.'s grievance as exhausted, the Court has rendered no such determination as to Charles C.'s grievance. And as the Plaintiffs admit in their Exhaustion Brief [229], Charles C. did not even file his grievance until the day he filed an Amended Complaint [96] seeking to join this lawsuit – rendering it impossible for Charles C. to have exhausted prior to filing suit, as OJJ had no ability to respond to that grievance. *See, e.g. Sapp*

*v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (finding failure to exhaust where plaintiff signed his federal complaint on the same day he filed an appeal of his grievance; "he did not even wait for a response before pursuing this suit"); *see also Gonzalez*, 702 F.3d at 788 ("It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted."); *see also Freeman v. Francis,* 196 F.3d 641, 645 (6th Cir. 1999) (same); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (same).

And finally, even if Charles C. had exhausted prior to the filing of the Amended Complaint (which was impossible given the above), he – like Alex A. -- filed no grievances pertaining to the specific issues raised in the Motion for Preliminary Injunction [163]. Charles C. has failed to exhaust administrative remedies, particularly with regard to the claims asserted in the Motion for Preliminary Injunction [163].

### c. **Plaintiffs <u>are</u> required to exhaust new and distinct claims raised in the Motion for Preliminary Injunction.**

Plaintiffs argue in their Exhaustion Brief [229] that there is no "ongoing exhaustion" requirement and that, once a plaintiff exhausts administrative remedies and files suit, there is no continuing requirement to exhaust throughout the pendency of the litigation. *See* [229] at 2. Plaintiffs misinterpret the law.

First, Plaintiffs cite *Jones 'El v. Berge*, 172 F. Supp.2d 1128, 1134 (W.D. Wis. 2001). In *Jones 'El*, the Wisconsin district court specifically stated: "Any claim for relief *that is within the scope of the pleadings* may be litigated without further exhaustion." (emphasis added). As discussed above, the claims asserted in the Motion for Preliminary Injunction are not "within the scope of the pleadings" previously filed in this action (namely, the Amended Complaint). As such, *Berge* does not apply.

Furthermore, relevant case law demonstrates that where a prisoner plaintiff files a lawsuit, then raises new and distinct claims in a motion for preliminary injunction within that lawsuit, the PLRA bars the new claims if they have not also been exhausted. *See Tolliver v. Collins*, 2010 WL 2640061, at *2 (S.D. Ohio April 29, 2010) (denying motion for preliminary injunction based on new claims concerning unconstitutional denial of medical care, which were different from the involuntary exposure to secondhand smoke claim raised in underlying complaint); *McDougald v. Kennett*, 2008 WL 4378073, at *14 (D. Nev. Aug. 12, 2008) (denying plaintiff's motion for preliminary injunction for failure to exhaust and finding new claims were not properly before the court, where underlying complaint asserted staff assault and excessive force on inmate but motion asserted new claims for verbal threats of bodily harm, threatening plaintiff with "same treatment you received" at facility in which he was assaulted, and   other constitutional violations); *Salvatierra v. Connolly*, 2010 WL 5480756, at *24 (S.D. N.Y. Sept. 1, 2010) (denying motion for preliminary injunction based in part on failure to exhaust; "Plaintiff cannot side-step essential procedural requirements, such as exhaustion and service of process, merely by dressing up his claims as requests for preliminary injunctive relief. *See, e.g., McClenton v. Menifee*, 05 Civ. 2844(JGK), 2006 U.S. Dist. LEXIS 60297, at *52 (S.D.N.Y. Aug. 29, 2006) (denying motion for preliminary injunction where the underlying claim '[was] not included in the complaint and there [was] no showing that the plaintiff [had] exhausted his administrative remedies with respect to [that] claim')."); *Phelps v. Godinez*, 2016 WL 11464693, at *3 (S.D. Ill. March 30, 2016) (where issues raised in motion for preliminary injunction were outside scope of underlying claims in lawsuit, plaintiff must pursue such claims in a separate lawsuit and must properly exhaust administrative remedies as to those claims before filing suit).[10]

---

[10] *See also Partlow v. Koenig et al.*, 2023 WL 5095785 (S.D. Ind. Aug. 9, 2023) (citations omitted) (emphasis added):

Plaintiffs also cite *Baxley v. Jividen*, 2020 WL 18029385 (S.D. W.V. April 8, 2020) for the premise that exhaustion is not required for a motion for preliminary injunction filed within a related putative class action. *See* [229] at 2. *Baxley* case concerned whether plaintiffs in a putative class action alleging inadequate health care services at a facility could subsequently file a motion for preliminary injunction based upon new (unexhausted) claims of inadequate health care specifically in response to the COVID-19 pandemic. *See generally, Baxley*. The West Virginia District Court decided that plaintiffs did not have to separately exhaust the COVID claims because the complaint was sufficiently broad to encompass them. *Id.* However, a Nebraska District Court facing the identical issue disagreed. *See Sabata v. Nebraska Dep't of Corr. Srvcs.*, 4:17-cv-3107, 2020 WL 2201873, at *3 (D. Neb. May 1, 2020) (holding claims related to COVID-19 treatment and protection could not fall within the pre-existing medical claims because "no party contemplated that this action would encompass a claim regarding a virus that did not exist"). And further, *Baxley* is easily distinguishable from this case, as the plaintiffs in *Baxley* actually resided at the facility in question and thus were subject to the alleged and ongoing conditions at that facility. Here, no named Plaintiff has been subjected to any alleged conditions at BCCY-WF that are described in the Motion for Preliminary Injunction.

---

A district court has no authority to grant injunctive relief unless there is a nexus between the underlying claims and the request for injunctive relief. […] Here, all of the events that form the basis for the motion for injunctive relief occurred after Mr. Partlow filed his complaint, and there is no nexus between them and the claims proceeding in this case, other than the conclusory allegation that the defendants acted as they did because they were retaliating against him. The Court is not convinced that the fact that a conclusory label of "retaliation" is sufficient to establish the required nexus, particularly given the [PLRA's] strict requirement that any prisoner bringing a suit with respect to prison conditions under 42 U.S.C. § 1983 or any other law must first exhaust administrative remedies. *See* 28 U.S.C. § 1997e(a). Holding otherwise would allow an inmate who has filed a retaliation lawsuit to circumvent the PLRA's exhaustion requirements every time he takes issue with his conditions of confinement by requesting an injunction in his existing suit and claiming that the new problem resulted from "retaliation." **Put another way, "a motion for preliminary injunction is not a proper way to pursue additional claims."**

One case that Plaintiffs cite, *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004), makes some important points. *Johnson* states that "prisoners need not continue to file grievances *about the same issue*." *Id.* at 521 (emphasis added) (noting Texas Dep't of Crim. Justice procedure prohibits repetitive grievances *about the same issue*). However, *Johnson* also expressly warned that the Court "d[id] not here hold that a grievance filed in response to one particular incident automatically exhausts claims that arise from future incidents of the same general type. Thus, [for example] an inmate who claims to have been beaten by guards (or, for that matter, not protected by guards) once one month and again the next month can rightfully be expected to grieve both incidents .... **Nor do we hold that Johnson would not be required to file additional grievances for future incidents that reflect a different problem**. For instance, Johnson's claims against Lieutenant Paul stem solely from the March 2002 incident in which Paul responded indifferently after Johnson reported being harassed in the shower. **This discrete incident reflects a different type of problem that would require a different grievance.** (Indeed, we will hold in the next section of the opinion that Johnson has not exhausted his claims against Paul.)").

Here, as in *Johnson*, the Motion for Preliminary Injunction raises different problems by different youth (not the named Plaintiffs Alex A. and Charles C.) that require different grievances. Plaintiffs have failed to exhaust administrative remedies for the claims at issue in the Motion for Preliminary Injunction.

>    **d. Any claims filed by Alex A. or Charles C. as to conditions at BCCY-WF are moot, given that neither of those named plaintiffs reside at BCCY-WF and there is no evidence they will be transferred there in the future.**

Alex A. has never resided at BCCY-WF. Charles C. previously resided there. There is no allegation, and there is zero evidence, that Alex A. or Charles C. will be transferred to BCCY-WF in the future. Because Alex A. and Charles C. are not housed at BCCY-WF, their claims for

injunctive relief as asserted in the Motion for Preliminary Injunction [229] (even if those claims were exhausted – and they are not) are moot. *See Brown v. Felts*, 128 Fed. Appx. 345 (5th Cir. 2005) (transfer of prisoner to another facility rendered moot issues concerning confinement at prison from which he was transferred); *see also Herman v. Holiday*, 238 F.3d 660 (5th Cir. 2001) (transfer rendered claims for injunctive relief moot).

There is a narrow exception to the mootness doctrine where issues are "capable of repetition but evading review." *Richards v. Chambers*, 2007 WL 781269, at *2 (S.D. Miss. March 12, 2007) (citing cases). However, that exception "requires the showing of a demonstrated probability that the challenged conduct will be repeated and affect **the same plaintiff**." *Id.* (emphasis added). Where a plaintiff makes no such showing, "[a]ny suggestion of relief raised on the possibility of transfer [back to prior facility] is too speculative to warrant relief." *Id.* (quoting *Herman*; denying plaintiff's motion for preliminary injunction). Plaintiffs have not even alleged this exception, much less have they shown a "demonstrated probability" of repeated conduct affecting Alex A. or Charles C. The exception does not apply.

Therefore, even if Plaintiffs had exhausted their administrative remedies, Plaintiffs' Motion for Preliminary Injunction should still be denied as moot.

> **e. This putative class action has not yet been certified. Every plaintiff (and any other individual who may attempt to become a plaintiff) must exhaust every claim.**

Plaintiffs have moved to certify this lawsuit as a class action [99]; however, the Court has not yet certified it as such. In putative class action cases where exhaustion is required (as here), if the court has not yet certified the class, all plaintiffs (and all proposed intervenors) must fully and properly exhaust administrative remedies prior to filing suit:

> **Where [the class action] determination has not yet been made, named plaintiffs who have not exhausted their administrative remedies must**

> **be dismissed.** *Eastland v. Tennessee Valley Authority*, 553 F.2d 364 (5th Cir. 1977) (see Note 21); *Swain v. Hoffman*, 547 F.2d 921 (5th Cir. 1977). … [U]nnamed plaintiffs who have not exhausted their administrative remedies may participate in the lawsuit as members of a class if at least one representative has met the exhaustion requirement. […] [T]he court, **after determining that a class is proper**, may allow those named plaintiffs, who failed to exhaust their remedies, to intervene in the lawsuit.

*Wilkins v. Univ. of Houston*, No. 75-H-644, 1977 WL 1837, at *2 (S.D. Tex. Nov. 22, 1977) (emphasis added) (citing *Eastland v. Tenn. Valley Auth.*, 553 F.2d 364, 373 n. 21 (5th Cir. 1977)).

*See also Peters v. District of Columbia*, 873 F. Supp.2d 158, 218-19 (D.C. Cir. 2012) (explaining that proposed intervenors' filing of the claims at issue would "be futile and their claim would be subject to dismissal for failure to exhaust their administrative remedies"; denying motion to intervene on various grounds); *Bachman v. Collier*, 73 F.R.D. 300 (D.C. Cir. 1976) (denying motion to intervene for failure to exhaust administrative remedies); *Hicks v. Crown Zellerbach Corp.*, 49 F.R.D. 184 (E.D. La. 1967) (same).

As one court explained: "[W]here a prisoner wishes to become a plaintiff in an existing lawsuit, he must have exhausted his administrative remedies before that existing lawsuit was filed, not just before the new prisoner moved to intervene. Otherwise, a single lawsuit could exist in perpetuity as old plaintiffs were granted relief or dismissed, and new plaintiffs joined from time to time." *Damron v. Sims*, No. 2:09-CV-050, 2010 WL 4809090, at *1 (S.D. Ohio Nov. 17, 2010) (citing cases).[11]

---

[11] To the extent Plaintiffs may argue that other grievances beyond those filed by the named Plaintiffs Alex A. and Charles C. may be relied upon to establish exhaustion for this action, that argument would also fail. Plaintiffs have not raised this issue. Defendants assert this argument in anticipation of additional issues that may arise regarding exhaustion. Defendants would also note that Curtis Nelson's testimony during the hearing confirmed that he has received no grievances from named Plaintiff Charles C. concerning the issues raised in the Motion for Preliminary Injunction [163]. As such, this potential argument should be foreclosed.

**f.  Because Defendants have raised the affirmative defense of exhaustion, the burden shifts back to Plaintiffs to establish the claims were properly exhausted. Plaintiffs have failed to do so.**

Plaintiffs' Exhaustion Brief points out that exhaustion is an affirmative defense that Defendants must plead and prove. *See* [229] at 3, n. 1. But once Defendants put on evidence that Plaintiffs failed to exhaust, the burden shifts back to Plaintiffs to establish exhaustion. *Reeves v. Mancuso*, No. 2:19-cv-00725, 2020 WL 6166924, at *4 (W.D. La. Oct. 21, 2020) (defendants established plaintiff was incarcerated when the suit was filed, that the facility had grievance procedure, that plaintiff had previously filed grievances, but that plaintiff had filed no grievance in relation to the claims at issue; court held burden shifted back to plaintiff to establish exhaustion); *see also Bratner v. Freestone County Sheriffs Ofc.*, 776 Fed. App'x 829, 832 (5th Cir. 2019) ("Because exhaustion  is an affirmative defense, the defendants have the burden of demonstrating that Brantner failed to exhaust. … If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial.").

OJJ Deputy Secretary Curtis Nelson testified during this week's evidentiary hearing, specifically on August 17, 2023, that he has received zero grievances from Charles C. concerning the issues raised in the Motion for Preliminary Injunction [229]. Defendants attach here the only grievances filed by either of the named Plaintiffs Alex A. and Charles C. Plaintiffs have failed to dispute (much less overcome) this evidence to establish exhaustion. The Motion [163] should therefore be denied based on failure to exhaust.

## <u>CONCLUSION</u>

For these reasons, the Court should deny Plaintiffs' Motion for Preliminary Injunction based on Plaintiffs' failure to exhaust administrative remedies for the issues raised in the Motion.

Dated: August 18, 2023.

Respectfully Submitted:

BY:    /s/ Allena McCain
       Connell Archey (#20086)
       Randal J. Robert (#21840)
       Allena McCain (#38830)
       Madaline King (#38301)
       BUTLER SNOW LLP
       445 North Boulevard, Suite 300 (70802)
       P.O. Box 2997
       Baton Rouge, LA  70821-2997
       Telephone:    (225) 325-8700
       Facsimile:    (225) 325-8800
       Connell.Archey@butlersnow.com
       Randy.Robert@butlersnow.com
       Allena.McCain@butlersnow.com
       Madaline.Rabalais@butlersnow.com

       Kyle V. Miller (pro hac vice)
       Lemuel E. Montgomery III (pro hac vice)
       Anna Morris (pro hac vice)
       Carly Chinn (pro hac vice)
       BUTLER SNOW LLP
       1020 Highland Colony Parkway, Suite 1400
       Ridgeland, MS 39157
       Telephone:    (601) 948-5711
       Facsimile:    (601) 985-4500
       Kyle.Miller@butlersnow.com
       Lem.Montgomery@butlersnow.com
       Anna.Morris@butlersnow.com

       Counsel for Defendants
       GOVERNOR JOHN BEL EDWARDS, in
       his official capacity as Governor of
       Louisiana; WILLIAM SOMMERS, in his
       official capacity as Deputy Secretary of the
       Office of Juvenile Justice; and JAMES M.
       LEBLANC, in his official capacity as
       Secretary of the Louisiana Department of
       Public Safety & Corrections

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the above and foregoing has this day been filed electronically with the Clerk of Court using the CM/ECF system, which will deliver notice of this filing to all counsel of record.

Baton Rouge, Louisiana this 18 day of August, 2023.

_/s/ Allena McCain_____