## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. A. No. 3:22-CV-00573-SDD-RLB |
| GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections, | ) ) ) ) ) ) ) ) ) ) | **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS REGARDING ABSENCE OF BODY-WORN CAMERA FOOTAGE** |
| Defendants. | ) | |

NOW INTO COURT, through undersigned counsel, come Defendants John Bel Edwards, in his official capacity as Governor of Louisiana; Otha "Curtis" Nelson,[1] in his official capacity as Deputy Secretary of the Office of Juvenile Justice ("OJJ"); and James M. LeBlanc, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections (collectively "Defendants"), who respond to Plaintiffs' Motion for Spoliation Sanctions Regarding Absence of Body-Worn Camera Footage (the "Motion," Doc. 242). The Motion should be denied.

---

[1] On November 18, 2022, Governor Edwards announced the resignation of Deputy Secretary Sommers and the appointment of Otha "Curtis" Nelson as his replacement. https://gov.louisiana.gov/index.cfm/newsroom/detail/3892. Because Sommers was sued in his official capacity, Nelson is automatically substituted as a Defendant. Fed. R. Civ. P. 25(d).

## INTRODUCTION

Plaintiffs ask the Court to "sanction Defendants to cure the prejudice Plaintiffs face due to missing body-worn camera (BWC) footage containing the audio and video of Defendants' employees spraying putative class members with chemical spray at the OJJ Angola facility." Motion (Doc. 242) at 1 (based on Rule 37(e)). The Motion should be denied for at least three reasons.

**First,** Federal Rule of Civil Procedure Rule 37(e) requires that the data at issue was lost or destroyed.  As the Motion points out, the BWCs of two Juvenile Justice Specialist ("JJS") officers simply "were not set to record" the incident. *Id.* Thus, the video data at issue was never recorded; it was not lost or destroyed. Rule 37(e) does not even apply.

**Second**, sanctions are not appropriate because Plaintiffs are not prejudiced. Rule 37(e) provides that sanctions are appropriate where the subject information "cannot be restored or replaced through additional discovery" and "upon finding prejudice to another party from loss of the information." Fed. R. Civ. P. 37(e)(1). Here, Defendants produced a host of additional discovery that provided details of the subject incident, including additional security surveillance video footage from various (including close proximity) angles that show the incident, from several minutes before to several minutes after; BWC footage from another officer who responded to the incident; and various written incident reports (including use of force report, unusual occurrence report, and chemical agent logs). Further, JJS Officers Daja McKinley and Frank Edwards were both deposed about the incident, and Officer McKinley testified about the incident in open court during the evidentiary hearing on Plaintiffs' Motion for Preliminary Injunction. Plaintiffs also had any number of other eyewitnesses (including the youth involved in the incident and other JJS

officers and youth witnesses) who Plaintiffs could have deposed or called as witnesses during the hearing. There is no prejudice here.

**Third**, the sanctions Plaintiffs seek are only available if Plaintiffs can establish Defendants intended to deprive the Court or the other party of the video footage or otherwise acted in bad faith to deny Plaintiffs access to the subject evidence. Plaintiff has not claimed, and has provided no support for any claim, that Defendants (and specifically, JJS Officers Edwards and McKinley) intended to deprive Plaintiffs or the Court of their BWC video footage. With no evidence (or even allegation) of intent, Plaintiffs' requested relief is wholly improper.

## BACKGROUND

On August 14, 2023, the Court conducted a telephonic status conference to address various issues. During that conference, the Court ordered that Defendants produce the BWC of JJS Officers Edwards and McKinley, from five minutes before to five minutes after an August 2, 2023, incident that resulted in the deployment of chemical agent upon a youth in OJJ custody at the Bridge City Center for Youth at West Feliciana ("BCCY-WF"). *See* Minute Entry (Doc. 216).

Upon review of records, Defendants discovered that Officers Edwards and McKinley were wearing BWCs but did not have the BWCs set to record at the given date and time. However, Defendants worked to identify other sources of video evidence that depicted the same date/time period and produced all such videos, specifically seven housing tier video surveillance videos and one BWC video from another officer who responded to the event. Defendants also produced various documents timely created on the date of the incident that described the subject incident in detail, including a use of force report, unusual occurrence reports, and a chemical agent log.

Plaintiffs deposed JJS Officers Edwards (who deployed the chemical agent) and McKinley (who attempted to intervene in the youth misconduct to redirect his behavior immediately prior to

deployment of the chemical agent). Plaintiffs called Officer McKinley as a witness during the evidentiary hearing and questioned her extensively regarding the incident, utilizing in-court replay of the produced video evidence to do so. Plaintiffs listed Officer Edwards as a may call witness but elected not to call him at the hearing.

While there were several other eyewitnesses to the incident (including several youth), Plaintiffs chose not to depose or question any other eyewitnesses concerning the incident.

## LEGAL STANDARD

Rule 37(e) of the Federal Rules of Civil Procedure provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in litigation may:
>     (A)  presume that the lost information was unfavorable to the party;
>     (B)  instruct the jury that it may or must presume the information was unfavorable to the party; or
>     (C)  dismiss the action or enter a default judgment.

Dissecting these provisions, the rule has two preconditions before permitting one of two levels of sanctions. The preconditions are (1) "electronically stored information [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it" and (2) such ESI "cannot be restored or replaced through additional discovery." If *both* of these preconditions are met, Rule 37(e) permits one of two levels of sanctions. The lower level of sanctions, outlined in Rule 37(e)(1), applies when the lost electronic evidence causes "prejudice to another party" and permits the Court to fashion sanctions "no greater

than necessary to cure the prejudice." The higher level of sanctions, outlined in Rule 37(e)(2), allows the Court to presume the lost information was unfavorable, to instruct the factfinder that it was unfavorable, or to enter default judgment against the spoliating party – but those more extreme sanctions require a finding that "the party acted with the intent to deprive another party of the information's use in the litigation."

It is somewhat unclear what sanctions Plaintiffs seek in this case. The Motion concludes by requesting that the Court find that JJS Officers' decision not to record BWC footage of the incident "diminishes their credibility," and that the Court "preclude evidence and argument by the Defendants" that the youth's actions "posed a serious and immediate risk of physical harm to him or to others." Motion (242) at 19. The Motion is styled as a request for relief under Rule 37(a)(1); however, when taken as a whole, the Motion appears to essentially seek an adverse inference under Rule 37(a)(2) – the harshest sanction under Rule 37, short of default judgment.[2]

Under Fifth Circuit precedent, "for [Plaintiffs] to receive an adverse inference instruction, [Plaintiffs] must show that [Defendants] not only destroyed evidence relevant to [the] claims and defenses, but also that [Defendants] acted intentionally and in 'bad faith' in doing so." *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 340 (M.D. La. 2006) ("[T]he Fifth Circuit only permits an adverse inference sanction against a destroyer of evidence upon a showing of 'bad faith' or 'bad conduct.'") (quoting *Condrey v. SunTrust Bank of Georgia,* 431 F.3d 191 (5th Cir. 2005)) (also noting that the party seeking sanctions cited case law from courts outside the Fifth Circuit that follow a gross negligence standard for imposition of an adverse inference sanction but cautioning that courts in this circuit are constrained to "the Fifth Circuit's stricter standard requiring destruction in 'bad faith'"); *see also U.S. v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000) (finding district

---

[2] Plaintiffs likely avoid using the term "adverse inference" because Plaintiffs know there is no proof whatsoever of intentional spoliation of evidence here, as required to obtain an adverse inference.

5

court properly declined to instruct jury on spoliation of evidence where subject data was "irretrievable" and there was no evidence of bad faith conduct to destroy the data) (citing *Williams v. Briggs Co.*, 62 F.3d 703, 708 (5th Cir.1995) (no finding of spoliation where the evidence in issue was not destroyed or lost and plaintiff offered no evidence to suggest defendant did anything to alter the condition of the evidence in issue)). This Court has expressly held that negligent failure to preserve evidence is "not enough to warrant an instruction on spoliation." *Hamilton v. Orr*, No. CV 21-199-JWD-SDJ, 2022 WL 17254756, at *1 (M.D. La. Nov. 28, 2022) (citing *Russell v. Univ. of Tex. of Permian Basin*, 234 F.App'x 195, 208 (5th Cir. 2007) (quoting *Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)). Instead, the spoliator must have a "culpable state of mind" and must "act with fraudulent intent and a desire to suppress the truth." *Id.*[3]

## ARGUMENT

### I. Plaintiffs are not entitled to relief under any portion of Rule 37(e).

#### a. The relevant ESI was not "lost," so Rule 37 does not apply.

Rule 37(e) addresses remedies when ESI has been created (or in this case, recorded) but not preserved. Plaintiffs' Motion confuses a duty to preserve a recording with a duty to record in the first place. In this case, it is undisputed that JJS McKinley and JJS Edwards did not set their BWCs to record. JJS McKinley testified at the hearing that, *before* the incident, she may have accidently forgotten to turn her BWC back on after using the bathroom. *After* the incident, there is nothing either JJS McKinley, JJS Edwards, the Defendants, or any OJJ employees could have done to preserve the BWC videos from JJS McKinley or JJS Edwards because those videos never

---

[3] The *Hamilton* Court went on to state that an inference of bad faith is "not automatically drawn 'simply because documents are destroyed after the initiation of litigation.'" *Id.* Here, of course, there is no allegation that the subject video data was ever destroyed; instead, the data was never created in the first place. Regardless, there is no allegation (and no evidence) of bad faith.

existed. The only actions Plaintiffs allege JJS McKinley and JJS Edwards did to constitute a "failure to preserve" occurred *before* the incident, when they failed to record BWC video. Again, Rule 37(e) addresses "lost" data; the data at issue here was not lost because it never existed.[4]

**b. Even if Rule 37 did apply, the conditions for imposing sanctions are not met.**

Again, Rule 37 has two conditions before permitting sanctions: (1) ESI must be lost because a party failed to take reasonable steps to preserve it and (2) such ESI cannot be restored or replaced through additional discovery. As stated above, there is no claim here that Defendants failed to *preserve* ESI, only a claim that Defendant failed to *record* ESI in the first place. And as shown throughout this brief, including but not limited to in Section II, the subject evidence has been made available through other discovery. Even if Rule 37 applied here (and it does not), the required conditions are not met.

**c. OJJ's BWC policy does not add to the Defendants' duty under Rule 37.**

Plaintiffs attempt to rely on OJJ's internal BWC recording policy to increase Defendants' legal duty to preserve, or the consequences allowed for failure to preserve, under Rule 37(e).

---

[4] Plaintiffs cite *United States v. Garcia*, 554 F. Supp.3d 421, 431-32 (E.D. N.Y. 2021) for its recognition that there is a lack of relevant caselaw discussing the results of an officer not activating his or her body camera, as it "is a relatively new area of law." Motion (Doc. 242) at 8. While that may be true, the *Garcia* case provides no value to the Court's analysis of this Motion, for a few reasons. **First,** *Garcia* was a criminal case; the *Garcia* court did not discuss failure to record body camera footage in the context of a spoliation motion under Rule 37(e). **Second,** *Garcia* is an E.D. N.Y. decision and is not binding. **Third,** *Garcia* recognizes that there is no circuit court guidance and that there is a split among district courts as to how to "asses[s] the evidentiary consequences of a police officer's failure to comply with body camera mandates where the Fourth Amendment is implicated." *Id.* at 431. Specifically, district courts have held that a failure to activate a body camera either (1) does <u>not</u> support a finding of bad faith in failing to collect and preserve evidence, (2) may deprive the Court of the best evidence available, or (3) can be a factor in assessing an officer's credibility, particularly "in a close case where the officer's testimony is controverted." *Id.* Applying those potential results here, there is no allegation of bad faith and thus there should be no finding of bad faith. Further, the officer's testimony about the incident is <u>not</u> controverted; there is no claim that the officers have testified inconsistently with the existing video evidence. And, while the failure to record Edwards' and McKinley's BWCs may have deprived the Court and Plaintiffs of a limited portion of evidence concerning this incident, Plaintiffs had various avenues to obtain that very same portion of evidence (including from the youth himself). In sum, *Garcia* should have no impact on the Court's analysis.

Defendants do not dispute the existence or contents of this policy, and Defendants do not dispute the fact that JJS Officers McKinley and Edwards did not have their BWCs set to record at the time of the incident.  However, Defendants <u>do</u> dispute that the officers' inadvertent failure to record video on their BWCs (in potential violation of that internal policy) warrants a spoliation sanction under Rule 37(e). Plaintiffs cite no cases from Louisiana district courts, the Fifth Circuit, or any other jurisdiction in the country that hold that the accidental (or even negligent) violation of an internal BWC policy resulting in a failure to *record* an incident warrants a failure to *preserve* spoliation sanction under Rule 37(e). Indeed, it does not warrant such a sanction.

### d. Defendants' litigation hold has nothing to do with this Motion. A party cannot preserve evidence that does not exist.

In the Motion, Plaintiffs cite *Marsulex Env't Techs. v. Selip S.P.A*, No. 1:15-CV-00269, 2019 WL 2184873, at *10 (M.D. Pa. May 21, 2019) to argue that a party who fails to implement a litigation hold and fails to take steps to preserve evidence "fails …. the Rule 37(e) test" to "take reasonable steps to preserve" evidence. Motion (Doc. 242) at 9). Plaintiffs simply attempt to disparage Defendants by referencing irrelevant (and out-of-context) hearing testimony of OJJ Deputy Secretary Curtis Nelson related to evidence preservation issues. Simply put, no litigation hold (no matter how strict or how timely) would have allowed preservation of the missing BWC footage – because the subject BWC videos never existed in the first place. They were never recorded. Plaintiffs' argument as to Defendants' litigation hold is misplaced and irrelevant to the Motion. That argument should be disregarded.

### e. Plaintiffs' Motion repeatedly confuses a failure to *record* with a failure to *preserve* under Rule 37(e). The cases cited by Plaintiffs on this point are not relevant.

Plaintiffs rely heavily on a phrase in Rule 37(e) that requires a party to take "reasonable steps to preserve" evidence. But again, evidence *preservation* is not at issue here. Defendants could

not preserve evidence that was never created. As such, all of Plaintiffs' cited case law that focuses on whether a party's steps were reasonable to *preserve* evidence simply do not apply here.

*Jenkins v. Woody*

Plaintiffs cite *Jenkins v. Woody*, No. 3:15CV355, 2017 WL 362475, at \*16 (E.D. Va. Jan. 21, 2017). *See* Motion (Doc. 242-1) at 12. But Plaintiffs misrepresent the *Jenkins* holding.  In that case, the Richmond City Justice Center (RCJC) had recently opened and had a new video recording system. *See generally id.* In the first week, Virginia Jenkins died in RCJC custody. *Id.* The video system was set to maintain video recordings for 30 days; however, the motion sensitivity for recordings was set too high, causing a more-than-expected amount of data, which caused videos to be automatically overwritten more quickly than the 30-day setting. *Id.* Plaintiffs submitted a FOIA request within 30 days of Ms. Jenkins' death, but by that time, the incident video had been overwritten.  Thus, the *Jenkins* court evaluated whether the sheriff should have *preserved* the incident video in anticipation of litigation. *Id.* As a contributing factor, the *Jenkins* court found that, in the Jenkins incident, the sheriff had also deviated from his normal practice of conducting an incident investigation after every death and reviewing video footage in the course of that investigation.  *Id.* at \*15. On these facts, the court found that certain spoliation sanctions were appropriate. *Id.* But notably, the *Jenkins* court declined plaintiffs' request for an adverse inference instruction, being "unable to find that Sheriff Woody had the requisite level of intent to deprive Ms. Jenkins of use of the information at issue in litigation." *Id.* at \*17.

Plaintiffs' Motion merely presents *Jenkins* as standing for the principle that if a facility's policies would result in the preservation of BWC footage, then deviation from those practices is evidence of a failure to take reasonable steps to preserve evidence. Motion (242) at 15. But the

*Jenkins* case does not even address BWC footage and does not concern any failure to *record* BWC video. *Jenkins* concerns a failure to preserve, not a failure to record. *Jenkins* does not apply.

### *Columbia Pictures, Inc. v. Bunnell*

Plaintiffs also cite *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007) – a copyright case addressing as a matter of first impression whether information held in a computer's random access memory (RAM) constitutes ESI and thus is within the scope of discoverable information. Aside from having no factual similarity whatsoever to this case, the *Bunnell* case has nothing to do with BWC, nothing to do with a failure to record, and nothing to do with Rule 37. As the Plaintiffs' Motion admits, *Bunnell* concerns a failure "to permanently store data," not a failure to record that data in the first place. Motion (Doc. 242) at 16. Moreover, the *Bunnell* court (in response to concerns from third party *amici* that the holding would have wide-ranging and unintended consequences in other litigation) expressly and carefully limited its holding to that case only.[5] At any rate, even if there was any way *Bunnell* could apply here (and there is not), it is not binding on this Court. *Bunnell* can be disregarded.

### *Fed. Trade Comm'n v. Noland*

Plaintiffs rely on *Fed. Trade Comm'n v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 3857413, at *2, 7 (D. Ariz. Aug. 30, 2021), arguing an employee's choice to turn on an auto-delete

---

[5] The *Bunnell* court explained:

In response to *amici's* concerns over the potentially devastating impact of this decision on the record-keeping obligations of businesses and individuals, **the Court notes that this decision does not impose an additional burden on any website operator or party outside of this case.** It simply requires that the defendants in this case, as part of this litigation, after the issuance of a court order, and following a careful evaluation of the burden to these defendants of preserving and producing the specific information requested in light of its relevance and the lack of other available means to obtain it, begin preserving and subsequently produce a particular subset of the data in RAM under Defendants' control.

*Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 448 (C.D. Cal. 2007) (emphasis added).

feature constitutes spoliation. Motion (Doc. 242) at 17. Plaintiffs leave out a lot of important facts from *Noland* that easily distinguish it from this case.

In *Noland*, the defendant was made aware through inadvertent disclosure that the FTC was investigating his business. 2021 WL 3857413 at *1. When the FTC became aware of the disclosure, it requested that Noland and his company preserve relevant documents. *Id*. Instead, Noland instructed his company's leadership team to stop using the company's previous messaging platforms and to start using encrypted communications platforms and to engage the platform's "auto-delete" function. *Id*. When asked in a deposition directly about the use of the encrypted messaging apps, Noland did not disclose that the company had used them. *Id*. Furthermore, after being ordered to turn over cell phones (and delaying compliance with that order), the individual company defendants deleted the messaging apps from their phones "in a coordinated fashion." *Id*. As a result, forensic specialists could not recover any communications sent by company executives on those platforms between May 2019 and August 2020. *Id*. Thus, while the court did impose sanctions in *Noland*, the Court did not do so (as Plaintiffs suggest) based on the defendants' mere setting of communication software to auto-delete. There were many intentional and conspiring infractions by those defendants that warranted sanctions.

Here, on the other hand, there is no claim (much less proof) that JJS Edwards or McKinley intentionally failed to record the subject incident; or that they recorded, then deleted, BWC footage; or that they coordinated to conceal the video evidence. Furthermore, while the communications in *Noland* were altogether lost, there is no such loss in this case – as Plaintiffs had multiple other avenues to reach the evidence that would have been depicted on BWC footage.

In short, Plaintiffs' cited cases do not apply, and their Motion should be denied.

**f.  Relevant case law supports Defendants' position.**

Binding and persuasive cases that *are* factually analogous and *are* more on point support Defendants' position and call for the Court to deny Plaintiffs' Motion.

*See, e.g. Schreane v. Beemon*, 575 Fed. App's 486 (5th Cir. 2014) (prison's destruction of surveillance video was not in bad faith where government produced all footage that remained which depicted the "few minutes" of Plaintiff's assault; though other surveillance had been erased, such records had been destroyed as part of routine file maintenance, which demonstrated a lack of bad faith; affirming district court's ruling denying plaintiff's request for evidentiary inference of spoliation); *Mixon v. Pohlman*, No. No. 20-1216, 2022 WL 2867091 (E.D. La. July 21, 2022) (denying plaintiffs' motion for adverse evidentiary presumption under Rule 37 in case involving prisoner's wrongful death, where plaintiff claimed prison produced segments, but not all, relevant video surveillance, even though defendants were aware of their duty to preserve all relevant video; holding that, even if defendants had a duty to preserve additional video surveillance before it was automatically overwritten, there was still no evidence of bad faith by defendants and therefore adverse inference was inappropriate). *See also U.S. v. Thomas*, No. 5:20-cr-10-DCB-FKB, 2021 WL 6198083, at *2 (S.D. Miss. 2021) (sheriff department's failure to preserve deputy's bodycam video after a traffic stop, among other related evidence, did not amount to bad faith under spoliation doctrine where criminal defendant presented no evidence of bad faith at the hearing and presented only speculative allegations regarding the "potential usefulness" of the missing bodycam video and related documentation; "Spoliation and conclusory allegations fall short of demonstrating bad faith on the part of these deputies.").

*See also Webb v. Scott*, 2014 WL 1787948, at *5 (D. Utah May 5, 2014) (holding officers did not bear a duty to record additional dash cam footage to avoid spoliation, and even if such a duty existed, plaintiff fails to articulate how he suffered prejudice from such failure to record

additional footage); *Avery v. Taylor*, No. 10–10447, 2011 WL 4576310, at *7–8 (E.D. Mich. Sept. 30, 2011) (refusing to grant spoliation sanctions where a gap in a dash camera recording occurred during a plaintiff's traffic stop because the plaintiff failed to show defendants destroyed that portion of the recording in bad faith); *Foxhoven – Vessel v. Stacy*, 2023 WL 2479770, at *5 (D. S.D. March 10, 2023) (dismissing spoliation claim where plaintiff argued department failed to produce body camera recording: "[F]ailing to produce evidence is not the same as the destruction of evidence"; also noting several recordings of body cam footage were produced and relied upon by plaintiff in litigation); *Easter v. State*, No. 05-19-00398-CR, 2020 WL 3424950, at *7 (Tex. Ct. App. June 23, 2020) ("Because appellant did not meet her burden to show that the State or law enforcement acted in bad faith by failing to properly record and preserve the dash cam video, we conclude the trial court did not err in denying appellant's request for a spoliation jury instruction.").

Following this precedent, and applying Rule 37 correctly, Plaintiffs' Motion should be denied.

## II.    Plaintiffs are not prejudiced.

The loss of evidence alone is not enough to warrant sanctions under Rule 37. A party must also be *prejudiced*. *See* Fed. R. Civ. P. 37(e)(1). The advisory committee comments to Rule 37 provide that "[a]n evaluation of prejudice from the loss of [ESI] necessarily includes an evaluation of the information's importance to the litigation." Here, Plaintiffs claim that the BWC footage from JJS Officers Edwards and McKinley would have included audio and video of the use of force incident, and the loss of such evidence caused "immense" prejudice. Motion (Doc. 242 at 18). They do not demonstrate how such additional evidence would change the Court's analysis of the evidence as factfinder or how such additional evidence would impact the litigation in some different way than the existing evidence. Instead, Plaintiffs essentially argue there is a bright line

rule that loss of video data always constitutes prejudice -- but that is not the law. *See, e.g. Romero v. Regions Financial Corp./Regions Bank*, No., 18-22126-CV-Williams/Torres, 2019 WL 2866498 (S.D. Fla. July 3, 2019) (party's lack of additional video that was not preserved did not cause the plaintiff prejudice); *similarly, see Hamilton*, 2022 WL 17254756, at *1 (M.D. La. Nov. 28, 2022) (inference of bad faith is not automatically drawn simply because documents are destroyed after the initiation of litigation).

As stated throughout this brief, there was additional documentation, including other video recordings at multiple angles, of the subject incident, from five minutes before to five minutes after the incident. There were eyewitnesses who were (or could have been) deposed and who testified at the live hearing to give a play-by-play of the incident. And Plaintiffs could have deposed or called any additional witnesses, including any youth on the tier.

Plaintiffs cite *Phan v. Costco Wholesale Corp*. No. 19-CV-05713-YGR, 2020 WL 5074349, at *3 (N.D. Cal. Aug. 24, 2020)[6] and *Johns v. Gwinn*, 503 F. Supp.3d 452 (W.D. Va. 2020) to argue that witness testimony cannot substitute for video evidence because "memories fade and witnesses may be biased." Motion (242) at 18). But here, the subject incident occurred only about a month ago, and as such there is relatively low risk of faded memories. And because Plaintiffs had the opportunity to take witness testimony from all involved OJJ officers *as well as* any youth who witnessed the incident (each of whom Plaintiffs' counsel has contended all along were putative class members), witness bias would have been neutralized by having all sides of the story. Plaintiffs cannot now claim prejudice based upon the missing BWC footage that would have

---

[6] In *Phan*, the defendant recorded a video and saved a copy to a hard drive.  *Id.*  However, the defendant then lost the video – which was the only video taken of the incident. *Id.* In the present case, there are several other videos that show before, during, and after the incident, and all of those were produced. Thus, *Phan* is obviously distinguishable.

14

presented the same information available through witness testimony that Plaintiffs elected not to take.

### III.    Plaintiffs seek relief that is not appropriate or available under Rule 37(e)(1).

As stated above, it is somewhat unclear what sanctions Plaintiffs seek in this case. The Motion concludes by requesting that the Court find that JJS Officers' decision not to record BWC footage of the incident "diminishes their credibility," and that the Court "preclude evidence and argument by the Defendants" that the youth's actions "posed a serious and immediate risk of physical harm to him or to others." Motion (242) at 19. But such relief does not appear to be permitted under or contemplated by Rule 37(e)(1).

As to the first relief requested (diminished credibility), "[a]ssessing the credibility of witnesses is a task exclusively for the trier of fact." *U.S. v. Ex-USS Cabot/Dedalo*, 297 F.3d 378 (5th Cir. 2002) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985)). Here, assessing credibility is within the exclusive purview of the Court as trier of fact; it is in appropriate for the Plaintiffs to request the Court to find diminished credibility on this basis.

As to the second relief requested (preclusion of evidence or argument by Defendants that the youth's actions posed a risk of harm), such request is tantamount to an adverse inference under Rule 37(e)(2)(A) – which calls for the Court to "presume that the lost information was unfavorable to the party." Again, Plaintiffs have not alleged (and there is no evidence) that JJS Officers Edwards and McKinley had an intent to deprive Plaintiffs of the data. At most, Plaintiffs' motion sounds in mere negligence by alleging officers simply "did not set their BWC to record" [Motion (242-1) at 7]. Plaintiffs make no claim that JJS McKinley and Edwards acted in bad faith, engaged in bad conduct, or intended to deprive Plaintiffs of the subject information. Plaintiffs' request,

though phrased as a request for relief under Rule 37(e)(1), amounts to an adverse inference under Rule 37(e)(2).  Such relief is not appropriate on these facts and should be denied.

## CONCLUSION

Rule 37(e) outlines the protocols for the parties and the court to analyze and evaluate the loss of ESI.  It gives the parties predictability of what is expected in discovery and what parties must prove if ESI *that at one time existed* is subsequently lost or destroyed.  But Plaintiffs here want to use Rule 37 to improperly impose additional duties on parties before the subject evidence has ever been created.  Specifically, Plaintiffs make no allegations that Defendants did anything improper after the incident; instead, Plaintiffs argue that JJS Officers McKinley and Edwards violated Rule 37(e) before the subject incident ever occurred and that Defendants should be sanctioned for it.  Rule 37(e) does not impose such requirements.

Furthermore, what occurred on August 2, 2023, is well established.  Indeed, Plaintiffs' motion gives a detailed, two-page account of the incident.  *See* Motion (Doc. 242) at 4-6.  Plaintiffs argue that the "Court heard Defendants' version of events, but missing at the hearing was the most reliable and objective evidence: the BWC footage from each JJS present and involved."  Motion (242) at 6.  But Plaintiffs never argue what the missing BWC footage would have added to the evidence already produced or how such footage would have impacted Plaintiffs' case differently.  Instead, Plaintiffs essentially argue that BWC footage is missing and, thus, Plaintiffs necessarily are prejudiced – and accordingly, Defendants should be sanctioned.  That is not the law under Rule 37 and binding cases from the Fifth Circuit.

Finally, as to the requested relief, Plaintiffs claim they are seeking sanctions under Rule 37(e)(1), which requires a showing of prejudice and allows sanctions "no greater than necessary to cure the prejudice."  But the relief Plaintiffs actually seek amounts to harsher consequences

16

allowed under Rule 37(e)(2), and available only with evidence of intentional or bad faith evidence destruction.  Plaintiffs cannot (and do not even attempt to) show that JJS Officers McKinley and Edwards intended to deprive the Plaintiffs of BWC video. Thus, Plaintiffs' request for relief is wholly inappropriate

The failure by JJS Officers Edwards and McKinley to set their BWC to record is not spoliation and it is not sanctionable under Rule 37.  This Court should deny Plaintiffs' Motion for Sanctions.

Dated: September 5, 2023.

Respectfully submitted:

BY:    */s/ Allena McCain*
Connell Archey (#20086)
Randal J. Robert (#21840)
Allena McCain (#38830)
Madaline King Rabalais (#38301)
BUTLER SNOW LLP
445 North Boulevard, Suite 300 (70802)
P.O. Box 2997
Baton Rouge, LA  70821-2997
Telephone:    (225) 325-8700
Facsimile:     (225) 325-8800
Connell.Archey@butlersnow.com
Randy.Robert@butlersnow.com
Allena.McCain@butlersnow.com
Madaline.Rabalais@butlersnow.com

Kyle V. Miller (pro hac vice)
Lemuel E. Montgomery III (pro hac vice)
Anna Morris (pro hac vice)
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone:    (601) 948-5711
Facsimile:     (601) 985-4500
Kyle.Miller@butlersnow.com
Lem.Montgomery@butlersnow.com
Anna.Morris@butlersnow.com

Counsel for Defendants
GOVERNOR JOHN BEL EDWARDS, in
his official capacity as Governor of
Louisiana; WILLIAM SOMMERS, in his
official capacity as Deputy Secretary of the
Office of Juvenile Justice; and JAMES M.
LEBLANC, in his official capacity as
Secretary of the Louisiana Department of
Public Safety & Corrections

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this day been filed electronically with the Clerk of Court using the CM/ECF system, which will deliver notice of this filing to all counsel of record.

Baton Rouge, Louisiana this 5th day of September, 2023.

 */s/ Allena McCain*

82023468.v1

18