## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., et al., | Civil Action No. 3:22-cv-573-SDD-RLB |
| Plaintiffs, | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THIS COURT'S ORDER PERMITTING ACCESS TO OJJ YOUTH IN THE JACKSON PARISH JAIL** |
| v. | |
| GOVERNOR JOHN BEL EDWARDS, et al., | |
| Defendants. | **(EXPEDITED CONSIDERATION REQUESTED)** |

MAY IT PLEASE THE COURT:

Plaintiffs move this Honorable Court to order that Defendants' Office of Juvenile Justice ("OJJ") permit the Plaintiff Class access to their appointed counsel, as required by this Court's Order of October 16, 2023, permitting Plaintiffs incarcerated at the OJJ facility at the Jackson Parish Jail ("Jail") to visit with Class Counsel. Plaintiffs request that OJJ be ordered to permit undersigned counsel confidential legal visits with members of the Plaintiff Class and Subclass currently held by OJJ in the Jail.[1]

---

[1] The Court, in its written Order of October 16, 2023, ordered that all "youth presently in a TTU facility are class members and class counsel shall have access to them." Doc 293, p. 2. During oral argument on the motion for access, it was clear that the "TTU" referred to the Jail. *See, e.g.*, Exhibit 1, p. 7 (OJJ admits that OJJ youth have been transferred to the Jail, and Court notes that OJJ youth transferred there are members of the class). Whether OJJ is willing to admit that the Jail is in fact an adult facility, it is clear the Court ordered OJJ to provide Plaintiffs in the Jail access to their lawyers. *See, e.g., id.*, p. 28 ("The Court expects attorney visits to be accommodated and the Court expects the attorney visits to be accommodated quickly."); *see also* Doc. 293, p. 2 (OJJ "is ordered to promptly facilitate opportunity for class members to have a face-to-face meeting with class counsel."). As noted below, OJJ may not place unreasonable restrictions on Plaintiffs access to their lawyers and the format of undersigned counsel's visit with their clients on Oct. 24-25, 2023, should be the benchmark moving forward, i.e. no limits on the number of youth with whom counsel can meet, multiple lawyers should be permitted to visit, no excessive notice period, etc.

I.      **Procedural History**

On August 19, 2022, Plaintiff Alex A. filed a class action complaint against Defendants, bringing claims for declaratory and injunctive relief under the Fourteenth Amendment of the U.S. Constitution and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.[2]  The lawsuit's genesis was an announcement on July 19, 2022, by Defendant Governor John Bel Edwards that the state would "temporarily" move approximately 25 youth in OJJ custody from Bridge City Center for Youth (BCCY), a secure care facility for children, who may range from ages 10 to 21, to a new juvenile facility on the grounds of the Louisiana State Penitentiary ("LSP").[3]  After a year of litigation, including efforts by undersigned counsel to confer with clients and potential clients,[4] and certify a class,[5] on August 31, 2023, this Court granted Plaintiffs' motion and certified a class and subclass as follows:

> [A]ll youth who are now or will be in the custody of OJJ who have been, might be, or will be transferred to the OJJ site (the "Transitional Treatment Unit" or "TTU") at Angola or another adult prison (the "Principal Class"), including a subclass of all current and future youth with disabilities within the meaning of the ADA and Section 504 of the Rehabilitation Act in the custody of OJJ who have been, might be, or will be transferred to the OJJ site at Angola or another adult prison (the "Disabilities Subclass").[6]

On July 17, 2023, Plaintiffs filed a second motion for preliminary relief.[7]  On September 8, 2023, after a week of testimony over a two-week period in August, the Court granted Plaintiffs'

---

[2] Doc. 1.

[3] Doc. 4-12.

[4] *See, e.g.,* Doc. 113 (Plaintiffs motion for access to counsel discussing barriers to legal visits).

[5] Doc. 99.

[6] Doc. 243.

[7] Doc. 163.

motion and ordered Defendants to remove youth from the Angola facility.[8] On September 15, 2023, Defendants moved youth held at the Angola facility to the Jail.[9]  On October 16, 2023, after oral argument held in open court, this Court ordered that Plaintiffs held in the Jail be permitted to meet with their lawyers.[10]

On October 24 and 25, 2023, undersigned counsel visited with 22 youth at the Jail.[11]  On November 1, 2023, undersigned counsel requested confidential legal visits with the 22 youth with whom they met the week before, and any new OJJ youth at the facility.[12]  Later that day, Defendants responded by denying the requested visits and laying out a five-point set of restrictions ostensibly allowing Plaintiffs constitutional access to their lawyers.[13]

The restrictions are a mix by OJJ policy and entirely new requirements, created whole cloth to limit Plaintiffs from communicating with their lawyers.[14]  The denial of the legal visits requested on November 1 is arbitrary and clear contempt of Court's Order of October 16, 2023.  Plaintiffs request an Order requiring OJJ to abide by the Court's Order permitting undersigned counsel

---

[8] The Court issued its ruling from the bench and, six days later, issued a written ruling.  Doc. 267.

[9] https://www.knoe.com/2023/09/15/juveniles-moved-angola-facility-jackson-parish-jail/ (last accessed Nov. 13, 2023).

[10] Doc. 293; *see also*, Exhibit 1 (transcript of Oct. 16, 2023, oral argument).  After OJJ argued that class notice must be provided prior to any legal visits and Class Counsel's communication with Plaintiffs must be pursuant to OJJ's parental consent policies, the Court declined OJJ's limitations and ordered that Plaintiffs be provided access to their lawyers.  Exhibit 1, pp. 17-28.  The Court clarified that "the Court expects attorney visits to be accommodated and the Court expects the attorney visits to be accommodated quickly."  *Id.*, p. 28.

[11] *See, e.g.,* Ex. 2, p. 1 (Nov. 2, 2023 email from Plaintiffs' counsel David Utter to Defense counsel Kyle Miller noting that the Oct. 24-25 visits with 22 youth "are a model for visits going forward.").

[12] *Id.*, p. 4.

[13] *Id.*, pp. 2-3.

[14] *See, e.g., id.*, p. 3 ("Class counsel will be allowed in-person or Zoom meetings with the class members *every other Friday*.") (emphasis added).

3

confidential legal visits with members of the Plaintiff Class and Subclass currently held by OJJ in the Jail.

## II.       Statement of Facts

OJJ's purports to have an attorney visitation policy "to provide uniform procedures for approving and conducting attorney visits."[15]  Such visits include "face-to-face meetings."[16]  "It is the Deputy Secretary's policy that youth shall be provided reasonable and confidential access to their attorneys."[17]

Before visiting with their clients in OJJ custody, counsel must fax or email OJJ's "General Counsel/designee and the appropriate Facility Director simultaneously."[18]  In addition, counsel's "credentials must be verified through the Louisiana State Bar Association prior to being approved to visit or engage in privileged communication with youth."[19]  OJJ's general counsel or designee "shall approve/disapprove requests, and email confirmations to the appropriate Facility Director."[20]  Once approved or not, the Facility Director or their designee "shall advise attorneys of approval or non-approval of requested visits."[21]

Once approved, visits by attorneys "must be scheduled through the Facility Director's office a minimum of 24 hours in advance" and the visits "shall take place Monday through Friday,

---

[15]  Exhibit 3, p. 1.

[16]  *Id.*, p. 2.

[17]  *Id.*

[18]  *Id.*

[19]  *Id.*

[20]  *Id.*, p. 3.

[21]  *Id.*

excluding holidays, between the hours of 8 a.m. and 4 p.m."[22]  Finally, counsel may not visit with more than 10 youth at any one time, and "no more than 20 on any one (1) day subject to available space and security constraints."[23]

On October 18-19, 2023, undersigned counsel emailed Defendants' counsel and the Jail's designated contact for legal visits requesting legal visits with all OJJ youth being held at the Jail.[24] The visits were requested for the next week, on October 24 and 25, 2023.[25]  The visits were held, with no disruptions to the facility and with Plaintiffs' constitutional rights to access to courts and their counsel respected.[26]  The burden on OJJ was minimal to non-existent, with Jail staff 100% responsible for movement of the youth to and from the visits with undersigned counsel.[27]

On November 1, 2023, undersigned counsel requested confidential legal visits with the 22 youth with whom they met with previously, and any new OJJ youth at the facility.[28]  The visits were requested for November 3, 2023,[29] far beyond the "minimum of 24 hours in advance" and requested to take place beginning at 8 a.m., both within OJJ policy.[30]   Later that day, Defendants

---

[22]  *Id.*, p. 4.

[23]  *Id.*, p. 5.

[24]  *See*, Exhibit 4 (emails to OJJ and Jail requesting legal visits with the list of 37 youth attached to the Oct. 18, 2023 email not included).

[25]  *Id.*, pp. 1-2.

[26]  *See,* Exhibit 2, p. 1 (Nov. 2, 2023 email from Plaintiffs' counsel David Utter to Defense counsel Kyle Miller noting that the Oct. 24-25 visits "are a model for visits moving forward").

[27]  *See, id.* (Nov. 2, 2023 email from Plaintiffs' counsel David Utter to Defense counsel Kyle Miller noting that OJJ staff served as "nothing more than monitors of the process.").

[28] *Id.,* p. 4.

[29]  *Id.*

[30]  Exhibit 3, p. 4.

responded by denying the requested visits and laying out a five-point set of restrictions ostensibly allowing Plaintiffs constitutional access to their lawyers.[31]

The restrictions are a mix by OJJ policy and entirely new requirements, created whole cloth to limit Plaintiffs from communicating with their lawyers. They ignore this Court's granting Plaintiff's Motion for Access to Counsel, noting that youth in the Jail as a result of OJJ's placement there are "represented by counsel, and OJJ shall facilitate access to counsel."[32] Indeed, the recent denial of legal visits by OJJ was so arbitrary and such a break in the practice that had been established just a week prior that, should OJJ continue its obstruction of access to counsel, a finding of contempt is warranted.[33] This motion and memorandum in support seek an order enforcing this Court's Order of October 16, 2023, granting Plaintiffs access to their lawyers. Plaintiffs have a constitutional right to meet with their appointed class counsel and request that the Court Order OJJ to permit the requested legal visits on an expedited basis.

### III.    Legal Argument

Separate and distinct from any Sixth Amendment rights of people facing criminal charges, "[i]t is . . . established beyond doubt that prisoners have a constitutional right of access to the courts."[34] In fact, the U.S. Supreme Court noted, "[b]ecause a prisoner ordinarily is divested of the privilege to vote, the right to file a court action might be said to be his remaining most fundamental political right, [ ] preservative of all rights."[35] Defendants' actions infringe upon

---

[31] Exhibit 2, pp. 2-3.

[32] Exhibit 1, p. 29.

[33] *See, e.g., Spallone v. United States*, 493 U.S. 265, 276 (1990) (federal courts have inherent power to enforce their lawful orders through contempt).

[34] *Bounds v. Smith*, 430 U.S. 817, 821 (1977).

[35] *McCarthy v. Madigan*, 503 U.S. 140, 153 (1992) (quotation marks and citation omitted).

Plaintiffs' First Amendment right of access to the courts.  The right extends to all categories of incarcerated people, including juveniles.[36]

This right of access to courts means that incarcerated people such as the youth at issue here "must have a reasonable opportunity to seek and receive the assistance of attorneys.[37]  Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts . . . are invalid."[38]  The arbitrary denial of visits and conditions proposed by OJJ—a week after OJJ complied with this Court's October 16 Order—are clearly an unjustifiable obstruction of Plaintiffs' access to courts.[39]

Members of the Plaintiff Class currently held in the Jail face harrowing and putatively unconstitutional conditions of confinement.[40]  Indeed, the unconstitutional treatment of Plaintiffs at the Jail is hauntingly similar to the conditions at OJJ's Angola facility.[41]  Efforts to remedy mistreatment of one youth through OJJ and Jail's administrative remedy process have proven futile.[42]  Defendants' arbitrarily denying Plaintiffs access to their counsel and refusing to abide by

---

[36]  *See, John L. v. Adams*, 969 F.2d 228, 232-33 (6th Cir. 1992).

[37]  *See, Adams v. Carlson*, 488 F.2d 619, 630-31 (7th Cir. 1973) ("All other rights of an inmate are illusory without [the right of unfettered access to the courts] . . . the effective protection of access to counsel requires that the traditional privacy of the lawyer-client relationship be implemented in the prison context.") (citations omitted).

[38]  *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), overruled in part on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401 (1989).  While a person's right of access to the courts is not violated unless there is a showing of "actual injury," *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court has found such a showing is not required when prison officials affirmatively interfere with a person's access to counsel.

[39]  *See,* Exhibit 2, p. 3 ("Class counsel will be allowed in-person or Zoom meetings with the class members *every other Friday*.") (emphasis added).

[40]  *See, e.g.,* Exhibit 5 (Declarations by two youth held at the Jail detailing group punishment by excessive uses of force, denial of education, and solitary confinement).

[41]  *See, e.g.,* Doc. 267 (Court's Order granting preliminary injunction, citing punitive use of mace and excessive use of solitary confinement at Angola).

[42] *See, e.g.,* Exhibit 6 (Class representative Alex A.'s administrative remedy and denial by both Jail officials and OJJ's Dep. Sec. Curtis Nelson).

this Court's Order of October 16, 2023 warrants an order on an expedited basis that Defendants permit undersigned counsel confidential legal visits with members of the Plaintiff Class and Subclass currently held by OJJ in the Jail.

## **CONCLUSION**

This Court was clear during oral argument on Plaintiffs' motion for access to counsel that "the Court expects attorney visits to be accommodated and the Court expects the attorney visits to be accommodated quickly."[43]  OJJ's recent interpretation of what constitutes such accommodation not only violates this Court's Order and the United States Constitution, it violates OJJ's own policy.[44]  Plaintiffs request an Order that OJJ abide by this Court's Order of October 16, 2023.

Respectfully submitted, this 13th day of November, 2023.

/S/: *David J. Utter*
David J. Utter *
Louisiana Bar Number: 23236
William R. Claiborne**
Georgia Bar Number: 126363
The Claiborne Firm, P.C.
410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
David@Clairbonefirm.com
Will@Clairbonefirm.com

/S/: *Christopher J. Murell*
Christopher J. Murell
Louisiana Bar Number: 32075
Murell Law Firm
2831 St. Claude Avenue
New Orleans, Louisiana 70117
(504) 717-1297 Telephone
(504) 233-6691 Facsimile
Chris@Murell.Law

/S/: *Hector Linares*
Hector Linares
Louisiana Bar Number: 28857
Sara Godchaux
Louisiana Bar Number: 34561
Stuart H. Smith Law Clinic

/S/: *Nancy Rosenbloom*
Nancy Rosenbloom**
New York Bar Number: 2168425
ACLU National Prison Project
125 Broad Street
New York, Ny 10004

---

[43] *Supra,* p. 3, n. 9.

[44] *Supra,* p. 3, n. 13.

Loyola University New Orleans College of Law
7214 St. Charles Avenue, Box 902
New Orleans, Louisiana 70118
(504) 861-5560 Telephone
(504) 861-5440 Facsimile
Halinare@Loyno.edu
Shgodcha@Loyno.edu


/S/: *David Shanies*
David Shanies**
New York Bar Number: 4471140
Shanies Law Office
110 West 40th Street, 10th Fl.
New York, New York 10018
Tel. (212) 951-1710
Fax (212) 951-1350
Cell (646) 515-2151
David@Shanieslaw.com

/s/: *Ronald Haley*
RONALD HALEY
Louisiana Bar Number: 30900
HALEY & ASSOCIATES
8211 Goodwood Blvd., Suite E
Baton Rouge, Louisiana 70806
(225) 755-9935 Telephone
(888) 900-9771 Facsimile
rhaley@ronaldhaleylawfirm.com

Telephone: (212) 549-2500
Facsimile: (212) 549-2652
Nrosenbloom@Aclu.org

/S/: *Tammie Gregg*
Tammie Gregg***
XX Bar Number: 026240
ACLU National Prison Project
915 15th St. N.W., 7th Floor
Washington D.C. 20005
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
Tgregg@Aclu.org

/S/:  Marisol J. Dominguez-Ruiz
Marisol J. Dominguez-Ruiz**
ACLU National Prison Project
39 Drumm Street
San Francisco, Ca 94111
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
Mdominguez-Ruiz@Aclu.org

/S/ *Meghan Matt*
MEGHAN MATT
La. Bar No. 39975
ACLU Foundation of Louisiana
1340 Poydras St., Suite 2160
New Orleans, LA 70112
Telephone: (504) 522-0628
Facsimile: (504) 613-6511
mmatt@laaclu.org

/S/ *Susan M. Meyers*
Susan M. Meyers
Louisiana Bar Number: 29346
Lauren Winkler
Louisiana Bar Number: 39062
Ashley Dalton
Louisiana Bar Number: 40330
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, La 70170
Telephone: 504-512-8649
Susan.Meyers@Splcenter.org
Lauren.Winkler@Splcenter.org

9

Ashley.Dalton@Splcenter.Org

\* *Lead Counsel*
\*\*Appearing *Pro Hac Vice*
\*\*\*Appearing *Pro Hac Vice* and not admitted
in DC; practice limited to Federal Courts

**Attorneys for Plaintiffs**

**<u>Certificate Of Service</u>**

I hereby certify that on this 13th day of November, 2023, a copy of the foregoing was served

upon all Counsel of record by electronic submission.

<u>/S/ *David J. Utter*</u>
David J. Utter

10