**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| ALEX A., et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 3:22-cv-573-SDD-RLB |
| GOVERNOR JOHN BEL EDWARDS, et al., | |
| Defendants. | |

# EXHIBIT 1

1            UNITED STATES DISTRICT COURT

2            MIDDLE DISTRICT OF LOUISIANA

3

4  MOLLY SMITH, ET AL          *        CIVIL ACTION
                                *
5  VERSUS                      *        NO. 3:22-573-SDD
                                *
6  JON BEL EDWARDS, ET AL      *        OCTOBER 16, 2023
   * * * * * * * * * * * * * * *

7

8

9      ORAL ARGUMENT ON MOTION FOR SPOLIATION SANCTION REGARDING
       ABSENCE OF BODY-WORN CAMERA FOOTAGE AND PLAINTIFFS'
              CLASS MOTION FOR ACCESS TO COUNSEL
10            BEFORE THE HONORABLE SHELLY D. DICK
              UNITED STATES CHIEF DISTRICT JUDGE

11

12 APPEARANCES:

13 FOR THE PLAINTIFFS:        THE CLAIBORNE FIRM, P.C.
                              BY:  DAVID J. UTTER, ESQ.
14                            410 EAST BAY STREET
                              SAVANNAH, GEORGIA 31401

15
                              MURELL LAW FIRM
16                            BY:  CHRISTOPHER J. MURELL, ESQ.
                              2831 ST. CLAUDE AVENUE
17                            BATON ROUGE, LOUISIANA 70117

18 FOR THE DEFENDANTS:        BUTLER SNOW, LLP
                              BY:  MADALINE K. RABALAIS, ESQ.
19                            445 NORTH BOULEVARD, SUITE 300
                              BATON ROUGE, LOUISIANA 70802

20
                              BUTLER SNOW, LLP
21                            BY:  LEMUEL E. MONTGOMERY, ESQ.
                              1020 HIGHLAND COLONY PARKWAY
22                            SUITE 1400
                              RIDGELAND, MISSISSIPPI 39157

23

24

25

```
1   OFFICIAL COURT REPORTER:       SHANNON L. THOMPSON, CCR
                                   UNITED STATES COURTHOUSE
2                                  777 FLORIDA STREET
                                   BATON ROUGE, LOUISIANA 70801
3                                  SHANNON_THOMPSON@LAMD.USCOURTS.GOV
                                   (225)389-3567
4
              PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY USING
5                     COMPUTER-AIDED TRANSCRIPTION SOFTWARE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        (OCTOBER 16, 2023)
 2           THE COURT:  GOOD AFTERNOON.
 3                 BE SEATED, PLEASE.
 4                 OKAY.  CALL THE CASE.
 5           THE DEPUTY CLERK:  THIS IS CIVIL ACTION NO. 22-573,
 6   MOLLY SMITH AND OTHERS VERSUS JON BEL EDWARDS AND OTHERS.
 7           THE COURT:  COUNSEL, WE ARE HERE ON TWO MOTIONS:  A
 8   MOTION FOR PLAINTIFFS' COUNSEL TO ACCESS THE CLASS MEMBERS AND
 9   ALSO A MOTION FOR SANCTIONS FOR SPOLIATION.
10                 THEY ARE YOUR MOTIONS, MR. UTTER.  DO YOU WANT
11   TO ADDRESS YOUR MOTIONS?
12           MR. UTTER:  YES, MA'AM.
13           THE COURT:  GO AHEAD.
14           MR. UTTER:  YOUR HONOR, MAY WE SPLIT IT UP?  I'LL DO
15   ACCESS AND CHRIS WILL DO SPOLIATION?
16           THE COURT:  SURE.
17           MR. UTTER:  YOUR HONOR, ON THE ACCESS TO THE CLASS,
18   AS WE NOTED IN OUR BRIEF, THE TIME HAS PASSED FOR THE
19   DEFENDANTS TO REQUEST PERMISSION TO APPEAL THIS COURT'S ORDER
20   CERTIFYING THE CLASS.  THEY ARE BARRED BOTH BY THE FEDERAL
21   RULES OF CIVIL PROCEDURE 23(F), WHICH STATES THAT THEY'VE GOT
22   TO ASK PERMISSION WITH THE CIRCUIT CLERK WITHIN 14 DAYS OF --
23           THE COURT:  WELL, THEY FILED THEIR APPEAL WITHIN 14
24   DAYS, DIDN'T THEY?
25           MR. UTTER:  THEY DID.  BUT RULE 23(F) REQUIRES A
```

1   SEPARATE SEEKING OF PERMISSION FROM THE FIFTH CIRCUIT.

2           **THE COURT:**  WHERE DO YOU SEE "SEPARATE SEEKING"?  I

3   SEE THAT THEY REQUIRE PERMISSION TO APPEAL, AND YOU HAD ME

4   ACTUALLY ON THAT.  AND THEN I LOOKED AT RULE 5 AND IT SAYS

5   "REQUEST PERMISSION TO APPEAL WITHIN THE TIME SPECIFIED BY THE

6   STATUTE OR RULE AUTHORIZING," SO WITHIN 14 DAYS.  BUT WHERE

7   DOES IT -- WHERE DO I FIND -- I DIDN'T SEE ANYTHING THAT YOU

8   CITED IN YOUR BRIEF THAT SAYS THAT THERE HAS TO BE A SEPARATE

9   AND DISTINCT PERMISSION FOR APPEAL OF THE CLASS CERT.

10          **MR. UTTER:**  IT SAYS "SEPARATE AND DISTINCT."  THAT

11  RULE 5(B) ACTUALLY LAYS OUT EXACTLY WHAT THE DEFENSE IS

12  SUPPOSED TO DO IN THIS CASE; THAT TO FILE A PETITION ABIDING BY

13  CERTAIN -- NAMING CERTAIN THINGS AND THEN GIVING THE OTHER

14  SIDE -- THAT WOULD BE THE PLAINTIFFS IN THIS CASE -- THE

15  OPPORTUNITY TO OPPOSE IT AND FILE A MOTION OPPOSING THE

16  PERMISSIVE APPEAL.

17              THE OTHER THING ABOUT THIS IS THAT BOTH THE

18  ADVISORY NOTES TO THE FEDERAL RULES OF CIVIL PROCEDURE AS WELL

19  AS CASE LAW INDICATES THAT THAT SEEKING OF PERMISSION IS STRICT

20  AND MANDATORY, THE FIFTH CIRCUIT HAS SAID.  IT'S AN INFLEXIBLE

21  RULE, ALTHOUGH IT'S NOT JURISDICTIONAL.  AND BECAUSE THE STATE

22  DID NOT ASK THE FIFTH CIRCUIT FOR PERMISSION TO APPEAL THE

23  ORDER CERTIFYING THE CLASS, THEY HAVE WAIVED THAT ABILITY TO

24  APPEAL IT AT THIS POINT.

25          **THE COURT:**  SO MY OTHER QUESTION IS:  EVEN IF -- IF I

1   AGREE OR DISAGREE, IS IT REALLY MINE TO DETERMINE OR IS IT THE

2   COURT OF APPEALS TO DETERMINE?

3          **MR. UTTER:**  WE THINK IT'S YOURS, YOUR HONOR.  THEY

4   DID NOT ABIDE BY THE FEDERAL RULES OF CIVIL PROCEDURE.  THEY

5   COULD HAVE ASKED THIS COURT FOR A RECONSIDERATION OF ITS

6   CERTIFICATION OF THE CLASS.  THAT'S DONE IN A NUMBER OF CASES.

7   THAT COULD TOLL THE 14-DAY PERIOD THAT THEY HAD TO ASK FOR

8   PERMISSION.

9          AND THEN, YOU KNOW, AS WE NOTE IN OUR BRIEF,

10  YOUR HONOR, REGARDLESS OF WHETHER THIS COURT DETERMINES THAT

11  THAT MOTION TO CERTIFY THE CLASS IS APPROPRIATELY ON APPEAL AND

12  WE WAIT FOR THE FIFTH CIRCUIT TO DO WHAT THEY'RE GOING TO DO,

13  THE RIGHT OF ACCESS TO COUNSEL IN THIS CASE IS INDEPENDENT OF

14  THAT.  THERE ARE GOING ON NOW VIOLATIONS OF YOUNG PEOPLES'

15  CIVIL RIGHTS IN THE OTHER ADULT JAIL -- IN AT LEAST ONE OTHER

16  ADULT JAIL THAT OJJ HAS PUT YOUTH IN.

17         WITH THE COURT'S PERMISSION, I HAVE TWO

18  DECLARATIONS THAT I WOULD LIKE TO PROVIDE.  WE'VE PROVIDED A

19  COPY TO THE DEFENSE.  MAY I PROVIDE IT TO THE COURT TO

20  SUPPLEMENT?

21         **THE COURT:**  THERE ARE OBJECTIONS, MR. MONTGOMERY, TO

22  THE TWO DECLARATIONS?

23         **MR. MONTGOMERY:**  YES, YOUR HONOR.  I BELIEVE THEY

24  WERE JUST HANDED TO US THE SECOND WE WALKED IN HERE.  I HAVE

25  NEVER SEEN THESE BEFORE, AND I HAVEN'T READ THEM.  I WAS JUST

1  HANDED THE DECLARATIONS TEN MINUTES AGO.  BUT ON MR. UTTER'S

2  REPRESENTATION, THEY APPARENTLY DEAL WITH CONDITIONS IN

3  FACILITIES OTHER THAN WEST FELICIANA, WHICH IS IRRELEVANT

4  ALTOGETHER TO THE PROCEEDINGS HERE.  THE COURT SAID ITSELF IT

5  HAS BEFORE IT THE CONDITIONS IN WEST FELICIANA.

6         **THE COURT:**  WELL, ON THE QUESTION OF ACCESS, THE

7  CLASS CERTIFICATION IS ANY JUVENILE WHO IS OR MAY BE OR IS

8  SUBJECT TO TRANSFER TO AN ADULT FACILITY.  SO UNLESS THOSE

9  DECLARATIONS SPEAK TO WHETHER OR NOT THERE ARE KIDS, JUVENILES,

10 IN ADULT FACILITIES -- I MEAN, IF THEY ARE TALKING ABOUT

11 CONDITIONS GENERALLY AT JUVENILE FACILITIES, THAT'S A DIFFERENT

12 LAWSUIT THAN WHAT WE HAVE HERE.

13        **MR. UTTER:**  I UNDERSTAND THAT, YOUR HONOR.  THESE ARE

14 DECLARATIONS OF YOUNG MEN THAT WERE TAKEN FROM THE ANGOLA

15 FACILITY ON SEPTEMBER 15TH AND MOVED TO THE JACKSON PARISH

16 JAIL.  A SEARCH OF THE JACKSON PARISH JAIL WEBSITE INDICATES

17 THAT IT'S BOTH A BRAND-NEW JAIL FOR ADULTS AS WELL AS A

18 JUVENILE DETENTION CENTER.

19             WHEN I VISITED YOUTH AT THE JACKSON PARISH JAIL,

20 A NUMBER OF GUARDS THERE SAID THERE HAS NEVER BEEN --

21        **MR. MONTGOMERY:**  OBJECTION.  I'M SORRY.  MR. UTTER IS

22 TESTIFYING NOW.  THIS IS ABOUT THE PROPRIETY OF THESE

23 AFFIDAVITS, EXTRANEOUS EVIDENCE BEFORE THIS COURT TODAY THAT

24 HAS TO DO WITH THE JACKSON PARISH FACILITY, WHICH MR. UTTER

25 JUST ADMITTED IS A YOUTH FACILITY.

1        **MR. UTTER:**  THAT'S NOT --

2        **MR. MONTGOMERY:**  THAT'S WHERE THE YOUTH WERE MOVED

3  TO.  THE CONDITIONS IN JACKSON PARISH HAVE NOTHING TO DO WITH

4  THE CLASS ACTION.

5        **THE COURT:**  NO.  THE ONLY RELEVANCE THAT JACKSON

6  PARISH HAS TO DO WITH THIS CLASS ACTION IS IF THERE ARE CLASS

7  MEMBERS THERE WHO ARE IN AN ADULT FACILITY ARE SUBJECT TO BEING

8  TRANSFERRED -- FRANKLY, YOU GET TO THE CLASS EVEN -- EVEN IF

9  THEY ARE JUST SUBJECT TO BEING TRANSFERRED TO AN ADULT

10  FACILITY, WHICH IS RATHER BROAD, FRANKLY.

11        SO WHETHER JACKSON PARISH JAIL IS OR IS NOT AN

12  ADULT FACILITY, THE CLASS EXTENDS TO ANY YOUTH THAT IS SUBJECT

13  TO BEING TRANSFERRED TO AN ADULT FACILITY.  AND I THINK WHAT

14  MR. UTTER IS TRYING TO PUT IN AS EVIDENCE, THAT THE JACKSON

15  PARISH JAIL IS AN ADULT FACILITY.

16        **MR. MONTGOMERY:**  IF IT --

17        **THE COURT:**  NOW, HE CAN'T TESTIFY -- I MEAN, I WOULD

18  SUSTAIN THE OBJECTION ON YOU SAYING WHAT SOMEBODY TOLD YOU.  I

19  MEAN, I AM NOT GOING TO CONSIDER THAT.  IT IS RANK HEARSAY.

20  BUT BACK TO THE DECLARATIONS.

21        **MR. MONTGOMERY:**  THE JACKSON PARISH FACILITY HAS ITS

22  OWN YOUTH DETENTION FACILITY, AND THAT'S THE ONLY PLACE THAT

23  ANYONE HAS BEEN TRANSFERRED AMONG THE CLASS MEMBERS.  THEY ARE

24  NOT IN AN ADULT FACILITY.

25        **THE COURT:**  WELL, AGAIN, I DON'T HAVE EVIDENCE OF

1  THAT, EITHER.

2         **MR. MONTGOMERY:**  I THINK MR. UTTER WAS ABOUT TO JUST

3  TELL US ABOUT IT, WHICH IS WHY I OBJECTED.

4         **THE COURT:**  I MEAN, ON THE ONE HAND YOU SAY HE CAN'T

5  TELL THE COURT THAT THE JACKSON PARISH FACILITY IS AN ADULT

6  FACILITY, AND ON THE OTHER HAND YOU WANT TO REPRESENT TO THE

7  COURT THAT IT'S A JUVENILE FACILITY OR THAT THERE IS A SECTION

8  OF IT THAT'S A JUVENILE FACILITY.  WITH ALL DUE RESPECT,

9  NEITHER ONE OF YOU ARE WITNESSES.  I DON'T HAVE ANY EVIDENCE

10  ABOUT WHAT JACKSON PARISH JAIL IS OR IS NOT.  I KNOW THAT FROM

11  WHAT YOU HAVE REPRESENTED TO THE FIFTH CIRCUIT THAT THEY WERE

12  MOVED TO JACKSON PARISH, BUT THAT'S ALL I KNOW.  SO I DON'T

13  KNOW WHERE THAT LEAVES US.

14         **MR. MONTGOMERY:**  I AGREE THAT I DON'T THINK ANY OF

15  THE ATTORNEYS SHOULD BE ABLE TO OFFER EVIDENCE TO THE COURT

16  JUST BY TAKING TO THE PODIUM, WHICH --

17         **MR. UTTER:**  YOUR HONOR, IT'S RELEVANT --

18         **MR. MONTGOMERY:**  -- IS THE BASIS OF MY OBJECTION.

19         **MR. UTTER:**  IT'S RELEVANT TO THIS ACCESS ISSUE

20  BECAUSE YOUNG PEOPLE AT THE JACKSON PARISH JAIL ARE BEING

21  SUBJECTED TO THE IDENTICAL CONDITIONS THAT YOU FOUND

22  UNCONSTITUTIONAL AT ANGOLA:  SOLITARY CONFINEMENT, USE OF MACE,

23  NO EDUCATION, SEEING ADULT INMATES ON A REGULAR BASIS.

24         **THE COURT:**  SEPARATE LAWSUIT.

25         **MR. UTTER:**  IT'S THE JAIL IN WHICH OJJ -- IT'S THE

1  ADULT JAIL IN WHICH OJJ PUT CLASS MEMBERS.

2         **THE COURT:**  OKAY.  WELL --

3         **MR. UTTER:**  AND ALL WE ARE ASKING FOR IS ACCESS TO

4  THE YOUNG PEOPLE THE SAME WAY -- EVEN IF THE MOTION FOR CLASS

5  CERT IS PROPERLY ON APPEAL AND THIS IS JUST A PUTATIVE CLASS,

6  THIS COURT HAS THE ABILITY TO FASHION A WAY FOR THEM TO ACCESS

7  US AND US TO INTERVIEW THEM SEPARATE AND APART FROM THE OJJ

8  PROCEDURES.

9         **THE COURT:**  OKAY.  YOU CAN CONTINUE YOUR ARGUMENT,

10  BUT I WANT TO HEAR FROM -- BEFORE WE MOVE TO THE SECOND ISSUE,

11  I WANT TO HEAR FROM THE OTHER SIDE.  DO YOU WANT TO -- BUT I'M

12  NOT CUTTING YOU OFF IF YOU'VE GOT MORE THAT YOU WANT TO SAY.

13         **MR. UTTER:**  I DIDN'T KNOW WHAT --

14         **THE COURT:**  THE DECLARATIONS, THE COURT WILL CONSIDER

15  THEM.

16         **MR. UTTER:**  THANK YOU.

17         YOUR HONOR, THE CASES ARE CITED IN OUR BRIEF,

18  BUT *HARPER VERSUS AMERICAN AIRLINES*, WHICH REFERS TO AND CITES

19  GUTIERREZ --

20         **THE COURT:**  OKAY.  CARRY ON.

21         **MR. UTTER:**  EVEN IF THIS COURT DETERMINES THAT THE

22  CLASS CERTIFICATION ISSUE NEEDS TO STAY PAUSED OR THERE'S A

23  STAY ON THAT AND THIS IS JUST A PUTATIVE CLASS, THREE YEARS AGO

24  MAGISTRATE WILDER-DOOMES PERMITTED YOUTH ACCESS IN THE COVID

25  LAWSUIT.  I BELIEVE THAT THE JUDGE WAS JUDGE DEGRAVELLES.  AND

1    IT WAS THE SAME ARGUMENTS, JUDGE.  OJJ, YOU KNOW, IS PROHIBITED
2    BY LAW TO SHARE NAMES.  OJJ CANNOT ALLOW ACCESS WITHOUT
3    PARENTAL APPROVAL.
4                    AND IN THAT MATTER JUDGE WILDER-DOOMES DECIDED,
5    WE THINK APPROPRIATELY, THAT THE CHILD'S ACCESS TO COURTS IS
6    THE CHILD'S AND IT DOESN'T HAVE TO GO THROUGH THE PARENT.  AND
7    WHEN YOU HAVE A SITUATION SUCH AS WE HAVE HERE WITH CHILDREN'S
8    CIVIL RIGHTS AT STAKE, THEIR CONSTITUTIONAL RIGHTS, THEIR VERY
9    SAFETY AT STAKE, THIS COURT CAN FASHION AN ORDER THAT PERMITS
10   YOUTH ACCESS TO THE PUTATIVE CLASS COUNSEL, IF YOU WILL.
11          **THE COURT:**  OKAY.  ALL RIGHT.  P-1 AND P-2 WILL BE
12   MADE PART OF THE RECORD OF THESE PROCEEDINGS.
13                    MR. MONTGOMERY, DO YOU WANT TO RESPOND TO THE
14   ACCESS TO CLASS ARGUMENT?
15          **MR. MONTGOMERY:**  YES.  THANK YOU, YOUR HONOR.
16                    I APOLOGIZE FOR THE WAY I SOUND.  I'VE BEEN
17   GETTING OVER -- I'VE BEEN ILL.  SO I'M GETTING OVER A THING
18   HERE, SO I APOLOGIZE FOR MY VOICE.
19          **THE COURT:**  NOT COVID, THOUGH.  RIGHT?
20          **MR. MONTGOMERY:**  WELL, I DON'T KNOW.  BUT IT WAS SO
21   LONG, IT'S JUST --
22          **THE COURT:**  OKAY.
23          **MR. MONTGOMERY:**  THIS IS JUST CONGESTION.  I CAN
24   ASSURE THE COURT THAT I DON'T SOUND MY BEST.
25                    SO WHERE TO START, WHERE TO BEGIN, THE TWO

1    DECLARATIONS THAT WERE JUST MADE A PART OF THE RECORD, I NOW

2    HAVE IN MY HAND.  THIS IS OBVIOUSLY SOMETHING BRAND NEW THAT

3    WAS JUST ADDED.  IT'S NOT PART OF THE PLAINTIFFS' MOTION.  SO

4    I'LL TRY TO WEAVE THIS IN AND ADDRESS IT.  I'LL GO BACK -- TRY

5    TO GO BACK TO THE BEGINNING.

6              THE COURT'S FIRST QUESTION, THE PROPRIETY OF OUR

7    PETITION FOR APPELLATE REVIEW OF THE CLASS ACTION RULING.

8    NO. 1, THEY ARE MAKING AN ARGUMENT BEFORE THE FIFTH CIRCUIT

9    THAT OUR -- OR THEY ARE MAKING AN ARGUMENT TO US -- APPARENTLY,

10   IT'S GOING TO BE MADE TO THE FIFTH CIRCUIT AS WELL -- THAT OUR

11   PETITION FOR APPEAL OF THE CLASS CERT RULING IS INSUFFICIENT.

12   TO THE COURT'S POINT, IT WAS MADE TIMELY.  THERE IS CASE LAW

13   THAT A RAW APPEAL OF A CLASS CERT RULING DOES HAVE A STANDARD

14   BY WHICH IT IS -- BY WHICH THE APPEAL IS SUPPOSED TO BE

15   REQUESTED -- OR PERMISSION TO APPEAL IS SUPPOSED TO BE

16   REQUESTED.  AND THERE'S CASE LAW ON THAT, AND THEY ARE MAKING

17   THAT ARGUMENT ABOUT OUR APPEAL.  AND THAT'S FOR THE FIFTH

18   CIRCUIT TO REVIEW.  THAT'S NEVER BEEN ASKED OF A DISTRICT COURT

19   IN ANY CASE THAT I'VE SEEN.  IT'S ALWAYS A MATTER OF APPELLATE

20   REVIEW, AND THE FIFTH CIRCUIT WILL DECIDE THE PROPRIETY OF

21   THAT.

22              BUT OUR APPEAL DOES NOT BEGIN AND END WITH THE

23   CLASS CERT RULING BY ITSELF.  THERE'S A WHOLE DIFFERENT ELEMENT

24   TO IT.  SO THE DISTRICT COURT HAS JURISDICTION OVER PLAINTIFFS'

25   CLAIMS, OR HAD JURISDICTION OVER PLAINTIFFS' CLAIMS, PURSUANT,

1   OF COURSE, TO 28 U.S.C. § 1331 FEDERAL QUESTION.  THE FIFTH

2   CIRCUIT HAS APPELLATE JURISDICTION OVER THE PRELIMINARY

3   INJUNCTION UNDER 28 U.S.C. § 1291(A)(1).  THAT'S WHERE THE --

4   THAT'S WHERE OUR APPELLATE REVIEW OF THE FIFTH CIRCUIT'S

5   JURISDICTION OVER OUR REVIEW OF THE INJUNCTION COMES IN.

6        **THE COURT:**  BUT YOU WOULD AGREE THAT THE COURT

7   RETAINS JURISDICTION OVER ANCILLARY TYPE MATTERS, THINGS LIKE

8   MOTIONS TO COMPEL, OUTSTANDING DISCOVERY, THINGS THAT ARE NOT

9   DIRECTLY RELATED TO THE MERITS OF THE APPEAL?

10       **MR. MONTGOMERY:**  THAT'S RIGHT.  BUT IF THE PENDING

11  DECISION IS INEXTRICABLY INTERTWINED WITH THE DECISION OVER

12  WHICH APPELLATE REVIEW EXISTS, THEN THE DISTRICT COURT LOSES

13  JURISDICTION OVER THE ISSUE.  ALSO, IF THE REVIEW --

14       **THE COURT:**  WELL, HOW IS ACCESS TO COUNSEL

15  INEXPLICABLY INTERTWINED WITH YOUR APPEAL?

16       **MR. MONTGOMERY:**  WELL, THE CLASS CERTIFICATION,

17  WHETHER THE CLASS SHOULD EXIST, IN ITS PRELIMINARY INJUNCTION

18  RULING THE COURT -- EXCUSE ME -- THE CLASS ACTION WOULDN'T

19  EXIST BUT FOR THE COURT'S DECISION ON THE PLRA.  THE COURT

20  RULED THAT THEY HAD -- THAT ALEX A APPROPRIATELY EXHAUSTED, FOR

21  PURPOSES OF THE CLASS, AND THAT THERE WAS --

22       **THE COURT:**  WELL, THE PLRA WOULDN'T HAVE BEEN

23  EXHAUSTED BUT FOR THE CLASS IS WHAT YOU ARE SAYING?

24       **MR. MONTGOMERY:**  CORRECT.  RIGHT.

25       **THE COURT:**  GRANTED.  BUT HOW DOES -- ACCESS TO

1  COUNSEL, HOW IS THAT -- HOW IS OJJ -- IF I ACCEPT MR. UTTER --
2  IF THE OJJ IS SAYING YOU CAN'T SEE THE CLASS MEMBERS -- I DON'T
3  KNOW IF THAT'S WHAT YOU ARE SAYING OR NOT, BUT HE LEADS ME TO
4  BELIEVE THAT THAT'S WHAT YOU ARE SAYING, OKAY -- YOU CAN'T --
5  OR YOU ARE FRUSTRATING THEM OR WHATEVER, YOU CAN'T -- LET'S
6  JUST GO WITH MY HYPO.  YOU CAN'T SEE THE CLASS MEMBERS BECAUSE
7  WE DON'T KNOW IF THERE IS A CLASS BECAUSE IT'S ON APPEAL.
8          MR. MONTGOMERY:  OKAY.
9          THE COURT:  HOW IS THEM SEEING THEIR CLIENT
10  INEXTRICABLY INTERTWINED WITH YOUR APPEAL?
11          MR. MONTGOMERY:  OKAY.  THAT WAS ISSUE TWO.  I WAS
12  GETTING TO IT.  I WAS TRYING TO ADDRESS THAT THEY'RE SAYING THE
13  FACT THAT OUR APPELLATE -- THAT OUR NOTICE OF APPEAL IS
14  DEFECTIVE --
15          THE COURT:  RIGHT.
16          MR. MONTGOMERY:  -- THEY ARE SAYING THAT MEANS THEY
17  -- HIS WORDS WERE "TIME HAS PASSED" -- THEY ARE BARRED BY
18  23(F).
19          THE COURT:  UH-HUH.
20          MR. MONTGOMERY:  AND THERE'S CLEAR CASE LAW ON THAT.
21          THE COURT:  UH-HUH.
22          MR. MONTGOMERY:  I'M ADDRESSING HIS ARGUMENT --
23          THE COURT:  OKAY.
24          MR. MONTGOMERY:  -- THAT HE RAISED FIRST.  I CAN MOVE
25  FROM IT, BUT --

1     **THE COURT:**  WELL, I'LL TELL YOU THAT I AM LOOKING AT

2  23(F) AND IT SAYS "A COURT OF APPEAL" -- THAT WOULD NOT BE ME

3  -- "MAY PERMIT AN APPEAL FROM AN ORDER GRANTING OR DENYING A

4  CLASS CERTIFICATION UNDER THIS RULE.  A PARTY MUST FILE A

5  PETITION FOR PERMISSION TO APPEAL WITH THE CIRCUIT COURT," NOT

6  WITH ME.  NOT ASKING ME FOR PERMISSION TO APPEAL, IN MY VIEW.

7  SO THAT'S THE FEDERAL RULE OF CIVIL PROCEDURE, WHICH IS THE

8  RULES GOVERNING THE DISTRICT COURTS.  THAT'S NOT ADDRESSED TO

9  ME.  THAT'S ADDRESSED -- OR TO THIS COURT.  THAT IS ADDRESSED

10 TO THE COURT OF APPEAL.

11     AND THEN I LOOK AT RULE 5.  AND MR. UTTER IS

12 CORRECT; THERE ARE CONTENTS OF THE PETITION THAT NEED TO BE

13 COVERED IN A PERMISSIVE APPEAL.  HOWEVER, IF YOU DIDN'T MAKE

14 THE CONTENTS OF THE PETITION OR YOU DIDN'T FILE IT WITHIN THE

15 14 DAYS, IT SEEMS TO THIS COURT THAT THAT IS AN ISSUE THAT THE

16 COURT OF APPEAL NEEDS TO SAY YOU DID OR YOU DID NOT DO, BUT NOT

17 THIS COURT.

18     SO ON TO THE SECOND ARGUMENT, WHICH IS WHY CAN

19 THIS COURT NOT ORDER YOU TO ALLOW CLASS ACCESS TO THEIR

20 ATTORNEYS.  WHY IS THAT INEXTRICABLY INTERTWINED WITH WHETHER

21 OR NOT THERE IS A CLASS OR WHETHER OR NOT THE PLRA IS EXHAUSTED

22 OR WHETHER OR NOT THE PRELIMINARY INJUNCTION WAS PROPERLY

23 GRANTED?

24     **MR. MONTGOMERY:**  I'M PREPARED TO ADDRESS EVERY SINGLE

25 BIT OF THAT.

1    **THE COURT:**  ALL RIGHT.

2    **MR. MONTGOMERY:**  THE POINT -- THE ONLY POINT I WAS

3    MAKING ABOUT INEXTRICABLY INTERTWINED -- AND I THINK WE'RE PAST

4    IT NOW -- IS THAT IN THE P.I. RULING, THIS DISTRICT COURT

5    ADOPTED BY REFERENCE ITS CLASS CERTIFICATION RULING ON THE

6    ISSUE OF EXHAUSTION OF REMEDIES.  SO WE'VE CLEARLY APPEALED THE

7    P.I., WHICH IS INTERTWINED WITH THAT RULING BY VIRTUE OF THE

8    COURT'S OWN ORDER.

9    **THE COURT:**  UH-HUH.

10   **MR. MONTGOMERY:**  SO YES, YOUR HONOR, YOU ARE CORRECT;

11   OUR POSITION IS IT'S A CALL FOR THE FIFTH CIRCUIT TO MAKE ABOUT

12   WHETHER THE APPEAL IS DEFECTIVE OR NOT, BUT IT'S NOT AS SIMPLE

13   AS YOU DIDN'T DO THE PERMISSIVE REQUEST RIGHT FOR THE CLASS

14   CERTIFICATION.  THE CLASS CERT, IN OUR VIEW, IS INTERTWINED

15   WITH THE P.I.  THAT WAS THE -- THAT'S ISSUE NO. 1.  I KNOW

16   THAT'S NOT WHAT YOU'RE ASKING NOW.

17   **THE COURT:**  OKAY.  THAT'S ALL RIGHT.

18   **MR. MONTGOMERY:**  BUT YOU'RE SAYING EVEN IF ALL THAT

19   IS CORRECT --

20   **THE COURT:**  OKAY.  I GOT YOU.

21   **MR. MONTGOMERY:**  YOU'RE SAYING EVEN IF ALL -- ASKING

22   ME EVEN IF ALL THIS IS CORRECT, WHY CAN'T THEY VISIT THE

23   PUTATIVE CLASS MEMBERS IF THEY HAVE AN ATTORNEY-CLIENT

24   RELATIONSHIP, WHAT DOES THAT HAVE TO DO WITH THE APPEAL?

25   **THE COURT:**  I MEAN, I KNOW OF NO CLIENT THAT LOSES

1    THEIR RIGHT TO THEIR LAWYER WHEN IT'S ON APPEAL.

2              **MR. MONTGOMERY:**  CORRECT.

3              SO NO. 1, WHEN I CAME HERE TODAY, I THOUGHT WE

4    WERE TALKING ABOUT COMMUNICATIONS WITH THE PUTATIVE CLASS

5    MEMBERS FOR PURPOSES OF THE ALEX A CASE AND THE CASE ABOUT THE

6    WEST FELICIANA FACILITY.  SO WHAT I WAS GOING TO TELL THE COURT

7    IS, NO. 1, WE NEVER DENIED -- IT'S KIND OF A LONG AND WINDING

8    ROAD WE'VE BEEN DOWN TO GET HERE TODAY.  BUT WHAT HAPPENED,

9    JUST TO TELL YOU THE STORY, IS THE WEEK THAT WE WERE ORDERED TO

10   REMOVE THE YOUTH FROM THE WEST FELICIANA FACILITY, THEY

11   CONTACTED US AND SAID THEY WANTED TO INTERVIEW YOUTH ON THE

12   14TH.

13             **THE COURT:**  I READ THE EMAIL AND YOU SAID YOU CAN'T

14   BECAUSE WE'RE MOVING YOUTH, AND I GOT IT.  I READ THE EMAIL.

15             **MR. MONTGOMERY:**  SO WE WENT FORWARD AND WE SAID,

16   "LOOK, IT CAN'T BE THIS WEEK."  THEN WE ENDED UP IN

17   NEGOTIATIONS WITH PLAINTIFFS' COUNSEL AND WE SAID, "WELL,

18   LET'S DO A PROPOSED NOTICE TO SEND TO THE YOUTH," BECAUSE THE

19   PROBLEM WITH THIS IS THIS GOES FARTHER THAN JUST THE NORMAL

20   PUTATIVE CLASS SITUATION.  WHAT THEY HAVE IS THEY HAVE A

21   CONSTRUCTIVE ATTORNEY-CLIENT RELATIONSHIP WITH THE YOUTH.  IT'S

22   DIFFERENT FROM THE TRADITIONAL ATTORNEY-CLIENT RELATIONSHIP.

23   AND WHAT THEY ARE ASKING IS -- WHAT THEY WANTED US TO DO WAS

24   REMOVE THE YOUTH FROM THE CLASSROOM, FROM THE LUNCH ROOM, FROM

25   WHATEVER PROGRAMMING THEY'RE IN, AND THEN PRODUCE THE YOUTH FOR

1  MEETINGS WITH THE CLASS COUNSEL.

2               AND WHAT WE SAID IN RESPONSE IS "WE'VE GOT OTHER

3  ISSUES.  YOU MAY HAVE A RIGHT TO INTERVIEW THE CLASS COUNSEL --

4  I MEAN, THE CLASS MEMBERS, PUTATIVE CLASS MEMBERS, FOR PURPOSES

5  OF THE CASE AND THE ISSUES THAT ARE  BEFORE THE COURT IN THE

6  CLASS ACTION, BUT WE'VE GOT OTHER CONCERNS."

7               UNDER LOUISIANA LAW, THE MINORS DO NOT HAVE

8  PROCEDURAL CAPACITY TO FILE A LAWSUIT UNLESS THROUGH THEIR

9  PARENTS AND GUARDIANS.  WE'VE GOT CLEAR PARENTAL RIGHTS THAT

10  EXIST HERE; WE'VE GOT DUE PROCESS RIGHTS OF THE YOUTH.

11               NOW, THIS IS A 23(B)(2) CLASS ACTION, AN

12  INJUNCTIVE CLASS, BUT DISTRICT COURTS HAVE PROVIDED FOR NOTICE

13  TO BE SENT TO CLASS MEMBERS TO PROTECT THEIR INTERESTS IN THE

14  INTEREST OF ABSENTEE CLASS MEMBERS IN THESE CASES THAT DON'T

15  EVEN INVOLVE MINORS.  AND SO OUR POSITION WAS:  LOOK, LET'S

16  ACKNOWLEDGE THE DUE PROCESS RIGHTS OF THE MINORS OF THEIR

17  PARENTS AND THEIR GUARDIANS AND LET'S PUT TOGETHER A NOTICE TO

18  INFORM THE YOUTH AND THEIR PARENTS OR GUARDIANS THAT THERE IS A

19  CLASS CERTIFICATION ORDER PURSUANT TO 23(D)(1)(B) TO, NO. 2,

20  EXPLAIN THE NATURE OF THE RELATIONSHIP BETWEEN THE CLASS

21  COUNSEL AND THE CLASS MEMBERS; THAT IT'S CONSTRUCTIVE ONLY.

22  THESE ARE NOT -- IT'S DIFFERENT THAN THE NORMAL ATTORNEY-CLIENT

23  RELATIONSHIP.

24               ON THAT POINT WE CITED *IN RE: SHELL OIL*

25  *REFINERY*, 152 FEDERAL RULES OF DECISION 526.  LET'S INFORM THEM

1   OF THEIR DUE PROCESS RIGHTS; THAT THEY HAVE A RIGHT TO

2   INDEPENDENT COUNSEL AND THAT THEY ARE NOT UNDER COMPULSION TO

3   MEET WITH CLASS COUNSEL.  LET'S PROVIDE THE CLASS COUNSEL'S

4   CONTACT INFORMATION TO THE PARENTS AND THE GUARDIANS AND TO THE

5   YOUTH.  AND THEN, FINALLY, LET'S PROVIDE INSTRUCTION FOR THE

6   PARENTS AND GUARDIANS OF CLASS MEMBERS WHO ARE MINORS TO

7   PROVIDE CONSENT TO THE PLAINTIFFS' COUNSEL TO CONTACT THEM,

8   ALL THE THINGS YOU DO WHEN MINOR'S RIGHTS ARE INVOLVED AND ALL

9   THE THINGS THAT CLASS NOTICE WAS PROPOSED AND MEANT FOR UNDER

10  RULE 23.

11              SO WE SET ABOUT THE PROCESS.  WE WERE ACTUALLY

12  IN AGREEMENT AND PLAINTIFFS' COUNSEL SENT US A PROPOSED REVISED

13  NOTICE.  I THINK WE HAD GOTTEN ONE BEFORE.  THEY WANTED TO

14  CHANGE IT.  WE RECEIVED THAT NOTICE.  IT'S BEEN UNDER REVISION

15  BY OUR CLIENTS, AND I THINK WE WERE PREPARED TO VOLLEY IT BACK

16  WHEN THE COURT NOTICED THIS FOR HEARING, WHICH SORT OF STOPPED

17  THE PRESSES, BUT THAT'S WHERE WE WERE WITH THE ISSUE OF

18  COMMUNICATION WITH THE PUTATIVE CLASS MEMBERS WHEN THE COURT

19  NOTICED US FOR HEARING TODAY.

20              WE HONESTLY -- THEY MENTIONED JUDGE

21  WILDER-DOOMES' OPINION FROM THE COVID CASE, WHICH IS DIFFERENT.

22  THAT WAS A GROUP OF YOUTH WHO WERE IN ONE OF THE FACILITIES AND

23  IT WAS ABOUT COVID PROTOCOLS AND THERE WERE SOCIAL DISTANCING

24  PRACTICES GOING ON AT THE TIME.  BUT WHAT WE DECIDED IN THAT

25  CASE WAS TO CREATE A PHONE LINE THAT THE YOUTH COULD USE TO

1    CALL -- ONCE THEY GOT THE NOTICE, THEY COULD CALL A PHONE

2    NUMBER FROM WITHIN THE FACILITY TO CONTACT THE CLASS COUNSEL.

3    AND I DON'T THINK WE WOULD PROBABLY HAVE ANY OBJECTION TO

4    SETTING UP ANOTHER SITUATION LIKE THAT, IF IT WOULD PLEASE

5    EVERYBODY.

6                NOW, WHAT I'VE HEARD TODAY, THOUGH, FOR THE

7    FIRST TIME EVER IS -- I'VE BEEN HANDED AFFIDAVITS THAT HAVE TO

8    DO WITH CONDITIONS OF CONFINEMENT AT THE JACKSON FACILITY.

9            **THE COURT:**  I AM NOT GOING TO CONSIDER THE AFFIDAVITS

10   FOR PURPOSES OF THE CONDITIONS OF CONFINEMENT.  I AM GOING TO

11   CONSIDER THE AFFIDAVITS FOR ONE REASON AND ONE REASON ONLY.  I

12   SAW ADULTS LOCKED UP IN JAIL EVERY DAY, THAT'S P-2.  THAT'S THE

13   SIGHT AND SOUND OF ADULT PRISONERS.  AND THEN P-1, THERE ARE NO

14   JUVENILE JUSTICE SPECIALISTS FROM OJJ AT THE FACILITY.  SO AS

15   EVIDENCE -- NOT NECESSARILY DIRECT EVIDENCE, BUT EVIDENCE FROM

16   CLASS MEMBERS THAT THEY ARE INCARCERATED EITHER WITHIN THE

17   SIGHT AND SOUND OF ADULT PRISONERS OR THEY ARE IN AN ADULT

18   FACILITY.  I MEAN, YOU SAID IT'S AN ADULT FACILITY WITH

19   JUVENILE JUSTICE ALSO, WHICH IS WHAT YOU ESTABLISHED AT WEST

20   FELICIANA, AND THE WHOLE QUESTION ABOUT SIGHT AND SOUND OF

21   PRISONERS AND -- OR ADULT PRISONERS AND ALL THAT.  SO WHAT WE

22   HAVE IS TWO MEMBERS OF THE CLASS THAT WERE AT JACKSON.

23           **MR. MONTGOMERY:**  THIS IS MY CONCERN.  EVERY TIME WE

24   COME HERE I HAVE SOMETHING TO RESPOND TO THAT I'M HANDED FIVE

25   MINUTES BEFORE WE TAKE TO THE PODIUM.  WE STARTED THIS ENTIRE

1    LAWSUIT A YEAR AGO, AND IT WAS ALL ABOUT THE SIGHT AND SOUND

2    REQUIREMENT AND THAT TURNED OUT TO BE COMPLETELY FALSE.  NO

3    ONE'S EVER BEEN SUBJECTED IN ONE OF THESE FACILITIES -- IN THE

4    WEST FELICIANA FACILITY -- TO ADULT INMATES.  WE STARTED THIS

5    PRELIMINARY INJUNCTION.  IT WAS FILED ON AN EMERGENCY BASIS

6    RIGHT BEFORE WE HAD OUR STATUS CONFERENCE, AND I SHOWED UP ON

7    MY HEELS WITH NO WAY TO RESPOND TO IT.  AND SOME OF THE

8    ISSUES -- I MEAN, THE ISSUES WIDENED IN SCOPE AND WE LITIGATED

9    WHAT WAS INITIALLY ARGUED AND THEN THE STUFF THAT WAS ADDED IN

10    LATER.  BUT ON THAT FIRST DAY, IT WOULD HAVE BEEN NICE TO BE

11    ABLE TO RESPOND TO WHAT THEY CAME TO COURT WITH OR TO HAVE TIME

12    TO TALK TO THE CLIENT AND FIND OUT SOMETHING ABOUT WHAT WAS

13    GOING ON.

14            NOW, THEY'VE HANDED US BRAND-NEW AFFIDAVITS

15    ABOUT ALLEGED CONDITIONS, ONCE AGAIN, IN THE JACKSON FACILITY.

16            **THE COURT:**  WELL -- AND I HAVE JUST TOLD YOU --

17            **MR. MONTGOMERY:**  AND I HAVE NO INFORMATION --

18            **THE COURT:**  -- THE COURT IS NOT CONSIDERING THE

19    CONDITIONS OF CONFINEMENT BECAUSE THE CONDITIONS OF CONFINEMENT

20    ARE NOT THE ISSUE IN THIS CASE.

21            **MR. MONTGOMERY:**  BUT IF THE COURT IS GOING TO

22    CONSIDER WHETHER THEY ARE EXPOSING YOUTH TO ADULTS AT JACKSON,

23    WE SHOULD HAVE THE OPPORTUNITY TO RESPOND.

24            **THE COURT:**  I AM JUST LOOKING AT IT TO SEE IF WE HAVE

25    CLASS MEMBERS IN JACKSON, AND WE DO.  BUT WE HAVE CLASS -- THEY

1   ARE ENTITLED TO TALK TO THEIR CLASS MEMBERS.  THE COURT OF
2   APPEAL DOES NOT HAVE THIS MATTER STAYED.  ANCILLARY QUESTIONS
3   LIKE CAN THEY MEET WITH THEIR LAWYERS ARE NOT STAYED ON APPEAL.
4   THEY ARE NOT COVERED -- THERE'S NO -- YOU HAVEN'T APPEALED
5   WHETHER OR NOT CLASS COUNSEL CAN TALK TO CLASS MEMBERS.  YOU
6   HAVE APPEALED, ARGUABLY, THE PRELIMINARY INJUNCTION, WHICH
7   ARGUABLY INCLUDES CLASS CERTIFICATION.  THE COURT OF APPEAL
8   WILL DECIDE WHETHER OR NOT YOUR CLASS CERT IS APPEALED OR NOT.
9   BUT EVEN IF IT IS APPEALED -- I AM GOING TO ASSUME FOR THE SAKE
10  OF ARGUMENT THAT IT IS APPEALED -- THIS COURT CAN STILL REQUIRE
11  YOU TO ALLOW THEM TO MEET WITH THEIR CLIENTS.
12          **MR. MONTGOMERY:**  AND WE'VE NEVER SAID THEY CAN'T.
13  WE'VE NEVER ONE TIME SAID THAT THEY COULDN'T.  WE SAID "YOU
14  CAN'T DO IT THIS WEEK, THE WEEK WE'RE MOVING THEM OUT PURSUANT
15  TO THE INJUNCTION."
16          **THE COURT:**  WELL, WE ARE ON OCTOBER 16TH.  THAT'S A
17  MONTH.
18          **MR. MONTGOMERY:**  WE HAVE BEEN NEGOTIATING A PROPER
19  NOTICE AND ACCESS FOR PURPOSES OF THE ALEX A CASE, AND THAT'S
20  FINE AND WE'RE GLAD TO DO THAT.  WE HAVE A NOTICE READY TO
21  RETURN TO THEM.  WE'VE AGREED ON A PROTOCOL TO PRODUCE THE
22  NOTICE TO THE YOUTH AND MIND THE RIGHTS OF THE GUARDIANS AND
23  THE PARENTS AND THE DUE PROCESS RIGHTS OF THE YOUTH.  ALL OF
24  THAT WAS BEING NEGOTIATED, AND WE WERE ABOUT TO AGREE ON A
25  NOTICE. AND WE ARE NOT EVEN OPPOSED TO A PHONE LINE SITUATION

1   LIKE THE ONE JUDGE WILDER-DOOMES WAS SATISFIED WITH.

2           **THE COURT:**  WELL, I DON'T KNOW THEY WOULD NEED A

3   PHONE LINE.  IF MR. UTTER AND HIS CO-COUNSEL ARE WILLING TO

4   DRIVE UP TO WHEREVER THESE YOUTH ARE OR DRIVE TO WHEREVER THESE

5   YOUTH ARE, THEY HAVE THE RIGHT TO MEET FACE-TO-FACE WITH THEIR

6   CLIENTS.

7           **MR. MONTGOMERY:**  THAT'S --

8           **THE COURT:**  SO I DON'T KNOW ABOUT THE PHONE LINE.

9   BUT IF THAT IS SOMETHING THAT Y'ALL WANT TO STIPULATE TO --

10          **MR. MONTGOMERY:**  I ONLY BROUGHT THAT UP BECAUSE THEY

11  BROUGHT UP JUDGE WILDER-DOOMES' ORDER.

12          **THE COURT:**  OKAY.

13          **MR. MONTGOMERY:**  I WAS JUST RESPONDING TO JUST LIKE

14  THE APPEAL ARGUMENT.  THIS ARGUMENT IS --

15          **THE COURT:**  SO THE DEFENDANTS DO NOT HAVE ANY

16  OBJECTION TO CLASS COUNSEL MEETING WITH CLASS MEMBERS.  DO I

17  UNDERSTAND THAT?

18          **MR. MONTGOMERY:**  SUBJECT TO WE WANT TO GIVE THE YOUTH

19  A PROPER RULE 23 NOTICE THAT EXPLAINS THE NATURE, THE FACT THAT

20  A CLASS EXISTS, WHAT IT'S ABOUT; THAT YOU HAVE THE RIGHT TO

21  INDEPENDENT COUNSEL; THAT YOU ARE NOT UNDER COMPULSION TO MEET

22  WITH THE ATTORNEYS FOR THE CLASS; ALL THE THINGS THAT WE'VE

23  BUILT INTO THE PROPER 23 -- RULE 23 NOTICE.  AND THEN WE WANT

24  THE GUARDIANS AND PARENTS TO HAVE THE NOTICE SO THEY UNDERSTAND

25  YOUR CHILDREN ARE SUBJECT TO A PUTATIVE CLASS.  AND THE

1    ATTORNEYS FOR THE CLASS HAVE PUT A NOTICE OUT THAT THEY ARE

2    INVITING THEM TO CONTACT THEM.  AND THEN THE YOUTH AND THEIR

3    GUARDIANS AND PARENTS AND THEIR INDEPENDENT COUNSEL, IF THEY SO

4    CHOOSE TO HAVE, WHICH IS THEIR RIGHT, CAN DECIDE WHETHER TO

5    CONTACT THE CLASS COUNSEL AND AGREE TO A MEETING -- OR REQUEST

6    A MEETING.

7              WHAT WE DO OBJECT TO WAS THE INITIAL REQUEST,

8    WHICH IS JUST LINE THEM UP FOR MEETINGS, PULL THEM OUT OF

9    SCHOOL OR LUNCH OR WHATEVER IT IS THEY ARE DOING AND SIT THEM

10   DOWN FOR A MEETING AND WE ARE JUST GOING TO COME IN AND MEET

11   WITH THEM IN PRIVATE.  THAT VIOLATES THEIR DUE --

12             **THE COURT:**  WELL, THEY DO HAVE TO MEET WITH THEM IN

13   PRIVATE.  AND FRANKLY, YOU KNOW, WHAT THEY MEET WITH THEM ABOUT

14   IS FRANKLY NONE OF YOUR BUSINESS, NOR IS IT MY BUSINESS.  AND

15   WE ALL KNOW WHAT THIS IS ABOUT.  I MEAN, THEY ARE LOOKING TO

16   SEE WHAT Y'ALL ARE DOING BECAUSE THEY ARE GOING TO PROBABLY

17   FILE ANOTHER LAWSUIT AGAINST YOU.

18             **MR. MONTGOMERY:**  WELL, THAT'S NOT -- WHICH IS NOT

19   PROPER.  THAT'S -- I MEAN, IF THEY ARE LOOKING TO FILE ANOTHER

20   LAWSUIT ABOUT A DIFFERENT ISSUE, THEN THAT GOES OUTSIDE THE

21   SCOPE OF THE CLASS ACTION.

22             **THE COURT:**  AND HOW IS IT THAT YOU WOULD TRY TO HEM

23   THAT IN?  YOU WOULD HAVE SOMEBODY LISTENING TO THEM?

24             **MR. MONTGOMERY:**  SO, YOU KNOW, I HAD NO REASON TO

25   EVEN RAISE IT UNTIL MR. UTTER GOT UP HERE TODAY AND ADMITTED TO

1    THE COURT THAT'S EXACTLY WHAT HE'S AFTER.

2              **THE COURT:**  WHEN DID HE SAY THAT?

3              **MR. MONTGOMERY:**  WHEN HE GOT UP AND HANDED US TWO

4    AFFIDAVITS THAT HAVE TO DO WITH CONDITIONS IN JACKSON AND HE

5    SAID "THIS IS ABOUT THE YOUTH IN JACKSON WHO ARE EXPOSED TO

6    CONDITIONS JUST LIKE THE ONES IN WEST FELICIANA."

7              **THE COURT:**  AND THE COURT CORRECTED HIM AND SAID

8    THAT'S NOT BEFORE THE COURT.

9              **MR. MONTGOMERY:**  THE RELIEF WE'RE ASKING FOR IS -- ON

10   THIS PARTICULAR ISSUE -- IS THAT THE COURT ORDER WHAT THE

11   PARTIES HAD ALREADY AGREED TO, WHICH IS A PROPER RULE 23 NOTICE

12   THAT ACKNOWLEDGES AND MAINTAINS THE RIGHTS OF THE YOUTH, OF

13   THEIR GUARDIANS, AND OF THEIR PARENTS, EXPLAINS THE FACT THAT

14   THERE'S A CLASS, EXPLAINS PUTATIVE CLASS, EXPLAINS WHAT IT'S

15   ABOUT, EXPLAINS THEIR RIGHTS WITH REGARDS TO THE CLASS, AND

16   THAT THE PARENTS HAVE NOTICE SO THAT THEY CAN ASSIST THE YOUTH,

17   AS NECESSARY, AS THEIR PARENTS AND GUARDIANS WOULD I THINK WANT

18   TO.

19             **THE COURT:**  OKAY.

20             **MR. MONTGOMERY:**  AND THAT'S SOMETHING WE HAD ALREADY

21   AGREED TO DO AND WE'RE WORKING ON AND IS -- IT'S OUR TURN TO

22   SEND THEM OUR REVISED VERSION OF THE NOTICE.  BUT THAT'S WHERE

23   THIS STOOD WHEN THE COURT NOTICED IT FOR HEARING, AND I THINK

24   THAT'S WHERE WE ARE.

25             **THE COURT:**  MR. UTTER, WHERE DO YOU -- WHERE DO YOU

1   STAND ON THE RULE 23 NOTICE REQUIREMENTS?  DO YOU AGREE THAT

2   THERE NEEDS TO BE SOME SORT OF RULE 23 NOTICE?

3          **MR. UTTER:**  WE DON'T, YOUR HONOR.  WE'RE FINE WITH

4   SENDING THE KIDS AND HAVING THEM POST EXACTLY WHAT HAPPENED IN

5   THIS CASE AND WHAT IT'S ABOUT, BEING TRANSFERRED TO ANGOLA OR

6   ANOTHER ADULT JAIL.  WE SPECIFICALLY DECLINED -- WE SAID NO TO

7   THE CONDITIONS THAT OJJ WANTS TO PUT ON THIS CLASS NOTICE.

8   THEY ARE BEHAVING AS IF THESE KIDS ARE RUNNING AROUND THE

9   STREETS FREE.  THIS IS A CLASS ACTION WITH CHILDREN

10  INCARCERATED.  EVERY SINGLE THING THE KIDS DO IS SUBJECT TO

11  OJJ SUPERVISION.  THIS ISN'T A --

12         **THE COURT:**  SO YOU HAVE NOT NEGOTIATED A RULE 23

13  NOTICE?

14         **MR. UTTER:**  WE SENT THEM A NOTICE.  THEY SENT US

15  SOMETHING BACK WITH ALL OF THESE SORT OF, YOU KNOW, TRAPS THAT

16  THE KIDS HAVE TO AGREE TO AND HAVE THEIR PARENTS APPROVE BEFORE

17  THE KIDS CAN ACCESS THEIR COUNSEL.

18              AND, YOU KNOW, IF THE -- YOU ARE ABSOLUTELY

19  RIGHT, YOUR HONOR; IF THE CHILDREN THAT WE MEET WITH TELL US

20  ABOUT CONDITIONS IN ANY OF THESE PLACES THAT IS VIOLATING THEIR

21  CONSTITUTIONAL RIGHTS, YOU KNOW, WE ARE THEIR LAWYERS.  AND ALL

22  WE'RE ASKING FOR NOW IS -- THEY'VE GOT KIDS IN ADULT JAILS.

23  THEY ARE UNDER THE CLASS OR THE PUTATIVE CLASS AND, YOU KNOW,

24  THERE'S CASE LAW OUT THERE THAT ONCE THE CLASS IS CERTIFIED,

25  WE'RE THEIR LAWYERS.  IF IT'S A PUTATIVE CLASS, THEN, YOU KNOW,

1  THE ABILITY FOR THE CHILDREN TO ACCESS COUNSEL IS PARAMOUNT AND
2  IT TRUMPS OJJ'S REGULATIONS.
3            YOU KNOW, THE -- WE'VE BEEN GOING AFTER THIS --
4  I LOOKED AT THE FILE ON THIS.  YOUR HONOR, WE FIRST FILED A
5  MOTION FOR ACCESS TO THE KIDS LIKE WITHIN WEEKS OF FILING THE
6  LAWSUIT.  AND AT EVERY STEP, YOU KNOW, WHEN WE TRY TO JUMP
7  THROUGH THEIR HOOPS, WE ARE BLOCKED.  AND WE HAVE FILED MOTIONS
8  ABOUT THIS.  WE HAVE LITIGATED IT.  YOU KNOW, WE ARE READY TO
9  PROCEED WITH  DISCOVERY FOR THE PERMANENT INJUNCTION.  THAT'S
10 WHAT WE -- THAT'S WHAT WE ARE SEEKING HERE.
11           AND, YOU KNOW, WHAT WE HAVE BEEN NEGOTIATING AND
12 TALKING ABOUT IS DISCOVERY.  THEY ARE HOLDING US BACK BY
13 SAYING, "WELL, LET'S SEE WHAT JUDGE, YOU KNOW, DICK THINKS THE
14 JURISDICTION OF THE COURT IS."  WE FILED FOR A PERMANENT
15 INJUNCTION.  WE'VE BEEN GRANTED A PRELIMINARY INJUNCTION.  WE
16 NEED TO TALK TO THESE YOUNG PEOPLE THAT ARE MOVED ABOUT ALL
17 OVER THE STATE, WHETHER IT'S ADULT JAILS UNDER OJJ AUSPICES --
18 WE'VE GOT KIDS THAT HAVE BEEN CHARGED AS ADULTS FOR THINGS THAT
19 THEY ALLEGEDLY DID.  SO, I MEAN, JUDGE, WE JUST WANT OUR KIDS
20 TO BE ABLE TO ACCESS THEIR LAWYERS.
21           **THE COURT:**  OKAY.  THE COURT IS GOING TO GRANT THE
22 MOTION FOR ACCESS TO COUNSEL.  THE COURT IS AWARE OF NO LAW
23 THAT WOULD SUGGEST OR INDICATE -- WELL, THERE IS NO LAW THAT
24 SUGGESTS OR INDICATES THAT A LITIGANT LOSES THEIR ACCESS TO
25 COUNSEL ONCE AN APPEAL IS TAKEN.  THERE HAS BEEN NO STAY IN

1   THIS CASE.  EVEN IF THE CLASS ACTION IS PROPERLY ON APPEAL,
2   WHICH THE COURT FINDS IS SOMETHING FOR THE COURT OF APPEAL TO
3   DETERMINE UNDER THE SPECIFIC EXPRESS LANGUAGE OF RULE 23 AND
4   FEDERAL RULE OF APPELLATE PROCEDURE 5, THE COURT WILL JUST MAKE
5   THE ASSUMPTION THAT IT IS ON APPEAL.  BUT EVEN IF IT IS ON
6   APPEAL, THE COURT HAS JURISDICTION TO DECIDE ANCILLARY MATTERS
7   SUCH AS WHETHER OR NOT THERE IS ACCESS TO COUNSEL.
8            THE COURT IS GOING TO GRANT THE MOTION FOR
9   ACCESS TO COUNSEL.  IF THERE IS AN ISSUE OVER RULE 23 AND SOME
10  NOTICE REQUIREMENT, WHICH FRANKLY I READ RULE 23 -- ARE YOU --
11  MR. MONTGOMERY, ARE YOU REFERRING TO RULE 23(G) CLASS COUNSEL
12  WHEN YOU SAY THERE NEEDS TO BE A NOTICE?
13       **MR. MONTGOMERY:**  YOUR HONOR, WE ARE CITING
14  23(D)(1)(B) AND 23(B)(2), WHICH IS THE TYPE OF CLASS THEY ARE
15  SEEKING.  AND WE GOT SEVERAL CASES ON PAGE 7 OF OUR BRIEF IN
16  DOCUMENT 278.  AND I WOULD SAY I DON'T -- I DON'T THINK -- WHAT
17  I AM TOLD IS THAT THE MOST RECENT NOTICE -- THAT THE MOST
18  RECENT DRAFT WAS THEIRS TO US.  AND, YOU KNOW, I'M NOT GOING TO
19  SAY I'M 100 PERCENT SURE ON THAT.  BUT I'M BEING TOLD THAT THE
20  BALL IS IN OUR COURT, AND THAT'S WHERE WE ARE WITH THE
21  NEGOTIATION OF THE NOTICE.
22       **MR. UTTER:**  OUR WORD, OUR RESPONSES TO YOUR
23  REQUIREMENTS OF ALL THOSE HOOPS OF PARENTAL CONSENT, YOU TELL
24  THE PARENT, YOU APPROACH THE KIDS TO TELL THEM THAT THEY DON'T
25  NEED TO BE PART OF THE LAWSUIT, WE SAID NO TO THAT, BECAUSE YOU

1  CAN'T DO THAT KIDS.

2          **THE COURT:**  OKAY.  THE COURT IS GOING TO ORDER THAT

3  COUNSEL BE GIVEN ACCESS TO THE CLASS MEMBERS TO MEET IN PERSON,

4  FACE-TO-FACE, WITHIN A REASONABLE PERIOD OF TIME FROM THE

5  REQUEST.  AND YOU HAVE A POLICY WITH RESPECT TO WHAT THAT --

6  THE COURT EXPECTS THAT OJJ WILL ABIDE BY ITS POLICY THAT ALLOWS

7  ACCESS TO COUNSEL.  IT ALLOWS FACE-TO-FACE ACCESS.  AND IT

8  ALLOWS IT, IF MY RECOLLECTION IS CORRECT FROM READING THE

9  POLICY THIS MORNING OR THIS WEEKEND, WITHIN 24 HOURS.  THE

10  COURT EXPECTS OJJ TO ABIDE BY ITS POLICY.

11          TO THE EXTENT THAT OJJ TAKES THE POSITION, THE

12  LEGAL POSITION, THAT THERE IS SOME RULE 23 REQUIREMENT THAT A

13  NOTICE BE SENT, YOU CAN -- I AM GOING TO REFER YOU TO THE

14  MAGISTRATE JUDGE FOR THAT AND HE CAN HELP YOU CRAFT YOUR

15  NOTICE.  BUT I AM NOT GOING TO GET INTO THE WEEDS OF YOUR

16  NOTICE AND WHETHER OR NOT MR. UTTER'S FORM, WHICH I BELIEVE WAS

17  ATTACHED TO THE PLEADINGS -- I HAVE HERE A NOTICE THAT WAS

18  ATTACHED TO ONE OF PLAINTIFFS' FILINGS.  I BELIEVE IT WAS ONE

19  OF THE PLAINTIFFS' FILINGS.  ANYWAY, I JUST SAW IT.

20          TO THE EXTENT THAT Y'ALL HAVE CRAFTED THAT ONE

21  AND YOU WANT TO WORK SOMETHING OUT, WORK SOMETHING OUT.  YOU

22  CAN GET WITH THE MAGISTRATE JUDGE WITH THE P'S AND Q'S OF THAT

23  IF YOU NEED TO.  BUT THE COURT EXPECTS ATTORNEY VISITS TO BE

24  ACCOMMODATED AND THE COURT EXPECTS THE ATTORNEY VISITS TO BE

25  ACCOMMODATED QUICKLY.

1    **MR. UTTER:**  YOUR HONOR, MAY I ASK ONE CLARIFYING
2    QUESTION?
3        **THE COURT:**  YOU MAY.
4        **MR. UTTER:**  THIS NOTION OF WHETHER THE CLASS NOTICE
5    IS REQUIRED BY THE RULE IS EXPLICITLY DISAVOWED IN ONE OF THEIR
6    BRIEFS.  THAT'S NO. 1.  I DON'T THINK WE NEED A NOTICE.
7            NO. 2 IS:  CAN WE GET CLARIFICATION ON THE ORDER
8    THAT WE ARE PERMITTED TO SIT WITH THE YOUNG PEOPLE WITHOUT
9    PARENTAL AND/OR GUARDIAN CONSENT PRIOR TO APPROVAL?
10       **THE COURT:**  YES, YOU ARE.
11       **MR. UTTER:**  THANK YOU, YOUR HONOR.
12       **MR. MONTGOMERY:**  YOUR HONOR, OJJ'S POLICY REQUIRES
13   PARENTAL CONSENT.  THAT'S PART OF IT.
14       **THE COURT:**  BUT THE CLASS CERTIFICATION DOESN'T.
15   THESE YOUTH ARE REPRESENTED BY A LAWYER.  AND THE REASON THAT A
16   LOT OF THESE YOUTH ARE IN OJJ CUSTODY IS BECAUSE OF THE
17   TENUOUSNESS OF THEIR PARENTAL RELATIONSHIPS.  THE COURT IS NOT
18   GOING TO IMPOSE SOMETHING THAT IS FUTILE ON THESE REPRESENTED
19   YOUTH.  THEY ARE REPRESENTED BY COUNSEL, AND OJJ SHALL
20   FACILITATE THE ACCESS TO COUNSEL.
21       **MR. MONTGOMERY:**  THANK YOU, YOUR HONOR.
22           SO THE RULING IS, TO THE EXTENT WE HAVE NOTICE
23   ISSUES, TO SEE THE MAGISTRATE?
24       **THE COURT:**  THAT'S CORRECT.
25       **MR. MONTGOMERY:**  THANK YOU.

1          **THE COURT:**  MR. UTTER?

2          **MR. UTTER:**  BUT ONLY FOR THE NOTICE ISSUES?

3          **THE COURT:**  BEG YOUR PARDON?

4          **MR. UTTER:**  BUT ONLY FOR THE NOTICE ISSUE, IF THERE

5     IS A NOTICE ISSUE?

6          **THE COURT:**  CORRECT.  YOU ARE ORDERED TO ALLOW CLASS

7     COUNSEL TO MEET WITH THE YOUTH.

8          **MR. MONTGOMERY:**  SO I JUST WANT TO MAKE SURE I'M

9     CLEAR.  ON THE ISSUE OF WHETHER NOTICE TO THE YOUTH IS REQUIRED

10    FIRST, WE SHOULD SEE THE MAGISTRATE AND WORK OUT THE PROPER

11    NOTICE?

12         **THE COURT:**  YOU HAVEN'T CONVINCED ME THAT NOTICE IS

13    REQUIRED FIRST.

14         **MR. UTTER:**  CAN WE BRIEF THE ISSUE, YOUR HONOR?

15         **THE COURT:**  DIDN'T YOU ALREADY ADDRESS IT IN YOUR

16    BRIEF?  I KNOW THAT THE DEFENDANTS ADDRESSED IT IN THEIR BRIEF.

17    NOW, YOU SAY THAT THEY DISAVOWED IT AGAIN IN THEIR BRIEF.  I

18    DON'T REMEMBER READING THAT, BUT --

19         **MR. MONTGOMERY:**  WE DON'T DISAVOW THE REQUIREMENT OF

20    NOTICE, YOUR HONOR.  WE HAVE BRIEFED EXTENSIVELY THE FACT THAT

21    THE YOUTH AND THEIR, ARGUABLY, PARENTS AND GUARDIANS HAVE THE

22    RIGHT TO UNDERSTAND THE EXISTENCE OF THE CLASS ACTION AND THEIR

23    ROLE WITHIN IT BEFORE THEY ARE PUT INTO A MEETING WITH CLASS

24    COUNSEL.

25         **THE COURT:**  ALL RIGHT.  LET ME TAKE THAT UNDER

Case 3:22-cv-00573-SDD-RLB   Document 299-3   11/13/23   Page 32 of 43

31

1  ADVISEMENT JUST FOR A MOMENT.  I AM NOT GOING TO TAKE IT UNDER
2  ADVISEMENT AND RENDER A WRITTEN RULING.  BUT LET ME HEAR FROM
3  THE OTHER -- ON THE OTHER ISSUE OF THE SANCTIONS AND THEN I
4  WILL TAKE A LITTLE BREAK AND READ THE CASE LAW THAT YOU HAVE
5  CITED AND COME BACK TO YOU WITH A DECISION ON THE NOTICE.
6         **MR. MONTGOMERY:**  THANK YOU, YOUR HONOR.
7         **MR. MURELL:**  GOOD MORNING, YOUR HONOR.
8         **THE COURT:**  GOOD MORNING.
9         **MR. MURELL:**  CHRIS MURELL ON BEHALF OF THE
10 PLAINTIFFS.
11        THE SECOND MOTION BEFORE THE COURT IS A MOTION
12 FOR SANCTIONS FOR SPOLIATION UNDER RULE 37(E).  THIS
13 SPECIFICALLY DEALS WITH -- AS THE COURT REMEMBERS, THERE WAS AN
14 INCIDENT AND THE COURT WROTE ABOUT IT SO I DON'T NEED TO GO
15 BACK INTO THE INCIDENT WITH THE MACING OF THE YOUTH WHO WAS
16 LOCKED INSIDE THE CELL BY JJS EDWARDS WHERE JJS MCKINLEY WAS
17 PRESENT.  AS THE COURT REMEMBERS, THERE WAS THE TIER FOOTAGE OF
18 THE INCIDENT.  BUT ACCORDING TO JJS EDWARDS AND MCKINLEY, BOTH
19 THEIR BODY CAMERAS, WHICH WERE CAPTURED IN THE TIER FOOTAGE
20 THAT ARE ON THEIR SHIRTS, WERE TURNED OFF.
21        IN THIS CASE WE ARE ASKING THE COURT TO IMPOSE
22 SANCTIONS EVEN THOUGH IT WAS AN ACTION BY THE EMPLOYEES, NOT
23 NECESSARILY THE DEFENDANTS, SINCE THE DEFENDANTS ARE BEING SUED
24 UNDER OFFICIAL CAPACITY.  AND WE HAVE IN OUR BRIEFS THE LAW OF
25 WHY THE EMPLOYEES' ACTIONS CAN BE IMPUTED TO THE DEFENDANTS;

1    PRIMARILY BECAUSE IN THIS SITUATION ON JULY 20TH AND JULY 24TH,
2    I SENT THE DEFENDANTS LETTERS ABOUT THE DISCOVERY AND WHAT WE
3    INTENDED, WHAT WE WANTED, WHICH WAS PRESERVATION OF ALL VIDEOS
4    -- IF NOT -- LOOK, THIS WAS BEFORE WE WERE DEALING WITH
5    PRODUCTION OF WHAT COULD BE PRODUCED -- BUT PRESERVATION OF ALL
6    VIDEOS THAT WOULD SHOW WHAT HAPPENED INSIDE ANGOLA, BECAUSE
7    OBVIOUSLY BODY CAMERAS WOULD FALL UNDER THIS END.  BUT ON
8    JULY 31ST WE ISSUED OUR DISCOVERY REQUEST, WHICH INCLUDED
9    VIDEO.
10                  ON AUGUST 2ND THE YOUTH WAS MACED BY JJS EDWARDS
11    WITH JJS MCKINLEY STANDING RIGHT THERE.
12                  ON AUGUST 3RD I DEPOSED JJS EDWARDS AND JJS
13    MCKINLEY.  IT'S NOTABLE, IN MAKING THIS COURT'S DECISION ABOUT
14    CREDIBILITY AND WHAT INFERENCES SHOULD BE MADE, JJS MCKINLEY
15    TESTIFIED IN HER DEPOSITION THE DAY AFTER THE MACING THAT SHE
16    DIDN'T REMEMBER WHEN A MACING OCCURRED, JUST THAT ONE OCCURRED,
17    OR WHAT HAPPENED, EVEN THOUGH THIS WAS THE DAY AFTER IT
18    HAPPENED.
19                  IT HAPPENS THAT THESE TWO JJS'S DON'T HAVE THEIR
20    BODY CAMERAS ON, WHICH WAS NO. 1 IN TERMS OF THEIR -- THE
21    DEFENDANTS -- I WILL GO INTO THE LANGUAGE IN 37(E).  THE
22    DEFENDANTS HAD A REASONABLE OBLIGATION TO PRESERVE THIS VIDEO.
23    WE HAD SPECIFICALLY REQUESTED VIDEO.  IT'S OBVIOUSLY RELEVANT.
24    IF NOT SPECIFICALLY REQUESTED, EVEN THE BODY CAMERA OF
25    INTERACTIONS WITH YOUTH, PARTICULARLY USE OF FORCE ON YOUTH, IS

1    GOING TO BE RELEVANT TO THIS LAWSUIT GIVEN THE TRIAL IN
2    SEPTEMBER OF 2022.  AND AS DEPUTY SECRETARY NELSON TESTIFIED
3    WHEN MS. ROSENBLOOM WAS CROSS-EXAMINING, HE DIDN'T ISSUE A
4    LITIGATION HOLD, DIDN'T INFORM PEOPLE.  THEY DIDN'T TAKE
5    REASONABLE ACTIONS.  NO. 1, THEY KNEW -- THEY SHOULD HAVE
6    KNOWN --
7            **THE COURT:**  OKAY.  BUT THE SANCTION YOU WANT IS AN
8    ADVERSE INFERENCE.  RIGHT?
9            **MR. MURELL:**  YES.
10           **THE COURT:**  WE ARE FINISHED.  WE ARE DONE.  YOU WON.
11           **MR. MURELL:**  FOR THE PERMANENT INJUNCTION.
12           **THE COURT:**  OKAY.  SO ASK FOR AN ADVERSE INFERENCE AT
13   THE TRIAL ON THE MERITS, IF THERE IS ONE.
14           **MR. MURELL:**  AND THE OTHER ISSUE THAT ARISES FROM
15   THIS, WHICH IS ANOTHER I GUESS ANCILLARY MATTER, THAT WHEN WE
16   HAD A MEET AND CONFER WITH MR. ARCHEY, HE SAID THEY WERE
17   WAITING FOR THIS COURT TO RULE ON THESE MOTIONS BEFORE THEY
18   PROCEEDED.  WE'VE TRIED TO MEET AND CONFER ABOUT WHAT DISCOVER
19   WE ARE ENTITLED TO MOVING FORWARD IN TERMS OF THESE BODY
20   CAMERAS, IN TERMS OF THE VIDEO FOR THE PRODUCTION OF THAT
21   DISCOVERY, SINCE WE STILL DO HAVE OUR PERMANENT INJUNCTION
22   TRIAL AHEAD OF US.
23           OUR POSITION IS THAT THIS CASE ISN'T STAYED;
24   THAT WE HAVE ASKED FOR OTHER VIDEOS, OTHER BODY CAMERAS, WE
25   HAVE ASKED FOR THE PRESERVATION.  WE WOULD LIKE TO START

1    REQUESTING THE PRODUCTION OF THESE.  FOR EXAMPLE, LOOKING AT

2    HISTORICALLY DID JJS EDWARDS TURN ON HIS BODY CAMERA, WE WOULD

3    SEEK THIS COURT'S GUIDANCE SINCE MR. ARCHEY IN OUR CONVERSATION

4    SAID THAT THEIR POSITION IS THAT DISCOVERY IS NOT GOING FORWARD

5    AT THIS TIME.

6            **MR. MONTGOMERY:**  OBJECTION.

7            **THE COURT:**  WELL, YOU HAVE JUST TURNED AN ARGUMENT

8    FOR AN ADVERSE INFERENCE FOR SANCTIONS FOR FAILURE TO PRODUCE

9    VIDEO AT A PRELIMINARY INJUNCTION HEARING INTO SOME SORT OF --

10   I DON'T KNOW WHAT -- A DISCOVERY MOTION.  RIGHT?  I AM NOT

11   HEARING A DISCOVERY MOTION TODAY.  I AM HEARING A MOTION FOR

12   SANCTIONS.  AND THE SANCTION THAT YOU WANT IS AN ADVERSE

13   INFERENCE ON EVIDENCE FOR A HEARING THAT -- AN EVIDENTIARY

14   HEARING THAT IS ALREADY COMPLETE.

15           **MR. MURELL:**  CORRECT.  AND WE DID FILE THIS BEFORE

16   THIS COURT RULED, SO WE UNDERSTAND THE --

17           **THE COURT:**  YOU DID, BUT IT'S MOOT.

18           **MR. MURELL:**  WE UNDERSTAND THE MOOTNESS OF THIS

19   PRESENTLY TO THE PRELIMINARY INJUNCTION.

20           **THE COURT:**  OKAY.

21           **MR. MURELL:**  WE DO THINK IT'S STILL RELEVANT TO THE

22   PERMANENT INJUNCTION AND, THEREFORE, DON'T WANT TO DECLARE OUR

23   MOTION MOOT ON THE RECORD, BECAUSE WE DO BELIEVE THAT WE ARE

24   ENTITLED TO THAT INFERENCE IN THE END WHEN THE COURT IS

25   CONSIDERING ALL OF THE EVIDENCE.

1    **THE COURT:**  OKAY.  WELL, THE COURT'S RULING -- I'LL
2    SAVE YOU SOME WIND -- OR NOT -- THAT SOUNDED UGLY.  I DIDN'T
3    MEAN WIND.  BUT IT WILL SAVE YOU SOME WORDS AND BREATH.
4    AS TO THE PRELIMINARY INJUNCTION, WHICH IS
5    ALREADY COMPLETE, YOUR MOTION IS MOOT.  THE COURT WILL DENY
6    YOUR MOTION FOR SANCTIONS WITHOUT PREJUDICE TO REFILING IF, IN
7    FACT, IT BECOMES RELEVANT AT ANOTHER DATE AND TIME.
8    **MR. MURELL:**  YES, MA'AM.
9    **THE COURT:**  OKAY.  GIVE ME ABOUT TEN MINUTES TO LOOK
10   AT THE CASE LAW ON THE RULE 23 NOTICE REQUIREMENTS AND THEN I
11   WILL BE BACK WITH YOU.
12   **MR. UTTER:**  YOUR HONOR, CAN I JUST GIVE YOU THE CITE
13   TO THAT BRIEF?
14   **THE COURT:**  YES.
15   **MR. UTTER:**  IT IS DOCUMENT 278 ON PAGE 7.  THEY TALK
16   ABOUT NOTICE OF DISCRETIONARY FOR 23(B)(2) CLASS ACTIONS -- AND
17   THEN THEY GO ON TO SAY THAT COURTS HAVE PROVIDED THAT -- AND,
18   AS THE COURT IS AWARE, DOCUMENT 243, AN ORDER CERTIFYING THE
19   CLASS AS A (B)(2) CLASS.
20   **THE COURT:**  OKAY.  JUST GIVE ME TEN MINUTES OR SO.
21   **THE LAW CLERK:**  ALL RISE.
22   COURT IS AT RECESS.
23   **(WHEREUPON, THE COURT IS IN RECESS.)**
24   **THE COURT:**  BE SEATED.
25   OKAY.  IN THE SHORT RECESS, THE COURT LOOKED AT

1    23(B)(2) AND 23(D).  THE NOTICE REQUIREMENTS UNDER 23(D) ARE,

2    IN FACT, DISCRETIONARY.  THE WORDS "MAY" ARE USED IN THE

3    STATUTE ITSELF, AND AS CONCEDED BY THE DEFENDANTS, THEY ARE

4    DISCRETIONARY IN (B)(2) CLASS ACTIONS, WHICH IS WHAT THIS CLASS

5    ACTION IS.  SO THE COURT IS NOT GOING TO ORDER A NOTICE.

6    HOWEVER, THE COURT IS GOING TO ORDER THE FOLLOWING:  AS ALREADY

7    ORDERED, OJJ IS TO FACILITATE THE MEETINGS BETWEEN COUNSEL AND

8    THEIR CLASS AND THE CLASS MEMBERS WHO THEY REPRESENT.  UPON

9    CLASS COUNSEL APPEARANCE AT AN OJJ FACILITY TO SEE A MEMBER OR

10   MULTIPLE MEMBERS -- I'M SURE THERE WILL BE ONE-ON-ONE MEETINGS.

11   BUT IF THERE IS THREE OR FOUR MEETINGS SCHEDULED, THE YOUTH IS

12   TO BE BROUGHT TO CLASS COUNSEL AND, WITH ONE OJJ REPRESENTATIVE

13   THERE, THE YOUTH IS TO BE ASKED "DO YOU WANT" -- "YOU ARE A

14   MEMBER OF A CLASS ACTION.  THIS IS THE LAWYER FOR THE CLASS

15   ACTION.  DO YOU WANT TO MEET WITH YOUR LAWYER OR NOT?"  THEY

16   ARE TO MAKE THAT ELECTION PUBLICLY IN FRONT OF CLASS COUNSEL

17   AND ONE REPRESENTATIVE FROM THE OJJ.  IF THE YOUTH SAYS "YES, I

18   WANT TO MEET WITH COUNSEL," THEN THEY MEET WITH THEIR COUNSEL.

19   IF THEY SAY "NO," THEY ARE RETURNED TO THEIR PROGRAMMING OR

20   WHEREVER THEY -- FROM WHENCE THEY CAME.  OTHERWISE THERE ARE NO

21   NOTICE REQUIREMENTS UNDER 23(D), BUT THERE IS THAT PUBLIC

22   CONSENT REQUIREMENT THAT THE COURT JUST DESCRIBED.

23             **MR. MONTGOMERY:**  YOUR HONOR, ONE QUICK QUESTION

24   THERE?

25             **THE COURT:**  YES.

1     **MR. MONTGOMERY:**  WOULD THE COURT ALLOW US TO SAY
2  ANYTHING ABOUT THE NATURE OF THE CLASS ACTION --
3          **THE COURT:**  NO.
4     **MR. MONTGOMERY:**  -- TO THE YOUTH?
5          **THE COURT:**  NO.
6     **MR. MONTGOMERY:**  JUST "THERE IS A CLASS ACTION."
7          **THE COURT:**  "THERE IS A CLASS ACTION.  YOU ARE A
8  CLASS MEMBER.  THIS IS THE LAWYER.  DO YOU WANT TO MEET WITH
9  YOUR LAWYER?"
10         **MR. MONTGOMERY:**  THANK YOU, YOUR HONOR.
11         **MR. UTTER:**  YOUR HONOR, COULD WE GET -- ONE OF THE
12 VERY FIRST THINGS WE DID ONCE THE CLASS WAS CERTIFIED IS WE
13 ASKED FOR A LIST OF YOUTH WHO ARE CLASS MEMBERS ESSENTIALLY IN
14 OJJ CUSTODY SUBJECT TO TRANSFER TO ANGOLA OR ANOTHER ADULT
15 FACILITY.  COULD WE GET A LIST ONCE A WEEK SO WE KNOW WHO WE
16 ARE GOING TO ASK TO VISIT OR DO WE GO AND THEY BRING WHOEVER
17 THEY WANT?
18         **THE COURT:**  MR. MONTGOMERY, WHY CAN'T HE HAVE A LIST?
19         **MR. MONTGOMERY:**  HE WANTS A LIST OF EVERY YOUTH
20 WITHIN THE OJJ?
21         **THE COURT:**  SECURE CARE WHO IS SUBJECT TO TRANSFER.
22 AND I GUESS THAT'S -- MR. UTTER IS GOING TO SAY THAT'S
23 EVERYBODY IN SECURE CARE.
24         **MR. UTTER:**  AND THAT'S CERTAINLY THE WAY IT'S PLAYED
25 OUT, YOUR HONOR.

1          **THE COURT:**  I DON'T KNOW HOW IT'S PLAYED OUT AND THAT
2    IS NOT IN EVIDENCE.  BUT IN THEORY, IF THERE IS SOMEBODY IN
3    SECURE CARE AND THEY HAVE TO BE STEPPED UP TO THIS TTU,
4    WHEREVER THE TTU IS, THEN THEY ARE SUBJECT TO TRANSFER NOW, YOU
5    KNOW.
6          **MR. MONTGOMERY:**  WE DO HAVE REQUIREMENTS FOR TRANSFER
7    TO THE TTU.  AND, FOR EXAMPLE, ALEX A WAS IN SECURE CARE BUT
8    NEVER WENT.  I MEAN, I WOULD SAY THAT ANYONE WHO IS ACTUALLY
9    SUBJECT TO TRANSFER --
10         **THE COURT:**  EXCEPT THERE WAS EVIDENCE THAT THERE WAS
11   THESE EMERGENCY TRANSFERS, TOO.  THERE WAS EVIDENCE OF ONE
12   YOUTH THAT WAS TRANSFERRED IN THE NIGHT BECAUSE OF SOME -- YOU
13   KNOW, SOME INCIDENT AND THEY DIDN'T GO THROUGH THAT
14   MULTIDISCIPLINARY PROCESS THAT YOUR TTU EXPERT -- WHOSE NAME I
15   CAN'T REMEMBER NOW -- BUT THAT YOUR TTU EXPERT EXPLAINED.  AND
16   THAT'S IN YOUR POLICIES; THERE IS THIS MULTIDISCIPLINARY
17   APPROACH THAT SAYS ALL THESE DIFFERENT FOLKS ARE GOING TO MEET
18   TO DETERMINE WHETHER A YOUTH IS SUBJECT TO TRANSFER OR WOULD
19   BENEFIT FROM TRANSFER TO A MORE INTENSIVE TTU.  BUT THERE ARE
20   EMERGENT SITUATIONS WHERE THAT PROCESS IS NOT USED.  SO HOW IS
21   MR. UTTER TO KNOW WHO IS SUBJECT TO TRANSFER AND WHO IS NOT?
22         **MR. MONTGOMERY:**  WELL, YOUR HONOR, I HONESTLY WAS NOT
23   PREPARED TO HAVE THAT DISCUSSION TODAY.  BUT I WOULD PROPOSE
24   THAT WE COME UP WITH A WAY.
25         **THE COURT:**  OKAY.  WHY DON'T --

```
1              MR. MONTGOMERY:  RATHER THAN JUST DUMP THE ENTIRE
2    LIST OF SECURE CARE YOUTH INTO THE --
3              THE COURT:  I THINK THAT'S REASONABLE.
4              MR. MONTGOMERY:  THANK YOU.
5              THE COURT:  Y'ALL WORK OUT HOW YOU FIGURE THAT OUT.
6    CLEARLY THE KIDS AT JACKSON, I THINK YOU SHOULD DISCLOSE THEIR
7    NAMES.  THEY HAVE BEEN TRANSFERRED.  AND I GUESS THAT IS WHERE
8    YOUR TTU IS NOW.  AND THERE ARE KIDS THAT I PRESUME ARE SUBJECT
9    TO TRANSFER OR MAYBE ARE BEING CONSIDERED AS WE SPEAK.  THOSE
10   NAMES SHOULD BE DISCLOSED, I MEAN, THE OBVIOUS ONES THAT THERE
11   IS NOT A DISPUTE ON.  NOW, EVERY OTHER KID THAT IS IN SECURE
12   CARE THAT MIGHT BE RELEASED TOMORROW, I DON'T KNOW WHETHER
13   THOSE NEED TO BE DISCLOSED OR NOT.
14             MR. MONTGOMERY:  I THINK WE JUST NEED A CHANCE TO
15   NAVIGATE THOSE WATERS, YOUR HONOR.  I REALLY AM OUTSIDE -- I
16   DON'T FEEL LIKE I CAN SPEAK WITH ACCURACY ON HOW THAT SHOULD BE
17   HANDLED AS I SIT HERE.  I NEED TO TALK TO THE CLIENT.  BUT I
18   WOULD PROPOSE THAT WE JUST LOOK INTO THAT AND COME UP WITH A
19   WAY TO NOTIFY MR. UTTER, YOU KNOW, WHO IS SUBJECT TO TRANSFER
20   TO THE TTU.
21             MR. UTTER:  YOUR HONOR, I THINK THE COURT MAKES A
22   GOOD POINT.  ABSOLUTELY WE WOULD WANT THE NAMES OF THE YOUNG
23   PEOPLE WHO ARE AT JACKSON NOW SO WE CAN GO SEE THEM AS SOON AS
24   POSSIBLE.
25                  THIS PROCESS THAT OJJ HAS BEEN SELLING IS
```

1   FAULTY, BOTH ON THE FRONT END IN THE SENSE THAT I HAVE TALKED

2   TO YOUNG PEOPLE THERE THAT THEY DON'T KNOW WHY THEY GOT THERE;

3   THEY HAD AN INCIDENT; THEY WERE WRONGFULLY ACCUSED.  AND THEN

4   IT'S ALSO ON THE BACK END; TWO OF THE YOUNG PEOPLE WE MET WITH

5   AT JACKSON HAD BEEN TOLD THEY COMPLETED THEIR PROGRAM AT ANGOLA

6   A WEEK BEFORE.

7           **THE COURT:**  NOT BEFORE THE COURT, MR. UTTER.

8           **MR. UTTER:**  I'M SAYING THE PROCESS IS FAULTY.  AND TO

9   WAIT TO HAVE OJJ COME UP WITH, YOU KNOW, THIS PROCESS OF KIDS

10  WHO MAY BE SENT, I WOULD BE SHOCKED IF WE GET MORE THAN THREE A

11  MONTH.

12          **THE COURT:**  OKAY.  WELL --

13          **MR. UTTER:**  BECAUSE THEIR GOAL IS TO KEEP KIDS AWAY

14  FROM THEIR LAWYERS.

15          **MR. MONTGOMERY:**  THAT'S ABSURD, NO. 1.

16              NO. 2, IF COUNSEL OPPOSITE WANTED TO HAVE A

17  MEANINGFUL DISCUSSION ABOUT THEIR CONVERSATIONS WITH PEOPLE AT

18  JACKSON -- IT JUST DAWNED ON ME THAT THESE DECLARATIONS ARE

19  DATED OCTOBER 4TH AND OCTOBER 10TH, SO THEY HAVE BEEN IN

20  POSSESSION OF THEM FOR DAYS -- NO ONE HAS TOLD US ANYTHING

21  BEFORE THIS MORNING ABOUT WHAT ANYONE FROM THE JACKSON FACILITY

22  HAS SAID.

23              WHAT WE ARE LOOKING AT HERE IS JUST AN ELEMENT

24  OF SURPRISE, AS ALWAYS.  I'M SURE MOST OF THIS IS FALSE AS

25  ALWAYS.  AND THEN THEY JUST WANT CARTE BLANCHE ACCESS TO ALL

1  THE YOUTH.  WHAT A SURPRISE.

2          I THINK WE SHOULD LOOK INTO A REASONABLE WAY TO

3  LET MR. UTTER'S TEAM KNOW WHO IS SUBJECT TO THE TTU AND THEN

4  DISCLOSE IT APPROPRIATELY.

5          **THE COURT:**  OKAY.  WELL, WHOEVER IS CURRENTLY SUBJECT

6  TO THE TRANSITIONAL TREATMENT UNIT, THIS STEPPED-UP LEVEL OF

7  CARE DUE TO SOME OFFENSE CONDUCT, THOSE NAMES SHOULD BE

8  DISCLOSED.

9          WITH RESPECT TO GOING FORWARD, YOU-ALL WORK

10  SOMETHING OUT.  IF YOU CANNOT WORK IT OUT, PONY UP SOME SORT OF

11  A MOTION THAT I WILL REFER TO THE MAGISTRATE JUDGE, BECAUSE THE

12  MAGISTRATE JUDGE CAN SEE YOU AND HAMMER IT OUT MUCH MORE

13  QUICKLY THAN I CAN SEE YOU.

14          BUT AS OF NOW, THE YOUTH THAT ARE IN THE TTU,

15  MR. UTTER HAS ACCESS TO THEM.  AND WHEN YOU SHOW UP AT THE TTU

16  WHEREVER IT IS -- I GUESS WE WILL USE JACKSON FOR SAKE OF

17  ARGUMENT -- THEN ONE OJJ PERSON, MR. UTTER OR WHOEVER THE

18  COUNSEL IS, "THIS IS A LAWYER.  YOU ARE A CLASS MEMBERS IN A

19  CLASS ACTION.  DO YOU WANT TO SPEAK WITH YOUR LAWYER OR NOT?"

20  IF THE ANSWER IS "YES," THEY SPEAK WITH THE LAWYER PRIVATELY

21  PERSONALLY FACE-TO-FACE.  IF THE ANSWER IS "NO," THEY GO BACK

22  TO WHEREVER THEY CAME FROM.

23          **MR. MONTGOMERY:**  THANK YOU, YOUR HONOR.

24          **MR. UTTER:**  ONE LAST THING, YOUR HONOR.  BECAUSE

25  THERE WAS SOME REPEAT CHILDREN AT THE ANGOLA FACILITY, WE WOULD

```
 1   ASK FOR A LIST OF KIDS IN OJJ CUSTODY NOW WHO HAD BEEN AT
 2   ANGOLA.
 3            THE COURT:  TAKE THAT UP WITH THE MAGISTRATE JUDGE.
 4            MR. UTTER:  THANK YOU, YOUR HONOR.
 5            MR. MONTGOMERY:  THANK YOU.
 6            THE COURT:  OKAY.  WE WILL BE IN RECESS.
 7            THE LAW CLERK:  ALL RISE.
 8                 COURT IS AT RECESS.
 9            (WHEREUPON, THIS MATTER WAS ADJOURNED.)
10                          * * *
11                        CERTIFICATE
12        I, SHANNON THOMPSON, CCR, OFFICIAL COURT REPORTER FOR THE
13   UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF LOUISIANA,
14   CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO
15   THE BEST OF MY ABILITY AND UNDERSTANDING, FROM THE RECORD OF
16   PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.
17
18                      Shannon Thompson
19                      SHANNON THOMPSON, CCR
20                      OFFICIAL COURT REPORTER
21
22
23
24
25
```