IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. A. No. 3:22-CV-00573-SDD-RLB ) |
| GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections, | ) ) ) **DEFENDANTS' BRIEF** ) **IN RESPONSE TO MAGISTRATE** ) **JUDGE'S ORDER (R. DOC. 302)** ) ) ) ) ) ) |
| Defendants. | ) |

NOW INTO COURT, through undersigned counsel, come Defendants John Bel Edwards, in his official capacity as Governor of Louisiana; Otha "Curtis" Nelson, Jr.,[1] in his official capacity as Deputy Secretary of the Office of Juvenile Justice ("OJJ"); and James M. LeBlanc, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections (collectively "Defendants"), who submit this memorandum brief in response to the Magistrate Judge's request following the November 14, 2023 status conference. (R. Doc. 302). As discussed at the discovery conference and outlined in the minute entry, the parties disagree on several fundamental issues

---

[1] On November 18, 2022, Governor Edwards announced the resignation of Deputy Secretary Sommers and the appointment of Otha "Curtis" Nelson, Jr. as his replacement. https://gov.louisiana.gov/index.cfm/newsroom/detail/3892. Because Sommers was sued in his official capacity, Nelson is automatically substituted as a Defendant. Fed. R. Civ. P. 25(d).

1

regarding the scope of the class and the nature and extent of permissible discovery in light of the current posture of the case, including the pending appeal before the Fifth Circuit.

## BACKGROUND INFORMATION

Defendants' appeal of the District Court's preliminary injunction order (R. Doc. 267) and other ancillary matters is presently pending before the Fifth Circuit. The Fifth Circuit has expedited the appeal, and oral arguments are scheduled for December 5, 2023. The appeal is especially pertinent to the disputed discovery issues. Specifically, Defendants appeal the District Court's ruling granting class certification (R. Doc. 243) and its denial of Defendants' Motion for Judgment as a Matter of Law, including the Court's finding that Plaintiffs exhausted their administrative remedies under the PLRA (R. Doc. 245).

Notably, the outcome of Defendants' appeal could result in dismissal of this case in its entirety or significantly limit the scope of any further proceedings. If the Fifth Circuit finds that Plaintiffs did ***not*** properly exhaust their administrative remedies as required by the PLRA, the entire case should be dismissed as premature. Even if the Court finds that Plaintiffs exhausted their administrative remedies, a reversal or limitation of the District Court's class certification could severely limit the scope of this proceeding, including any relevant discovery. Thus, proceeding with discovery prior to the resolution of the appeal is an unnecessary use of the parties' resources, and no further discovery should be permitted before the Fifth Circuit rules on Defendants' appeal.

## ARGUMENT AND AUTHORITIES

Plaintiffs seek to engage in class-wide discovery on the merits of their motion for permanent injunction. Moreover, Plaintiffs interpret the class definition to include all youth in secure care custody of OJJ, posit that the injunctive relief they seek extends to all "adult facilities"

at which youth in OJJ secure care may be housed, and unilaterally declare that the youth facility located in Jackson Parish is an "adult facility." According to Plaintiffs, the class definition contemplates sweeping discovery into the entire OJJ secure care population, each OJJ secure care facility or alternative housing location, and an unrestricted temporal scope, including discovery of facts and information post-dating the closure of BCCY-WF (i.e., the one facility that was the subject of Plaintiffs' Motion for Preliminary Injunction).

Defendants disagree with Plaintiffs' posited interpretation of the class definition, the proposed scope of discovery, and the necessity of conducting discovery while their appeal is pending. Any discovery efforts prior to the Fifth Circuit's ruling on Defendants' appeal risks expending unnecessary resources of all parties on discovery which may not be pertinent to this matter following the Fifth Circuit's ruling. The breadth of potential outcomes of the appeal – dismissal of the case in its entirety, limiting the scope to only the named plaintiffs, or affirmation of the District Court's rulings in their entirety – warns against engaging in ***any*** discovery prior to the Fifth Circuit's ruling. Furthermore, delaying discovery will result in no prejudice to Plaintiffs.

**I.      The class is limited to youth who were housed in the TTU at BCCY-WF.**

Following the preliminary injunction hearing, the District Court granted Plaintiffs' motion for class certification. (R. Doc. 243). Specifically, the Court summarily granted the motion for class certification, appointed the named plaintiffs as class representatives, and appointed Plaintiffs' counsel as class counsel. (*Id*. at p. 21). The Court's ruling did not define the class. The only suggestion of a class definition is the Court's reference to the class definition as proposed Plaintiffs, which reads:

> [A]ll youth who are now or will be in the custody of OJJ who have been, might be, or will be transferred to the OJJ site (the "Transitional Treatment Unit" or "TTU") at Angola or another adult prison (the "Principal Class"), including a subclass of all current and

3

> future youth with disabilities within the meaning of the ADA and Section 504 of the rehabilitation Act in the custody of OJJ who have been, might be, or will be transferred to the OJJ site at Angola or another adult prison (the "Disabilities Subclass").

*Id*. at p. 8 (citing R. Doc. 99-1, pp. 6–7). While the parties agree that the class definition would include those youth who were previously housed at OJJ's TTU located at BCCY-WF, the parties fundamentally disagree as to whether any other youth in OJJ custody are members of the class.

Plaintiffs drafted the current class definition in their Motion for Class Certification (R. Doc. 99), which was the only definition referenced by the Court in its ruling granting class certification (R. Doc. 243). Accordingly, based upon widely accepted rules of construction, any ambiguity or discrepancy in the class definition should be construed ***against*** Plaintiffs. *See Deep South Communications*, 652 F. Supp. 3d 636 (M.D. La. 2023) (contractual language is interpreted against the drafter) *and* La. Civ. Code arts. 9–12 (canons of construction for ambiguous statutory language). Moreover, Plaintiffs' current interpretation of their class definition – i.e., all youth in OJJ secure care custody – is inconsistent with the plain language of the class definition as well as orders and comments of the District Court, as discussed further below.

The plain language of class definition reveals that the definition does not extend to the entire statewide OJJ secure care population. Indeed, if the class encompassed the entire OJJ secure care population, the class definition would stop after the first clause: "[A]ll youth who are now or will be in the custody of OJJ." The definition is not so broadly defined, and the remainder of the definition must be given appropriate weight and meaning. The definition limits the class members to those youth in OJJ custody "who have been, might be, or will be transferred to the OJJ site (the 'Transitional Treatment Unit' or 'TTU') at Angola or another adult prison" (hereafter, the "Limiting Clause"). The Principal Class and Disability Subclass definitions each contain the same Limiting Clause.

4

The Limiting Clause serves to carve out a distinct subset of youth in OJJ custody to include only those youth who are (or were) subject to the conditions at BCCY-WF. The Limiting Clause, though grammatically complex, is centered around the placement of a youth at the TTU. The first phrase of the Limiting Clause restricts the class to those youth who "have been, might be, or will be transferred" to the Transitional Treatment Unit (the "TTU"). Notably, Plaintiffs based their class definitions on transfer "to the OJJ site (the 'Transitional Treatment Unit' or 'TTU')", not transfer to BCCY-WF or any adult facility. By defining the relevant situs for class membership as the TTU, the remainder of the Limiting Clause should be construed as limited to the TTU.

The second phrase of the Limiting Clause, "at Angola or another adult prison," further restricts the class definition to only youth assigned to the TTU who are housed at adult facilities. As discussed below, there has been no finding that OJJ is using "another adult facility" to house youth and, since the closure of BCCY-WF, OJJ has not re-located its TTU program to any other facility. Accordingly, the definition, as written by Plaintiffs, includes only those youth who were housed at the TTU at BCCY-WF.

Not only is Defendants' interpretation of the class definition consistent with the textual drafting of the class definition, Defendants' interpretation is also consistent with the District Court's prior rulings and comments. At a motion hearing on October 16, 2023, the District Court Judge unequivocally recognized that the class the Court intended to certify was not so broad as to include all youth in OJJ custody. (R. Doc. 299-3, p. 37-38.)

Additionally, the District Court Judge unequivocally recognized that all youth at the Jackson Parish facility are not class members. (*See id.* at p. 20-21.) At the hearing, the Court accepted two declarations presented by Plaintiffs' counsel for the purpose of determining "if we have class members in Jackson." (*See id.*) If all youth at the Jackson Parish facility were

5

automatically class members, then there would have been no need for the District Court Judge to inquire as to whether any youth at the Jackson Parish facility were members of the class.

Finally, to the extent that Plaintiffs are arguing that all youth in the Jackson Parish facility are class members because the Jackson Parish facility is an "adult facility," the District Court has already recognized that it has made no finding that the Jackson Parish Facility is an "adult facility." (*See id.* at p. 8 ("I don't have any evidence about what Jackson Parish Jail is or is not.").)

The class definition should be read strictly, and any ambiguity should be resolved against the Plaintiffs. Moreover, the definition should be construed to have meaning and not superfluous. *See, e.g.,* La. Civ. Code art. 11–12. Contrary to Plaintiffs' interpretation, the class is not comprised of all youth in OJJ secure care; the definition is subject to two significant limitations: (1) the youth must have been housed at or subject to transfer to the TTU; and (2) the TTU must be located at an adult facility. As the Court recognized, it has no evidence of OJJ using an "adult facility" to house youth other than the BCCY-WF facility.[2] Accordingly, the class, as defined, is limited to those youth in OJJ's custody who were at one time housed at BCCY-WF.

### A.    No additional discovery is needed on the scope of the class.

Additional discovery is not needed to determine the scope of the class. First, to the extent discovery was necessary to determine an appropriate class definition, that discovery should have been completed before Plaintiffs filed their Motion for Class Certification on October 31, 2022 (R. Doc. 99) and certainly before the Court's order granting the Motion for Class Certification. If Plaintiffs contend they now need further discovery to determine the scope of the class after the class has been certified, that request is untimely and improper. *See Pittman v. E.I. duPont de Nemours & Co.*, 552 F.2d 149 (5th Cir. 1977) (finding that limited discovery **prior** to class

---

[2] Defendants, of course, disagree with this categorization. BCCY-WF is a juvenile facility that is co-located on the campus of the Louisiana State Penitentiary. BCCY-WF is not an adult facility.

6

certification is necessary to determine the class action issue and the proper scope of a proposed class).

Additionally, even if some additional discovery on the scope of the class is warranted (which it is not), Plaintiffs do not have a need for such discovery while the Fifth Circuit appeal is pending. Defendants' pending appeal may extinguish the class and/or the lawsuit. Plaintiffs cannot state any prejudice they will suffer by delaying discovery for a few more weeks until the Fifth Circuit rules on Defendants' appeal. No such prejudice exists, and there is no justification for seeking additional discovery on the scope of the class prior to a ruling from the Fifth Circuit.

**II.     The Court should defer entry of a scheduling order pending resolution by the Fifth Circuit of the outstanding appeal.**

The parties and the Court will benefit greatly from a brief stay of discovery during the pendency of Defendants' appeal. Oral argument on the appeal is scheduled for Tuesday, December 5, 2023. The Fifth Circuit's ruling will undoubtedly resolve many of the existing disputes between the parties and will provide significant guidance to the parties and this Court for the resolution of further disputes.

The Fifth Circuit's ruling may result in a complete dismissal of this matter if it finds that Plaintiffs failed to properly exhaust their administrative remedies under the PLRA. This possibility alone should negate any claim by Plaintiffs that discovery is necessary prior to resolution of the appeal. If Plaintiffs' claims are premature, they have no right to discovery.

Even if the Fifth Circuit's ruling does not result in dismissal, the parties will receive clarity regarding the scope of permissible discovery which will better guide Plaintiffs' discovery on the merits and any applicable limits thereto. For example, if the Fifth Circuit overturns the Court's ruling on class certification, the dispute as to the class definition and scope of representation discussed above would be moot, and Plaintiffs' discovery would be limited to the named plaintiffs.

7

Any number of rulings by the Fifth Circuit could redefine the scope of these proceedings and modify the discovery process that follows. As evidenced by the discovery disputes throughout the record in this matter, the parties would benefit from certainty and direction for the next phase of discovery; abstaining from discovery while Defendants' appeal is pending will provide the certainty needed and conserve the parties' and the Court's resources.

There is no prejudice caused to the parties in waiting for the Fifth Circuit's ruling before engaging in further discovery. When asked by the Magistrate Judge at the recent status conference what prejudice Plaintiffs would suffer by delaying discovery, Plaintiffs' counsel provided no meaningful response. The lack of an immediate need for this discovery and the certainty and efficiency gained by a temporary delay are sufficient justifications to refrain from engaging in discovery or entering a scheduling order until the outstanding appeal is resolved.

**III.    If/when discovery resumes, discovery should be limited to the conditions of confinement at BCCY-WF.**

As discussed *supra*, the certified class consists of youth in OJJ secure care custody who are or will be placed in a TTU program at an adult facility, i.e., youth who were placed at BCCY-WF. Accordingly, discovery should be limited to BCCY-WF. During the course of the motions for preliminary injunction, substantial discovery was conducted regarding BCCY-WF. While there may be some limited, rearward-looking discovery that remains to be conducted, the discovery should be limited to BCCY-WF.,

Plaintiffs' efforts to expand discovery into issues regarding the conditions of confinement at the Jackson Parish facility should not be permitted. First, the Jackson Parish facility is not an "adult facility"; rather, it is a detention center which is designed to house both youth and adults pursuant to the requirements of the Juvenile Justice and Delinquency Prevention Act ("JJDPA")

8

for a co-located facility. Second, the Jackson Parish facility is not operating as a TTU, and therefore is not within the class definition for this additional reason.

The Court has already found that conditions of confinement at the Jackson Facility are not at issue in the present litigation and that challenges to the conditions of confinement at the Jackson Parish facility would need to be the subject of a different lawsuit. (R. Doc. 299-3, p. 9). These comments by the Court support the fact that discovery regarding conditions of confinement are limited to BCCY-WF.

## CONCLUSION

Plaintiffs' interpretation of their class definition is inconsistent with their own drafting and the Court's comments and rulings. The class definition should be limited to those youth who were placed in the TTU program at BCCY-WF and should not extend to any other youth in OJJ custody. Moreover, no discovery scheduling order should be entered and all discovery should be stayed pending the resolution of Defendants' appeal by the Fifth Circuit.

Dated: November 27, 2023.

Respectfully submitted:

BY: _____
Connell Archey (#20086)
Randal J. Robert (#21840)
Allena McCain (#38830)
Madaline King Rabalais (#38301)
BUTLER SNOW LLP
445 North Boulevard, Suite 300 (70802)
P.O. Box 2997
Baton Rouge, LA 70821-2997
Telephone: (225) 325-8700
Facsimile: (225) 325-8800
Connell.Archey@butlersnow.com
Randy.Robert@butlersnow.com
Allena.McCain@butlersnow.com
Madaline.Rabalais@butlersnow.com

9

Kyle V. Miller (pro hac vice)
Lemuel E. Montgomery III (pro hac vice)
Anna Morris (pro hac vice)
Carly Chinn (pro hac vice)
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone:   (601) 948-5711
Facsimile:   (601) 985-4500
Kyle.Miller@butlersnow.com
Lem.Montgomery@butlersnow.com
Anna.Morris@butlersnow.com
Carly.Chinn@butlersnow.com

Counsel for Defendants
GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice; and JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has this day been filed electronically with the Clerk of Court using the CM/ECF system, which will deliver notice of this filing to all counsel of record.

Baton Rouge, Louisiana this 27th day of November, 2023.

_____
Allena McCain

84615817.v1