IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections, <br><br> Defendants. | Civ. A. No. 3:22-CV-00573-SDD-RLB <br><br> **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR RULE 12(b)(1) MOTION TO DISMISS** |

NOW INTO COURT, through undersigned counsel, come Defendants Jeff Landry, in his official capacity as Governor of Louisiana; Kenneth "Kenny" Loftin, in his official capacity as Deputy Secretary of the Office of Juvenile Justice ("OJJ"); and James M. LeBlanc, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections ("DOC") (collectively "Defendants"),[1] and pursuant to Federal Rule of Civil Procedure 12(b)(1),

---

[1] Since the filing of this lawsuit, the State of Louisiana elected a new governor, Jeff Landry. Because former Gov. Edwards was initially sued in his official capacity, Gov. Landry is automatically substituted as a defendant. Fed. R. Civ. P. 25(d).

Relatedly, on November 18, 2022, then-Gov. Edwards announced the resignation of initially-named Defendant Deputy Secretary Sommers and the appointment of Otha "Curtis" Nelson, Jr. as his replacement. https://gov.louisiana.gov/index.cfm/newsroom/detail/3892. Because Mr. Sommers was initially sued in his official capacity, Mr. Nelson was then automatically substituted as a Defendant. Subsequently, on February 2, 2024, Gov. Landry announced that Kenneth "Kenny" Loftin had been appointed as the Deputy Secretary of OJJ. https://gov.louisiana.gov/index.cfm/newsroom/detail/4402. Therefore, Mr. Loftin is now automatically substituted as a Defendant. Fed. R. Civ. P. 25(d).

respectfully request that the Court dismiss this lawsuit for lack of subject matter jurisdiction due to mootness.

## **INTRODUCTION**

At its heart, this case has been about OJJ's establishment of a temporary juvenile secure care facility on the campus of the Louisiana State Penitentiary ("LSP"): the Bridge City Center for Youth at West Feliciana ("BCCY-WF"). As Defendants made clear since before the inception of this litigation, BCCY-WF was always intended to be a temporary solution to an immediate safety and security danger—a danger to the youth in OJJ's custody, to the OJJ staff, and to the public at-large. OJJ's then-existing secure care facilities lacked the physical requirements necessary to safely and securely house a certain population of the youth in OJJ's custody. At the time when the creation of BCCY-WF was announced, OJJ was already in the process of constructing a new facility at the Swanson Center for Youth in Monroe ("SCY-Monroe") that met physical requirements and renovating an existing unit a SCY-Monroe (the Cypress Unit) that met the physical requirements needed to house these youth. Until the construction and renovations were completed, OJJ needed to find an existing location that met the physical requirements necessary to safely and securely house these youth.

The reception center at Angola—the building that was developed into BCCY-WF—had the necessary physical requirements. It was unoccupied and available, with minimum renovations, it could safely and securely house these youth.

The renovations to the Cypress Unit at SCY-Monroe are complete, and the unit is already housing youth. The construction of the new facility at SCY-Monroe is essentially complete, and the new facility is scheduled to open soon, pending final inspections and outfitting with furniture.

Just as the emergency that precipitated the need for BCCY-WF has ended, so too should this case. This case is moot and due to be dismissed because it no longer presents a case or controversy under Article III of the Constitution. Specifically, no youth faces the possibility of being housed at BCCY-WF or a transitional treatment unit ("TTU") at an "adult prison" for the following reasons:

- OJJ transferred all youth out of BCCY-WF;

- OJJ has opened its newly-renovated Cypress Unit and will soon open its newly-constructed facility at SCY-Monroe, thus obviating the prior, temporary need to house secure care youth at BCCY-WF;

- After OJJ closed BCCY-WF, DOC used the facility to house adult offenders;

- DOC intends to use the reception center at LSP (i.e., the former site of BCCY-WF) only to house adult offenders (not juveniles);

- Since the closure of BCCY-WF, OJJ has had no TTU and currently does not operate a TTU at any facility;

- The juvenile facility at which some youth are housed at the Jackson Parish Jail ("Jackson Parish") is not (and never has been) a TTU;

- OJJ will soon establish its TTU at the Cypress Unit at SCY-Monroe (a youth facility); and

**FACTUAL BACKGROUND AND RECENT DEVELOPMENTS**

In July 2022, then-Governor Edwards announced plans to open a temporary secure care facility for the housing of youth in OJJ custody while OJJ completed construction of a new facility. That temporary secure care facility was to be located on the grounds of LSP and came to be known as BCCY-WF.

Plaintiffs initially filed this lawsuit in August 2022 attempting to prevent OJJ from opening and operating the temporary secure care facility and TTU on the LSP campus. (Doc. 1). Plaintiffs allege that detention at "the OJJ site at Angola" posed a risk of harm. (Doc. 96). Plaintiffs

3

specifically request a declaratory judgment that Defendants are violating Plaintiffs' constitutional rights by transferring them to "the OJJ site at Angola" where they will not receive rehabilitative services; and an injunction requiring Defendants to cease plans to transfer Plaintiffs to "the OJJ site at Angola" and to immediately transfer any youth housed there back to one of OJJ's secure care facilities. (Doc. 96 at 39). Plaintiffs' request for relief is limited to BCCY-WF, and they make no reference to any other "adult prison." (Doc. 96 at 39).

Following an evidentiary hearing, the Court denied Plaintiffs' First Motion for Preliminary Injunction. (Doc. 79). BCCY-WF opened in October 2022. BCCY-WF operated as a temporary TTU, which is a program that provides intensified, targeted rehabilitative services and therapies to assist youth who are not responding to OJJ's standard programming. *See* Testimony of Lee Anthony Underwood, Preliminary Injunction Day 4, at 70:10-24. The program is broken up into three phases that occur over several weeks. *Id.* at 95:3-97:17. The goal is to provide high-risk youth with new skills so that they are able to re-integrate into OJJ secure care facilities. *Id.* at 70:15-24.

In July 2023, Plaintiffs filed a Second Motion for Preliminary Injunction. (Doc. 163). In August 2023, the Court issued a Ruling certifying a class. (Doc. 243). Following an evidentiary hearing, the Court granted Plaintiffs' Second Motion, enjoining OJJ from housing youth at BCCY-WF and ordering OJJ to remove all youth from BCCY-WF. (Doc. 267 at 20). Defendants appealed those orders. (Doc. 259).

On September 13, 2023, the Fifth Circuit entered an order staying the Court's Preliminary Injunction. (Doc. 268). Despite the stay and being under no legal obligation to do so, on September 15, 2023, OJJ elected to transfer all youth from BCCY-WF to the juvenile unit of the newly-opened Jackson Parish facility. (Doc. 278 at 3). On October 5, 2023, the Fifth Circuit dissolved the stay. (Doc. 291 at 2).

OJJ currently has no plans to reopen BCCY-WF for housing youth in OJJ custody. *See* Declaration of Kenneth Loftin ("Loftin Dec."), *attached hereto as* Ex. A, at ¶ 5. OJJ has been working to complete construction and renovation work at SCY-Monroe. The renovation of the Cypress Unit at SCY-Monroe is complete, and some youth are being housed there now. The newly-constructed facility at SCY-Monroe is expected to be fully open and operational in the spring of 2024. *See id.* at ¶ 11. The completion of construction and renovations at SCY-Monroe obviates the need for housing youth at BCCY-WF.

In early December 2023, DOC transferred adult women offenders to the reception center at LSP that previously was occupied by BCCY-WF (the "Reception Center") and temporarily used the Reception Center to house these adult women offenders.[2] For the foreseeable future, DOC intends to house only adult inmates at the Reception Center. *See* Declaration of James Leblanc, *attached hereto as* Ex. B, at ¶ 5.

When BCCY-WF closed, OJJ did not establish another TTU elsewhere and currently does not operate a TTU at any facility. *See* Loftin Dec. (Ex. A) at ¶¶ 13, 14. The Jackson Parish juvenile unit is not a TTU. *Id.* at ¶¶ 8, 15. OJJ's TTU will soon be located at the newly-renovated Cypress Unit at SCY-Monroe. *Id.* at ¶ 12.

## LAW AND ARGUMENT

**I.     The Court lacks subject matter jurisdiction because the case is moot.**

Federal Rule of Civil Procedure 12(b)(1) allows defendants to assert by motion a lack of subject matter jurisdiction. A determination that the court lacks subject matter jurisdiction may be made "at any time." Fed. R. Civ. P. 12(h)(3). The doctrine of mootness is a jurisdictional issue. *Brindson v. McAllen Indep. Sch. Dist.,* 863 F.3d 338, 345 (5th Cir. 2017).

---

[2] *See* https://lailluminator.com/2023/12/09/louisiana-teens-convicted-as-adults-force-transfer-of-women-prisoners-to-all-male-angola/ (Dec. 9, 2023).

Article III of the Constitution limits federal court jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2. This case or controversy requirement subsists through all stages of review, not only at the time the complaint is filed. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *see also Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). A matter becomes moot if it "no longer present[s] a case or controversy under Article III, § 2 of the Constitution." *Spencer*, 523 U.S. at 7. To satisfy the case or controversy requirement of Article III, a "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of L.A. v. Lyons*, 461 U.S. 95, 101-02 (1983) (internal quotation marks and citations omitted).

Here, no case or controversy exists because no youth faces the possibility of a transfer to BCCY-WF. This matter is moot, and the Court should dismiss this lawsuit.

**II.    No youth faces the possibility of a transfer to BCCY-WF.**

    *A. OJJ closed BCCY-WF and currently has no plans to reopen it for housing youth. OJJ's newly-renovated SCY-Monroe facility is partially open, and OJJ's newly-constructed SCY-Monroe facility is near completion.*

Plaintiffs cannot show that they have sustained or are immediately in danger of sustaining a direct injury, as required by Article III, because the relief they requested—closure of the temporary secure care facility on the LSP campus—has already occurred. *See Lyons*, 461 U.S. at 102. It is "beyond dispute that a request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined." *Harris v. City of Hous.*, 151 F.3d 186, 189 (5th Cir. 1998).[3] Plaintiffs specifically requested relief in the form of an injunction "requiring

---

[3] Plaintiffs agree that it is "'beyond dispute that a request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined'" and argued same on appeal. *See* Answering Brief of Plaintiffs-Appellees, Doc. 156-1 (Ex. C) at 30 (quoting *Harris*, 151 F.3d at 189).

Defendants to cease plans to transfer Plaintiffs and class members to the OJJ site at Angola, and to immediately . . . transfer Plaintiffs and any class members who have already been moved to the OJJ site at Angola back to one of OJJ's pre-existing secure care or other facilities." (Doc. 96 at 39). Plaintiffs' requests for declaratory and injunctive relief are moot.

On September 15, 2023, OJJ transferred all youth from BCCY-WF. Deputy Secretary Loftin confirmed that OJJ currently has no plans to reopen BCCY-WF for housing youth in OJJ custody. *See* Loftin Dec. (Ex. A) at ¶ 5.

The original need to open BCCY-WF arose in mid-2022 when high-risk youth caused substantial property destruction across multiple OJJ secure care facilities, rendering several facilities uninhabitable and leaving OJJ with no secure location to house these youth. (Doc. 79 at ¶¶ 17-29). Since then, OJJ has been working to complete construction and renovation work on other campuses to ensure secure facilities are available. *Id.* at ¶ 30. SCY-Monroe is one such facility where renovations have been underway. Construction at SCY-Monroe is near completion, and the facility is expected to be fully open and operational soon. *See* Loftin Dec. (Ex. A) at ¶ 11. In fact, one renovated building on the SCY-Monroe campus, the Cypress Unit, is already open and housing youth. *Id.* at ¶ 12.

BCCY-WF is closed, and OJJ has no plans to reopen it for youth housing. The completion and opening of SCY-Monroe obviates the need for housing youth at BCCY-WF. The actions demanded by Plaintiffs—ceasing plans to transfer youth to BCCY-WF and removing all youth from the facility—have now occurred, rendering their request for injunctive relief moot.

> **B. BCCY-WF is not available to house youth because DOC has been using, and intends to use, that facility for adult-only housing.**

To demonstrate that a case or controversy exists, Plaintiffs must show that they are immediately in danger of sustaining a direct injury and that the threat of injury is both real and

immediate, not conjectural or hypothetical. *See Lyons*, 461 U.S. at 102. As discussed above, Plaintiffs cannot show that any immediate danger exists because BCCY-WF is closed and OJJ has no plans to reopen it. But any perceived risk of transfer is also neither real nor immediate.

In early December 2023, DOC transferred eighteen adult women offenders to the Angola Reception Center, which was previously the site of BCCY-WF.[4] Since that time, OJJ could not have reopened BCCY-WF, even if OJJ had planned to do so. While the placement of these adult women offenders at LSP was temporary,[5] DOC Secretary James Leblanc confirmed that, for the foreseeable future, DOC intends to house only adult inmates at the Reception Center. *See* Leblanc Dec. (Ex. B) at ¶ 5.

As such, the Reception Center that OJJ previously utilized for BCCY-WF is not available for OJJ youth housing, and OJJ has no plans to utilize the facility for that purpose. "[A]ny suggestion of relief based on the possibility of transfer back to [BCCY-WF] is too speculative to warrant relief." *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001). There is no youth in OJJ custody who may be transferred to BCCY-WF, and any notion that the threat of transfer remains is nothing more than conjecture by Plaintiffs.

**III.    No youth face the possibility of a future transfer to a TTU at an "adult prison."**

   ***A.  OJJ currently has no TTU.***

At the outset, Plaintiffs should be foreclosed from arguing that the risk of transfer to a TTU at an "adult prison" is a threat of injury that satisfies the Article III case or controversy requirement. The operative complaint, the First Amended Complaint for Injunctive and Declaratory Relief–Class Action (the "Amended Complaint"), specifically requests relief related to "the OJJ site at

---

[4]  *See* https://lailluminator.com/2023/12/09/louisiana-teens-convicted-as-adults-force-transfer-of-women-prisoners-to-all-male-angola/ (Dec. 9, 2023).
[5] *Id.*

8

Angola" (Doc. 96 at 39). It does not pray for any relief related to a facility other than "the OJJ site at Angola." (Doc. 96 at 39). Moreover, Plaintiffs reference a TTU only once, and that is in relation to the OJJ facility at St. Martinville (Doc. 96 at 25). Plaintiffs should not be permitted to expand their pleadings simply because the original relief they requested—closure of BCCY-WF—is now moot.

Despite the fact that the Amended Complaint is specifically limited to claims about BCCY-WF, the Court, in granting Plaintiffs' Motion for Class Certification, tacitly adopted Plaintiffs' proposed class definition, which was broader than the claims in the Amended Complaint. Specifically, Plaintiffs asked the Court to certify a class that included: "[A]ll youth who are now or will be in the custody of OJJ who have been, might be, or will be transferred to the OJJ site (the 'Transitional Treatment Unit' or 'TTU') at Angola or another adult prison. . . ." (Doc. 243 at 8). Plaintiffs cannot expand the scope of the Amended Complaint merely by suggesting an overbroad class.

Regardless, Plaintiffs' claims with respect to risk of transfer to a TTU at an "adult prison" are also moot. The Fifth Circuit has repeatedly held that transfer to another prison renders moot claims for declaratory and injunctive relief relating to conditions of confinement that are specific to that prison. *See, e.g., Herman*, 238 F.3d at 665 (claims for injunctive and declaratory relief due to asbestos exposure were mooted by transfer to another prison); *Cooper v. Sheriff, Lubbock Cnty.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (claims for injunctive relief due to denial of food at previous jail were moot); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) (claims for injunctive relief were mooted by transfer from "retrieve unit" of prison); *see also Pitre v. David Wade Corr. Ctr.*, No. 06-1802, 2008 WL 466160, at *3 (W.D. La. Feb. 14, 2008) (claims for declaratory and injunctive relief were mooted by transfer to another prison).

OJJ voluntarily removed youth from BCCY-WF in September 2023 and transferred those youth to a juvenile unit at Jackson Parish. *See* Doc. 314 at 3. Since the closure of BCCY-WF, OJJ has not had a TTU at any other facility, adult or otherwise. *See* Loftin Dec. (Ex. A) at ¶ 14. Instead, OJJ is working to establish its TTU at the newly-renovated Cypress Unit at SCY-Monroe (a youth facility). *Id.* at ¶ 12. While a portion of the Cypress Unit is already open and some youth are already housed there at this time, the TTU is not yet operational. *Id*. OJJ is in the process of training staff on TTU programming and otherwise preparing the Cypress Unit to operate as a TTU. *Id.*

Jackson Parish is not, and never has been, a TTU. *See id.* at ¶ 15. This Court acknowledged that the conditions of confinement at Jackson Parish are not relevant to the current lawsuit. (Doc. 314 at 12 (citing Doc. 298 at 8)). Because BCCY-WF is closed with no plans to reopen and Jackson Parish is not a TTU, the transfer of youth to Jackson Parish rendered moot Plaintiffs' claims for declaratory and injunctive relief. No youth faces the possibility of being housed in a TTU at an adult prison because no TTU currently exists.

### B. Jackson Parish is not an "adult prison."

Plaintiffs cannot show that they are immediately in danger of sustaining a direct injury and that the threat of injury is both real and immediate, as there is no risk of transfer to a TTU at an "adult prison." *See Lyons*, 461 U.S. at 102. The ruling granting Plaintiffs' Motion for Class Certification defined the class as "all youth who are now or will be in the custody of OJJ who have been, might be, or will be transferred to the OJJ site (the 'Transitional Treatment Unit' or 'TTU') at Angola or another adult prison." *See* Doc. 243 at 8. While Plaintiffs continue to refer to Jackson Parish as an "adult prison," the Court has expressly declined to make that determination. (Doc. 314 at 3, n.4).

Jackson Parish is what federal law refers to as a "collocated facility," a correctional facility that separately houses youth and adults in the same building or complex. *See* Loftin Dec. (Ex. A) at ¶¶ 7-8 (citing 34 U.S.C. § 11103). Even if Jackson Parish was an "adult prison" (and it is not), it is still not a TTU. *Id.* at ¶¶ 8, 15. As evidenced by the declaration of Deputy Secretary Loftin, OJJ has no current plans to house youth at any other collocated facility and no current plans to house youth at any other facility designed to house adult prisoners. *Id.* at ¶¶ 5-6, 10. Thus, no youth face the possibility of a transfer to a TTU at an "adult prison." Any claims regarding risk of transfer to a TTU at an "adult prison" are moot.

## **CONCLUSION**

This matter is moot because it no longer presents a case or controversy under Article III of the Constitution. Specifically, no youth face the possibility of transfer to BCCY-WF or to a TTU at an adult prison. OJJ closed BCCY-WF and currently has no plans to reopen it for housing youth. The newly-renovated Cypress Unit is open and the newly-constructed SCY-Monroe facility will soon open, obviating the need to house youth at BCCY-WF. Further, BCCY-WF is not available to house youth because DOC intends to use that facility for adult housing only. OJJ currently has no TTU, and Jackson Parish is neither a TTU nor an "adult prison"—let alone a TTU at an "adult prison."

Plaintiffs' requests for declaratory and injunctive relief are now moot, and the Court should dismiss this lawsuit for lack of subject matter jurisdiction due to mootness.

Dated: February 23, 2024.

                        Respectfully submitted:

BY:   */s/ Madaline King Rabalais*
       Connell Archey (#20086)
       Randal J. Robert (#21840)
       Allena McCain (#38830)

11

Madaline King Rabalais (#38301)
BUTLER SNOW LLP
445 North Boulevard, Suite 300 (70802)
P.O. Box 2997
Baton Rouge, LA  70821-2997
Telephone:     (225) 325-8700
Facsimile:      (225) 325-8800
Connell.Archey@butlersnow.com
Randy.Robert@butlersnow.com
Allena.McCain@butlersnow.com
Madaline.Rabalais@butlersnow.com

Kyle V. Miller (pro hac vice)
Lemuel E. Montgomery III (pro hac vice)
Anna Morris (pro hac vice)
Carly Chinn (pro hac vice)
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone:     (601) 948-5711
Facsimile:      (601) 985-4500
Kyle.Miller@butlersnow.com
Lem.Montgomery@butlersnow.com
Anna.Morris@butlersnow.com
Carly.Chinn@butlersnow.com

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this day been filed electronically with the Clerk of Court using the CM/ECF system, which will deliver notice of this filing to all counsel of record.

This 23rd day of February, 2024.

*/s/ Madaline King Rabalais*

86093335.v2