No. 23-30634

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

MOLLY SMITH, individually and on behalf of all others similarly situated, real party in interest ALEX A.; KENIONE ROGERS, individually and on behalf of all others similarly situated, real party in interest, CHARLES C.,

*Plaintiffs-Appellees*

v.

JOHN BEL EDWARDS, Governor; in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice; JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Middle District of Louisiana

---

## ANSWERING BRIEF OF PLAINTIFFS-APPELLEES

---

David J. Utter, La. 23236
THE CLAIBORNE FIRM, P.C.
410 E. Bay St.
Savannah, GA 31401
(912) 236-9559
david@claibornefirm.com

Nancy Rosenbloom, NY 2168425
ACLU National Prison Project
125 Broad St.
New York, NY 10004
(202) 393-4930
nrosenbloom@aclu.org

*ATTORNEYS FOR PLAINTIFFS-APPELLEES*
*[Additional Counsel Listed on Signature Page]*

**EXHIBIT C**

## CERTIFICATE OF INTERESTED PARTIES

Molly Smith, *real party in interest*, Alex A., *et al*.,[1]
    Plaintiffs-Appellees
v.
Gov. John Bel Edwards, *in his official capacity as Governor of Louisiana*, *et al*.,
    Defendants-Appellants

The undersigned counsel of record certifies that the following listed persons or entities described in Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    MOLLY SMITH, on behalf of Alex A., Plaintiff-Appellee;[2]

2.    KENIONE ROGERS, on behalf of Charles C., Plaintiff-Appellee;

3.    JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana, Defendant-Appellant;

4.    OTHA "CURTIS" NELSON, JR., in his official capacity as Deputy Secretary of the Louisiana Office of Juvenile Justice, Defendant-Appellant;

5.    JAMES LeBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections, Defendant-Appellant;

6.    Attorneys for Plaintiffs-Appellees in this appeal or in the district court case: Nora Ahmed of the American Civil Liberties Union (ACLU) Foundation of

---

[1] Named Plaintiff Brian B. is deceased and no longer a named plaintiff. ROA.2146.
[2] Named Plaintiffs Alex. A. and Charles C., as minors, proceed through pseudonym via next friends. *See* Fed. R. Civ. P. Rule 17(c)(2).

Louisiana; Russell Barksdale of Barksdale Law, L.L.C., New Orleans; Ashley Dalton, Susan Meyers, and Lauren Winkler of the Southern Poverty Law Center, New Orleans; Marisol Dominguez-Ruiz, Tammie Gregg, Corene Kendrick, and Nancy Rosenbloom of the ACLU National Prison Project (San Francisco, Washington D.C., and New York offices); Sara Godchaux and Hector Linares, Loyola University New Orleans College of Law; Ronald Haley, Jr. of Haley & Associates, Baton Rouge; Meghan Matt and Christopher Murell of Murrell Law, New Orleans; David Shanies of Shanies Law, New York; David Utter of Claiborne Firm / Fair Fight Initiative, Savannah, GA; and,

7.      Attorneys for Defendants-Appellants in this appeal and in the district court: Connell Archey, Carly Chinn, Madaline King Rabalais, Allena McCain, Kyle Miller, Lemuel Montgomery III, Anna Morris, of Butler Snow, L.L.P., (Baton Rouge and Ridgeland, MS offices).

Signed the 27th of November, 2023, in Portland, Oregon.

/s/ *Nancy Rosenbloom*
Nancy Rosenbloom
NY Bar # 2168425
*Attorney for Plaintiffs/Appellees*
*Molly Smith, et al.*

ii

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is calendared for December 5, 2023. As detailed at pages 14-17, Defendants-Appellants' appeal will be moot as of December 7, 2023, when the preliminary injunction under appeal expires by operation of controlling federal law. The appeal accordingly should be dismissed.

If this Court were to issue its judgment and mandate on the merits of the appeal prior to the expiration of the injunction on December 7, then the merits present significant questions that justify oral argument on December 5, 2023.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ......................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF AUTHORITIES ................................................................................ vi

INTRODUCTION .................................................................................................1

JURISDICTIONAL STATEMENT .......................................................................2

STATEMENT OF ISSUES ...................................................................................3

STATEMENT OF THE CASE...............................................................................4

    1. Defendants' Responsibility to Rehabilitate Delinquent Youth....................4

    2. Defendants' Plan to Incarcerate Children at Angola ..................................4

    3. The Complaint and 2022 PI Motion...........................................................5

    4. October 2022-July 2023: Children are Incarcerated at Angola..................8

    5. The July 2023 PI Motion and September 2023 PI .....................................9

SUMMARY OF ARGUMENT ............................................................................12

STANDARD OF REVIEW .................................................................................13

ARGUMENT .......................................................................................................14

I.    Defendants' Appeal is Moot and Should Be Dismissed................................14

    A.The Appeal Is Moot, as Defendants Complied With the Injunction..........15

    B.The PI Expires as a Matter of Law on December 7, 2023. .......................16

II.   The District Court Did Not Abuse Its Discretion in Finding Plaintiffs
    Demonstrated a Likelihood of Success on their Claims................................17

    A.Plaintiffs Showed a Likelihood of Success on Constitutional Claims.......18

       1.  Solitary Confinement ........................................................................22

       2.  Confinement in Adult Prison .............................................................24

       3.  Unreasonable and Excessive Use of Chemical Spray .......................25

       4.  Unreasonable and Excessive Use of Restraints .................................27

       5.  Unreasonable and Punitive Denial of Family Visits...........................28

    B.Plaintiffs Showed a Likelihood of Success on Disability Claims..............29

    C.The PI Complies with the Prison Litigation Reform Act...........................32

       1.  Alex Met PLRA Exhaustion Requirements Before Filing Suit..........32

2.   Plaintiffs Do Not Have to Exhaust Anew Before Moving for a PI. ...38

3.   The PI Is Not a Prisoner Release Order. .............................................43

4.   The PI Is the Least Intrusive Means to Correct the Harm .................44

III.   The District Court Did Not Abuse its Discretion to Find the Other Injunctive Factors Weigh in Plaintiffs' Favor..........................................................45

A. The District Court Properly Exercised its Discretion in Finding a Likelihood of Irreparable Harm to Plaintiff Children ...............................46

B. The District Court Properly Exercised its Discretion in Finding the Balance of Interests and the Public Interest Favor Relief. .........................48

CONCLUSION .........................................................................................................50

CERTIFICATE OF COMPLIANCE.......................................................................52

CERTIFICATE OF SERVICE ................................................................................53

# TABLE OF AUTHORITIES

**Cases**

*A.M. v. Luzerne Cnty. Juv. Det. Ctr.*,
 372 F.3d 572 (3rd Cir. 2004) ...............................................................18

*Ahlman v. Barnes*,
 20 F.4th 489 (9th Cir. 2021), *cert. denied*, 142 S.Ct. 2755 (2022).....................17

*Alexander S. v. Boyd*,
 876 F.Supp. 773 (D.S.C. 1995)................................................... 26, 27

*Armstrong v. Schwarzenegger*,
 622 F.3d 1058 (9th Cir. 2010)...............................................................44

*Ball v. LeBlanc*,
 792 F.3d 584 (5th Cir. 2015)...............................................................14

*Baxley v. Jividen*,
 No. CV 3:18-1436, 2020 WL 1802935 (S.D. W.Va. Apr. 8, 2020)....................40

*Bell v. Wolfish*,
 441 U.S. 520 (1979) ...............................................................18

*Bennett-Nelson v. La. Bd. of Regents*,
 431 F.3d 448 (5th Cir. 2005)...............................................................31

*Brown v. Plata*,
 563 U.S. 493 (2011) ................................................... 38, 44, 49

*Canal Barge Co. v. Torco Oil Co.*,
 220 F.3d 370 (5th Cir. 2000)...............................................................14

*Cantwell v. Stirling*,
 788 F.3d 507 (5th Cir. 2015)................................................... 32, 33

*City of Revere v. Mass. Gen. Hosp.*,
 463 U.S. 239 (1983) ...............................................................18

*Cooper v. Harris,*
    581 U.S. 285 (2017) ..................................................................14

*Cupit v. Jones,*
    835 F.2d 82 (5th Cir. 1987)....................................................47

*D.B. v. Tewksbury,*
    545 F. Supp. 896 (D. Ore. 1982) .................................... 25, 29

*Def. Distrib. v. U.S. Dep't of State,*
    838 F.3d 451 (5th Cir. 2014)....................................................48

*Dixon v. Toyota Motor Credit Corp.,*
    794 F.3d 507 (5th Cir. 2015)......................................................3

*Doe v. Hommrich,*
    No. 3-16-0799, 2017 WL 1091864 (M.D. Tenn. Mar. 22, 2017)................. 22-23

*Dupree v. Younger,*
    598 U.S. 729 (2023) ....................................................................2

*E.L. ex rel. Paykina v. Lewin,*
    387 F.Supp.3d 225 (N.D.N.Y. 2019) ...................................48

*Elrod v. Burns,*
    427 U.S. 347 (1976) ................................................................48

*Farmer v. Brennan,*
    511 U.S. 825 (1994) ...................................................... *passim*

*Frame v. City of Arlington,*
    657 F.3d 215 (5th Cir. 2011)..................................................29

*Garner v. Kennedy,*
    713 F.3d 237 (5th Cir. 2013)..................................................27

*Gary H. v. Hegstrom,*
    831 F.2d 1430 (9th Cir. 1987)................................................18

*Gates v. Cook*,
376 F.3d 323 (5th Cir. 2004).................................................................. 19, 20, 34

*Gilmore v. California*,
220 F.3d 987 (9th Cir. 2000).................................................................43

*Goebert v. Lee Cnty.*,
510 F.3d 1312 (11th Cir. 2007)..............................................................35

*Goldin v. Bartholow*,
166 F.3d 710 (5th Cir. 1999)..................................................................14

*Graham v. Florida*,
560 U.S. 48 (2010) ................................................................... 21, 23, 26

*Gross v. Unknown Director of Bureau of Prisons*,
No. CIV.A. 708-111-KKC, 2008 WL 2280094 (E.D. Ky. May 30, 2008) ........38

*H.C. v. Jarrard*,
786 F.2d 1080 (11th Cir. 1986)..............................................................22

*Hale v. King*,
642 F.3d 492 (5th Cir. 2011)..................................................................29

*Hall v. Florida*,
572 U.S. 701 (2014) ............................................................................21

*Harris v. Angelina Cnty., Tex.*,
31 F.3d 331 (5th Cir. 1994)........................................................ 20, 25, 42

*Harris v. City of Houston*,
151 F.3d 186 (5th Cir. 1998)..................................................................15

*Helling v. McKinney*,
509 U.S. 25, (1993) ...................................................................... 19, 38

*Huskey v. Jones*,
45 F.4th 827 (5th Cir. 2022)..................................................................35

*J.H. v. Edwards*,
  No. CV 20-293-JWD-EWD, 2020 WL 3448087
  (M.D. La. June 24, 2020) ....................................................................34

*J.H. v. Williamson Cnty., Tenn.*,
  951 F.3d 709 (6th Cir. 2020)..............................................................22

*Janvey v. Alguire*,
  647 F.3d 585 (5th Cir. 2011)................................................. 14, 45, 49

*Jimerson v. Rheams*,
  No. CV 21-119-JWD-EWD, 2021 WL 2005492
  (M.D. La. Apr. 15, 2021), *report and recommendation adopted*,
  No. CV 21-119-JWD-EWD, 2021 WL 2006294 (M.D. La. May 19, 2021).......40

*Jensen v. Thornell*,
  No. 12-cv-00601, 2023 WL 2838040 (D. Ariz. Apr. 7, 2023) ...........................22

*Jones 'El v. Berge*,
  164 F.Supp.2d 1096 (W.D. Wisc. 2001)...........................................45

*Jones 'El v. Berge*,
  172 F.Supp.2d 1128 (W.D. Wis. 2001) .............................................40

*Jones v. Bock*,
  549 U.S. 199 (2007) ................................................... 32, 33, 42

*Jones v. Gusman*,
  296 F.R.D. 416 (E.D. La. 2013).......................................................44

*Jones v. United States*,
  529 U.S. 848 (2000) ............................................................ 38, 44

*Kingsley v. Hendrickson*,
  576 U.S. 389 (2015) ............................................................. 26, 27

*Lewis v. Cain*,
  No. CV 15-318-SDD-RLB, 2023 WL 7299130
  (M.D. La. Nov. 6, 2023)..................................................................30

*Life Partners, Inc. v. Life Ins. Co. of N. Am.*,
   203 F.3d 324 (5th Cir. 1999).................................................................15

*Lynott v. Henderson*,
   610 F.2d 340 (5th Cir. 1980)..................................................................26

*Mayweathers v. Newland*,
   258 F.3d 930 (9th Cir. 2001)..................................................................16

*Microsoft Corp. v. Baker*,
   582 U.S. 23 (2017) ..................................................................................2

*Miller v. Eichenlaub*,
   No. 07-CV-10177, 2008 WL 3833715 (E.D. Mich. Aug. 13, 2008)..................38

*Milonas v. Williams*,
   691 F.2d 931 (10th Cir. 1982).................................................................22

*Montgomery v. Louisiana*,
   577 U.S. 190 (2016)................................................................................18

*Morales v. Turman*,
   364 F.Supp.166 (E.D. Tex. 1973) ..........................................................26

*Morales v. Turman*,
   562 F.2d 993 (5th Cir. 1977)........................................................... 18, 45

*Moussazadeh v. Texas Dep't of Crim. Just.*,
   703 F.3d 781 (5th Cir. 2012), *as corrected* (Feb. 20, 2013)........................ 39, 42

*Nelson v. Heyne*,
   491 F.2d 352 (7th Cir. 1974)..................................................................18

*Norbert v. City & Cnty. of San Fran.*,
   10 F.4th 918 (9th Cir. 2021)...................................................................17

*Nutraceutical Corp. v. Lambert*,
   586 U.S. --, 139 S.Ct. 710 (2019) ...........................................................2

*Pasion v. McGrew*,
    No. 10-00443 HG-LEK, 2010 WL 3184518 (D. Haw. Aug. 11, 2010) ............37

*Plata v. Brown*,
    427 F.Supp.3d 1211 (N.D. Cal. 2013) ................................................... 43, 44, 45

*Powe v. Ennis*,
    177 F.3d 393 (5th Cir. 1999)...............................................................................36

*Procter & Gamble Co. v. Amway Corp.*,
    376 F.3d 496 (5th Cir. 2004)......................................................................... 3, 37

*Quilloin v. Walcott*,
    434 U.S. 246 (1978)............................................................................................29

*Reaves v. Dep't of Corrs.*,
    404 F.Supp.3d 520 (D. Mass. 2019) ...................................................... 43, 44, 45

*Rhodes v. Chapman*,
    452 U.S. 337 (1981)............................................................................................19

*Richardson-Merrell, Inc. v. Koller*,
    472 U.S. 424 (1985)........................................................................................ 2-3

*Roper v. Simmons*,
    543 U.S. 551 (2005)............................................................................................21

*Ross v. Blake*,
    578 U.S. 632 (2016)........................................................................... 35, 36, 37

*Ross v. Cnty. of Bernalillo*,
    365 F.3d 1181 (10th Cir. 2004)..........................................................................37

*Santana v. Collazo*,
    714 F.2d 1172 (1st Cir. 1983) ............................................................................18

*Scott v. Hansen*,
    330 F.App'x 490 (5th Cir. 2009) .......................................................................26

*Shifflett v. Korszniak*,
   934 F.3d 356 (3d Cir. 2019)...............................................................36

*Skyline Corp. v. N.L.R.B.*,
   613 F.2d 1328 (5th Cir. 1980)............................................................35

*Sossamon v. Lone Star State of Tex.*,
   560 F.3d 316 (5th Cir. 2009)...................................................... 13, 16

*Staley v. Harris Cnty., Tex.*,
   485 F.3d 305 (5th Cir. 2007).............................................................15

*Steel Co. v. Citizens for a Better Env.*,
   523 U.S. 83 (1998) ............................................................... 14-15, 17

*Swint v. Chambers Cnty. Comm'n*,
   514 U.S. 35 (1995) ..............................................................................2

*Tellis v. LeBlanc*,
   No. CV 18-541, 2022 WL 67572 (W.D. La. Jan. 6, 2022)................30

*Thomas v. Bryant*,
   614 F.3d 1288 (11th Cir. 2010)........................................................26

*Thomas v. Comstock*,
   222 F.App'x 439 (5th Cir. 2007) .....................................................26

*Tolliver v. Collins*,
   No. 2:08-cv-00722, 2010 WL 2640061 (S.D. Ohio Apr. 29, 2010),
   *report and recommendation adopted*, No. 2:08-cv-00722,
   2010 WL 2630091 (S.D. Ohio June 29, 2010) ................................40

*Topletz v. Skinner*,
   7 F.4th 284 (5th Cir. 2021)...............................................................14

*Tugg v. Towey*,
   864 F.Supp. 1201 (S.D. Fla. 1994) ..................................................47

*Ueckert v. Guerra*,
   38 F.4th 446 (5th Cir. 2022)............................................................16

*United States v. Sec'y, Fla. Dep't of Corrs.*,
    778 F.3d 1223 (11th Cir. 2015)................................................................17

*V.W. ex rel. Williams v. Conway*,
    236 F.Supp.3d 554 (N.D.N.Y. 2017) ....................................................48

*Van Velzor v. City of Burleson*,
    43 F.Supp.3d 746 (N.D. Tex. 2014)......................................................31

*Victory v. Berks Cnty.*,
    789 F.App'x 328 (3d Cir. 2019)............................................................17

*Wilkerson v. Stalder*,
    639 F.Supp.2d 654 (M.D. La. 2007) ....................................................19

*William v. Sec'y Penn. Dep't of Corrs.*,
    848 F.3d 549 (3d Cir. 2017)..................................................................48

*Williams v. McKeithen*,
    121 F.Supp.2d 943 (M.D. La. 2000) ............................................... 27-28

*Wilson v. Seiter*,
    501 U.S. 294 (1991) .............................................................................19

*Windham v. Harris Cnty.*,
    875 F.3d 229 (5th Cir. 2017).......................................................... 30, 31

*Yankton v. Epps*,
    652 F.App'x 242 (5th Cir. 2016) ..........................................................39

*Yates v. Collier*,
    677 F.App'x 915 (5th Cir. 2017) ..........................................................17

*Youngberg v. Romeo*,
    457 U.S. 307 (1982) ...................................................................... 18, 27

## Statutes

18 U.S.C. § 3626(a)(2) ............................................................ 1, 16

18 U.S.C. § 3626(a)(3)(E) ............................................................ 43

28 C.F.R. § 35.130(a) ............................................................ 30

28 C.F.R. § 35.130(b) ............................................................ 30

28 C.F.R. § 35.130(b)(3) ............................................................ 31

28 U.S.C. § 1291 ............................................................ 2

28 U.S.C. § 1292 ............................................................ 2

28 U.S.C. § 1292(a)(1) ............................................................ 2

42 U.S.C. § 12102(2)(A) ............................................................ 30

42 U.S.C. § 12132 ............................................................ 29, 31

42 U.S.C. § 1997e(a) ............................................................ 32, 39

La. Rev. Stat. § 15:905(A) ............................................................ 4

La. Rev. Stat. § 15:905(F)(1) ............................................................ 10

La. Rev. Stat. § 15:906(B) ............................................................ 4, 18

## Rules

Federal Rule of Civil Procedure 23(f) ............................................................ 2

## Other Authorities

141 Cong. Rec. S14414 (daily ed. Sept. 27, 1995) ............................................................ 43

# INTRODUCTION

On September 8, 2023, after seven days of hearings, the Middle District of Louisiana ("the court") issued a preliminary injunction ("PI") on behalf of Plaintiffs-Appellees ("Plaintiffs"), a class of children adjudicated delinquent who are in the custody of the Louisiana Office of Juvenile Justice ("OJJ") for rehabilitative purposes. The order directed Defendants-Appellants ("Defendants") to transfer all youth held at the former Death Row unit at Louisiana State Penitentiary ("Angola") to other OJJ facilities by September 15, 2023, and enjoined Defendants from incarcerating children at Angola. ROA.5360.[1]

Fatal to Defendants' appeal is that the PI at issue—with which they fully complied, and for which this Court denied a stay, Dkt. 121-1—expires on December 7, 2023, under the plain language of the 90-day expiration rule of the Prison Litigation Reform Act ("PLRA"). 18 U.S.C. § 3626(a)(2). This is ten days after this brief's filing, and a day and a half after oral arguments scheduled for December 5. The entire appeal will be moot within hours of submission.

On these grounds alone, this Court should dismiss the appeal. But if the Court were to issue an opinion and mandate before December 7, the court's ruling should be affirmed. Nothing in the PI is an abuse of discretion, nor do its detailed factual findings contain clear error. Indeed, the court weighed voluminous evidence, made

---

[1] Defendants call the facility "Bridge City Center for Youth – West Feliciana" or "BCCY."

credibility determinations, and fashioned an appropriate remedy—transfer youth from Angola to a secure OJJ facility—that should be affirmed.

## JURISDICTIONAL STATEMENT

As detailed at pages 14-17, this Court has jurisdiction to review the PI only until December 7, 2023, when mootness vitiates its jurisdiction.

The other five issues noticed for appeal are not within the Court's jurisdiction.

First, 28 U.S.C. § 1292(a)(1) does not extend jurisdiction to an interlocutory appeal of class certification when Defendants did not seek, nor receive, permission to appeal under Federal Rule of Civil Procedure 23(f). Review of that order is thus foreclosed, as "the federal rules of Appellate Procedure single out Civil Rule 23(f) for inflexible treatment." *Nutraceutical Corp. v. Lambert*, 586 U.S. --, 139 S.Ct. 710, 715 (2019) (per curiam); *see also Microsoft Corp. v. Baker*, 582 U.S. 23, 30-33 (2017) (history of Rule 23(f)). Defendants' failure to abide by Rule 23(f)'s plain language is not salvaged by an invocation of pendent jurisdiction, Dkt. 128 at 2, which is used sparingly and only for the most compelling reasons. *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 45-48, 51 (1995) (per curiam).

Second, this Court has no jurisdiction under 28 U.S.C. §1291 or §1292 to review interlocutory appeals of four evidentiary rulings, as final judgment has not issued. *Dupree v. Younger*, 598 U.S. 729, 733-34 (2023) (per curiam); *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 429-30 (1985) ("[T]he final judgment rule

promotes efficient judicial administration while at the same time emphasizing the deference appellate courts owe to the district court's decisions. . .").

More significantly, Defendants made no argument in their opening brief on the merits of the class certification order or the evidentiary rulings. Their failure to do so waived any noticed appeal, and the Court should disregard any argument they may raise in reply as improper and foreclosed. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) (the failure to provide "contentions, facts, legal citations, arguments, or analysis [. . .] constitutes waiver of that argument"); *Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015) ("Arguments raised for the first time in a reply brief are waived.")

## STATEMENT OF ISSUES

1.     Whether the appeal of the PI is moot given Defendants fully complied with it, and given the PI will expire on December 7, 2023, under the PLRA's 90-day limit, less than two days after the appeal is submitted.

2.     Whether the district court abused its discretion when it weighed voluminous evidence to find Plaintiffs established a likelihood of prevailing on their Eighth and Fourteenth Amendment claims.

3.     Whether the district court abused its discretion when it weighed voluminous evidence to find Plaintiffs established a likelihood of prevailing on their Americans with Disabilities Act ("ADA") and Rehabilitation Act claims.

3

4.     Whether the district court committed clear error in its factual findings or abused its discretion when it found Plaintiffs are substantially likely to suffer irreparable harm and determined that the balance of interests between the parties and the public warranted issuance of the PI.

## STATEMENT OF THE CASE

### 1. Defendants' Responsibility to Rehabilitate Delinquent Youth

Defendants are legally responsible for the care and rehabilitation of all youth in Louisiana adjudicated delinquent in civil proceedings in juvenile court who are remanded to OJJ's physical custody. ROA.1018; La. Rev. Stat. § 15:905(A). Unlike adult prisoners (or minors convicted as adults), youth in OJJ's custody are not there for punishment; the purpose is solely rehabilitative. ROA.1035, 5915-17, 6209-12, 6297; La. Rev. Stat. § 15:906(B). In 2022, OJJ operated five "secure care" facilities, holding more than 300 youth at any given time. ROA.6364.

### 2. Defendants' Plan to Incarcerate Children at Angola

On July 19, 2022, Defendant Governor Edwards announced the State's intent to transfer some children in OJJ's custody to a decommissioned Death Row building at Angola. ROA.70. Named Plaintiff Alex is a child adjudicated delinquent who was age 17 and in secure care at OJJ's Bridge City facility at that time. ROA.49. He has disabilities as defined by the ADA and has received disability accommodations in school since the fourth grade. ROA.50, 5827. OJJ staff told him and other youth at

his facility in August 2022 that they would all be sent imminently to Angola. ROA.113-17. OJJ also gave him a form indicating he would be sent there emergently. ROA.8670-71. Based on these statements, Alex believed he would be sent to Angola by August 22, 2022. ROA.464. He filed an emergency grievance (called an "ARP" by OJJ) on August 16, 2022, challenging the policy, citing concerns for his physical and mental health, and his fear of imminent harm from incarceration in an adult prison without required education and rehabilitative services. *Id*. On August 18, 2022, OJJ denied his grievance, stating he was "not subject to any immediate risk of harm." ROA.471.[2]

### 3. The Complaint and 2022 PI Motion

On August 19, 2022, Alex filed a class-action complaint on behalf of himself and a putative class of all youth in OJJ's secure care subject to transfer to Angola or another adult prison or jail. ROA.55. He moved for a temporary restraining order ("TRO") and PI that day, seeking to prevent placement of youth at Angola. ROA.64-245. After Defendants stipulated they would not move children to Angola until on or after September 15, 2022, the court denied the TRO and set a PI hearing for September 6, 2022. ROA.261-62, 1010.

Juvenile justice expert Vincent Schiraldi (now Secretary of the Maryland Department of Juvenile Services), ROA.327-51, and Tulane University child

---

[2] *See infra* Part II.C.1-2 regarding exhaustion of the emergency grievance.

psychologist Dr. Monica Stevens, ROA.789-806, provided expert testimony in support of the 2022 PI motion. ROA.1014, 1016, 5874-5953, 6204-6345.

Mr. Schiraldi toured the planned facility, and took numerous photos and videos admitted into evidence. They showed children would enter by passing through marked gates of Angola prison, and the OJJ unit is surrounded by high fencing and coiled razor wire. ROA.8779-80, 8874-82, 8984. Mr. Schiraldi's unrefuted expert opinion was the physical space does not meet professional standards for juvenile facilities; is not likely to ensure the safety and wellbeing of youth; and is an adult correctional model not designed for normalization and rehabilitation that would endanger the safety and well-being of youth. ROA.1054, 6209-12, 6215, 6242-52. The only visitation spaces were non-contact, with mesh screens for family or attorneys on one side and youth on the other. ROA.6255-57, 8941, 9038-41. Angola had no gym, library, or indoor recreation area for children; the outdoor space was a half basketball court with one hoop; no fields or area to run or get large muscle exercise. ROA.6242, 6253-54, 6257, 6285.

Cells where youth were incarcerated were substantially unchanged from when the unit was used for Death Row, as shown below: single cells with sliding barred doors that lock from the outside, no window, concrete floors and walls, metal toilet/sink, and size typical of an adult maximum-security unit:



ROA.8858; *see also* ROA.8860-64, 8892.

To Mr. Schiraldi's knowledge, no state in recent decades has incarcerated youth adjudicated delinquent on the grounds of an adult prison. ROA.6281-82, 6306-07. His unrebutted opinion was that Angola carried an increased risk of suicide and of solitary confinement used as punishment for inordinate periods of time, which could lead to inadequate programming and schooling. ROA.6212, 6214-15, 6249, 6260-65. Professional and correctional standards require juvenile facilities to employ behavior management techniques without using isolation, chemical sprays, or handcuffs and shackles. ROA.6265, 6272-74, 6332-33.

Dr. Stevens testified to the risk of neurological regression and other psychological harm to youth sent to Angola; Alex and others had already experienced significant "anticipatory" stress, and he had nightmares, insomnia, and such a high level of anxiety about being at Angola that he was pulling out his hair. ROA.5835, 5868, 5887-90. Defendants offered no evidence or expert testimony to refute Plaintiffs' experts.

Finally, on July 25, 2022, the U.S. Department of Justice's Office of Juvenile Justice and Delinquency Prevention contacted Defendants to offer technical assistance so that Defendants could avoid using Angola and causing the predicted harm to the children. ROA.9020-21. There is no evidence Defendants ever acknowledged this offer of help, let alone accepted it.

**4. October 2022-July 2023: Children are Incarcerated at Angola**

On September 23, 2022, despite finding on the uncontroverted evidence that it was "untenable" to lock up youth at Angola, the court denied the motion based on OJJ's promises to "not violate the constitutional or statutory rights of any youth placed at the Angola facility[,]" to not isolate children in cells except for 8 hours of sleeping time, and to offer "all services required by law" at Angola—which they also promised would be used for a very small number of youth and only temporarily until April 2023, while a new facility was built. ROA.1008, 1023, 1029, 5342, 5359.

Instead, from October 2022 through early September 2023, OJJ sent at least 70 to 80 boys to Angola, some as young as 14, almost all of them Black, and some for more than one placement. ROA.5342, 2653, 3031-35. The vast majority of children had or were regarded as having disabilities, with at one point 11 of 15 youths incarcerated at Angola classified as seriously mentally ill. ROA.7527.[3]

### 5. The July 2023 PI Motion and September 2023 PI

What Plaintiffs feared in 2022—and what the court warned against— happened. Defendants' many promises and assurances went unfulfilled, and alarming reports emerged about the conditions in Angola. ROA.2651-81, 3036-40. On July 17, 2023, Plaintiffs moved for a PI, to enjoin Defendants' policy of incarcerating children at Angola, and to have youth transferred to lawful OJJ facilities. ROA.2149-55, 2601-49. On July 28, 2023, the U.S. Department of Justice filed a Statement of Interest "to draw the Court's attention to relevant case law and research regarding the serious and lasting harms that youth may experience when subjected to the alleged conditions of confinement [at Angola], particularly isolation." ROA.3082-94.

---

[3] On October 25, 2022, Plaintiffs amended the complaint to add more named plaintiffs. ROA.1218-58. On October 31, 2022, they moved for class certification. ROA.1267-70. On August 31, 2023, the court certified a class of "All youth who are now or will be in the custody of OJJ who have been, might be, or will be transferred to the OJJ site (the "Transitional Treatment Unit" or "TTU") at Angola or another adult prison" and a subclass of "all current and future youth with disabilities within the meaning of the ADA and Section 504 of the Rehabilitation Act in the custody of OJJ who have been, might be, or will be transferred to the OJJ site at Angola or another adult prison." ROA.4425, 4438.

Documents and testimonial evidence before the court in August 2023 showed the punitive conditions children at Angola endured. ROA.5489-90, 5678-80, 5683. It included:

- OJJ used, as a matter of course, solitary confinement (euphemistically called "cell restriction" or "room confinement").[4] OJJ also locked children alone in cells from 5:30 pm to 7:50 am each day—over 14 hours per day, and far more than the promised limit of 8 hours to sleep. ROA.5344-46, 5350, 5355-56, 5523, 6582-85, 6598-6600, 6640, 6657-58, 6707, 6732-33, 6735-37, 6744, 6810, 7052-55, 7354, 7356, 7441-43, 7510-13, 7516-17, 7699, 7846-51, 7853-54, 7930, 11173-75, 12026-79.

- OJJ deprived youth of education, and did not provide adequate facilities or adequate, qualified instructors for either general or special education. ROA.5549, 6624, 6674-79, 6681-82, 6685, 6733, 6738, 6911, 6932-35, 6938-39, 6943-48, 6959-62, 7859-61, 7873-75, 8005, 8007-10, 8029-34, 8043, 8045-47, 8053.

- OJJ engaged in extreme and excessive uses of force, using chemical spray, handcuffs, and shackles, and allowed adult prison staff to use chemical spray and tasers on children at Angola. ROA.5498, 5345-48, 6745, 6764, 7064-69, 7072-78, 7117, 7386-87, 7880-84, 9218-22; Video Exhibits P410, P440, P441.

- OJJ did not provide basic mental health, counseling, or rehabilitation services. The sole case manager had no training or licensure in counseling or social work. ROA.5344, 5350, 5354, 5693-94, 6741, 6836-37, 6958, 7150, 7159, 7502-06, 7515, 7703-05. Angola had inadequate remote psychiatric staffing and no psychiatrist on site. ROA.5515-16, 7505-06. A child who expressed suicidal ideation received no mental health care. ROA.6619. He was instead placed in isolation in a locked cell for at least 14 days. ROA.6761-63, 7060, 7443-45, 7447-54, 7461-63, 7549-51.

---

[4] Defendants use "room confinement" or "cell restriction" to refer to isolating youth alone in cells during non-sleeping hours. Whatever the label, the conditions are the same. Louisiana law severely restricting the use of solitary confinement for children in OJJ custody defines it as "any behavioral intervention, *seclusion, isolation, room isolation, segregation, administrative segregation, or room confinement.*" La. Rev. Stat. § 15:905(F)(1) (emphasis added).

- Only two family visits occurred in the ten months that more than 80 children were incarcerated at Angola. ROA.6738. Family visits were canceled as punishment. ROA.7711-12.

On September 8, 2023, the court issued a PI from the bench, finding Plaintiffs established a likelihood of success on their constitutional and statutory claims. ROA.8071 ("[T]he conditions of confinement of the youth incarcerated at Angola constitute cruel and unusual punishment and the punitive atmosphere and the systemic programming failures violate the Fourteenth Amendment"); ROA.8089 (federal disability statutes). It found Plaintiffs showed a likelihood of irreparable harm, and the balance of harms and public interest favored preliminary injunctive relief. ROA.8089-91. The court ordered OJJ to transfer youth at Angola to other secure facilities by September 15 and enjoined Defendants from transferring any youth to Angola. ROA.8092.[5]

After noticing appeal of the bench ruling, Defendants sought an emergency stay, first with the district court and then this Court. ROA.4503-06, Dkt. 5-1. This Court issued an administrative stay to allow briefing on the emergency stay motion. Dkt. 15-2. Despite the administrative stay, Defendants told the Court on September 15 —while their stay motion was still pending—that they had fully complied with the PI and had moved all children to other facilities. Dkt. 37. On October 5, 2023, this Court denied the stay motion. Dkt. 121-1.

---

[5] The court's written order was filed on the docket on September 14, 2023. ROA.5341-60.

## SUMMARY OF ARGUMENT

This Court should dismiss the appeal as moot or, alternatively, affirm the PI for the following reasons:

1.      **The appeal is moot**. The PLRA limits preliminary injunctive relief to 90 days, unless a district court makes factual findings that the circumstances that gave rise to it warrant its renewal or finalization. The lower court cannot make such additional findings, as Defendants fully complied and moved children from Angola. The PI expires on December 7, 2023. Neither party has any legal obligation arising from an expired injunction, and any opinion this Court issues will be advisory.

2.      **Defendants cannot show the court abused its discretion to find Plaintiffs showed a likelihood of success on constitutional claims**. The court considered a voluminous record, weighed the evidence, and applied the correct legal standard. Defendants cannot show its factual findings were clearly erroneous.

3.      **Defendants cannot show the court abused its discretion to find Plaintiffs showed a likelihood of success on disability claims**. The court considered a voluminous record, weighed the evidence, and applied the correct legal standard. Defendants cannot show its factual findings were clearly erroneous.

4.      **The PLRA does not bar the injunction**. First, Alex exhausted administrative remedies before suing, as required: he followed OJJ's emergency grievance process and pursued it until officials stopped him from going further.

Second, Defendants' baseless theory that once incarcerated people exhaust before suing, they must then re-exhaust anew each time they file a motion in existing litigation, would cause chaos and require this Court to disregard controlling precedent. Finally, the PI is not a prisoner release order nor an overbroad intrusion into prison operations, contrary to Defendants' unsupported assertions.

5. **The equities strongly favor Plaintiffs**. Plaintiffs faced grave, irreparable injury from ongoing exposure to Angola's conditions. Defendants assert no irreparable injury to themselves from an injunction except a speculative risk of harm to employees, other youth, or the public at large if children are not locked up at Angola. But this is incorrect on the law and the facts: Supreme Court precedent holds that conclusory speculation of public safety risks cannot defeat enforcement of incarcerated persons' constitutional rights; OJJ operated for decades without incarcerating children at Angola; and Defendants testified that they would not use the unit past the end of 2023 because a new secure juvenile facility will be open.

## STANDARD OF REVIEW

This Court "review[s] *de novo* matters of justiciability, such as mootness, that affect [its] jurisdiction to hear a case." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 324 (5th Cir. 2009).

To the extent this Court reviews the merits of the PI, its review is deferential. The Court reviews injunctions "for abuse of discretion, with any underlying legal

determinations reviewed *de novo* and factual findings for clear error." *Topletz v. Skinner*, 7 F.4th 284, 293 (5th Cir. 2021). A lower court's weighing of the "balance of harms" and consideration of the public interest are reviewed for an abuse of discretion. *Janvey v. Alguire*, 647 F.3d 585, 601 (5th Cir. 2011). Findings of fact "are subject to review only for clear error." *Cooper v. Harris*, 581 U.S. 285, 293 (2017). "Under that standard, [the reviewing court] may not reverse just because [it] would have decided the [matter] differently. A finding that is plausible in light of the full record—even if another is equally or more so—must govern." *Id.* (third alteration in original) (quotation marks and citation omitted); *see also Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000) (this Court "cannot second guess the district court's decision to believe one witness' testimony over another's or to discount a witness' testimony.") (citation omitted). Finally, the clear error standard also applies to fact questions related to the risk posed by prison conditions. *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015).

## ARGUMENT

### I.    Defendants' Appeal is Moot and Should Be Dismissed.

Defendants' appeal is moot, and this Court should dismiss it. If the Court lacks jurisdiction, it cannot review the merits. *Goldin v. Bartholow*, 166 F.3d 710, 714 (5th Cir. 1999) (the Court is "obligated to address issues of jurisdiction, including mootness, prior to addressing the merits of an appeal."); *see also Steel Co. v. Citizens*

*for a Better Env.*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception.") (quotation marks and citation omitted).

### A. The Appeal Is Moot, as Defendants Complied With the Injunction.

Defendants fully complied with the PI. They have not incarcerated any child at Angola since September 15, when they moved youth from Angola, despite the pending motion to this Court to stay the order. Dkt. 37. They have not re-incarcerated children in Angola since September 15, in full compliance with the order.

This Court must dismiss an appeal as moot where the action mandated by the order under appeal occurred, because "we find it beyond dispute that a request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined." *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998); *see Staley v. Harris Cnty., Tex.*, 485 F.3d 305, 308-09 (5th Cir. 2007) (en banc) (finding that county's compliance with an injunction days before *en banc* argument rendered its appeal moot); *see also Life Partners, Inc. v. Life Ins. Co. of N. Am.*, 203 F.3d 324, 325 (5th Cir. 1999) (per curiam) (holding an appeal moot when appellant complied with the order, so "there is no live case or controversy with respect to the validity of the [order] on which we or the district court can pass judgment: Federal courts do not render advisory opinions.") (citations omitted).

## B. The PI Expires as a Matter of Law on December 7, 2023.

A preliminary injunction on carceral conditions "shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period." 18 U.S.C. § 3626(a)(2). The court issued the PI on September 8, 2023; it "shall automatically expire" on December 7, 2023.[6]

The court did not make the PI final nor extend it another 90 days, and Plaintiffs have not sought to extend it. To extend the PI, Plaintiffs must show the circumstances giving rise to it still exist. *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001) (detailing the factual basis needed to extend a prison injunction). Since OJJ complied with the PI and moved youth out of Angola, circumstances have changed. Defendants also assert they will not use Angola in the future, ROA.5615, an assertion presumed truthful. *See Sossamon*, 560 F.3d at 325 ("[G]overnment actors … in the exercise of their official duties are accorded a presumption of good faith because they are public servants . . . . Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing.").

---

[6] The court's issuance of the injunction from the bench on September 8 was the operative starting date, and not September 14, 2023 when the written form of the order was entered on the court docket. *See Ueckert v. Guerra*, 38 F.4th 446, 449-52 (5th Cir. 2022). Indeed, Defendants entered a notice of appeal from the September 8, 2023 bench order.

In *Yates v. Collier*, 677 F.App'x 915, 918 (5th Cir. 2017) (per curiam), the Court found Texas' appeal of a preliminary injunction moot under the PLRA's 90-day limit. Other Circuits hold the same. *See Ahlman v. Barnes*, 20 F.4th 489, 493-94 (9th Cir. 2021), *cert. denied*, 142 S.Ct. 2755 (2022) (county's appeal moot due to "the 90-day limit unambiguously detailed in the PLRA" and a stay of the PI by the Supreme Court did not toll the 90-day limit for purposes of appeal); *see also Norbert v. City & Cnty. of San Fran.*, 10 F.4th 918, 926-28 (9th Cir. 2021); *Victory v. Berks Cnty.*, 789 F.App'x 328, 333 (3d Cir. 2019); *United States v. Sec'y, Fla. Dep't of Corrs.*, 778 F.3d 1223, 1228-29 (11th Cir. 2015).

Defendants ask this Court to advise if, in the future, they could hypothetically incarcerate delinquent children at Angola or another adult prison – an invitation the Court must decline. *Steel Co.*, 523 U.S. at 101 ("Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning."). Judicial economy likewise militates in favor of the Court dismissing the appeal as moot.

## II. The District Court Did Not Abuse Its Discretion in Finding Plaintiffs Demonstrated a Likelihood of Success on their Claims.

If the Court addresses the PI's merits before December 7, it should affirm. The order is based on proper legal conclusions and factual findings amply supported by the evidence. Defendants do not argue the legal determinations were an abuse of discretion; they offer only conclusory assertions and unsupported arguments.

## A. Plaintiffs Showed a Likelihood of Success on Constitutional Claims.

The court found "conditions of confinement of the youth incarcerated at Angola constitute cruel and unusual punishment, and the punitive atmosphere and systemic programming failures violate the Fourteenth Amendment." ROA.5342.

The court relied on *Morales v. Turman*, 562 F.2d 993, 998 n.1 (5th Cir. 1977), to apply the two-part Eighth Amendment deliberate indifference test to all of Plaintiffs' allegations related to the conditions at Angola. ROA.5352-53, 7614-15.[7] Incarcerated people must satisfy a two-part test to challenge carceral conditions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The first, "objective" prong requires showing they are "incarcerated under conditions posing a substantial risk of serious harm," or are deprived of "the minimal civilized measure of life's necessities." *Id*.

---

[7] In decisions after *Morales* evaluating Eighth Amendment challenges to criminal sentences of minors, the Supreme Court found youth are entitled to greater protection than adults. *See, e.g., Montgomery v. Louisiana*, 577 U.S. 190, 206-08 (2016) (collecting cases). A Fourteenth Amendment violation is shown by an express intent to punish, or by conditions not reasonably related to the aims of confinement, or excessive in relation to those aims. *Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979); *see Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982) (state has heightened duties to confined people when the purpose of their detention is not punitive). *Bell* and *Youngberg* establish that conditions for children adjudicated delinquent—held for rehabilitative treatment, as are the class members here, *see* La. Rev. Stat. § 15:906(B)—are analyzed under the Fourteenth Amendment. *See, e.g., A.M. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 579 (3rd Cir. 2004); *Gary H. v. Hegstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987); *Santana v. Collazo*, 714 F.2d 1172, 1179-80 (1st Cir. 1983); *see also Nelson v. Heyne*, 491 F.2d 352, 360 (7th Cir. 1974).

This Court need not decide whether the Eighth or Fourteenth Amendment test applies to claims brought by children adjudicated delinquent, as the district court used the stricter standard of the Eighth Amendment when assessing the conditions at Angola, ROA.5352-53, 7614-15, and the order should be affirmed applying that standard. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he [Fourteenth Amendment] due process rights of a [detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner.").

The second, "subjective" prong, requires showing "a prison official … ha[s] a sufficiently culpable state of mind" of "deliberate indifference to inmate health or safety." *Id*. The "minimal civilized measure of life's necessities" includes "food, clothing, shelter, medical care, and reasonable safety," *Helling v. McKinney*, 509 U.S. 25, 32 (1993), "warmth [and] exercise," *Wilson v. Seiter*, 501 U.S. 294, 304 (1991), and "social contact and environmental stimulation." *Wilkerson v. Stalder*, 639 F.Supp.2d 654, 679 (M.D. La. 2007). "[M]ental health needs are no less serious than physical needs." *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (citation omitted).

In an injunctive case, plaintiffs need not show actual injury; an unreasonable *risk* of harm violates the Constitution. *Helling*, 509 U.S. at 33-34. Defendants repeatedly insinuate actual harm must occur to class members to prove an Eighth Amendment claim related to conditions at Angola *(see, e.g.,* Dkt. 128 at 19-22, 36-43, 47-48), a position foreclosed by *Helling*. Conditions also can violate the Eighth Amendment "alone or in combination[,]" *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), if they have "a mutually enforcing effect that produces the deprivation of a single, identifiable human need." *Wilson*, 501 U.S. at 304.

As to the subjective prong, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may

conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (citations omitted); *Gates*, 376 F.3d at 333 (same). Direct evidence of what officials knew or thought at any given moment is not required to establish deliberate indifference, and it is "irrelevant to liability that the officials could not guess beforehand precisely" who might be harmed or the specific harm to befall them. *Farmer*, 511 U.S. at 842-44 (citations omitted).

In injunctive cases, officials' knowledge of the risk of harm is presumed, because the litigation puts them on notice. *Id.* at 846 n.9; *Harris v. Angelina Cnty., Tex.*, 31 F.3d 331, 335 (5th Cir. 1994) ("evidence brought to the attention of the County through this ongoing litigation itself" showed "the County was well aware of the overcrowding at the jail and the resulting conditions"). The only remaining question is whether officials "responded reasonably to the risk[.]" *Farmer*, 511 U.S. at 844. A plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm[.]" *Id.* at 842.[8]

The district court found *Farmer*'s objective prong met by the punitive conditions of an adult prison that created "a serious risk of psychological harm to juveniles[,]" noting that "transferring emotionally vulnerable adolescents, many of

---

[8] Defendants cite three out-of-circuit cases to argue a specific prison official must be aware of a specific cause of harm to a specific prisoner to satisfy *Farmer*. Dkt. 128 at 30 n.6, 32. Those all sought damages, and are irrelevant to *Farmer*'s application in injunctive litigation.

whom have mental health issues and cognitive disfunction, to a prison camp on the grounds of Angola will likely have deleterious psychological ramifications." ROA.5354, *quoting* ROA.1066. Defendants do not and cannot dispute the scientific consensus that isolating children is profoundly psychologically damaging, or the fact that it is far outside the mainstream of U.S. corrections practice. *Hall v. Florida*, 572 U.S. 701, 709-10 (2014) (it is "proper to consider … psychiatric and professional studies" to resolve Eighth Amendment claims). These are findings of fact that Defendants fail to show are clearly erroneous.

The court found *Farmer*'s subjective prong met; based on testimony and evidence, OJJ "was aware of and indifferent to the serious harm caused by excessively confining adolescents in their cells" and "the treatment at Angola is knowingly punitive and harmful." ROA.5355-56. Defendant Nelson and multiple State leaders admitted under oath they were aware of the risk of harm to children at Angola. ROA.5818, 6182-83, 6348-49, 6526. The Court's September 2022 findings also ensured OJJ leadership was aware of the risks, yet they continued to incarcerate class members at Angola for nearly a year. Defendants did not dispute that *no other state in the country* uses adult prisons to incarcerate juveniles adjudicated delinquent. ROA.6281-82, 6306-07; *see Graham v. Florida*, 560 U.S. 48, 62 (2010) (trends in state legislation and practice are relevant to Eighth Amendment claims); *Roper v. Simmons*, 543 U.S. 551, 563 (2005) (same).

21

The court's determination that Plaintiffs showed a likelihood of success on their constitutional claims should be affirmed.

### 1. Solitary Confinement

The court held OJJ was "aware of and indifferent to the serious harm caused by excessively confining adolescents in their cells[,]" finding:

> There is no dispute that solitary confinement has a very negative [e]ffect on the developing brain of adolescents; it exacerbates already existing mental health problems, it can exacerbate or cause the onset of mental illness and depression, and it causes an increased risk of suicide. The Court finds that cell restrictions as used at Angola are *de facto* solitary confinement in both use and [e]ffect.

ROA.5356, 5355.

This conclusion has ample basis in the law. *See J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 718-19 (6th Cir. 2020) ("A growing chorus of courts have recognized the unique harms that are inflicted on juveniles when they are placed in solitary confinement.") (collecting cases); *H.C. v. Jarrard*, 786 F.2d 1080, 1088 (11th Cir. 1986) (describing isolation's harm to children); *Milonas v. Williams*, 691 F.2d 931, 942-43 (10th Cir. 1982) (affirming injunction on behalf of children in residential treatment center to not isolate them for any reason except to immediately contain violent behavior); *Jensen v. Thornell*, No. 12-cv-00601, 2023 WL 2838040, at *27 (D. Ariz. Apr. 7, 2023) (permanent injunction imposing a categorical ban on the use of solitary in adult prisons for youth convicted as adults); *Doe v. Hommrich*, No. 3-16-0799, 2017 WL 1091864, at *1-2 (M.D. Tenn. Mar. 22, 2017) (enjoining

"placing juveniles in solitary confinement or otherwise isolating them from meaningful contact with their peers as punishment or discipline"). The decision is further buttressed by evidence before the court that over half of U.S. states, including Louisiana, have laws limiting solitary confinement of children. *See Graham*, 560 U.S. at 62 (state legislation is evidence of standards of decency) (citations omitted).

The court reviewed overwhelming evidence showing OJJ's use of solitary places children at substantial risk of harm. Defendants mischaracterize the evidence of isolation as "anecdotal" and "isolated instances" for individual youth. Dkt. 128 at 37. The evidence is collected *supra* at page 10, and examples include:

*First*, Defendants' logs from June 1–August 24, 2023 document the daily and routine use of isolation on up to 12 children per day at Angola. ROA.11066-11141. All youth—regardless of circumstance—must spend 48 to 72 hours confined alone to a single barred cell upon intake to Angola for "orientation" or an "adjustment period." ROA.5344, 6647, 6657, 6736-37, 7354, 11173-75.

*Second*, Defendants use isolation as punishment. ROA.5344. OJJ documents showed a long list of punitive reasons a child can be confined to a cell for days on end, including for minor infractions or not attending programs, and staff confirmed they use this to impose isolation. ROA.11173-75 (chart listing infractions and length of time on "cell restriction"); 7442-43, 7490. The facility director testified youth are isolated in cells as punishment for "behavioral infractions." ROA.6732-33. One

youth was isolated for 19 days in June, 14 of them consecutively. ROA.5344, 11398-451. In June and July, OJJ isolated a child for nine consecutive days in a cell, and isolated at least four other youth in cells for five consecutive days, each time giving the reason for isolation as "behavior issues." ROA.11398-698.

***Third***, Defendants use solitary for suicide prevention in lieu of mental health care. ROA.5344, 5350. OJJ isolated one child for at least a week in late May 2023, and from June 1-7, 2023, after he expressed suicidal ideation, never taking him for mental health evaluation or to a hospital. ROA.5354, 7448-50, 7459-7462, 11046-94. After his "cell restriction" for suicidal ideation, a few days later OJJ placed him in solitary for eight more days for "behavior issues." ROA.7451-55, 10046-94.

Based upon this and other evidence, the court found Plaintiffs showed a likelihood of success on claims related to solitary. ROA.5344-46, 5350, 5355-56.

## 2. Confinement in Adult Prison

The PI reiterated and incorporated the court's September 2022 finding that incarcerating youth in adult prison facilities "creates a serious risk of psychological harm." ROA.5354 & nn.35-37. In 2022, the court considered evidence that children would be confined alone in cells with floor-to-ceiling bars with no privacy, concrete floors and walls, no windows, a small slot for passing food, and an exposed metal toilet. *See supra* pages 6-7. Since 2022, those physical plant features of cells were unchanged. ROA.5678-80, 5683. The court held "[i]ts atmosphere suggests a

24

correctional model rather than a rehabilitative model" and the "goal of rehabilitation is disserved by re-triggering traumatized youth by placing them in an environment that looks and feels punitive," and concluded "[p]lacing any child in a maximum-security facility designed for adults is unreasonably psychologically harmful to children." ROA.1036, 1043. *See D.B. v. Tewksbury*, 545 F. Supp. 896, 907 (D. Ore. 1982) ("A jail is not a place where a truly concerned natural parent would lodge his or her child for care and guidance. A jail is not a place where the state can constitutionally lodge its children under the guise of *parens patriae*.").[9]

### 3. Unreasonable and Excessive Use of Chemical Spray

The court relied upon undisputed evidence that chemical agents including Mace are regularly used on children at Angola. It found that despite Defendants' September 2022 sworn testimony that staff would not even *carry* chemical spray, ROA.6068, staff at Angola *used* it routinely. ROA.5345-47; *see also* ROA.8181 (Memorandum of Understanding between OJJ and DOC permitting Angola prison staff to use chemical spray and Tasers). Defendants' chemical agent logs showed at least five uses in the month of July 2023 alone, ROA.5347, contradicting

---

[9] Defendants assert that no additional evidence was introduced that Defendants subjectively disregarded the risk of harm from placing youth in an adult prison, Dkt. 128 at 31-32. But they ignore the clear holding of *Farmer* and *Angelina County* that the litigation itself puts prison officials on notice, meeting the subjective prong of the Eighth Amendment analysis. They also ignore the vast evidence before the court, including the unrebutted expert testimony of Plaintiffs' juvenile justice expert, Dr. Patrick McCarthy, and the fact that Defendants themselves recognized the risk of harm when they promised the court in 2022 that the use of Angola was temporary.

Defendants' contention of only a "lone incident[.]" Dkt. 128 at 42. In early August 2023, officers sprayed a child locked in his cell who was not actively engaged in harming himself or others. ROA.5346-47; *see also* Video Ex. P440. Defendants' staff admitted they had *no* guidelines on the use of chemical spray. ROA.6764.[10]

Using the *Farmer* two-part test, the court found the indiscriminate use of chemical agents violated children's constitutional rights. ROA.5356; *see Morales v. Turman*, 364 F.Supp.166, 173-74 (E.D. Tex. 1973) (use of chemical agents against children "in situations not posing an imminent threat to human life or an imminent and substantial threat to property—but merely as a form of punishment" violates the Eighth Amendment); *Alexander S. v. Boyd*, 876 F.Supp. 773, 786 (D.S.C. 1995) (chemical spray used on youth violates Fourteenth Amendment); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) ("[T]he appropriate standard" for a use of force claim against a pretrial detainee "is solely an objective one."); *Thomas v. Bryant*, 614 F.3d 1288, 1310-11 (11th Cir. 2010) (use of chemical agents on adult prisoners with mental illness violates Eighth Amendment).[11]

---

[10] Evidence before the court showed that correctional leaders across the country have called for strict limits on or the abolition of the use of chemical agents against youth, and "the vast majority of states don't use pepper spray and are able to run perfectly good juvenile justice facilities." ROA.6296-98. *See Graham*, 560 U.S. at 62.

[11] Defendants cite inapposite cases to justify the use of chemical spray on children. Dkt. 128 at 41. *Lynott v. Henderson*, 610 F.2d 340, 342 (5th Cir. 1980), was about visitation, not chemical agents. In *Scott v. Hansen*, 330 F.App'x 490, 490-491 (5th Cir. 2009), a *pro se* case, the Court held evidence supported a jury's decision that a use of force on an adult was not excessive. In *Thomas v. Comstock*, 222 F.App'x 439, 440-41 (5th Cir. 2007), another *pro se* case, this Court

### 4. Unreasonable and Excessive Use of Restraints

The court found an "indiscriminate use of hand cuffs" on Plaintiffs violated their right to be free from punishment. ROA.5345-46. Staff testified youth have been restrained by handcuffs and shackles during recreation time, and its use is not always documented. ROA.5346, 6745, 7117. Any supervisor has discretion to place a child in restraints. ROA.6611-12. Children were restrained during recreation, eating, or journaling in a common area. ROA.5346. This substantial evidence before the court belies Defendants' assertion that the court's findings were based solely on its own observations during a July 2023 visit to the facility. Dkt. 128 at 40.

After applying the deliberate indifference test, the court found OJJ's "untrained and undocumented use of handcuffs" violated children's Fourteenth Amendment rights, ROA.5356, a holding amply supported by the record and law. *See Youngberg*, 457 U.S. at 316 (Fourteenth Amendment provides a right of "freedom from unreasonable bodily restraint"); *Kingsley*, *supra*, 576 U.S. at 398; *Alexander S.*, 876 F.Supp. at 797-98 ("[T]he Due Process clause guarantees to juveniles who are incarcerated the right to . . . freedom from unreasonable bodily restraint"); *Williams v. McKeithen*, 121 F.Supp.2d 943, 961-62 (M.D. La. 2000)

---

held qualified immunity applied to an officer who engaged in a planned use of force because the challenged conduct was not objectively unreasonable under the then clearly-established law. Defendants' reliance on these cases is unwarranted. *Garner v. Kennedy*, 713 F.3d 237, 244 (5th Cir. 2013) (two prior Circuit cases "are not controlling here" because "the plaintiffs were *pro se* and there is no indication that they countered [defendants'] evidence as [plaintiff here] has done").

(court-ordered stipulation enjoining OJJ from using mechanical restraints except for transportation in certain circumstances or for "control" of a child "after less restrictive measures have not been successful" and limited "to the minimum period of time necessary to enable the juvenile to gain control of his behavior" while requiring continuous one-on-one physical supervision of children in restraints).

### 5. Unreasonable and Punitive Denial of Family Visits

The court recounted that at the September 2022 hearings, then-OJJ Secretary Sommers "passionately told the Court … Mamas need to hug their boys … A mama needs that touch, that boy needs that touch. And so, we will have that type of visitation … ." ROA.5347. But the court found in September 2023 that contrary to these promises, Defendants denied visits to children and families to punish them. *Id.*; ROA.7711-12. For example, a boy who spoke frequently by phone with his mother was denied video visits with her for three weeks as punishment for reported behavioral infractions. ROA.5347. Undisputed evidence showed only *two* family visits occurred in the ten-month period youth were at the facility. ROA.6738.

Plaintiffs' juvenile justice expert Dr. Patrick McCarthy testified to the critical importance of family involvement for children in the delinquency system, ROA.7151-52, and Defendants' witness Dr. Lee Underwood, who created the treatment unit program ostensibly used at Angola, agreed it is beneficial. ROA.7266.

Therefore, the court did not abuse its discretion in finding that Plaintiffs were likely to prevail in their claim that the punitive denial of family contact was excessive and violated their constitutional rights. ROA.5356. *See Tewksbury*, 545 F.Supp. at 905 (violation of delinquent children's Fourteenth Amendment rights to deny them visits with their parents); *see also Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected.") (collecting cases).

## B. Plaintiffs Showed a Likelihood of Success on Disability Claims.

People with disabilities establish a violation of the ADA and Rehabilitation Act when: (1) they have disabilities; (2) they are "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of [their] disabilities;" and (3) such exclusion or discrimination is by reason of their disabilities. 42 U.S.C. § 12132; *see Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). The court's opinion addresses, and the record supports, each of these prongs.[12]

Defendants argue the court failed to identify a disability among the children at Angola. Dkt. 128 at 45. This is meritless: evidence cited by and before the court showed Plaintiffs have learning disabilities and/or mental health diagnoses, and the

---

[12] Title II of the ADA and Section 504 are interpreted *in pari materia*. *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011).

court found these disabilities substantially limit their major life activities. ROA.5357 (citing 42 U.S.C. § 12102(2)(A)); *see* ROA.5827-28, 5835-36, 5868-69, 6900-03, 8178-26 13004-20. Most class members at any given time had, or were regarded as having, a disability. ROA.5350; *see* ROA.7527 (11 of 15 children at Angola at the same time were classified as "Seriously Mentally Ill"), 6688 (all youth qualify as "seriously emotionally disturbed").[13] Defendants do not contest these findings, which satisfy the first requirement of a disability claim. It was not clear error for the court to find the Plaintiffs showed the existence of disabilities.

Defendants' remaining arguments misstate the law. They assert the court provided "zero evidence" that discrimination occurred because of disability. Dkt. 128 at 46. But discrimination by reason of disabilities exists when a public entity does not provide reasonable accommodations, or it employs methods of administration that effectuate discrimination. 28 C.F.R. § 35.130 (a), (b); *Windham v. Harris Cnty.*, 875 F.3d 229, 235 (5th Cir. 2017) (collecting cases); *Lewis v. Cain*, No. CV 15-318-SDD-RLB, 2023 WL 7299130, at *49 (M.D. La. Nov. 6, 2023) (permanent injunction for adults with disabilities at Angola); *Tellis v. LeBlanc*, No. CV 18-541, 2022 WL 67572, at *8 (W.D. La. Jan. 6, 2022) (liability after bench trial for incarcerated adults with psychiatric disabilities). No further evidence of

---

[13] Defendants' witnesses and Plaintiffs' expert testified that there were similar impairments common to most youth at Angola. ROA.5631:1-5, 6879, 7212-14, 7527.

causation or intent is required. *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005) ("Where a defendant fails to meet this affirmative obligation [to accommodate], the cause of that failure is irrelevant."); *Windham*, 875 F.3d at 235 n.5 (intent to discriminate only relevant for compensatory damages).

The court correctly found OJJ discriminated when it created a "Transitional Treatment Unit" at Angola, overwhelmingly filled it with youth with disabilities, and then proceeded to not provide even the most basic programs OJJ purported to offer children at other secure care facilities. Thus, the State "actively undercut[]" the ability of any child at Angola to benefit from its programs. *Van Velzor v. City of Burleson*, 43 F.Supp.3d 746, 752 (N.D. Tex. 2014); 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(3). The record is replete with references to the services OJJ claims it provides to youth in secure care facilities across the state, *see, e.g.*, ROA.1029-34, and the record showed these were either minimal or nonexistent at Angola.

Special education is one such service, and there was evidence before the court showing a systemic denial of necessary special education services, assessments, and evaluations. ROA.5348-49, 6905-6910, 6953-55, 6961, 6986, 8022-26, 8029-34. This was only one of the "necessary services" OJJ denied to youth with disabilities at Angola, ROA.5357-58, others included general education services, mental health treatment, and counseling. *Id.*; ROA.5348-51; *see also* ROA.5693-94, 6741, 6837, 7683, 7702-06 (no counseling or rehabilitative services, or social worker or other

trained counselor); ROA.11700-2025 (case manager on site less than 50% of the time in June and July); ROA.5515-16 (no psychiatrist on site).[14] These findings are not clearly erroneous.

The Court should affirm the district court's ruling on the disability claims.

### C. The PI Complies with the Prison Litigation Reform Act

Defendants argue the PI does not comply with PLRA requirements. These contentions are meritless.

### 1. Alex Met PLRA Exhaustion Requirements Before Filing Suit.

The PLRA requires incarcerated people to exhaust available administrative remedies before suing. *See* 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Defendants must plead and prove both that remedies were available to the plaintiff, and the plaintiff failed to exhaust them. *Cantwell v. Stirling*, 788 F.3d 507, 508-09 (5th Cir. 2015). The court correctly found Plaintiffs met the PLRA's exhaustion requirement.

---

[14]Defendants falsely assert that the "only" testimony demonstrating a lack of education services related to a delay in delivery of Individualized Education Plans. Dkt. 128 at 46 n.10. The denial of general and special education services at Angola is supported by the expert testimony of Dr. Joseph Gagnon. ROA.6905-6910, 6953-55, 6961, 6986. OJJ's documents showed education staff (including teachers, special education teachers, and related providers) visited Angola on fewer than 10 days between June and August 2023, oftentimes for mere minutes. ROA.11857, 11882, 11979, 11996, 11207, 8046-53. But Defendants testified OJJ is supposed to operate a year-round academic schedule with only two weeks off. ROA.5527-28, 7869, 8041. Defendants' bare assertion that special education services were provided, *see* Dkt. 128 at 45-46, only confirms the court's finding that OJJ was aware of its obligation to provide year-round general and special education services to children at Angola.

Under the PLRA, "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quotation marks and citation omitted). *Accord Cantwell*, 788 F.3d at 509. Here, the governing policy provides for a one-step emergency process and a two-step standard process. ROA.4801-14. The emergency process provides:

> If a youth's ARP contains statements which indicate that the youth believes they are in immediate risk of harm and any delay in responding to the grievance would subject the youth to substantial risk of immediate personal injury or cause other serious or irreparable harm, the ARP Coordinator shall immediately forward the ARP .... The Secure Facilities Director shall provide an initial response within 48 hours and issue a final decision within five (5) calendar days.

ROA.4809–10. A 13-page instruction booklet provided to youth describes the same emergency grievance process. *See* ROA.1164. Neither the policy nor the booklet has any other information about emergency grievances.

Defendants announced on July 19, 2022, that OJJ would start transferring youth to Angola. ROA.70. Thereafter, officials sought transfer of Alex to that facility on an emergency basis. *See* ROA.8670–71. He filed an emergency grievance on August 16, 2022, after being threatened with transfer to Angola, and being told that transfers could begin within the week. ROA.464, 115. His emergency grievance challenged Defendants' policy decision, and detailed the substantial risk of serious

harm he faced if he were moved. ROA.464-67. It sought immediate retraction of Defendants' policy and a halt to any transfer of youth to Angola. ROA.467. Staff rejected his emergency grievance. ROA.471. Under the "applicable procedural rules," there were no further remedies for him to pursue, as he had fully exhausted his remedies. ROA.4810 (a "final decision" will be issued in response to an emergency grievance). He filed suit on behalf of himself and a class of similarly situated youth after receiving this final response.[15]

The court correctly held, based on the plain language of OJJ's policy, that the response to Alex's emergency grievance was a "final decision" allowing him to file suit. ROA.1013. Defendants offer no evidence or law to support their assertions that the court abused its discretion. Indeed, another judge found the same when considering the identical OJJ grievance policy. *See J.H. v. Edwards*, No. CV 20-293-JWD-EWD, 2020 WL 3448087, at *43 (M.D. La. June 24, 2020) (OJJ's policy "indicate[s] that the Emergency ARP results in a 'final decision,' which would logically mean that the Youth could proceed to the 'next step' of filing suit.").

Defendants assert, without evidence, that if an emergency grievance is determined "not emergent," then it "is processed as a standard ARP." Dkt. 128 at 9, 19. Neither the policy nor the youth manual contains such a provision. ROA.4809-

---

[15] In a class action, only a single class member is required to exhaust administrative remedies to satisfy the requirement for the entire class. *Gates*, 376 F.3d at 330.

10, 1164. Defendants point to no evidence demonstrating this practice. Unsupported assertions of counsel are not evidence, *Skyline Corp. v. N.L.R.B.,* 613 F.2d 1328, 1337 (5th Cir. 1980), so Defendants have not met their burden to show the availability of this grievance procedure.

To the extent Defendants suggest there is an unwritten requirement to pursue a rejected emergency grievance through the standard grievance procedure, remedies were unavailable. Under the PLRA, a plaintiff "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). The Supreme Court offered three examples of unavailable remedies: (1) where grievance regimes are "so opaque" they are "practically speaking, incapable of use," (2) when an incarcerated person is "thwarted" by staff actions, or (3) where the procedure "operates as a simple dead end" with no possibility for relief. *Id*. at 643–44.

First, if a grievance policy does not communicate all required steps, then the remedies are opaque and unavailable. *Huskey v. Jones*, 45 F.4th 827, 831, 833 (5th Cir. 2022) (a policy that "only partially explained prison processes … satisfies the unavailability exception under *Ross*"); *see Goebert v. Lee Cnty.*, 510 F.3d 1312, 1323 (11th Cir. 2007) (remedies unavailable where second step of process was not listed in materials given to plaintiff). Here, neither the relevant policy nor the youth manual suggested that a child filing an emergency grievance must also pursue the standard grievance procedure. And Defendants, who bear the burden of proof, point

to no evidence to support their assertions.[16]

Second, officials' failure to follow their own policy will render remedies unavailable by creating a "dead end" or "thwart[ing]" a person's attempts to exhaust. *Ross*, 578 U.S. at 643–44. For example, when officials fail to follow their policy's deadlines to respond, remedies are unavailable, and a prisoner has exhausted. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam); *see Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019) (The PLRA "requires strict compliance by prison officials with their own policies. Whenever a prison fails to abide by those procedural rules, its administrative remedies have become unavailable[.]"). The OJJ policy in place when Alex filed his grievance states that if the emergency grievance contains statements demonstrating that "*the youth believes* they are in immediate risk of harm … [t]he Secure Facilities Director *shall* provide an initial response within 48 hours and issue a final decision within five (5) calendar days." ROA.4809–10 (emphasis added). OJJ's policy, therefore, *requires* staff to credit the youth's own belief about an imminent risk of harm—rather than allowing staff to subjectively make that determination—and *requires* staff to both respond within 48 hours and issue a final response within five days. In response to Alex's grievance, staff made

---

[16] To the contrary, conceding the opaqueness of their grievance policy, Defendants revised their policy in December 2022, *after* Alex submitted his grievance and *after this case was filed*, to explicitly provide that emergency grievances deemed non-emergent "shall follow the standard ARP process." ROA.4271, 4247 (conceding policy was revised "to ensure that youth have a clear and available avenue to exhaust administrative remedies.").

their own subjective determination he was "not subject to any immediate risk of harm" and refused to process his grievance according to their own policy. ROA.471. In so doing, they "thwarted" him and turned the process into a "dead end." *Ross*, 578 U.S. at 643-44. The court correctly held that administrative remedies were thus no longer available. ROA.1013. Defendants do not argue error; any argument is accordingly waived. *Procter & Gamble*, 376 F.3d at 499 n.1.[17]

Defendants also argue it was legal error for the court to allow Plaintiffs to "pre-exhaust" a substantial risk of serious harm until "exposed to the condition." Dkt. 128 at 19-22, 33. But nowhere did the court make such a ruling. Rather, it found Alex exhausted administrative remedies by filing an emergency grievance challenging OJJ's policy to move youth to Angola, after the policy's announcement and after Alex was informed he was subject to that policy. Defendants' argument that a plaintiff must wait to suffer harm before they can exhaust a grievance and sue has no legal basis. Incarcerated people have a cause of action for injunctive relief

---

[17] The Tenth Circuit case cited by Defendants is inapplicable. Dkt. 128 at 20. There the plaintiff grieved a lack of medical care for one incident, but included in his lawsuit claims for failure to provide medical care in incidents post-dating his grievance. *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1182, 1188 (10th Cir. 2004). By contrast, Alex submitted a grievance after OJJ's announced policy decision to send youth to Angola, seeking to prevent its implementation. ROA.464–67. His suit similarly challenged that policy and sought to prevent its implementation.

Defendants' other cases, *see* Dkt. 128 at 20-21 n.4 – nearly all unpublished, out-of-circuit district court opinions—are inapposite for the same reason. None address the filing of a grievance challenging a policy decision that placed someone at substantial risk of serious harm. Rather, they relate to a failure to exhaust other incidents occurring after the plaintiff had grieved. And *Pasion v. McGrew*, No. 10-00443 HG-LEK, 2010 WL 3184518, at *2 (D. Haw. Aug. 11, 2010) did not address PLRA exhaustion at all, but rather was a habeas action, which is subject to its own, different, exhaustion requirements.

based on a risk of future harm, even if harm has not yet occurred. *Helling*, 509 U.S. at 33 ("[A] remedy for unsafe conditions need not await a tragic event."). Reading the PLRA to disallow exhaustion based on risk of harm would make it impossible to sue until harm already occurred; this is squarely foreclosed by *Helling*. *See also Brown v. Plata*, 563 U.S. 493, 526 (2011) (rejecting a reading of the PLRA that "would raise serious constitutional concerns"); *Jones v. United States*, 529 U.S. 848, 857 (2000) ("Where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.").[18]

### 2. Plaintiffs Do Not Have to Exhaust Anew Before Moving for a PI.

Alex's emergency grievance, exhausting administrative remedies before he sued, satisfied the PLRA's exhaustion requirement for the entirety of this class action. Defendants suggest Plaintiffs had to re-exhaust before filing the July 2023 PI motion because some incidents described in the motion differed from the original complaint. Dkt. 128 at 22-29. This argument is belied by the law and the facts.

---

[18] Decisions relied on by Defendants do not support their argument. Dkt. 128 at 21. In *Miller v. Eichenlaub*, No. 07-CV-10177, 2008 WL 3833715, at *2 (E.D. Mich. Aug. 13, 2008), the plaintiff grieved medical care at one facility, but included in his complaint additional claims and defendants about care received years later at another facility. *Gross v. Unknown Director of Bureau of Prisons*, No. CIV.A. 708-111-KKC, 2008 WL 2280094, at *2 (E.D. Ky. May 30, 2008) likewise involved a plaintiff who exhausted at one facility, but his lawsuit included additional claims and defendants unique to a facility where he was transferred later. That scenario is materially different from this. Here, Alex's grievance sought relief from a statewide policy decision that posed him a substantial risk of serious harm.

**First**, the plain language of the PLRA provides that exhaustion must only be completed before filing suit; it is not an ongoing or recurring requirement throughout the life of the litigation before filing enforcement or other motions. *See* 42 U.S.C. § 1997e(a) ("*No action shall be brought* with respect to prison conditions . . . until such administrative remedies as are available are exhausted.") (emphasis added). "The PLRA serves as a threshold; once it is met, a suit may not be dismissed so long as the claims remain the same." *Moussazadeh v. Texas Dep't of Crim. Just.*, 703 F.3d 781, 790 (5th Cir. 2012), *as corrected* (Feb. 20, 2013). Indeed, this Court has "never before held that, once he has initially exhausted available remedies, an inmate must re-exhaust" even if there are "changed circumstances." *Id*. And where "the prisoner's complaint addresses an ongoing problem or multiple instances of the same type of harm, prisoners need not file a new grievance in each instance to quali[f]y for exhaustion" because "the claim that gave rise to his initial grievances and suit remains unchanged." *Id*. at 788-89; *see also Yankton v. Epps*, 652 F.App'x 242, 246 (5th Cir. 2016) (when the basis for a grievance is a "prison *policy*, [plaintiffs] need not file grievances regarding subsequent *incidents* in which the policy is applied") (emphasis added, citation omitted). Here, as in those cases, the claim that "gave rise" to Alex's initial grievance—Defendants' policy decision to incarcerate children at Angola—"remains unchanged." *Moussazadeh*, 703 F.3d at 788-89.

39

These rules apply equally when a plaintiff moves for an injunction. "Once administrative remedies have been exhausted and the action has been 'brought,' the exhaustion requirement … is satisfied. Any claim for relief that is within the scope of the pleadings may be litigated without further exhaustion." *Jones 'El v. Berge*, 172 F.Supp.2d 1128, 1134 (W.D. Wis. 2001) (rejecting argument that class members had to re-exhaust before filing PI motion); *see also Baxley v. Jividen*, No. CV 3:18-1436, 2020 WL 1802935, at *3 (S.D. W.Va. Apr. 8, 2020) (similar).[19]

***Second***, the grievance and complaint, as a factual matter, tracked the issues presented and relief requested in the July 2023 PI motion, contrary to Defendants' contentions. The grievance challenged the policy decision to incarcerate children in Angola, ROA.464-67; so did the complaint and motion. ROA.2647. Alex's grievance detailed how the policy and possibility of transfer "will expose me to a serious risk of harm, including heightened risk of suicide and sexual assault; denial of education, counseling, and other rehabilitative treatment and therapies;

---

[19] Defendants' cases are inapposite. In *Tolliver v. Collins*, the court denied a preliminary injunction about the denial of medical care in a case about exposure to secondhand smoke because the medical care claims were "entirely different" from secondhand smoke claims and involved "new, unnamed defendants, none of whom have been served[.]"No. 2:08-cv-00722, 2010 WL 2640061, at *2 (S.D. Ohio Apr. 29, 2010), *report and recommendation adopted*, No. 2:08-cv-00722, 2010 WL 2630091 (S.D. Ohio June 29, 2010). Here the claims raised in Plaintiffs' motion are not new, are not "entirely different," and are not raised against a different set of defendants. *Jimerson v. Rheams* stands only for the uncontroversial proposition that a plaintiff must exhaust remedies prior to filing suit. No. CV 21-119-JWD-EWD, 2021 WL 2005492, at *2 (M.D. La. Apr. 15, 2021), *report and recommendation adopted*, No. CV 21-119-JWD-EWD, 2021 WL 2006294 (M.D. La. May 19, 2021).

inadequate and substandard medical care; and the use of psychologically harmful solitary confinement." ROA.464-65. The complaint and PI motion likewise detailed the risk of serious harm the policy posed to Alex—whom OJJ had found appropriate for transfer to Angola, ROA.8670-71—and other class members. This included the maximum-security adult prison environment (*compare* ROA.1222, 1225-26, 1236-40 *with* ROA.2612-13); failure to provide education and special education services (*compare* ROA.1226-27, 1242-44 *with* ROA.2618-20); failure to provide mental health, counseling and other rehabilitative services (*compare* ROA.1242-43 *with* ROA.2623-24); use of solitary confinement or isolation (*compare* ROA.1222-23, 1240 *with* ROA.2614-18); failure to provide adequate recreation (*compare* ROA.1243-44 *with* ROA.2620-21); and denial of family contact (*compare* ROA.1245 *with* ROA.2622).

Further, the relief requested in the second PI motion tracks the relief requested since the inception of this matter and in Alex's grievance: immediately halt the policy of transferring children to Angola and remove the children already there, or in the alternative, improve the conditions at Angola, including providing legally required educational, counseling, and mental health treatment services. ROA.2150-51. The court conducted a thorough review of his grievance, the complaint, and issues raised in the PI motion, and correctly found the matters in the motion (except for excessive heat) were substantially identical. *See* ROA.7616–17.

**Third**, Defendants argue Alex's grievance didn't predict the harm OJJ's policy posed to him with enough specificity to put them on notice. Dkt. 128 at 26-29. This is meritless. The PLRA does not require clairvoyance. A grievance's level of detail required "will vary from system to system and claim to claim" because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Here, the applicable policy requires youth to "outlin[e] the problem and remedy requested[,]"and "briefly set[] out the basis for the claim and the remedy requested." ROA.4806, 4804. Alex's emergency grievance did that and more. As such, he gave officials "fair notice of the problem" forming "the basis of [his] suit." *Moussazadeh*, 703 F.3d at 788.

Defendants cannot seriously dispute their knowledge of the concerns with their transfer policy, or the risks of harm identified by Alex. Indeed, they were so attuned to these risks that they promised to the district court in September 2022 that the facility would provide appropriate living conditions, would not subject children to isolation except for eight hours nightly for sleep, and would offer legally required education and special education, mental health and rehabilitative services, family visitation, and adequate recreation. ROA.1025, 1027-35, 1039. And this litigation itself clearly put Defendants on notice of the risks of harm. *See Farmer*, 511 U.S. at 843, 846 n.9; *Angelina Cnty.*, 31 F.3d at 335.

### 3. The PI Is Not a Prisoner Release Order.

Defendants assert the PI is a prisoner release order under the PLRA. Dkt. 128 at 52-53. Not so. The PLRA's legislative history shows Congress' primary concern was "courts setting 'population caps' and ordering the release of inmates as a sanction for prison administrators' failure to comply with the terms of consent decrees designed to eliminate overcrowding[.]" *Gilmore v. California*, 220 F.3d 987, 998 n. 14 (9th Cir. 2000) (quoting 141 Cong. Rec. S14414 (daily ed. Sept. 27, 1995) (remarks of Sen. Dole)). Here, the court directed OJJ to transfer about a dozen youth from unconstitutional conditions at Angola *within* the OJJ system to other secure facilities, not out of custody or to the community. An order directing transfer of a small number of people within a prison system for reasons other than crowding is not a prisoner release order. *See, e.g., Plata v. Brown*, 427 F.Supp.3d 1211, 1222-24 (N.D. Cal. 2013) (order directing transfer of people at high risk of contracting Valley Fever to other prisons in the state was not a release order); *Reaves v. Dep't of Corrs.*, 404 F.Supp.3d 520, 522-23 (D. Mass. 2019) (transferring prisoner to a non-correctional facility for medical treatment was not a release order).

Moreover, a prerequisite to a prisoner release order is a finding that "crowding is the primary cause of the violation of a Federal right." 18 U.S.C. § 3626(a)(3)(E). Thus, if Defendants were correct that any transfer of prisoners is a prisoner release order, federal courts would be barred from ever ordering the transfer of a prisoner

for reasons unrelated to crowding, even when necessary to vindicate constitutional rights. *See Plata*, 427 F.Supp.3d at 1223 ("It is easy to imagine circumstances — not caused by crowding — where a transfer would be necessary to protect inmates' constitutional rights"); *Reaves*, 404 F.Supp.3d at 524 ("if Mr. Reaves is not transferred, he will die"). The PLRA cannot be construed to entirely strip the federal courts of their power to remedy constitutional violations. *Jones*, *supra*, 529 U.S. at 857; *Plata*, *supra*, 563 U.S. at 526.

### 4.  The PI Is the Least Intrusive Means to Correct the Harm

Invoking boilerplate recitations of PLRA standards for relief, Dkt. 128 at 53-54, Defendants assert that ordering transfer "is the *most* intrusive means to correct" the harms found by the court, in violation of the PLRA. *Id.* at 54 (emphasis in original). This assertion is false, and none of the cited cases support it.

"Narrow tailoring does not require perfection." *Jones v. Gusman*, 296 F.R.D. 416, 429 (E.D. La. 2013). "[T]he core concern of the [PLRA's] intrusiveness inquiry [is if] the district court [is] enmeshed in the minutiae of prison operations, beyond what is necessary to vindicate plaintiffs' federal rights." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010) (citation omitted). The inquiry is whether "the same vindication … could [be] achieved with less involvement by the court in directing the details of defendants' operations." *Id*.

Viewed in this light, an order to simply transfer about a dozen children out of Angola is far *less* intrusive than if the district court had issued an order allowing children to remain there, while dictating day-to-day minutiae of what was needed to meet constitutional minima in conditions and programming. As this Court recognized, "a court is not in a position to monitor day-by-day changes that affect rehabilitation programs." *Morales*, 562 F.2d at 999 (quotation marks omitted). Courts applying PLRA limits on injunctive relief have found orders transferring small numbers of people within a prison system to satisfy these restrictions. *See Jones 'El v. Berge*, 164 F.Supp.2d 1096, 1116, 1125-26 (W.D. Wisc. 2001) (granting PI transferring several people with serious mental illness out of solitary confinement unit); *Reaves*, 404 F.Supp.3d at 524; *Plata*, 427 F.Supp.3d at 1230.

## III. The District Court Did Not Abuse its Discretion to Find the Other Injunctive Factors Weigh in Plaintiffs' Favor.

In addition to likelihood of success on the merits, a party seeking a PI must show irreparable injury in the absence of an injunction; that the threatened injury to the plaintiff outweighs possible injury to the defendant; and that granting the PI will serve the public interest. *Janvey*, 647 F.3d at 595. Defendants do not challenge any findings of fact on these factors as clearly erroneous; indeed, they cite the district court's own factual conclusions. Nor do they assert the court applied an incorrect legal standard. Rather, they disagree with the lower court's weighing of the harms. This is insufficient to show abuse of discretion warranting reversal. *Id.* at 602.

### A.    The District Court Properly Exercised its Discretion in Finding a Likelihood of Irreparable Harm to Plaintiff Children

The court's finding of a substantial threat of irreparable injury was correct. ROA.5358, 1064-66. It relied upon ample evidence that confining children at Angola, with its use of solitary confinement and other punitive conditions, and denial of education, mental health care, rehabilitative programs, and access to families, posed a likelihood of irreparable injury. ROA.5358.

In addition to the previously and "heavily detailed" record from 2022 of evidence of psychological harm to children from being incarcerated in harsh prison settings, the court pointed to new evidence presented at the August 2023 hearings showing the irreparable injuries Plaintiffs were experiencing and were at risk of enduring at Angola. ROA.5358.[20] Evidence showed "extensive and excessive cell restriction, indiscriminate use of handcuffs and mace, and punitively denying youth family contact." ROA.5344-47; *see* Video Exs. P410, P440, P441. The risk of irreparable injury was detailed for the court in the DOJ Statement of Interest, filed to underscore "lasting[,]" "serious[,]" and "irreparable harms" to youth subjected to the alleged conditions in the adult prison. ROA.3082, 3086. DOJ noted "[y]outh are particularly vulnerable to harmful conditions of confinement such as those alleged

---

[20] In 2022, the court relied on expert testimony that "housing juveniles in a facility designed for adult inmates would place these juveniles in a defense posture and force them to regulate survival stressors" and that "using adult prison cells as rooms for youth has the effect of solitary confinement because the isolation causes the psychological harm," to find the likelihood of psychological harm for Plaintiffs was imminent and irreparable. ROA.1054, 1066.

because their brains are still developing, and they lack adequate coping mechanisms." ROA.3086. The court held the pervasive deficiencies in disability accommodations such as mental health care, special and general education, and rehabilitative programs caused Plaintiffs with disabilities irreparable harm, a finding Defendants do not challenge. ROA.5348-51, 5358.

Defendants contend that no case supports that psychological harm amounts to irreparable harm. Dkt. 128 at 47.[21] Not so: "[c]ourts have found irreparable injury based upon psychological injury or emotional distress in cases brought under Section 504 of the Rehabilitation Act of 1973." *Tugg v. Towey*, 864 F.Supp. 1201, 1209 (S.D. Fla. 1994) (collecting cases). Calling it the "closest analogous case[]," Defendants cite *Cupit v. Jones*, 835 F.2d 82 (5th Cir. 1987), a *pro se* damages action by an adult prisoner alleging denial of medical care, to argue "stress is not an irreparable harm." Dkt. 128 at 47. But the "stress" claimed by Mr. Cupit is a far cry from the profound psychological damage a child suffers in an adult prison, enduring solitary confinement, gratuitous use of chemical agents, excessive restraints, no

---

[21] In a record replete with extensive evidence of irreparable psychological harm, Defendants only dispute the substance of Dr. Stevens's 2022 testimony. They assert that when she testified before Angola opened, she did not detail or quantify the "specific psychological harm." Dkt. 128 at 15, 35-36. This is false. First, she did provide detail, ROA.5888-91, 5905-17, and the court found ample evidence of "the excessive and/or unwarranted use [of] cell restriction/macing which further demonstrates psychological harm." ROA.5358, 5344-47. Second, the court also relied upon the detailed testimony of Plaintiffs' juvenile justice expert Dr. McCarthy who testified to significant harms to youth. ROA.7617-18, 5685-86, 5706-08, 7170-75. Finally, the irreparable harm is not minimal—about 20% of class members were incarcerated in Angola between October 2022 and June 2023, far more than the five percent Defendants promised. ROA.5343.

contact with his family, and the withholding of rehabilitative services, mental health care, and disability accommodations. As detailed *supra* and as the court held, courts recognize that adolescents are uniquely susceptible to psychological damage and entitled to special consideration. *See also* ROA.1055 (citing cases).

Courts also have found solitary confinement constitutes irreparable harm for purposes of injunctive relief. *See William v. Sec'y Penn. Dep't of Corrs.*, 848 F.3d 549, 573-74 (3d Cir. 2017) (citing with approval a district court's finding of irreparable harm from solitary confinement of adults); *V.W. ex rel. Williams v. Conway*, 236 F.Supp.3d 554, 588-89 (N.D.N.Y. 2017) (detained children made showing of irreparable harm from use of isolation); *E.L. ex rel. Paykina v. Lewin*, 387 F.Supp.3d 225, 241 (N.D.N.Y. 2019) (same). Finally, it is well established that violations of Constitutional rights constitute irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion).

**B. The District Court Properly Exercised its Discretion in Finding the Balance of Interests and the Public Interest Favor Relief.**

The protection of constitutional rights is ordinarily "the highest public interest at issue in a case." *Def. Distrib. v. U.S. Dep't of State*, 838 F.3d 451, 458 (5th Cir. 2014) (citation omitted). Here, the court weighed potential harm to Defendants and the public interest in deciding if injunctive relief was appropriate. ROA.5358. The court found the irreparable harm to Plaintiffs outweighed any harm that might accrue to Defendants or the public. ROA.5358-60.

Defendants' public safety arguments mischaracterize the PI and ignore controlling law. Dkt. 128 at 49-52. They assert the court "fail[ed] to give due weight" and "made no mention of" the State's interest to "maintain a facility that can safely and securely detain" youth. *Id.* Not true: the court acknowledged and reaffirmed its past finding that OJJ "has a strong interest in maintaining safety and security within its secure care facilities." ROA.5359. It then concluded "there is no public interest served by violating a person's constitutional rights. [OJJ's] broken promises tipped scales in the balance of harms consideration." ROA.5360. Defendants' disagreement with this finding does not render it clearly erroneous or an abuse of discretion. *Janvey*, 647 F.3d at 602. Defendants' unsupported speculation about public safety risks cannot defeat enforcement of Plaintiffs' constitutional rights. In *Brown v. Plata*, the Supreme Court held:

> The PLRA's requirement that a court give "substantial weight" to public safety does not require the court to certify that its order has no possible adverse impact on the public. . . . Whenever a court issues an order requiring the State to adjust its incarceration and criminal justice policy, there is a risk that the order will have some adverse impact on public safety in some sectors. . . . Yet the PLRA contemplates that courts will retain authority to issue orders necessary to remedy constitutional violations. . ."

563 U.S. at 534. The court's order was in accord with this precedent. ROA.5359 ("But invoking safety and security does not provide corrections officials with *carte blanche* to deprive incarcerated youth of the guarantees promised by the Constitution.").

## CONCLUSION

Defendants' appeal must be dismissed as moot due to the operation of federal law. The Court also lacks jurisdiction to consider appeals of the five other orders not subject to review, not properly presented, and not argued in the opening brief. If the Court issues an opinion and mandate before the injunction expires on December 7, it should affirm the district court.

Respectfully submitted, November 27, 2023.

/s/ David J. Utter
David J. Utter, LA 23236 *
**The Claiborne Firm, P.C.**
410 East Bay Street
Savannah, GA 31401
(912) 236-9559
david@claibornefirm.com

/s/ Corene T. Kendrick
Corene T. Kendrick, CA 226642
Marisol Dominguez-Ruiz, CA 345416
**ACLU National Prison Project**
39 Drumm St.
San Francisco, CA 94111
(202) 393-4930
ckendrick@aclu.org
mdominguez-ruiz@aclu.org

/s/ Christopher J. Murell
Christopher J. Murell, LA 32075
Meghan Matt, LA 39975
**Murell Law Firm**
2831 St. Claude Ave.
New Orleans, LA 70117
(504) 717-1297
chris@murell.law

/s/ Nancy Rosenbloom
Nancy Rosenbloom, NY 2168425
**ACLU National Prison Project**
125 Broad Street
New York, NY 10004
(202) 393-4930
nrosenbloom@aclu.org

/s/ Tammie Gregg
Tammie Gregg, MN 26240 **
**ACLU National Prison Project**
915 15th St. N.W.
Washington D.C. 20005
(202) 393-4930
tgregg@aclu.org
**Not admitted in DC; practice limited to federal courts

/s/ Susan M. Meyers
Susan M. Meyers, LA 29346
Ashley Dalton, LA 40330
**Southern Poverty Law Center**
201 St. Charles Ave., Ste. 2000
New Orleans, LA 70170
(504) 512-8649
susan.meyers@splcenter.org

meghan@murrell.law

ashley.dalton@splcenter.org

*/s/ Nora Ahmed*
Nora Ahmed, NY 5092374
**ACLU Foundation of Louisiana**
1340 Poydras St., Ste. 2160
New Orleans, LA 70112
(504) 522-0628
nahmed@laaclu.org

/s/ *David Shanies*
David Shanies, NY 4471140
**Shanies Law Firm**
110 W. 40th St., 10th Floor
New York, NY 10018
(212) 951-1710
david@shanieslaw.com

/s/ *Sara Godchaux*
Sara Godchaux, LA 34561
**Stuart H. Smith Law Clinic**
**Loyola University New Orleans College of Law**
7214 St. Charles Ave., Box 902
New Orleans, LA 70118
(504) 861-5560
shgodcha@loyno.edu

*/s/ Ronald Haley, Jr.*
Ronald Haley, Jr., LA 30900
**Haley & Associates**
8211 Goodwood Blvd., Ste. E
Baton Rouge, LA 70806
(225) 755-9925
rhaley@ronaldhaleylawfirm.com

\* *Lead Counsel*

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF COMPLIANCE

This motion contains 12,780 words, including footnotes, and excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This motion complies with the typeface requirements of Rules 27(d)(1)(E) and 32(a)(5) and the type style requirements of Rules 27(d)(1)(E) and 32(a)(6) because it is prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: November 27, 2023

*/s/ Nancy Rosenbloom*
Nancy Rosenbloom
Counsel for Plaintiffs-Appellees

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 27, 2023, a copy of the brief for Appellees was served via electronic case filing with the Clerk of the Court and all registered ECF users by using the CM/ECF system.

*/s/ Nancy Rosenbloom*
Nancy Rosenbloom
Counsel for Plaintiffs-Appellees

# United States Court of Appeals
#### FIFTH CIRCUIT
#### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

November 27, 2023

Ms. Nora Ahmed
American Civil Liberties Union Foundation of Louisiana
1340 Poydras Street
Suite 2160
New Orleans, LA 70112-0000

Mr. Russell D. Barksdale
Barksdale Law, L.L.C.
2831 Saint Claude Avenue
New Orleans, LA 70117

Ms. Ashley Dalton
Southern Poverty Law Center
201 Saint Charles Avenue
Suite 2000
New Orleans, LA 70170

Ms. Marisol Dominguez-Ruiz
American Civil Liberties Union Foundation
39 Drumm Street
San Francisco, CA 94111

Ms. Sara Helene Godchaux
Loyola University
School of Law
7214 Saint Charles Avenue
Campus Box 902
New Orleans, LA 70118-0000

Ms. Tammie M. Gregg
American Civil Liberties Union Foundation
National Prison Project
125 Broad Street
New York, NY 10004

Mr. Ronald S. Haley Jr.
Haley & Associates
8211 Goodwood Boulevard
Suite E
Baton Rouge, LA 70806

Ms. Corene Thaedra Kendrick
American Civil Liberties Union
National Prison Project
39 Drumm Street
San Francisco, CA 94111


Ms. Meghan K. Matt
Murell Law Firm
2831 Saint Claude Avenue
New Orleans, LA 70117


Ms. Susan M. Meyers
Southern Poverty Law Center
201 Saint Charles Avenue
Suite 2000
New Orleans, LA 70170


Mr. Christopher James Murell
Murell Law Firm
2831 Saint Claude Avenue
New Orleans, LA 70117


Ms. Nancy Rosenbloom
American Civil Liberties Union Foundation
National Prison Project
125 Broad Street
18th Floor
New York, NY 10004


Mr. David Bradley Shanies
110 W. 40th Street
10th Floor
New York, NY 10018


Mr. David J. Utter
Claiborne Firm
410 E. Bay Street
Savannah, GA 31401


Ms. Lauren Winkler
Southern Poverty Law Center
201 Saint Charles Avenue
Suite 2000
New Orleans, LA 70170


          No. 23-30634   Smith v. Edwards
                         USDC No. 3:22-CV-573

Dear Counsel,

**Due to the expedited nature of this case, please submit the paper copies of this document by tomorrow – 11/28/2023.**

The covers of your documents must be the following colors: Appellees' brief must be red. **DO NOT INCLUDE ANY NOTICES WITHIN THE PAPER COPIES.**

                    Sincerely,

                    LYLE W. CAYCE, Clerk

                    *Shea E. Pertuit*

                    By: _____
                    Shea E. Pertuit, Deputy Clerk
                    504-310-7666

cc:
        Mr. Connell L. Archey
        Ms. Carly H. Chinn
        Mrs. Allena McCain
        Mr. Lemuel Eggleston Montgomery III
        Ms. Lindley Anna Morris
        Ms. Madaline King Rabalais