UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated | CIVIL ACTION<br><br>NO. 22-573-SDD-RLB |
| VERSUS | |
| GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections | |

## ORDER

Before the Court is Defendants' Motion for Reconsideration, in Part, of Order [314], Granting Plaintiffs' Motion to Enforce [299] Order Permitting Access to OJJ Youth in Jackson Parish ("Motion for Reconsideration"). (R. Doc. 316). The motion is opposed. (R. Doc. 327).

**I.  Background**

On August 19, 2022, the plaintiff Alex A. commenced this putative class action on behalf of certain individuals under the secure care of the Office of Juvenile Justice ("OJJ") to obtain injunctive relief preventing their transfer from the Bridge City Center for Youth ("BCCY") to a location at the Louisiana State Penitentiary at Angola known as the Bridge City Center for Youth at West Feliciana ("BCCY-WF"). (R. Docs. 1, 96).

On September 23, 2022, the district judge denied Alex A.'s Motion for Preliminary Injunction, allowing the transfer of the youths to BCCY-WF based on certain promises regarding the temporary nature of the facilities and the conditions of confinement. (R. Doc. 79).

The operative pleading in this action is the First Amended Class Action Complaint filed by Alex A., Brian B.,[1] and Charles C. (collectively, "Plaintiffs") on behalf of themselves and others similarly situated against Governor John Bel Edwards,[2] Deputy Secretary of the OJJ Williams Sommers,[3] and the Secretary of the Louisiana Department of Public Safety & Corrections ("DOC") James M. LeBlanc (collectively, "Defendants"). (R. Doc. 96). Plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment (Count I), declaratory and injunctive relief for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Count II), and declaratory and injunctive relief for violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count III). (R. Doc. 96 at 35-39).

Among other things, Plaintiffs filed a Motion for Class Certification (R. Doc. 99) and second Motion for Preliminary Injunction (R. Doc. 163).

On August 31, 2023, the district judge granted Plaintiffs' Motion for Class Certification, appointing the Plaintiffs as class representatives for the following class:

> [A]ll youth who are now or will be in the custody of OJJ who have been, might be, or will be transferred to the OJJ site (the "Transitional Treatment Unit" or "TTU")[4] at Angola or another adult prison (the "Principal Class"), including a subclass of all current and future youth with disabilities within the meaning of the ADA and Section 504 of the Rehabilitation Act in the custody of OJJ who have been, might be, or will be transferred to the OJJ site at Angola or another adult prison (the "Disabilities Subclass").

---

[1] Brian B. is now deceased. (R. Doc. 162). Accordingly, Alex A. and Charles C. are the only remaining named "Plaintiffs" in this action.
[2] Governor Jeff Landry has been substituted in place of Governor Edwards by operation of law. *See* Fed. R. Civ. P. 25(d).
[3] Deputy Secretary Otha "Curtis" Nelson, Jr. has been substituted in place of Deputy Sommers by operation of law. *See* Fed. R. Civ. P. 25(d).
[4] OJJ policy defines a TTU as "[a] maximum custody unit for youth described as violent and very aggressive with a documented history of engaging in behavior which creates or incites aggressive responses from others and creates an unsafe therapeutic environment for staff and youth." (R. Doc. 70-3 at 5).

(R. Doc. 243 at 8).[5] The district judge also designated Plaintiffs' counsel as Class Counsel under Rule 23(g) of the Federal Rules of Civil Procedure. (R. Doc. 243 at 21).

On September 8, 2023, finding that the OJJ broke virtually every promise it had made, the district judge granted Plaintiffs' Second Motion for Preliminary Injunction, enjoined Defendants from housing youth in OJJ custody at BCCY-WF, and ordered Defendants to move the youth from BCCY-WF no later than September 15, 2023. (R. Doc. 257; *see* R. Doc. 267). Defendants appealed the foregoing rulings to the Fifth Circuit. (R. Doc. 259).

On September 15, 2023, Defendants moved the youth housed at BCCY-WF to the Jackson Parish Jail (the facility name used by Plaintiffs) or the Jackson Parish Juvenile Facility (the facility name used by Defendants) in Jonesboro, Louisiana (the "Jackson Facility"). (R. Doc. 229-1 at 1-3; R. Doc. 303 at 2; R. Doc. 303-1 at 1).[6]

On October 16, 2023, the district judge held a hearing, in part, on Plaintiffs' Class Motion for Access to Counsel (R. Doc. 262). In granting this motion, the district judge stated, in relevant part, the following:

> The Office of Juvenile Justice is ordered to promptly facilitate opportunity for class members to have a face-to-face meeting with class counsel;
>
> Consent to meet with class counsel shall be obtained from the class member prior to meeting with class counsel in the following manner. Prior to a meeting with class counsel, the class member shall be informed by one representative of OJJ, in the presence of class counsel, that there is a class action, that the youth is a member of the Class, that the members of the Class are represented by class counsel, that the class member is entitled to meet privately with class counsel but is not obliged to meet with class counsel.
>
> Counsel shall confer to determine which youth are subject to possible transfer to

---

[5] The district judge's ruling does not specifically define this class, which was proposed by Plaintiffs. Given that the district judge granted Plaintiffs' Motion for Class Certification, this proposed class definition is the governing class definition.

[6] As discussed below, the parties dispute regarding whether the Jackson Facility is an "adult prison" or must be a "TTU" for the purposes of the class definition.

3

the TTU. All youth presently in a TTU facility are class members and class counsel shall have access to them.

Any further issues related to this process shall be presented to the Magistrate Judge for resolution.

(R. Doc. 293 at 2).

On October 24-25, 2023, Plaintiffs' counsel met with 22 youth at the Jackson Facility. (*See* R. Doc. 299-1 at 3; R. Doc. 303 at 3). It appears that there is no dispute that these 22 youth were previously housed at BCCY-WF and were transferred to the Jackson Facility.

On November 1, 2023, Plaintiffs' counsel requested to meet with the 22 youth, as well as "any other new class members detained at the facility since the last visit to class members" by Plaintiffs' counsel, on November 3. (*See* R. Doc. 299-4 at 5). Defendants denied the request and proposed certain additional restrictions on attorney visits. (R. Doc. 299-4 at 4).

On November 13, 2023, Plaintiffs filed a Motion to Enforce, which sought an order granting Plaintiffs' counsel access to youth in OJJ custody and housed at the Jackson Facility. (R. Doc. 299).

On November 14, 2023, the undersigned held a status conference with the parties. (R. Doc. 302). The undersigned ordered the parties to file briefs addressing, among other things, the scope of the certified class, whether a scheduling order should be entered while the preliminary injunction ruling is on appeal, and whether and to what extent discovery (and access to counsel) should be allowed with respect to the Jackson Facility.

On November 27, 2023, the district judge referred the Motion to Enforce to the undersigned for resolution. That same day, the parties filed the briefs ordered by the undersigned. (*See* R. Docs. 307, 308).

4

On December 19, 2023, the Fifth Circuit dismissed the appeal as moot because the 90-day preliminary injunctive period under the Prison Litigation Reform Act ("PLRA") automatically expired on December 7, 2023 (or at the latest December 13, 2023), and vacated the district judge's ruling issuing the preliminary injunction. *See Smith v. Edwards*, No. 23-30634, 2023 WL 8747492 (5th Cir. Dec. 19, 2023). The Fifth Circuit did not address the scope of the certified class.

On February 7, 2024, the undersigned granted Plaintiff's Motion to Enforce, stating Plaintiffs' counsel shall have access to all youth in OJJ custody, wherever located, in accordance with the default terms of the Youth Services Policy No. C.1.4, which governs attorney visitation. (R. Doc. 299, "Motion to Enforce Order").

On February 12, 2024, Defendants filed the instant Motion for Reconsideration, which seeks reconsideration of the Motion to Enforce to the extent it allows Class Counsel to access youth who were not previously housed at BCCY-WF. (R. Doc. 316). In short, Defendants argue that the class definition cannot include other youths given that Secretary LeBlanc and Secretary Loftin have submitted sworn affidavits providing that "there are no youth who may be transferred to BCCY-WF and there are no youth who may be transferred to a TTU at an 'adult prison.'" (R. Doc. 316-1 at 12; *see* R. Docs. 316-2, 316-3).

In opposition, Plaintiffs argue that motions for reconsideration are disfavored and rarely granted, Defendants have failed to present any newly discovered evidence that merit reconsideration, and Defendants are improperly seeking to limit the class definition through the reconsideration of an order limited to the issue of access to counsel. (R. Doc. 327).

Defendants also moved to stay enforcement of the Motion to Enforce Order (i.e., to preclude Class Counsel from having access to youth at the Jackson Facility who were not

5

previously housed at BCCY-WF) until the resolution of the instant Motion for Reconsideration. (*See* R. Docs. 320). The district judge denied this relief. (R. Doc. 325).

On February 23, 2024, Defendants filed a Motion to Dismiss, which seeks dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because of mootness. (R. Doc. 322). The arguments raised by Defendants in support of dismissal based on mootness are similar to the arguments raised in the instant Motion for Reconsideration. This Motion to Dismiss remains pending before the district judge.

## II.    Law and Analysis

### A.    Legal Standards

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). Nevertheless, the Fifth Circuit has "consistently recognized that such a motion may challenge a judgment or order under the Federal Rules of Civil Procedure 54(b) [or] 59(e)." *Burkette v. E. Feliciana Par. Sheriff*, No. 18-996, 2022 WL 16758256, at *2 (M.D. La. Nov. 8, 2022) (citations omitted). Where, as here the motion for reconsideration concerns an interlocutory order, the appropriate standard to apply is found in Rule 54(b). *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017); *see Burkette*, 2022 WL 16758256, at *2 (applying Rule 54(b) standard to motion for reconsideration of ruling granting a motion to quash); *Cook v. Flight Servs. & Sys., Inc.*, No. CV 16-15759, 2019 WL 2067640, at *1 (E.D. La. May 10, 2019) (Rule 54(b) standard applies to reconsideration of interlocutory discovery order).

In pertinent part, Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any

6

time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Unlike with a Motion to Alter or Amend a Judgment brought under Rule 59(e), a court considering the Rule 54(b) standard "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin*, 864 F.3d at 336 (citations omitted). While Rule 54(b) affords broad discretion to the court to reconsider and reverse interlocutory orders, this "broad discretion must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Burkette*, 2022 WL 16758256, at *2 (quoting *Carroll v. SGS Auto. Servs., Inc.,* No. 16-537, 2021 WL 2550278, at *2 (M.D. La. June 22, 2021)).

"Motions for reconsideration are 'extraordinary remed[ies] and should be used sparingly in the interest of finality and conversation of judicial resources.'" *Dixon v. D.R. Horton, Inc. - Gulf Coast*, No. 22-01005, 2023 WL 2486587, at *2 (M.D. La. Feb. 24, 2023) (quoting *Adams v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the United States & Canada, AFL-CIO, Loc. 198*, 495 F. Supp. 3d 392, 396 (M.D. La. 2020)). "To the point, a motion for reconsideration is generally *not* the vehicle for raising arguments that could have been raised before the entry of the challenged order." *Dixon*, 2023 WL 2486587, at *2 (citing *Adams*, 495 F. Supp. 3d at 396; *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

**B.     Analysis**

Having considered the arguments of the parties, the Court finds no basis to reconsider (or otherwise modify or vacate) the Motion to Enforce Order.

The district judge (1) granted Plaintiffs' Motion for Class Certification and (2) granted Plaintiffs' Class Motion for Access to Counsel. (*See* R. Docs. 243, 293). Plaintiffs then filed a motion seeking to enforce the district judge's order granting access to counsel given that Defendants sought to add additional restrictions on attorney visits and otherwise refused to allow attorney visits with youth who were not previously housed at BCCY-WF. (R. Doc. 299). It is only in the context of determining whether and to what extent Class Counsel could visit youth at the Jackson Facility that the undersigned addressed the scope of the class as defined by the district judge. Based upon a plain reading of the district judge's ruling granting class certification, the undersigned concluded that "individual youths moved directly to the Jackson Facility fall within the scope of the class as defined by the district judge's ruling." (R. Doc. 314 at 6).

Defendants now seek a ruling limiting the certified class to "those youth in OJJ's custody who were previously housed at BCCY-WF." (R. Doc. 316 at 3). To be clear, the undersigned's Motion to Enforce Order did not define, or otherwise modify, the scope of the class in this action. To the extent Defendants are seeking a revised ruling modifying the class in this action, they must seek such relief from the district judge or by appeal as allowed under Rule 23(f). Indeed, whether the purported new facts and evidence presented by Defendants (including the closure of BCCY-WF) have any bearing on the scope of the class in this action (or whether this action should proceed) has been presented to the district judge through Defendants' Rule 12(b)(1) Motion to Dismiss. (*See* R. Doc. 322).

Having considered the arguments of the parties, the Court finds no basis for modifying the determination in the Motion to Enforce Order. Based on the *district judge's certification of the class and the class definition*, the scope of the class includes all youth at the Jackson Facility

because the class definition includes youth who "have been, might be, or will be" transferred to BCCY-WF.[7]

Defendants argue that the scope of the class is necessarily limited to those who have already been transferred to BCCY-WF given purported new evidence and facts. Defendants argue that there is no longer any possibility that any juveniles in OJJ custody will be transferred to BCCY-WF in the future because "(1) OJJ closed BCCY-WF and currently has no plans to resume use of BCCY-WF to house youth because OJJ's newly-renovated facility at SCY-Monroe will soon reopen, obviating the need for secure care housing at BCCY-WF; and (2) the Louisiana Department of Corrections ("DOC") has already begun using, and intends to use, the prior BCCY-WF facility to house only adult offenders." (R. Doc. 316-1 at 3) (emphasis added). Defendants submit declarations of Secretary Loftin and Secretary LeBlanc in support of these plans and intentions. (*See* R. Doc. 322-3, 322-4). Among other things, Secretary LeBlanc states that "[f]or the foreseeable future, DOC intends to use the Angola Reception Center [the building on campus at Louisiana State Penitentiary previously occupied by BCCY-WF] for housing only adult inmates." (R. Doc. 322-4 at 1) (emphasis).

The subjective plans and intentions set forth by Defendants do not merit a finding, for the purpose of determining whether Class Counsel should have access to all youth at the Jackson Facility, that youth in OJJ custody are not potentially subject to transfer to BCCY-WF in the

---

[7] The parties have set forth additional arguments with respect to their competing understandings of whether youth who have never been housed at BCCY-WF independently qualify as class members based on being held at the Jackson Facility. Defendants argue that the Jackson Facility (or any other facility holding youth in OJJ custody other than BCCY-WF) must be both an "adult prison" and a "TTU" for the purposes of the class definition. (*See* R. Doc. 316-1 at 3-4, 11-12). Plaintiffs, on the other hand, argue that the Jackson Facility (or any other facility holding youth in OJJ custody other than BCCY-WF) must only be an "adult prison." (*See* R. Doc. 327 at 8 and n. 6). The Motion to Enforce Order provided the parties with an opportunity to conduct limited discovery with respect to whether the Jackson Facility is an "adult prison" and whether it is operating as a TTU. (*See* R. Doc. 314 at 12). The Court need not resolve this dispute for the purposes of the instant ruling because the scope of the class includes all youth at the Jackson Facility given their potential transfer to BCCY-WF.

future. Furthermore, as stated above, Defendants have raised these very issues in the context of seeking dismissal of this action for lack of subject matter jurisdiction based on mootness. (*See* R. Doc. 322). Defendants' argument that the scope of the class is narrowed in light of post-certification events is best addressed by the district judge in the context of resolving that pending dispositive motion.

The underlying issue addressed in the Motion to Enforce Order was the scope of Class Counsel's visitation rights with respect to youth in OJJ custody at the Jackson Facility. For the purposes of resolving the instant Motion for Reconsideration, the undersigned concludes that Defendants have not established that the youth located at the Jackson Facility (regardless of whether they were transferred from BCCY-WF) do not face potential transfer to BCCY-WF in the future. Accordingly, Class Counsel shall have access to all youth in the Jackson Facility, in accordance with the Motion to Enforce Order, absent an order from the district judge narrowing the class in this action to exclude all youth in OJJ custody who were not previously transferred to BCCY-WF.

### III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion for Reconsideration (R. Doc. 316) is **DENIED**. The parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on March 14, 2024.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**