## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.[1]; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS[2], in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,<br><br>        Defendants. | Civil Action No. 3:22-CV-00573-SDD-RLB |

## DECLARATION OF HEATHER BARROW

I, Heather Barrow, hereby declare the following to be true under penalty of perjury pursuant to 28 U.S.C. § 1746:

1) I am over 18 years old and am making this declaration of my own free will. Everything in this declaration is true to the best of my personal knowledge.

2) I reside in St. Tammany Parish, Louisiana. I work as an Investigator for the Southern Poverty Law Center (SPLC). I have been employed in this position since October of 2022.

---

[1] Pursuant to Rule 25(a)(2) of the Federal Rules of Civil Procedure, Plaintiffs notified the Court of the death of Brian B. Doc. 162. Brian B. is noted as a Plaintiff until the clerk is ordered to change the caption.

[2] On November 18, 2022, Gov. Edwards announced the resignation of Dep. Sec. Sommers and the appointment of Otha "Curtis" Nelson as his replacement. Because Sommers was sued in his official capacity, Nelson was automatically substituted as a Defendant. Fed. R. Civ. P. 25(d). Gov. Jeff Landry is now the official capacity Defendant instead of Edwards, and as of February 2024, Gov. Landry has appointed Kenneth Loftin as Deputy Secretary, who has replaced Nelson. Doc. 316-2. Landry and Loftin are automatically substituted as Defendants. Id. Edwards and Sommers are noted as Defendants until the clerk's office changes the caption.

3) I have been an Investigator and Mitigation Specialist for more than 25 years.

4) In the course of my work on *Alex A. v. Edwards*, 22-cv-0057-SDD-RLB, I, along with SPLC Attorney Ashley Dalton, conducted legal visits with class members in the custody of the Louisiana Office of Juvenile Justice on Wednesday, February 28 and Thursday, February 29, 2024. On February 28, I met with 8 youths being held in the Jackson Parish Jail at the Jackson Parish Sheriff's Office. On the following day, February 29, 2024, I conducted legal visits with 15 class members held in the Cypress unit at Swanson Center for Youth - Monroe ("Cypress") in Monroe, Louisiana. Most of the youths I met with at Cypress had been incarcerated by OJJ in Angola and/or the Jackson Parish Jail before arriving at Swanson and being held in the Cypress unit.

5) I have also reviewed the notes of Attorney David Utter from his legal visits with additional youths incarcerated at the Jackson Parish Jail. Mr. Utter met with 20 youths on Thursday, February 29 and Friday, March 1, 2024 at the Jackson Parish Sheriff's Office.

6) Previously, attorneys visiting youth at the Jackson Parish Jail have been permitted to meet with youth in the jail. However, all the legal visits I participated in occurred in the Sheriff's Office, and youth were transported there for the visits. My understanding is that the same is true of the visits Mr. Utter conducted on February 29 and March 1.

7) I have reviewed the ARPs filed by counsel on behalf of youths with whom we met, as well as attorney notes prepared in connection with the visits. This declaration summarizes my review of those materials, rather than my conversations with any particular class member, and further reflects my direct observations during the visits I attended.

8) The youths housed at Jackson Parish Jail report they are locked down in cells nearly 24 hours a day. They are housed in small cells with 3 or more people. There is either one bunk or a single bed. Everyone else must sleep on the floor. They are provided a mat that is approximately 2 inches thick. They are given one thin blanket and no pillow. They are only out of their cells for recreation occasionally and for a shower every other day.

9) After being transferred to the Jackson Parish Jail from Angola, youth were originally housed in a dorm ("C Dorm"), but later moved into the small cells. C Dorm is currently used to house adults. When state officials made a visit in mid-February, the youths were moved back into C Dorm from their small cells for the visit. After the visit was over, they were moved back and locked down in the small, crowded cells.

10) While in C Dorm, the youths were maced frequently and shot with pepper balls. They also had taser gloves used on them numerous times. My understanding is that "taser gloves" are gloves that are used to send an electric shock to a person gripped by the gloves, while protecting the wearer from the shock. In one particularly violent incident, the correctional officers maced everyone in C Dorm. The youth were trying to crawl up closer to the vents, attempting to find air. Some of the youths have asthma and couldn't breathe at all. Youth also report an incident where, after macing the entire dorm, correctional officers brought them outside and made them get on their knees, with their

hands tied behind their backs. It was dark and cold. They were threatened with being maced more. They remained outside for a long time in the cold while still burning from the mace.

11) All the youths we met with at Jackson Parish are Black. Several reported that staff repeatedly call them "boy," which the youth view as a racial slur. Several also reported "Mr. Tim" is in charge. He has participated in and enforced the continued use of mace, pepper bullet guns, taser gloves, and shackling.

12) Some of the youth, ages 18 or older who remain in OJJ custody up to age 21, have been housed with adults in Dorm A and Dorm B. The adults do not like them being in the dorms, and the youths must stick together and try to defend each other. Youth who have been in Dorm A and Dorm B state they have witnessed fights and stabbings nearly every day in these adult dorms. The correctional officers do not enter the dorm to stop fights. They only enter after the fights are over to intercede by macing everyone.

13) Some of the youths aged 18 and older, yet still in OJJ custody, are being housed in cells with adults.

14) Other youths under 18 who are not housed in the adult dorms or in cells with adults reported they are around adults almost every day. When they are moved, they encounter adults in the hallway or in the cafeteria. Adults pass their cells on a regular basis, and they can see and/or hear them as they pass by.

15) The youths I met with in Jackson Parish were all dressed in green shirts, khaki pants, and nice shoes. Youth at the facility normally wear scrubs and noted that they were provided the green shirts, khaki pants, and nice shoes specifically for the legal visit. They were shackled around the waist with wrist cuffs throughout our meeting, The two transport officers sat directly outside the door about 5 feet away from where the interview was taking place. We could hear them talking and we were concerned about the officers hearing what youth said to us during a legal visit.

16) On February 29, Attorney Dalton and I met with 15 class members in the Cypress Unit at Swanson Youth Center-Monroe. Nearly all of the youths in the Cypress Unit have been incarcerated at the Jackson Parish Jail, Angola, or both.

17) When escorted to visit with us at Cypress, the youth wore a new, yellow knit shirt, khaki pants, shoes, and socks. The youths reported they had been given these clothes prior to the meetings with us. We did not see any other youth in the facility wearing these new clothes. The youths normally wear scrubs. And although the shackles were removed before the youth came to talk with us, this was clearly part of the show put on for us. I could hear the shackles when the youth were escorted into the hallway outside the door of the room where we met with them.

I declare under penalty of perjury that the foregoing declaration is true and accurate.

Date: 3/14/2024

Heather Barrow