## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

ALEX A., by and through his guardian, Molly Smith, et al.,

      Plaintiffs,

v.

GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana, et al.,

      Defendants.

Civil Action No. 3:22-CV-00573-SDD-RLB

## ATTORNEY DECLARATION OF DAVID J. UTTER

I, David J. Utter, hereby declare the following to be true under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am an attorney admitted to practice in this district. I am lead counsel for the Plaintiffs and Plaintiff Class in this action.

2. I make this declaration to submit to the Court the following exhibits in support of Plaintiffs' opposition to Defendants' Motion to Dismiss, Doc. 322[1]:

   - Attachment 1: Roster of youth in OJJ custody confined at the Jackson Parish Jail as of March 11, 2024, provided to Plaintiffs by Defendants' counsel.

   - Attachment 2: Emergency grievances (ARPs) submitted to OJJ by youth regarding the Jackson Parish Jail, and responses thus far from OJJ.

---

[1] All exhibits containing identifying information of youth have been redacted. Plaintiffs have provided Defendants with unredacted versions of these documents including confidential identifying information.

- Attachment 3: Jackson Parish Jail "Offender Orientation Handbook," provided to youth in OJJ custody confined at the Jackson Parish Jail.

Respectfully submitted this 15th day of March, 2024.

David J. Utter

1

**Current Jackson Parish Youth - March 11 2024**

| | Client Id | Last Name | First Name |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |
| 29 | | | |
| 30 | | | |
| 31 | | | |
| 32 | | | |
| 33 | | | |
| 34 | | | |
| 35 | | | |
| 36 | | | |

2

B.5.3 (a)

**YOUTH SERVICES**
**ADMINISTRATIVE REMEDY PROCEDURE FORM**

Number: _____-____-____
Date Received:_____

Name: ████████████ _____ Client ID Number: ████████ _____

Facility: __Jackson Parish Jail_____ Living Area:_____

## "THIS IS A REQUEST FOR ARP"

(You may ask your case manager or other staff members for help completing this form.) State your problem (WHO, WHAT, WHEN, WHERE AND HOW) and the remedy requested (what you want to solve the problem):

Problem: ___See attached_____

_____

_____

_____

Remedy requested: __See attached_____

Date of Incident/Occurrence: __See attached_____ Today's Date: 1/30/2024_____

**This form must be completed within 90 calendar days of the date of the incident/occurrence and given to the ARP Coordinator or placed in the ARP/grievance box.**

| Screening - ARP Coordinator's Review |
|---|

Rejected _____Returned _____ Accepted _____ Screening Date: _____ Sexual Assault ☐ Yes ☐ No
Reason:_____

| Emergency Request |
|---|

(Maximum Time for Processing – Initial Response: 48 hours / Final Response: 5 days)

Rejected: _____ Accepted _____ Reason:_____

Sent to Facility Director / Youth Facilities Director - Statewide / IS on:_____

SFD Initial Response Received on:_____ SFD Final Decision Received on:_____

| Step One - ARP Coordinator/IS Recommendation and Facility Director's Response |
|---|

(Maximum Time For Processing: 30 calendar days)

ARP Coordinator/IS Recommendation: _____

Sent to Facility Director on: _____ AC/IS Signature:_____

Facility Director's response to your ARP Step One request:_____

_____

_____

Date: _____ Facility Director's Signature: _____

Received Step One on: _____ Youth's Signature: _____

**If you are not satisfied with this response, you may go to Step Two. The ARP Coordinator must submit your request to the Deputy Secretary within 15 calendar days after you receive the Step One response.**

Request Step Two: _____Yes _____No    Reason for Step Two request: _____

_____

Date Step Two request received by AC: _____ Date Sent to Deputy Secretary: _____

AC's Signature: _____

| Step Two - Deputy Secretary's Response |
|---|

(Maximum Time For Processing: 21 calendar days)

Date Received: _____

Deputy Secretary's response to ARP Step Two request: _____

_____

_____

_____

Date: _____ _____
                          Deputy Secretary's Signature

Date received Deputy Secretary's response: _____ _____
                                                              Youth's Signature

**If you are not satisfied with this response, you may seek judicial review. A request for judicial review must be filed with the juvenile court which entered your order of commitment within 30 calendar days after receiving the Step Two decision.**

November 2022

## EMERGENCY ARP APPLICATION

**Submitted On Behalf of** ▆▆▆ ▆▆▆ **D.O.B.** ▆▆▆▆▆

This is an Emergency ARP submitted on behalf of ▆▆ ▆▆▆, ▆▆▆▆▆▆

I am an attorney representing ▆▆ ▆▆▆ a youth in the custody of the Office of Juvenile Justice ("OJJ"). I attach authority to file a 3rd party ARP signed by ▆▆ here. I am filing this Emergency **ARP on** ▆▆ behalf pursuant to La. Admin. Code tit. 22 ch. 7A. § 713.F.6 and OJJ Youth Services Policy B.5.3.VII.I. Because this is an Emergency ARP, the secure facilities director must provide an initial response within 48 hours and issue a final decision within five calendar days of submission. If no response is provided within five calendar days, this emergency grievance shall be deemed exhausted and ripe for judicial review.

Because this grievance arises directly from the imminent risk of physical and emotional harm that ▆▆ faces, this grievance must be treated as an Emergency ARP under both the Louisiana Administrative Code and OJJ Youth Services Policy.

### The Problem:

▆▆ is currently housed in a cell designed for two people, but there are three and sometimes four people in the cell. Without a bed, ▆▆ has slept on the ground. He consistently spends almost 24 hours per day in these overcrowded conditions and is only let out to shower on Mondays, Wednesdays, and Fridays. He sees adults from the jail regularly throughout the facility. He is frequently subject to macing and tasers. He was most recently maced earlier this month but is often subjected to painful fumes from others being maced around him. He also was tasered while sitting on a metal bench with several other boys. When one boy was tased, the shock went through the metal bench and tased him as well.

### The Remedy Sought:

▆▆ is suffering substantial physical and psychological harm. Accordingly, the following remedies are requested:

1. Immediate removal from the above stated conditions;
2. Cessation of excessive tasering and macing;
3. Immediate restoration of services and other activities outside of ▆▆ cell.

### The Response

Per the Office of Juvenile Justice's Administrative Remedy Procedure B.4.3.VII.I, you are required to respond within 48 hours to the submission of this Emergency ARP, and you must provide a final decision within 5 days of filing. At that point, this emergency grievance shall be deemed exhausted and ripe for judicial review

B.5.3 (d)

# Administrative Remedy Procedure
# Third Party Acknowledgment/Approval Form

I, [redacted] _____ (Youth name), Client ID # [redacted] ,

due hereby agree/approve Hectr Linares, David Utts, + Sara Godchaux  to file an ARP
(Name of Third Party)

on my behalf.  I understand that the above named third party is not my parent or

legal guardian, and is acting in my best interest.

[redacted] _____
**Youth Signature**

Ashley Villa Ortega
**Witness**

10/25/22
**Date**

10/25/22
**Date**

October 2020

JEFF LANDRY, Governor

**Office of Juvenile Justice**



Kenny Loftin, Deputy Secretary

February 1, 2024

David Utter
Via e-mail: david@claibornefirm.com

Dear David,

We are in receipt of the "Emergency ARP Application" submitted on behalf of your client, ▮▮▮ Upon review of the allegations, ▮▮▮ is not subject to any immediate risk of harm nor is ▮▮▮ subject to any substantial risk of imminent personal injury and irreparable harm. This ARP does not qualify as an Emergency ARP, and ▮▮▮'s ARP will be process as a standard ARP.

Tasers are not used at The Jackson Parish Facility where ▮▮▮ is currently housed. Further, chemical spray is used sparingly and only as necessary to protect persons and property. These allegations do not place ▮▮▮ at risk of irreparable harm and will be processed as a standard ARP.

▮▮▮ has a mattress and bed available to him but has chosen to place his mattress on the floor to sleep. Additionally, all services and activities, including recreation time, have been made available to ▮▮▮ There is no emergency regarding these allegations, and OJJ will process these allegations as a standard ARP.

Regards,

Cassandra Washington
State Wide Facility Director

| | |
|---|---|
| **From:** | Ashley Dalton |
| **To:** | Alex A |
| **Subject:** | Fw: Emergency ARP - ▉ Notice of Appeal |
| **Date:** | Monday, February 5, 2024 5:09:30 PM |

FYI



**Ashley Dalton**  she/her/hers
**Staff Attorney | Democracy: Education & Youth Litigation Team**
**Southern Poverty Law Center**
T 504.322.8060
ashley.dalton@splcenter.org | splcenter.org
Licensed in Admitted in Louisiana and Massachusetts

This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify the Southern Poverty Law Center immediately by returning it to the sender and deleting this copy from your system. Thank you for your cooperation.

**From:** Ashley Dalton <ashley.dalton@splcenter.org>
**Sent:** Monday, February 5, 2024 5:08 PM
**To:** David Utter <david@claibornefirm.com>; Donovan Shultz <dshultz@jacksonparishsheriff.com>; 'abrown@jacksonparishsheriff.com' <abrown@jacksonparishsheriff.com>; Courtney Myers <Courtney.Myers@la.gov>; Cassandra Washington (OJJ) <Cassandra.Washington@LA.GOV>
**Cc:** Kyle Miller <Kyle.Miller@butlersnow.com>; Allena McCain <Allena.McCain@butlersnow.com>; Lem Montgomery <Lem.Montgomery@butlersnow.com>
**Subject:** Emergency ARP - ▉ Notice of Appeal

Counsel, OJJ, and Jackson Parish Sheriff's Office:

We write to appeal your decision of February 2, 2024, denying emergency status for ▉▉ ▉▉ ARP challenging the conditions of his confinement at Jackson Parish Jail. Your denial ignores the punitive conditions of confinement and complete denial of services to which ▉ is entitled as a juvenile. The Jail's treatment of youth, including those charged as adults and those transported there from OJJ facilities, violates the United States Constitution and Louisiana's Children's Code. Although the current ARP policy seems to provide no mechanism to appeal the denial, we nonetheless file this appeal in an attempt to navigate OJJ's policy.

Thank you for your time and attention.

Best,
Ashley



**Ashley Dalton**  she/her/hers
**Staff Attorney | Democracy: Education & Youth Litigation Team**
**Southern Poverty Law Center**
T 504.322.8060
ashley.dalton@splcenter.org | splcenter.org
Licensed in Admitted in Louisiana and Massachusetts

This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify the Southern Poverty Law Center immediately by returning it to the sender and deleting this copy from your system. Thank you for your cooperation.

**From:** Revettea Woods <Revettea.Woods@la.gov>
**Date:** February 2, 2024 at 6:20:34 AM EST
**To:** David Utter <david@clairbornefirm.com>, dshultz@jacksonparishsheriff.org, dshultz@jacksonparishsheriff.com, abrown@jacksonparishsheriff.org, abrown@jacksonparishsheriff.com, Lem.Montgomery@butlersnow.com, Kyle.Miller@butlersnow.com, Allena McCain <Allena.McCain@butlersnow.com>, Courtney Myers <Courtney.Myers@la.gov>, "Cassandra Washington (OYD)" <Cassandra.Washington@la.gov>
**Subject: RE: Emergency ARP -** ■

Good morning,

Please find attached the Response to ■'s ARP which did not attach to my previous email.

With regards,

*Revettea D. Woods*

General Counsel
Office of Juvenile Justice
7919 Independence Boulevard
P.O. Box 66458
Audubon Station
Baton Rouge, LA 70896
225. 287.7972 (Office)
225964.4290 (Cell)
22.287.7901 (Fax)
Revettea.woods@la.gov

**From:** David Utter <david@clairbornefirm.com>
**Sent:** Wednesday, January 31, 2024 6:35 AM
**To:** dshultz@jacksonparishsheriff.org; dshultz@jacksonparishsheriff.com; abrown@jacksonparishsheriff.org; abrown@jacksonparishsheriff.com; Lem.Montgomery@butlersnow.com; Kyle.Miller@butlersnow.com; Revettea Woods

&lt;Revettea.Woods@LA.GOV&gt;
**Subject:** Emergency ARP - █

<div style="border:2px solid red;">

**EXTERNAL EMAIL:** Please do not click on links or attachments unless you know the content is safe.

</div>

Counsel, OJJ, and Jackson Parish Sheriff's Office:

I attach here an emergency grievance filed on behalf of ███ ███  In accordance with OJJ Y.S. Policy B.5.3(I), and to the extent not copied here, I expect this to be directed immediately to the Facility Director, Youth Facilities-Director - Statewide, and Investigative Services for response as soon as possible and in no event more than 48 hours from now.

A response is required within the proper time periods discussed in the Emergency ARP. I can be reached on my cell phone: (912) 944-5431 should you have any questions.

Best,

David

David J. Utter, Esq.
The Claiborne Firm, P.C.
410 E. Bay Street
Savannah, GA 31401
(912) 236-9559
david@claibornefirm.com

**Disclaimers:**
***Notice: No duties are assumed, intended or created by this communication.*** If you have not executed a fee contract or an engagement letter, this firm does *not* represent you as your attorney. You are encouraged to retain counsel of your choice if you desire to do so.

Disclosure under IRS Circular 230: Unless expressly stated otherwise, nothing contained in this communication (including any attachments) may be relied upon or used (1) by any taxpayer for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code and/or (2) by any person to support the promotion or marketing of or to recommend any Federal tax transaction(s) or matter(s) addressed in this communication. Any taxpayer should seek independent tax advice with respect to any Federal tax transaction or matter addressed herein.

**Confidentiality Notice:** This email has been sent from a law firm. It may contain privileged and confidential information intended for the use of the person(s) named above. If you are not an intended recipient, you are hereby notified that any dissemination or duplication of the email is prohibited, and that there shall be no waiver of any privilege or confidence by your receipt of this transmission. If you have received this email in error, please notify us by collect telephone call and immediately delete this email.

B.5.3 (a)

**YOUTH SERVICES**
**ADMINISTRATIVE REMEDY PROCEDURE FORM**

Number: ____-____-____
Date Received:_____

Name: ▮▮▮▮▮▮▮▮  Client ID Number: ▮▮▮▮▮

Facility:  Swanson Center for Youth - Monroe  Living Area:_____

## "THIS IS A REQUEST FOR ARP"

**(You may ask your case manager or other staff members for help completing this form.) State your problem (WHO, WHAT, WHEN, WHERE AND HOW) and the remedy requested (what you want to solve the problem):**

Problem: __See attached_____

_____

_____

_____

Remedy requested:  See attached_____

Date of Incident/Occurrence: _See attached_____  Today's Date: 3/6/2024_____

**This form must be completed within 90 calendar days of the date of the incident/occurrence and given to the ARP Coordinator or placed in the ARP/grievance box.**

| Screening - ARP Coordinator's Review |
| --- |

Rejected _____Returned _____ Accepted    Screening Date: _____ Sexual Assault ☐ Yes ☐ No
Reason:_____

| Emergency Request |
| --- |

(Maximum Time for Processing – Initial Response: 48 hours / Final Response: 5 days)

Rejected: _____ Accepted _____ Reason: _____

Sent to Facility Director / Youth Facilities Director - Statewide / IS on: _____

SFD Initial Response Received on:_____  SFD Final Decision Received on:_____

| Step One - ARP Coordinator/IS Recommendation and Facility Director's Response |
| --- |

(Maximum Time For Processing: 30 calendar days)

ARP Coordinator/IS Recommendation: _____

Sent to Facility Director on: _____  AC/IS Signature: _____

Facility Director's response to your ARP Step One request: _____

_____

_____

Date: _____  Facility Director's Signature: _____

Received Step One on: _____  Youth's Signature: _____

**If you are not satisfied with this response, you may go to Step Two. The ARP Coordinator must submit your request to the Deputy Secretary within 15 calendar days after you receive the Step One response.**

Request Step Two: _____Yes _____No    Reason for Step Two request: _____

_____

Date Step Two request received by AC: _____  Date Sent to Deputy Secretary: _____

AC's Signature: _____

| Step Two - Deputy Secretary's Response |
| --- |

(Maximum Time For Processing: 21 calendar days)

Date Received: _____

Deputy Secretary's response to ARP Step Two request: _____

_____

_____

_____

Date: _____  _____
                              Deputy Secretary's Signature

Date received Deputy Secretary's response: _____  _____
                                                              Youth's Signature

**If you are not satisfied with this response, you may seek judicial review. A request for judicial review must be filed with the juvenile court which entered your order of commitment within 30 calendar days after receiving the Step Two decision.**

November 2022

**EMERGENCY ARP APPLICATION**
**March 6, 2024**

**Submitted On Behalf of** ███████ ██████ **(OJJ No.** ██████

This is an Emergency ARP submitted on behalf of ███████ █████ .

  I am an attorney representing ████████ , a youth in the custody of the Office of Juvenile Justice ("OJJ"). I attach authority to file a 3rd party ARP signed by here. I am filing this Emergency ARP on ████████ 's behalf pursuant to La. Admin. Code tit. 22 ch. 7A. § 713.F.6 and OJJ Youth Services Policy B.5.3.VII.I.Because this grievance arises directly from the imminent risk of physical and emotional harm that ████████ faces, this grievance must be treated as an Emergency ARP under both the Louisiana Administrative Code and OJJ Youth Services Policy.

**The Problem:**

  ████████ is currently detained in the Cypress Unit at the Swanson Center for Youth at Monroe ("Swanson"). ████████ came to the Cypress Unit at Swanson after being detained in OJJs custody at two adult facilities: first, at the now-closed Bridge City Center for Youth – West Feliciana facility located on the grounds of the Louisiana State Penitentiary at Angola ("Angola"), and second, at the Jackson Parish Jail. Although the OJJ facility at Angola is currently not in use by OJJ, Louisiana's refusal to commit to its permanent closure to youth in a legally binding way and the continued use of adult facilities, including the Jackson Parish Jail, by OJJ exposes ████████ to ongoing and serious future risks of harm, including heightened risk of suicide and sexual assault; denial of education; denial of counseling and other rehabilitative treatment and therapies; inadequate and substandard medical and mental health care; unnecessary and excessive uses of force, including with pepper spray ("mace"), pellet guns, and tasers; and the use of psychologically harmful solitary confinement. These unconstitutional conditions of confinement represent an unwarranted and unlawful danger to ████████ and to all others being so detained.

1. On September 15, 2023, OJJ announced its decision to move youth from Angola to the Jackson Parish Jail. OJJ claimed that the facility at the Jackson Parish Jail was a juvenile facility at the time youth were transferred. As a result of OJJ's decision, ████████ was detained at the Jackson Parish Jail after the Angola facility closed and has been detained at the Jackson Parish Jail within the past 90 days.

2. The experience of ████████ confirms that the Jackson Parish Jail is an adult facility improperly and illegally housing youth adjudicated delinquent. The Jackson Parish Jail serves as a detention center for adult pre-trial detainees and adults sentenced to lengthy periods of incarceration. ████████ is a minor and has not been convicted of a crime. Nevertheless, ████████ was detained in the past 90 days at the Jackson Parish Jail with no sight-sound separation from adults, resulting in substantial and irreparable psychological harm. At the Jackson Parish Jail facility, ████████ saw and heard adults aged 22 and older daily, including outside his cell; in hallways; and in the cafeteria. Because so many youths are detained in this overcrowded facility, ████████ was detained in a cell with between three and five other young people in a cell designed for two people. The cell had only two beds, so he and other youth slept on the floor with nothing but a thin mattress and blanket. While in these conditions, ████████ had no access to counseling and education services that OJJ is required to provide for youth in its custody. ████████ also was denied any contact or video visits with his family. Throughout his detention at the Jackson Parish Jail, he witnessed staff from the Jackson Sheriff's Office using mace, shock gloves, and pellet guns on children regularly. ████████ was maced in a cell he shared with 4-5 other kids, even

though he has asthma. Because ████████ remains in OJJ custody, he is at risk of being returned to an adult facility, including at the Jackson Parish Jail, at any time, at the discretion of OJJ.

3. In the past 90 days, OJJ transferred ████████ from the Jackson Parish Jail to the Cypress Unit at OJJ's Swanson Center for Youth. ████████ has been provided with no reason for his placement in the Cypress Unit. He was previously housed at Angola and the Jackson Parish Jail.

4. In the Cypress Unit, ████████ is required to spend over twenty (20) hours per day alone in his cell. In the single-youth cell, OJJ staff keep the lights on twenty-four (24) hours per day. The lights have been kept on all day and night in the cell where he is confined for at least a week and up to two weeks prior to the filing of this ARP. ████████ is permitted to exit his cell only to shower and to attend "school". There are no opportunities for outdoor recreation, and school is offered for no more than three (3) hours per day. The children are shackled in school, and there is no live instruction. Throughout the Cypress Unit, there is a tactical team that regularly enters the unit and uses excessive force, including regular and repeated use of mace, against the youth. Youth on the unit including ████████ are regularly required to submit to full-body strip searches. While in these conditions of solitary confinement, he has had one seizure in the cell. He called for medical attention but he was not allowed out to seek medical treatment. ████████ has been provided with no reason for being placed in these conditions and is suffering extreme emotional and physical distress.

5. The youth is suffering extreme psychological distress in his current conditions of solitary confinement and remains immensely fearful that he could be transferred to Jackson Parish Jail again. The risk of return to an adult facility is heightened for this youth, who is currently held in abusive and psychologically harmful conditions in the Cypress Unit. The placement in solitary confinement and placement in an adult facility gravely impact this minor's capacity to rehabilitate and complete requirements necessary to progress on his rehabilitative journey and return home to his family and community.

**The Remedy Sought:**

████████ ████ is suffering substantial physical and psychological harm. Accordingly, the following remedies are requested for ████████ :

1. Immediate removal from the above stated conditions of solitary confinement;
2. To the extent the youth remains in the cell, cessation of 24-hour artificial lighting;
3. Immediate restoration of full educational services required under Louisiana law, including any necessary accommodations and/or special education services;
4. Immediate restoration of all other mandated rehabilitation programming and treatment, including education, recreation, counseling, and other therapies to ensure continued rehabilitation and allow the youth to return home to his family and community as soon as possible;
5. Immediate cessation of the use of mace, tasers, and/or pellet guns on youth in OJJ custody and implementation of policies and monitoring of use of force against juveniles in OJJ custody;
6. Immediate restoration of services and other activities outside of the youth's cell;
7. Immediate restoration of family visits;
8. Immediate commitment to the permanent closure of the Angola facility to youth;
9. Immediate cessation of detention of youths in OJJ custody at the Jackson Parish Jail; and
10. Immediate evaluation by OJJ to determine whether the youth can be recommended for a step-down or release to the community.

**The Response**
Per the Office of Juvenile Justice's Administrative Remedy Procedure B.4.3.VII.I, you are required to respond within 48 hours to the submission of this Emergency ARP, and you must provide a final decision within 5 days of filing. At that point, this emergency grievance shall be deemed exhausted and ripe for judicial review

OJJ NO ████████

I, ████████████, hereby grant authorization to David Utter to file a 3rd party ARP on my behalf. I understand they are not my legal guardian and are acting in my best interest.

████████████
Youth

_Heather L Burrow_
Witness

2-29-24
Date

2/29/2024
Date

JEFF LANDRY, Governor

# Office of Juvenile Justice



Kenneth A. Loftin, Deputy Secretary

March 8, 2024

David Utter

Via e-mail: david@claibornefirm.com

     RE:   ARP filed on behalf of ▮▮▮▮▮▮▮

Mr. Utter,

     We are in receipt of the ARP application submitted by you on behalf of ▮▮▮▮▮▮▮ ▮▮▮▮ on Wednesday, March 6, 2024, at 11:10 a.m. (central) in which you requested that the ARP application be reviewed on as an Emergency Grievance. Upon review of the allegations, ▮▮▮ is not subject to any immediate risk of harm, nor is ▮▮▮ subject to any substantial risk of imminent personal injury and irreparably harm. This ARP does not qualify as an Emergency Grievance, and ▮▮▮'s ARP will be processed as a standard ARP.

     First, ▮▮▮ is currently housed in the Cypress Unit at the Swanson Center for Youth at Monroe. ▮▮▮ will remain housed in the Cypress Unit and, for at least the next sixty (60), ▮▮▮ will not be housed in the juvenile unit at the Jackson Parish Jail. Because ▮▮▮ will not be housed in the juvenile unit of the Jackson Parish Jail for at least the next 60 days, there is no substantial risk of personal injury or other serious or irreparable harm to ▮▮▮ related to any alleged conditions of confinement at the juvenile unit of the Jackson Parish Jail.

     Second, ▮▮▮'s allegation that he (1) is held in his room for 20 hours/day, (2) is not provided an opportunity for outdoor recreation, (3) is offered school for only 3 hours/day, (4) is not provided with live instruction, and (5) is permitted to exit his cell only to shower and to attend school are factually incorrect. ▮▮▮ is permitted outside of his room for meals, school, counseling, outdoor recreation (weather permitting), and other non-structured time and is being provided live instruction and adequate education time. ▮▮▮'s allegation that the lights remain on constantly in the Cypress Unit is also factually incorrect. The Cypress Unit observes regular lights-out time. "Lights-out" time may be interrupted if security concerns or incidents require lights to be turned back on for the safety of the OJJ staff and youth in OJJ's custody, but the interruption of "lights-out" time is only done for these purposes and when the situation reasonably calls for the lights to be turned on. In an effort to relieve you of these concerns, OJJ is willing to provide you with special assurances by providing you with a summary detailing:

- all movement activity for ▮▮▮;
- all recreation time (outdoor and indoor) offered to ▮▮▮;
- all education time offered to ▮▮▮, including whether live instruction is provided; and
- lights out time and any interruption of the lights out time.

OJJ will provide that summary to you on a weekly basis for the next 60 days or until ▮▮ is relocated to a different dorm or unit.

Third, with regard to your concerns about the use of mace, mechanical restraints, and strip-searches, OJJ only deploys these measures/tactics when necessary to ensure the safety of the OJJ staff and the youth in OJJ custody. (I note that ▮▮ makes reference to the use of mace but does not allege that mace was ever deployed in relation to ▮▮)

Fourth, with regard to ▮▮'s allegation that he has a seizure, called for medical attention, but was not allowed to seek medical treatment, this allegation lacks any and all details that would allow OJJ to investigate the alleged incident. Accordingly, this portion of the ARP is being rejected as deficient pursuant to section E.d. and E.f.

There is no emergency regarding these allegations, and OJJ will process these allegations as a standard ARP.

Regards,

Cassandra Washington
State Wide Facility Director

B.5.3 (a)

**YOUTH SERVICES**                                    **Number:** ____-____-____
**ADMINISTRATIVE REMEDY PROCEDURE FORM**             **Date Received:**_____

Name: ███████████ _____     Client ID Number: ███████ _____

Facility: <u>Swanson Center for Youth - Monroe</u>     Living Area:_____

## "THIS IS A REQUEST FOR ARP"

**(You may ask your case manager or other staff members for help completing this form.) State your problem (WHO, WHAT, WHEN, WHERE AND HOW) and the remedy requested (what you want to solve the problem):**

Problem:__ <u>See attached</u> _____

_____

_____

Remedy requested: <u>See attached</u> _____

Date of Incident/Occurrence:<u>See attached</u>          Today's Date:<u>3/6/2024</u>

**This form must be completed <u>within 90 calendar days</u> of the date of the incident/occurrence and given to the ARP Coordinator or placed in the ARP/grievance box.**

| **Screening - ARP Coordinator's Review** |
|---|

Rejected _____Returned _____ Accepted     Screening Date: _____  Sexual Assault ▢ Yes ▢ No
Reason:_____

| **Emergency Request** |
|---|

(Maximum Time for Processing – Initial Response: 48 hours / Final Response: 5 days)

Rejected:          Accepted          Reason:_____

Sent to Facility Director / Youth Facilities Director - Statewide / IS on: _____

SFD Initial Response Received on:_____     SFD Final Decision Received on:_____

| **Step One - ARP Coordinator/IS Recommendation and Facility Director's Response** |
|---|

(Maximum Time For Processing: 30 calendar days)

ARP Coordinator/IS Recommendation: _____

Sent to Facility Director on: _____     AC/IS Signature: _____

Facility Director's response to your ARP Step One request: _____

_____

_____

Date: _____     Facility Director's Signature: _____

Received Step One on: _____     Youth's Signature: _____

**If you are not satisfied with this response, you may go to Step Two.  The ARP Coordinator must submit your request to the Deputy Secretary <u>within 15 calendar days</u> after you receive the Step One response.**

Request Step Two: _____Yes _____No     Reason for Step Two request: _____

_____

Date Step Two request received by AC: _____     Date Sent to Deputy Secretary: _____

AC's Signature: _____

| **Step Two - Deputy Secretary's Response** |
|---|

(Maximum Time For Processing: 21 calendar days)

Date Received: _____

Deputy Secretary's response to ARP Step Two request:  _____

_____

_____

_____

Date: _____     _____
                                 Deputy Secretary's Signature

Date received Deputy Secretary's response: _____     _____
                                                                Youth's Signature

**If you are not satisfied with this response, you may seek judicial review.  A request for judicial review must be filed with the juvenile court which entered your order of commitment <u>within 30 calendar days</u> after receiving the Step Two decision.**

**EMERGENCY ARP APPLICATION**
**March 6, 2024**

**Submitted On Behalf of** ▇▇▇▇ ▇▇▇▇ **(OJJ No.** ▇▇▇▇

This is an Emergency ARP submitted on behalf of ▇▇▇▇ ▇▇▇▇ .

    I am an attorney representing ▇▇▇▇ , a youth in the custody of the Office of Juvenile Justice ("OJJ"). I attach authority to file a 3rd party ARP signed by here. I am filing this Emergency ARP on ▇▇▇▇ 's behalf pursuant to La. Admin. Code tit. 22 ch. 7A. § 713.F.6 and OJJ Youth Services Policy B.5.3.VII.I.Because this grievance arises directly from the imminent risk of physical and emotional **harm that** ▇▇▇▇ **faces, this grievance** must be treated as an Emergency ARP under both the Louisiana Administrative Code and OJJ Youth Services Policy.

**The Problem:**

    ▇▇▇▇ is currently detained in the Cypress Unit at the Swanson Center for Youth at Monroe ("Swanson"). ▇▇▇▇ came to the Cypress Unit at Swanson after being detained or at risk of being detained in OJJs custody at two adult facilities: first, at the now-closed Bridge City Center for Youth -- West Feliciana facility located on the grounds of the Louisiana State Penitentiary at Angola ("Angola"), and second, at the Jackson Parish Jail. Although the OJJ facility at Angola is currently not in use by OJJ, Louisiana's refusal to commit to its permanent closure to youth in a legally binding way and the continued use of adult facilities, including the Jackson Parish Jail, by OJJ exposes ▇▇▇▇ to ongoing and serious future risks of harm, including heightened risk of suicide and sexual assault; denial of education; denial of counseling and other rehabilitative treatment and therapies; inadequate and substandard medical and mental health care; unnecessary and excessive uses of force, including with pepper spray ("mace"), pellet guns, and tasers; and the use of psychologically harmful solitary confinement. These unconstitutional conditions of confinement represent an unwarranted and **unlawful danger to** ▇▇▇▇ and to all others being so detained.

1.  On September 15, 2023, OJJ announced its decision to move youth from Angola to the Jackson Parish Jail. OJJ claimed that the facility at the Jackson Parish Jail was a juvenile facility at the **time youth were transferred. As a result of OJJ's decision,** ▇▇▇▇ was detained at the Jackson Parish Jail after the Angola facility closed and has been detained at the Jackson Parish Jail within the past 90 days.

2.  The experience of ▇▇▇▇ confirms that the Jackson Parish Jail is an adult facility improperly and illegally housing youth adjudicated delinquent. The Jackson Parish Jail serves as a detention center for adult pre-trial detainees and adults sentenced to lengthy periods of incarceration. ▇▇▇▇ is a minor and has not been convicted of a crime. Nevertheless, ▇▇▇▇ was detained in the past 90 days at the Jackson Parish Jail with no sight-sound separation from adults, resulting in substantial and irreparable psychological harm. He was told that he was sent there for 45 days to complete a "behavioral program," but no programming was provided and he stayed much longer. At the Jackson Parish Jail facility, ▇▇▇▇ saw and heard adults aged 22 and older daily, including outside his cell; in hallways; and in the cafeteria. Because so many youths are detained **in this overcrowded facility,** ▇▇▇▇ was detained in a cell with between three and five other young people in a cell designed for two people. The cell had only two beds, so he and other youth slept on the floor with nothing but a thin mattress and blanket. While in these conditions, ▇▇▇▇ had no access to counseling and education services that OJJ is required to provide for youth in its custody. ▇▇▇▇ also was denied any contact or video visits with his family. Throughout his detention at the Jackson Parish Jail, he witnessed staff from the Jackson Sheriff's Office using

mace, shock gloves, and pellet guns on children regularly. The shock gloves and mace were used against him while he was in C dorm. Because ██████ remains in OJJ custody, he is at risk of being returned to an adult facility, including at the Jackson Parish Jail, at any time, at the discretion of OJJ.

3. In the past 90 days, OJJ transferred ██████ from the Jackson Parish Jail to the Cypress Unit at OJJ's Swanson Center for Youth. ██████ has been provided with no reason for his placement in the Cypress Unit.

4. In the Cypress Unit, ██████ is required to spend over twenty (20) hours per day alone in his cell. In the single-youth cell, OJJ staff keep the lights on twenty-four (24) hours per day. The lights have been kept on all day and night in the cell where he is confined for at least a week and up to two weeks prior to the filing of this ARP. ██████ is permitted to exit his cell only to shower and to attend "school". There are no opportunities for outdoor recreation, and school is offered for no more than three (3) hours per day. He is shackled in school, and there is no live instruction. Throughout the Cypress Unit, there is a tactical team that regularly enters the unit and uses excessive force, including regular and repeated use of mace, against the youth. Youth on the unit including ██████ are regularly required to submit to full-body strip searches. ██████ has been provided with no reason for being placed in these conditions and is suffering extreme emotional and physical distress. He and other kids do not have anything in the cell, not even toilet paper or tissues. He has to knock on the door to get tissue or anything else he needs. But he is afraid that if he knocks, he will get maced. He has been maced at least 5 times while in Cypress.

5. The youth is suffering extreme psychological distress in his current conditions of solitary confinement and remains immensely fearful that he could be transferred to Jackson Parish Jail again. The risk of return to an adult facility is heightened for this youth, who is currently held in abusive and psychologically harmful conditions in the Cypress Unit. The placement in solitary confinement and placement in an adult facility gravely impact this minor's capacity to rehabilitate and complete requirements necessary to progress on his rehabilitative journey and return home to his family and community.

**The Remedy Sought:**

██████ ██████ is suffering substantial physical and psychological harm. Accordingly, the following remedies are requested for ██████ :

1. Immediate removal from the above stated conditions of solitary confinement;
2. To the extent the youth remains in the cell, cessation of 24-hour artificial lighting;
3. Immediate restoration of full educational services required under Louisiana law, including any necessary accommodations and/or special education services;
4. Immediate restoration of all other mandated rehabilitation programming and treatment, including education, recreation, counseling, and other therapies to ensure continued rehabilitation and allow the youth to return home to his family and community as soon as possible;
5. Immediate cessation of the use of mace, tasers, and/or pellet guns on youth in OJJ custody and implementation of policies and monitoring of use of force against juveniles in OJJ custody;
6. Immediate restoration of services and other activities outside of the youth's cell;
7. Immediate restoration of family visits;
8. Immediate commitment to the permanent closure of the Angola facility to youth;
9. Immediate cessation of detention of youths in OJJ custody at the Jackson Parish Jail; and
10. Immediate evaluation by OJJ to determine whether the youth can be recommended for a step-

down or release to the community.

**The Response**
Per the Office of Juvenile Justice's Administrative Remedy Procedure B.4.3.VII.I, you are required to respond within 48 hours to the submission of this Emergency ARP, and you must provide a final decision within 5 days of filing. At that point, this emergency grievance shall be deemed exhausted and ripe for judicial review.

OTS No. ████████

I, ████████████, hereby grant authorization to David Utter to file a 3rd party ARP on my behalf. I understand they are not my legal guardian and are acting in my best interest.

████████████
Youth

████████████
Date

_Heather L. Barrow_
Witness

2/29/2024
Date

JEFF LANDRY, Governor

# Office of Juvenile Justice



Kenneth A. Loftin, Deputy Secretary

March 8, 2024

David Utter

Via e-mail: david@clairbornefirm.com

    RE:   ARP filed on behalf of ███████████████

Mr. Utter,

    We are in receipt of the ARP application submitted by you on behalf of ████████████ ███████ on Wednesday, March 6, 2024, at 11:10 a.m. (central) in which you requested that the ARP application be reviewed on as an Emergency Grievance. Upon review of the allegations, ███ is not subject to any immediate risk of harm, nor is ███ subject to any substantial risk of imminent personal injury and irreparably harm. This ARP does not qualify as an Emergency Grievance, and ████'s ARP will be processed as a standard ARP.

    First, ████ is currently housed in the Cypress Unit at the Swanson Center for Youth at Monroe. ████ will remain housed in the Cypress Unit and, for at least the next sixty (60), ████ will not be housed in the juvenile unit at the Jackson Parish Jail. Because ████ will not be housed in the juvenile unit of the Jackson Parish Jail for at least the next 60 days, there is no substantial risk of personal injury or other serious or irreparable harm to ████ related to any alleged conditions of confinement at the juvenile unit of the Jackson Parish Jail.

    Second, ████'s allegation that he (1) is held in his room for 20 hours/day, (2) is not provided an opportunity for outdoor recreation, (3) is offered school for only 3 hours/day, (4) is not provided with live instruction, and (5) is permitted to exit his cell only to shower and to attend school are factually incorrect. ████ is permitted outside of his room for meals, school, counseling, outdoor recreation (weather permitting), and other non-structured time and is being provided live instruction and adequate education time. ████'s allegation that the lights remain on constantly in the Cypress Unit is also factually incorrect. The Cypress Unit observes regular lights-out time. "Lights-out" time may be interrupted if security concerns or incidents require lights to be turned back on for the safety of the OJJ staff and youth in OJJ's custody, but the interruption of "lights-out" time is only done for these purposes and when the situation reasonably calls for the lights to be turned on. In an effort to relieve you of these concerns, OJJ is willing to provide you with special assurances by providing you with a summary detailing:

- all movement activity for ████;
- all recreation time (outdoor and indoor) offered to ████;
- all education time offered to ████, including whether live instruction is provided; and
- lights out time and any interruption of the lights out time.

OJJ will provide that summary to you on a weekly basis for the next 60 days or until ████ is relocated to a different dorm or unit.

Third, with regard to your concerns about the use of mace, mechanical restraints, and strip-searches, OJJ only deploys these measures/tactics when necessary to ensure the safety of the OJJ staff and the youth in OJJ custody.

There is no emergency regarding these allegations, and OJJ will process these allegations as a standard ARP.

Regards,

Cassandra Washington
State Wide Facility Director

B.5.3 (a)

**YOUTH SERVICES**
**ADMINISTRATIVE REMEDY PROCEDURE FORM**

Number: _____-_____-_____
Date Received:_____

Name: ██████████                        Client ID Number: ████████

Facility: _Swanson Center for Youth - Monroe_      Living Area:_____

## "THIS IS A REQUEST FOR ARP"

**(You may ask your case manager or other staff members for help completing this form.) State your problem (WHO, WHAT, WHEN, WHERE AND HOW) and the remedy requested (what you want to solve the problem):**

Problem:   See attached _____

_____

_____

Remedy requested:  See attached _____

Date of Incident/Occurrence:_See attached_____     Today's Date:_3/6/2024_____

**This form must be completed within 90 calendar days of the date of the incident/occurrence and given to the ARP Coordinator or placed in the ARP/grievance box.**

| **Screening - ARP Coordinator's Review** |
|---|

Rejected _____Returned _____ Accepted     Screening Date:_____ Sexual Assault ▢ Yes ▢ No
Reason:_____

| **Emergency Request** |
|---|

(Maximum Time for Processing – Initial Response: 48 hours / Final Response: 5 days)

Rejected:_____ Accepted:_____ Reason:_____

Sent to Facility Director / Youth Facilities Director - Statewide / IS on: _____

SFD Initial Response Received on:_____ SFD Final Decision Received on:_____

| **Step One - ARP Coordinator/IS Recommendation and Facility Director's Response** |
|---|

(Maximum Time For Processing: 30 calendar days)

ARP Coordinator/IS Recommendation: _____

Sent to Facility Director on: _____   AC/IS Signature: _____

Facility Director's response to your ARP Step One request: _____

_____

_____

Date:_____     Facility Director's Signature: _____

Received Step One on: _____     Youth's Signature: _____

**If you are not satisfied with this response, you may go to Step Two. The ARP Coordinator must submit your request to the Deputy Secretary within 15 calendar days after you receive the Step One response.**

Request Step Two: _____Yes _____No   Reason for Step Two request: _____

_____

Date Step Two request received by AC: _____   Date Sent to Deputy Secretary: _____

AC's Signature: _____

| **Step Two - Deputy Secretary's Response** |
|---|

(Maximum Time For Processing: 21 calendar days)

Date Received: _____

Deputy Secretary's response to ARP Step Two request: _____

_____

_____

_____

Date:_____     _____
                                                Deputy Secretary's Signature

Date received Deputy Secretary's response: _____   _____
                                                                                      Youth's Signature

**If you are not satisfied with this response, you may seek judicial review. A request for judicial review must be filed with the juvenile court which entered your order of commitment within 30 calendar days after receiving the Step Two decision.**

**EMERGENCY ARP APPLICATION**
**March 6, 2024**

**Submitted On Behalf of** ████████ **(OJJ No.** ████**)**

This is an Emergency ARP submitted on behalf of ████████ .

    I am an attorney representing ████, a youth in the custody of the Office of Juvenile Justice ("OJJ"). I attach authority to file a 3rd party ARP signed by here. I am filing this Emergency ARP on ████ 's behalf pursuant to La. Admin. Code tit. 22 ch. 7A. § 713.F.6 and OJJ Youth Services Policy B.5.3.VII.I.Because this grievance arises directly from the imminent risk of physical and emotional **harm that** ████ faces, this grievance must be treated as an Emergency ARP under both the Louisiana Administrative Code and OJJ Youth Services Policy.

**The Problem:**

    ████ is currently detained in the Cypress Unit at the Swanson Center for Youth at Monroe ("Swanson"). ████ came to the Cypress Unit at Swanson after being detained in OJJs custody at two adult facilities: first, at the now-closed Bridge City Center for Youth – West Feliciana facility located on the grounds of the Louisiana State Penitentiary at Angola ("Angola"), and second, at the Jackson Parish Jail. Although the OJJ facility at Angola is currently not in use by OJJ, Louisiana's refusal to commit to its permanent closure to youth in a legally binding way and the continued use of adult facilities, including the Jackson Parish Jail, by OJJ exposes ████ to ongoing and serious future risks of harm, including heightened risk of suicide and sexual assault; denial of education; denial of counseling and other rehabilitative treatment and therapies; inadequate and substandard medical and mental health care; unnecessary and excessive uses of force, including with pepper spray ("mace"), pellet guns, and tasers; and the use of psychologically harmful solitary confinement. These unconstitutional conditions of confinement represent an unwarranted and unlawful danger to ████ and to all others being so detained.

1.  On September 15, 2023, OJJ announced its decision to move youth from Angola to the Jackson Parish Jail. OJJ claimed that the facility at the Jackson Parish Jail was a juvenile facility at the **time youth were transferred. As a result of OJJ's decision.** ████ was detained at the Jackson Parish Jail after the Angola facility closed and has been detained at the Jackson Parish Jail within the past 90 days.

2.  The experience of ████ confirms that the Jackson Parish Jail is an adult facility improperly and illegally housing youth adjudicated delinquent. The Jackson Parish Jail serves as a detention center for adult pre-trial detainees and adults sentenced to lengthy periods of incarceration. ████ is a minor and has not been convicted of a crime. Nevertheless, ████ was detained in the past 90 days at the Jackson Parish Jail with no sight-sound separation from adults, resulting in substantial and irreparable psychological harm. At the Jackson Parish Jail facility, ████ **saw** and heard adults aged 22 and older daily, including outside his cell; in hallways; and in the cafeteria. Because so many youths are detained in this overcrowded facility, ████ was detained in a cell with between three and five other young people in a cell designed for two people. The cell had only two beds, so he and other youth slept on the floor with nothing but a thin mattress and blanket. While in these conditions, ████ had no access to counseling and education services that OJJ is required to provide for youth in its custody. Although he has an Individualized Education Plan ("IEP"), he also did not receive any special education services. ████ further was denied any contact or video visits with his family. Throughout his detention at the Jackson Parish Jail, he witnessed staff from the Jackson Sheriff's Office using mace, shock gloves, and

pellet guns on children regularly. ▇ was tased with shock gloves. Because ▇ remains in OJJ custody, he is at risk of being returned to an adult facility, including at the Jackson Parish Jail, at any time, at the discretion of OJJ.

3. In the past 90 days, OJJ transferred ▇ from the Jackson Parish Jail to the Cypress Unit at OJJ's Swanson Center for Youth. When he was first transferred, his medications did not transfer with him, and he suffered withdrawal symptoms without the medication he needed for approximately a week. ▇ has been provided with no reason for his placement in the Cypress Unit other than that he was previously housed at Angola and the Jackson Parish Jail.

4. In the Cypress Unit, ▇ is required to spend over twenty (20) hours per day alone in his cell. In the single-youth cell, OJJ staff keep the lights on twenty-four (24) hours per day. The lights have been kept on all day and night in the cell where he is confined for at least a week and up to two weeks prior to the filing of this ARP. ▇ is permitted to exit his cell only to shower and to attend "school". There are no opportunities for outdoor recreation, and school is offered for no more than three (3) hours per day. There is no live instruction. Throughout the Cypress Unit, there is a tactical team that regularly enters the unit and uses excessive force, including regular and repeated use of mace, against the youth. Youth on the unit including ▇ are regularly required to submit to full-body strip searches. Once, after a full-body strip search, ▇ was maced and hit with a flashlight by a guard, then taken to the shower and maced again, only to be maced for a third time back on his cell. ▇ has been provided with no reason for being placed in these conditions and is suffering extreme emotional and physical distress. While in these conditions of unending lights and solitary confinement, ▇ has had two panic attacks. A panic attack in his cell feels like the walls are closing in on him. When he reported the first panic attack, he was not released from his cell. He was kept in his cell and maced. He felt like he would die in the cell.

5. The youth is suffering extreme psychological distress in his current conditions of solitary confinement and remains immensely fearful that he could be transferred to Jackson Parish Jail again. The risk of return to an adult facility is heightened for this youth, who is currently held in abusive and psychologically harmful conditions in the Cypress Unit. The placement in solitary confinement and placement in an adult facility gravely impact this minor's capacity to rehabilitate and complete requirements necessary to progress on his rehabilitative journey and return home to his family and community.

**The Remedy Sought:**

▇ is suffering substantial physical and psychological harm. Accordingly, the following remedies are requested for ▇ :

1. Immediate removal from the above stated conditions of solitary confinement;
2. To the extent the youth remains in the cell, cessation of 24-hour artificial lighting;
3. Immediate restoration of full educational services required under Louisiana law, including any necessary accommodations and/or special education services;
4. Immediate restoration of all other mandated rehabilitation programming and treatment, including education, recreation, counseling, and other therapies to ensure continued rehabilitation and allow the youth to return home to his family and community as soon as possible;
5. Immediate cessation of the use of mace, tasers, and/or pellet guns on youth in OJJ custody and implementation of policies and monitoring of use of force against juveniles in OJJ custody;
6. Immediate restoration of services and other activities outside of the youth's cell;

7.  Immediate restoration of family visits;
8.  Immediate commitment to the permanent closure of the Angola facility to youth;
9.  Immediate cessation of detention of youths in OJJ custody at the Jackson Parish Jail; and
10. Immediate evaluation by OJJ to determine whether the youth can be recommended for a step-down or release to the community.

**The Response**
Per the Office of Juvenile Justice's Administrative Remedy Procedure B.4.3.VII.I, you are required to respond within 48 hours to the submission of this Emergency ARP, and you must provide a final decision within 5 days of filing. At that point, this emergency grievance shall be deemed exhausted and ripe for judicial review

on.

I, ████████████, hereby grant
representation to David Utter, to file
a 3rd party authorization on ~~my~~
behalf. I understand they are not acting
my legal guardian, and are ~~in an~~
in my best interest.

████████████ yath

_Heather L. Barrow_
witness

2-29-24
date

2/29/2024
date



**Office of Juvenile Justice**

JEFF LANDRY, Governor

Kenneth A. Loftin, Deputy Secretary

March 8, 2024

David Utter

Via e-mail: david@claibornefirm.com

    RE:   ARP filed on behalf of ▮▮▮▮▮

Mr. Utter,

    We are in receipt of the ARP application submitted by you on behalf of ▮▮▮▮▮ ▮▮▮▮ on Wednesday, March 6, 2024, at 11:10 a.m. (central) in which you requested that the ARP application be reviewed on as an Emergency Grievance. Upon review of the allegations, ▮▮ is not subject to any immediate risk of harm, nor is ▮▮ subject to any substantial risk of imminent personal injury and irreparably harm. This ARP does not qualify as an Emergency Grievance, and ▮▮'s ARP will be processed as a standard ARP.

    First, ▮▮ is currently housed in the Cypress Unit at the Swanson Center for Youth at **Monroe.** ▮▮ will remain housed in the Cypress Unit and, for at least the next sixty (60), ▮▮▮ will not be housed in the juvenile unit at the Jackson Parish Jail. Because ▮▮ **will not be housed** in the juvenile unit of the Jackson Parish Jail for at least the next 60 days, there is no substantial risk of personal injury or other serious or irreparable harm to ▮▮ related to any alleged conditions of confinement at the juvenile unit of the Jackson Parish Jail.

    Second, ▮▮'s allegation that he (1) is held in his room for 20 hours/day, (2) is not provided an opportunity for outdoor recreation, (3) is offered school for only 3 hours/day, (4) is not provided with live instruction, and (5) is permitted to exit his cell only to shower and to attend school are factually incorrect. ▮▮ is permitted outside of his room for meals, school, counseling, outdoor recreation (weather permitting), and other non-structured time and is being provided live instruction and adequate education time. ▮▮'s allegation that the lights remain on constantly in the Cypress Unit is also factually incorrect. The Cypress Unit observes regular lights-out time. "Lights-out" time may be interrupted if security concerns or incidents require lights to be turned back on for the safety of the OJJ staff and youth in OJJ's custody, but the interruption of "lights-out" time is only done for these purposes and when the situation reasonably calls for the lights to be turned on. In an effort to relieve you of these concerns, OJJ is willing to provide you with special assurances by providing you with a summary detailing:

- all movement activity for ▮▮;
- all recreation time (outdoor and indoor) offered to ▮▮;
- all education time offered to ▮▮, including whether live instruction is provided; and
- lights out time and any interruption of the lights out time.

OJJ will provide that summary to you on a weekly basis for the next 60 days or until ▮▮▮ is relocated to a different dorm or unit.

 Third, with regard to your concerns about the use of mace, mechanical restraints, strip-searches, and physical force, OJJ only deploys these measures/tactics when necessary to ensure the safety of the OJJ staff and the youth in OJJ custody.

 Fourth, with regard to ▮▮▮'s allegation that had a panic attack, this allegation lacks any and all details that would allow OJJ to investigate the alleged incident. Accordingly, this portion of the ARP is being rejected as deficient pursuant to section E.d. and E.f.

 Lastly, ▮▮▮ alleges that when he was first transferred to the Cypress Unit his medications did not transfer. On the face of the allegation, ▮▮▮ is not alleging that this is an ongoing concern. Accordingly, this concern also does not rise to the level of an Emergency Grievance.

 There is no emergency regarding these allegations, and OJJ will process these allegations as a standard ARP.

 Regards,

Cassandra Washington
State Wide Facility Director

B.5.3 (a)

**YOUTH SERVICES**
**ADMINISTRATIVE REMEDY PROCEDURE FORM**

Number: ____-____-____
Date Received:_____

Name: ██████████ _____  Client ID Number: ██████ _____

Facility: _Jackson Parish Jail_____  Living Area:_____

## "THIS IS A REQUEST FOR ARP"

(You may ask your case manager or other staff members for help completing this form.) State your problem (WHO, WHAT, WHEN, WHERE AND HOW) and the remedy requested (what you want to solve the problem):

Problem: __See attached_____

_____

_____

Remedy requested: _See attached_____

Date of Incident/Occurrence:_See attached_____   Today's Date:_3/13/2024_____

**This form must be completed within 90 calendar days of the date of the incident/occurrence and given to the ARP Coordinator or placed in the ARP/grievance box.**

| **Screening - ARP Coordinator's Review** |
|---|

Rejected _____Returned _____ Accepted   Screening Date: _____ Sexual Assault ☐ Yes ☐ No
Reason:_____

| **Emergency Request** |
|---|

(Maximum Time for Processing – Initial Response: 48 hours / Final Response: 5 days)

Rejected: _____ Accepted _____ Reason: _____

Sent to Facility Director / Youth Facilities Director - Statewide / IS on: _____

SFD Initial Response Received on:_____   SFD Final Decision Received on:_____

| **Step One - ARP Coordinator/IS Recommendation and Facility Director's Response** |
|---|

(Maximum Time For Processing: 30 calendar days)

ARP Coordinator/IS Recommendation: _____

Sent to Facility Director on: _____  AC/IS Signature: _____

Facility Director's response to your ARP Step One request: _____

_____

_____

Date: _____   Facility Director's Signature: _____

Received Step One on: _____   Youth's Signature: _____

**If you are not satisfied with this response, you may go to Step Two. The ARP Coordinator must submit your request to the Deputy Secretary within 15 calendar days after you receive the Step One response.**

Request Step Two: _____Yes _____No   Reason for Step Two request: _____

_____

Date Step Two request received by AC: _____  Date Sent to Deputy Secretary: _____

AC's Signature: _____

| **Step Two - Deputy Secretary's Response** |
|---|

(Maximum Time For Processing: 21 calendar days)

Date Received: _____

Deputy Secretary's response to ARP Step Two request: _____

_____

_____

_____

Date: _____   _____
                            Deputy Secretary's Signature

Date received Deputy Secretary's response: _____  _____
                                                                Youth's Signature

**If you are not satisfied with this response, you may seek judicial review. A request for judicial review must be filed with the juvenile court which entered your order of commitment within 30 calendar days after receiving the Step Two decision.**

November 2022

## EMERGENCY ARP APPLICATION
### March 13, 2024

**Submitted On Behalf of** ▮▮ ▮▮ **(OJJ No.** ▮▮▮

This is an Emergency ARP submitted on behalf of ▮▮ ▮▮ .

     I am an attorney representing ▮▮ , a youth in the custody of the Office of Juvenile Justice ("OJJ"). I attach authority to file a 3ʳᵈ party ARP signed by here. I am filing this Emergency ARP on ▮▮ 's behalf pursuant to La. Admin. Code tit. 22 ch. 7A. § 713.F.6 and OJJ Youth Services Policy B.5.3.VII.I.Because this grievance arises directly from the imminent risk of physical and emotional **harm that** ▮▮ faces, this grievance must be treated as an Emergency ARP under both the Louisiana Administrative Code and OJJ Youth Services Policy.

**The Problem:**

     ▮▮ is currently detained at the Jackson Parish Jail, where conditions expose him to ongoing and serious future risks of harm, including heightened risk of self harm and harm by others; denial of education; denial of counseling and other rehabilitative treatment and therapies; inadequate and substandard medical and mental health care; unnecessary and excessive uses of force, including with pepper spray ("mace"), pellet guns, and tasers; and the use of psychologically harmful solitary confinement. These unconstitutional conditions of confinement represent an unwarranted and unlawful danger to ▮▮ and to all others being so detained.

1.  Because so many young people under OJJ jurisdiction (whether sole or joint jurisdiction with another entity) are detained at the overcrowded Jackson Parish facility, ▮▮ is detained with five other people in a cell designed for two people. Two of the adults in the cell are 35 years old. The cell has only two beds, so he and others sleep on the floor with nothing but a thin mattress and torn blanket.

2.  Prior to entering this overcrowded cell, ▮▮ was in an adult dorm with adults of all ages. He was moved into lockdown after another youth under OJJ's jurisdiction was stabbed in the adult dorm. ▮▮ was told he would remain in lockdown conditions in the cell for 180 days.

3.  ▮▮ interacts only with Jackson Parish Sheriff's Office staff. He does not interact with OJJ stuff.

4.  While in these conditions, ▮▮ has no access to counseling and education services that OJJ is required to provide for youth in its custody. He has not been to school at all in several weeks. This is extremely distressing to ▮▮ because he only has one class left to complete before he attains a GED. He also wants to obtain professional certifications to work in offshore welding after he is released, but he cannot obtain that certification either in his current conditions. While he is denied access to education, he cannot take this important step in his rehabilitation.

5.  ▮▮ further is denied any contact or video visits with his family while at the Jackson Parish Jail. His ability to contact his mother even by phone on lockdown is extremely limited and further costs substantial amounts of money.

6.  Throughout his detention at the Jackson Parish Jail, ▮▮ has witnessed staff from the Jackson Sheriff's Office using mace, shock gloves, and pellet guns on adults and OJJ youth regularly. Currently, he and others are maced in the cell without being taken to rinse off afterwards. He has had to put his head in the toilet in the cell to try to alleviate the pain.

7.  ▮▮ is suffering extreme psychological distress in his current conditions. Further, the placement in an adult facility gravely impacts this minor's capacity to rehabilitate and complete requirements necessary to progress on his rehabilitative journey and return home to his family and community.

**The Remedy Sought:**

▮▮ ▮▮ is suffering substantial physical and psychological harm. Accordingly, the following remedies are requested for ▮▮ :

1.  Immediate removal from the above stated conditions of overcrowded confinement;
2.  Immediate restoration of full educational services required under Louisiana law, including any necessary accommodations and/or special education services;
3.  Immediate restoration of all other mandated rehabilitation programming and treatment, including education, recreation, counseling, and other therapies to ensure continued rehabilitation and allow the youth to return home to his family and community as soon as possible;
4.  Immediate cessation of the use of mace, tasers, and/or pellet guns on youth in OJJ custody and implementation of policies and monitoring of use of force against youth in OJJ custody;
5.  Immediate restoration of services and other activities outside of the youth's cell;
6.  Immediate restoration of family visits;
7.  Immediate commitment to the permanent closure of the Angola facility to youth;
8.  Immediate cessation of detention of youths in OJJ custody at the Jackson Parish Jail; and
9.  Immediate evaluation by OJJ to determine whether the youth can be recommended for a step-down or release to the community.

**The Response**
Per the Office of Juvenile Justice's Administrative Remedy Procedure B.4.3.VII.I, you are required to respond within 48 hours to the submission of this Emergency ARP, and you must provide a final decision within 5 days of filing. At that point, this emergency grievance shall be deemed exhausted and ripe for judicial review

B.5.3 (d)

## Administrative Remedy Procedure
## Third Party Acknowledgment/Approval Form

I, ████████████ _____ (Youth name), Client ID # ████████

due hereby agree/approve  DAVID UTTER  to file an
                         (Name of Third Party)

ARP on my behalf. I understand that the above named third party is not my parent

or  legal guardian, and is acting in my best interest.

████████ _____          *Heather L. Barrow*
**Youth Signature**                **Witness**

2/28/24                    2/28/2024
**Date**                          **Date**

**Jackson Parish Sheriff's Office**
Andy Brown, Sheriff

150 Old Winnfield
Jonesboro, LA 71251

jacksonparishsheriff.com

Jonesboro (318) 259-9021
Fax  (318) 259-8268

March 14, 2024

The Claiborne Firm, P.C.
David J. Utter
410 E. Bay Street
Savannah, GA 31401

REF: EMERGENCY ARP APPLICATION FOR ███████

Mr. Utter,

We received your application on March 13, 2024, and have thoroughly investigated the allegations in which you stated in your application.

Mr. ██████████ has entered or been found guilty and sentenced to a juvenile sentence. While serving that sentence, after the age of majority, he committed crimes and was charged as an adult offender. Mr. █████ is considered and treated as an adult offender, while being housed at our facility at this time.  If his adult charges are dismissed or terminated prior to his juvenile sentence being completed, he then would go back to the juvenile section of the jail and be treated as a juvenile offender.

He is currently in a two-man cell with only him and another 18-year-old offender.  Since being at our facility, he has been written up on multiple occasions for violating the rules of the jail.  He has been sentenced to 180 confinements due to the rule violations, which are in guidelines by standards set forth by the Department of Corrections.

Regarding education, we are in the process of working with adult offenders to obtain their GED's, as well as offer other educational programs, such as welding certifications from our local Community College. We hope to have this up and running in the next few months.

Sincerely,

Donovan D. Shultz,
Jackson Parish Chief Investigator

B.5.3 (a)

**YOUTH SERVICES**                                           Number: _____-_____-_____
**ADMINISTRATIVE REMEDY PROCEDURE FORM**          Date Received:_____

Name: ████████████                          Client ID Number: ██████

Facility: _Jackson Parish Jail_____          Living Area:_____

## "THIS IS A REQUEST FOR ARP"

**(You may ask your case manager or other staff members for help completing this form.) State your problem (WHO, WHAT, WHEN, WHERE AND HOW) and the remedy requested (what you want to solve the problem):**

Problem:   See attached _____

_____

_____

Remedy requested:  _See attached_____

Date of Incident/Occurrence: _See attached_____      Today's Date: _3/14/2024_____

**This form must be completed _within 90 calendar days_ of the date of the incident/occurrence and given to the ARP Coordinator or placed in the ARP/grievance box.**

| **Screening - ARP Coordinator's Review** |
|---|

Rejected _____Returned _____ Accepted _____ Screening Date:_____ Sexual Assault □ Yes □ No
Reason:_____

| **Emergency Request** |
|---|

(Maximum Time for Processing – Initial Response: 48 hours / Final Response: 5 days)

Rejected: _____ Accepted _____ Reason:_____

Sent to Facility Director / Youth Facilities Director - Statewide / IS on: _____

SFD Initial Response Received on:_____   SFD Final Decision Received on:_____

| **Step One - ARP Coordinator/IS Recommendation and Facility Director's Response** |
|---|

(Maximum Time For Processing: 30 calendar days)

ARP Coordinator/IS Recommendation: _____

Sent to Facility Director on: _____   AC/IS Signature:_____

Facility Director's response to your ARP Step One request: _____

_____

_____

Date: _____          Facility Director's Signature: _____

Received Step One on: _____      Youth's Signature: _____

**If you are not satisfied with this response, you may go to Step Two.  The ARP Coordinator must submit your request to the Deputy Secretary _within 15 calendar days_ after you receive the Step One response.**

Request Step Two: _____Yes _____No      Reason for Step Two request: _____

_____

Date Step Two request received by AC: _____   Date Sent to Deputy Secretary: _____

AC's Signature: _____

| **Step Two - Deputy Secretary's Response** |
|---|

(Maximum Time For Processing: 21 calendar days)

Date Received: _____

Deputy Secretary's response to ARP Step Two request: _____

_____

_____

_____

Date: _____          _____
                                   Deputy Secretary's Signature

Date received Deputy Secretary's response: _____   _____
                                                             Youth's Signature

**If you are not satisfied with this response, you may seek judicial review.  A request for judicial review must be filed with the juvenile court which entered your order of commitment _within 30 calendar days_ after receiving the Step Two decision.**

**EMERGENCY ARP APPLICATION**
**March 14, 2024**

**Submitted On Behalf of** ▓▓ ▓▓ **(OJJ No.** ▓▓▓ **)**

This is an Emergency ARP submitted on behalf of ▓▓ ▓▓ .

    I am an attorney representing ▓▓ , **a youth** in the custody of the Office of Juvenile Justice ("OJJ"). I attach authority to file a 3ʳᵈ party ARP signed by here. I am filing this Emergency ARP on ▓▓▓ 's behalf pursuant to La. Admin. Code tit. 22 ch. 7A. § 713.F.6 and OJJ Youth Services Policy B.5.3.VII.I.Because this grievance arises directly from the imminent risk of physical and emotional harm that ▓▓ faces, this grievance must be treated as an Emergency ARP under both the Louisiana Administrative Code and OJJ Youth Services Policy.

**The Problem:**

    ▓▓ is currently detained at the Jackson Parish Jail. Because of Louisiana's refusal to commit to its permanent closure to youth in a legally binding way and the continued use of adult facilities, including the Jackson Parish Jail, by OJJ exposes ▓▓ to ongoing and serious future risks of harm, including heightened risk of suicide and sexual assault; denial of education; denial of counseling and other rehabilitative treatment and therapies; inadequate and substandard medical and mental health care; unnecessary and excessive uses of force, including with pepper spray ("mace"), pellet guns, and tasers; and the use of psychologically harmful solitary confinement. These unconstitutional conditions of confinement represent an unwarranted and unlawful danger to ▓▓ and to all others being so detained.

1. On September 15, 2023, OJJ announced its decision to move youth from Angola to the Jackson Parish Jail. OJJ claimed that the facility at the Jackson Parish Jail was a juvenile facility at the time youth were transferred. As a result of OJJ's decision, ▓▓ was detained at the Jackson Parish Jail after the Angola facility closed.

2. The experience of ▓▓ confirms that the Jackson Parish Jail is an adult facility improperly and illegally housing youth adjudicated delinquent. The Jackson Parish Jail serves as a detention center for adult pre-trial detainees and adults sentenced to lengthy periods of incarceration. ▓▓ is a minor and has not been convicted of a crime.

3. Nevertheless, ▓▓ has been detained at the Jackson Parish Jail with no sight-sound separation from adults, resulting in substantial and irreparable psychological harm. ▓▓ is sixteen years old. He has been at the Jackson Parish Jail since November 2023.

4. At the Jackson Parish Jail facility, ▓▓ sees and hears adults aged 22 and older daily, including outside his cell. Originally, he was in a dorm with other juveniles for about a month, and now he is in cell with 4 other OJJ youth. The cell is designed for only two people, so three youth have to sleep on the floor. He is in the cell all day except to shower, or approximately 30 minute breaks for school. He has not been outside in weeks.

5. Because so many youths are detained in this overcrowded facility, ▓▓ is detained in a cell with five adults in a cell designed for two people.

6. While in these conditions, ▓▓ has no access to counseling and education services that OJJ is required to provide for youth in its custody. ▓▓ has a 504 Plan for ADHD and is supposed to

get extra time on assignments. However, he does not receive additional time. He is in the 10th grade and is not making progress towards graduation. He receives no live instruction at the Jackson Parish Jail.

7. ▮▮▮▮ further is denied any contact or video visits with his family while at the Jackson Parish Jail. Although some adults can receive video calls, he is not permitted video calls with his mother because he is not 18 years old. He cannot even write letters home.

8. Throughout his detention at the Jackson Parish Jail, ▮▮▮▮ has witnessed staff from the Jackson Sheriff's Office using mace, shock gloves, and pellet guns on adults and OJJ youth regularly. He has been maced ant tazed within the same month. The macing and taxing occurred at the same time. On another occasion, he was verbally threatened by a Jackson Parish Jail correctional officer, who told ▮▮▮▮ that he would mace him "until he can't breathe."

9. The youth is suffering extreme psychological distress in his current conditions. Further, the placement in an adult facility gravely impacts this minor's capacity to rehabilitate and complete requirements necessary to progress on his rehabilitative journey and return home to his family and community.

**The Remedy Sought:**

▮▮▮▮ ▮▮ is suffering substantial physical and psychological harm. Accordingly, the following remedies are requested for ▮▮▮▮ :

1. Immediate removal from the above stated conditions of solitary confinement;
2. To the extent the youth remains in the cell, cessation of 24-hour artificial lighting;
3. Immediate restoration of full educational services required under Louisiana law, including any necessary accommodations and/or special education services;
4. Immediate restoration of all other mandated rehabilitation programming and treatment, including education, recreation, counseling, and other therapies to ensure continued rehabilitation and allow the youth to return home to his family and community as soon as possible;
5. Immediate cessation of the use of mace, tasers, and/or pellet guns on youth in OJJ custody and implementation of policies and monitoring of use of force against juveniles in OJJ custody;
6. Immediate restoration of services and other activities outside of the youth's cell;
7. Immediate restoration of family visits;
8. Immediate commitment to the permanent closure of the Angola facility to youth;
9. Immediate cessation of detention of youths in OJJ custody at the Jackson Parish Jail; and
10. Immediate evaluation by OJJ to determine whether the youth can be recommended for a step-down or release to the community.

**The Response**
Per the Office of Juvenile Justice's Administrative Remedy Procedure B.4.3.VII.I, you are required to respond within 48 hours to the submission of this Emergency ARP, and you must provide a final decision within 5 days of filing. At that point, this emergency grievance shall be deemed exhausted and ripe for judicial review

B.5.3 (d)

## Administrative Remedy Procedure
## Third Party Acknowledgment/Approval Form


I, ██████████████ _____ (Youth name), Client ID # ██████████ ⟍

due hereby agree/approve ___David Utter___ to file an
   (Name of Third Party)

ARP on my behalf. I understand that the above named third party is not my parent

or legal guardian, and is acting in my best interest.


██████████████ _____            _Heather L. Barrow_
       **Youth Signature**                      **Witness**
        2/28/24                              2/28/2024
        **Date**                              **Date**

B.5.3 (a)

**YOUTH SERVICES**
**ADMINISTRATIVE REMEDY PROCEDURE FORM**

Number: ____-____-____
Date Received:_____

Name: ████ ████ _____  Client ID Number: ████ ____

Facility: __Jackson Parish Jail_____  Living Area:_____

## "THIS IS A REQUEST FOR ARP"

**(You may ask your case manager or other staff members for help completing this form.) State your problem (WHO, WHAT, WHEN, WHERE AND HOW) and the remedy requested (what you want to solve the problem):**

Problem: __See attached_____

_____

_____

_____

Remedy requested: __See attached_____

Date of Incident/Occurrence: __See attached_____  Today's Date: _3/14/2024_____

**This form must be completed within 90 calendar days of the date of the Incident/occurrence and given to the ARP Coordinator or placed in the ARP/grievance box.**

| **Screening - ARP Coordinator's Review** |
| --- |

Rejected _____Returned _____ Accepted _____ Screening Date: _____ Sexual Assault ☐ Yes ☐ No
Reason:_____

| **Emergency Request** |
| --- |

(Maximum Time for Processing – Initial Response: 48 hours / Final Response: 5 days)

Rejected: _____ Accepted _____ Reason: _____

Sent to Facility Director / Youth Facilities Director - Statewide / IS on: _____

SFD Initial Response Received on:_____ SFD Final Decision Received on:_____

| **Step One - ARP Coordinator/IS Recommendation and Facility Director's Response** |
| --- |

(Maximum Time For Processing: 30 calendar days)

ARP Coordinator/IS Recommendation: _____

Sent to Facility Director on: _____ AC/IS Signature: _____

Facility Director's response to your ARP Step One request: _____

_____

_____

Date: _____ Facility Director's Signature: _____

Received Step One on: _____ Youth's Signature: _____

**If you are not satisfied with this response, you may go to Step Two.  The ARP Coordinator must submit your request to the Deputy Secretary within 15 calendar days after you receive the Step One response.**

Request Step Two: _____Yes _____No  Reason for Step Two request: _____

_____

Date Step Two request received by AC: _____ Date Sent to Deputy Secretary: _____

AC's Signature: _____

| **Step Two - Deputy Secretary's Response** |
| --- |

(Maximum Time For Processing: 21 calendar days)

Date Received: _____

Deputy Secretary's response to ARP Step Two request: _____

_____

_____

_____

Date: _____  _____
                                    Deputy Secretary's Signature

Date received Deputy Secretary's response: _____  _____
                                                                Youth's Signature

**If you are not satisfied with this response, you may seek judicial review.  A request for judicial review must be filed with the juvenile court which entered your order of commitment within 30 calendar days after receiving the Step Two decision.**

November 2022

## EMERGENCY ARP APPLICATION
### March 14 2024

**Submitted On Behalf of** ███████ ██████ **(OJJ #** ████████

This is an Emergency ARP submitted on behalf of ██████ █████

    I am an attorney representing ██████ █████ a youth in the custody of the Office of Juvenile Justice ("OJJ"). I attach authority to file a 3 party ARP signed by ████████ here. I am filing this Emergency ARP on ████████ behalf pursuant to La. Admin. Code tit. 22 ch. 7A. § 713.F.6 and OJJ Youth Services Policy B.5.3.VII.I. Because this grievance arises directly from the imminent risk of physical and emotional harm that ███████ faces, this grievance must be treated as an Emergency ARP under both the Louisiana Administrative Code and OJJ Youth Services Policy.

**The Problem:**

    ███████ is currently detained at the Jackson Parish Jail, where conditions expose him to ongoing and serious future risks of harm, including heightened risk of self-harm and harm by others; denial of education; denial of counseling and other rehabilitative treatment and therapies; inadequate and substandard medical and mental health care; unnecessary and excessive uses of force, including with pepper spray ("mace"), pellet guns, and tasers; and the use of psychologically harmful solitary confinement. These unconstitutional conditions of confinement represent an unwarranted and unlawful danger to ███████ and to all others being so detained.

1. On September 15, 2023, OJJ announced its decision to move youth from Angola to the Jackson Parish Jail. OJJ claimed that the facility at the Jackson Parish Jail was a juvenile facility at the time youth were transferred.

2. The experience of ███████ confirms that the Jackson Parish Jail is an adult facility improperly and illegally housing youth adjudicated delinquent. The Jackson Parish Jail serves as a detention center for adult pre-trial detainees and adults sentenced to lengthy periods of incarceration.

3. ███████ was transferred to the Jackson Parish Jail from ACY-Bunkie about two-and-half-months ago.

4. ███████ is currently on a 160-day lockdown. He was placed in lockdown after an incident in the dorm in which he awakened to find someone attacking him. He was stabbed in the back, arm, and leg, and did not receive medical attention. He had to seal his wounds with Vaseline.

5. **On lockdown,** ███████ gets no education, no attorney calls, and no phone calls. ███████ only interacts with Jackson Parish staff.

6. When he first arrived at the Jackson Parish Jail, ███████ was on the juvenile side for about three weeks. Later he was moved to the adult side after being charged in an incident. He has never been to court in Jackson Parish for this charge.

7. On the adult side and prior to being put on lockdown, ███████ was in an adult dorm ("B dorm") with adults of all ages. He used a group shower that was used by adults and juveniles. It was in this dorm setting that he was stabbed. To ███████ knowledge, the man who stabbed him is still on the dorm.

8. There is a lot of violence in the dorms. There are knives and fights every day. Guards don't break up the fights.

9. On lockdown, █████ is housed with three other people in a cell designed for two people. Because so many young people under OJJ jurisdiction (whether sole or joint jurisdiction with another entity) are detained at the overcrowded Jackson Parish facility, █████ was detained with four other people in a cell designed for two people. The cell has only two beds, so he and others sleep on the floor with nothing but a thin mattress and blanket. He has no pillow. One of the individuals in the cell is approximately 35 years old.

10. █████ has no access to education services that OJJ is required to provide for youth in its custody. He has not been to school at all in several weeks. █████ wants to graduate from school, not just get a GED. He has asked to go to school but has been told he can't because he's an adult.

11. █████ is denied contact with his family while at the Jackson Parish Jail. His last family contact was a month ago. He is not even allowed to write letters.

12. Throughout his detention at the Jackson Parish Jail, █████ has witnessed staff from the Jackson Sheriff's Office using pepper guns. The commanding officer, Mr. Tim, uses pepper guns a lot. On February 22, █████ and others were maced in the dorm because the guards didn't want them messing up the new jail.

13. █████ is suffering extreme psychological distress in his current conditions. Further, the placement in an adult facility gravely impacts this minor's capacity to rehabilitate and complete requirements necessary to progress on his rehabilitative journey and return home to his family and community.

**The Remedy Sought:**

█████ ███ is suffering substantial physical and psychological harm. Accordingly, the following remedies are requested for █████

1. Immediate removal from the above stated conditions of confinement;
2. Immediate restoration of full educational services required under Louisiana law, including any necessary accommodations and/or special education services;
3. Immediate restoration of all other mandated rehabilitation programming and treatment, including education, recreation, counseling, and other therapies to ensure continued rehabilitation and allow the youth to return home to his family and community as soon as possible;
4. Immediate cessation of the use of mace, tasers, and/or pellet guns on youth in OJJ custody and implementation of policies and monitoring of use of force against youth in OJJ custody;
5. Immediate restoration of services and other activities outside of the youth's cell;
6. Immediate restoration of family visits and calls;
7. Immediate commitment to the permanent closure of the Angola facility to youth;
8. Immediate cessation of detention of youths in OJJ custody at the Jackson Parish Jail; and
9. Immediate evaluation by OJJ to determine whether the youth can be recommended for a step-down or release to the community.

**The Response**
Per the Office of Juvenile Justice's Administrative Remedy Procedure B.4.3.VII.I, you are required to

respond within 48 hours to the submission of this Emergency ARP, and you must provide a final decision within 5 days of filing. At that point, this emergency grievance shall be deemed exhausted and ripe for judicial review

B.5.3 (d)

## Administrative Remedy Procedure
## Third Party Acknowledgment/Approval Form

I, ██████████████ ─────────── (Youth name), Client ID # ██████████ ────

due hereby agree/approve ___DAVID UTTER___ to file an
(Name of Third Party)

ARP on my behalf. I understand that the above named third party is not my parent

or  legal guardian, and is acting in my best interest.


███████████████████         _Heather L Barrow_
Youth Signature                    Witness

_2/28/24_                          _2/28/2024_
Date                                Date

B.5.3 (a)

**YOUTH SERVICES**                              Number: ____-____-____
**ADMINISTRATIVE REMEDY PROCEDURE FORM**        Date Received:_____

Name: ██████ ██████ _____   Client ID Number: ████ _____

Facility: __Jackson Parish Jail____   Living Area:_____

## "THIS IS A REQUEST FOR ARP"

(You may ask your case manager or other staff members for help completing this form.) State your problem (WHO, WHAT, WHEN, WHERE AND HOW) and the remedy requested (what you want to solve the problem):

Problem: __See attached_____

_____

_____

Remedy requested: __See attached_____

Date of Incident/Occurrence: __See attached____   Today's Date: 3/14/2024

**This form must be completed within 90 calendar days of the date of the incident/occurrence and given to the ARP Coordinator or placed in the ARP/grievance box.**

| Screening - ARP Coordinator's Review |
| --- |

Rejected _____Returned _____ Accepted   Screening Date: _____   Sexual Assault ☐ Yes ☐ No
Reason:_____

| Emergency Request |
| --- |

(Maximum Time for Processing – Initial Response: 48 hours / Final Response: 5 days)

Rejected: _____ Accepted _____ Reason: _____

Sent to Facility Director / Youth Facilities Director - Statewide / IS on: _____

SFD Initial Response Received on:_____   SFD Final Decision Received on:_____

| Step One - ARP Coordinator/IS Recommendation and Facility Director's Response |
| --- |

(Maximum Time For Processing: 30 calendar days)

ARP Coordinator/IS Recommendation: _____

Sent to Facility Director on: _____   AC/IS Signature: _____

Facility Director's response to your ARP Step One request: _____

_____

_____

Date: _____   Facility Director's Signature: _____

Received Step One on: _____   **Youth's Signature:** _____

**If you are not satisfied with this response, you may go to Step Two.  The ARP Coordinator must submit your request to the Deputy Secretary within 15 calendar days after you receive the Step One response.**

Request Step Two: _____Yes _____No   Reason for Step Two request: _____

_____

Date Step Two request received by AC: _____   Date Sent to Deputy Secretary: _____

AC's Signature: _____

| Step Two - Deputy Secretary's Response |
| --- |

(Maximum Time For Processing: 21 calendar days)

Date Received: _____

Deputy Secretary's response to ARP Step Two request: _____

_____

_____

_____

Date: _____   _____
                          Deputy Secretary's Signature

Date received Deputy Secretary's response: _____   _____
                                                               Youth's Signature

**If you are not satisfied with this response, you may seek judicial review.  A request for judicial review must be filed with the juvenile court which entered your order of commitment within 30 calendar days after receiving the Step Two decision.**

**EMERGENCY ARP APPLICATION**
**March 14, 2024**

**Submitted On Behalf of** ▮▮▮▮ ▮▮▮▮ **(No.** ▮▮▮▮

This is an Emergency ARP submitted on behalf of ▮▮▮▮ ▮▮▮▮ .

    I am an attorney representing ▮▮▮▮ , a youth in the custody of the Office of Juvenile Justice ("OJJ"). I attach authority to file a 3ʳ party ARP signed by here. I am filing this Emergency ARP on ▮▮▮▮ 's behalf pursuant to La. Admin. Code tit. 22 ch. 7A. § 713.F.6 and OJJ Youth Services Policy B.5.3.VII.I.Because this grievance arises directly from the imminent risk of physical and emotional harm that ▮▮▮▮ faces, this grievance must be treated as an Emergency ARP under both the Louisiana Administrative Code and OJJ Youth Services Policy.

**The Problem:**

    ▮▮▮▮ is currently detained at the Jackson Parish Jail, where conditions expose him to ongoing and serious future risks of harm, including heightened risk of self harm and harm by others; denial of education; denial of counseling and other rehabilitative treatment and therapies; inadequate and substandard medical and mental health care; unnecessary and excessive uses of force, including with pepper spray ("mace"), pellet guns, and tasers; and the use of psychologically harmful solitary confinement. These unconstitutional conditions of confinement represent an unwarranted and unlawful danger to ▮▮▮▮ and to all others being so detained.

1.  Because so many young people under OJJ jurisdiction (whether sole or joint jurisdiction with another entity) are detained at the overcrowded Jackson Parish facility, ▮▮▮▮ is detained with five other people in a cell designed for two people. The cell contains four young men under OJJ jurisdiction and one thirty-year-old adult. The cell has only two beds, so he and others sleep on the floor with nothing but a thin mattress and torn blanket.

2.  Prior to entering this overcrowded cell, ▮▮▮▮ was in an adult dorm with adults of all ages. He was moved into lockdown after another youth under OJJ's jurisdiction was stabbed in the adult dorm.

3.  While in these conditions, ▮▮▮▮ has no access to counseling and education services that OJJ is required to provide for youth in its custody. He has not been to school at all since he arrived at the Jackson Parish Jail on or around February 15, 2024.

4.  Before being transferred to the Jackson Parish Jail, ▮▮▮▮ was detained at the Bridge City Center for Youth – West Feliciana facility at Angola ("Angola") until on or around August 11, 2023.

5.  Throughout his detention at the Jackson Parish Jail, ▮▮▮▮ has witnessed repeated violence. ▮▮▮▮ was present with three other juveniles under OJJ jurisdiction in the adult "A" dorm when one juvenile under OJJ jurisdiction was knifed. Staff did not intervene to stop the fight.

6.  After the fight, ▮▮▮▮ was put in another adult dorm, the "B" dorm. There is significant violence between adults in the "A" dorm and "B" dorm. As a result, after being transferred to B dorm, ▮▮▮▮ was threatened.

7.  After being placed in B dorm, ▮▮▮▮ was put in his current lockdown conditions. He did not

receive any reason for being put in lockdown. He thinks it is because he said he did not want to be in the B dorm.

8. ▇▇▇▇ further is denied any contact or video visits with his family while at the Jackson Parish Jail. Guards at the jail previously have tried to stop him from speaking with his mother, when he tried to call her to tell her that he could not go to the B dorm.

9. ▇▇▇▇ is suffering extreme psychological distress in his current conditions. Further, the placement in an adult facility gravely impacts this youth's capacity to rehabilitate and complete requirements necessary to progress on his rehabilitative journey and return home to his family and community.

**The Remedy Sought:**

▇▇▇▇ ▇▇▇▇ is suffering substantial physical and psychological harm. Accordingly, the following remedies are requested for ▇▇▇▇ :

1. Immediate removal from the above stated conditions of overcrowded confinement;
2. Immediate restoration of full educational services required under Louisiana law, including any necessary accommodations and/or special education services;
3. Immediate restoration of all other mandated rehabilitation programming and treatment, including education, recreation, counseling, and other therapies to ensure continued rehabilitation and allow the youth to return home to his family and community as soon as possible;
4. Immediate cessation of the use of mace, tasers, and/or pellet guns on youth in OJJ custody and implementation of policies and monitoring of use of force against youth in OJJ custody;
5. Immediate restoration of services and other activities outside of the youth's cell;
6. Immediate restoration of family visits;
7. Immediate commitment to the permanent closure of the Angola facility to youth;
8. Immediate cessation of detention of youths in OJJ custody at the Jackson Parish Jail; and
9. Immediate evaluation by OJJ to determine whether the youth can be recommended for a step-down or release to the community.

**The Response**
Per the Office of Juvenile Justice's Administrative Remedy Procedure B.4.3.VII.I, you are required to respond within 48 hours to the submission of this Emergency ARP, and you must provide a final decision within 5 days of filing. At that point, this emergency grievance shall be deemed exhausted and ripe for judicial review

B.5.3 (d)

## Administrative Remedy Procedure
## Third Party Acknowledgment/Approval Form

███████████████████ (Youth name), Client ID # ███████████████

due hereby agree/approve _____David UTTER_____ to file an

(Name of Third Party)

ARP on my behalf. I understand that the above named third party is not my parent

or legal guardian, and is acting in my best interest.

███████████████      _Heather L Barrow_
**Youth Signature**          **Witness**

_2-28-24_            _2/28/2024_
**Date**              **Date**

B.5.3 (a)

**YOUTH SERVICES**                              Number: ____-__-___
**ADMINISTRATIVE REMEDY PROCEDURE FORM**        Date Received:_____

Name: ██████ ██████ _____    Client ID Number: ██████ _____

Facility: _Jackson Parish Jail_____    Living Area:_____

## "THIS IS A REQUEST FOR ARP"

**(You may ask your case manager or other staff members for help completing this form.) State your problem (WHO, WHAT, WHEN, WHERE AND HOW) and the remedy requested (what you want to solve the problem):**

Problem:_ See attached _____

_____

_____

Remedy requested:_ See attached _____

Date of Incident/Occurrence:_See attached_____    Today's Date:_3/14/2024_____

**This form must be completed <u>within 90 calendar days</u> of the date of the incident/occurrence and given to the ARP Coordinator or placed in the ARP/grievance box.**

| **Screening - ARP Coordinator's Review** |
| --- |

Rejected _____Returned _____ Accepted    Screening Date: _____    Sexual Assault □ Yes □ No
Reason:_____

| **Emergency Request** |
| --- |

(Maximum Time for Processing – Initial Response: 48 hours / Final Response: 5 days)

Rejected:_____ Accepted_____ Reason:_____

Sent to Facility Director / Youth Facilities Director - Statewide / IS on: _____

SFD Initial Response Received on:_____    SFD Final Decision Received on:_____

| **Step One - ARP Coordinator/IS Recommendation and Facility Director's Response** |
| --- |

(Maximum Time For Processing: 30 calendar days)

ARP Coordinator/IS Recommendation: _____

Sent to Facility Director on: _____    AC/IS Signature: _____

Facility Director's response to your ARP Step One request: _____

_____

_____

Date: _____    Facility Director's Signature: _____

Received Step One on: _____    Youth's Signature: _____

**If you are not satisfied with this response, you may go to Step Two.  The ARP Coordinator must submit your request to the Deputy Secretary <u>within 15 calendar days</u> after you receive the Step One response.**

Request Step Two: _____Yes _____No    Reason for Step Two request: _____

_____

Date Step Two request received by AC: _____    Date Sent to Deputy Secretary: _____

AC's Signature: _____

| **Step Two - Deputy Secretary's Response** |
| --- |

(Maximum Time For Processing: 21 calendar days)

Date Received: _____

Deputy Secretary's response to ARP Step Two request: _____

_____

_____

_____

Date: _____    _____
                                                        Deputy Secretary's Signature

Date received Deputy Secretary's response: _____    _____
                                                        Youth's Signature

**If you are not satisfied with this response, you may seek judicial review.  A request for judicial review must be filed with the juvenile court which entered your order of commitment <u>within 30 calendar days</u> after receiving the Step Two decision.**

**November 2022**

**EMERGENCY ARP APPLICATION**
**March 14, 2024**

**Submitted On Behalf of** ███████ ███████ **(OJJ No.** ███████

This is an Emergency ARP submitted on behalf of ███████ ███████

    I am an attorney representing ███████ **a youth** in the custody of the Office of Juvenile Justice ("OJJ"). I attach authority to file a 3ʳᵈ party ARP signed by here. I am filing this Emergency ARP on ███████ behalf pursuant to La. Admin. Code tit. 22 ch. 7A. § 713.F.6 and OJJ Youth Services Policy B.5.3.VII.I. Because this grievance arises directly from the imminent risk of physical and emotional harm that ███████ faces, this grievance must be treated as an Emergency ARP under both the Louisiana Administrative Code and OJJ Youth Services Policy.

**The Problem:**

    ███████ is currently detained at the Jackson Parish Jail, where conditions expose him to ongoing and serious future risks of harm, including heightened risk of self harm and harm by others; denial of education; denial of counseling and other rehabilitative treatment and therapies; inadequate and substandard medical and mental health care; unnecessary and excessive uses of physical force, including with pepper spray ("mace"), pellet guns, and tasers; and the use of psychologically harmful solitary confinement. These unconstitutional conditions of confinement represent an unwarranted and unlawful danger to ███████ and to all others being so detained.

1.    Because so many young people under OJJ jurisdiction (whether sole or joint jurisdiction with another entity) are detained at the overcrowded Jackson Parish facility, ███████ is detained with four other people in a cell designed for two people. The cell has only two beds, so he and others sleep on the floor with nothing but a thin mattress and torn blanket.

2.    ███████ came to the Jackson Parish Jail on or around September 15, 2023 directly from Swanson Center for Youth – Monroe. At first, he was placed in a juvenile cell. While in the juvenile cell, he saw and heard adults on a regular basis through a window on the cell door.

3.    About two months ago, ███████ was moved from the juvenile dorm to an adult dorm at the Jackson Parish Jail. After being put in the adult dorm for approximately a month and a half, he was put in his current lockdown conditions. He has been on lock down for at least ten days, 24 hours per day. He is allowed out of his cell every two days to shower; he showers with other adults.

4.    While in these **conditions,** ███████ has no access to counseling and education services that OJJ is required to provide for youth in its custody. Staff have informed him that no education program currently available to him. The last time he was able to complete any Edgenuity-based curriculum was at Swanson.

5.    ███████ ███████ further is denied any contact or video visits with his family while at the Jackson Parish Jail. His ability to contact his mother even by phone on lockdown is extremely limited and further costs substantial amounts of money.

6.    Throughout his detention at the Jackson Parish Jail, ███████ has witnessed the use of pepper guns and mace. He has also been the victim of violence. He was stabbed about 2-3 weeks ago in the adult dorm. He asked a nurse for treatment but was not given any. Approximately a week ago, he

and the other youth in his cell were maced in the cell. They were not allowed to shower, so he had to use toilet water to remove the mace from his face. He experienced burning for several hours afterwards. About a month ago, ███████ was directly shot with a pepper gun in the adult dorm as well. He was shot with the pepper gun after others resisted a shakedown. He did not resist.

7.  ███████ is suffering extreme psychological distress in his current conditions. Further, the placement in an adult facility gravely impacts this minor's capacity to rehabilitate and complete requirements necessary to progress on his rehabilitative journey and return home to his family and community.

**The Remedy Sought:**

███████ is suffering substantial physical and psychological harm. Accordingly, the following remedies are requested for ███████ ███████

1.  Immediate removal from the above stated conditions of overcrowded confinement;
2.  Immediate restoration of full educational services required under Louisiana law, including any necessary accommodations and/or special education services;
3.  Immediate restoration of all other mandated rehabilitation programming and treatment, including education, recreation, counseling, and other therapies to ensure continued rehabilitation and allow the youth to return home to his family and community as soon as possible;
4.  Immediate cessation of the use of mace, tasers, and/or pellet guns on youth in OJJ custody and implementation of policies and monitoring of use of force against youth in OJJ custody;
5.  Immediate restoration of services and other activities outside of the youth's cell;
6.  Immediate restoration of family visits;
7.  Immediate commitment to the permanent closure of the Angola facility to youth;
8.  Immediate cessation of detention of youths in OJJ custody at the Jackson Parish Jail; and
9.  Immediate evaluation by OJJ to determine whether the youth can be recommended for a step-down or release to the community.

**The Response**
Per the Office of Juvenile Justice's Administrative Remedy Procedure B.4.3.VII.I, you are required to respond within 48 hours to the submission of this Emergency ARP, and you must provide a final decision within 5 days of filing. At that point, this emergency grievance shall be deemed exhausted and ripe for judicial review

B.5.3 (d)

## Administrative Remedy Procedure
## Third Party Acknowledgment/Approval Form

I, ████████████████ (Youth name), Client ID # ████████,

due hereby agree/approve _DAVID UTTER_ to file an
                              (Name of Third Party)

ARP on my behalf. I understand that the above named third party is not my parent

or legal guardian, and is acting in my best interest.

████████████         _Heather L. Barrow_
**Youth Signature**           **Witness**

_2/28/24_          _2/28/2024_
**Date**            **Date**

3

# OFFENDER ORIENTATION HANDBOOK

# JACKSON PARISH JAIL



# SHERIFF ANDY BROWN

# 1828 GANSVILLE ROAD
# JONESBORO, LA 71251

Scanned with CamScanner

This handbook has been written to aid you while you are here and to help you in making a transition if you have come from another facility. Society has said you are in custody for a certain reason, for a certain amount of time. The law holds us responsible for you it is our wish that your stay here be as pleasant as possible under the circumstances. Your behavior and cooperation will go a long way towards making your stay easier for all persons concerned.

You are expected to follow the rules and living pattern, which had been set for you. We realize that each person is an individual. As long as you follow the rules and regulations set forth in this handbook, you will be treated with respect and fairness. All we ask is follow the rules and regulations here at Jackson Parish Jail. This book may serve as your guide. Make sure that you take the time to read it thoroughly. It is our hope that a good relationship will be developed between you and Jackson Parish Jail.

MAILING ADDRESS:    Your Name
Housing Location (Dorm)
Jackson Parish Jail
1828 Gansville Road
Jonesboro, La 71251

This will change at a later date to where mail will be sent off sight to be scanned in and placed on your inmate tablet or kiosk. All mail being sent to you will be scanned and no personal mail will be delivered into a dorm.

ADMINISTRATION:

Andy Brown,
Sheriff of Jackson Parish

Brent Barnett
Chief Deputy

Donovan Shultz
Chief Investigator

Tim Ducote
Warden

Jon Thomas
Assistant Warden

## CHAPLAIN

The facility has a chaplain on staff that will provide counselling to any offender who desires it. Regular religious services are held on a weekly basis throughout the facility. An offender should consult the bulletin board in his / her dorm for announcements. The Chaplin's Office is open and available to you. The Chaplin is her to help you in all of your spiritual matters and needs you may contact the Chaplin by filling out a Request form.

## EDUCATION PROGRAM

You can attend education classes while incarcerated in this facility. A GED or high school equivalency certificate will be offered. If you desire to attend these classes, please fil out a request form to the Education Department.

All pre-adjudicated juveniles will attend school daily set forth by the Jackson Parish School District and follow the school guidelines set forth by them. A certificate teacher will be on staff to assist and educate students.

All Office of Justice juveniles will maintain school through the Office of Juvenile Justice school program. It will be administered by OJJ staff.

## LAW LIBRARY & LIBRARY

This facility has a library for your use. It contains reading materials and education materials. Offenders are encouraged to use the library. Offenders wanting information from the Law Library must go to a kiosk or tablet to gain access to the law library.

## RECREATION

Juvenile Offenders will have access to recreational yard time each day that it is feasible for security of the facility. There is a recreational deputy assigned to assist with making sure that they each receive up to an hour per day of yard time.

## MEDICAL

After your initial Medical Evaluation, the only way you can access the Medical Department is by completion of a Request Form except for a Medical Emergency. SICK CALLS will be conducted on a regular basis as scheduled by the medical staff. Offenders needing emergency care will be dealt with on a case-by-case basis. Medications will be handed out by a Deputy when offenders have left the dining hall after meals. Inmates needing emergency dental treatment will make sick call and be referred by the nurse as soon as possible. All dental treatment shall be extractions only; No other dental work shall be done unless approved by the Sheriff. Offenders will be charged a $1.00 fee for each self-initiated request for Medical, Dental, or Mental Health Services. All medical request forms will be found on the tablets or kiosk.

## INTAKE

Upon your arrival at the Jackson Parish Jail, your property will be thoroughly searched and inventoried. The items that are not allowed at the facility will have to be sent home. You will have 21 days to do so. The facility will not be responsible for any items left after that time. The Booking Department will ask you some general questions and take a picture of you for your Identification Card. If you lose your ID Card it will cost, you $5.00 for a replacement. You will also be required to take a shower and be medically evaluated. You will be issued uniforms, sheets, towel, and a laundry bag. You are responsible for these items and they must be returned when you leave the facility. PREA education will be conducted to each juvenile that enters the facility within 48 hours of intake.

## RANDOM DRUG SCREEN

The facility reserves the right to drug test anyone at any time. An offender who tests positive for any illegal drugs will be disciplined in accordance with the La DPS & C Rules and Regulations.

**OFFENDERS RIGHTS**

An offender's rights are defined under the 1st, 4th, 5th, 6th, 8th and 14th amendments of the Unites States Constitution. These rights include:

- Access to the Courts
- Access to legal counsel
- To be represented by an offender counsel
- Due process in Disciplinary Hearings
- To express views as long as the offender is not posing a threat to the security of the facility or posing a clear danger of violence or disruption
- To send mail and receive mail
- To be free from unreasonable search & seizure of property
- To be free from physical abuse
- To fair classification
- Freedom of religion
- To have a nutritional diet
- Sanitary living conditions
- To have recreation
- To have medical treatment

**OFFENDERS RESPONSIBILTIES**

1. Treat all Staff and offenders respectfully
2. To learn the rules and live by them
3. Respect the religious rights of others
4. Do not waste food or impair the operations of sanitary facilities
5. Follow the laundry and shower schedule to keep yourself and living area neat and clean
6. Request medical and dental care when needed
7. Conduct yourself properly during visits and do not violate the facility's rules through visitation or correspondence.
8. Present your petitions, questions, and problems to the court in an honest and fair manner.
9. Use reading material property and do not deprive the rights of others.
10. Take advantage of educational programs and other programs which may help you live a successful and law-abiding life in the community.

**PRISON RAPE ELIMINATION ACT - ORIENTATION**

It is the policy of the Jackson Parish Jail to provide a safe, humane, and appropriately secure environment, free from threat of sexual assault and sexual misconduct for all staff members, volunteers and offenders by maintaining a program of prevention, detection, response, reporting, investigating and tracking of all alleged and substantiated sexual assaults. Jackson Parish Jail has a zero tolerance of incidents of sexual coercion within the facility. All new in-coming offenders will receive verbal and written information about sexual assault and sexual misconduct during the orientation during the booking process. This information will address the following:

- Prevention
- Self-protection
- Reporting sexual assault and sexual misconduct
- Protection from retaliation
- Treatment and counseling

JPJ zero tolerance for sexual assault and sexual misconduct

## POSTED POLICY #1 – Dress Appearance, Laundry Schedule, Packages, and Mail

Packages are not allowed to the Jackson Parish Jail. Any package sent to the Jail will be returned to sender at the expense to those who sent the item.

Any items needed should be purchased off the commissary.

Each offender is required to keep themselves and bed area clean and free from odor. Showers are available from 10am – 10 pm daily except during the following times:

- Counts, Work Periods, Cleaning, and lights out.

During daytime hours only a wet towel and wash rag may hang on your bed. No clothes may hang on the beds during daytime hours.

Any offender who fails to keep himself and bed clean and odor free will be subject to disciplinary action.

## LAUNDRY SCHEDULE

Monday – Sheets & Blankets
Tuesday – Whites
Wednesday – Grays & Jumpsuits
Friday – Whites
Saturday – Grays & Jumpsuits

The Sheriff my disapprove any homemade items. The facility's liability for any lost offender property will be limited to replacement with the facility issue. This includes replacement with facility issue of any personal clothing alleged to have been lost and/or damaged during laundering or in any other way. In all other categories; liability will be subject to a maximum amount of $50.00. The offender population is hereby put on notice that all of their personal property is subject to those limitations regardless of it actual value. Items not mentioned on this list shall be subject to approval by the Sheriff or are otherwise denied.

The following is a list of all items an offender may possess and/or accrue while in the custody of this facility. Maximum quantities of each item include facility issue, free world goods or any combination thereof. Inmates and their drawers will be subject to routine unannounced shakedowns whereby all items exceeding the quantities listed herein will be confiscated. Offenders will not be allowed to modify the appearance or function of any of their possessions, nor will they be allowed to give, borrow, lend/trade, or barter their goods.

The Sheriff has the right to disallow any item of an approved category (e.g. a particular brand or type of shoe) which he feels is or may be a threat to the security or safety of a facility, offenders and of staff. In such cases the offender will be given written notice of the reason for the disallowed item and may appeal if desired. Should the offender not wish or should the item by ultimately disallowed they will be allowed to return said item to the vendor or to send it home in accordance with this regulation.

Personal letters and pictures are prohibited in packages; they may be received through regular mail procedures (no polaroid's unless made by facility, no backed pictures) Polyurethane items are prohibited. No camouflage color of any item shall be permitted. All items must be stored in authorized storage space provided.

DESCRIPTION
- 6 Cotton blend briefs or boxers (white only)
- 1 pair of Shower Shoes (black, brown, white, gray or blue)
- 2 pair Tennis shoes (black, white or gray) NO red or blue, No Self-inflatable soles, no pickets on inside of shoe
- 1 pair work boots, no heels over 2 in. (black or brown only)

Scanned with CamScanner

- 6 undershirts
- 2 sweatshirts
- 2 sweatpants
- 2 Winter underwear
- 6 pairs of socks
- 1 jacket
- 2 pair of pajamas (no red or blue) cotton or cotton blend only
- 3 towels
- 3 washcloths
- 1 wristwatch, no features other then those related to date and time
- 2 gym style shorts (gray or white only – 6" inseam)
- 1 Ring
- 12 audio tapes/ CD's
- 1 radio/tape player/CD player (with earphones) must be Walkman type
- Photographs, photo albums, legal paper, books and items sold from commissary

If any items are sent to the laundry on days that are not designated the items will not be returned until authorized.

Offenders are required to be in their complete prison uniform (No shower shoes), including socks, anytime they leave the dormitory, with the exception of recreation call out.

Offenders must have their ID card attached to the pocket of their uniform anytime the offender is out of their dormitory.

Offender will maintain their hair in a manner that it can be easily searched for contraband. Extreme hairstyles are not permitted. The Sheriff reserves the right to make determinations on a case-by-case basis regarding offender hairstyles and length.

## PACKAGES

Packages are not allowed to the Jackson Parish Jail. Any package sent to the Jail will be returned to sender at the expense to those who sent the item.

## MAIL

Outgoing mail is picked up Monday through Friday, excluding Holidays. You may always respond to loved ones or those you wish to communicate with using the tablet or kiosk in the dorms.

All incoming mail will be scanned into your account on the tablets or kiosk.

Envelopes and packages received at the facility will be not be accepted at the facility, without the sole authorization of the Sheriff. Indigent offenders who are declared such by the facility shall be issued the ability to send mail through the kiosk or tablets.

Mail is delivered daily Monday through Friday, excluding Holidays. No mail is picked up or delivered to offenders on the weekend or holidays. .

Outgoing mail must have your full name, housing location, bunk number and the return address. No nicknames are allowed.

## RECREATION YARD RULES

1. Offenders will not take blankets or linens onto the yard
2. Offenders will not encounter the fence, place clothing in/on the fence, or anything through the fence.
3. Offenders will not abuse or damage recreation equipment.
4. Offenders will report any injuries that may occur to an officer.
5. Offenders will not urinate on the recreation's yards. This conduct is punishable, and anyone caught committing this act will be disciplined.

## POSTED POLICY #2 – Offender Conduct

Each offender is required to address all staff members and visitors with courtesy and respect. Staff will be addressed by Mr., Mrs., or Deputy. Under no circumstances will and offender address staff by their first name or any nickname. Except for facility-related matters, offenders may not attempt to engage staff or visitors in conversation that goes beyond common greetings.

Lights out time are from 10:30pm to 5am, seven (7) days a week. During lights out offenders are not allowed to move around the dorm. The only movement allowed is limited to using the restroom or getting water.
Each offender is required to wear their ID card at all times and must clip their ID card to his bunk at lights out. Do not lose or abuse your ID card. Replacement cost is $5.00 for a new card.

When moving in the halls, all offenders will walk to the right side near the wall (in the gray painted area).
There will be NO TALKING in the corridors.
When finished eating, offenders will place their tray in the scullery window and quietly exit the Chow Hall. There is NO talking in the Chow Hall. During callouts for sick calls, school, church, visiting, etc. loud and boisterous behavior is prohibited.

While on the recreation yard, offenders may not approach ANY perimeter fence. Touching or leaning on ANY fence is prohibited. Offenders will not throw litter on the grounds. While inside a housing unit, loud talking, horse playing, slamming dominoes and other boisterous behavior is prohibited.
Violations of this policy will subject the offender to disciplinary action.

## POSTED POLICY #3 – Offender Counts

During ANY and ALL counts, offender movement will stop. When count is called in the housing unit each offender will immediately sit on his assigned bed.

If you sleep in the middle rack of a triple-bunk, you must stand beside your rack during all count times that occur before 10pm. There will be no talking, TV viewing, games, showers and phone calls during count times.

Offenders will remain at their bunks until notified that the count is clear.

Violations of this policy will subject offender to disciplinary action.

## POSTED POLICY #4 – Offender Accounts, Possession of Cash Money & Purchase on a Credit Basis.

OFFENDER ACCOUNTS
Each offender will have a facility bank account to purchase from the Commissary, pay medical co-payments, purchase subscriptions to approved publications and send money to family, pay court ordered restitution and other authorized transactions. The offenders may only obtain funds in the form of Postal Money Orders mailed to the facility. A Money Order may be dropped off to the receptionist, or Inmate Accounts Personnel during normal business hours. If they are not present, the money orders will not be accepted and must be mailed to the facility. The facility will NOT accept any money from an offender from any other source.

POSSESSION OF CASH MONEY
Cash money is contraband. No offender may possess or have in their area of immediate control any cash money. This does not apply to any offenders in the Transitional Work Program.

PURCHASE ON CREDIT BASIS
Offenders are not allowed to make purchase on credit. Joining record/tape clubs, book clubs, etc is prohibited.

Violations of this policy will subject the offender to disciplinary action.

### POSTED POLICY #5- Offender's callouts

Offenders will report to all posted or announced callouts for which they are scheduled. Failure to read the posted callout is no excuse.

Violations of this policy will subject the offender to disciplinary action.

### POSTED POLICY #6- Visitation

Visitation will be conducted at the Jackson Parish Jail by Video Visitation only.

Special In person Visit can be granted only by the Sheriff or his designee.

VISTING RULES:

Video visitation must be done at the video kiosk located in the housing units.

Offenders shall not cover their body with any sheets or covers of any kind or the monitor at any time during the visit. If this is done the video visitation can be turned off immediately.

Visitors on the other side of the call, must be fully clothed during the video visitation. If at any time, during the visit it appears that nudity, or exposure of any kind is done, the video visitation shall be canceled.

Video visitation hours shall be the same as the phone time schedule.

Special In person Visit, understands that the visitors coming into the facility is subject to being searched by deputies prior to the visit.

Visits will be monitored by a deputy during the visit.

Visitors shall not be permitted to possess or carry the following items into the visiting area: Controlled substance, alcoholic beverages, marijuana, tobacco products of any type, cameras, video or audio recording equipment, any type of electronic device, i.e. cell phones, pagers, radios, tape recorders, etc.

Any time any contraband is caught during a special visit, the visitor shall be charged with introduction of contraband into a correctional center and shall be banned from any future visits. The offender may also be charged, if charges are applicable.

RESTRICTIONS

Any offender housed at JPJ with a prior or current conviction of a sex crime involving a minor child family member or has a documented history of sex abuse with a minor child family member will be ineligible to visit with any minor child, including their own biological child or step-child.

In addition, any offender housed at JPJ with a prior or current conviction of a sex crime involving a minor child who is not a family member shall not be allowed to visit any minor child.

However, the offender may be authorized to visit with his own biological child in the presence of the child's legal guardian at the discretion and approval of the Sheriff. In the instances, the legal guardian shall submit a written request and accompany the minor child throughout the duration of the visit.

Request for special visits will be considered on a limited case-by-case basis and must be approved by the Sheriff or his designee.

Any violation of this visitation policy will be actionable under the Aggravated Disobedience Rule.

**VISITOR DRESS CODE**
Visitors shall dress and act accordingly. Visitors shall wear clothing that poses no threat to the safety, security, good order and administrative manageability of the facility. This included during video visitation.

**DRESS STANDARDS:** Visitors shall wear clothing that poses no threat to the security or maintenance of order at the facility. The following standards are to be met: Clothing that is similar in appearance to the clothing worn by prison's offender population is prohibited.

Clothing that is similar in appearance to the clothing worn by staff sheet or transparent clothing in not permitted. Swimsuits are not permitted.

Skirts, shorts, skorts, culottes and dresses must be no shorter than three inches above the kneecap and not have a deep or revealing slits. Strapless, tube and halter tops, tank tops and strapless dresses are not permitted; Tops that exposes the midriff are not permitted.

Undergarments must be worn at all times and cannot be exposed.

Clothing with revealing holes or tears higher then one inch above kneecap is not permitted.

Clothing or accessories with obscene or profane writing, images or pictures is not permitted.

Gang or club-related, clothing or insignia indicative or gang affiliation is not permitted.

Shoes must be worn at all times, except for infants who are carried. House slippers or shower shoes are not allowed. Hats or other head coverings are not permitted, except as required by religious beliefs.

Violations of this policy will subject offenders to disciplinary action.

Violations of this policy by offenders or the visitors may also result in the removal of a visitor (s) from the offenders visiting list.

### POSTED POLCIY #7 – Unauthorized Areas

Offender movements will be controlled under security supervision.

All offenders are required to walk on the right-hand side of the hall in the gray tile area.

Areas inside and outside the facility which are marked "unauthorized area" are OFF LIMITS to all offenders except as directed by staff.

Violations of this policy will subject the offender to disciplinary action.

### POSTED POLICY #8 – Television Viewing

Television Viewing is as follows:
5am until 10pm – Sunday through Thursday
5am until 12am – Friday and Saturday

The programs to watch will be determined by the majority, except during major news or sporting events as determined by the Sheriff or his staff.

Once a program has begun, if there is at least one person watching that program remains on until the end, at which time another majority selection may be made.

The dorm officer will control this process.  Loud and boisterous behavior while watching the television is prohibited.

The dorm officer will ensure that the TV is tuned to the news channel from 6am-7am, 12pm-12:30pm and from 5:30-6:30pm.

Expanded TV viewing time may be allowed for trustee or if designated by the Sheriff.  Violations of this policy will subject offender to disciplinary action under the Disobedience Rule.

### POSTED POLICY #9 – Telephone Use

Each dorm is equipped with telephones.  The phone will remain on from 6am – 10:30pm.

Off duty offenders may use the phone at any time, except during counts, cleaning, or as directed by the staff.

Offenders are prohibited from calling or attempting to call, the home of any employee, or any local, state, or federal official, except as approved by the Sheriff or his command staff.

Three-way calling is prohibited.

Offenders will not monopolize the phone.  Calls are limited to 15 minutes per call.

Offender phone calls will be identified as originating from a jail.

All offender calls, except legal calls are subject to monitoring and recording.

Violations of the policy will subject the inmate to disciplinary action.

### POSTED POLICY #10 – Commissary

The Commissary is open for inmates to purchase through the tablets or kiosk at the facility.  Family may purchase as well on the website.  Commissary will be delivered every Tuesday and Friday.  If you are wanting commissary delivered for a Tuesday, your order will have to be placed by no later than the Sunday prior at midnight.  If you are wanting your order on the Friday delivery, your order will have to be placed no later than Wednesday at midnight.

Absolutely NO CREDIT will be extended.  All sales are final.

The offender must check their purchase in the presence of a deputy.

### POSTED POLICY #11 – Honor Dorm

Offenders assigned to the honor dorm will have extra privileges that are shown below. It is a privilege to be housed in the honor dorm, but an offender will be removed if their behavior is a disruption to other offenders or refuses to follow the rules. The following procedures will be housed for the honor dorm.

- TV is allowed to stay on 24 hours a day but must have the volume turned off by 10:30pm.
- Telephone use will be allowed 24 hours a day.
- Feeding will be conducted last, barring unforeseen circumstances.
- Inspections will be still be done a daily basis.

### POSTED POICIY #12 – Disciplinary Quarters

The disciplinary quarters housing unit will be primarily house offenders who have exhibited behavior shown to be a serious discipline problem or continues to cause unrest at this facility.

The dorm will be kept clean and sanitary 24 hrs a day. The following procedure will begin at 0500 (wake-up time):

Each offender will make his bed neatly.

No trash or personal belongings will be on the floor.

Bed areas shall be ready for inspections by 0800 hours.

Offenders may sit or lie on their bunks after they made up, but they may not lie under the sheet or blanket until after 4:00pm (except weekends and holidays).

Loud talking, yelling, or any other loud noises will not be tolerated.

Every offender may be allowed access to their personal legal materials.

Every Offender will be allowed to send and receive correspondence.

Every offender will be allowed to have visitation. Visitation will be conducted via video visitation.

Offenders will be allowed access to outdoor yard.

### POSTED POLICY #13 – Offender Photocopying Services

It is the policy of Jackson Parish Jail that photocopying services are provided for offenders in accordance with the following guidelines and procedures.

PROCEDURES

Requests for legal copies will be submitted to the Law Library or the law library sponsor for approval. The cost of any copes requested by an offender will be at the rate of $0.10 per page deducted from Inmate Bank account.

At least two offenders assigned to the law library will be designated by the law library sponsor to make the approved copies.

A draw slip will be completed and forwarded to Inmate Banking. Upon determining that the offender has sufficient funds to cover the photocopying cost, Inmate Banking will advise the law library sponsor. Once this is done the copies will be made by an offender assigned to the law library.

Questions related to whether or not documents are authorized shall be directed to the law library sponsor.

Request for copies of documents contained in an offender's jail record shall be submitted to the Booking Office.

## POSTED POLICY #14 – Offender Grooming & Group Identification

It is the policy of the Jackson Parish Jail that an offender's appearance and hair style does not conflict with security, safety identification and hygiene.

For security reason, any means of group identification including, but not limited to, hair clothing, etc, will not be permitted. Additionally, any manner in which offender clothing is worn could be interpreted as demonstrating any type of group allegiance is prohibited.

An offender's hair shall be groomed in such a manner as to prevent the concealment of the contraband and to limit the offender's ability to change his appearance. Further, offender hairstyles may not interfere, delay or create difficulty in conducting an offender search.

Any offender that is booked into the facility shall submit to having his hair cut to ½ inch or less within 24 hours of his arrival. This does not apply to Jackson Parish arrestees. After a pre-trail offender has been at JPJ for 72 hours they will then get a haircut and shave their beard.

"Specialty haircuts" will not be allowed. This includes mohawks, mullets, dreadlocks, braids, fades or any other type of design haircut. Eyebrows will not be "notched."

Staff will bring the barbers out of their housing units at 8:00 am, Monday through Friday to begin cutting hair.

Violations of this policy will subject the offender to disciplinary action.

## POSTED POLICY #16 – Shower schedule

Showers are available from 10am – 10pm daily except during the following times:
- Counts
- Work periods
- Cleaning
- Lights out

Violations of this policy will subject the offender to disciplinary action.

## POSTED POLICY #17 – Offender Bunk Areas

It is the policy of the Jackson Parish Jail that no items such as, but not limited to, blankets sheets or any object will hand from any offender bunk or from any area that shall obstruct the sight of deputies. This includes obstruction of monitoring by any surveillance camera.

For security reasons any object used to create a shield, screen or blind as described in this policy shall be subject to the applicable schedule "B" rules as defined in the Disciplinary Rules and Procedures for Offenders.

Violations of this policy will subject the offender to disciplinary action.

## POSTED POLICY #18 – Radio, CD & Tape Player Abuse

Offenders will use only approved radio, CD or tape players while in their housing units only.

Offenders will use headphones when listening to any approved radio, CD, or tape player.

Offender will not use their radio, CD, or tape player during count times.

Offenders will not use their radio, CD, or tape player in the presence of staff or visitors.

Scanned with CamScanner

Scanned with CamScanner

Violations of this policy will subject the offender to disciplinary action.

### POSTED POLICY #19 – IWF Meals

It is the policy of the Jackson Parish Jail that when an offender purchases an IWF- Meal, the meal will be consumed upon delivery.

Offenders shall not place the meal in their storage locker.  IWF meals will not be stored in any area of their respective housing unit.

Violations of this policy will subject he offender to disciplinary action.

### POSTED POLICY #20 – Offender Medical Co-Payment

It is the policy of the Jackson Parish Jail that a co-payment of $1.00 will be charged each time an offender request medical services during regularly sick call times.

A $1.00 co-payment fee for mental health services may be charged if circumstances warrant.

The medical co-payment will be waived for all work-related injuries, or procedures initiated by medical staff.

No Fees shall be charged for any referral or scheduled returns visits resulting from the initial request until released from care by the healthcare provider.

A $1.00 prescription fee will be charged each time an offender receives a new prescription as well as refills.

No offender shall be refused medical, mental health or dental care and prescription or other drugs necessary for basic health care because of their financial status.  Offenders with insufficient funds to pay processed fee at the time of collection shall be charged all current funds available in their inmate bank account and will owe the difference, which will reflect as a negative balance in the offender's inmate bank account.

### POSTED POLICY #21 – Daily Inspections

All housing units at the Jackson Parish Jail will be inspected daily. This inspection will include, but is not limited to, an offender's person, personal property, locker, bunk and bedding.

All offenders will maintain their person and property in an orderly and clean manner. Offenders are authorized (1) mattress unless authorized by Medical Staff to have a second.

All beds will be made up daily.  Offenders will not be under the covers between the hours of 5:00 am and 5:00 pm. This does not apply to TWI offenders and offends assigned to night duty.  Offenders may lie on top of their made-up bunds during the day.

Violations of this policy will subject the offender to disciplinary action.

### POSTED POLICY #22 – Tobacco Free

The Jackson Parish Jail is a tobacco free facility.

Violations of this policy will subject the offender to disciplinary action.