NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## FEDERAL BUREAU OF INVESTIGATION ET AL. *v.* FIKRE

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 22–1178.   Argued January 8, 2024—Decided March 19, 2024

Respondent Yonas Fikre, a U. S. citizen and Sudanese emigree, brought suit alleging that the government placed him on the No Fly List unlawfully. In his complaint, Mr. Fikre alleged that he traveled from his home in Portland, Oregon to Sudan in 2009 to pursue business opportunities there. At a visit to the U. S. embassy, two FBI agents informed Mr. Fikre that he could not return to the United States because the government had placed him on the No Fly List. The agents questioned him extensively about the Portland mosque he attended, and they offered to take steps to remove him from the No Fly List if he agreed to become an FBI informant and to report on other members of his religious community. Mr. Fikre refused. He then traveled to the United Arab Emirates, where he alleges authorities interrogated and detained him for 106 days at the behest of the FBI. Unable to fly back to the United States, he ended up in Sweden, where he remained until February 2015. While there, he filed this suit, alleging that the government had violated his rights to procedural due process by failing to provide either meaningful notice of his addition to the No Fly List or any appropriate way to secure redress. He further alleged that the government had placed him on the list for constitutionally impermissible reasons related to his race, national origin, and religious beliefs. Mr. Fikre sought, among other things, an injunction prohibiting the government from keeping him on the No Fly List and a declaratory judgment confirming the government had violated his rights. In May 2016, the government notified Mr. Fikre that he had been removed from the No Fly List and sought dismissal of his suit in district court, arguing that its administrative action had rendered the case moot. The district court agreed with the government, but the Ninth Circuit

reversed, holding that a party seeking to moot a case based on its own voluntary cessation of challenged conduct must show that the conduct cannot "reasonably be expected to recur." 904 F. 3d 1033, 1039. On remand, the government submitted a declaration asserting that, based on the currently available information, Mr. Fikre would not be placed on the No Fly List in the future, and the district court again dismissed Mr. Fikre's claim as moot. The Ninth Circuit once again reversed, holding that the government had failed to meet its burden because the declaration did not disclose the conduct that landed Mr. Fikre on the No Fly List and did not ensure that he would not be placed back on the list for engaging in the same or similar conduct in the future. 35 F. 4th 762, 770–772.

*Held*: The government has failed to demonstrate that this case is moot. A court with jurisdiction has a "virtually unflagging obligation" to hear and resolve questions properly before it. *Colorado River Water Conservation Dist.* v. *United States*, 424 U. S. 800, 817 (1976). But the converse is also true as a federal court must dismiss a case that is moot. *Already, LLC* v. *Nike, Inc.*, 568 U. S. 85, 91 (2013). The limited authority vested in federal courts by Article III of the U. S. Constitution to decide cases and controversies means that federal courts may no more pronounce on past actions that have no "continuing effect" in the world than they may neglect their obligation to hear and resolve questions properly before them. *Spencer* v. *Kemna*, 523 U. S. 1, 18. This does not imply that a defendant may "automatically moot a case" by the simple expedient of suspending its challenged conduct after it is sued. Instead, a defendant's "voluntary cessation of a challenged practice" will moot a case only if the defendant can show that the practice cannot "reasonably be expected to recur." *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U. S. 167, 189. This standard holds for governmental defendants no less than for private ones. Applying these principles to the uncontested factual allegations here, this case is not moot. While the government's representation that it will not relist Mr. Fikre may mean that his past conduct is not enough to warrant relisting, that does not speak to whether the government might relist him if he engages in the same or similar conduct in the future. The government contends that because Mr. Fikre has been delisted since 2016 and has presumably interacted freely with his co-religionists during that time, it is unlikely he will face relisting in the future. This too is insufficient to warrant dismissal. A defendant's speculation about a plaintiff's actions cannot make up for a lack of assurance about its own. The burden here is on the defendant to establish that it cannot reasonably be expected to resume *its* challenged conduct, see *West Virginia* v. *EPA*, 597 U. S. 697, 719, and nothing the government offers here satisfies that formidable standard. The

government claims the Ninth Circuit erred by requiring it to repudiate its past conduct to prove mootness, but what matters is not whether a defendant repudiates its past actions, but what the defendant can prove about its future conduct. Coming as this case does in a preliminary posture, the Court's judgment is a necessarily provisional one. As the complaint's allegations are tested, different facts may emerge that may call for a different result. But adhering to traditional mootness principles, the government has so far failed to meet its burden. Pp. 5–10.

35 F. 4th 762, affirmed.

GORSUCH, J., delivered the opinion for a unanimous Court. ALITO, J., filed a concurring opinion, in which KAVANAUGH, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

No. 22–1178

FEDERAL BUREAU OF INVESTIGATION, ET AL., PETITIONERS *v.* YONAS FIKRE

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[March 19, 2024]

JUSTICE GORSUCH delivered the opinion of the Court.

Yonas Fikre, a U. S. citizen, brought suit alleging that the government placed him on the No Fly List unlawfully. Later, the government removed him from the list. The only question we are asked to decide is whether the government's action suffices to render Mr. Fikre's claims moot.

I

A

In the aftermath of the September 11, 2001, terrorist attacks, the federal government rapidly expanded its No Fly List. By 2016, the government forbade approximately 81,000 individuals from flying into, out of, within, or over the United States. Brief for American Civil Liberties Union et al. as *Amici Curiae* 5. Many of the details surrounding the No Fly List are not publicly available. Some are classified, and it appears no statute or publicly promulgated regulation describes the standards the government employs when adding individuals to, or removing them from, the list. *Id.*, at 6.

In his complaint, Mr. Fikre challenged his placement on the No Fly List. In support of his suit, he pleaded a number

4

of facts. Those as-yet uncontested factual allegations, the truth of which we do not pass upon, aver as follows:*

When he was a child and war broke out in his home country of Eritrea, Mr. Fikre and his family moved to Sudan before eventually immigrating to the United States. App. to Pet. for Cert. 126a, Seventh Amended Complaint ¶4; *id.*, at 137a, ¶51. In time, Mr. Fikre became a U. S. citizen, and as an adult he lived in Portland, Oregon. *Id.*, at 137a–138a, ¶¶51–52. After working for an American cell phone company, he decided to start his own business involving the distribution and retail sale of consumer electronic products in his native East Africa. *Id.*, at 138a, ¶52. In pursuit of this new venture, he traveled to Sudan in late 2009 where some of his extended family still lived. *Ibid.*

On arrival, Mr. Fikre informed U. S. officials of his interest in pursuing business opportunities in the country. *Ibid.* Eventually, he received an invitation to the U. S. embassy—ostensibly for a luncheon. *Id.*, at 138a–139a, ¶¶53–55. But, once there, Fikre was whisked instead to a small meeting room with two FBI agents. *Id.*, at 139a, ¶¶55–56. The agents told him that the government had placed him on the No Fly List, so he "could not return to the United States." *Ibid.*, ¶57. The agents then questioned him "extensively about the events, activities, and leadership" of the Portland mosque he attended. *Ibid.*, ¶58. They asked him to serve as an FBI informant and report on other members of his religious community, offering to "take steps to remove [him] from the No Fly List" if he agreed. *Id.*, at 140a, ¶59. Mr. Fikre refused and eventually departed. *Ibid.* The next

---

*Responding to Mr. Fikre's complaint with a motion to dismiss for lack of jurisdiction, the government did not contest his factual allegations, and the courts below thus assumed their truth. See *Gibbs* v. *Buck*, 307 U. S. 66, 72 (1939); 5C C. Wright & A. Miller, Federal Practice and Procedure §1363, p. 107 (3d ed. 2004) ("The general rule" for Rule 12(b)(1) motions challenging subject-matter jurisdiction is to take allegations "as true unless denied or controverted by the movant"). We do the same.

day, an agent told him over the phone that, "'[w]henever you want to go home[,] you come to the embassy.'" *Id.*, at 140a–141a, ¶62. Mr. Fikre took this to mean that he "would not be removed from the No Fly List and he could not travel to the United States unless he became" an FBI informant. *Id.*, at 141a, ¶62.

Several weeks later, Mr. Fikre traveled to the United Arab Emirates to advance his business plans. *Id.*, at 142a, ¶68. Eventually, however, authorities there "arrested, imprisoned, and tortured him." 35 F. 4th 762, 766 (CA9 2022); App. to Pet. for Cert. 142a–143a, Seventh Amended Complaint ¶¶69–71. They interrogated him, too, about his Portland mosque, its events, leader, and fundraising activities. *Id.*, at 143a, ¶72. One interrogator told Mr. Fikre that the FBI had solicited his interrogation and detention. *Id.*, at 147a, ¶88. After holding him for 106 days, authorities arranged to have Mr. Fikre flown to Sweden where he had a relative. *Id.*, at 147a, ¶86, 148a, ¶90. He remained there until February 2015, when the Swedish government returned him to Portland by private jet. *Id.*, at 152a, ¶105.

B

While still in Sweden, Mr. Fikre filed this suit. In his complaint, he alleged that the government had violated his rights to procedural due process by failing to provide any meaningful notice of his addition to the No Fly List, any information about the factual basis for his listing, and any appropriate way to secure redress. *Id.*, at 165a, ¶164. Further, he claimed, the government had placed him on the list for constitutionally impermissible reasons, including his race, national origin, and religious beliefs. *Id.*, at 168a, ¶176. By way of relief, he sought a declaratory judgment confirming that the government had violated his rights, as well as an injunction prohibiting it from keeping him on the No Fly List. *Id.*, at 169a–170a.

Eventually, in May 2016, the government notified Mr.

Fikre that it had removed him from the No Fly List. No explanation accompanied the decision. See Notice Regarding Plaintiff's Status in No. 3:13–cv–899 (D Ore.), ECF Doc. 98, p. 1. But, in court, the government argued that its administrative action rendered his lawsuit moot; even accepting all his allegations as true, the government said, dismissal had to follow as a matter of law. Supp. Memorandum Regarding Plaintiff's Removal From the No Fly List, ECF Doc. 104, pp. 2–4.

The district court agreed with the government's assessment, but the Ninth Circuit reversed. 904 F. 3d 1033 (2018). When a party seeks to moot a case based on its own voluntary cessation of challenged conduct, the Ninth Circuit held, it must show that its "'allegedly wrongful behavior'" cannot "'reasonably be expected to recur.'" *Id.*, at 1039. And, the court continued, the government's "mere announcement that Fikre was removed" from the No Fly List fell short of satisfying this standard. *Ibid.*

On remand, the government tried again. Once more, it did not contest the truth of Mr. Fikre's allegations concerning his experiences. See Memorandum in Support of Defendants' Motion To Dismiss in No. 3:13–cv–899 (D Ore.), ECF Doc. 146, pp. 21–23. But, this time, the government relied on a declaration from Christopher R. Courtright, the Acting Deputy Director for Operations of the Terrorist Screening Center. The declaration represented that Mr. Fikre "will not be placed on the No Fly List in the future based on the currently available information." App. to Pet. for Cert. 118a, ¶5. Persuaded by the government's latest motion, the district court again dismissed Mr. Fikre's claims as moot. 35 F. 4th, at 769.

Again, however, the Ninth Circuit reversed. The government's declaration might mean that Mr. Fikre "will not be placed on the No Fly List now based on what he did in the past." *Id.*, at 772. But, the Ninth Circuit reasoned, the declaration does not disclose what conduct landed Mr. Fikre on

7

the No Fly List, and it does not ensure that he will "not be placed on the List if . . . he . . . engag[es] in the same or similar conduct" in the future. *Ibid.* As a result, the court concluded, the government had still failed to meet its burden of establishing that its allegedly unlawful conduct cannot "'reasonably be expected to recur.'" *Id.*, at 770.

Shortly after the Ninth Circuit issued its decision, the Fourth Circuit held that a similar declaration *was* sufficient to moot another American citizen's lawsuit challenging his placement on the No Fly List. See *Long* v. *Pekoske*, 38 F. 4th 417, 427 (CA4 2022). To resolve this conflict in lower court authority, the government asked us to hear Mr. Fikre's case, and we agreed to do so. 600 U. S. ___ (2023).

II

The Constitution grants federal courts jurisdiction to decide "Cases" or "Controversies." Art. III, §§1, 2. A court with jurisdiction has a "virtually unflagging obligation" to hear and resolve questions properly before it. *Colorado River Water Conservation Dist.* v. *United States*, 424 U. S. 800, 817 (1976). But the converse also holds true. Sometimes, events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it. When that happens, a federal court must dismiss the case as moot. *Already, LLC* v. *Nike, Inc.*, 568 U. S. 85, 91 (2013). It must because federal judges are not counselors or academics; they are not free to take up hypothetical questions that pique a party's curiosity or their own. The limited authority vested in federal courts to decide cases and controversies means that they may no more pronounce on past actions that do not have any "continuing effect" in the world than they may shirk decision on those that do. *Spencer* v. *Kemna*, 523 U. S. 1, 18 (1998).

None of this implies that a defendant may "automatically

moot a case" by the simple expedient of suspending its challenged conduct after it is sued. *Already*, 568 U. S., at 91. Instead, our precedents hold, a defendant's "'voluntary cessation of a challenged practice'" will moot a case only if the defendant can show that the practice cannot "'reasonably be expected to recur.'" *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U. S. 167, 189 (2000); see *United States* v. *W. T. Grant Co.*, 345 U. S. 629, 632–633 (1953).

We have described this as a "formidable burden." *Friends of the Earth*, 528 U. S., at 190. And the reason for it is simple: "The Constitution deals with substance," not strategies. *Cummings* v. *Missouri*, 4 Wall. 277, 325 (1867). Were the rule more forgiving, a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off; it might even repeat "this cycle" as necessary until it achieves all of its allegedly "unlawful ends." *Already*, 568 U. S., at 91. A live case or controversy cannot be so easily disguised, and a federal court's constitutional authority cannot be so readily manipulated. To show that a case is truly moot, a defendant must prove "'no reasonable expectation'" remains that it will "return to [its] old ways." *W. T. Grant Co.*, 345 U. S., at 632–633. That much holds for governmental defendants no less than for private ones. See., *e.g., West Virginia* v. *EPA*, 597 U. S. 697, 719 (2022); *Trinity Lutheran Church of Columbia, Inc.* v. *Comer*, 582 U. S. 449, 457, n. 1 (2017); *Parents Involved in Community Schools* v. *Seattle School Dist. No. 1*, 551 U. S. 701, 719–720 (2007).

The parties dispute none of these principles; the only question we face concerns their application. Proceeding as the courts below did, we accept Mr. Fikre's uncontested factual allegations as true for purposes of this motion to dismiss. See *supra*, at 2, n.*. As the lower courts did, too, we accept as true the supplemental evidence the government offered: its declaration representing that Mr. Fikre "will

not be placed on the No Fly List in the future based on the currently available information." App. to Pet. for Cert. 118a, ¶5.

Viewed in that light, this case is not moot. To appreciate why, it is enough to consider one aspect of Mr. Fikre's complaint. He contends that the government placed him on the No Fly List for constitutionally impermissible reasons, including his religious beliefs. In support of his claim, Mr. Fikre alleges (among other things) that FBI agents interrogated him about a mosque in Portland he once attended and threatened to keep him on the No Fly List unless he agreed to serve as an informant against his co-religionists. Accepting these as-yet uncontested allegations, the government's representation that it will not relist Mr. Fikre based on "currently available information" may mean that his past actions are not enough to warrant his relisting. But, as the court of appeals observed, none of that speaks to whether the government might relist him if he does the same or similar things in the future—say, attend a particular mosque or refuse renewed overtures to serve as an informant. Put simply, the government's sparse declaration falls short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past. *Friends of the Earth*, 528 U. S., at 190.

If its declaration alone will not do, the government asks us to consider two further things. First, it points to the fact that it removed Mr. Fikre from the No Fly List in 2016. The government acknowledges that it took this action only after he filed suit. But, it stresses, the parties have now sparred in court for some years since his delisting. Second, the government surmises that, during this period, Mr. Fikre "presumably has joined religious organizations" and interacted freely with his co-religionists. Reply Brief 9. Together, the government submits, these points make it unlikely he will face relisting in the future.

That, too, is insufficient to warrant dismissal. A case

does not automatically become moot when a defendant suspends its challenged conduct and then carries on litigating for some specified period. Nor can a defendant's speculation about a plaintiff's actions make up for a lack of assurance about its own. (For that matter, given what little we know at this stage in the proceedings, Mr. Fikre may have done none of the things the government presumes he has, perhaps wishing to but refraining for fear of finding himself relisted.) In all cases, it is the defendant's "burden to establish" that it cannot reasonably be expected to resume *its* challenged conduct—whether the suit happens to be new or long lingering, and whether the challenged conduct might recur immediately or later at some more propitious moment. *West Virginia*, 597 U. S., at 719. Nothing the government offers here satisfies that formidable standard. See *Parents Involved*, 551 U. S., at 719 (declining to dismiss a case as moot five years after the defendant voluntarily ceased its challenged conduct); *City of Mesquite* v. *Aladdin's Castle, Inc.*, 455 U. S. 283, 288–289 (1982) (similar).

Aiming now in a different direction, the government contends that the Ninth Circuit erred by conflating mootness with the merits. The government reads portions of that court's decisions as suggesting that, to win dismissal, it had to admit it lacked any lawful basis for including Mr. Fikre on the No Fly List in the first place. For his part, Mr. Fikre disputes this characterization of the Ninth Circuit's work; never, he says, did that court require the government to repudiate its past conduct to prove mootness.

Rather than resolve who has the better reading of another court's decisions, it is enough to underline the reason for our own. Yes, a party's repudiation of its past conduct may sometimes help demonstrate that conduct is unlikely to recur. See, *e.g., County of Los Angeles* v. *Davis*, 440 U. S. 625, 632–633 (1979). But often a case will become moot even when a defendant "vehemently" insists on the propriety of "the conduct that precipitated the lawsuit." *Already*,

11

Opinion of the Court

568 U. S., at 91.  What matters is not whether a defendant repudiates its past actions, but what repudiation can prove about its future conduct.  It is on that consideration alone—the potential for a defendant's future conduct—that we rest our judgment.

Necessarily, our judgment is a provisional one.  Just because the government has not yet demonstrated that Mr. Fikre's case is moot does not mean it will never be able to do so.  This case comes to us in a preliminary posture, framed only by uncontested factual allegations and a terse declaration.  As the case unfolds, the complaint's allegations will be tested rather than taken as true, and different facts may emerge that may call for a different conclusion.  That is a possibility courts must be alive to in this (and any) case, for a federal court's duty to ensure itself of Article III jurisdiction may begin at the inception of a lawsuit, but it persists throughout the life of the proceedings.  *Spencer*, 523 U. S., at 7.

To be sure, litigating disputes that potentially touch on matters of national security beyond the motion-to-dismiss stage can present evidentiary challenges for parties and courts alike.  Careful attention must be paid to the handling of classified or privileged information.  For our present purposes, however, it is enough to know both sides agree that "[a]dhering to traditional mootness principles is especially important in this national-security context." Reply Brief 18; see Brief for Petitioners 34; Brief for Respondent 45.  And adhering to those principles here, "it is impossible to conclude" the government has so far "borne [its] burden" of proving that this dispute is moot. *Adarand Constructors, Inc.* v. *Slater*, 528 U. S. 216, 224 (2000) (*per curiam*).

\*

The judgment of the Court of Appeals for the Ninth Circuit is

*Affirmed.*

ALITO, J., concurring

# SUPREME COURT OF THE UNITED STATES

No. 22–1178

FEDERAL BUREAU OF INVESTIGATION, ET AL., PETITIONERS $v.$ YONAS FIKRE

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[March 19, 2024]

JUSTICE ALITO, with whom JUSTICE KAVANAUGH joins, concurring.

I join the Court's opinion, but write to clarify my understanding that our decision does not suggest that the Government must disclose classified information to Mr. Fikre, his attorney, or a court to show that this case is moot. In at least some instances, requiring the Government to disclose sensitive information regarding its grounds for placing or removing a person from the No-Fly List could undermine the Government's significant interests in airline safety and the prevention of terrorist attacks. Indeed, some of the Nation's 600-plus district courts are poorly positioned to handle classified documents, and most court personnel lack security clearance. Recognizing such limitations, I do not understand the Court's opinion to require the Government to disclose classified information as a matter of course. On the contrary, non-classified information or information obtained in discovery from the plaintiff in this and other cases may be sufficient to show that the allegedly unlawful listing is unlikely to recur, thereby proving mootness.