# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civ. A. No. 3:22-CV-00573-SDD-RLB<br>) |
| GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections, | )<br>)<br>) **DEFENDANTS' MOTION FOR**<br>) **PROTECTIVE ORDER**<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

NOW INTO COURT, through undersigned counsel, come Defendants Jeff Landry, in his official capacity as Governor of Louisiana; Kenneth "Kenny" Loftin, in his official capacity as Deputy Secretary of the Office of Juvenile Justice ("OJJ"); and James M. LeBlanc, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections ("DOC") (collectively "Defendants"),[1] who submit this Motion For Protective Order as it relates to the

---

[1] Since the filing of this lawsuit, the State of Louisiana elected a new governor, Jeff Landry. Because former Gov. Edwards was initially sued in his official capacity, Gov. Landry is automatically substituted as a defendant. Fed. R. Civ. P. 25(d).

Relatedly, on November 18, 2022, then-Gov. Edwards announced the resignation of initially-named Defendant Deputy Secretary Sommers and the appointment of Otha "Curtis" Nelson, Jr. as his replacement. https://gov.louisiana.gov/index.cfm/newsroom/detail/3892. Because Mr. Sommers was initially sued in his official capacity, Mr. Nelson was then automatically substituted as a Defendant. Subsequently, on February 2, 2024, Gov. Landry announced that Kenneth "Kenny" Loftin had been appointed as the Deputy Secretary of OJJ. https://gov.louisiana.gov/index.cfm/newsroom/detail/4402. Therefore, Mr. Loftin is now automatically substituted as a Defendant. Fed. R. Civ. P. 25(d).

Plaintiffs' Request for Entry Onto Defendants' Premises for Inspection pursuant to Fed. R. Civ. Pro. 34(a)(2) (the "Inspection Request"), and in support thereof would show as follows:

1. On February 29, 2024, the Magistrate Judge issued a Scheduling Order requiring all fact discovery to be completed, and all discovery motions to be filed, by August 2, 2024. *See* Doc. No. 326).

2. On the final day of fact discovery, Plaintiffs served a Request for Entry onto Defendants' Premises for Inspection (hereinafter the "Inspection Request") pursuant to Fed. R. Civ. P. 34(a)(2).

3. In order to comply with Local Civil Rule 37, a copy of Plaintiffs' Inspection Request is attached hereto as Exhibit A. Defendants adopt and incorporate Plaintiffs' Inspection Request as if fully set forth herein. Fed. R. Civ. P. 10(c).

4. In further compliance with Local Civil Rule 37, a copy of Defendants' Objections to the Inspection Request are attached hereto as Exhibit B. Defendants adopt and incorporate Defendants' Objections as if fully set forth herein. Fed. R. Civ. P. 10(c).

5. Counsel for Defendants have conferred in good faith with Counsel for Plaintiffs and have been unable to resolve this issue.

6. The Court should grant this Motion for several reasons:

    a. First, the Inspection Request constitutes fact discovery which must be served thirty (30) days prior to the discovery deadline to give Defendants sufficient notice and time to respond before the expiration of discovery. The Request was received on the final day of fact discovery; thus, it is untimely and requires no response.

b.  Second, the Inspection Request seeks inspection and discovery of a facility that is wholly unrelated to the claims asserted in this matter, rendering the request irrelevant and unnecessary.

c.  Third, the Inspection Request is couched as a discovery request to Defendants but, in truth, the Request requires inspection of a facility owned and operated by an entity that is not a party to this litigation.

d.  Fourth, the Inspection Request (as served) goes beyond the permissible bounds of Rule 34, seeking interviews with youth and staff, some being Defendants' employees, some non-party employees.[2]

e.  Fifth, allowing this Inspection Request would cause significant expense and costs to Defendants, plus an interruption of the operations and services of the Jackson Parish facility. The Request—which is untimely under the scheduling order, irrelevant to the lawsuit, improperly targeting a non-party facility, and overly intrusive beyond the parameters of Rule 34—is an annoyance and presents an undue burden for Defendants comply with it.

WHEREFORE, for the reasons stated herein and based upon the authority cited in the attached memorandum in support, Defendants ask this Court to grant its Motion and issue a protective order precluding Plaintiffs' Inspection Request or otherwise protecting Defendants from this discovery.

Respectfully submitted:

BY:   */s/ Anna Morris*
      Connell Archey (#20086)
      Randal J. Robert (#21840)

---

[2] Plaintiffs have committed in the good faith process that they will withdraw this portion of the request.

3

        Allena McCain (#38830)
        Madaline King Rabalais (#38301)
        BUTLER SNOW LLP
        445 North Boulevard, Suite 300 (70802)
        P.O. Box 2997
        Baton Rouge, LA  70821-2997
        Telephone:     (225) 325-8700
        Facsimile:     (225) 325-8800
        Connell.Archey@butlersnow.com
        Randy.Robert@butlersnow.com
        Allena.McCain@butlersnow.com
        Madaline.Rabalais@butlersnow.com

        Kyle V. Miller (pro hac vice)
        Lemuel E. Montgomery III (pro hac vice)
        Anna Morris (pro hac vice)
        Carly Chinn (pro hac vice)
        BUTLER SNOW LLP
        1020 Highland Colony Parkway, Suite 1400
        Ridgeland, MS 39157
        Telephone:     (601) 948-5711
        Facsimile:     (601) 985-4500
        Kyle.Miller@butlersnow.com
        Lem.Montgomery@butlersnow.com
        Anna.Morris@butlersnow.com
        Carly.Chinn@butlersnow.com

        Counsel for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has this day been filed electronically with the Clerk of Court using the CM/ECF system, which will deliver notice of this filing to all counsel of record.

This 9th day of August, 2024.

        */s/ Anna Morris*
        Anna Morris

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,<br><br>    Defendants. | Civ. A. No. 3:22-CV-00573-SDD-RLB<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** |

NOW INTO COURT, through undersigned counsel, come Defendants Jeff Landry, in his official capacity as Governor of Louisiana; Kenneth "Kenny" Loftin, in his official capacity as Deputy Secretary of the Office of Juvenile Justice ("OJJ"); and James M. LeBlanc, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections ("DOC") (collectively "Defendants"),[3] who submit this memorandum in support of their Motion For Protective Order as it relates to the Plaintiffs' Request for Entry Onto Defendants' Premises for

---

[3] Since the filing of this lawsuit, the State of Louisiana elected a new governor, Jeff Landry. Because former Gov. Edwards was initially sued in his official capacity, Gov. Landry is automatically substituted as a defendant. Fed. R. Civ. P. 25(d).

Relatedly, on November 18, 2022, then-Gov. Edwards announced the resignation of initially-named Defendant Deputy Secretary Sommers and the appointment of Otha "Curtis" Nelson, Jr. as his replacement. https://gov.louisiana.gov/index.cfm/newsroom/detail/3892. Because Mr. Sommers was initially sued in his official capacity, Mr. Nelson was then automatically substituted as a Defendant. Subsequently, on February 2, 2024, Gov. Landry announced that Kenneth "Kenny" Loftin had been appointed as the Deputy Secretary of OJJ. https://gov.louisiana.gov/index.cfm/newsroom/detail/4402. Therefore, Mr. Loftin is now automatically substituted as a Defendant. Fed. R. Civ. P. 25(d).

5

Inspection (the "Inspection Request"). *See* Pls.' Inspection Request, attached hereto as Exhibit A. In compliance with Local Rule 37, Defendants also attach their objections to the Inspection Request as Exhibit B.

## **INTRODUCTION**

This lawsuit concerns only the operations and conditions of Bridge City Center for Youth at West Feliciana ("BCCY-WF"), a now-closed youth facility that was formerly located on the grounds of Louisiana State Penitentiary ("LSP") at Angola. *See* Section II, *infra*.

After BCCY-WF closed in September 2023, OJJ transferred several youth who were previously housed at BCCY-WF to the recently opened juvenile unit at the Jackson Parish Jail. *See generally* Status Report (Doc. 344). OJJ also transferred some youth from other OJJ secure care facilities to the juvenile unit at Jackson Parish for temporary placement, pending completion of renovations and construction of dormitories at the Swanson Center for Youth at Monroe ("SCY-Monroe"). *Id.* SCY-Monroe renovations and construction are now complete, and that facility is now housing youth. *Id.* OJJ has removed from Jackson Parish all youth previously placed there as described above. *Id.*[4]

### *The Jackson Parish Inspection Request*

On the final day of fact discovery in this action, August 2, 2024, at 1:38 p.m., Plaintiffs served a Rule 34 Inspection Request, with stated purposes of conducting an "expert's tour" of Jackson Parish. *See* August 2, 2024, Email Communication from David Utter, attached hereto as Exhibit C. Plaintiffs' counsel unilaterally scheduled the requested inspection for August 16, 2024.

Defendants here move this Court for a protective order against the Inspection Request.

---

[4] There are, however, two categories of individuals who have active juvenile adjudications and are currently housed in the Jackson Parish facility: (1) newly adjudicated juveniles who are pending placement at an OJJ secure care facility; and (2) adult pre-trial detainees who are awaiting criminal trial but also have an active juvenile adjudication. Neither of these categories of individuals are germane to this lawsuit. *Id.*

6

## SUMMARY OF THE ARGUMENT

The Court should grant this Motion for several reasons:

First, the Inspection Request constitutes fact discovery which must be served thirty (30) days prior to the discovery deadline to give Defendants sufficient notice and time to respond before the expiration of discovery. The Request was received on the final day of fact discovery; thus, it is untimely and requires no response.

Second, the Inspection Request seeks inspection and discovery of a facility that is wholly unrelated to the claims asserted in this matter, rendering the request irrelevant and unnecessary.

Third, the Inspection Request is couched as a discovery request to Defendants but, in truth, the Request requires inspection of a facility owned and operated by an entity that is not a party to this litigation.

Fourth, the Inspection Request (as served) goes beyond the permissible bounds of Rule 34, seeking interviews with youth and staff, some being Defendants' employees, some non-party employees.[5]

Fifth, allowing this Inspection Request would cause significant expense and costs to Defendants, plus an interruption of the operations and services of the Jackson Parish facility. The Request—which is untimely under the scheduling order, irrelevant to the lawsuit, improperly targeting a non-party facility, and overly intrusive beyond the parameters of Rule 34—is an annoyance and presents an undue burden for Defendants comply with it.

For these reasons, Defendants ask this Court to grant its Motion and issue a protective order precluding Plaintiffs' Inspection Request or otherwise protecting Defendants from this discovery.

---

[5] Plaintiffs have committed in the good faith process that they will withdraw this portion of the request.

1.      **PROCEDURAL POSTURE**

The Magistrate Judge issued a Scheduling Order on February 29, 2024 (Doc. 326). That Scheduling Order required all fact discovery to be complete and all discovery motions to be filed by August 2, 2024.

Twelve days before the fact discovery deadline, Plaintiffs filed a Motion to Extend the Scheduling Order Deadlines Related to Pending Discovery Disputes, seeking (among other extensions) a nearly three-month extension of the fact discovery deadline through October 25, 2024. (Doc. No. 342). Defendants oppose that motion (Doc. 342); it remains pending.

Thus, as it currently stands, the fact discovery deadline expired on August 2, 2024, and the expert discovery deadline is October 25, 2024 (Doc. 326).

**LAW AND ARGUMENT**

*Standard for Rule 26(c) Protective Order*

Pursuant to Federal Rule of Civil Procedure 26(c), upon a showing of good cause, the Court may issue an order protecting a party from the duty to respond to a discovery request in order to prevent "annoyance, embarrassment, oppression, or undue burden or expense" to the responding party. Fed. R. Civ. P. 26(c)(1). To demonstrate good cause, the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of facts as distinguished from stereotyped and conclusory statements." *Lafleur v. Leglue*, Civil Action No. 16-254-BAJ-RLB, 2017 WL 2960541, at *11 (M.D. La. July 11, 2017) (citing *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). If the movant shows good cause,

the court may preclude the discovery, limit its scope to certain areas of inquiry, or otherwise tailor the request to protect the movant. *Id*.

**a.      The Inspection Request is untimely fact discovery.**

Pursuant to the Scheduling Order entered by this Court, fact discovery closed in this matter on August 2, 2024. *See* Doc. No. 326. Plaintiffs served the Inspection Request on August 2, 2024, the last day of permitted discovery, seeking that inspection fourteen (14) days later. *See* Ex. A.

*i.      The Inspection Request is <u>fact</u> discovery, not <u>expert</u> discovery.*

Defendants anticipate that Plaintiffs may argue the Inspection Request is "expert discovery" because an expert is to be present at the site inspection, and thus is subject to the expert discovery deadline of October 25, 2024. Courts uniformly disagree. *See Ruiz-Bueno v. Scott*, 2014 WL 576400, at *3-4 (S.D. Ohio Feb. 12, 2014) ("[M]uch of the information produced during 'fact discovery' is used as a foundation for expert opinions. It would make little sense to have separate cutoff dates for fact and expert discovery if discovery of any information which might form the basis for expert opinions could be deferred to the 'expert discovery' phase; that phase, which is usually much shorter than the fact discovery phase, would then turn out to be more extensive, and it would be very difficult to determine when discovery was really concluded. […] This Court knows exactly what it intended by setting separate dates for the completion of fact and expert discovery. The latter type of discovery is devoted to the exchange of expert reports and information about those reports, including the required Rule 26(a)(2) disclosures and depositions of the experts."); *Finjan, LLC v. Qualys Inc.*, 2020 WL 6581836, at *1-4 (N.D. Cal. 2020) (denying patentee's motion seeking to compel accused infringer to continue to make source code available after close of fact discovery so that expert could review; rejecting patentee's argument that such was "expert discovery"; explaining that patentee "assumes that a party's ability to request documents to use for expert reports or trial means that it may continue to request documents

9

through the close of expert discovery or potentially through trial [but that assumption is] wrong. As explained above, **inspection and evidence gathering are fact discovery**. Expert discovery means the expert disclosures and depositions provided for in Rule 26.") (emphasis added).[6]

Plaintiff's Inspection Request is <u>fact</u> discovery and subject to the already-passed August 2, 2024, fact discovery deadline.

### ii. The Inspection Request is untimely.

Rule 34 allows thirty (30) days to respond to a request to enter onto land or property possessed or controlled[7] by the responding party for inspection. *See* Fed. R. Civ. P. 34(a)(2). Thus, to be timely, Plaintiffs' Inspection Request had to be served "at least thirty days prior to the completion of discovery." *Hamilton v. Coastal Bridge Co., LLC*, Civil Action No. 13-756-JJb-RLB, 2014 WL 7013948 at *1 (M.D. La. Dec. 12, 2014); *Thomas v. Pacificorp*, 324 F.3d 1176, 1179 (10th Cir. 2003) (holding requests must be served at least thirty days prior to the completion of discovery to be considered timely); *Smith v. Principal Cas. Ins. Co.*, 131 F.R.D. 104, 105 (S.D. Miss. 1990) (finding that "in order to meet discovery deadline, Plaintiff should have filed his interrogatories at least 30 days before the discovery cutoff"); *Thomas v. IEM, Inc.*, No. 06-886, 2008 WL 695230, at *2 (M.D. La. March 12, 2008) (document requests were untimely as the response deadline "would have fallen outside the discovery deadline").

---

[6] *See also Henry v. Quicken Loans Inc.*, 2008 WL 4735228, at *6 (E.D. Mich. Oct. 15, 2008) ("[B]ased on the design of the Federal Rules of Civil Procedure, there is an apparent presumption that data for an expert report should be gathered during fact discovery and that the extended deadline for the expert report is provided to give the expert time to thoroughly analyze the collected data."); *Sparton Corp. v. U.S.*, 77 Fed. Cl. 10, 14 (Ct. Fed. Claims 2007) ("[E]xpert opinions are to be distinguished from the facts upon which they rely … The fact discovery addressed by [Rule 34] differs from the expert discovery covered by [Rule 26], which provides that expert discovery will be carried out through mandatory disclosure of the reports of experts expected to testify at trial, and through interrogatories or depositions…"); *ParkerVision, Inc., v. Qualcomm Inc.*, 2013 WL 3771226, at *4 (M.D. Fla. July 17, 2013) ("[T]he expert discovery period in the Amended CMSO does not provide an extended period of document discovery related to the disclosed experts; rather, it allows for an extended period of time to exchange expert reports pertaining to the current litigation and to complete expert depositions.").

[7] Note, Defendants expressly deny that they "possess[] or control[]" the Jackson Parish facility, as addressed herein.

Plaintiffs' Inspection Request, served on the last day of fact discovery, is too late. Defendants have no duty to respond. *See Hamilton*, 2014 WL 7013948 at *2 (party has "no obligation to comply with a discovery request that conflict[s] with the court's deadline"). Plaintiffs' Inspection Request seeks to obtain fact discovery after discovery closes. Defendants should not be burdened by Plaintiffs' lack of diligence.

**b.    The Inspection Request seeks to inspect a facility that is irrelevant to this lawsuit.**

*i.    This lawsuit is about BCCY-WF.*

In July 2022, then-Governor Edwards announced plans to open a temporary secure care facility for the housing of youth in OJJ custody while OJJ completed construction of a new facility. That temporary secure care facility and transitional treatment unit ("TTU") was to be located on the grounds of LSP at Angola and came to be known as BCCY-WF.

Plaintiffs filed this lawsuit in August 2022 to prevent OJJ from opening **BCCY-WF**. (Doc. 1). Plaintiffs specifically request a declaratory judgment that Defendants are violating Plaintiffs' constitutional rights by transferring them to "**the OJJ site at Angola**" where they will not receive rehabilitative services; and an injunction requiring Defendants to cease plans to transfer Plaintiffs to "**the OJJ site at Angola**" and to immediately transfer any youth housed there back to one of OJJ's other secure care facilities. (Doc. 96 at 39). Plaintiffs' request for relief is **limited to BCCY-WF**; they make no reference to any other "adult prison." (Doc. 96 at 39). Following an evidentiary hearing, the Court denied Plaintiffs' First Motion for Preliminary Injunction. (Doc. 79). BCCY-WF opened in October 2022.

In July 2023, Plaintiffs filed a Second Motion for Preliminary Injunction concerning **conditions of confinement at BCCY-WF**. (Doc. 163). In August 2023, the Court issued a Ruling certifying a class. (Doc. 243). Following an evidentiary hearing, the Court granted Plaintiffs' Second Motion, enjoining OJJ from housing youth **at BCCY-WF** and ordering OJJ to remove all

11

youth **from BCCY-WF**. (Doc. 267 at 20). Defendants appealed (Doc. 259), and on September 13, 2023, the Fifth Circuit entered an order staying the Court's Preliminary Injunction. (Doc. 268).

Despite the stay, on September 15, 2023, OJJ elected to transfer all youth from BCCY-WF to the juvenile unit of newly-opened Jackson Parish. (Doc. 278 at 3).[8] As stated previously, OJJ's placement of youth at Jackson Parish was temporary, pending completion of renovations and construction of SCY-Monroe dormitories. *See* Status Report (Doc. 344). Today, that construction work is complete; that facility is housing youth. *Id.* OJJ has removed from Jackson Parish all youth that OJJ previously placed there, as described above. *Id.*

> ii. ***The Court has repeatedly rejected Plaintiffs' attempts at discovery targeting conditions at Jackson Parish.***

The District Court has been clear that conditions at Jackson Parish are not relevant to this case: "that's a different lawsuit than what we have here." Hrg. Tr. (Oct. 16, 2023) (Doc. 299-3) at 7; *see id.* at 21 ("the court is not considering the conditions of confinement [at the Jackson Parish juvenile facility] because the conditions of confinement are not the issue in this case."); *see id.* at 25 (conditions of confinement at the Jackson Parish juvenile facility are "not before the Court.").

> [Plaintiffs' Counsel]: It's relevant to this access issue because young people at the Jackson Parish Jail are being subjected to the identical conditions that you found unconstitutional at Angola: solitary confinement, use of mace, no education, seeing adult inmates on a regular basis.
>
> The Court: Separate lawsuit.

*Id.* at 9.

Likewise, the Magistrate Judge has expressly excluded from discovery any issues related to conditions of confinement at the Jackson Parish juvenile facility:

---

[8] On October 5, 2023, the Fifth Circuit dissolved the stay. (Doc. 291 at 2). Nevertheless, no youth have ever been transferred back to BCCY-WF. On February 23, 2024, Defendants filed a Rule 12(b)(1) Motion to Dismiss this lawsuit as moot, since the suit concerns a now-closed BCCY-WF. (Doc. 322). Defendants represented in that filing that OJJ has no plans to reopen BCCY-WF for housing youth in OJJ custody. Indeed, today, BCCY-WF stands empty.

> The Court will limit, however, any discovery regarding the Jackson Facility until (and unless) the district judge determines whether it is an "adult prison" for the purposes of the class definition. After the issuance of a scheduling order, the parties may conduct limited discovery with respect to whether the Jackson Facility is an "adult prison" and whether it is operating as a TTU. While Plaintiffs' counsel may have access to all juveniles housed at the Jackson Facility for the purposes of litigating the instant class action, **the Court will not allow any discovery on the conditions of confinement at the Jackson Facility at this time.**

Doc. 314 at 12 (emphasis added); *see also id.* at 12 n.5 ("The district judge has already suggested that the conditions of confinement at the Jackson Facility would be the subject of a 'separate lawsuit.'").

Despite the Court's repeated holdings, Plaintiffs continue to seek discovery as to Jackson Parish—most recently, through the Inspection Request. Because the conditions at Jackson Parish have no relevance to this case, which is *solely* about BCCY-WF, Plaintiffs' request to inspect the Jackson Parish facility cannot produce relevant information for this lawsuit. Plaintiffs' endeavors to once again shoehorn Jackson Parish into the present litigation should be rejected.

**c.    The Inspection Request is improperly directed to a non-party.**

The Inspection Request seeks entry upon and inspection of property of a non-party, Jackson Parish. Rule 34 plainly states that a request for entry and inspection can be made for property that is "*possessed or controlled* by the responding party." Fed. R. Civ. P. 34(a)(2) (emphasis added). The Jackson Parish Jail is possessed and controlled by Jackson Parish, not by Defendants. Defendants' arguable legal right to enter onto the Jackson Parish premises does not amount to "possession or control" as contemplated by Rule 34. *Santa Fe Intern. Corp. v. Potashnick*, 83 F.R.D. 299, 301 (E.D. La. 1979) (although defendant undoubtedly had legal right to enter premises of subcontractor for purposes of inspecting contract compliance, this cannot be equated with

13

control as required by Rule 34 to require defendants to permit plaintiffs onto subcontractor's premises).

**d.    The Inspection Request is overbroad and stretches beyond the scope of Rule 34.**

Plaintiffs' Inspection Request (as served) seeks more than a mere view of the physical premises at Jackson Parish. The Inspection Request seeks the opportunity to confer with and interview the youth and other non-youth individuals housed at Jackson Parish, along with Jackson Parish and OJJ staff.[9] As part of the good faith process, Plaintiffs have committed and agreed that they will not seek more than a physical inspection of the premises. However, in the event the Inspection Request may be interpreted otherwise, the Court should protect Defendants from such an overreach.

**e.    The Court should enter a protective order under the standards set forth in Rule 26.**

Allowing this Inspection Request would cause significant expense and costs to Defendants in the form of legal fees and employee time, plus an interruption of the operations and services of the Jackson Parish facility. The Request (which is untimely under the scheduling order, irrelevant to the lawsuit, improperly targets a non-party facility, and overly intrusive beyond the parameters of Rule 34) is an annoyance and presents an undue burden for Defendants comply with it. This is precisely what Rule 26 was designed to preclude.

---

[9] Specifically, Plaintiffs broadly define the term "inspect" to include:

conferring with and interviewing (1) youth in OJJ custody who are incarcerated at the Jail and (2) Jail and OJJ management personnel, Jail and OJJ security staff, Jail and OJJ or contracted health and mental health care staff including youth counselors, teachers and other education personnel, special education related services providers, Jail staff working inside the building or on the grounds of the Jail for other purposes, and any persons working in the Jail infirmary or other medical facilities where youth in OJJ custody may be brought for medical emergencies by the Jail.

Ex. A at 3-4.

## **CONCLUSION**

For all of these reasons, Defendants request that the Court grant its Motion for Protective Order and all further relief.

>Respectfully submitted:
>
>BY:  /s/ *Anna Morris* _____
>Connell Archey (#20086)
>Randal J. Robert (#21840)
>Allena McCain (#38830)
>Madaline King Rabalais (#38301)
>BUTLER SNOW LLP
>445 North Boulevard, Suite 300 (70802)
>P.O. Box 2997
>Baton Rouge, LA  70821-2997
>Telephone:    (225) 325-8700
>Facsimile:    (225) 325-8800
>Connell.Archey@butlersnow.com
>Randy.Robert@butlersnow.com
>Allena.McCain@butlersnow.com
>Madaline.Rabalais@butlersnow.com
>
>Kyle V. Miller (pro hac vice)
>Lemuel E. Montgomery III (pro hac vice)
>Anna Morris (pro hac vice)
>Carly Chinn (pro hac vice)
>BUTLER SNOW LLP
>1020 Highland Colony Parkway, Suite 1400
>Ridgeland, MS 39157
>Telephone:    (601) 948-5711
>Facsimile:    (601) 985-4500
>Kyle.Miller@butlersnow.com
>Lem.Montgomery@butlersnow.com
>Anna.Morris@butlersnow.com
>Carly.Chinn@butlersnow.com
>
>Counsel for Defendants

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing has this day been filed electronically with the Clerk of Court using the CM/ECF system, which will deliver notice of this filing to all counsel of record.

      This 9th day of August, 2024.

                                             */s/ Anna Morris*
                                             Anna Morris