# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections, <br><br> Defendants. | Civ. A. No. 3:22-CV-00573-SDD-RLB <br><br> **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO EXTEND SCHEDULING ORDER DEADLINES RELATED TO PENDING DISCOVERY DISPUTES (DOC. 342)** |

NOW INTO COURT, through undersigned counsel, come Defendants Jeff Landry, in his official capacity as Governor of Louisiana; Kenneth "Kenny" Loftin, in his official capacity as Deputy Secretary of the Office of Juvenile Justice ("OJJ"); and James M. LeBlanc, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections ("DOC") (collectively "Defendants"),[1] who respond to Plaintiffs' Motion to Extend Scheduling Order Deadlines Related to Pending Discovery Disputes (the "Motion") (Doc. 342).

---

[1] Since the filing of this lawsuit, the State of Louisiana elected a new governor, Jeff Landry. Because former Gov. Edwards was initially sued in his official capacity, Gov. Landry is automatically substituted as a defendant. Fed. R. Civ. P. 25(d).

Relatedly, on November 18, 2022, then-Gov. Edwards announced the resignation of initially-named Defendant Deputy Secretary Sommers and the appointment of Otha "Curtis" Nelson, Jr. as his replacement. https://gov.louisiana.gov/index.cfm/newsroom/detail/3892. Because Mr. Sommers was initially sued in his official capacity, Mr. Nelson was then automatically substituted as a Defendant. Subsequently, on February 2, 2024, Gov. Landry announced that Kenneth "Kenny" Loftin had been appointed as the Deputy Secretary of OJJ. https://gov.louisiana.gov/index.cfm/newsroom/detail/4402. Therefore, Mr. Loftin is now automatically substituted as a Defendant. Fed. R. Civ. P. 25(d).

The Bridge City Center for Youth at West Feliciana ("BCCY-WF") is closed and has been closed for almost one year. Plaintiffs have been prosecuting a case about an empty building for eleven months yet request additional time for discovery. The only category of documents that Plaintiffs claim they have not received are documents related to an entirely different facility that is not at issue in this lawsuit, and no extension of the Scheduling Order deadlines is warranted to obtain discovery on an irrelevant facility. Plaintiffs do not identify any other documents or even categories of documents that they have not yet received. No further discovery is necessary in this matter, and any extension of the deadlines in the Scheduling Order will only prolong this moot lawsuit. As more fully discussed below, Plaintiffs' Motion should be denied.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs initially filed this lawsuit in August 2022 attempting to prevent OJJ from opening and operating the temporary secure care facility and Transitional Treatment Unit ("TTU") on the Louisiana State Penitentiary campus. (Doc. 1). Plaintiffs specifically request a declaratory judgment that Defendants are violating Plaintiffs' constitutional rights by transferring them to "the OJJ site at Angola" where Plaintiffs allege the youth will not receive rehabilitative services and request an injunction requiring Defendants to cease plans to transfer Plaintiffs to "the OJJ site at Angola" and to immediately transfer any youth housed there back to one of OJJ's secure care facilities. (Doc. 96 at 39). The Court denied Plaintiffs' First Motion for Preliminary Injunction. (Doc. 79). BCCY-WF opened in October 2022.

In July 2023, Plaintiffs filed a Second Motion for Preliminary Injunction. (Doc. 163). The Court granted Plaintiffs' Second Motion, enjoining OJJ from housing youth at BCCY-WF and ordering OJJ to remove all youth from BCCY-WF. (Doc. 267 at 20). Defendants appealed those orders (Doc. 259), and on September 13, 2023, the Fifth Circuit entered an order staying the

Court's Preliminary Injunction. (Doc. 268). Despite the stay and being under no legal obligation to do so, on September 15, 2023, OJJ elected to transfer all youth from BCCY-WF to the juvenile unit of the newly-opened facility operated by Jackson Parish. (Doc. 278 at 3). On October 5, 2023, the Fifth Circuit dissolved the stay. (Doc. 291 at 2). On December 13, 2023, the preliminary injunction expired. Nevertheless, no youth were transferred back to BCCY-WF.

In a Rule 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction due to mootness filed on February 23, 2024, OJJ represented that it currently has no plans to reopen BCCY-WF for housing youth in OJJ custody. (Doc. 322). In a Status Report filed on August 8, 2024, OJJ represented that construction and renovation work at the Swanson Center for Youth at Monroe ("SCY-Monroe") is completed. (Doc. 344 at 2). Additionally, OJJ represented that there are no juveniles being housed at the Jackson Parish facility who were in OJJ's custody and then transferred by OJJ to the Jackson Parish facility for housing. *Id.*

On February 29, 2024, this Court issued a Scheduling Order which contained discovery deadlines. (Doc. 326). On March 26, 2024, Plaintiffs propounded their Third Request for Production Propounded to the Defendants. On April 25, 2024, Defendants transmitted their Objections and Responses to Plaintiffs' Third Set of Requests for Production of Documents (Doc. 337-2). Defendants provided Plaintiffs with document productions on May 3, May 17, July 12, July 17, and July 31, 2024. Defendants have also worked with Plaintiffs to facilitate a production of electronically stored information.

Pursuant to the Scheduling Order, fact discovery closed on August 2, 2024. (Doc. 326 at 1). Plaintiffs filed this Motion on July 30, 2024, seeking to extend fact discovery by three months and to extend all deadlines for disclosure of experts, expert reports, expert discovery, Daubert motions, and dispositive motions by the same amount of time. (Doc. 342 at 2). The only stated

3

reason Plaintiffs provide for such significant changes to the Scheduling Order is the unsupported contention that Defendants "refused" to produce documents. *Id.* The only documents Plaintiffs claim they have not received are those related to an entirely different facility that is not at issue in this lawsuit—the Jackson Parish facility. Plaintiffs do not identify any other documents or even categories of documents that they have not yet received. Plaintiffs have not filed motions to compel any documents other than those related to the Jackson Parish facility. For the reasons stated in opposition to that motion to compel and as discussed below, the only relevant issue involving the Jackson Parish facility related to class members' access to counsel; that issue is now moot; and the conditions of confinement at the Jackson Parish facility have always been irrelevant to this suit about BCCY-WF. This Motion should be denied.

## LAW AND ARGUMENT

**I.    No extension to the discovery deadline is warranted because the only additional discovery Plaintiffs seek is irrelevant to the case.**

Plaintiffs request an extension of the deadlines in the Scheduling Order on the grounds that "Defendants have refused to produce entire categories of documents, including documents related to whether the Jackson Parish Jail is an adult facility, resulting in Plaintiffs' pending motion to compel discovery." (Doc. 342 at 2). Discovery about whether Jackson Parish is an adult facility is the only subject that Plaintiffs contend requires additional time. But the issue of whether Jackson Parish is an adult facility is moot. No further discovery on this topic is warranted, and, more importantly, discovery on this topic is not relevant to the underlying merits of the case.

The only relevance that the Jackson Parish facility had in this suit was for the purpose of determining the scope of the class and, thus, the scope of the youth with whom Plaintiffs' counsel could meet. OJJ has permitted Plaintiffs' counsel virtually unfettered access to the youth (and adult

4

pre-trial detainees who are awaiting criminal trial but also have active juvenile adjudications) housed at the facility.

In certifying the class, the Court adopted Plaintiffs' proposed class definition: "[A]ll youth who are now or will be in the custody of OJJ who have been, might be, or will be transferred to the OJJ site (the 'Transitional Treatment Unit' or 'TTU') at Angola or another adult prison . . . ." (Doc. 243 at 8, 21). A dispute arose as to the scope of the class and the youth to which Plaintiffs' counsel would be entitled to access. Plaintiffs argued that the class, as certified by the Court, included all youth in OJJ's custody regardless of the facility in which they were located; Plaintiffs specifically sought to include all youth who were being housed at the Jackson Parish juvenile facility, arguing that Jackson Parish was an "adult prison." Defendants argued that the class definition was limited to those youth who had been housed at BCCY-WF because OJJ was not operating a TTU at any location, let alone at an adult prison, and that the Jackson Parish juvenile facility was not an "adult prison" but rather a collocated facility.

The District Court held that the question of whether a youth was subject to transfer to an adult facility was a question relevant to the issue of Plaintiffs' counsel's access to class members. (Doc. 299-3 (Oct. 16, 2023), at 6). As the Court recognized, "The only relevance that Jackson Parish has to do with this class action is if there are class members there who are in an adult facility . . . ." *Id.* at 8 (emphasis added). The issue of access to those youth was resolved by the Magistrate Judge's subsequent orders, and Plaintiffs' counsel have been granted access to the individuals with active juvenile adjudications who were housed at the Jackson Parish facility. The question of whether the Jackson Parish facility is an adult facility is moot. Additional discovery will not change this, as Plaintiffs' counsel already has (and routinely takes advantage of) access to the youth housed there.

Moreover, Plaintiffs have not established the "relevance and permissibility" of the documents they seek. (Doc. 342 at 2). In their motion to compel, Plaintiffs ask this Court to order Defendants to produce "documents regarding whether the Jackson Parish Jail ('Jail') is an 'adult prison' . . . ." (Doc. 337-1 at 1-2). Plaintiffs repeatedly state that they only seek those documents relevant to the inquiry of whether the Jackson Parish juvenile facility is an "adult prison," but the discovery requests and discussion in the motion to compel make clear that they really seek documents relevant to conditions of confinement at the Jackson Parish juvenile facility. As the District Court has already held, conditions of confinement at the Jackson Parish juvenile facility are not, and will never be, part of this lawsuit and, therefore, are irrelevant. (Doc. 299-3 (Oct. 16, 2023), at 7) (claims about conditions of confinement at facilities other than BCCY-WF would be "a different lawsuit than what we have here"); *id.* at 21 ("the Court is not considering the conditions of confinement [at the Jackson Parish juvenile facility] because the conditions of confinement are not the issue in this case."); *id*. at 25 (conditions of confinement at the Jackson Parish juvenile facility are "not before the Court."); *id.* at 9 ("[Plaintiffs' Counsel]: It's relevant to this access issue because young people at the Jackson Parish Jail are being subjected to the identical conditions that you found unconstitutional at Angola: solitary confinement, use of mace, no education, seeing adult inmates on a regular basis. The Court: Separate lawsuit."). This Court expressly held that it "will not allow any discovery on the conditions of confinement at the Jackson Facility at this time." (Doc. 314 at 12). Despite this clear directive, Plaintiffs seek documents regarding the exact conditions of confinement that are outside the scope of discovery in this matter, and now ask this Court to extend the discovery deadlines to allow additional time to seek these irrelevant conditions of confinement documents. Plaintiffs' desire to obtain irrelevant documents and information is no basis to extend the discovery deadlines in this case. Accordingly, the Motion should be denied.

## II. Plaintiffs do not identify any incomplete discovery that necessitates an extension of the Scheduling Order deadlines.

Plaintiffs premise their request for an extension of the deadlines in the Scheduling Order on the basis that "Defendants have refused to produce entire categories of documents . . . ." (Doc. 342 at 2). Other than documents regarding whether the Jackson Parish juvenile facility is an "adult prison," Plaintiffs do not point to any specific documents or even categories of documents that they have not yet received. They offer only superficial and wholly unsupported argument that Defendants refuse to produce these vague, unidentified documents.

To the contrary, Defendants have fully engaged in the discovery process. Defendants timely transmitted their Objections and Responses to Plaintiffs' Third Set of Requests for Production of Documents. Defendants provided Plaintiffs with document productions on May 3, May 17, July 12, July 17, and July 31, 2024. The productions included, among other items, files for those youth housed at BCCY-WF, TTU referral documentation, gate logs from BCCY-WF, surveillance video footage from BCCY-WF, and SCY-Monroe construction progress reports. Throughout this litigation, Defendants have produced more than 19,000 pages of documents. Additionally, Defendants have worked with Plaintiffs to negotiate search terms and custodians for electronically stored information and communicated with Plaintiffs regarding the production of video footage. Defendants understand that they have a duty to supplement their discovery responses and will continue to do so in a timely manner should additional information or documents become available. Fed. R. Civ. P. 26(e).

Despite arguing that Defendants refuse to cooperate, Plaintiffs have not filed motions to compel any documents other than those related to the Jackson Parish facility. Plaintiffs did not request to depose any OJJ personnel or any other fact witnesses. Plaintiffs' failure to identify any

7

allegedly incomplete discovery and failure to take action as to any perceived incomplete discovery demonstrate that an extension of the deadlines is not warranted in this matter.

### III. Additional discovery will not yield any new information about the conditions of confinement at BCCY-WF because no youth are confined there.

Plaintiffs contend that they "cannot possibly know what additional discovery motions might be needed" (Doc. 342 at 3), but the reality is that no further discovery is necessary in this matter. BCCY-WF is closed and has been closed for almost one year. Since that time, Plaintiffs have been prosecuting a case about an empty building. OJJ represented that it currently has no plans to reopen BCCY-WF for housing youth in OJJ custody. (Doc. 322). Construction and renovation work at SCY-Monroe is completed, and youth are being housed there instead. (Doc. 344 at 2). Plaintiffs will not discover anything new with respect to the conditions of confinement at BCCY-WF because no such conditions can exist while no youth are being housed at BCCY-WF. Plaintiffs can certainly proceed with expert reports, expert depositions, Daubert motions, and dispositive motions (Doc. 342 at 3), as the information and documents they will rely on have remained the same for nearly one year. More time for discovery will not change or bolster the facts.

### CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion to Extend Scheduling Order Deadlines Related to Pending Discovery Disputes (Doc. 342).

Dated: August 20, 2024.

                                        Respectfully submitted:

                              BY:   */s/ Madaline King Rabalais*
                                            Connell Archey (#20086)
                                            Randal J. Robert (#21840)
                                            Allena McCain (#38830)
                                            Madaline King Rabalais (#38301)

        BUTLER SNOW LLP
        445 North Boulevard, Suite 300 (70802)
        P.O. Box 2997
        Baton Rouge, LA  70821-2997
        Telephone:	(225) 325-8700
        Facsimile:	(225) 325-8800
        Connell.Archey@butlersnow.com
        Randy.Robert@butlersnow.com
        Allena.McCain@butlersnow.com
        Madaline.Rabalais@butlersnow.com

        Kyle V. Miller (pro hac vice)
        Lemuel E. Montgomery III (pro hac vice)
        Anna Morris (pro hac vice)
        Carly Chinn (pro hac vice)
        BUTLER SNOW LLP
        1020 Highland Colony Parkway, Suite 1400
        Ridgeland, MS 39157
        Telephone:	(601) 948-5711
        Facsimile:	(601) 985-4500
        Kyle.Miller@butlersnow.com
        Lem.Montgomery@butlersnow.com
        Anna.Morris@butlersnow.com
        Carly.Chinn@butlersnow.com

        Counsel for Defendants

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the above and foregoing has this day been filed electronically with the Clerk of Court using the CM/ECF system, which will deliver notice of this filing to all counsel of record.

    This 20th day of August, 2024.

        */s/ Madaline King Rabalais*

89028423.v1