IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEX A., by and through his guardian, Molly Smith; BRIAN B.; and CHARLES C., by and through his guardian, Kenione Rogers, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,[1] <br><br> Defendants. | Civ. A. No. 3:22-CV-00573-SDD-RLB <br><br><br> **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION TO COMPEL (DOC. 358)** |

Plaintiffs' Renewed Motion to Compel (Doc. 358) arises solely from Plaintiffs' efforts to expand the limited discovery allowed by the Court beyond the express confines stated. In the Court's recent Ruling, the District Judge stated that "the Court will allow <u>limited, narrowly tailored</u> discovery on these [three] specific issues[:]" (1) "whether OJJ youth are improperly being held in an adult facility"; (2) "whether OJJ youth held in the collocated juvenile facility are nevertheless being exposed to adult inmates"; and (3) whether OJJ youth are "lacking monitoring by OJJ

---

[1] Since the filing of this lawsuit, the State of Louisiana elected a new governor, Jeff Landry. Because former Gov. Edwards was initially sued in his official capacity, Gov. Landry is automatically substituted as a defendant. Fed. R. Civ. P. 25(d).

Relatedly, on November 18, 2022, then-Gov. Edwards announced the resignation of initially-named Defendant Deputy Secretary Sommers and the appointment of Otha "Curtis" Nelson, Jr. as his replacement. https://gov.louisiana.gov/index.cfm/newsroom/detail/3892. Because Mr. Sommers was initially sued in his official capacity, Mr. Nelson was then automatically substituted as a Defendant. Subsequently, on February 2, 2024, Gov. Landry announced that Kenneth "Kenny" Loftin had been appointed as the Deputy Secretary of OJJ. https://gov.louisiana.gov/index.cfm/newsroom/detail/4402. Therefore, Mr. Loftin is now automatically substituted as a Defendant. Fed. R. Civ. P. 25(d).

juvenile justice specialists." Ruling (Doc. 353) at 13 (emphasis added). In the face of this clear pronouncement for "limited, narrowly tailored discovery," Plaintiffs seek information about every aspect of confinement at the juvenile unit of the Jackson Parish Jail, including, but not limited to, education, medical services, mental health and therapy services, recreation, family visitation, and use of force. None of these topics fall within the three circumscribed topics allowed by the Court.

On the topics that the Court has indicated discovery will be allowed, Defendants have agreed to provide Plaintiffs with the documents in their possession, custody, or control that fall within those three limited subject areas. Uncontented by Defendants' agreement to abide by the Federal Rules of Civil Procedure, Plaintiffs seek an order from this Court compelling Defendants not only to produce those documents within Defendants' possession, custody, or control, but also documents that are outside of Defendants' possession, custody, or control—namely, the documents in the exclusive possession of Jackson Parish. Defendants have agreed to attempt to facilitate the voluntary production of these documents, but Defendants cannot produce that which they do not possess.

For all of these reasons and as discussed more fully below, the Court should deny Plaintiffs' Renewed Motion to Compel.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

**I.     Litigation History**

In July 2022, then-Governor Edwards announced plans to open a temporary secure care facility for the housing of youth in OJJ custody while OJJ completed construction of a new facility. That temporary secure care facility was to be located on the grounds of Louisiana State Penitentiary ("LSP") and came to be known as Bridge City Center for Youth at West Feliciana ("BCCY-WF").

2

Plaintiffs initially filed this lawsuit in August 2022 attempting to prevent OJJ from opening and operating the temporary secure care facility and Transitional Treatment Unit ("TTU") on the LSP campus. (Doc. 1). Plaintiffs specifically request a declaratory judgment that Defendants are violating Plaintiffs' constitutional rights by transferring them to "the OJJ site at Angola" where they will not receive rehabilitative services; and an injunction requiring Defendants to cease plans to transfer Plaintiffs to "the OJJ site at Angola" and to immediately transfer any youth housed there back to one of OJJ's secure care facilities. (Doc. 96 at 39). Plaintiffs' request for relief is limited to BCCY-WF, and they make no reference to any other "adult prison." (Doc. 96 at 39). Following an evidentiary hearing, the Court denied Plaintiffs' First Motion for Preliminary Injunction. (Doc. 79). BCCY-WF opened in October 2022.

In July 2023, Plaintiffs filed a Second Motion for Preliminary Injunction. (Doc. 163).

In August 2023, the Court issued a Ruling certifying a class. (Doc. 243). In certifying the class, the Court adopted Plaintiffs' proposed class definition: "[A]ll youth who are now or will be in the custody of OJJ who have been, might be, or will be transferred to the OJJ site (the 'Transitional Treatment Unit' or 'TTU') at Angola or another adult prison . . . ." (Doc. 243 at 8, 21).

The Court granted Plaintiffs' Second Motion, enjoining OJJ from housing youth at BCCY-WF and ordering OJJ to remove all youth from BCCY-WF. (Doc. 267 at 20). Defendants appealed those orders (Doc. 259), and on September 13, 2023, the Fifth Circuit entered an order staying the Court's Preliminary Injunction. (Doc. 268). Despite the stay and being under no legal obligation to do so, on September 15, 2023, OJJ elected to transfer all youth from BCCY-WF to the juvenile unit of the newly-opened facility operated by Jackson Parish. (Doc. 278 at 3). On October 5, 2023, the Fifth Circuit dissolved the stay. (Doc. 291 at 2). On December 13, 2023, the Preliminary

Injunction expired. *See* Mandate (Doc. 312) at 9; *see also* 18 U.S.C. § 3626(a)(2). Nevertheless, no youth were transferred back to BCCY-WF.

**II.     Prior Discovery Disputes**

A dispute arose as to the scope of the class and the youth to which Plaintiffs would be entitled to access. Plaintiffs argued that the class, as certified by the Court, included all youth in OJJ's custody regardless of the facility in which they were located; Plaintiffs specifically sought to include all youth who were being housed at the Jackson Parish juvenile facility, arguing that Jackson Parish was an "adult prison." Defendants argued that the class definition was limited to those youth who had been housed at BCCY-WF because OJJ was not operating a TTU at any location, let alone at an adult prison, and that the Jackson Parish juvenile facility was not an "adult prison" but rather a collocated facility.

The District Court held that the question of whether a youth was subject to transfer to an adult facility was a question relevant to the issue of access. (Doc. 299-3 (Oct. 16, 2023) at 6). But the District Court was clear on the issue of conditions at other facilities: "that's a different lawsuit than what we have here." *Id.* at 7; *see also id.* at 8 ("The only relevance that Jackson Parish has to do with this class action is if there are class members there who are in an adult facility . . . ."); *see id.* at 21 ("The Court is not considering the conditions of confinement [at the Jackson Parish juvenile facility] because the conditions of confinement are not the issue in this case."); *see id.* at 25 (conditions of confinement at the Jackson Parish juvenile facility are "not before the Court.").

> [Plaintiffs' Counsel]: It's relevant to this access issue because young people at the Jackson Parish Jail are being subjected to the identical conditions that you found unconstitutional at Angola: <u>solitary confinement, use of mace, no education</u>, seeing adult inmates on a regular basis.
>
> The Court: <u>Separate lawsuit</u>.

4

*Id.* at 9 (emphasis added). The District Court also expressly passed on the question of whether the Jackson Parish facility is an adult prison. *Id.* ("I don't have any evidence about what Jackson Parish Jail is or is not."). Finally, the District Court referred all additional disputes about the scope of the class to the Magistrate Judge. *Id.* at 42-43.

The Magistrate Judge expressly reserved to the District Court the question of whether the Jackson Parish facility is an "adult prison." (Doc. 314 at 12). More importantly for the instant Motion, the Magistrate Judge also clearly and expressly limited discovery about the Jackson Parish facility to issues of whether it is an "adult prison" and excluded from discovery issues related to conditions of confinement at the Jackson Parish juvenile facility:

> The Court will limit, however, any discovery regarding the Jackson Facility until (and unless) the district judge determines whether it is an "adult prison" for the purposes of the class definition. … [T]he parties may conduct limited discovery with respect to whether the Jackson Facility is an "adult prison" and whether it is operating as a TTU. While Plaintiffs' counsel may have access to all juveniles housed at the Jackson Facility for the purposes of litigating the instant class action, the Court will not allow any discovery on the conditions of confinement at the Jackson Facility at this time.

*Id.*; *see also id.* at 12 n.5 ("The district judge has already suggested that the conditions of confinement at the Jackson Facility would be the subject of a 'separate lawsuit.'").

On March 26, 2024, Plaintiffs transmitted their Third Request for Production Propounded to the Defendants. On April 25, 2024, Defendants provided their Objections and Responses to Plaintiffs' Third Set of Requests for Production of Documents (Doc. 337-2). Defendants specifically objected to discovery related to the Jackson Parish juvenile facility, except to the extent the discovery is aimed at addressing the issues of whether the Jackson Parish juvenile facility is an "adult prison" or whether the Jackson Parish juvenile facility is operating as a TTU. (Doc. 337-2 at 3). Additionally, Defendants objected to responding to discovery related to the adult unit at the Jackson Parish Jail or any other facility that is housing adult pre-trial detainees. *Id.* at 4.

5

Defendants provided Plaintiffs with document productions on May 3, May 17, July 12, July 17, July 31, August 19, September 4, September 9, and September 23, 2024. Defendants have also worked with Plaintiffs since that time to facilitate a production of electronically stored information.

On June 14, 2024, Plaintiffs filed their original Motion to Compel (Doc. 337). That motion was denied without prejudice to be reasserted.

### III. Motion to Dismiss and Ruling Regarding Same

On February 23, 2024, Defendants filed a Rule 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction due to mootness. (Doc. 322). OJJ represented that it currently has no plans to reopen BCCY-WF for housing youth in OJJ custody and that construction and renovation work at the Swanson Center for Youth at Monroe ("SCY-Monroe") is near completion.

OJJ also represented to the Court that, as of February 2023, there were some youth who OJJ was housing at the juvenile unit of the Jackson Parish Jail while OJJ finished the construction and renovations at SCY-Monroe. *See* (Doc. 322-1 at 4-5).

On August 7, 2024, the Court *sua sponte* asked OJJ for a status report regarding youth at the Jackson Parish Jail. At that time, OJJ reported to the Court that there were no youth on the juvenile unit at the Jackson Parish Jail who had been transferred there by OJJ. (Doc. 344 at 2). There were eight (8) youth who had recently been adjudicated as delinquent, had not yet been received at an OJJ secure care facility, and were on the juvenile unit at the Jackson Parish Jail pending placement in an OJJ secure care facility. *Id.* at 3. These youth were not placed at the Jackson Parish Jail by OJJ, but rather were placed there by Jackson Parish or the parish in which the youth was adjudicated as delinquent. *Id.*

OJJ further reported to the Court that there were fourteen (14) individuals who were being detained in the adult unit at the Jackson Parish Jail who (1) had an active juvenile adjudication, (2)

6

had reached the age adulthood (17 years old or 18 years old depending on the year), (3) after reaching the age of adulthood engaged in conduct that resulted in criminal charges, and (4) were remanded into parish custody. *Id.* at 3-4. These individuals are being housed as adult pretrial detainees and are not in OJJ's physical custody. *Id.* at 4.

On September 4, 2024, the Court entered a Ruling denying Defendants' Motion to Dismiss. In the Ruling, the District Judge stated:

> Should all OJJ youth be removed from Jackson Parish and housed in OJJ secure care facilities, this lawsuit will be moot. But under the circumstances, Plaintiffs have the right to seek discovery to determine whether OJJ youth are improperly being held in an adult facility and/or whether OJJ youth held in the collocated juvenile facility are nevertheless being exposed to adult inmates or lacking monitoring by OJJ juvenile justice specialists. Accordingly, the Court will allow <u>limited, narrowly tailored discovery on these specific issues.</u> <u>Any other issues of confinement are, as this Court advised the parties previously, a "separate lawsuit."</u>

Ruling (Doc. 353) at 13 (emphasis added).

## **LAW AND ARGUMENT**

**I.     Plaintiffs fail to identify which discovery requests the Renewed Motion addresses.**

At the outset, Plaintiffs' motion to compel does not comply with Local Rule 37 and should be denied for this reason alone. Plaintiffs fail to "quote verbatim each . . . request for production, . . . to which the motion is addressed, followed immediately by the verbatim response or objection which provided thereto." L.R. 37. Likewise, Plaintiffs fail to provide complete copies of their requests for production, fail to provide Defendants' objections to the requests for production, and do not even identify by number the specific requests for which they are seeking to compel production. *See generally* Renewed Motion (Doc. 358). Instead, Plaintiffs attempt to paraphrase or summarize their requests and Defendants' objections and responses and ask the Court to compel

7

production of "relevant documents" and order Defendants to "preserve documents." (Doc. 358-1 at 1-2).

Local Rule 37 is specifically intended to avoid the vagueness that Plaintiffs have injected into their Renewed Motion. Defendants should not be put to arguing against Plaintiffs' self-serving summaries and paraphrasing of written discovery requests and responses. Based solely on Plaintiffs' failure to comply with Local Rule 37, the Renewed Motion should be denied.

**II.    The scope of discovery is limited, and conditions of confinement at the Jackson Parish juvenile facility are not discoverable.**

On at least three occasions, the Court has clearly articulated the scope of discovery with regard to the juvenile unit of the Jackson Parish Jail:

- The District Judge held that conditions of confinement (including, specifically, use of force and education) at the Jackson Parish juvenile facility are not, and will never be, part of this lawsuit, *see* Transcript (Doc. 299-3) at 6-9, 21, 25.

- The Magistrate Judge held that discovery about the juvenile unit at the Jackson Parish Jail is limited to the questions of whether the unit is an "adult jail" and whether the unit serves as a TTU, *see* Order (Doc. 314) at 12; and

- The District Judge most recently held that discovery about the juvenile unit at the Jackson Parish Jail should be "narrowly tailored" and "limited" to only three "specific issues"—is it an adult jail; if it is a collocated facility, is there sight and sound separation between the juveniles and the adult detainees; and is the staff who interacts with the juveniles trained and certified to do so, *see* Ruling (Doc. 353) at 13.

Despite these crystal-clear pronouncements, Plaintiffs insist that they are entitled to discovery regarding education services, medical services, mental health/therapy services, recreation, family visitation, use of force, and a host of other topics.

8

Again, the District Judge has indicated that "narrowly tailored" discovery should be allowed on three "limited" "specific" topics: (1) "whether OJJ youth are improperly being held in an adult facility"; (2) "whether OJJ youth held in the collocated juvenile facility are nevertheless being exposed to adult inmates"; and (3) whether OJJ youth are "lacking monitoring by OJJ juvenile justice specialists." Ruling (Doc. 353) at 13. The Parties generally do not have a dispute regarding the scope of limited topics (2) and (3)—though there are other disputes on these topics as discussed below.

The scope dispute concerns limited topic (1)—whether OJJ youth are being housed in an adult facility. Plaintiffs argue that the question of whether the juvenile unit at the Jackson Parish Jail constitutes an "adult jail" opens discovery as to all issues related to programming, services, and use of force. Plaintiffs arrive at this position by arguing that within the definition of "adult jail" hides the question of whether the conditions of confinement are appropriate for juveniles. Plaintiffs argue that any lockup that fails to provide adequate juvenile services must be an adult jail. Unsurprisingly, Plaintiffs cite to no authority—statutory, case law, or otherwise—to support their proffered definition.

To argue their requests on conditions at the Jackson Parish juvenile facility seek relevant information, Plaintiffs rely on the Court's ruling granting the Second Motion for Preliminary Injunction, but that Ruling is based entirely on "the conditions of confinement of the youth incarcerated <u>at Angola</u>." (Doc. 267 at 2) (emphasis added). Contrary to Plaintiffs' argument in the Renewed Motion, the Court never held that BCCY-WF was an "adult prison" and certainly did not find that any conditions of confinement at BCCY-WF caused it to become an "adult prison." *See generally* Doc. 267. Likewise, the Court never held that a facility which is found to be punitive rather than rehabilitative in nature converts the facility into an "adult prison." *See generally id.* To

the extent the Court's Ruling even addressed the question of whether BBCY-WF was an "adult prison" —which, to be sure, the Ruling never expressly addressed—the Court's comments were limited to the physical structure of BCCY-WF. *See id.* at 14 (discussing whether housing youth in a "facility designed to house adult prisoners" creates a risk of psychological harm), 18 (discussing whether use of an "adult prison cell" creates a risk of psychological harm).

One—and only one—legally supportable definition of an "adult prison" has ever been introduced in this case, and Plaintiffs are the ones who introduced it. That definition is the one found in the Juvenile Justice Delinquency and Prevention Act ("JJDPA"), which simply states that "the term 'jail or lockup for adults' means a secure facility that is used by a State, unit of local government, or law enforcement authority to detain or confine adult inmates . . . ." 34 U.S.C. § 11103(22).

Accordingly, the only question that needs to be answered in relation to limited topic (1) is: Does the juvenile unit of the Jackson Parish Jail serve as a "secure facility . . . to detain or confine adult inmates?" Plaintiffs know that the answer to that question is a resounding no. Rather than accept this reality for what it is, Plaintiffs attempt to redefine "adult jail" to allow them access to information that this Court has repeatedly said is off limits in this case.

For this reason, to the extent Plaintiffs seek to compel the production of documents regarding conditions of confinement at the juvenile unit of the Jackson Parish Jail (including, but not limited to, educational services, medical services, mental health and therapy services, social services, family visitation, recreation, and use of force), Plaintiffs' Renewed Motion should be denied.

### III.    Plaintiffs' motion seeks to compel Defendants to produce documents that are not within their possession, custody, or control.

In responding to requests for production of documents pursuant to Federal Rule of Civil Procedure 34, the responding party's obligation is to produce the documents that are "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "[A] party cannot be required to permit inspection of documents or things that it does not have and does not control." *Savoy v. Davis*, No. CV 14-700-JJB-EWD, 2016 WL 589696, at *1 (M.D. La. Feb. 11, 2016) (quoting 8A C. Wright, A. Miller, R. Lucas, Federal Practice and Procedure § 2210 at 403-04 (West 1994)).

"[F]ederal courts have consistently held that documents are deemed to be within [a party's] 'possession, custody or control' for the purposes of Rule 34 if the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand." *Torrey v. Infectious Diseases Soc'y of Am.*, 334 F.R.D. 79, 85 (E.D. Tex. 2019) (quoting *Alex v. KHG of San Antonio, L.L.C.*, No. SA-13-CA-728-OLG, 2014 WL 12489735, at *5 n.50 (W.D. Tex. Aug. 6, 2014) (quoting *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (quoting *In Re Banker's Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995), *cert. dismissed*, 517 U.S. 1205 (1996))))). "The burden, however, is on the party seeking discovery to make a showing that the other party has control over the documents sought." *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 231 (N.D. Tex. 2016) (quoting *S. Filter Media, LLC v. Halter*, Civ. A. No. 13-116-JJB-RLB, 2014 WL 4278788, at *5 (M.D. La. Aug. 29, 2014)).

Plaintiffs argue that OJJ has "possession, custody, or control" over many of the documents that Plaintiffs seek but that are in the actual possession of the Jackson Parish Sheriff's Office ("JPSO"). (Doc. 358-1 at 16). In support of their burden, Plaintiffs point to only one piece of evidence—the Memorandum of Understanding ("MOU") between OJJ and the JPSO. *See id.* The

11

MOU provides only that the agreement "does not limit OJJ . . . the right to access an <u>OJJ youth's records</u> or other information <u>related to youth</u> housed under the agreement." *See id.* (quoting MOU) (emphasis added). This is the only provision in the MOU governing OJJ's right to access information, and Plaintiffs in furtherance of their burden point to no other evidence, argument, or authority.

As the agreement clearly states on its face, OJJ is entitled to have access to youth records and information about the OJJ youth housed there. OJJ has not asserted a "possession, custody, or control" objection to OJJ youth records. The MOU gives OJJ the contractual right to access those records. But that is not what Plaintiffs are asking for. Plaintiffs are seeking to compel documents that are not "OJJ youth records." Plaintiffs are attempting to compel the production of floor plans, videotapes, JPSO staff schedules, JPSO staff training documents, JPSO entry/exit logs, and JPSO programming documents. None of that constitutes "OJJ youth records."

Defendants have produced the relevant, responsive documents that are within their possession, custody, or control. The documents that Plaintiffs seek to compel regarding the juvenile unit at the Jackson Parish Jail are not within Defendants' possession, custody, or control. Plaintiffs have wholly failed in their burden to establish anything to the contrary. Accordingly, Plaintiffs' Renewed Motion to compel Defendants to produce documents not within their possession, custody, or control should be denied.[2]

---

[2] As alluded to in Plaintiffs' Renewed Motion, Defendants have agreed that they will ask the Jackson Parish Sheriff's Office if it will voluntarily produce the documents Plaintiffs seek which are in the JPSO's exclusive possession, custody, or control. If the JPSO voluntarily produces those documents to Defendants, Defendants would then produce the relevant, responsive documents they receive—as Defendants would then be in possession, custody, and control of same.

**IV.   There is no pending request for entry and inspection, and no relief can or should be granted to Plaintiffs on this topic.**

At the conclusion of their Renewed Motion, Plaintiffs argue that their expired request for entry and inspection of the Jackson Parish Jail should be enforced. As an initial matter, Plaintiffs have already conceded that their request for entry and inspection is both expired and moot. *See* Pls.' Opp. to Defs.' Mot. for Protective Order (Doc. 350) at 1 ("For purposes of the proposed expert tour of the Jail, which Plaintiffs sought to complete on August 16, 2024, Defendants' motion before the Court is moot."). If Plaintiffs continue to seek inspection, they should be required to issue a new request for same.

As previously discussed, however, Plaintiffs are seeking the right to enter and inspect the physical property of a non-party—namely the JPSO. Just as Defendants lack the ability to produce documents that are in JPSO's exclusive possession, custody, or control, Defendants likewise cannot grant Plaintiffs' counsel and their experts access to physical property that is not in Defendants' possession, custody, or control.

**V.   Discovery regarding conditions of confinement at the Jackson Parish adult facility is not relevant to this matter.**

It is unclear from Plaintiffs' Renewed Motion (likely due to their failure to comply with Local Rule 37) whether they continue to request production of documents regarding adults who are being held as pretrial detainees on the adult unit of the Jackson Parish Jail. Plaintiffs' Renewed Motion makes passing reference to the fact that there are a small number of adult pretrial detainees in the adult unit of the Jackson Parish Jail who also have active juvenile dispositions. *See* (Doc. 358-1 at 5). To the extent Plaintiffs are seeking documents about adult, pre-trial detainees, Defendants have objected to all such discovery requests.

Individuals who are not "youth" and are not "in the custody of OJJ" fall squarely outside the class definition of this lawsuit. Discovery about these adults, the adult facility in which these

13

adults are being housed, or the conditions of confinement for these adults are not relevant to this lawsuit and are not discoverable here.

Accordingly, to the extent Plaintiffs' Renewed Motion is seeking any such documents, the motion should be denied.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' Renewed Motion to Compel (Doc. 358).

Dated: September 27, 2024.

Respectfully submitted:

BY: */s/ Madaline King Rabalais*
Connell Archey (#20086)
Randal J. Robert (#21840)
Allena McCain (#38830)
Madaline King Rabalais (#38301)
BUTLER SNOW LLP
445 North Boulevard, Suite 300 (70802)
P.O. Box 2997
Baton Rouge, LA  70821-2997
Telephone:    (225) 325-8700
Facsimile:    (225) 325-8800
Connell.Archey@butlersnow.com
Randy.Robert@butlersnow.com
Allena.McCain@butlersnow.com
Madaline.Rabalais@butlersnow.com

Kyle V. Miller (pro hac vice)
Lemuel E. Montgomery III (pro hac vice)
Anna Morris (pro hac vice)
Carly Chinn (pro hac vice)
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone:    (601) 948-5711
Facsimile:    (601) 985-4500
Kyle.Miller@butlersnow.com
Lem.Montgomery@butlersnow.com
Anna.Morris@butlersnow.com

Carly.Chinn@butlersnow.com

Counsel for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has this day been filed electronically with the Clerk of Court using the CM/ECF system, which will deliver notice of this filing to all counsel of record.

This 27th day of September, 2024.

                                                    */s/ Madaline King Rabalais*

89801750.v2