# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ALEX A., by and through his guardian,**
**Molly Smith; BRIAN B.; and**
**CHARLES C., by and through his guardian,**
**Kenione Rogers, individually and on behalf**
**of all others similarly situated**

**CIVIL ACTION**

**NO. 22-573-SDD-RLB**

**VERSUS**

**GOVERNOR JOHN BEL EDWARDS,**
**in his official capacity as Governor of Louisiana;**
**WILLIAM SOMMERS, in his official**
**capacity as Deputy Secretary of the**
**Office of Juvenile Justice,**
**JAMES M. LEBLANC, in his official capacity**
**as Secretary of the Louisiana Department**
**of Public Safety & Corrections**

## ORDER

Before the Court is Defendants' Motion for Reconsideration (R. Doc. 372) and

Defendant's Motion to Extend Deadline to Object to Order (R. Doc. 373). The deadline for

opposing the motions has not expired. LR 7(f).

## I.    Background

This is a class action lawsuit pertaining to the transfer of certain juveniles in the custody

of the Office of Juvenile Justice ("OJJ") to a facility located at the Louisiana State Penitentiary in

Angola, Louisiana. The operative pleading in this action is the First Amended Class Action

Complaint filed by Alex A., Brian B.,[1] and Charles C. (collectively, "Plaintiffs"), on behalf of

themselves and others similarly situated, against Governor John Bel Edwards,[2] Deputy Secretary

---

[1] Brian B. is now deceased. (R. Doc. 162). Accordingly, Alex A. and Charles C. are the only remaining named "Plaintiffs" in this action.

[2] The current Governor of Louisiana, Jeff Landry, is substituted as defendant by operation of law. *See* Fed. R. Civ. P. 25(d).

of the OJJ Williams Sommers,[3] and the Secretary of the Louisiana Department of Public Safety

& Corrections ("DOC") James M. LeBlanc (collectively, "Defendants"). (R. Doc. 96). Plaintiffs

seek declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 for violation of the

Fourteenth Amendment (Count I), declaratory and injunctive relief for violation of Section 504

of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Count II), and declaratory and injunctive

relief for violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §

12101 *et seq.* (Count III). (R. Doc. 96 at 35-39).

On August 31, 2023, the district judge granted Plaintiffs' Motion for Class Certification,

appointing the Plaintiffs as class representatives for the following class:

> [A]ll youth who are now or will be in the custody of OJJ who have been, might
> be, or will be transferred to the OJJ site (the "Transitional Treatment Unit" or
> "TTU") at Angola or another adult prison (the "Principal Class"), including a
> subclass of all current and future youth with disabilities within the meaning of
> the ADA and Section 504 of the Rehabilitation Act in the custody of OJJ who
> have been, might be, or will be transferred to the OJJ site at Angola or another
> adult prison (the "Disabilities Subclass").

(R. Doc. 243 at 8).[4] The district judge also designated Plaintiffs' counsel as Class Counsel under

Rule 23(g) of the Federal Rules of Civil Procedure. (R. Doc. 243 at 21).

On September 8, 2023, the Court granted Plaintiffs' second motion for preliminary

injunction, enjoining Defendants from "housing youth in Office of Juvenile Justice custody at

BCCY-WF," ordering removal of the OJJ youth from BCCY-WF within one week. (R. Doc. 267

at 20). There is no dispute that Defendants then moved the OJJ youth from BCCY-WF to the

---

[3] The current Deputy Secretary of the OJJ, Kenneth Loftin, is substituted as defendant by operation of law. *See* Fed. R. Civ. P. 25(d).

[4] The district judge's ruling does not specifically define this class, which was proposed by Plaintiffs. Given that the district judge granted Plaintiffs' Motion for Class Certification, this proposed class definition is the governing class definition.

Jackson Parish Jail in Jonesboro, Louisiana, which is operated by the Jackson Parish Sheriff's Office ("JPSO"). (R. Doc. 271-6).[5]

On March 26, 2024, Plaintiffs served Defendants with their Third Requests for Production, in response to which the Defendants objected to the production of produce certain information regarding the Jackson Parish Jail. (*See* R. Doc. 337-2). After the parties met-and-conferred, Plaintiffs filed a Motion to Compel on June 14, 2024, seeking the production and preservation of documents responsive to Request for Productions Nos. 1-8, 10-12, 14-23, and 25-26. (R. Doc. 337).

Defendants subsequently filed a Motion to Dismiss, arguing that the action is moot, and no longer presents a case or controversy under Article III, because the youth under the secure care of the OJJ no longer face the possibility of being transferred to BCCY-WF. (R. Doc. 322). Defendants further asserted that the Jackson Parish Jail is not an "adult prison" for the purposes of the Class because it is a "collocated facility" under the Juvenile Justice Delinquency and Prevention Act ("JJDPA"), meaning that it is "a correctional facility that separately houses youth and adults in the same building or complex." (R. Doc. 322-1 at 11). *See* 34 U.S.C. § 11103(28) ("The term 'collocated facilities' means facilities that are located in the same building, or are part of a related complex of buildings located on the same grounds.").

On August 8, 2024, Defendants confirmed in a Status Report that while "there are no juveniles being housed at the Jackson Parish facility who were in OJJ's custody and then transferred by OJJ to the Jackson Parish facility for housing," the Jackson Parish Jail continues to house "(1) newly adjudicated juveniles who are pending placement at an OJJ secure care facility;

---

[5] Defendants refer to the specific location in which the youth are held as the "Jackson Parish juvenile facility." (*See* R. Doc. 271-6; R. Doc. 360 at 4-5, 8-9). Plaintiffs do not distinguish between the area in which the OJJ Youth are held and the remainder of the Jackson Parish Jail.

and (2) adult pre-trial detainees who are awaiting criminal trial but also have an active juvenile

adjudication." (R. Doc. 344 at 2-3).

On September 4, 2024, the district judge denied Defendants' Motion to Dismiss, without

prejudice to Defendants' right to refile once all OJJ youth are in OJJ secure care facilities or after

the close of discovery. (R. Doc. 353). In so ruling, the district judge specifically stated the

following:

> In the Court's view, the only issue that remains before the Court is whether any
> OJJ youth are being housed in an adult prison or in a juvenile facility where they
> are exposed to adult inmates and/or lack juvenile justice programming at the
> facility as required by law. If OJJ youth are being detained at a juvenile facility in
> Jackson Parish that is collocated with an adult prison, this does not necessarily
> violate the law. Federal law contemplates the existence of "collocated facilities"
> and requires that individuals who work with both juveniles and adult inmates be
> trained and certified to work with juveniles. This distinction derives from the
> different objectives of an adult penal incarceration and a rehabilitation-focused
> juvenile detention.

(R. Doc. 353 at 5). The district judge specifically allowed "limited, narrowly tailored discovery"

to proceed on "whether OJJ youth are improperly being held in an adult facility and/or whether

OJJ youth held in the collocated juvenile facility are nevertheless being exposed to adult inmates

or lacking monitoring by OJJ juvenile justice specialists." (R. Doc. 353 at 13). Accordingly, the

district judge's ruling does not pertain to discovery regarding adult pre-trial detainees who are

awaiting criminal trial but also have an active juvenile adjudication.[6] The ruling only pertains to

discovery pertaining to newly adjudicated juveniles who are pending placement at an OJJ secure

care facility, *i.e.*, "OJJ youth."[7]

---

[6] In their Status Report, Defendants represented that "[t]here are currently fourteen (14) individuals housed in the Jackson Parish Jail who (a) are adults, (b) have been arrested on adult charges, (c) are being held as pretrial detainees, and (d) have active juvenile adjudications." (R. Doc. 344 at 4).

[7] In their Status Report, Defendants represented that "there are eight (8) juveniles being housed in the juvenile unit of the Jackson Parish Jail who (a) have been adjudicated as delinquent and (b) are awaiting placement at an appropriate OJJ secure care facility." (R. Doc. 344 at 3).

Based on the foregoing, the undersigned denied the pending discovery motions, without prejudice to refile, after the parties met-and-conferred with respect to whether, and to what extent, the disputed discovery falls within the limited scope of discovery allowed by the district judge's ruling or the relief sought is otherwise moot in light of the district judge's ruling.

On September 18, 2024, Plaintiffs filed a Renewed Motion to Compel. (R. Doc. 358). Plaintiffs represented that while Defendants have agreed to produce certain documents regarding the Jackson Parish Jail, as of the filing of the instant motion, "Defendants have only produced the Memorandum of Understanding between OJJ and JPSO [and] rosters listing names (but not locations or other information) of OJJ youth held at the [Jackson Parish] Jail." (R. Doc. 358-1 at 6). Plaintiffs sought an order compelling Defendants to produce certain documents and electronically stored information ("ESI"), preserve certain documents and ESI, and permit an expert site inspection of the Jackson Parish Jail. (*See* R. Doc. 358-1 at 19).

In their reply memorandum, Plaintiffs raised new arguments regarding a report by the Louisiana Department of Children & Family Services ("DCFS") and reporting from media outlets. (R. Doc. 365). There arguments were not relevant to the issue of whether Plaintiffs are entitled to the limited discovery allowed by the district judge's ruling.

On October 24, 2024, Defendants filed a Motion for Leave to file a sur-reply memorandum. (R. Doc. 366). The Court granted the motion, ordered the sur-reply memorandum filed into the record, and informed the parties that no further briefs would be considered. (R. Doc. 367). Defendants did not inform the Court at that time – or at any time prior to the Court's ruling on Plaintiffs' Renewed Motion to Compel – that on **October 22, 2024**, the OJJ sent the JPSO notice that it was terminating, effective on November 30, 2024, the Jackson Parish

Housing Agreement (the "Memorandum of Understanding" or "MOU"). (R. Doc. 372-2; *see* R. Doc. 337-4).

On January 17, 2025, Plaintiffs filed a Motion to Supplement Plaintiffs' Renewed Motion to Compel, which sought to supplement the record to update the Court on conditions at the Jackson Parish Jail through two declarations from youth in OJJ's custody held at the Jackson Parish Jail. (R. Doc. 369). This motion also did not inform the Court of OJJ's termination of the MOU. The Court denied the motion given that briefing was complete on the underlying Renewed Motion to Compel. (R. Doc. 370).

On January 21, 2025, the Court issued its ruling on Plaintiffs' Renewed Motion to Compel. (R. Doc. 371). Among other things, the Court concluded that Defendants have "control" over JPSO documents "to the extent they pertain to the OJJ's care and custody of OJJ youth housed at the Jackson Parish Jail." (R. Doc. 371 at 17). Noting that the MOU specifically provides the OJJ the right "to access an OJJ youth's records or other information related to youth housed under the agreement," the Court held that the OJJ has the right to obtain JPSO documents to the extent they pertain to the housing of OJJ youth at the Jackson Parish Jail. (R. Doc. 371 at 17) (quoting R. Doc. 337-4 at 3).

Defendants now seek reconsideration of the Court's ruling to the extent it states that, for the purposes of Rule 34, the OJJ has "control" over JPSO documents pertaining to OJJ youth housed at the Jackson Parish Jail. (R. Doc. 372). Defendants argue that any such control "is no longer in effect" as of the termination of the MOU on November 30, 2024. (R. Doc. 372-1 at 5). Defendants nevertheless represent that "as instructed, OJJ presented the Order to JPSO, requested the responsive documents from JPSO, received those documents, and produced all documents received from JPSO by February 4, 2025." (R. Doc. 372-1 at 3).

6

Having considered the record, the Court has determined that the instant motions can be resolved without further briefing.

## II.    Law and Analysis

### A.    Legal Standards

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). Nevertheless, the Fifth Circuit has "consistently recognized that such a motion may challenge a judgment or order under the Federal Rules of Civil Procedure 54(b) [or] 59(e)." *Burkette v. E. Feliciana Par. Sheriff*, No. 18-996, 2022 WL 16758256, at *2 (M.D. La. Nov. 8, 2022) (citations omitted). Where, as here the motion for reconsideration concerns an interlocutory order, the appropriate standard to apply is found in Rule 54(b). *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017); *see Burkette*, 2022 WL 16758256, at *2 (applying Rule 54(b) standard to motion for reconsideration of ruling granting a motion to quash); *Cook v. Flight Servs. & Sys., Inc.*, No. 16-15759, 2019 WL 2067640, at *1 (E.D. La. May 10, 2019) (Rule 54(b) standard applies to reconsideration of interlocutory discovery order).

In pertinent part, Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Unlike with a motion to alter or amend a judgment brought under Rule 59(e), or a motion for relief from a final judgment, order or proceeding under Rule 60(b), a court considering the Rule 54(b) standard "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change

7

in or clarification of the substantive law." *Austin*, 864 F.3d at 336 (citations omitted). While Rule

54(b) affords broad discretion to the court to reconsider and reverse interlocutory orders, this

"broad discretion must be exercised sparingly in order to forestall the perpetual reexamination of

orders and the resulting burdens and delays." *Burkette*, 2022 WL 16758256, at *2 (quoting

*Carroll v. SGS Auto. Servs., Inc.*, No. 16-537, 2021 WL 2550278, at *2 (M.D. La. June 22,

2021)).

"Motions for reconsideration are 'extraordinary remed[ies] and should be used sparingly

in the interest of finality and conversation of judicial resources.'" *Dixon v. D.R. Horton, Inc. -*

*Gulf Coast*, No. 22-01005, 2023 WL 2486587, at *2 (M.D. La. Feb. 24, 2023) (quoting *Adams v.*

*United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the United*

*States & Canada, AFL-CIO, Loc. 198*, 495 F. Supp. 3d 392, 396 (M.D. La. 2020)). "To the

point, a motion for reconsideration is generally *not* the vehicle for raising arguments that could

have been raised before the entry of the challenged order." *Dixon*, 2023 WL 2486587, at *2

(citing *Adams*, 495 F. Supp. 3d at 396; *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th

Cir. 2004)).

**B.    Analysis**

Having considered Defendants' arguments and representations, the Court finds no basis

to reconsider (or otherwise modify or vacate) the January 21, 2025 Order.

Defendants have presented to the Court a letter dated October 22, 2024 in which the OJJ

provided notice of the termination of the MOU to be effective on November 30, 2024. (R. Doc.

372-2). Defendants nevertheless represent that they have complied with the  January 21, 2025

Order by obtaining and producing responsive documents from the JPSO. (R. Doc. 372-1 at 3).

Given the foregoing production of documents, the Court need not determine whether the

termination of the MOU on November 30, 2024 had any effect on OJJ's control, for the purposes

of Rule 34, over JPSO documents "to the extent they pertain to the OJJ's care and custody of OJJ

youth housed at the Jackson Parish Jail." (R. Doc. 371 at 17). The underlying discovery requests

at issue solely sought production of documents up to the dates of the responses to the requests.

(*See* R. Doc. 371 at 8, 10-12). Defendants represent that they have produced responsive

documents, as ordered, and that "this production of documents is complete." (R. Doc. 372-1 at

3).

Defendants do not ask the Court to require Plaintiffs to return JPSO documents that have

already been produced. Instead, Defendants seek an order providing that the OJJ does not have

"control" of any JPSO documents, given the termination of the MOU, because the "OJJ

reasonably anticipates that Plaintiffs will continue to seek JPSO documents through OJJ." (R.

Doc. 372-1 at 3). This does not pertain to the discovery dispute resolved by the Court's order,

which has now been resolved. Instead, Defendants are anticipating a future issue due in part to

their failure to inform the Court of the termination of the MOU prior to the issuance of the prior

discovery order.

To the extent there are any additional discovery disputes in this case pertaining to JPSO

documents, Defendants may raise their current arguments in the context of that dispute. In light

of the termination of the MOU, the parties can discuss whether and to what extent the

undersigned's prior order and reasoning would now apply to their (hypothetical) dispute. To the

extent any additional discovery disputes are raised with respect to JPSO documents, the parties

must meet-and-confer, in good faith, specifically with respect to the termination of the MOU and

9

its effect, if any, on the OJJ's "control" over JPSO documents regarding OJJ youth prior to the

filing any subsequent motions.[8]

### III.     Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion for Reconsideration (R. Doc. 372) is

**DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Extend Deadline to Object to

Order (R. Doc. 373) is **GRANTED**. Defendants shall file any objection to the January 21, 2025

Order (R. Doc. 371) within **14 days** of the date of this Order.

Signed in Baton Rouge, Louisiana, on February 11, 2025.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[8] Nothing in the Court's ruling precludes Plaintiffs form seeking documents directly from the JPSO through a timely Rule 45 subpoena.