**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

ALEX A., by and through his guardian, MOLLY SMITH, individually and on behalf of all others similarly situated

CIVIL ACTION

VERSUS

22-573-SDD-RLB

GOVERNOR JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana; WILLIAM SOMMERS, in his official capacity as Deputy Secretary of the Office of Juvenile Justice, JAMES M. LEBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections

## RULING AND ORDER

This matter is before the Court on the Amended Motion to Dismiss,[1] filed by Defendants Jeff Landry, in his official capacity as Governor of Louisiana; Kenneth "Kenny" Loftin ("Loftin"), in his official capacity as Deputy Secretary of the Office of Juvenile Justice ("OJJ"); and James M. LeBlanc, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections ("DOC") (collectively "Defendants"). Plaintiffs Alex A. and Charles C. ("Plaintiffs"), on behalf of themselves and the certified Plaintiff Class, filed an Opposition[2] to Defendants' motion, to which Defendants filed a Reply.[3] The Court previously ruled on Defendant's first Motion to Dismiss, and the Court adopts by reference the factual background, relevant law, and analysis set forth therein.[4]

---

[1] Rec. Doc. 385.
[2] Rec. Doc. 390.
[3] Rec. Doc. 394.
[4] Rec. Doc. 353.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In July 2022, then-Governor Edwards announced plans to open a temporary secure care facility for the housing of youth in OJJ custody while OJJ completed construction of a new facility for its transitional treatment unit ("TTU"). The designated temporary facility, identified by OJJ as BCCY-WF, was to be located on the grounds of the Louisiana State Penitentiary at Angola ("LSP" or "Angola").

In response to this public announcement, Plaintiffs filed this lawsuit in August 2022 to enjoin OJJ from operating the TTU on the LSP campus and transferring any juveniles in OJJ custody to that site.[5] Plaintiffs maintained that it was unconstitutional to house them on the grounds of an adult prison and, further, that OJJ could not provide for their statutorily mandated educational and rehabilitative needs.[6]

In September 2022, the Court held an evidentiary hearing on Plaintiffs' first Motion for a Preliminary Injunction and ultimately denied the motion finding that, based on the sworn testimony of witnesses and other evidence presented at the hearing, BCCY-WF at Angola would operate as a juvenile facility preventing any contact with adult inmates at Angola; the rehabilitative and educational needs of the juveniles would be met; and the structural facility would provide a secure environment that would protect the juveniles, OJJ staff, and the public.[7] BCCY-WF opened in October 2022. Because the Court's ruling was not a final ruling on the merits, discovery began, and the parties continued to litigate the matter.

---

[5] Rec. Doc. 1.
[6] Rec. Doc. 96.
[7] Rec. Doc. 79.

Plaintiffs filed a First Amended Class Action Complaint and moved for class certification.[8] In July 2023, Plaintiffs filed a second Motion for Preliminary Injunction.[9] In August 2023, the Court granted class certification[10] and conducted an evidentiary hearing on Plaintiffs' second injunction motion. The Court granted Plaintiffs' motion and enjoined the use of BCCY-WF as a secure care facility and TTU for juveniles in OJJ custody; the Court further ordered Defendants to remove all juveniles housed at BCCY-WF and enjoined the transfer of any OJJ youth back to BCCY-WF.[11] Defendants appealed the Court's order to the Fifth Circuit.

On September 13, 2023, the Fifth Circuit stayed this Court's Preliminary Injunction.[12] This notwithstanding, OJJ transferred all juveniles from BCCY-WF to the juvenile unit of the newly-opened Jackson Parish facility.[13] On October 5, 2023, the Fifth Circuit dissolved the stay.[14] On December 19, 2023, the Fifth Circuit dismissed the appeal.[15] The Fifth Circuit never addressed the merits of the Court's rulings.

On September 22, 2023, OJJ and the Jackson Parish Sheriff's Office (JPSO) entered into a memorandum of understanding ("MOU") whereby the JPSO agreed to accept youth who had been adjudicated as delinquent and remanded to the custody of the OJJ.[16] Thus, all youth previously at BCCY-WF were transferred to the Jackson Parish juvenile unit.[17] Following this development, Defendants filed a Motion to Dismiss for Lack

[8] Rec. Docs. 96, 99.
[9] Rec. Doc. 163.
[10] Rec. Doc. 243.
[11] Rec. Doc. 267.
[12] Rec. Doc. 268.
[13] Rec. Doc. 278, p. 3.
[14] Rec. Doc. 291, p. 2.
[15] Rec. Doc. 312.
[16] Rec. Doc. 385-3, ¶ 24.
[17] Rec. Doc. 385-1, p. 4.

of Subject Matter Jurisdiction (FRCP 12(b)(1)), arguing that: (1) because the Angola facilities are closed to youth and currently house adult women and (2) because the use of Jackson Parish is permissible due to its status as a collated facility, Plaintiffs' claims are moot and should be dismissed.[18] The Court denied the motion, holding: "Should all OJJ youth be removed from Jackson Parish and housed in OJJ secure care facilities, this lawsuit will be moot. **But under the circumstances**, Plaintiffs have the right to seek discovery to determine whether OJJ youth are being improperly held in an adult facility . . ."[19]

On October 22, 2024, after opening the new facility,[20] Defendants cancelled the MOU with JPSO, removed all youth from the Jackson Parish facility, and now advise the Court that they have no plans to resume transferring youth to JPSO.[21] Accordingly, Defendants have renewed their Motion to Dismiss for Lack of Subject Matter Jurisdiction,[22] which Plaintiffs oppose.

## II. ARGUMENTS

Defendants maintain that the recent developments have mooted Plaintiffs' claims. Defendants present the Affidavit of Secretary Courtney Meyers to support their motion.[23] First, Defendants assert that the two named Plaintiffs have completed their terms of custody with the OJJ; thus, due to their ages, they will never be returned to OJJ custody. Because Plaintiffs made no prayer for monetary damages and sought only declaratory and injunctive relief, there is no longer any relief the Court can provide.[24] Second,

---

[18] Rec. Doc. 322-1, pp. 3, 8.
[19] Rec. Doc. 353, p. 13.
[20] Cypress Unit at SCY-Monroe.
[21] Rec. Doc. 385-3, ¶ 31.
[22] Rec. Doc. 385-1, pp. 1-2, 6.
[23] Rec. Doc. 385-3.
[24] Rec. Doc. 385-1, p. 3.

Defendants highlight that the Angola facility is closed, and the OJJ is no longer transferring Youth to JPSO. Further, the OJJ is now operating in a manner consistent with pre-litigation practices. Thus, the claims of the named Plaintiffs and the class members are moot because they cannot show that they have sustained or are immediately in danger of sustaining a direct injury as required by Article III.[25] Essentially, Defendants claim Plaintiffs have received the relief requested.

Plaintiffs oppose dismissal on a few grounds. First, Plaintiffs contend because the class is certified, the named Plaintiffs' current standing to sue has no bearing on the class's cognizable interest and legal claims. Thus, the named Plaintiffs' ages are irrelevant to the claims of the class as a whole.[26] Second, the Plaintiffs argue that the inherently transitory nature of named Plaintiffs' claims demonstrates that they are still adequate class representatives, and the claims are not moot. The inherently transitory mootness exception applies to any situation where composition of the claimant population is fluid, but the population retains a living claim.[27] Given that the OJJ has not entered into a binding agreement to stop the transfer of youth to adult collated facilities (instead using language such as "presently"), the claimant population's claim is still live. Finally, Plaintiffs assert that the Defendants' voluntary cessation of jailing juvenile defenders in adult facilities is inadequate to render this case moot.[28]

---

[25] *Id.* at p. 8.
[26] Rec. Doc. 390, p. 3.
[27] *Id.* at p. 5.
[28] *Id.* at p. 6.

## III. LAW & ANALYSIS

### A. Rule 12(b)(1) Dismissal

When considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may evaluate: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts.[29] The party asserting jurisdiction bears the burden of proof on a 12(b)(1) motion to dismiss.[30] Thus, the plaintiff "constantly bears the burden of proof that jurisdiction does in fact exist."[31]

A claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim.[32] "Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'"[33] "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."[34] "All of the doctrines that cluster about Article III—not only standing but mootness, ripeness, political question, and the like—relate in part, and in different though overlapping ways, to ... the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government."[35] Thus, mootness presents a question of subject matter jurisdiction which may be resolved

---

[29] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)(citing *Barrera-Montenegro v. U.S.*, 74 F.3d 657, 659 (5th Cir. 1996)); *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 668 F.3d 281, 287 (5th Cir. 2012).
[30] *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012) (citing *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011)); *Ramming*, 281 F.3d at 161.
[31] *Breaux v. Haynes*, No. No. 15-769-JJB-RLB, 2017 WL 5158699, *2 (M.D. La. Aug. 3, 2017)(citing *Ramming*, 281 F.3d at 161 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980))).
[32] *In re FEMA*, 668 F.3d at 286 (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).
[33] *Allen v. Wright*, 468 U.S. 737, 750 (1984).
[34] *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).
[35] *Allen*, 468 U.S. at 750 (quotation omitted).

through a Rule 12(b)(1) motion.[36]

**B. Mootness**

If "the parties lack a legally cognizable interest in the outcome,"[37] the case is moot. Accordingly, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot."[38]

There is an exception to mootness, however, that occurs when a defendant voluntary ceases the challenged practice. "'[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'"[39] "In general, a defendant's voluntary conduct moots a case only if 'it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"[40] But, government entities bear a "'a lighter burden'. . . in proving that the challenged conduct will not recur once the suit is dismissed as moot."[41] The Court presumes that "state actors, as public representatives, act in good faith."[42] Consequently, unless there is evidence to the contrary, the Court assumes "'that formally announced changes to official government policy are not mere litigation posturing.'"[43] Moreover, the government's ability to "reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception."[44]

---

[36] *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).
[37] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation and quotation marks omitted)
[38] *DeOtte v. Nevada*, 20 F.4th 1055, 1064 (5th Cir. 2021) (quoting *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)).
[39] *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000)).
[40] *Id.* (quoting *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011)).
[41] *Id.* (quoting *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014)).
[42] *Id.* (internal citations omitted).
[43] *Id.* (quoting *Sossamon*, 560 F.3d at 325).
[44] *Id.* (internal citations omitted).

### C. Analysis

The Court notes at the outset that it is not the role of this Court to generally oversee the day-to-day operations of the OJJ. Federal Courts eschew toward "minimum intrusion into the affairs of state prison administration; state prison officials enjoy wide discretion in the operation of state penal institutions."[45] In a case challenging a state prison transfer policy, the Supreme Court warned against federal courts making decisions regarding "the day-to-day functioning of state prisons and involv[ing] the judiciary in issues and discretionary decisions that are not the business of federal judges,"[46] noting that "[t]he federal courts do not sit to supervise state prisons, the administration of which is an acute interest to the States."[47] The same deference is owed to state juvenile justice agencies. Even though adjudicated delinquents are not incarcerated per se, the Fifth Circuit has held that "the deference given to correctional officials in the adult context applies to correctional officials in the juvenile context as well."[48]

Defendants argue that Secretary Meyers' Affidavit demonstrates mootness.[49] As state actors, Defendants bear a lighter burden to establish that the challenged conduct will not recur, and they are entitled to a good faith presumption that cessation is not mere "litigation posturing."[50] Secretary Meyers attests that there are no current plans to house

---

[45] *Williams v. Edwards*, 547 F.2d 1206, 1211-1212 (5th Cir. 1977)(citing *Procunier v. Martinez*, 416 U.S. 396, 404-05, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974)).
[46] *Meacham v. Fano*, 427 U.S. 215, 228-229 (1976).
[47] *Id.* at 229 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 491-492, 93 S.Ct. 1827, 1837, 36 L.Ed.2d 439 (1973); *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Johnson v. Avery*, 393 U.S. 483, 486, 89 S.Ct. 747, 749, 21 L.Ed.2d 718 (1969)).
[48] *Mabry v. Lee County*, 849 F.3d 232, 238 (5th Cir. 2017).
[49] Rec. Doc. 385-3.
[50] Rec. Doc. 394, p. 7 (citing *Freedom From Religion Found., Inc. v. Abbot*, 58 F.4th 824, 833 (5th Cir. 2023)).

OJJ youth at Angola, the Jackson Parish Juvenile Unit, or "any facility designed to house adult prisoners or any collocated facility . . ."[51] Thus, the Government has met its burden.

Plaintiffs counter that Defendants' voluntary cessation of activity does not meet the "heavy burden" required to show mootness[52] because Defendants' voluntary act of closing the Jackson Parish collated facility does not "make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."[53] Given Defendants' past failure to adhere to obligations previously made to this Court regarding the use of Angola and their failure to produce a formal announcement regarding future policy, Plaintiffs maintain Defendants' assertion that they "presently" have no plans to reopen the Jackson Parish facility is inadequate to meet their burden of proof.[54]

Plaintiffs' claim that the Defendants are held to a "stringent" standard and must meet a "heavy burden" to demonstrate mootness is erroneous.[55] As state actors, Defendants are entitled to a good faith presumption and carry a lighter burden in establishing mootness as mentioned above in the Fifth Circuit's decision in *Abbott.*[56] There, the court held that, "**[w]ithout evidence to the contrary**, we assume that formally announced changes to official governmental policy are not mere litigation posturing. Among other things, the government's ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception."[57] The *Abbott* court further

---

[51] Rec. Doc. 385-3, ¶¶ 21, 32, 34.
[52] Rec. Doc. 390, p. 6.
[53] *Id.* (citing *Friends of the Earth Inc. v. Laidlaw Env't Serv. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).
[54] *Id.* at pp. 7-8.
[55] *Id.* at p. 6.
[56] *Abbott*, 58 F.4th at 833.
[57] *Id.* (quoting *Sossamon*, 560 F.3d at 325); *see generally Nelson v. Landry*, 714 F. Supp. 3d 790 (M.D. La. 2024).

held that nothing in the record suggested the defendant would reimplement the offending rule.[58]

The Court finds that the Defendants' revocation of the MOU with the Jackson Parish prison and Secretary Myers' Affidavit are analogous to the policy discussed in *Abbot*. While Plaintiffs suggest the use of the word "presently" calls this cessation into doubt, the Court finds that the totality of the record in this matter undermines this claim. Plaintiffs are correct that the Court has previously admonished Defendants in the past for overpromising and underdelivering on what they could provide at BCCY-WF. However, there has never been evidence in this case that OJJ's ultimate goal was to house youth in adult prisons. Rather, the stated goal, now borne out by the completion of the Cypress Unit at SCY-Monroe facility, has always been to house OJJ youth in a secure care facility operated by the OJJ. This has now been accomplished.[59] There is no evidence to contradict this fact. Simply because it is in the realm of possibility that youth could be transferred to another facility at some unspecified time in the future does not save Plaintiffs' claims. Indeed, "[t]he power to reenact a repealed rule, without more, is not enough to support a reasonable expectation that the conduct will recur."[60]

The Court is likewise unpersuaded by Plaintiffs' argument that, because of the "inherently transitory nature" of their claims, this case is not moot. Plaintiffs maintain that "[h]e principle [of Inherently Transitory Claims] applies to any situation where composition of the claimant population is fluid, but the population as a whole retains a continuing live

---

[58] *Id.*
[59] Rec. Doc. 385-3, ¶¶ 26-28.
[60] *Merriott v. City of Bossier City*, 2025 WL1403569 at *10 (W.D. La. 2025); Plaintiffs' claim that a binding agreement to enforce cessation is not supported by caselaw. On the last page of their memorandum in support of their Opposition to Defendants' Motion to Dismiss, Plaintiffs urge that Defendants' failure to submit a "binding and enforceable stipulation" indicates they have not met their burden of proof to moot plaintiffs' claims. However, as noted by the Defendants, there is no such caselaw to support this assertion

claim."[61] While that may be true, Plaintiffs fail to provide any evidence that their claim is, in fact, live.[62] "[I]n applying the mootness concept in the class action context, courts have generated an intricate doctrine unto itself. Two precepts are straightforward and obvious: (1) If neither the class representatives' claims nor the class's claims are moot, the case suffers no mootness problems and may proceed. (2) Conversely, if the class representatives' claims and the class's claims are all moot, the **whole case is moot**."[63] In the present case, Plaintiffs claims fall within the second category. They do not dispute: (1) that the named-Plaintiffs have aged out, (2) the closure of the Angola facility, or (3) the revocation of the MOU with Jackson Parish. Further, as a practical matter, if the Court accepted Plaintiffs' transitory argument, this case would never reach a conclusion because the mere possibly of transfer will always exist.

## IV. CONCLUSION

The Court held in the previous Ruling that, "[s]hould all OJJ youth be removed from Jackson Parish and housed in OJJ secure care facilities, this lawsuit will be moot."[64] The uncontroverted record in this matter shows that this has been accomplished. The Court also made clear that conditions of confinement was not a claim properly before the Court in this lawsuit.[65] Accordingly, Defendants' Amended Motion to Dismiss[66] is GRANTED.

---

[61] Rec. Doc. 390, p. 5 (citing William B. Rubenstein, 1 Newberg and Rubenstein on Class Actions §2:13 6th ed. 2025).

[62] *See Davis v. Ball Mem'l Hosp. Ass'n, Inc.*, 753 F.2d 1410, 1416 (7th Cir. 1985) ("Evidence that the issues are "live" may be found from the attempted intervention by unnamed class members, *see, e.g., Geraghty,* 445 U.S. at 396, 100 S.Ct. at 1208; certification of a class, *see, e.g., Franks v. Bowman Transportation Co.,* 424 U.S. 747, 755–57, 96 S.Ct. 1251, 1259–61, 47 L.Ed.2d 444 (1976); and refusal of a tender of settlement, *see, e.g., Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 336–38, 100 S.Ct. 1166, 1173–74, 63 L.Ed.2d 427 (1980)").

[63] William B. Rubenstein, 1 Newberg and Rubenstein on Class Actions §2:9 6th ed. 2025. (emphasis added).

[64] Rec. Doc. 353, p. 13.

[65] *Id.*

[66] Rec. Doc. 385.

Because there is no underlying live claim, the Court DENIES the Amended Motion to Decertify Class[67] as MOOT. Plaintiffs' claims are hereby dismissed, and the Clerk of Court is ordered to close this matter.

Baton Rouge, Louisiana, this 2nd day of July, 2025.

Shelly D. Dick

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIA**

[67] Rec. Doc. 386.